In the United States Court of Appeals
for the Tenth Circuit

CASE NO. 25-1243

GREENLATINOS, 350 COLORADO,
AND SIERRA CLUB,

    *Plaintiff – Appellant,*

    v.

SUNCOR ENERGY (U.S.A.), INC.,

    *Defendant – Appellee.*

On Appeal from the United Stated District Court
For the District of Colorado
The Honorable Judge Domenico
D.C. No. 1:24-cv-02164-DDD

ORAL ARGUMENT IS REQUESTED

**Appellants' Appendix**

**Vol. V**

September 5, 2025

**INDEX to the APPENDIX**
**Case No. 25-1243**
Appeal from USDC CO, Case No. 1:24-cv-02164-DDD

GREENLATINOS, 350 COLORADO AND SIERRA CLUB, *Plaintiff-Appellants*, v.
SUNCOR ENERGY (U.S.A.), INC., *Defendant-Appellee*.

| VOLUME V | | | |
|---|---|---|---|
| **No.** | **District Court Docket No.** | **Document** | **App. Page No.** |
| 16 | 27.3 (Part 2) | Exh. 3 - Operating Permit, Suncor Energy Commerce City Refinery, Plant 2 (East), Renewed Sept. 1, 2022 | 1022 |
| 17 | 27.4 | Exh. 4 – Table Showing EPA and Colorado's Diligent Prosecution of Emission Standards Allegedly Violated by Suncor in Plaintiffs' Amended Complaint | 1113 |

Air Pollution Control Division                                          Suncor Energy (U.S.A.)
Colorado Operating Permit                                  Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                    Page 291

## 45. Continuous Emission Monitoring and Continuous Opacity Monitoring Systems

The following requirements apply to the $NO_X$, $SO_2$ and CO continuous emission monitoring systems and the continuous opacity monitoring systems required for specific equipment as indicated in this permit.

45.1    Equipment and QA/QC Requirements

45.1.1    The Continuous Emission Monitoring Systems (CEMS) are subject to the applicable requirements in 40 CFR Part 60.   These CEMS are subject to the quality assurance/quality control requirements in 40 CFR Part 60, Subpart A § 60.13(d) and Appendix F and Condition 45.1.1.3.  The monitoring systems shall meet the equipment, installation and performance specifications as follows:

45.1.1.1    The $NO_X$, $SO_2$ and diluents ($O_2$) monitors shall meet the equipment, installation and performance specifications of 40 CFR Part 60 Appendix B, Performance Specifications 2 and 3.

45.1.1.2    The CO monitors shall meet the equipment, installation and performance specifications of 40 CFR Part 60 Appendix B, Performance Specification 4/4A.

45.1.1.3    The $NO_X$, $SO_2$ and CO CEMS are subject to the following requirements:

a.   Relative Accuracy Test Audits (RATAs):  RATAs shall be conducted in the units (e.g., lb/MMBtu, ppm) of the emission limitation for all of the emission limitations that are applicable to the emissions unit.  The RATAs for emissions units that have annual emission limits (tons/yr) will be conducted in terms of pounds per hour (lb/hr).

b.   The DAHS shall be able to record and manipulate the data in the units (e.g., lb/MMBtu, ppm) of the emission limitation and meet the reporting requirements for all of the emission limitations that are applicable to the emissions unit.

45.1.1.4    **Consent Decree Requirements for FCCU CO, $SO_2$ and $NO_X$ CEMS:** The permittee shall install, certify, calibrate, maintain and operate the $NO_X$, CO and $SO_2$ CEMS required by this paragraph in accordance with the provisions of 40 CFR § 60.13 that are applicable to CEMS (excluding those provisions applicable only to continuous opacity monitoring systems) and Part 60, Appendices A and F, and the applicable performance specification test of 40 CFR part 60 Appendix B.  With respect to 40 CFR Part 60 Appendix F, in lieu of the requirements of 40 CFR Part 60, Appendix F §§ 5.1.1, 5.1.3 and 5.1.4, the permittee shall conduct either a RAA or a RATA on the CEMS at least once every three (3) years.  The permittee must also conduct a CGA each calendar quarter during which a RAA or a RATA is not performed. (As provided for under the provisions in Section I, Condition 1.3 and Colorado Regulation No.

Air Pollution Control Division                                        Suncor Energy (U.S.A.)
Colorado Operating Permit                           Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                              Page 292

3, Part C, Sections I.A.7, III.B.7 and V.C.5 to include Consent Decree requirements for FCCU CEMS. Consent Decree No. SA-05-CA-0569, entered November 23, 2005, paragraphs 62, 90, and 101).

45.1.2    The Continuous Opacity Monitoring Systems (COMS) are subject to the following requirements:

45.1.2.1    The COMS are subject to the applicable requirements in 40 CFR Part 60. Each continuous opacity monitoring system shall meet the design, installation, equipment and performance specifications in 40 CFR Part 60, Appendix B, Performance Specification 1.

45.1.2.2    Consent Decree Requirements for FCCU COMS: The permittee shall install, certify, calibrate, maintain and operate all COMS required by this paragraph in accordance with the provisions o 40 CFR §§ 60.11 and 60.13 and Part 60 Appendix A, and the applicable performance specification tests in 40 CFR Part 60 Appendix B. (As provided for under the provisions in Section I, Condition 1.3 and Colorado Regulation No. 3, Part C, Sections I.A.7, III.B.7 and V.C.5 to include the Consent Decree requirements for FCCU COMS. Consent Decree No. SA-05-CA-0569, entered November 23, 2005, paragraph 103)

45.1.3    Quality assurance/quality control plans shall be prepared for the continuous emission monitoring systems in accordance with the applicable requirements in 40 CFR Part 60, Appendix F. The quality assurance/quality control plans shall be made available to the Division upon request. Revisions shall be made to the plans at the request of the Division.

45.1.4    40 CFR Part 60 Subpart A § 60.13(d) requirements:

45.1.4.1    Owners and operators of a CEMS installed in accordance with the provisions of this part, must check the zero (or low level value between 0 and 20 percent of span value) and span (50 to 100 percent of span value) calibration drifts at least once daily in accordance with a written procedure. The zero and span must, as a minimum, be adjusted whenever either the 24-hour zero drift or the 24-hour span drift exceeds two times the limit of the applicable performance specification in appendix B of this part. The system must allow the amount of the excess zero and span drift to be recorded and quantified whenever specified. Owners and operators of a COMS installed in accordance with the provisions of this part, must automatically, intrinsic to the opacity monitor, check the zero and upscale (span) calibration drifts at least once daily. For a particular COMS, the acceptable range of zero and upscale calibration materials is as defined in the applicable version of PS-1 in appendix B of this part. For a COMS, the optical surfaces, exposed to the effluent gases, must be cleaned before performing the zero and upscale drift adjustments, except for systems using automatic zero adjustments. The optical surfaces must be cleaned

Operating Permit #95OPAD108                                    First Issued: October 1, 2006
                                                               Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit
Permit #95OPAD108

Suncor Energy (U.S.A.)
Commerce City Refinery, Plant 2 (East)
Page 293

when the cumulative automatic zero compensation exceeds 4 percent opacity. (60.13(d)(1))

45.1.4.2    Unless otherwise approved by the Administrator, the following procedures must be followed for a COMS. Minimum procedures must include an automated method for producing a simulated zero opacity condition and an upscale opacity condition using a certified neutral density filter or other related technique to produce a known obstruction of the light beam. Such procedures must provide a system check of all active analyzer internal optics with power or curvature, all active electronic circuitry including the light source and photodetector assembly, and electronic or electro-mechanical systems and hardware and or software used during normal measurement operation. (60.13(d)(2))

## 45.2    General Provisions

45.2.1    Except for system breakdowns, repairs, calibration checks, and zero and span adjustments required under Condition 45.1.4, all continuous monitoring systems shall be in continuous operation and shall meet minimum frequency of operation requirements as follows (60.13(e)):

45.2.1.1    All continuous monitoring systems referenced by paragraph (c) of this section for measuring opacity of emissions shall complete a minimum of one cycle of sampling and analyzing for each successive 10-second period and one cycle of data recording for each successive 6-minute period. (60.13(e)(1))

45.2.1.2    All continuous monitoring systems referenced by paragraph (c) of this section for measuring emissions, except opacity, shall complete a minimum of one cycle of operation (sampling, analyzing, and data recording) for each successive 15-minute period. (60.13(e)(2))

45.2.2    All continuous monitoring systems or monitoring devices shall be installed such that representative measurements of emissions or process parameters from the affected facility are obtained. Additional procedures for location of continuous monitoring systems contained in the applicable Performance Specifications of appendix B of this part shall be used. (60.13(f))

45.2.3    Owners or operators of all continuous monitoring systems for measurement of opacity shall reduce all data to 6-minute averages and for continuous monitoring systems other than opacity to 1-hour averages for time periods as defined in § 60.2. Six-minute opacity averages shall be calculated from 36 or more data points equally spaced over each 6-minute period. (60.13(h)(1))

45.2.4    For continuous monitoring systems other than opacity, 1-hour averages shall be computed as specified in 60.13(h)(2)(i) through (ix), except that the provisions pertaining to the validation of partial operating hours are only applicable for affected

Operating Permit #95OPAD108

First Issued:  October 1, 2006
Renewed: September 1, 2022

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 294 |

facilities that are required by the applicable subpart to include partial hours in the emission calculations (60.13(h)(2)).

45.2.5    All excess emissions shall be converted into units of the standard using the applicable conversion procedures specified in the applicable subpart. After conversion into units of the standard, the data may be rounded to the same number of significant digits used in the applicable subpart to specify the emission limit. (60.13(h)(3))

45.2.6    Alternative monitoring system, alternative reference method, or any other alternative for the required continuous emission monitoring systems shall not be used without having obtained prior written approval from the appropriate agency, either the Division or the U.S. EPA, depending on which agency is authorized to approve such alternative under applicable law.  Any alternative continuous emission monitoring systems or continuous opacity monitoring systems must be certified in accordance with the requirements of 40 CFR Part 60.  Guidelines for alternatives to monitoring procedures or requirements and relative accuracy (RA) tests are provided in § 60.13(i) and (j).

45.2.7    All test and monitoring equipment, methods, procedures and reporting shall be subject to the review and approval by the appropriate agency, either the Division or the U.S.EPA, depending on which agency is authorized to approve such alternative under applicable law, prior to any official use.  The Division shall have the right to inspect such equipment, methods and procedures and data obtained at any time.  The Division shall provide a witness(s) for any and all tests as Division resources permit.

## 45.3    Recordkeeping Requirements

45.3.1    Any owner or operator subject to the provisions of this part shall maintain records of the occurrence and duration of any startup, shutdown, or malfunction in the operation of an affected facility; any malfunction of the air pollution control equipment; or any periods during which a continuous monitoring system or monitoring device is inoperative. (60.7(b))

45.3.2    Any owner or operator subject to the provisions of this part shall maintain a file of all measurements, including continuous monitoring system, monitoring device, and performance testing measurements; all continuous monitoring system performance evaluations; all continuous monitoring system or monitoring device calibration checks; adjustments and maintenance performed on these systems or devices; and all other information required by this part recorded in a permanent form suitable for inspection. The file shall be retained for at least two years following the date of such measurements, maintenance, reports, and records, except as provided for in § 60.7(f).  (60.7(f))

## 45.4    Reporting Requirements

45.4.1    Each owner or operator required to install a continuous monitoring device shall submit excess emissions and monitoring systems performance report (excess emissions are

| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
|---|---|
| | Renewed: September 1, 2022 |

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 295 |

defined in applicable subparts) and-or summary report form (see Condition 45.4.2) to the Division quarterly. All reports shall be postmarked by the 30th day following the end of each six-month period. (60.7(c), revised to stipulate quarterly reporting as the Division considers more frequent reporting is warranted for this facility) Written reports of excess emissions shall include the following information:

45.4.1.1    The magnitude of excess emissions computed in accordance with § 60.13(h), any conversion factor(s) used, and the date and time of commencement and completion of each time period of excess emissions. The process operating time during the reporting period. (60.7(c)(1))

45.4.1.2    Specific identification of each period of excess emissions that occurs during startups, shutdowns, and malfunctions of the affected facility. The nature and cause of any malfunction (if known), the corrective action taken or preventative measures adopted. (60.7(c)(2))

45.4.1.3    The date and time identifying each period during which the continuous monitoring system was inoperative except for zero and span checks and the nature of the system repairs or adjustments. (60.7(c)(3))

45.4.1.4    When no excess emissions have occurred or the continuous monitoring system(s) have not been inoperative, repaired, or adjusted, such information shall be stated in the report. (60.7(c)(4))

45.4.2    The summary report form shall contain the information and be in the format shown in figure 1 of § 60.7 unless otherwise specified by the Division. One summary report form shall be submitted for each pollutant monitored at each affected facility. (60.7(d))

45.4.2.1    If the total duration of excess emissions for the reporting period is less than 1 percent of the total operating time for the reporting period and CMS downtime for the reporting period is less than 5 percent of the total operating time for the reporting period, only the summary report form shall be submitted and the excess emission report described in § 60.7(c) need not be submitted unless requested by the Division. (60.7(d)(1))

45.4.2.2    If the total duration of excess emissions for the reporting period is 1 percent or greater of the total operating time for the reporting period or the total CMS downtime for the reporting period is 5 percent or greater of the total operating time for the reporting period, the summary report form and the excess emission report described in § 60.7(c) shall both be submitted. (60.7(d)(2))

45.4.3    Specific Reporting Requirements for NSPS Subpart Db (Boilers B504 and G505)

45.4.3.1    The owner or operator of any affected facility in any category listed in 60.49b(h)(1) or (2) is required to submit excess emission reports for any excess emissions that occurred during the reporting period. (60.49b(h))

| Operating Permit #95OPAD108 | First Issued: October 1, 2006 |
|---|---|
| | Renewed: September 1, 2022 |

Air Pollution Control Division                                    Suncor Energy (U.S.A.)
Colorado Operating Permit                          Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                          Page 296

a. Any affected facility that is subject to the $NO_X$ standard of §60.44b (Condition 6.11.1), and that combusts natural gas, distillate oil, gasified coal, or residual oil with a nitrogen content of 0.3 weight percent or less; or has a heat input capacity of 73 MW (250 MMBtu/hr) or less and is required to monitor $NO_X$ emissions on a continuous basis under §60.48b(g)(1) (Condition 6.11.8) or steam generating unit operating conditions under §60.48b(g)(2). (60.49b(h)(2)(i) and (ii))

b. For purposes of §60.48b(g)(1) (Condition 6.11.8), excess emissions are defined as any calculated 30-day rolling average $NO_X$ emission rate, as determined under §60.46b(e) (Condition 6.11.5), that exceeds the applicable emission limits in §60.44b (Condition 6.11.1). (60.49b(h)(4))

45.4.3.2    The owner or operator of any affected facility subject to the continuous monitoring requirements for $NO_X$ under §60.48(b) shall submit reports containing the information recorded under 60.49b(g) (Condition 6.11.10). (60.49b(i))

45.4.3.3    The owner or operator of an affected facility may submit electronic quarterly reports for $SO_2$ and/or $NO_X$ and/or opacity in lieu of submitting the written reports required under paragraphs (h), (i), (j), (k) or (l) of this section. The format of each quarterly electronic report shall be coordinated with the permitting authority. The electronic report(s) shall be submitted no later than 30 days after the end of the calendar quarter and shall be accompanied by a certification statement from the owner or operator, indicating whether compliance with the applicable emission standards and minimum data requirements of this subpart was achieved during the reporting period. Before submitting reports in the electronic format, the owner or operator shall coordinate with the permitting authority to obtain their agreement to submit reports in this alternative format. (60.49b(v))

45.4.3.4    The reporting period for the reports required under this subpart is each 6 month period. All reports shall be submitted to the Administrator and shall be postmarked by the 30th day following the end of the reporting period. (60.49b(w))

## 45.5    Specific Provisions for NSPS Subpart Db (Boilers B504 and B505)

45.5.1    The CEMS required under 60.48b(b) (Condition 6.11.6) shall be operated and data recorded during all periods of operation of the affected facility except for CEMS breakdowns and repairs. Data is recorded during calibration checks, and zero and span adjustments. (60.48b(c))

Operating Permit #95OPAD108                        First Issued: October 1, 2006
                                                   Renewed: September 1, 2022

Air Pollution Control Division                                    Suncor Energy (U.S.A.)
Colorado Operating Permit                              Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                              Page 297

45.5.2    The procedures under §60.13 shall be followed for installation, evaluation, and operation of the continuous monitoring systems. (60.48b(e)) For affected facilities combusting natural gas, the span value for $NO_X$ is 500 ppm. (60.48b(e)(2))

45.5.3    When $NO_X$ emission data are not obtained because of CEMS breakdowns, repairs, calibration checks and zero and span adjustments, emission data will be obtained by using standby monitoring systems, Method 7 of appendix A of this part, Method 7A of appendix A of this part, or other approved reference methods to provide emission data for a minimum of 75 percent of the operating hours in each steam generating unit operating day, in at least 22 out of 30 successive steam generating unit operating days. (60.48b(f))

Air Pollution Control Division                                    Suncor Energy (U.S.A.)
Colorado Operating Permit                            Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                            Page 298

## 46.    Tank Cleaning and Degassing – P2DGTO

### Thermal Oxidizer for Degassing and Cleaning Tanks

| Parameter | Permit Condition Number | Limitation | Emission Factor | Monitoring | |
|---|---|---|---|---|---|
| | | | | Method | Interval |
| VOC | 46.1 | 17.2 tons/year **(Refinery-Wide)** | See Condition 46.1 | Recordkeeping and Calculation | Per Tank, Monthly |
| $NO_X$ | 46.2 | 2.73 tons/yr **(Refinery-Wide)** | 0.14 lb/MMBtu | Recordkeeping and Calculation | Per Tank, Monthly |
| CO | | 1.57 tons/yr **(Refinery-Wide)** | 0.082 lb/MMBtu | | |
| PM | | | $7.65 \times 10^{-3}$ lb/MMBtu | | |
| $PM_{10}$ | | | | | |
| $SO_2$ | | | See Condition 46.2.2.2 | | Daily, Monthly |
| | 46.3 | 0.3 lb $SO_2$/bbl/day of oil processed | See Condition 46.3 | | |
| Thermal Oxidizer (TO) Requirements | 46.4 | Design Rate Not to Exceed 20 Million Btu per hour | | See Condition 46.4 | |
| | | Maintain TO Temperature at or Above 1400 °F | | | |
| RACT | 46.5 | | | See Condition 46.5 | |
| Propane/LPG Consumption | 46.6 | 38,400,000,000 Btu/year | | Fuel Meter Recordkeeping | Daily, Monthly |
| NSPS Requirements | 46.7 | <u>40 CFR Part 60, Subpart J</u> Fuel gas shall not contain $H_2S$ in excess of excess of 0.10 gr/scf, on a 3-hour rolling average[1] | | $H_2S$ Sampling | See Condition 46.7 |
| | | <u>40 CFR Part 60, Subpart Ja</u> Fuel gas shall not contain $H_2S$ in excess of: 162 ppmv, on a 3-hour rolling average, and 60 ppmv, on a 365-day rolling average | | | |
| | | See 40 CFR Part 60 Subpart A (Condition 30) | | See 40 CFR Part 60 Subpart A (Condition 30) | |

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
Renewed: September 1, 2022

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 299 |

| Parameter | Permit Condition Number | Limitation | Emission Factor | Monitoring | |
|---|---|---|---|---|---|
| | | | | Method | Interval |
| Opacity Requirements | 46.8 | Not to exceed 20%, except as provided for below | | Fuel Restriction | Only Gaseous Fuel is Used |
| | | Not to exceed 30%, for a period or periods aggregating more than six (6) minutes in any 60 consecutive minutes | | | |
| Restrictions on Relaxing Emission Limitations | 46.9 | See Condition 46.9 | | See Condition 46.9 | |

[1]The preamble to the final rule for NSPS Subpart Ja indicates that the NSPS J limit is equivalent to 162 ppmv $H_2S$ averaged over a 3-hour period (See 73 FR 35852).

46.1    VOC emissions from tank cleaning and/or degassing shall not exceed 17.2 tons year. (As provided for under the provisions of Section I, Condition 1.3 and Colorado Regulation No. 3, Part C, Sections I.A.7 and III.B.7 based on requested emissions indicated on the APEN submitted on August 27, 2020.) **This limit includes emissions from cleaning and/or degassing of tanks located throughout the refinery.** This permit includes requirements for the Plant 2 tanks, while the Plants 1 and 3 permit (96OPAD120) includes requirements for the Plants 1 and 3 tanks.

Compliance with the VOC emission limitation shall be monitored as follows:

46.1.1    Tank degassing means the process of removing volatile organic compound vapors from a storage tank.

46.1.2    Emissions from tank cleaning and degassing shall be calculated for each tank cleaning and/or degassing event using tank specific contents, dimensions and type, as well as the duration of the event in the most recent version of TankESP. Emissions shall be estimated for each step, as applicable for each tank cleaning and/or degassing event.

- Roof Landings (standing idle losses) – vapors to be routed to the thermal oxidizer

- Vapor Space Purge - vapors to be routed to the thermal oxidizer

- Stock Removal (continued forced ventilation) – vapors to be routed to the thermal oxidizer

- Diesel Flush (continued forced ventilation) – vapors to be routed to the thermal oxidizer

- Sludge Removal (if continued forced ventilation used) – uncontrolled vapors

A control efficiency of 95% may be applied to the calculated emissions in each step, except sludge removal, provided the thermal oxidizer is operated in accordance with the requirements in Condition 46.4

---

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 300 |

Records shall be retained for each tank cleaning and/or degassing event indicating tank contents, dimensions and type, which of the above steps were conducted during the event, the duration of each step and the total duration of the event.

46.1.3    Emissions from combustion of propane/LPG in the thermal oxidizer for each tank cleaning and/or degassing event shall be calculated using an emission factor of 0.011 lb/MMBtu (from AP-Section 1.5 (dated 7/08), Table 1.5-1, converted to lb/MMBtu based on a propane heat content of 91.5 MMBtu/1000 gal per footnote a) and the quantity of propane/LPG consumption as required by Condition 46.6.1.

Emissions from tank cleaning and/or degassing vapors (Condition 46.1.2) and combustion of propane/LPG in the thermal oxidizer (Condition 46.1.3) shall be summed together for total VOC emissions from each tank cleaning and/or degassing event. Total VOC emissions from each tank cleaning and/or degassing event for the month conducted under the provisions of this permit, as well as any tank cleaning and/or degassing events conducted under the provisions of Suncor's Plants 1 and 3 permit (96OPAD120) shall be summed together to determine the total monthly emissions. Total monthly emissions shall be calculated by the end of the subsequent month and used in a rolling twelve month total to monitor compliance with the annual limitation. Each month a new twelve month rolling total shall be calculated using the previous twelve months data.

For purposes of APEN reporting, only monthly emissions from tank cleaning and/or degassing events conducted under the provisions of this permit shall be summed together to determine annual (calendar year) emissions for reporting on AIRS pt 315.

46.2    Emissions of air pollutants are subject to the following requirements:

46.2.1    $NO_X$ and CO emissions from the **thermal oxidizer** shall not exceed the limits listed in the above summary table. (As provided for under the provisions of Section I, Condition 1.3 and Colorado Regulation No. 3, Part C, Sections I.A.7 and III.B.7 based on requested emissions indicated on the APEN submitted on August 27, 2020.) **This limit includes emissions from tank cleaning and/or degassing of tanks located throughout the refinery.** This permit includes requirements for the Plant 2 tanks, while the Plants 1 and 3 permit (96OPAD120) includes requirements for the Plants 1 and 3 tanks.

Compliance with the annual limits shall be monitored as follows:

Emissions from each tank cleaning and/or degassing event shall be by calculated using the emission factors included in the above summary table (from AP-42, Section 1.5 (dated 7/08), Table 1.5-1 for propane, converted to lb/MMBtu based on a heat content of 91.5 MMBtu/$10^3$ gal) and the quantity of propane/LPG combusted during the event (as required by Condition 46.6.1) in the following equation:

Emissions (ton/mo) = [EF (lb/MMBtu) x propane combusted (MMBtu/mo)]/2000 lb/ton

| Operating Permit #95OPAD108 | First Issued: October 1, 2006 |
| | Renewed: September 1, 2022 |

Air Pollution Control Division                                              Suncor Energy (U.S.A.)
Colorado Operating Permit                              Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                      Page 301

Emissions from each tank cleaning and/or degassing event for the month conducted under the provisions of this permit, as well as any tank cleaning and/or degassing events conducted under the provisions of Suncor's Plants 1 and 3 permit (96OPAD120) shall be summed together to determine the total monthly emissions. Total monthly emissions shall be determined by the end of the subsequent month and used in a rolling twelve month total to monitor compliance with the annual limitations. Each month a new twelve month rolling total shall be calculated using the previous twelve months data.

For purposes of APEN reporting only monthly emissions from tank cleaning and/or degassing events conducted under the provisions of this permit shall be summed together to determine annual (calendar year) emissions for reporting on AIRS pt 315.

46.2.2     For APEN reporting and fee purposes, PM, $PM_{10}$ and $SO_2$ emissions from the **thermal oxidizer** shall be calculated monthly. Monthly emissions shall be summed to obtain calendar year emissions for APEN reporting purposes. Monthly emissions shall be calculated as follows:

46.2.2.1     PM and $PM_{10}$ emissions shall be calculated monthly using the emission factors included in the above summary table (from AP-42, Section 1.5 (dated 7/08), Table 1.5-1 for propane, converted to lb/MMBtu based on a heat content of 91.5 MMBtu/$10^3$ gal) and the monthly quantity of propane combusted for tank cleaning and/or degassing events conducted under the provisions of this permit (as required by Condition 46.6.3) in the equation in Condition 46.2.1.

46.2.2.2     Monthly emissions of $SO_2$ shall be determined by summing daily $SO_2$ emissions (as required by Condition 46.3) from tank cleaning and/or degassing events conducted under the provisions of this permit.

46.3     Sulfur dioxide emissions from the **thermal oxidizer** shall be included when evaluating compliance with the Colorado Regulation No. 1 emission limit set forth in Condition 23.1 of this permit.

Daily $SO_2$ emissions from the thermal oxidizer shall be calculated during each tank degassing and/or cleaning event conducted under the provisions of this permit using the following equations:

$SO_2$ from thermal oxidizer (lb/day) = $SO_2$ from degassing (lb/day) + $SO_2$ from propane/LPG combustion (lb/day)

$SO_2$ from degassing

$SO_2$ (lb/day) = [$H_2S$ concentration (ppm) x 385.3 scf/lb-mole x 64 lb $SO_2$/lb-mole $H_2S$ x degassing vapor flow to the thermal oxidizer (scf/day)]

Where:     $H_2S$ concentration = concentration in ppm from the most recent sample required by Condition 46.7.3

$SO_2$ from propane/LPG combustion

$SO_2$ (lb/day) = EF (lb/MMBtu) x daily propane/LPG combusted (MMBtu/day)

Operating Permit #95OPAD108                                      First Issued: October 1, 2006
                                                                 Renewed: September 1, 2022

Air Pollution Control Division                                        Suncor Energy (U.S.A.)
Colorado Operating Permit                              Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                    Page 302

Where:    EF = 1.97 x 10$^{-4}$ (from AP-42, Section 1.5 (dated 7/08), Table 1.5-2 converted to lb/MMBtu based on a
          heat content of 91.5 MMBtu/10$^3$ gal per footnote a, assumes sulfur content of propane = 0.2
          gr/100 scf)
          Propane/LPG combusted as required by Condition 46.6.1

46.4    Emissions from cleaning and/or degassing tanks shall at all times be routed through a closed vent
        system to a thermal oxidizer (TO), except during sludge removal (see Condition 46.1.2). The TO
        shall meet the following requirements:

    46.4.1    The TO shall have a design rate of no more than 20 million Btu per hour. The permittee
              shall maintain records of the following for any TO used for tank degassing:
              manufacturer, model. serial number, design rate and contractor operating the unit.

    46.4.2    For purposes of assuring compliance with the annual VOC emission limitation in
              Condition 46.1, the TO shall be operated such that the inlet temperature shall not be
              less than 1400 °F. The temperature shall be monitored using a continuous temperature
              monitoring device. If the temperature monitoring device is not equipped with a
              continuous recorder, the temperature shall be monitored and recorded at least once per
              clock hour during operation. Records of hourly recorded temperatures or output from
              the continuous recording device shall be maintained for each tank cleaning and/or
              degassing event and made available to the Division upon request.

46.5    Cleaning and Degassing of tanks is subject to RACT requirements for VOC. (Colorado Regulation
        No. 3, Part B, Section III.D.2.a). RACT has been determined to be use of a TO meeting the
        requirements in Condition 46.4 and the emission limitations in Condition 46.1.

46.6    Propane/LPG consumption for the TO shall not exceed 38,400,000,000 Btu per year. (As provided
        for under the provisions of Section I, Condition 1.3 and Colorado Regulation No. 3, Part C,
        Sections I.A.7 and III.B.7 based on requested throughput indicated on the APEN submitted on
        August 27, 2020.) **This limit includes emissions from cleaning and/or degassing of tanks
        located throughout the refinery.** This permit includes requirements for the Plant 2 tanks, while
        the Plants 1 and 3 permit (96OPAD120) includes requirements for the Plants 1 and 3 tanks.

        Compliance with the annual limit shall be monitored as follows:

    46.6.1    Consumption of propane/LPG shall be recorded daily during each tank cleaning and/or
              degassing event using the fuel meter and/or other necessary records. The Btu content
              of the propane/LPG shall be presumed to be 91.5 MMBtu/1000 gallons. Daily
              quantities of propane/LPG consumed for the tank degassing and/or cleaning event shall
              be summed to determine total propane/LPG consumed for the event.

    46.6.2    Propane/LPG consumption from each tank cleaning and/or degassing event for the
              month conducted under the provisions of this permit, as well as any tank cleaning
              and/or degassing events conducted under the provisions of Suncor's Plants 1 and 3
              permit (96OPAD120) shall be summed together to determine the total monthly quantity
              of propane/LPG consumed. Monthly quantities of total propane/LPG consumption

Operating Permit #95OPAD108                                          First Issued:  October 1, 2006
                                                                     Renewed: September 1, 2022

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 303 |

shall be used in a rolling twelve month total to monitor compliance with the annual limitation. Each month a new twelve month rolling total shall be calculated using the previous twelve months data.

46.6.3    For purposes of APEN reporting, only monthly propane/LPG combustion from tank cleaning and/or degassing events conducted under the provisions of this permit shall be summed together to determine annual (calendar year) propane LPG usage for reporting on AIRS pt 315.

46.7    The TO is subject to NSPS requirements as follows:

46.7.1    A TO that commenced construction, reconstruction or modification prior to May 14, 2007, is considered a fuel gas burning device and is subject to the requirements in 40 CFR Part 60, Subpart J, specifically, the fuel gas limitation set forth in Condition 31.3. In lieu of installing the continuous $H_2S$ monitoring system required by Condition 31.6.3 compliance with the fuel gas limitation shall be monitored in accordance with the alternative monitoring plan set forth in Condition 46.7.3 (approved by EPA in a December 17, 2013 letter).

46.7.2    A TO that commenced construction, reconstruction or modification on or after May 14, 2007, is considered a fuel gas burning device and is subject to the requirements in 40 CFR Part 60, Subpart Ja, specifically, the fuel gas limitations set forth in Condition 32.2.1. In lieu installing the continuous $H_2S$ monitoring system required by Condition 32.16, compliance with the fuel gas limitation shall be monitored in accordance with the alternative monitoring plan set forth in Condition 46.7.3 (approved by EPA in a December 17, 2013 letter).

46.7.3    Compliance with the fuel gas limitations in Conditions 46.7.1 and 46.7.2, shall be monitored as follows:

46.7.3.1    The permittee shall use either $H_2S$ colorimetric tube testing or a portable $H_2S$ meter to determine the concentration of $H_2S$ in gases entering each mobile (portable) thermal oxidizer unit (the "Grab Sample"). Each Grab Sample shall be taken at the inlet to each mobile (portable) thermal oxidizer unit.

46.7.3.2    For each discrete degassing event, the permittee shall perform a Grab Sample within 30 minutes of routing tank vapors to each mobile (portable) thermal oxidizer unit (the "Initial Grab Sample").

46.7.3.3    If the initial Grab Sample indicates an $H_2S$ concentration equal to or less than 162 ppmv, then the inlet gas stream is deemed to meet the $H_2S$ limit of NSPS Subparts J and Ja (Conditions 46.7.1 and 46.7.2) and no further monitoring is required for that discrete degassing event.

46.7.3.4    If the initial Grab Sample indicates an $H_2S$ concentration more than 162 ppmv, then for that discrete degassing event, the inlet gas stream is

| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
|---|---|
| | Renewed: September 1, 2022 |

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 304 |

deemed to have exceeded the 230 milligrams per dry standard cubic meter (0.10 grains per dry standard cubic feet) limit of 40 CFR § 60.104(a)(1)) (Condition 46.7.1) and the 162 ppmv limit of 40 CFR § 60.102a(g)(1)(ii) (Condition 46.7.2). Alternatively, the permittee may demonstrate compliance with the $H_2S$ limits in 40 CFR §§ 60.104(a)(1) and 60.102a(g)(1)(ii) (Conditions 46.7.1 and 46.7.2) by averaging three Grab Samples: (i) the initial Grab Sample; (ii) a Grab Sample taken between 61 and 120 minutes after startup of the mobile (portable) thermal oxidizer unit; and (iii) a Grab Sample take between 121 minutes and 180 minutes after startup of the mobile (portable) thermal oxidizer unit. The permittee can use this alternative method of demonstrating compliance only if it has three valid Grab Samples taken within the specified time periods.

46.7.3.5    The permittee shall record the results of each Grab Sample and keep the records of all Grab Samples for at least five years.

46.7.3.6    If the sampling required under this Condition 46.7.3 for a discrete degassing event indicates an exceedance of the $H_2S$ fuel gas limit in Conditions 46.7.1 or 46.7.2 it shall be reported as an excess emission in the reports required by 40 CFR § 60.7(c).

46.7.4    The TO is subject to the NSPS general provisions in 40 CFR Part 60, Subpart A as set forth in Condition 30 of this permit.

46.8    The TO is subject to the opacity limits set forth in Conditions 20.1 and 20.2 of this permit. In the absence of credible evidence to the contrary, compliance with the opacity limits is presumed provided only vapors from tank degassing and/or propane/LPG are combusted and/or oxidized in this unit. Records shall be maintained to verify that only vapors from tank degassing and/or propane/LPG have been combusted and/or oxidized in this unit.

46.9    The requirements of Colorado Regulation No. 3, Part D shall apply to tank cleanings and/or degassing at such time that any stationary source or modification becomes a major stationary source or major modification solely by virtue of a relaxation in any enforceable limitation that was established after August 7, 1980, on the capacity of the source or modification to otherwise emit a pollutant such as a restriction on hours of operation (Colorado Regulation No. 3, Part D, Section V.A.7.b).

With respect to this Condition 46.9, Colorado Regulation No. 3, Part D requirements may apply to future modifications if the emission limitations are modified to equal or exceed the following thresholds:

| Pollutant | Program | Emissions (tons/yr) | | Comment/ Explanation |
|---|---|---|---|---|
| | | Threshold | Current Permit Limit | |
| VOC | NANSR | 25[1] | 17.2 | |

[1]Indicates the NANSR significance level for a serious ozone nonattainment area. The area was classified as a serious ozone nonattainment area on January 27, 2020.

---

Operating Permit #95OPAD108

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 305 |

## 47.    Miscellaneous Process Vents – MPVs

| Parameter | Permit Condition Number | Limitation | Compliance Emission Factor | Monitoring |  |
|---|---|---|---|---|---|
|  |  |  |  | Method | Interval |
| MACT | 47.1 | Group 1 MPVs shall be routed to a flare that meets the requirements in § 63.670 |  | See 40 CFR Part 63 Subpart CC (Condition 39) | |
|  |  | Maintenance Vents: Prior to venting to atmosphere, maintenance vents shall meet one of the following: Vapor LEL < 10% If vapor LEL cannot be measured, equipment pressure reduce to 5 psig or less Equipment VOC content < 72 pounds For equipment containing pyrophoric catalyst: vapor LEL <20%, except for one event per year not to exceed 35% |  |  | |

Group 1 MPVs are routed to a flare that meets the requirements in § 63.670. For maintenance vents, prior to venting to atmosphere process liquids are removed or equipment is depressured to a control device, fuel gas system or back to the process until one of the conditions in 63.643(c)(1) (Condition 40.14.1) are met. Emissions from MPVs emitted to atmosphere are below the APEN de minimis level.

Miscellaneous process vents are defined in 40 CFR Part 63 Subpart CC §63.641 and include maintenance vents. Process vents can be designated as maintenance vents if the vent is only used as a result of startup, shutdown, maintenance, or inspection of equipment where equipment is emptied, depressurized, degassed or placed into service.

47.1    Miscellaneous process vents are subject to the requirements in 40 CFR Part 63 Subpart CC as set forth in Condition 40 of this permit.

| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
|---|---|
|  | Renewed: September 1, 2022 |

Air Pollution Control Division                                         Suncor Energy (U.S.A.)
Colorado Operating Permit                           Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                              Page 306

**48.    Reasonably Available Control Technology for Combustion Equipment in the 8-Hour Ozone Control Area: Combustion Process Adjustment Requirements, Colorado Regulation No. 7, Part E, Sections II.A.6 and II.A.7.f**

Note that the language below is from Colorado Regulation No. 7, adopted by the Colorado Air Quality Control Commissions (AQCC) on December 18, 2020 (effective February 14, 2021). However, if revisions to Colorado Regulation No. 7, Part E, Section II.A are published at a later date, the owner or operator is subject to the requirements contained in the revised version of Section II.A.

**48.1    Combustion Process Adjustment Requirements** (Regulation No. 7, Part E, Section II.A.6)

48.1.1    Applicability (Section II.A.6.a)

48.1.1.1    As of January 1, 2017, this Section II.A.6. applies to boilers, duct burners, process heaters, stationary combustion turbines, and stationary reciprocating internal combustion engines with uncontrolled actual emissions of NOx equal to or greater than five (5) tons per year that existed at major sources of NOx (greater than or equal to 100 tpy NOx) as of June 3, 2016. (Section II.A.6.a.(i))

48.1.1.2    As of May 1, 2020, this Section II.A.6. applies to boilers, duct burners, process heaters, stationary combustion turbines, stationary reciprocating internal combustion engines, dryers, furnaces, and ceramic kilns with uncontrolled actual emissions of NOx equal to or greater than five (5) tons per year that existed at major sources of NOx (greater than or equal to 50 tpy NOx) as of January 27, 2020, that is not already subject as provided under Section II.A.6.a.(i).II.A.6.b. (Section II.A.6.a.(ii))

Note that the emission threshold is based on calendar year actual emissions. Since only boilers, process heaters and engines are located at this facility, only the requirements related to that equipment has been included in the permit.

48.1.2    Combustion process adjustment (Section II.A.6.b)

48.1.2.1    When burning the fuel that provides the majority of the heat input since the last combustion process adjustment and when operating at a firing rate typical of normal operation, the owner or operator must conduct the following inspections and adjustments of boilers and process heaters, as applicable: (Section II.A.6.b.(i))

a.   Inspect the burner and combustion controls and clean or replace components as necessary. (Section II.A.6.b.(i)(A))

b.   Inspect the flame pattern and adjust the burner or combustion controls as necessary to optimize the flame pattern. (Section II.A.6.b.(i)(B))

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                                Renewed: September 1, 2022

Air Pollution Control Division                                          Suncor Energy (U.S.A.)
Colorado Operating Permit                               Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                   Page 307

    c.  Inspect the system controlling the air-to-fuel ratio and ensure that it is correctly calibrated and functioning properly. (Section II.A.6.b.(i)(C))

    d.  Measure the concentration in the effluent stream of carbon monoxide and nitrogen oxide in ppm, by volume, before and after the adjustments in Sections II.A.6.b.(i)(A) through (C). Measurements may be taken using a portable analyzer. (Section II.A.6.b.(i)(D))

48.1.2.2    The owner or operator of a stationary internal combustion engine must conduct the following inspections and adjustments, as applicable: (Section II.A.6.b.(iv))

    a.  Change oil and filters as necessary. (Section II.A.6.b.(iv)(A))

    b.  Inspect air cleaners, fuel filters, hoses, and belts and clean or replace as necessary. (Section II.A.6.b.(iv)(B))

    c.  Inspect spark plugs and replace as necessary. (Section II.A.6.b.(iv)(C))

48.1.2.3    The owner or operator must operate and maintain the boiler, duct burner, process heater, stationary combustion turbine, stationary internal combustion engine, dryer, furnace, or ceramic kiln consistent with manufacturer's specifications, if available, or good engineering and maintenance practices. (Section II.A.6.b.(vii))

48.1.2.4    Frequency (Section II.A.6.b.(viii))

    a.  The owner or operator of boilers, duct burners, process heaters, stationary combustion turbines, and stationary reciprocating internal combustion engines with uncontrolled actual emissions of NOx equal to or greater than five (5) tons per year that existed at major sources of NOx (greater than or equal to 100 tpy NOx) as of June 3, 2016, must conduct the initial combustion process adjustment by April 1, 2017. An owner or operator may rely on a combustion process adjustment conducted in accordance with applicable requirements and schedule of a New Source Performance Standard in 40 CFR Part 60 (November 17, 2016) or National Emission Standard for Hazardous Air Pollutants in 40 CFR Part 63 (November 17, 2016) to satisfy the requirement to conduct an initial combustion process adjustment by April 1, 2017. (Section II.A.6.b.(viii)(A))

    b.  The owner or operator of boilers, duct burners, process heaters, stationary combustion turbines, stationary reciprocating internal combustion engines, dryers, furnaces, and ceramic kilns with uncontrolled actual emissions of NOx equal to or greater than five (5) tons per year that existed at major sources of NOx (greater than or equal to 50 tpy NOx) as of Janiuary 27, 2020, must conduct the initial combustion process adjustment by May 1, 2020. An owner or

Operating Permit #95OPAD108                                  First Issued:  October 1, 2006
                                                              Renewed: September 1, 2022

Air Pollution Control Division                                Suncor Energy (U.S.A.)
Colorado Operating Permit                    Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                      Page 308

operator may rely on a combustion process adjustment conducted in accordance with applicable requirements and schedule of a New Source Performance Standard in 40 CFR Part 60 (December 19, 2019) or National Emission Standard for Hazardous Air Pollutants in 40 CFR Part 63 (December 19, 2019) to satisfy the requirement to conduct an initial combustion process adjustment by May 1, 2020. (Section II.A.6.b.(viii)(B))

    c.   The owner or operator must conduct subsequent combustion process adjustments at least once every twelve (12) months after the initial combustion adjustment, or on the applicable schedule according to Sections II.A.6.c.(i). or II.A.6.c.(ii). (Section II.A.6.b.(viii)(B))

48.1.3    As an alternative to the requirements described in Sections II.A.6.b.(i) through II.A.6.b.(viii) (Section II.A.6.c):

    48.1.3.1    The owner or operator may conduct the combustion process adjustment according to the manufacturer recommended procedures and schedule; (Section II.A.6.c.(i)); or

    48.1.3.2    The owner or operator of combustion equipment that is subject to and required to conduct a periodic tune-up or combustion adjustment by the applicable requirements of a New Source Performance Standard in 40 CFR Part 60 (December 19, 2019) or National Emission Standard for Hazardous Air Pollutants in 40 CFR Part 63 (December 19, 2019) may conduct tune-ups or adjustments according to the schedule and procedures of the applicable requirements of 40 CFR Part 60 (December 19, 2019) or 40 CFR Part 63 (December 19, 2019). (Section II.A.6.c.(ii))

48.2   **Recordkeeping** (Regulation No. 7, Part E, Section II.A.7)

The following records must be kept for a period of five years and made available to the Division upon request (Section II.A.7):

48.2.1    For stationary combustion equipment subject to the **combustion process adjustment requirements** in Section II.A.6., the following recordkeeping requirements apply (Section II.A.7.f):

    48.2.1.1    The owner or operator must create a record once every calendar year identifying the combustion equipment at the source subject to Section II.A. and including for each combustion equipment (Section II.A.7.f .(i)):

        a.   The date of the adjustment (Section II.A.7.f .(i)(A));

        b.   Whether the combustion process adjustment under Sections II.A.6.b.(i) through II.A.6.b.(vi) was followed, and what procedures were performed (Section II.A.7.f .(i)(B));

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 309 |

c. Whether a combustion process adjustment under Sections II.A.6.c.(i). and II.A.6.c.(ii). was followed, what procedures were performed, and what New Source Performance or National Emission Standard for Hazardous Air Pollutants applied, if any; (Section II.A.7.f.(i)(C)); and

d. A description of any corrective action taken. (Section II.A.7.f.(i)(D))

e. If the owner or operator conducts the combustion process adjustment according to the manufacturer recommended procedures and schedule and the manufacturer specifies a combustion process adjustment on an operation time schedule, the hours of operation. (Section II.A.7.f.(i)(E))

48.2.1.2    The owner or operator must retain manufacturer recommended procedures, specifications, and maintenance schedule if utilized under Section II.A.6.c.(i). for the life of the equipment. (Section II.A.7.f .(ii))

48.2.1.3    As an alternative to the requirements described in Section II.A.7.f.(i), the owner or operator may comply with applicable recordkeeping requirements related to combustion process adjustments conducted according to a New Source Performance Standard in 40 CFR Part 60 (November 17, 2016) or National Emission Standard for Hazardous Air Pollutants in 40 CFR Part 63 (November 17, 2016). (Section II.A.7.f .(iii))

## 49.    Compliance Assurance Monitoring (CAM) Requirements

The Compliance Assurance Monitoring (CAM) requirements in 40 CFR Part 64, as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV, apply to the FCCU Regenerator, Sulfur Recovery Unit (P015), Truck Loading Dock (F024), Refinery Flare (C005) and Railcar Loading Dock (F019) as indicated in Conditions 2.19, 5.16, 7.12, 8.12 and 9.16 as follows:

49.1    For the FCCU Reactor-Regenerator (P004), the permittee shall follow the CAM Plan provided in Appendix G of this permit. Excursions for purposes of reporting are as follows:

49.1.1    Except as provided for in Condition 49.1.2, any 3-hour period in which the average opacity exceeds 20%, except as provided for below:.

49.1.2    During periods of startup, shutdown and hot standy, a 3-hour period in which the opacity exceeds 20%, shall not be an excursion provided the provisions in Condition 41.5.5.2 (maintain the inlet velocity to the primary internal cyclones of the catalytic cracking unit catalyst regenerator at or above 20 feet per second) are met. Records shall be kept for those periods during startup, shutdown and hot standby when the 3-hour average opacity exceeds 20% but the inlet velocity is a at or above 20 feet per second.

49.1.3    Hot standby is defined in Condition 41.5.5.3, as periods when the catalytic cracking unit is not receiving fresh or recycled feed oil but the catalytic cracking unit is maintained at elevated temperatures, typically using torch oil in the catalyst regenerator

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 310 |

and recirculating catalyst, to prevent a complete shutdown and cold restart of the catalytic cracking unit. (63.1579)

49.2    For the Sulfur Recovery Unit (P015) the permittee shall follow the CAM Plan provided in Appendix I of this permit. Excursions for purposes of reporting are as follows:

    49.2.1    Except as provided for in Condition 49.2.3, any daily average combustion zone temperature less than 1,416 °F.

    49.2.2    Except as provided for in Condition 49.2.4, any daily average $O_2$ concentration less than 0.846%.

    49.2.3    During periods of startup and shutdown, a daily average combustion zone temperature less than 1,416 °F is not an excursion, provided the hourly average combustion zone temperature is at or above 1,200 °F.

    49.2.4    During periods of startup and shutdown, a daily average $O_2$ concentration less than 0.846% $O_2$ is not an excursion, provided the hourly average $O_2$ concentration is at or above 2%.

49.3    For the Truck Loading Dock (F024) the permittee shall follow the CAM Plan provided in Appendix J of this permit. Excursions for purposes of reporting are as follows:

    49.3.1    Any 12-hour period during which gasoline and/or distillate is loaded and the combustion zone temperature is less than 500 °F on a 12-hour rolling average.

    49.3.2    Following completion of the first compliance test required by Condition 7.11, any 6-hour period during which gasoline and/or distillate is loaded and the combustion zone temperature is less than the value determined from the test.

The 12 or 6-hour averages are calculated in accordance with the CAM plan in Appendix J.

49.4    For the Refinery Flare (C005), the permittee shall follow the CAM Plan provided in Appendix J of this permit. Excursions for purposes of reporting are defined as follows:

    49.4.1    Any 15-minute block period during which there was at least one minute when waste gas is routed to the flare and no pilot flame is present, or

    49.4.2    Any 15-minute period in which waste gas is routed to the flare for at least 15 minutes and the net heating value of flare combustion zone gas is less than 270 Btu/scf.

49.5    For the Railcar Loading Dock (F019) the permittee shall follow the CAM Plan provided in Appendix J of this permit. Excursions for purposes of reporting are defined as any period when vapors from LPG and distillate loading are routed to the flare and:

    49.5.1    The presence of a pilot flame is not detected, or

Air Pollution Control Division                                          Suncor Energy (U.S.A.)
Colorado Operating Permit                              Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                   Page 311

49.5.2     The pilot flame monitoring device is inoperable.

49.6     Excursions shall be reported as required by Section IV, Conditions 21 and 22.d of this permit.

49.7     Operation of Approved Monitoring

49.7.1     At all times, the owner or operator shall maintain the monitoring, including but not limited to, maintaining necessary parts for routine repairs of the monitoring equipment (40 CFR Part 64 §64.7(b), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.7.2     Except for, as applicable, monitoring malfunctions, associated repairs, and required quality assurance or control activities (including, as applicable, calibration checks and required zero and span adjustments), the owner or operator shall conduct all monitoring in continuous operation (or shall collect data at all required intervals) at all times that the pollutant-specific emissions unit is operating.  Data recorded during monitoring malfunctions, associated repairs, and required quality assurance or control activities shall not be used for purposes of these CAM requirements, including data averages and calculations, or fulfilling a minimum data availability requirement, if applicable.  The owner or operator shall use all the data collected during all other periods in assessing the operation of the control device and associated control system.  A monitoring malfunction is any sudden, infrequent, not reasonably preventable failure of the monitoring to provide valid data.  Monitoring failures that are caused in part by poor maintenance or careless operation are not malfunctions (40 CFR Part 64 §64.7(c), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.7.3     Response to excursions or exceedances

49.7.3.1     Upon detecting an excursion or exceedance, the owner or operator shall restore operation of the pollutant-specific emissions unit (including the control device and associated capture system) to its normal or usual manner of operation as expeditiously as practicable in accordance with good air pollution control practices for minimizing emissions.  The response shall include minimizing the period of any startup, shutdown or malfunction and taking any necessary corrective actions to restore normal operation and prevent the likely recurrence of the cause of an excursion or exceedance (other than those caused by excused startup or shutdown conditions).  Such actions may include initial inspection and evaluation, recording that operations returned to normal without operator action (such as through response by a computerized distribution control system), or any necessary follow-up actions to return operation to within the indicator range, designated condition, or below the applicable emission limitation or standard, as applicable (40 CFR Part 64 §64.7(d)(1), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.7.3.2     Determination of whether the owner of operator has used acceptable

Operating Permit #95OPAD108                                          First Issued:  October 1, 2006
                                                                     Renewed: September 1, 2022

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 312 |

procedures in response to an excursion or exceedance will be based on information available, which may include but is not limited to, monitoring results, review of operation and maintenance procedures and records, and inspection of the control device, associated capture system, and the process (40 CFR Part 64 §64.7(d)(2), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.7.4    After approval of the monitoring required under the CAM requirements, if the owner or operator identifies a failure to achieve compliance with an emission limitation or standard for which the approved monitoring did not provide an indication of an excursion or exceedance while providing valid data, or the results of compliance or performance testing document a need to modify the existing indicator ranges or designated conditions, the owner or operator shall promptly notify the Division and, if necessary submit a proposed modification for this permit to address the necessary monitoring changes.  Such a modification may include, but is not limited to, reestablishing indicator ranges or designated conditions, modifying the frequency of conducting monitoring and collecting data, or the monitoring of additional parameters (40 CFR Part 64 §64.7(e), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8    Quality Improvement Plan (QIP) Requirements

49.8.1    Based on the results of a determination made under the provisions of Condition 49.7.3.2, the Division may require the owner or operator to develop and implement a QIP (40 CFR Part 64 §64.8(a), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.2    The owner or operator shall maintain a written QIP, if required, and have it available for inspection (40 CFR Part 64 §64.8(b)(1), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.3    The QIP initially shall include procedures for evaluating the control performance problems and, based on the results of the evaluation procedures, the owner or operator shall modify the plan to include procedures for conducting one or more of the following actions, as appropriate:

49.8.3.1    Improved preventative maintenance practices (40 CFR Part 64 §64.8(b)(2)(i), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.3.2    Process operation changes (40 CFR Part 64 §64.8(b)(2)(ii), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.3.3    Appropriate improvements to control methods (40 CFR Part 64 §64.8(b)(2)(iii), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

Air Pollution Control Division                                          Suncor Energy (U.S.A.)
Colorado Operating Permit                              Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                               Page 313

49.8.3.4    Other steps appropriate to correct control performance (40 CFR Part 64 §64.8(b)(2)(iv), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.3.5    More frequent or improved monitoring (only in conjunction with one or more steps under Conditions 49.8.3.1 through 49.8.3.4 above) (40 CFR Part 64 §64.8(b)(2)(v), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.4    If a QIP is required, the owner or operator shall develop and implement a QIP as expeditiously as practicable and shall notify the Division if the period for completing the improvements contained in the QIP exceeds 180 days from the date on which the need to implement the QIP was determined (40 CFR Part 64 §64.8(c), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.5    Following implementation of a QIP, upon any subsequent determination pursuant to Condition 49.7.3.2, the Division or the U.S. EPA may require that an owner or operator make reasonable changes to the QIP if the QIP is found to have:

49.8.5.1    Failed to address the cause of the control device performance problems (40 CFR Part 64 §64.8(d)(1), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV); or

49.8.5.2    Failed to provide adequate procedures for correcting control device performance problems as expeditiously as practicable in accordance with good air pollution control practices for minimizing emissions (40 CFR Part 64 §64.8(d)(2), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.8.6    Implementation of a QIP shall not excuse the owner or operator of a source from compliance with any existing emission limitation or standard, or any existing monitoring, testing, reporting or recordkeeping requirement that may apply under federal, state, or local law, or any other applicable requirements under the federal clean air act (40 CFR Part 64 §64.8(e), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.9    Reporting and Recordkeeping Requirements

49.9.1    Reporting Requirements: The reports required by Section IV, Condition 22.d, shall contain the information specified in Appendix B of the permit and the following information, as applicable:

49.9.1.1    Summary information on the number, duration and cause (including unknown cause, if applicable), for monitor downtime incidents (other than downtime associated with zero and span or other daily calibration checks, if applicable) ((40 CFR Part 64 §64.9(a)(2)(ii), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV); and

Operating Permit #95OPAD108                                        First Issued:  October 1, 2006
                                                                   Renewed: September 1, 2022

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 314 |

49.9.1.2     The owner or operator shall submit, if necessary, a description of the actions taken to implement a QIP during the reporting period as specified in Condition 49.8 of this permit. Upon completion of a QIP, the owner or operator shall include in the next summary report documentation that the implementation of the plan has been completed and reduced the likelihood of similar levels of excursions or exceedances occurring (40 CFR Part 64 §64.9(a)(2)(iii), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.9.2     <u>General Recordkeeping Requirements:</u> In addition to the recordkeeping requirements in Section IV, Condition 22.a through c.

49.9.2.1     The owner or operator shall maintain records of any written QIP required pursuant to Condition 49.8 and any activities undertaken to implement a QIP, and any supporting information required to be maintained under these CAM requirements (such as data used to document the adequacy of monitoring, or records of monitoring maintenance or corrective actions) (40 CFR Part 64 §64.9(b)(1), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.9.2.2     Instead of paper records, the owner or operator may maintain records on alternative media, such as microfilm, computer files, magnetic tape disks, or microfiche, provided that the use of such alternative media allows for expeditious inspection and review, and does not conflict with other applicable recordkeeping requirements (40 CFR Part 64 §64.9(b)(2), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.10   Savings Provisions

49.10.1     Nothing in these CAM requirements shall excuse the owner or operator of a source from compliance with any existing emission limitation or standard, or any existing monitoring, testing, reporting or recordkeeping requirement that may apply under federal, state, or local law, or any other applicable requirements under the federal clean air act. These CAM requirements shall not be used to justify the approval of monitoring less stringent than the monitoring which is required under separate legal authority and are not intended to establish minimum requirements for the purposes of determining the monitoring to be imposed under separate authority under the federal clean air act, including monitoring in permits issued pursuant to title I of the federal clean air act. The purpose of the CAM requirements is to require, as part of the issuance of this Title V operating permit, improved or new monitoring at those emissions units where monitoring requirements do not exist or are inadequate to meet the requirements of CAM (40 CFR Part 64 §64.10(a)(1), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.10.2     Nothing in these CAM requirements shall restrict or abrogate the authority of the U.S. EPA or the Division to impose additional or more stringent monitoring, recordkeeping, testing or reporting requirements on any owner or operator of a source under any

| Operating Permit #95OPAD108 | First Issued: October 1, 2006 |
|---|---|
| | Renewed: September 1, 2022 |

provision of the federal clean air act, including but not limited to sections 114(a)(1) and 504(b), or state law, as applicable (40 CFR Part 64 §64.10(a)(2), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

49.10.3    Nothing in these CAM requirements shall restrict or abrogate the authority of the U.S. EPA or the Division to take any enforcement action under the federal clean air act for any violation of an applicable requirement or of any person to take action under section 304 of the federal clean air act (40 CFR Part 64 §64.10(a)(2), as adopted by reference in Colorado Regulation No. 3, Part C, Section XIV).

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 316 |

# SECTION III - Permit Shield

## Regulation No. 3, 5 CCR 1001-5, Part C, §§ I.A.4, V.D. & XIII.B; § 25-7-114.4(3)(a), C.R.S.

## 1.     Specific Non-Applicable Requirements

Based on the information available to the Division and supplied by the applicant, the following parameters and requirements have been specifically identified as non-applicable to the facility to which this permit has been issued. This shield does not protect the source from any violations that occurred prior to or at the time of permit issuance. In addition, this shield does not protect the source from any violations that occur as a result of any modification or reconstruction on which construction commenced prior to permit issuance.

| Emission Unit Description & Number | Applicable Requirement | Justification |
|---|---|---|
| **Colorado Regulations** | | |
| Boilers B504 & B505 | Colorado Regulation No. 1, Section IV.B.1 & 2 | The boilers are less than 250 MMBtu/hr |
| | Colorado Regulation No. 6, Part B, Section II.D.1, 2 and 3 | Boilers are coal- or oil-fired and are not combustion turbines. |
| FCCU | Colorado Regulation No. 1, Section IV.B.1 and 2 | The FCCU has a capacity less than 20,000 bpd and the area is attainment/maintenance for CO. |
| Sulfur Recovery Unit (P009) | Colorado Regulation No. 1, Section III.A.1 | The sulfur recovery unit, including the tail gas incinerator, is not fuel-burning equipment (furnace, boiler, or other equipment burning fuel solely for the purpose of supplying heat). |
| | Colorado Regulation No. 1, Section IV | The sulfur recovery unit is not listed in Sections IV.B, C or D as requiring a CEMS. |
| Truck Loading Docks (F024) | Colorado Regulation No. 7, Part B, Section I.B | Only petroleum liquids are transferred through the truck docks. |
| Groups B, C, D, E, F & G Tanks | Colorado Regulation No. 7, Part B, Section II.A | These tanks do not store highly volatile organic compounds (true vapor pressure of materials stored is less than 570 torr (11. psia ) at 20º C). |
| Tank T046 | Colorado Regulation No. 7, Part B, Section IV.B.2.a.(i) | This tank stores materials with a true vapor less than or equal to 0.65 psia (at 20ºC) or a reid vapor pressure (RVP) less than or equal to 1.3 psia. |
| Groups B, C, D, E, F & G Tanks | Colorado Regulation No. 7, Part B, Section IV.B.3 | These tanks are not petroleum liquid storage tanks less than 40,000 gallons. |
| South (F015) & North (F016) Crude Unloading Fugitive Sources & Truck Loading Dock (F024) | Colorado Regulation No. 7, Part B, Sections IV.C.3 and IV.C.4.a | These facilities are not bulk plants and there is no railcar loading. |
| Groups C, D, F, G Tanks & Tanks T046, T047, T053 & T062 | Colorado Regulation No. 7, Part B, Section V | These tanks do not store crude oil. |
| **New Source Performance Standards** | | |

| | |
|---|---|
| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
| | Renewed: September 1, 2022 |

Air Pollution Control Division                                    Suncor Energy (U.S.A.)
Colorado Operating Permit                        Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                            Page 317

| Emission Unit Description & Number | Applicable Requirement | Justification |
|---|---|---|
| Sulfur Recovery Unit Claus Plant (P015) | 40 CFR Part 60 Subpart J, ONLY §§ 60.104(a)(2), 60.105(a)(5), (6), & (7), 60.105(e)(4), 60.106(f) & with respect to the Claus Plant, § 60.107(d), (f) & (g), as adopted by reference in Colorado Regulation No. 6, Part A.. | The Claus Plant has a design capacity of less than 20 long tons per day of sulfur feed. |
| Groups B, C, D & F Tanks &Tanks T012, T038, T028, T037 &T058. | 40 CFR Part 60, Subparts K, Ka and Kb, as adopted by reference in Colorado Regulation No. 6, Part A | The tanks were constructed prior to June 11, 1973. |
| Tank T046 | 40 CFR Part 60, Subpart Kb, as adopted by reference in Colorado Regulation No. 6, Part A | The maximum true vapor pressure of the material stored is less than 3.5 kPa (0.5 psia) and per 60.110b(b), the tank is not subject to the requirements. |
| Facility Wide | 40 CFR Part 60 Subpart GG, as adopted by reference in Colorado Regulation No. 6, Part A | There are no stationary gas turbines. |
| Facility Wide | 40 CFR Part 60 Subpart UU, as adopted by reference in Colorado Regulation No. 6, Part A | No tanks associated with Plant 2 store asphalt. |
| South (F015) & North (F016) Crude Unloading Fugitives, LPG Storage Truck and Rail Facility & Truck Loading Dock (F024) | 40 CFR Part 60 Subpart XX, as adopted by reference in Colorado Regulation No. 6, Part A | The south and north crude unloading are not bulk gasoline terminals since they do not load gasoline. The LPG facility is not a bulk gasoline terminal since the petroleum products are loaded into rail cars. The truck loading dock was constructed prior to December 17, 1980. |
| Drains for Crude Unit (P001), FCCU (P003), Naphtha Hydrotreater (P013), Reformer (P005), Poly Unit (P006), Sulfur Recovery Plant (P009), &Truck Loading Dock (F024) | 40 CFR Part 60 Subpart QQQ, as adopted by reference in Colorado Regulation No. 6, Part A | The drain systems for these process units were constructed prior to May 4, 1987. |
| Facility Wide | 40 CFR Part 60 Subpart NNN, as adopted by reference in Colorado Regulation No. 6, Part A | The refinery does not include any process units that produce any chemicals listed in 60.667. |
| Facility Wide | 40 CFR Part 60 Subpart RRR, as adopted by reference in Colorado Regulation No. 6, Part A | The refinery does not include any process units that produce any chemicals listed in 60.707. |
| **Maximum Achievable Control Technology (MACT)** | | |
| Facility Wide | 40 CFR Part 63 Subpart F, as adopted by reference in Colorado Regulation No. 8, Part E, Section III | The facility does not manufacture as a primary product nor use as a reactant or manufacture as a co-product any of the chemicals or hazardous air pollutants specified in 63.100. |
| Cooling Tower (P011) | 40 CFR Part 63 Subpart Q, as adopted by reference in Colorado Regulation No. 8, Part E, Section III | The cooling tower has not used chromium based chemicals on or after September 8, 1994, |
| South (F015) & North (F016) Crude Unloading Fugitives, LPG Storage Truck and Rail Facility & Truck Loading Dock (F024) | 40 CFR Part 63, Subpart CC, ONLY §§ 63.643, 644 and 645, as adopted by reference in Colorado Regulation No. 8, Part E, Section III | The requirements for miscellaneous process units only apply to process units. The loading/unloading racks and LPG tanks are not process units or part of a process unit. |

Operating Permit #95OPAD108                          First Issued:  October 1, 2006
                                                     Renewed: September 1, 2022

Air Pollution Control Division                                              Suncor Energy (U.S.A.)
Colorado Operating Permit                                    Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                      Page 318

| Emission Unit Description & Number | Applicable Requirement | Justification |
|---|---|---|
| Wastewater Treatment System | 40 CFR Part 63, Subpart CC, ONLY §§ 63.643, 644 and 645, as adopted by reference in Colorado Regulation No. 8, Part E, Section III | The definition of miscellaneous process vents in 63.641 exclude vents from wastewater collection and conveyance systems. |
| Facility Wide | 40 CFR Part 63, Subpart GGGGG – National Emission Standards for Hazardous Air Pollutants for Site Remediation | The facility's site remediation is required by an order authorized under RCRA section 7003. (40 CFR 63.7881(b)(3)) In the event that site remediation at the remainder of the refinery is no longer subject to a RCRA order, the provisions in 40 CFR Part 63 Subpart GGGGG apply. |

## 2.    General Conditions

Compliance with this Operating Permit shall be deemed compliance with all applicable requirements specifically identified in the permit and other requirements specifically identified in the permit as not applicable to the source. This permit shield shall not alter or affect the following:

2.1    The provisions of §§ 25-7-112 and 25-7-113, C.R.S., or § 303 of the federal act, concerning enforcement in cases of emergency;

2.2    The liability of an owner or operator of a source for any violation of applicable requirements prior to or at the time of permit issuance;

2.3    The applicable requirements of the federal Acid Rain Program, consistent with § 408(a) of the federal act;

2.4    The ability of the Air Pollution Control Division to obtain information from a source pursuant to § 25-7-111(2)(I), C.R.S., or the ability of the Administrator to obtain information pursuant to § 114 of the federal act;

2.5    The ability of the Air Pollution Control Division to reopen the Operating Permit for cause pursuant to Regulation No. 3, Part C, § XIII.

2.6    Sources are not shielded from terms and conditions that become applicable to the source subsequent to permit issuance.

## 3.    Streamlined Conditions

The following applicable requirements have been subsumed within this operating permit using the pertinent streamlining procedures approved by the U.S. EPA. For purposes of the permit shield, compliance with the listed permit conditions will serve as a compliance determination for purposes of the associated subsumed requirements.

Operating Permit #95OPAD108                                      First Issued:  October 1, 2006
                                                                 Renewed: September 1, 2022

Air Pollution Control Division                                           Suncor Energy (U.S.A.)
Colorado Operating Permit                                Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                    Page 319

| Permit Condition | Streamlined (Subsumed) Requirements |
|---|---|
| | **Colorado Regulations No. 1 and No. 6, Part B Requirements** |
| Section II, Condition 11.1.3 | Colorado Regulation No. 1, Section VI.B.4.b.(i) [SO$_2$ emissions not to exceed 0.8 lb/MMBtu] |
| Section II, Condition 21.1 | Colorado Regulation No. 6, Part B, Section II.C.2 [particulate matter emissions shall not exceed 0.5(FI)$^{-0.26}$ lbs/MMBtu] – **State-Only Requirement.** Note that these requirements applied to |
| Section II, Condition 23.1 | Colorado Regulation No. 6, Part B, Section IV.C.2 [SO$_2$ emissions from refineries shall not exceed 0.3 lb/barrel] – **State-Only Requirement** |
| Section II, Condition 30 | Regulation No. 6, Part B, Section I [general provisions] - **State-only Requirement** |
| | **Colorado Regulation No. 7, Part E, Section II.A Requirements** |
| Section II, Conditions 6.11.1 & 6.11.3 | Regulation No. 7, Part E, Sections II.4.a.(i) and II.A.5.a [NOx emissions not to exceed 0.2 lb/MMBtu from boiler burning gaseous fuel, comply with limit by October 1, 2021] |
| Section II, Conditions 6.11.5 thru 6.11.8 | Regulation No. 7, Part E, Sections II.A.5.c.(i)(A) and II.A.5.c.(i)(A)(2) [must use NO$_X$ CEMS, if NO$_X$ CEMS required for a Subpart under 40 CFR Part 60, use Subpart operating day, data averaging methodology, and data validation requirements] |
| Section II, Conditions 6.6 | Regulation No. 7, Part E, Section II.A.7.c [keep records of type and amount of fuel used] |
| Section II, Condition 6.11.9.1 | Regulation No. 7, Part E, Section II.A.7.d [calculate the annual capacity factor] |
| Section IV, Conditions 22.b & c | Regulation No. 7, Part E, Section II.A.7.e [maintain all records generated to comply with reporting requirements for 5 years] |
| Section II, Condition 45.4 | Regulation No. 7, Part E, Sections II.A.8.a and a(i) [sources using a CEMS shall submit quarterly or semi-annual excess emission reports] |
| | **EPA PSD Permit** |
| Section II, Condition 5.10 | EPA PSD permit, Condition 2(a), monitoring provisions only [grab samples]. |
| Section II, Condition 5.13.1 | EPA PSD permit, Condition 4(a), last sentence only [calculating SO$_2$ emissions from the Claus Plant when the CEMS in not operating]. |
| Section II, Conditions 23.1, 23.3, 31.6.3 & 32.16 | EPA PSD permit, Condition 4(b). [calculating SO$_2$ emissions from other locations within the refinery on a daily basis from grab samples] |
| Section IV, Conditions 22.b & c | EPA PSD permit, Condition 4(c) [record retention] |
| Section II, Condition 2.17 | EPA PSD permit, Condition 4(d) [installing a CEMS on the FCCU if capacity is increased above 8,500 bpd] |
| Section II, Conditions 31.6.3 & 32.16 | EPA PSD permit, Condition 4(e) [additional sampling when the Claus Plant is not operating for sulfur balance] |
| Section II, Condition 23.1 and 23.3 | EPA PSD permit Appendix A [Procedure to Determine the Sulfur Dioxide Emissions from the Refinery] |
| | **NSPS Requirements** |
| Section IV, Conditions 22.b & c | 40 CFR Part 60 Subpart Db §63.49b(o), as adopted by reference in Colorado Regulation No. 6, Part A [maintain records for two years] |
| | **Construction Permit Requirements** |
| Section II, Conditions 6.4 and 32.2.1 | Construction Permit 09AD1422, Condition 10 (H$_2$S content of fuel gas not to exceed 162 ppmvd, on a 3-hr average) |
| | **Consent Decree (SA-05-CA-0569, Entered November 23, 2005) Requirements** |

Air Pollution Control Division                                        Suncor Energy (U.S.A.)
Colorado Operating Permit                          Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                Page 320

| Permit Condition | Streamlined (Subsumed) Requirements |
|---|---|
| Section II, Condition 2.7.3 | Paragraph 98 and Construction Permit 90AD0961, Condition 21 (**with respect to CO ONLY** FCCU shall comply with NSPS J) |
| Section II, Conditions 8.9 and 32.9 & 32.16 | Paragraphs 231 and 235 (**with respect to the P2 main flare ONLY** accept NSPS J applicability and comply with NSPS J in accordance with one of the specified methods) |
| Section II, Conditions 8.10 and 30.2 | Paragraph 234 (**with respect to the P2 main flare ONLY** good air pollution control practices in 40 CFR Part A § 60.11(d)) |
| Section II, Conditions 8.9 and 32.5 thru 32.7 & 32.20 | Paragraph 242 (**with respect to the P2 main flare ONLY** root cause failure analysis) |

Operating Permit #95OPAD108                                First Issued:  October 1, 2006
                                                            Renewed: September 1, 2022

| | |
|---|---|
| Air Pollution Control Division | Suncor Energy (U.S.A.) |
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 321 |

## SECTION IV - General Permit Conditions

1/21/2020 version

**1.     Administrative Changes**

Regulation No. 3, 5 CCR 1001-5, Part A, § III.

The permittee shall submit an application for an administrative permit amendment to the Division for those permit changes that are described in Regulation No. 3, Part A, § I.B.1.  The permittee may immediately make the change upon submission of the application to the Division.

**2.     Certification Requirements**

Regulation No. 3, 5 CCR 1001-5, Part C, §§ III.B.9., V.C.16.a. & e. and V.C.17.

a.     Any application, report, document and compliance certification submitted to the Air Pollution Control Division pursuant to Regulation No. 3 or the Operating Permit shall contain a certification by a responsible official of the truth, accuracy and completeness of such form, report or certification stating that, based on information and belief formed after reasonable inquiry, the statements and information in the document are true, accurate and complete.

b.     All compliance certifications for terms and conditions in the Operating Permit shall be submitted to the Air Pollution Control Division at least annually unless a more frequent period is specified in the applicable requirement or by the Division in the Operating Permit.

c.     Compliance certifications shall contain:

(i)     the identification of each permit term and condition that is the basis of the certification;

(ii)     the compliance status of the source;

(iii)     whether compliance was continuous or intermittent;

(iv)     the method(s) used for determining the compliance status of the source, currently and over the reporting period; and

(v)     such other facts as the Air Pollution Control Division may require to determine the compliance status of the source.

d.     All compliance certifications shall be submitted to the Air Pollution Control Division and to the Environmental Protection Agency at the addresses listed in Appendix D of this Permit.

e.     If the permittee is required to develop and register a risk management plan pursuant to § 112(r) of the federal act, the permittee shall certify its compliance with that requirement; the Operating Permit shall not incorporate the contents of the risk management plan as a permit term or condition.

**3.     Common Provisions**

Common Provisions Regulation, 5 CCR 1001-2 §§ II.A., II.B., II.C., II.,E., II.F., II.I, and  II.J

a.     To Control Emissions Leaving Colorado

When emissions generated from sources in Colorado cross the State boundary line, such emissions shall not cause the air quality standards of the receiving State to be exceeded, provided reciprocal action is taken by the receiving State.

b.     Emission Monitoring Requirements

| | |
|---|---|
| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
| | Renewed: September 1, 2022 |

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 322 |

The Division may require owners or operators of stationary air pollution sources to install, maintain, and use instrumentation to monitor and record emission data as a basis for periodic reports to the Division.

c.      Performance Testing

The owner or operator of any air pollution source shall, upon request of the Division, conduct performance test(s) and furnish the Division a written report of the results of such test(s) in order to determine compliance with applicable emission control regulations.  Performance test(s) shall be conducted and the data reduced in accordance with the applicable reference test methods unless the Division:

(i)      specifies or approves, in specific cases, the use of a test method with minor changes in methodology;

(ii)     approves the use of an equivalent method;

(iii)    approves the use of an alternative method the results of which the Division has determined to be adequate for indicating where a specific source is in compliance; or

(iv)    waives the requirement for performance test(s) because the owner or operator of a source has demonstrated by other means to the Division's satisfaction that the affected facility is in compliance with the standard. Nothing in this paragraph shall be construed to abrogate the Commission's or Division's authority to require testing under the Colorado Revised Statutes, Title 25, Article 7 1973, and pursuant to regulations promulgated by the Commission.

Compliance test(s) shall be conducted under such conditions as the Division shall specify to the plant operator based on representative performance of the affected facility. The owner or operator shall make available to the Division such records as may be necessary to determine the conditions of the performance test(s). Operations during period of startup, shutdown, and malfunction shall not constitute representative conditions of performance test(s) unless otherwise specified in the applicable standard.

The owner or operator of an affected facility shall provide the Division thirty days prior notice of the performance test to afford the Division the opportunity to have an observer present. The Division may waive the thirty day notice requirement provided that arrangements satisfactory to the Division are made for earlier testing.

The owner or operator of an affected facility shall provide, or cause to be provided, performance testing facilities as follows:

(i)      Sampling ports adequate for test methods applicable to such facility,

(ii)     Safe sampling platform(s),

(iii)    Safe access to sampling platform(s).

(iv)    Utilities for sampling and testing equipment.

Each performance test shall consist of at least three separate runs using the applicable test method. Each run shall be conducted for the time and under the conditions specified in the applicable standard. For the purpose of determining compliance with an applicable standard the arithmetic mean of results of at least three runs shall apply. In the event that a sample is accidentally lost or conditions occur in which one of the runs must be discontinued because of forced shutdown, failure of an irreplaceable portion of the sample train, extreme meteorological conditions, or other circumstances beyond the owner or operator's control, compliance may, upon the Division's approval, be determined using the arithmetic mean of the results of the two other runs.

Nothing in this section shall abrogate the Division's authority to conduct its own performance test(s) if so warranted.

d.      Affirmative Defense Provision for Excess Emissions during Malfunctions

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 323 |

An affirmative defense to a claim of violation under these regulations is provided to owners and operators for civil penalty actions for excess emissions during periods of malfunction. To establish the affirmative defense and to be relieved of a civil penalty in any action to enforce an applicable requirement, the owner or operator of the facility must meet the notification requirements below in a timely manner and prove by a preponderance of evidence that:

(i)     The excess emissions were caused by a sudden, unavoidable breakdown of equipment, or a sudden, unavoidable failure of a process to operate in the normal or usual manner, beyond the reasonable control of the owner or operator;

(ii)    The excess emissions did not stem from any activity or event that could have reasonably been foreseen and avoided, or planned for, and could not have been avoided by better operation and maintenance practices;

(iii)   Repairs were made as expeditiously as possible when the applicable emission limitations were being exceeded;

(iv)    The amount and duration of the excess emissions (including any bypass) were minimized to the maximum extent practicable during periods of such emissions;

(v)     All reasonably possible steps were taken to minimize the impact of the excess emissions on ambient air quality;

(vi)    All emissions monitoring systems were kept in operation (if at all possible);

(vii)   The owner or operator's actions during the period of excess emissions were documented by properly signed, contemporaneous operating logs or other relevant evidence;

(viii)  The excess emissions were not part of a recurring pattern indicative of inadequate design, operation, or maintenance;

(ix)    At all times, the facility was operated in a manner consistent with good practices for minimizing emissions. This section is intended solely to be a factor in determining whether an affirmative defense is available to an owner or operator, and shall not constitute an additional applicable requirement; and

(x)     During the period of excess emissions, there were no exceedances of the relevant ambient air quality standards established in the Commissions' Regulations that could be attributed to the emitting source.

The owner or operator of the facility experiencing excess emissions during a malfunction shall notify the division verbally as soon as possible, but no later than noon of the Division's next working day, and shall submit written notification following the initial occurrence of the excess emissions by the end of the source's next reporting period. The notification shall address the criteria set forth above.

The Affirmative Defense Provision contained in this section shall not be available to claims for injunctive relief.

The Affirmative Defense Provision does not apply to failures to meet federally promulgated performance standards or emission limits, including, but not limited to, new source performance standards and national emission standards for hazardous air pollutants. The affirmative defense provision does not apply to state implementation plan (sip) limits or permit limits that have been set taking into account potential emissions during malfunctions, including, but not necessarily limited to, certain limits with 30-day or longer averaging times, limits that indicate they apply during malfunctions, and limits that indicate they apply at all times or without exception.

e.      Circumvention Clause

A person shall not build, erect, install, or use any article, machine, equipment, condition, or any contrivance, the use of which, without resulting in a reduction in the total release of air pollutants to the atmosphere, reduces or conceals

---

| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
|---|---|
|  | Renewed: September 1, 2022 |

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 324 |

an emission which would otherwise constitute a violation of this regulation. No person shall circumvent this regulation by using more openings than is considered normal practice by the industry or activity in question.

f.      Compliance Certifications

For the purpose of submitting compliance certifications or establishing whether a person has violated or is in violation of any standard in the Colorado State Implementation Plan, nothing in the Colorado State Implementation Plan shall preclude the use, including the exclusive use, of any credible evidence or information, relevant to whether a source would have been in compliance with applicable requirements if the appropriate performance or compliance test or procedure had been performed. Evidence that has the effect of making any relevant standard or permit term more stringent shall not be credible for proving a violation of the standard or permit term.

When compliance or non-compliance is demonstrated by a test or procedure provided by permit or other applicable requirement, the owner or operator shall be presumed to be in compliance or non-compliance unless other relevant credible evidence overcomes that presumption.

g.      Affirmative Defense Provision for Excess Emissions During Startup and Shutdown

An affirmative defense is provided to owners and operators for civil penalty actions for excess emissions during periods of startup and shutdown. To establish the affirmative defense and to be relieved of a civil penalty in any action to enforce an applicable requirement, the owner or operator of the facility must meet the notification requirements below in a timely manner and prove by a preponderance of the evidence that:

(i)      The periods of excess emissions that occurred during startup and shutdown were short and infrequent and could not have been prevented through careful planning and design;

(ii)      The excess emissions were not part of a recurring pattern indicative of inadequate design, operation or maintenance;

(iii)      If the excess emissions were caused by a bypass (an intentional diversion of control equipment), then the bypass was unavoidable to prevent loss of life, personal injury, or severe property damage;

(iv)      The frequency and duration of operation in startup and shutdown periods were minimized to the maximum extent practicable;

(v)      All possible steps were taken to minimize the impact of excess emissions on ambient air quality;

(vi)      All emissions monitoring systems were kept in operation (if at all possible);

(vii)      The owner or operator's actions during the period of excess emissions were documented by properly signed, contemporaneous operating logs or other relevant evidence; and,

(viii)      At all times, the facility was operated in a manner consistent with good practices for minimizing emissions. This subparagraph is intended solely to be a factor in determining whether an affirmative defense is available to an owner or operator, and shall not constitute an additional applicable requirement.

The owner or operator of the facility experiencing excess emissions during startup and shutdown shall notify the Division verbally as soon as possible, but no later than two (2) hours after the start of the next working day, and shall submit written quarterly notification following the initial occurrence of the excess emissions. The notification shall address the criteria set forth above.

The Affirmative Defense Provision contained in this section shall not be available to claims for injunctive relief.

The Affirmative Defense Provision does not apply to State Implementation Plan provisions or other requirements that derive from new source performance standards (NSPS) or national emissions standards for hazardous air pollutants

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 325 |

(NESHAPS), any other federally enforceable performance standard or emission limit with an averaging time greater than twenty-four hours. In addition, an affirmative defense cannot be used by a single source or small group of sources where the excess emissions have the potential to cause an exceedance of the ambient air quality standards or Prevention of Significant Deterioration (PSD) increments.

In making any determination whether a source established an affirmative defense, the Division shall consider the information within the notification required above and any other information the Division deems necessary, which may include, but is not limited to, physical inspection of the facility and review of documentation pertaining to the maintenance and operation of process and air pollution control equipment.

## 4.    Compliance Requirements

Regulation No. 3, 5 CCR 1001-5, Part C, §§ III.C.9., V.C.11. & 16.d. and § 25-7-122.1(2), C.R.S.

a.    The permittee must comply with all conditions of the Operating Permit.  Any permit noncompliance relating to federally-enforceable terms or conditions constitutes a violation of the federal act, as well as the state act and Regulation No. 3.  Any permit noncompliance relating to state-only terms or conditions constitutes a violation of the state act and Regulation No. 3, shall be enforceable pursuant to state law, and shall not be enforceable by citizens under § 304 of the federal act.  Any such violation of the federal act, the state act or regulations implementing either statute is grounds for enforcement action, for permit termination, revocation and reissuance or modification or for denial of a permit renewal application.

b.    It shall not be a defense for a permittee in an enforcement action or a consideration in favor of a permittee in a permit termination, revocation or modification action or action denying a permit renewal application that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the conditions of the permit.

c.    The permit may be modified, revoked, reopened, and reissued, or terminated for cause.  The filing of any request by the permittee for a permit modification, revocation and reissuance, or termination, or any notification of planned changes or anticipated noncompliance does not stay any permit condition, except as provided in §§ X. and XI. of Regulation No. 3, Part C.

d.    The permittee shall furnish to the Air Pollution Control Division, within a reasonable time as specified by the Division, any information that the Division may request in writing to determine whether cause exists for modifying, revoking and reissuing, or terminating the permit or to determine compliance with the permit.  Upon request, the permittee shall also furnish to the Division copies of records required to be kept by the permittee, including information claimed to be confidential.  Any information subject to a claim of confidentiality shall be specifically identified and submitted separately from information not subject to the claim.

e.    Any schedule for compliance for applicable requirements with which the source is not in compliance at the time of permit issuance shall be supplemental, and shall not sanction noncompliance with, the applicable requirements on which it is based.

f.    For any compliance schedule for applicable requirements with which the source is not in compliance at the time of permit issuance, the permittee shall submit, at least every 6 months unless a more frequent period is specified in the applicable requirement or by the Air Pollution Control Division, progress reports which contain the following:

(i)    dates for achieving the activities, milestones, or compliance required in the schedule for compliance, and dates when such activities, milestones, or compliance were achieved; and

(ii)    an explanation of why any dates in the schedule of compliance were not or will not be met, and any preventive or corrective measures adopted.

g.    The permittee shall not knowingly falsify, tamper with, or render inaccurate any monitoring device or method required to be maintained or followed under the terms and conditions of the Operating Permit.

---

| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
| | Renewed: September 1, 2022 |

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 326 |

5.      **Emergency Provisions**

Regulation No. 3, 5 CCR 1001-5, Part C, § VII

An emergency means any situation arising from sudden and reasonably unforeseeable events beyond the control of the source, including acts of God, which situation requires immediate corrective action to restore normal operation, and that causes the source to exceed the technology-based emission limitation under the permit due to unavoidable increases in emissions attributable to the emergency. "Emergency" does not include noncompliance to the extent caused by improperly designed equipment, lack of preventative maintenance, careless or improper operation, or operator error. An emergency constitutes an affirmative defense to an enforcement action brought for noncompliance with a technology-based emission limitation if the permittee demonstrates, through properly signed, contemporaneous operating logs, or other relevant evidence that:

a.      an emergency occurred and that the permittee can identify the cause(s) of the emergency;

b.      the permitted facility was at the time being properly operated;

c.      during the period of the emergency the permittee took all reasonable steps to minimize levels of emissions that exceeded the emission standards, or other requirements in the permit; and

d.      the permittee submitted oral notice of the emergency to the Air Pollution Control Division no later than noon of the next working day following the emergency, and followed by written notice within one month of the time when emissions limitations were exceeded due to the emergency. This notice must contain a description of the emergency, any steps taken to mitigate emissions, and corrective actions taken.

This emergency provision is in addition to any emergency or malfunction provision contained in any applicable requirement.

6.      **Emission Controls for Asbestos**

Regulation No. 8, 5 CCR 1001-10, Part B

The permittee shall not conduct any asbestos abatement activities except in accordance with the provisions of Regulation No. 8, Part B, "asbestos control."

7.      **Emissions Trading, Marketable Permits, Economic Incentives**

Regulation No. 3, 5 CCR 1001-5, Part C, § V.C.13.

No permit revision shall be required under any approved economic incentives, marketable permits, emissions trading and other similar programs or processes for changes that are specifically provided for in the permit.

8.      **Fee Payment**

CRS 25-7-114.1(6) and 25-7-114.7

a.      The permittee shall pay an annual emissions fee in accordance with the provisions of CRS 25-7-114.7. A 1% per month late payment fee shall be assessed against any invoice amounts not paid in full on the 91st day after the date of invoice, unless a permittee has filed a timely protest to the invoice amount.

b.      The permittee shall pay a permit processing fee in accordance with the provisions of CRS 25-7-114.7. If the Division estimates that processing of the permit will take more than 30 hours, it will notify the permittee of its estimate of what the actual charges may be prior to commencing any work exceeding the 30 hour limit.

c.      The permittee shall pay an APEN fee in accordance with the provisions of 25-7-114.1(6) for each APEN or revised APEN filed.

9.      **Fugitive Particulate Emissions**

| Operating Permit #95OPAD108 | First Issued:  October 1, 2006 |
|---|---|
| | Renewed: September 1, 2022 |

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 327 |

Regulation No. 1, 5 CCR 1001-3, § III.D.1.

The permittee shall employ such control measures and operating procedures as are necessary to minimize fugitive particulate emissions into the atmosphere, in accordance with the provisions of Regulation No. 1, § III.D.1.

**10.    Inspection and Entry**

Regulation No. 3, 5 CCR 1001-5, Part C, § V.C.16.b.

Upon presentation of credentials and other documents as may be required by law, the permittee shall allow the Air Pollution Control Division, or any authorized representative, to perform the following:

a.    enter upon the permittee's premises where an Operating Permit source is located, or emissions-related activity is conducted, or where records must be kept under the terms of the permit;

b.    have access to, and copy, at reasonable times, any records that must be kept under the conditions of the permit;

c.    inspect at reasonable times any facilities, equipment (including monitoring and air pollution control equipment), practices, or operations regulated or required under the Operating Permit;

d.    sample or monitor at reasonable times, for the purposes of assuring compliance with the Operating Permit or applicable requirements, any substances or parameters.

**11.    Minor Permit Modifications**

Regulation No. 3, 5 CCR 1001-5, Part C, §§ X. & XI.

The permittee shall submit an application for a minor permit modification before making the change requested in the application.  The permit shield shall not extend to minor permit modifications.

**12.    New Source Review**

Regulation No. 3, 5 CCR 1001-5, Parts B & D

The permittee shall not commence construction or modification of a source required to be reviewed under the New Source Review provisions of Regulation No. 3, Parts B and/or D, as applicable, without first receiving a construction permit.

**13.    No Property Rights Conveyed**

Regulation No. 3, 5 CCR 1001-5, Part C, § V.C.11.d.

This permit does not convey any property rights of any sort, or any exclusive privilege.

**14.    Odor**

Regulation No. 2, 5 CCR 1001-4, Part A

As a matter of state law only, the permittee shall comply with the provisions of Regulation No. 2 concerning odorous emissions.

Air Pollution Control Division                                                             Suncor Energy (U.S.A.)
Colorado Operating Permit                                       Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                                   Page 328

**15.**     **Off-Permit Changes to the Source**

        Regulation No. 3, 5 CCR 1001-5, Part C, § XII.B.

        The permittee shall record any off-permit change to the source that causes the emissions of a regulated pollutant subject to an applicable requirement, but not otherwise regulated under the permit, and the emissions resulting from the change, including any other data necessary to show compliance with applicable ambient air quality standards. The permittee shall provide contemporaneous notification to the Air Pollution Control Division and to the Environmental Protection Agency at the addresses listed in Appendix D of this Permit. The permit shield shall not apply to any off-permit change.

**16.**     **Opacity**

        Regulation No. 1, 5 CCR 1001-3, §§ I., II.

        The permittee shall comply with the opacity emissions limitation set forth in Regulation No. 1, §§ I.-II.

**17.**     **Open Burning**

        Regulation No. 9, 5 CCR 1001-11

        The permittee shall obtain a permit from the Division for any regulated open burning activities in accordance with provisions of Regulation No. 9.

**18.**     **Ozone Depleting Compounds**

        Regulation No. 15, 5 CCR 1001-19

        The permittee shall comply with the provisions of Regulation No. 15 concerning emissions of ozone depleting compounds. Sections I., II.C., II.D., III., IV., and V. of Regulation No. 15 shall be enforced as a matter of state law only.

**19.**     **Permit Expiration and Renewal**

        Regulation No. 3, 5 CCR 1001-5, Part C, §§ III.B.6., IV.C., V.C.2.

    a.     The permit term shall be five (5) years. The permit shall expire at the end of its term. Permit expiration terminates the permittee's right to operate unless a timely and complete renewal application is submitted.

    b.     Applications for renewal shall be submitted at least twelve months, but not more than 18 months, prior to the expiration of the Operating Permit. An application for permit renewal may address only those portions of the permit that require revision, supplementing, or deletion, incorporating the remaining permit terms by reference from the previous permit. A copy of any materials incorporated by reference must be included with the application.

**20.**     **Portable Sources**

        Regulation No. 3, 5 CCR 1001-5, Part C, § II.D.

        Portable Source permittees shall notify the Air Pollution Control Division at least 10 days in advance of each change in location.

**21.**     **Prompt Deviation Reporting**

        Regulation No. 3, 5 CCR 1001-5, Part C, § V.C.7.b.

        The permittee shall promptly report any deviation from permit requirements, including those attributable to malfunction conditions as defined in the permit, the probable cause of such deviations, and any corrective actions or preventive measures taken.

        "Prompt" is defined as follows:

Air Pollution Control Division                                          Suncor Energy (U.S.A.)
Colorado Operating Permit                               Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                               Page 329

a.   Any definition of "prompt" or a specific timeframe for reporting deviations provided in an underlying applicable requirement as identified in this permit; or

b.   Where the underlying applicable requirement fails to address the time frame for reporting deviations, reports of deviations will be submitted based on the following schedule:

(i)    For emissions of a hazardous air pollutant or a toxic air pollutant (as identified in the applicable regulation) that continue for more than an hour in excess of permit requirements, the report shall be made within 24 hours of the occurrence;

(ii)   For emissions of any regulated air pollutant, excluding a hazardous air pollutant or a toxic air pollutant that continue for more than two hours in excess of permit requirements, the report shall be made within 48 hours; and

(iii)  For all other deviations from permit requirements, the report shall be submitted every six (6) months, except as otherwise specified by the Division in the permit in accordance with paragraph 22.d. below.

c.   If any of the conditions in paragraphs b.(i) or b.(ii) above are met, the source shall notify the Division by telephone (303-692-3155) or facsimile (303-782-0278) based on the timetables listed above.  *[Explanatory note:  Notification by telephone or* facsimile *must specify that this notification is a deviation report for an Operating Permit.]*  A written notice, certified consistent with General Condition 2.a. above (Certification Requirements), shall be submitted within 10 working days of the occurrence.  All deviations reported under this section shall also be identified in the 6-month report required above.

"Prompt reporting" does not constitute an exception to the requirements of "Emergency Provisions" for the purpose of avoiding enforcement actions.

**22.    Record Keeping and Reporting Requirements**

Regulation No. 3, 5 CCR 1001-5, Part A, § II.; Part C, §§ V.C.6., V.C.7.

a.   Unless otherwise provided in the source specific conditions of this Operating Permit, the permittee shall maintain compliance monitoring records that include the following information:

(i)    date, place as defined in the Operating Permit, and time of sampling or measurements;

(ii)   date(s) on which analyses were performed;

(iii)  the company or entity that performed the analysis;

(iv)   the analytical techniques or methods used;

(v)    the results of such analysis; and

(vi)   the operating conditions at the time of sampling or measurement.

b.   The permittee shall retain records of all required monitoring data and support information for a period of at least five (5) years from the date of the monitoring sample, measurement, report or application.  Support information, for this purpose, includes all calibration and maintenance records and all original strip-chart recordings for continuous monitoring instrumentation, and copies of all reports required by the Operating Permit.  With prior approval of the Air Pollution Control Division, the permittee may maintain any of the above records in a computerized form.

c.   Permittees must retain records of all required monitoring data and support information for the most recent twelve (12) month period, as well as compliance certifications for the past five (5) years on-site at all times.  A permittee shall make available for the Air Pollution Control Division's review all other records of required monitoring data and support information required to be retained by the permittee upon 48 hours advance notice by the Division.

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                               Renewed: September 1, 2022

Air Pollution Control Division                                    Suncor Energy (U.S.A.)
Colorado Operating Permit                          Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                            Page 330

d.    The permittee shall submit to the Air Pollution Control Division all reports of any required monitoring at least every six (6) months, unless an applicable requirement, the compliance assurance monitoring rule, or the Division requires submission on a more frequent basis. All instances of deviations from any permit requirements must be clearly identified in such reports.

e.    The permittee shall file an Air Pollutant Emissions Notice ("APEN") prior to constructing, modifying, or altering any facility, process, activity which constitutes a stationary source from which air pollutants are or are to be emitted, unless such source is exempt from the APEN filing requirements of Regulation No. 3, Part A, § II.D or as provided for in Regulation No. 3, Part A, § II.A.2 for oil and gas well production facilities. A revised APEN shall be filed annually whenever a significant change in emissions, as defined in Regulation No. 3, Part A, § II.C.2., occurs; whenever there is a change in owner or operator of any facility, process, or activity; whenever new control equipment is installed; whenever a different type of control equipment replaces an existing type of control equipment; whenever a permit limitation must be modified; or before the APEN expires. An APEN is valid for a period of five years. The five-year period recommences when a revised APEN is received by the Air Pollution Control Division. Revised APENs shall be submitted no later than 30 days before the five-year term expires. Permittees submitting revised APENs to inform the Division of a change in actual emission rates must do so by April 30 of the following year. Where a permit revision is required, the revised APEN must be filed along with a request for permit revision. APENs for changes in control equipment must be submitted before the change occurs, except an APEN shall be filed once per year for control equipment at condensate storage tanks located at oil and gas exploration and production facilities subject to Regulation No. 7, Part D § I. Annual fees are based on the most recent APEN on file with the Division.

23.    **Reopenings for Cause**

Regulation No. 3, 5 CCR 1001-5, Part C, § XIII.

a.    The Air Pollution Control Division shall reopen, revise, and reissue Operating Permits; permit reopenings and reissuance shall be processed using the procedures set forth in Regulation No. 3, Part C, § III., except that proceedings to reopen and reissue permits affect only those parts of the permit for which cause to reopen exists.

b.    The Division shall reopen a permit whenever additional applicable requirements become applicable to a major source with a remaining permit term of three or more years, unless the effective date of the requirements is later than the date on which the permit expires, or unless a general permit is obtained to address the new requirements; whenever additional requirements (including excess emissions requirements) become applicable to an affected source under the acid rain program; whenever the Division determines the permit contains a material mistake or that inaccurate statements were made in establishing the emissions standards or other terms or conditions of the permit; or whenever the Division determines that the permit must be revised or revoked to assure compliance with an applicable requirement.

c.    The Division shall provide 30 days' advance notice to the permittee of its intent to reopen the permit, except that a shorter notice may be provided in the case of an emergency.

d.    The permit shield shall extend to those parts of the permit that have been changed pursuant to the reopening and reissuance procedure.

24.    **Requirements for Major Stationary Sources**

Regulation No. 3, 5 CCR 1001-5, Part D, §§ V.A.7.c & d, VI.B.5 & VI.B.6

The following provisions apply to projects at existing emissions units at a major stationary source (other than projects at a source with a PAL) that are not part of a major modification and where the owner or operator relies on projected actual emissions. The definitions of baseline actual emissions, major modification, major stationary source, PAL, projected actual emissions, regulated NSR pollutant and significant can be found in Regulation No. 3, Part D, § II.A.

Operating Permit #95OPAD108                                First Issued: October 1, 2006
                                                          Renewed: September 1, 2022

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 331 |

a.  Before beginning actual construction of the project, the owner or operator shall document and maintain a record of the following information:

   (i)   a description of the project;

   (ii)  identification of the emissions unit(s) whose emissions of a regulated NSR pollutant could be affected by the project; and

   (iii) a description of the applicability test used to determine the project is not a major modification for any regulated NSR pollutants, including the baseline actual emissions, the projected actual emissions, the amount of emissions excluded and an explanation for why such amount was excluded, and any netting calculations, if applicable.

b.  The owner or operator shall monitor emissions of any regulated NSR pollutant that could increase as a result of the project from any emissions units identified in paragraph a.(ii) and calculate and maintain a record of the annual emissions, in tons per year on a calendar year basis, for a period of five (5) years following resumption of regular operation after the change, or for a period of ten (10) years following resumption of regular operation after the change if the project increases the design capacity or potential to emit of that regulated NSR pollutant at such emissions unit.

c.  For existing electric utility steam generating units the following requirements apply:

   (i)   Before beginning actual construction, the owner or operator shall provide a copy of the information required by paragraph a above to the Division. The owner or operator is not required to obtain a determination from the Division prior to beginning actual construction.

   (ii)  The owner or operate shall submit a report to the Division within sixty days after the end of each year during which records must be generated under paragraph b above setting out the unit's annual emissions during the calendar year that preceded submission of the report.

d.  For existing emissions units that are not electric utility steam generating units, the owner or operator shall submit a report to the Division if the annual emissions from the project, in tons per year, exceed the baseline actual emissions (documented and maintained per paragraph a.(iii)) by a significant amount for that regulated NSR pollutant, and if such emissions differ from the preconstruction projection (documented and maintained per paragraph a.(iii)). Such report shall be submitted to the Division within sixty days after the end of such year. The report shall contain the following:

   (i)   The name, address and telephone number of the owner or operator;

   (ii)  The annual emissions as calculated per paragraph b; and

   (iii) Any other information that the owner or operator wishes to include in the report.

e.  The owner of operation of the source shall make the information in paragraph a available for review upon request to the Division or the general public.

**25.   Section 502(b)(10) Changes**

Regulation No. 3, 5 CCR 1001-5, Part C, § XII.A.

The permittee shall provide a minimum 7-day advance notification to the Air Pollution Control Division and to the Environmental Protection Agency at the addresses listed in Appendix D of this Permit. The permittee shall attach a copy of each such notice given to its Operating Permit.

| Air Pollution Control Division | Suncor Energy (U.S.A.) |
|---|---|
| Colorado Operating Permit | Commerce City Refinery, Plant 2 (East) |
| Permit #95OPAD108 | Page 332 |

26. **Severability Clause**

Regulation No. 3, 5 CCR 1001-5, Part C, § V.C.10.

In the event of a challenge to any portion of the permit, all emissions limits, specific and general conditions, monitoring, record keeping and reporting requirements of the permit, except those being challenged, remain valid and enforceable.

27. **Significant Permit Modifications**

Regulation No. 3, 5 CCR 1001-5, Part C, § III.B.2.

The permittee shall not make a significant modification required to be reviewed under Regulation No. 3, Part B ("Construction Permit" requirements) without first receiving a construction permit. The permittee shall submit a complete Operating Permit application or application for an Operating Permit revision for any new or modified source within twelve months of commencing operation, to the address listed in Item 1 in Appendix D of this permit. If the permittee chooses to use the "Combined Construction/Operating Permit" application procedures of Regulation No. 3, Part C, then the Operating Permit must be received prior to commencing construction of the new or modified source.

28. **Special Provisions Concerning the Acid Rain Program**

Regulation No. 3, 5 CCR 1001-5, Part C, §§ V.C.1.b. & 8

a.   Where an applicable requirement of the federal act is more stringent than an applicable requirement of regulations promulgated under Title IV of the federal act, 40 Code of Federal Regulations (CFR) Part 72, both provisions shall be incorporated into the permit and shall be federally enforceable.

b.   Emissions exceeding any allowances that the source lawfully holds under Title IV of the federal act or the regulations promulgated thereunder, 40 CFR Part 72, are expressly prohibited.

29. **Transfer or Assignment of Ownership**

Regulation No. 3, 5 CCR 1001-5, Part C, § II.C.

No transfer or assignment of ownership of the Operating Permit source will be effective unless the prospective owner or operator applies to the Air Pollution Control Division on Division-supplied Administrative Permit Amendment forms, for reissuance of the existing Operating Permit. No administrative permit shall be complete until a written agreement containing a specific date for transfer of permit, responsibility, coverage, and liability between the permittee and the prospective owner or operator has been submitted to the Division.

30. **Volatile Organic Compounds**

Regulation No. 7, 5 CCR 1001-9, Part B, §§ I & III.

The requirements in paragraphs a, b and e apply to sources located in the Denver 1-hour ozone attainment/maintenance area, any nonattainment area for the 1-hour ozone standard and to the 8-hour Ozone Control Area and on a state-only basis to sources located in any ozone nonattainment area, which includes areas designated nonattainment for either the 1-hour or 8-hour ozone standard, unless otherwise specified in Regulation No. 7, Part A, Section I.A.1.c. The requirements in paragraphs c and d apply statewide.

a.   All storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves shall be maintained and operated to prevent detectable vapor loss except when opened, actuated, or used for necessary and proper activities (e.g. maintenance). Such opening, actuation, or use shall be limited so as to minimize vapor loss.

Detectable vapor loss shall be determined visually, by touch, by presence of odor, or using a portable hydrocarbon analyzer. When an analyzer is used, detectable vapor loss means a VOC concentration exceeding 10,000 ppm. Testing shall be conducted as in Regulation No. 7, Part B, Section VI.C.3.

| Operating Permit #95OPAD108 | First Issued: October 1, 2006 |
|---|---|
| | Renewed: September 1, 2022 |

Air Pollution Control Division                                    Suncor Energy (U.S.A.)
Colorado Operating Permit                              Commerce City Refinery, Plant 2 (East)
Permit #95OPAD108                                                              Page 333

b.    Except as otherwise provided by Regulation No. 7, all volatile organic compounds, excluding petroleum liquids, transferred to any tank, container, or vehicle compartment with a capacity exceeding 212 liters (56 gallons), shall be transferred using submerged or bottom filling equipment. For top loading, the fill tube shall reach within six inches of the bottom of the tank compartment.  For bottom-fill operations, the inlet shall be flush with the tank bottom.

c.    No person shall dispose of volatile organic compounds by evaporation or spillage unless Reasonably Available Control Technology (RACT) is utilized.

d.    No owner or operator of a bulk gasoline terminal, bulk gasoline plant, or gasoline dispensing facility as defined in Colorado Regulation No. 7, Part B, Sections IV.C.2., IV.C.3. and VII.A.3., shall permit gasoline to be intentionally spilled, discarded in sewers, stored in open containers, or disposed of in any other manner that would result in evaporation.

e.    Beer production and associated beer container storage and transfer operations involving volatile organic compounds with a true vapor pressure of less than 1.5 psia actual conditions are exempt from the provisions of paragraph b, above.

**31.    Wood Stoves and Wood burning Appliances**

Regulation No. 4, 5 CCR 1001-6

The permittee shall comply with the provisions of Regulation No. 4 concerning the advertisement, sale, installation, and use of wood stoves and wood burning appliances.

Operating Permit #95OPAD108                              First Issued:  October 1, 2006
                                                        Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit
Appendices

# OPERATING PERMIT APPENDICES

A -   INSPECTION INFORMATION
B -   MONITORING AND PERMIT DEVIATION REPORT
C -   COMPLIANCE CERTIFICATION REPORT
D -   NOTIFICATION ADDRESSES
E -   PERMIT ACRONYMS
F -   PERMIT MODIFICATIONS
G-   FCCU REGENERATOR COMPLIANCE ASSURANCE MONITORING PLAN
H -   PREVENTION OF SIGNIFICANT DETERIORATION (PSD) REVIEW AND NON-ATTAINMENT AREA NEW SOURCE REVIEW (NANSR) APPLICABILITY TESTS
I -   SULFUR RECOVERY UNIT COMPLIANCE ASSURANCE MONITORING PLAN
J -   FLARE AND VAPOR COMBUSTOR COMPLIANCE ASSURANCE MONITORING PLANS

## *DISCLAIMER:

None of the information found in these Appendices shall be considered to be State or Federally enforceable, except as otherwise stated in this permit, and is presented to assist the source, permitting authority, inspectors, and citizens.

Operating Permit #95OPAD108

First Issued:  October 1, 2006
Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                          Appendix A
Inspection Information                                                 Page 1

# APPENDIX A - Inspection Information

**Directions to Plant:**

The facility is located at 5800 Brighton Boulevard, Commerce City. Exit I-70 at Brighton Boulevard. Go north on Brighton Boulevard. Refinery is on the east side of Brighton Boulevard just prior to reaching I-270. The Suncor visitor orientation facility is located on 56th Avenue near the Sour Crude Unit entrance.

**Safety Equipment Required:**

Eye Protection; Hard Hat; Safety Shoes; Hearing Protection

**Facility Plot Plan:**

A facility plot plan is not included in the permit at this time.

**List of Insignificant Activities:**

The following list of insignificant activities was provided by the source to assist in the understanding of the facility layout.  Since there is no requirement to update such a list, activities may have changed since the last filing.

Insignificant activities and/or sources of emissions as submitted in the application are as follows:

The asterisk (*) denotes an insignificant activity source category based on the size of the activity, emissions levels from the activity or the production rate of the activity. The owner or operator of individual emission points in insignificant activity source categories marked with an asterisk (*) must maintain sufficient record keeping verifying that the exemption applies. Such records shall be made available for Division review upon request. (Colorado Regulation No. 3, Part C, Section II.E)

<u>Units with emissions less than APEN de minimis - criteria pollutants (Reg 3 Part C.II.E.3.a)*</u>

Cat Poly Unit (P006) – catalyst loading, unloading and blowdowns (PM/$PM_{10}$/$PM_{2.5}$ emissions < 2 ton/yr)
Tank T013 – Fuel additive tank
Tank T014 – Fuel additive tank
Tank T015 – Fuel additive tank
Tank T016 – Fuel additive tank
Tank T016A – Fuel additive tank
Tank T016B – Fuel additive tank
Tank T016C – Fuel additive tank
Tank T016D – Fuel additive tank
Tank T017 – Fuel additive tank
Tank 980149 – Steam corrosion inhibitor
Tank 100189 – Boiler Corrosion inhibitor
LPG railcar dock loading hose uncoupling (VOC emissions < 1 ton/yr)
Ethanol unloading at LPG railcar dock (VOC emissions < 1 ton/yr)
Ethanol unloading at truck loading dock (VOC emissions < 1 ton/yr)

Operating Permit #95OPAD108                            First Issued:  October 1, 2006
                                                       Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                         Appendix A
Inspection Information                                                                 Page 2

---

Chemical storage tanks or containers < 500 gal (Reg 3 Part C.II.E.3.n)*

Chemical additive containers (totes)
Bulk chemical storage

Chemical storage tanks – sulfuric acid storage tanks < 10,500 gal (Reg, 3, Part C.II.E.3.eee.(i))*

Tank T-2521 – Sulfuric Acid, 2.900 gallons

Non-Road Engines

Misc. diesel-fired engines driving plant equipment (e.g. light carts, welders, generators)

# APPENDIX B

## Reporting Requirements and Definitions

**with codes ver 8/20/14**

Please note that, pursuant to 113(c)(2) of the federal Clean Air Act, any person who knowingly:

(A)     makes any false material statement, representation, or certification in, or omits material information from, or knowingly alters, conceals, or fails to file or maintain any notice, application, record, report, plan, or other document required pursuant to the Act to be either filed or maintained (whether with respect to the requirements imposed by the Administrator or by a State);

(B)     fails to notify or report as required under the Act; or

(C)     falsifies, tampers with, renders inaccurate, or fails to install any monitoring device or method required to be maintained or followed under the Act shall, upon conviction, be punished by a fine pursuant to title 18 of the United States Code, or by imprisonment for not more than 2 years, or both.  If a conviction of any person under this paragraph is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment shall be doubled with respect to both the fine and imprisonment.

The permittee must comply with all conditions of this operating permit.  Any permit noncompliance constitutes a violation of the Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application.

---

The Part 70 Operating Permit program requires three types of reports to be filed for all permits.
All required reports must be certified by a responsible official.

**Report #1: Monitoring Deviation Report** (due at least every six months)

*For purposes of this operating permit, the Division is requiring that the monitoring reports are due every six months unless otherwise noted in the permit.*  All instances of deviations from permit monitoring requirements must be clearly identified in such reports.

For purposes of this operating permit, monitoring means any condition determined by observation, by data from any monitoring protocol, or by any other monitoring which is required by the permit as well as the recordkeeping associated with that monitoring.  This would include, for example, fuel use or process rate monitoring, fuel analyses, and operational or control device parameter monitoring.

**Report #2: Permit Deviation Report (must be reported "promptly")**

In addition to the monitoring requirements set forth in the permits as discussed above, each and every requirement of the permit is subject to deviation reporting.  The reports must address deviations from permit requirements, including those attributable to malfunctions as defined in this Appendix, the probable cause of such deviations,

Air Pollution Control Division
Colorado Operating Permit                                                        Appendix B
Monitoring and Permit Deviation Report                                              Page 2

---

and any corrective actions or preventive measures taken.  All deviations from any term or condition of the permit are required to be summarized or referenced in the annual compliance certification.

For purposes of this operating permit, "malfunction" shall refer to both emergency conditions and malfunctions. Additional discussion on these conditions is provided later in this Appendix.

*For purposes of this operating permit, the Division is requiring that the permit deviation reports are due as set forth in General Condition 21.*  Where the underlying applicable requirement contains a definition of prompt or otherwise specifies a time frame for reporting deviations, that definition or time frame shall govern.  For example, quarterly Excess Emission Reports required by an NSPS or Regulation No. 1, Section IV.

In addition to the monitoring deviations discussed above, included in the meaning of deviation for the purposes of this operating permit are any of the following:

(1)    A situation where emissions exceed an emission limitation or standard contained in the permit;

(2)    A situation where process or control device parameter values demonstrate that an emission limitation or standard contained in the permit has not been met;

(3)    A situation in which observations or data collected demonstrates noncompliance with an emission limitation or standard or any work practice or operating condition required by the permit; or,

(4)    A situation in which an excursion or exceedance as defined in 40 CFR Part 64 (the Compliance Assurance Monitoring (CAM) Rule) has occurred. (only if the emission point is subject to CAM)

For reporting purposes, the Division has combined the Monitoring Deviation Report with the Permit Deviation Report.  All deviations shall be reported using the following codes:

**1 = Standard:**        When the requirement is an emission limit or standard
**2 = Process:**         When the requirement is a production/process limit
**3 = Monitor:**         When the requirement is monitoring
**4 = Test:**            When the requirement is testing
**5 = Maintenance:**     When required maintenance is not performed
**6 = Record:**          When the requirement is recordkeeping
**7 = Report:**          When the requirement is reporting
**8 = CAM:**             A situation in which an excursion or exceedance as defined in 40 CFR Part 64 (the Compliance Assurance Monitoring (CAM) Rule) has occurred.
**9 = Other:**           When the deviation is not covered by any of the above categories

**Report #3: Compliance Certification (annually, as defined in the permit)**

Submission of compliance certifications with terms and conditions in the permit, including emission limitations, standards, or work practices, is required not less than annually.

Compliance Certifications are intended to state the compliance status of each requirement of the permit over the certification period.  They must be based, at a minimum, on the testing and monitoring methods specified in the

---

Operating Permit #95OPAD108                                     First Issued:  October 1, 2006
                                                               Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                               Appendix B
Monitoring and Permit Deviation Report                                    Page 3

permit that were conducted during the relevant time period. In addition, if the owner or operator knows of other material information (i.e. information beyond required monitoring that has been specifically assessed in relation to how the information potentially affects compliance status), that information must be identified and addressed in the compliance certification. The compliance certification must include the following:

- The identification of each term or condition of the permit that is the basis of the certification;

- Whether or not the method(s) used by the owner or operator for determining the compliance status with each permit term and condition during the certification period was the method(s) specified in the permit. Such methods and other means shall include, at a minimum, the methods and means required in the permit. If necessary, the owner or operator also shall identify any other material information that must be included in the certification to comply with section 113(c)(2) of the Federal Clean Air Act, which prohibits knowingly making a false certification or omitting material information;

- The status of compliance with the terms and conditions of the permit, and whether compliance was continuous or intermittent. The certification shall identify each deviation and take it into account in the compliance certification. Note that not all deviations are considered violations.[1]

- Such other facts as the Division may require, consistent with the applicable requirements to which the source is subject, to determine the compliance status of the source.

The Certification shall also identify as possible exceptions to compliance any periods during which compliance is required and in which an excursion or exceedance as defined under 40 CFR Part 64 (the Compliance Assurance Monitoring (CAM) Rule) has occurred. (only for emission points subject to CAM)

Note the requirement that the certification shall identify each deviation and take it into account in the compliance certification. Previously submitted deviation reports, including the deviation report submitted at the time of the annual certification, may be referenced in the compliance certification.

### Startup, Shutdown, Malfunctions and Emergencies

Understanding the application of Startup, Shutdown, Malfunctions and Emergency Provisions, is very important in both the deviation reports and the annual compliance certifications.

#### Startup, Shutdown, and Malfunctions

Please note that exceedances of some New Source Performance Standards (NSPS) and Maximum Achievable Control Technology (MACT) standards that occur during Startup, Shutdown or Malfunctions may not be considered to be non-compliance since emission limits or standards often do not apply unless specifically stated in the NSPS. Such exceedances must, however, be reported as excess emissions per the NSPS/MACT rules and

---

[1]  For example, given the various emissions limitations and monitoring requirements to which a source may be subject, a deviation from one requirement may not be a deviation under another requirement which recognizes an exception and/or special circumstances relating to that same event.

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                               Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix B
Monitoring and Permit Deviation Report                                          Page 4

would still be noted in the deviation report.  In regard to compliance certifications, the permittee should be confident of the information related to those deviations when making compliance determinations since they are subject to Division review.  The concepts of Startup, Shutdown and Malfunctions also exist for Best Available Control Technology (BACT) sources, but are not applied in the same fashion as for NSPS and MACT sources.

**Emergency Provisions**

Under the Emergency provisions of Part 70 certain operational conditions may act as an affirmative defense against enforcement action if they are properly reported.

**DEFINITIONS**

**Malfunction** (NSPS) means any sudden, infrequent, and not reasonably preventable failure of air pollution control equipment, process equipment, or a process to operate in a normal or usual manner.  Failures that are caused in part by poor maintenance or careless operation are not malfunctions.

**Malfunction** (SIP) means any sudden and unavoidable failure of air pollution control equipment or process equipment or unintended failure of a process to operate in a normal or usual manner.  Failures that are primarily caused by poor maintenance, careless operation, or any other preventable upset condition or preventable equipment breakdown shall not be considered malfunctions.

**Emergency** means any situation arising from sudden and reasonably unforeseeable events beyond the control of the source, including acts of God, which situation requires immediate corrective action to restore normal operation, and that causes the source to exceed a technology-based emission limitation under the permit, due to unavoidable increases in emissions attributable to the emergency.  An emergency shall not include noncompliance to the extent caused by improperly designed equipment, lack of preventative maintenance, careless or improper operation, or operator error.

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                                Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                          Appendix B
Monitoring and Permit Deviation Report                                             Page 5

## Monitoring and Permit Deviation Report  - Part I

1.     Following is the **required** format for the Monitoring and Permit Deviation report to be submitted to the Division as set forth in General Condition 21.   The Table below must be completed for all equipment or processes for which specific Operating Permit terms exist.

2.     Part II of this Appendix B shows the format and information the Division will require for describing periods of monitoring and permit deviations, or malfunction or emergency conditions as indicated in the Table below.  One Part II Form must be completed for each Deviation.  Previously submitted reports (e.g. EER's or malfunctions) may be referenced and the form need not be filled out in its entirety.

FACILITY NAME:  Suncor Energy (U.S.A), Inc. – Commerce City Refinery, Plant 2 (East)
OPERATING PERMIT NO:  95OPAD108
REPORTING PERIOD:_____    (see first page of the permit for specific reporting period and dates)

| Operating Permit Unit ID | Unit Description | Deviations noted During Period?[1] | | Deviation Code [2] | Malfunction/ Emergency Condition Reported During Period? | |
|---|---|---|---|---|---|---|
| | | YES | NO | | YES | NO |
| **P001** | **Crude Distillation Unit** | | | | | |
| B001 | Crude Heater | | | | | |
| B010 | Vacuum Heater | | | | | |
| F001 | Crude Unit Fugitive Sources | | | | | |
| **P003** | **Fluid Catalytic Cracking Unit (FCCU)** | | | | | |
| B002 | FCCU Preheater | | | | | |
| P004 | FCCU Reactor-Regenerator | | | | | |
| P014 | FCCU Catalyst Handling | | | | | |
| F002 | FCCU Fugitive Sources | | | | | |
| **P013 & P005** | **Naphtha Hydrotreater and Reformer Unit** | | | | | |
| B003 | Reformer Heater #1 | | | | | |
| B004 | Reformer Heater #2 | | | | | |
| B005 | Reformer Heater #3 | | | | | |
| F004 | Reformer Reactors (Catalyst Regeneration, Loading & Unloading) | | | | | |
| F005 | Naphtha Hydrotreater Fugitive Sources | | | | | |
| F007 | Reformer Fugitive Sources | | | | | |
| **P009** | **Sulfur Recovery Plant** | | | | | |
| P015 | Sulfur Recovery Unit Claus Plant | | | | | |
| B011 | Sulfur Recovery Unit Incinerator | | | | | |
| P008 | Amine Unit | | | | | |
| P010 | Sour Water Stripper | | | | | |
| F013 | Sulfur Recovery Unit/Amine Unit/Sour Water Stripper Fugitive Sources | | | | | |

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                      Appendix B
Monitoring and Permit Deviation Report                                          Page 6

| Operating Permit Unit ID | Unit Description | Deviations noted During Period?[1] | | Deviation Code [2] | Malfunction/ Emergency Condition Reported During Period? | |
|---|---|---|---|---|---|---|
| | | YES | NO | | YES | NO |
| | **Utilities** | | | | | |
| B504 | Boiler | | | | | |
| B505 | Boiler | | | | | |
| P011 | Plant 2 Cooling Tower (E-523, E-524, E-525 and E-527) | | | | | |
| | **Crude Unloading/Gasoline Tank Truck Loading Docks** | | | | | |
| F015 | South (New) Crude Unloading | | | | | |
| F016 | North (Old) Crude Unloading | | | | | |
| F024 | Truck Loading Dock | | | | | |
| C001 | Truck Loading Dock Combustor | | | | | |
| F017 | Truck Loading Dock Fugitive Sources | | | | | |
| **C005** | **Refinery Flare** | | | | | |
| F018 | Refinery Flare Fugitives | | | | | |
| | **LPG Storage, Truck and Railcar Loading Facility** | | | | | |
| F019 | Railcar Loading Dock | | | | | |
| F020 | LPG Truck Loading Dock | | | | | |
| C002 | Railcar Dock Flare | | | | | |
| F040 | LPG loading at the Railcar Dock, the Railcar Dock Flare  and the LPG Truck Loading Dock Fugitive Sources | | | | | |
| F026 | Petroleum Product loading at Railcar Dock Fugitive Sources | | | | | |
| T050 | Pressure Tank 50 | | | | | |
| T051 | Pressure Tank 51 | | | | | |
| T060 | Pressure Tank 60 | | | | | |
| T061 | Pressure Tank 61 | | | | | |
| T063 | Pressure Tank 63 | | | | | |
| T064 | Pressure Tank 64 | | | | | |
| T066 | Pressure Tank 66 | | | | | |
| T067 | Pressure Tank 67 | | | | | |
| T068 | Pressure Tank 68 | | | | | |
| T069 | Pressure Tank 69 | | | | | |
| | **Plant 2 Wastewater Treatment System** | | | | | |
| F021 | API Separators – Upper API | | | | | |
| F022 | API Separators – Middle API | | | | | |
| F023 | API Separators – Lower API | | | | | |
| F011 | Gas Plant Sewers (also subject to requirements under fugitive emission sources, F012) | | | | | |

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                               Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                      Appendix B
Monitoring and Permit Deviation Report                                             Page 7

| Operating Permit Unit ID | Unit Description | Deviations noted During Period?[1] | | Deviation Code [2] | Malfunction/ Emergency Condition Reported During Period? | |
|---|---|---|---|---|---|---|
| | | YES | NO | | YES | NO |
| F025 | Sour Water Stripper Sewers | | | | | |
| F030 | Boiler Sewers (also subject to requirements under fugitive emission sources, F036) | | | | | |
| T029 | Tank T29 | | | | | |
| | **Group B Tanks** | | | | | |
| T010 | Tank 10 | | | | | |
| T027 | Tank 27 | | | | | |
| T030 | Tank 30 | | | | | |
| | **Group C Tanks** | | | | | |
| T008 | Tank 8 | | | | | |
| T009 | Tank 9 | | | | | |
| T043 | Tank 43 | | | | | |
| T045 | Tank 45 | | | | | |
| T048 | Tank 48 | | | | | |
| T049 | Tank 49 | | | | | |
| T057 | Tank 57 | | | | | |
| | **Group D Tanks** | | | | | |
| T039 | Tank 39 | | | | | |
| | **Group E Tanks** | | | | | |
| T006 | Tank 6 | | | | | |
| T011 | Tank 11 | | | | | |
| T012 | Tank 12 | | | | | |
| T020 | Tank 20 | | | | | |
| T026 | Tank 26 | | | | | |
| T038 | Tank 38 | | | | | |
| T046 | Tank 46 | | | | | |
| T047 | Tank 47 | | | | | |
| T053 | Tank 53 | | | | | |
| T058 | Tank 58 | | | | | |
| T062 | Tank 62 | | | | | |
| T079 | Tank 79 | | | | | |
| | **Group F Tanks** | | | | | |
| T035 | Tank 35 | | | | | |
| T036 | Tank 36 | | | | | |
| T044 | Tank 44 | | | | | |
| T052 | Tank 52 | | | | | |
| T054 | Tank 54 | | | | | |
| | **Group G Tanks** | | | | | |
| T025 | Tank 25 | | | | | |

Operating Permit #95OPAD108                              First Issued:  October 1, 2006
                                                          Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix B
Monitoring and Permit Deviation Report                                          Page 8

| Operating Permit Unit ID | Unit Description | Deviations noted During Period?[1] | | Deviation Code [2] | Malfunction/ Emergency Condition Reported During Period? | |
|---|---|---|---|---|---|---|
| | | YES | NO | | YES | NO |
| T028 | Tank 28 | | | | | |
| T037 | Tank 37 | | | | | |
| | **Fugitive VOC Emission Sources** | | | | | |
| F039 | Plant wide fugitive emissions from grandfathered sources | | | | | |
| F010 | Polymerization Unit Fugitive Sources | | | | | |
| F014 | Utilities Fuel Gas System Fugitive Sources | | | | | |
| F012 | Gas plant fugitives | | | | | |
| F034 | Piping modifications to products handling system (to implement a SEP) | | | | | |
| F035 | Second stage of crude oil desalting project | | | | | |
| F031 | Equipment leaks from installation of Tank T79 | | | | | |
| F036 | Equipment leaks from fuel gas tie-ins for Boilers B504 and B505 | | | | | |
| F037 | Equipment leaks identified in 2014 COC | | | | | |
| F038 | Equipment leaks associated with the MPV Project | | | | | |
| F045 | Equipment leaks associated with the P2 flare RSR Project | | | | | |
| | **Miscellaneous Sources** | | | | | |
| E001 | Security Center Emergency Generator | | | | | |
| P2AC1 | Emergency Air Compressor (No. 2 FCCU) | | | | | |
| | Cold Cleaner Solvent Degreasers | | | | | |
| | Industrial Solvent Cleaning Operations | | | | | |
| P2DGTO | Tank Cleaning and Degassing | | | | | |
| MPVs | Miscellaneous Process Vents (defined in 40 CFR Part 63 Subpart CC §63.641), includes maintenance vents. | | | | | |
| | Facility Wide Requirements | | | | | |
| | General Conditions | | | | | |
| | Insignificant Activities | | | | | |

[1] See previous discussion regarding what is considered to be a deviation. Determination of whether or not a deviation has occurred shall be based on a reasonable inquiry using readily available information.

[2] Use the following entries as appropriate:
**1 = Standard:**      When the requirement is an emission limit or standard
**2 = Process:**      When the requirement is a production/process limit
**3 = Monitor:**      When the requirement is monitoring
**4 = Test:**      When the requirement is testing
**5 = Maintenance:**      When required maintenance is not performed
**6 = Record:**      When the requirement is recordkeeping
**7 = Report:**      When the requirement is reporting

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                               Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix B
Monitoring and Permit Deviation Report                                         Page 9

**8 = CAM:**          A situation in which an excursion or exceedance as defined in 40 CFR Part 64 (the Compliance Assurance
                      Monitoring (CAM) Rule) has occurred.

**9 = Other:**        When the deviation is not covered by any of the above categories

Air Pollution Control Division
Colorado Operating Permit                                                                          Appendix B
Monitoring and Permit Deviation Report                                                             Page 10

## Monitoring and Permit Deviation Report  - Part II

FACILITY NAME:            Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plant 2 (East)
OPERATING PERMIT NO:  95OPAD108
REPORTING PERIOD:


Is the deviation being claimed as an:          Emergency _____      Malfunction_____    N/A

(For NSPS/MACT) Did the deviation occur during:   Startup _____      Shutdown _____    Malfunction _____
                                                   Normal Operation      _____

OPERATING PERMIT UNIT IDENTIFICATION:

Operating Permit Condition Number Citation



Explanation of Period of Deviation



Duration (start/stop date & time)



Action Taken to Correct the Problem



Measures Taken to Prevent a Reoccurrence of the Problem



Dates of Malfunctions/Emergencies Reported (if applicable)



Deviation Code  _____          Division Code QA:  _____

### SEE EXAMPLE ON THE NEXT PAGE

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                              Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                        Appendix B
Monitoring and Permit Deviation Report                            Page 11

# EXAMPLE

FACILITY NAME:          Acme Corp.
OPERATING PERMIT NO:  96OPZZXXX
REPORTING PERIOD:      1/1/04 - 6/30/06


Is the deviation being claimed as an:        Emergency _____    Malfunction __XX__    N/A

(For NSPS/MACT) Did the deviation occur during:   Startup _____    Shutdown _____   Malfunction
                                                   Normal Operation  _____

OPERATING PERMIT UNIT IDENTIFICATION:

Asphalt Plant with a Scrubber for Particulate Control - Unit XXX

Operating Permit Condition Number Citation

Section II, Condition 3.1 - Opacity Limitation

Explanation of Period of Deviation

Slurry Line Feed Plugged

Duration

START- 1730 4/10/06
END-    1800 4/10/06

Action Taken to Correct the Problem

Line Blown Out

Measures Taken to Prevent Reoccurrence of the Problem

Replaced Line Filter

Dates of Malfunction/Emergencies Reported (if applicable)

5/30/06 to A. Einstein, APCD

Deviation Code  _____        Division Code QA: _____


Operating Permit #95OPAD108                        First Issued:  October 1, 2006
                                                    Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                              Appendix B
Monitoring and Permit Deviation Report                                    Page 12

## Monitoring and Permit Deviation Report - Part III

## REPORT CERTIFICATION

SOURCE NAME: Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plant 2 (East)

FACILITY IDENTIFICATION NUMBER: 0010003

PERMIT NUMBER: 95OPAD108

REPORTING PERIOD:_____    (see first page of the permit for specific reporting period and dates)

All information for the Title V Semi-Annual Deviation Reports must be certified by a responsible official as defined in Colorado Regulation No. 3, Part A, Section I.B.  This signed certification document must be packaged with the documents being submitted.

**STATEMENT OF COMPLETENESS**

**I have reviewed the information being submitted in its entirety and, based on information and belief formed after reasonable inquiry, I certify that the statements and information contained in this submittal are true, accurate and complete.**

**Please note that the Colorado Statutes state that any person who knowingly, as defined in Sub-Section 18-1-501(6), C.R.S., makes any false material statement, representation, or certification in this document is guilty of a misdemeanor and may be punished in accordance with the provisions of Sub-Section 25-7 122.1, C.R.S.**


_____                    _____
Printed or Typed Name                                              Title


_____                    _____
Signature of Responsible Official                                  Date Signed

**Note: Deviation reports shall be submitted to the Division at the address given in Appendix D of this permit. No copies need be sent to the U.S. EPA.**

Operating Permit #95OPAD108                          First Issued:  October 1, 2006
                                                     Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                                Appendix C
Compliance Certification Report                                                          Page 1

# APPENDIX C

## Required Format for Annual Compliance Certification Report

with codes ver 8/20/14

Following is the format for the Compliance Certification report to be submitted to the Division and the U.S. EPA annually based on the effective date of the permit.   The Table below must be completed for all equipment or processes for which specific Operating Permit terms exist.

FACILITY NAME:          Suncor Energy (U.S.A.), Inc. – Commerce City Refinery, Plant 2 (East)

OPERATING PERMIT NO:  95OPAD108
REPORTING PERIOD:

I.      Facility Status

___ During the entire reporting period, this source was in compliance with **ALL** terms and conditions contained in the Permit, each term and condition of which is identified and included by this reference.  The method(s) used to determine compliance is/are the method(s) specified in the Permit.

___ With the possible exception of the deviations identified in the table below,  this source was in compliance with all terms and conditions contained in the  Permit, each term and condition of which is identified and included by this reference, during the entire reporting period.  The method used to determine compliance for each term and condition is the method specified in the Permit, unless otherwise indicated and described in the deviation report(s). Note that not all deviations are considered violations.

| Operating Permit Unit ID | Unit Description | Deviations Reported [1] | | Monitoring Method per Permit? [2] | | Was compliance continuous or intermittent? [3] | |
|---|---|---|---|---|---|---|---|
| | | Previous | Current | YES | NO | Continuous | Intermittent |
| **P001** | **Crude Distillation Unit** | | | | | | |
| B001 | Crude Heater | | | | | | |
| B010 | Vacuum Heater | | | | | | |
| F001 | Crude Unit Fugitive Sources | | | | | | |
| **P003** | **Fluid Catalytic Cracking Unit (FCCU)** | | | | | | |
| B002 | FCCU Preheater | | | | | | |
| P004 | FCCU Reactor-Regenerator | | | | | | |
| P014 | FCCU Catalyst Handling | | | | | | |
| F002 | FCCU Fugitive Sources | | | | | | |
| **P013 & P005** | **Naphtha Hydrotreater and Reformer Unit** | | | | | | |
| B003 | Reformer Heater #1 | | | | | | |
| B004 | Reformer Heater #2 | | | | | | |

Operating Permit #95OPAD108                                              First Issued:  October 1, 2006
                                                                         Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit
Compliance Certification Report

Appendix C
Page 2

| Operating Permit Unit ID | Unit Description | Deviations Reported [1] | | Monitoring Method per Permit?[2] | | Was compliance continuous or intermittent?[3] | |
|---|---|---|---|---|---|---|---|
| | | Previous | Current | YES | NO | Continuous | Intermittent |
| B005 | Reformer Heater #3 | | | | | | |
| F004 | Reformer Reactors (Catalyst Regeneration, Loading & Unloading) | | | | | | |
| F005 | Naphtha Hydrotreater Fugitive Sources | | | | | | |
| F007 | Reformer Fugitive Sources | | | | | | |
| **P009** | **Sulfur Recovery Plant** | | | | | | |
| P015 | Sulfur Recovery Unit Claus Plant | | | | | | |
| B011 | Sulfur Recovery Unit Incinerator | | | | | | |
| P008 | Amine Unit | | | | | | |
| P010 | Sour Water Stripper | | | | | | |
| F013 | Sulfur Recovery Unit/Amine Unit/Sour Water Stripper Fugitive Sources | | | | | | |
| | **Utilities** | | | | | | |
| B504 | Boiler | | | | | | |
| B505 | Boiler | | | | | | |
| P011 | Plant 2 Cooling Towers (E-523, E-524, E-525 and E-527) | | | | | | |
| | **Crude Unloading/Gasoline Tank Truck Loading Docks** | | | | | | |
| F015 | South (New) Crude Unloading | | | | | | |
| F016 | North (Old) Crude Unloading | | | | | | |
| F024 | Truck Loading Dock | | | | | | |
| C001 | Truck Loading Dock Combustor | | | | | | |
| F017 | Truck Loading Dock Fugitive Sources | | | | | | |
| **C005** | **Refinery Flare** | | | | | | |
| F018 | Refinery Flare Fugitive Sources | | | | | | |
| | **LPG Storage, Truck and Railcar Loading Facility** | | | | | | |
| F019 | Railcar Dock | | | | | | |
| F020 | LPG Truck Dock | | | | | | |
| C002 | Railcar Dock Flare | | | | | | |
| F040 | LPG loading at the Railcar Dock, the Railcar Dock Flare and the LPG Truck Loading Dock Fugitive Sources | | | | | | |
| F026 | Petroleum Product loading at Railcar Dock Fugitive Sources | | | | | | |
| T050 | Pressure Tank 50 | | | | | | |

Operating Permit #95OPAD108

First Issued:  October 1, 2006
Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                                    Appendix C
Compliance Certification Report                                                              Page 3

| Operating Permit Unit ID | Unit Description | Deviations Reported [1] | | Monitoring Method per Permit? [2] | | Was compliance continuous or intermittent? [3] | |
|---|---|---|---|---|---|---|---|
| | | Previous | Current | YES | NO | Continuous | Intermittent |
| T051 | Pressure Tank 51 | | | | | | |
| T060 | Pressure Tank 60 | | | | | | |
| T061 | Pressure Tank 61 | | | | | | |
| T063 | Pressure Tank 63 | | | | | | |
| T064 | Pressure Tank 64 | | | | | | |
| T066 | Pressure Tank 66 | | | | | | |
| T067 | Pressure Tank 67 | | | | | | |
| T068 | Pressure Tank 68 | | | | | | |
| T069 | Pressure Tank 69 | | | | | | |
| | **Plant 2 Wastewater Treatment Plant** | | | | | | |
| F021 | API Separators – Upper API | | | | | | |
| F022 | API Separators – Middle API | | | | | | |
| F023 | API Separators – Lower API | | | | | | |
| F011 | Gas Plant Sewers (also subject to requirements under fugitive emission sources, F012) | | | | | | |
| F025 | Sour Water Stripper Sewers | | | | | | |
| F030 | Boiler Sewers (also subject to requirements under fugitive emission sources, F036) | | | | | | |
| T029 | Tank 29 | | | | | | |
| | **Group B Tanks** | | | | | | |
| T010 | Tank 10 | | | | | | |
| T027 | Tank 27 | | | | | | |
| T030 | Tank 30 | | | | | | |
| | **Group C Tanks** | | | | | | |
| T008 | Tank 8 | | | | | | |
| T009 | Tank 9 | | | | | | |
| T043 | Tank 43 | | | | | | |
| T045 | Tank 45 | | | | | | |
| T048 | Tank 48 | | | | | | |
| T049 | Tank 49 | | | | | | |
| T057 | Tank 57 | | | | | | |
| | **Group D Tanks** | | | | | | |
| T039 | Tank 39 | | | | | | |
| | **Group E Tanks** | | | | | | |
| T006 | Tank 6 | | | | | | |
| T011 | Tank 11 | | | | | | |
| T012 | Tank 12 | | | | | | |

Operating Permit #95OPAD108                                         First Issued:  October 1, 2006
                                                                    Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit
Compliance Certification Report

Appendix C
Page 4

| Operating Permit Unit ID | Unit Description | Deviations Reported [1] | | Monitoring Method per Permit?[2] | | Was compliance continuous or intermittent?[3] | |
|---|---|---|---|---|---|---|---|
| | | Previous | Current | YES | NO | Continuous | Intermittent |
| T020 | Tank 20 | | | | | | |
| T026 | Tank 26 | | | | | | |
| T038 | Tank 38 | | | | | | |
| T046 | Tank 46 | | | | | | |
| T047 | Tank 47 | | | | | | |
| T053 | Tank 53 | | | | | | |
| T058 | Tank 58 | | | | | | |
| T062 | Tank 62 | | | | | | |
| T079 | Tank 79 | | | | | | |
| | **Group F Tanks** | | | | | | |
| T035 | Tank 35 | | | | | | |
| T036 | Tank 36 | | | | | | |
| T044 | Tank 44 | | | | | | |
| T052 | Tank 52 | | | | | | |
| T054 | Tank 54 | | | | | | |
| | **Group G Tanks** | | | | | | |
| T025 | Tank 25 | | | | | | |
| T028 | Tanks 28 | | | | | | |
| T037 | Tank 37 | | | | | | |
| | **Fugitive VOC Emission Sources** | | | | | | |
| F039 | Plant wide fugitive emissions from grandfathered sources | | | | | | |
| F010 | Polymerization Unit Fugitive Sources | | | | | | |
| F014 | Utilities Fuel Gas System Fugitive Sources | | | | | | |
| F012 | Gas plant fugitives | | | | | | |
| F034 | Piping modifications to products handling system (to implement a SEP) | | | | | | |
| F035 | Second stage of crude oil desalting project | | | | | | |
| F031 | Equipment leaks from installation of Tank T79 | | | | | | |
| F036 | Equipment leaks from fuel gas tie-ins for Boilers B504 and B505 | | | | | | |
| F037 | Equipment leaks identified in 2014 COC | | | | | | |
| F038 | Equipment leaks associated with the MPV Project | | | | | | |

Operating Permit #95OPAD108

First Issued:  October 1, 2006
Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                                    Appendix C
Compliance Certification Report                                                                  Page 5

| Operating Permit Unit ID | Unit Description | Deviations Reported [1] | | Monitoring Method per Permit? [2] | | Was compliance continuous or intermittent? [3] | |
|---|---|---|---|---|---|---|---|
| | | Previous | Current | YES | NO | Continuous | Intermittent |
| F045 | Equipment leaks associated with the P2 flare RSR Project | | | | | | |
| | **Miscellaneous Sources** | | | | | | |
| E001 | Security Center Emergency Generator | | | | | | |
| P2AC1 | Emergency Air Compressor (No. 2 FCCU) | | | | | | |
| | Cold Cleaner Solvent Degreasers | | | | | | |
| | Industrial Solvent Cleaning Operations | | | | | | |
| P2DGTO | Tank Cleaning and Degassing | | | | | | |
| MPVs | Miscellaneous Process Vents (defined in 40 CFR Part 63 Subpart CC §63.641), includes maintenance vents. | | | | | | |
| | Facility Wide Requirements | | | | | | |
| | General Conditions | | | | | | |
| | Insignificant Activities [4] | | | | | | |

[1] If deviations were noted in  a previous deviation report , put an "X" under "previous".  If deviations were noted in the current deviation report (i.e. for the last six months of the annual reporting period), put an "X" under "current".   Mark both columns if both apply.

[2] Note whether the method(s) used to determine the compliance status with each term and condition was the method(s) specified in the permit.  If it was not, mark  "no" and attach additional information/explanation.

[3] Note whether the compliance status with of each term and condition provided was continuous or intermittent.  "Intermittent Compliance" can mean either that noncompliance has occurred or that the owner or operator has data sufficient to certify compliance only on an intermittent basis.  Certification of intermittent compliance therefore does not necessarily mean that any noncompliance has occurred.

NOTE:

The Periodic Monitoring requirements of the Operating Permit program rule are intended to provide assurance that even in the absence of a continuous system of monitoring the Title V source can demonstrate whether it has operated in continuous compliance for the duration of the reporting period.  Therefore, if a source 1) conducts all of the monitoring and recordkeeping required in its permit, even if such activities are done periodically and not continuously, and if 2) such monitoring and recordkeeping does not indicate non-compliance, and if 3) the Responsible Official is not aware of any credible evidence that indicates non-compliance, then the Responsible Official can certify that the emission point(s) in question were in continuous compliance during the applicable time period.

[4] Compliance status for these sources shall be based on a reasonable inquiry using readily available information.

Operating Permit #95OPAD108                                        First Issued:  October 1, 2006
                                                                   Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                      Appendix C
Compliance Certification Report                                                    Page 6

II.    Status for Accidental Release Prevention Program:

A.    This facility _____ is subject _____ is not subject to the provisions of the Accidental Release Prevention Program (Section 112(r) of the Federal Clean Air Act)

B.    If subject: The facility _____ is _____ is not in compliance with all the requirements of section 112(r).

1.    A Risk Management Plan _____ will be _____ has been submitted to the appropriate authority and/or the designated central location by the required date.

III.    Certification

All information for the Annual Compliance Certification must be certified by a responsible official as defined in Colorado Regulation No. 3, Part A, Section I.B.  This signed certification document must be packaged with the documents being submitted.

**I have reviewed this certification in its entirety and, based on information and belief formed after reasonable inquiry, I certify that the statements and information contained in this certification are true, accurate and complete.**

**Please note that the Colorado Statutes state that any person who knowingly, as defined in § 18-1-501(6), C.R.S., makes any false material statement, representation, or certification in this document is guilty of a misdemeanor and may be punished in accordance with the provisions of § 25-7 122.1, C.R.S.**

_____

Printed or Typed Name                                                      Title

_____

Signature                                                          Date Signed

**NOTE:** All compliance certifications shall be submitted to the Air Pollution Control Division and to the Environmental Protection Agency at the addresses listed in Appendix D of this Permit.

Operating Permit #95OPAD108                                      First Issued:  October 1, 2006
                                                                Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit
Notification Addresses

Appendix D
Page 1

# APPENDIX D

## Notification Addresses

January 27, 2020 version

1.    **Air Pollution Control Division**

Colorado Department of Public Health and Environment
Air Pollution Control Division
Operating Permits Unit
APCD-SS-B1
4300 Cherry Creek Drive S.
Denver, CO  80246-1530

ATTN: Title V Permit Unit Supervisor

2.    **United States Environmental Protection Agency**

Compliance Notifications:

Enforcement and Compliance Assurance Division
Air and Toxics Enforcement Branch
Mail Code 8ENF-AT
U.S. Environmental Protection Agency, Region VIII
1595 Wynkoop Street
Denver, CO  80202-1129

502(b)(10) Changes, Off Permit Changes:

Air and Radiation Division
Air Permitting and Monitoring Branch
Mail Code 8ARD-PM
U.S. Environmental Protection Agency, Region VIII
1595 Wynkoop Street
Denver, CO  80202-1129

Air Pollution Control Division
Colorado Operating Permit                                                                      Appendix E
Permit Acronyms                                                                                     Page 1

## APPENDIX E

## Permit Acronyms

Listed Alphabetically:

| | |
|---|---|
| AIRS - | Aerometric Information Retrieval System |
| AP-42 - | EPA Document Compiling Air Pollutant Emission Factors |
| APEN - | Air Pollution Emission Notice (State of Colorado) |
| APCD - | Air Pollution Control Division (State of Colorado) |
| ASTM - | American Society for Testing and Materials |
| BACT - | Best Available Control Technology |
| BTU - | British Thermal Unit |
| CAA - | Clean Air Act (CAAA = Clean Air Act Amendments) |
| CCR - | Colorado Code of Regulations |
| CEM - | Continuous Emissions Monitor |
| CF - | Cubic Feet (SCF = Standard Cubic Feet) |
| CFR - | Code of Federal Regulations |
| CO - | Carbon Monoxide |
| COM - | Continuous Opacity Monitor |
| CRS - | Colorado Revised Statute |
| EF - | Emission Factor |
| EMD - | Electromotive Diesel |
| EPA - | Environmental Protection Agency |
| FI - | Fuel Input Rate in Lbs/MMBtu |
| FR - | Federal Register |
| G - | Grams |
| Gal - | Gallon |
| GMCS - | Gas Migration Control System |
| GPM - | Gallons per Minute |
| HAPs - | Hazardous Air Pollutants |
| HP - | Horsepower |
| HP-HR - | Horsepower Hour (G/HP-HR = Grams per Horsepower Hour) |
| LAER - | Lowest Achievable Emission Rate |
| LBS - | Pounds |
| M - | Thousand |
| MM - | Million |
| MMscf - | Million Standard Cubic Feet |
| MMscfd - | Million Standard Cubic Feet per Day |
| N/A or NA - | Not Applicable |
| NOx - | Nitrogen Oxides |
| NESHAP - | National Emission Standards for Hazardous Air Pollutants |
| NSPS - | New Source Performance Standards |
| P - | Process Weight Rate in Tons/Hr |
| PE - | Particulate Emissions |
| PM - | Particulate Matter |

Operating Permit #95OPAD108                                        First Issued:  October 1, 2006
                                                                   Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix E
Permit Acronyms                                                                 Page 2

| | |
|---|---|
| $PM_{10}$ - | Particulate Matter Under 10 Microns |
| PSD - | Prevention of Significant Deterioration |
| PTE - | Potential To Emit |
| RACT - | Reasonably Available Control Technology |
| SCC - | Source Classification Code |
| SCF - | Standard Cubic Feet |
| SIC - | Standard Industrial Classification |
| $SO_2$ - | Sulfur Dioxide |
| TPY - | Tons Per Year |
| TSP - | Total Suspended Particulate |
| VOC - | Volatile Organic Compounds |

Operating Permit #95OPAD108                              First Issued:  October 1, 2006
                                                         Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                                  Appendix F
Permit Modifications                                                                           Page 1

## APPENDIX F

## Permit Modifications

| DATE OF REVISION | TYPE OF REVISION | SECTION NUMBER, CONDITION NUMBER | DESCRIPTION OF REVISION |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Air Pollution Control Division
Colorado Operating Permit                                              Appendix G
FCCU Regenerator Compliance Assurance Monitroing Plan                   Page 1

# APPENDIX G

## FCCU Regenerator Compliance Assurance Monitoring Plan

### I.  Background

a.  <u>Emission Unit Description:</u>

Fluid Catalytic Cracking Unit (FCCU) Reactor-Regenerator (P004).

b.  <u>Applicable Regulation, Emission Limit, Monitoring Requirements:</u>

Regulations:            Operating Permit Conditions 2.1.2 (underlying Colorado Construction Permit (CP) 09AD0961), 2.2.2 (underlying CP 09AD0961 and Consent Decree No. SA-05-CA-0569, paragraph 95) and 2.7.2 (NSPS J)

Emission Limitations:    PM      24.1 tons/yr (Condition 2.1.2)
                         $PM_{10}$   24.1 tons/yr (Condition 2.1.2)
                         PM      1 lb/1,000 lb coke burn (Condition 2.2.2)
                         PM      1 lb/1,000 lb coke burn (Condition 2.7.2)

Note that all of the above PM and $PM_{10}$ limitations are for filterable PM or $PM_{10}$ only.

Monitoring Requirements:    Visible Emissions (Opacity)

c.  <u>Control Technology:</u>

The FCCU is equipped with a third-stage separator to control particulate matter emissions..

### II.  Monitoring Approach

|                        | Indicator 1                                                         |
|------------------------|---------------------------------------------------------------------|
| I.  Indicator          | Visible Emissions (Opacity)                                         |
| Measurement Approach   | Opacity emissions will be monitored by a Continuous Opacity Monitoring System (COMS). |

Operating Permit #95OPAD108                                First Issued:  October 1, 2006
                                                           Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                                        Appendix G
FCCU Regenerator Compliance Assurance Monitroing Plan                                            Page 2

|  | Indicator 1 |
|---|---|
| II.  Indicator Range | An excursion is defined as any 3-hour period in which the average opacity exceeds 20%, except as provided for below:<br><br>During periods of startup, shutdown and hot standby, a 3-hour period in which the opacity exceeds 20%, shall not be an excursion provided the provisions in Condition 41.5.5.2 (maintain the inlet velocity to the primary internal cyclones of the catalytic cracking unit catalyst regenerator at or above 20 feet per second) are met. Hot standby is defined in Condition 41.5.5.3. Records shall be kept for those periods during startup, shutdown and hot standby when the 3-hour average opacity exceeds 20% but the inlet velocity is a at or above 20 feet per second.<br><br>When an excursion occurs, corrective actions will be initiated beginning with an evaluation of the occurrence to determine the action required to correct the situation.<br><br>A history of the corrective action(s) will be maintained at the facility and made available upon request. |
| III.  Performance Criteria | |
| a.  Data Representativeness | An increase in visible emissions (opacity) under steady-state operating conditions is an indirect indication of a potential increase in particulate matter emissions. Opacity emissions are measured using a COMS located downstream of the third-stage separator (cyclones). |
| b.  QA/QC Practices and Criteria | The existing COMS is certified according to 40 CFR Part 60, Appendix B, Performance Specification 1. The COMS is subject to the QA/QC requirements in 40 CFR Part 60 § 60.13(d) and Appendix F. |
| c.  Monitoring Frequency | Continuous |
| d.  Data Collection Procedures | Opacity measurements will be performed in accordance with the requirements in 40 CFR Part 60 Subpart A § 60.13. The emissions data will be stored in the unit's DAHS. |
| e.  Averaging Time | COM data shall be reduced to 6-minute averages as required by 40 CFR Part 60 Subpart A § 60.13.  All 6-minute averages within an hour will be averaged together. Hourly opacity averages will be used in a 3-hour rolling average. |

**III.    Justification**

a.    <u>Background:</u>

The pollutant specific emission unit is the reactor-regenerator of the FCCU (P004). The catalyst reregenerator exhausts through a third-stage separator prior to release to the atmosphere. The third-stage separator is a cyclone designed to remove PM from the regenerator exhaust. In addition to removing PM via the third-stage separator, a slip stream of regenerator exhause is routed through a fourth-stage separator via a pair of critical flow nozzles. One nozzle is in operation at a time, with the second nozzle acting as a spare. The treated slip stream from the fourth stage is recombined with the regenerator stack upstream of the certified COMS. The combined exhaust flow is subject to the PM emission limits identified in this CAM plan.

b.    <u>Rationale for Selection of Performance Indicators:</u>

Air Pollution Control Division
Colorado Operating Permit                                                      Appendix G
FCCU Regenerator Compliance Assurance Monitroing Plan                               Page 3

The source proposed opacity as an indicator and the Division agrees that it is an appropriate indicator
of the third-stage separator (cyclone) performance. Based on the relationship between particulate
matter and opacity, an increase in opacity is a valid indication of increased particulate emissions due
to compromised cyclone performance.

c.      Rationale for Selection of Indicator Ranges:

In the CAM plan submitted with their renewal application (received on October 1, 2010), the source
suggested opacity not to exceed 30% except for one 6-minute average opacity reading in any 1-hour period
as an indicator range. As a justification, the source indicated that the monitoring approach was equivalent to
that in 40 CFR Part 63 Subpart UUU for a continuous compliance demonstration for sources required to
meet the NSPS J particulate matter requirements and the approach was selected for consistency, since the
unit is subject to both requirements.

The CAM rule indicates that if a source relies on presumptively acceptable monitoring no further
justification for the appropriateness of that monitoring should be necessary other than an explanation of the
applicability of such monitoring to the unit in question (see 64.4(b)). In accordance with 64.4(b)(4),
presumptively acceptable monitoring includes "monitoring included for standards exempt from this part
pursuant to 64.2(b)(1)(i) or (vi) to the extent such monitoring is applicable to the performance of the control
device (and associated capture system) for the pollutant specific emission unit." At the time of the CAM plan
submittal, the monitoring proposed was considered to be presumptively acceptable monitoring since the
standards in 40 CFR Part 63 Subpart UUU are exempt from CAM (see 64.2(b)(1)(i)).

The Division agreed that the opacity indicator was appropriate but disagreed with the indicator range. The
Division considered that since the FCCU is subject to a lower opacity limit of 20% on a 6-minute average,
that the lower opacity limit should be used as the indicator range, except during specific periods when
opacity is not to exceed 30%. These indicator ranges were included in the draft renewal permit that was sent
to public comment.

Based on the comments received during the public comment period, the Division considered that the
indicator ranges were not sufficiently justified. As a result of those comments, the Division has revised the
indicator range to be any 3-hour period in which the average opacity exceeds 20%. The source is required to
monitor opacity at all times, and determine 3-hour opacity averages; however, during periods of startup,
shutdown and hot standby, a 3-hour average opacity exceeding 20% is not considered an excursion provided
the requirements of Condition 41.5.5.2 (maintain the inlet velocity to the primary internal cyclones of the
catalytic cracking unit catalyst regenerator at or above 20 feet per second) are met. Hot standby is defined in
Condition 41.5.5.3.

In the December 1, 2015 Refinery Sector Rule (RSR) revisions, EPA revised the requirements in 40 CFR
Part 63 Subpart UUU, National Emision Standards for Petroleum Refineries: Catalytic Cracking Units,
Catalytic Reforming Units, and Sulfur Recovery Units (MACT UUU). The December 1, 2015 revisions,
maintained the PM emission limit for FCCUs subject to NSPS J (1 lb/1,000 lb coke burn-off and 30%

Air Pollution Control Division
Colorado Operating Permit                                                        Appendix G
FCCU Regenerator Compliance Assurance Monitroing Plan                              Page 4

opacity) but added an opacity operating limit of 20%, on a 3-hour rolling average. EPA noted the following regarding the 30% opacity limit in MACT UUU (see 80 FR 75191, December 1, 2015):

> Based on the Refinery NSPS subpart J review in 2008, we determined that a 30-percent opacity limit does not adequately assure compliance with the PM emissions limit (see discussion in the proposed rule at 79 FR 36929, June 30, 2014).

While the Division included a lower opacity indicator of 20% as CAM in the draft renewal permit, since we also included the 30% opacity indicator during specific operating conditions, the CAM indicators were difficult to justify. As a result, the Division is relying on the opacity operating limit (not to exceed 20% on a 3-hour rolling average) included in MACT UUU with the December 1, 2015 RSR revisions as the CAM indicator. EPA noted the following regarding the 20% opacity operating limit (see 80 FR 75203, December 1, 2015):

> While the compliance study indicates that a 30-percent opacity limit does not correlate well with a 1.0 lb PM/1,000 lbs coke burn-off emissions limit, further review of this same study indicates that a 20-percent opacity limit provides a reasonable correlation with units meeting the 1.0 lb PM/1,000 lbs coke burn-off emissions limit. We also reviewed the data submitted by the commenters regarding PM emissions and opacity correlation. While the data suggest that there is variability and uncertainty in the PM/opacity correlation, the data do not support that a 30-percent opacity limit would ensure compliance even when considering the uncertainty associated with the PM/ opacity correlation. Based on the variability of the 3-run average opacity limits, we determined that, if the 3-hour average opacity exceeded 20-percent, then it was highly likely (98 to 99- percent confidence) that the FCCU emissions from the unit tested would exceed the PM emissions limit. After considering the public comments, reviewing the data submitted with those comments, and further review of the compliance study, in this final rule we are adding a 20-percent opacity limit, evaluated on a 3-hour average basis for units subject to NSPS subpart J. As we noted above, a 20-percent opacity limit provides a reasonable correlation with the PM emissions limit, and an exceedance of this 20-percent opacity limit will provide evidence that the PM emissions limit is exceeded.

MACT UUU provides an alternative option to meeting the 3-hour opacity limit during periods of startup, shutdown and hot standby and that is keeping the inlet velocity to the primary internal cyclones of the catalytic cracking unit catalyst regenerator at or above 20 feet per second. EPA noted the following regarding this limit (see 80 FR 75220, December 1, 2015):

> Also, based on the data provided by the commenters, the minimum internal cyclone inlet velocity requirement will provide PM (and therefore metal HAP) emissions reductions during startup and shutdown periods. Therefore, considering the available data, we conclude that MACT for FCCU startup and shutdown events is maintaining the minimum internal cyclone inlet velocity of 20 feet/second.

The Division is relying on the opacity operating limit as the CAM indicator. However, because MACT UUU allows source to rely on the inlet velocity limit during periods of startup, shutdown and hot

Operating Permit #95OPAD108                                      First Issued: October 1, 2006
                                                                 Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix G
FCCU Regenerator Compliance Assurance Monitroing Plan                              Page 5

standby instead of the opacity operating limit, the Division does not consider those periods when the opacity operating limit is in excess of 20% to be an excursion, as long as the inlet velocity limit is met.

As discussed above, EPA considered the 20% opacity limit, on a 3-hr rolling average to be a good indicator that compliance with the PM limit of 1 lb/1,000 coke burn-off limit. Since the annual PM and $PM_{10}$ emission limits are based on an emission factor of 1 lb/1,000 lb coke burned, then the 20% opacity indicator is also a good indicator that the annual PM and $PM_{10}$ limits will be met.

Since the monitoring in this CAM Plan is consistent with the monitoring in MACT UUU, the Division considers that the 3-hour opacity indicator is appropriate.

Air Pollution Control Division
Colorado Operating Permit                                                     Appendix H
Prevention of Significant Deterioration (PSD) Review and Non-Attainment New Source Review (NANSR)
Applicability Tests                                                                Page

# APPENDIX H

## Prevention of Significant Deterioration (PSD) Review and Non-Attainment Area New Source Review (NANSR) Applicability Tests

An owner or operator of a major stationary source must determine whether a project will trigger major stationary source permitting requirements (i.e., PSD and/or NANSR) by conducting an applicability test using the procedures in Colorado Regulation No. 3, Part D, Section I.B. Sources that conduct the actual-to-projected actual test for a project that requires a minor permit modification are required to submit the information in Colorado Regulation No. 3, Part D, Section I.B.4.a through d and that information shall be included in an appendix of the Title V Operating permit (see Colorado Regulation No. 3, Part D, Section I.B.4)

An owner or operation is also required to monitor emissions of any NSR regulated pollutant that could increase as a result of the project for a period of five years or ten years (if the project increases the design capacity or the potential to emit) following resumption of regulation operations after the project is completed and to submit reports, if applicable, as required by Colorado Regulation No. 3, Part D, Section V.A.7.c and d and Section VI.B.5 and 6 (see Section IV, Condition 24). If actual emissions from the sources affected by the project exceed baseline emissions by a significant amount and are different from projected actual emissions presented in this Appendix within the five or ten year period following completion of the project, the project may need to be re-evaluated to determine whether the project resulted in a significant emissions increase or a significant net emissions increase at a major stationary source.

This Appendix H includes the PSD and/or NANSR applicability tests submitted for this facility.

## Miscellaneous Process Vent (MPV) Project

The purpose of the MPV Project is to address the new equipment necessary to meet the requirements for MPVs in the December 1, 2015 Refinery Sector Rule (RSR) Revision. The RSR revisions primarily address the two refinery NESHAPs, 40 CFR Part 63 Subparts CC and UUU. The December 1, 2015 RSR revisions removed "episodic or nonroutine releases such as those associated with startup, shutdown, malfunction, maintenance, depressuring and catalyst transfer operations" from the exception to the definition of miscellaneous process vent, making this equipment newly subject to the requirements in 40 CFR Part 63 Subpart CC.

In order to comply with the new MPV requirements, the source is proposing to install new connections to the flare header systems. The new flare connection systems will consist of permanent, direct equipment connections as well as purge manifolds for as needed, temporary connections. The installation of purge manifolds and other flare header connections will allow the source to prepare equipment for maintenance by purging with steam and/or nitrogen to the flare and will result in routing materials to the flares that were previously routed directly to the atmosphere.

This project does not increase the design capacity or potential to emit, therefore, the <u>timeframe to monitor emissions from this project is five years</u> after resuming operation upon completion of the project. The MPV project was completed in September 2017.

---

Operating Permit #95OPAD108

First Issued: October 1, 2006
Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                                 Appendix H
Prevention of Significant Deterioration (PSD) Review and Non-Attainment New Source Review (NANSR)
Applicability Tests                                                                            Page

The applicability analysis related to the MPV modification is included in this appendix. The MPV modification also affected equipment located at Plants 1 and 3 of the refinery which is addressed in a separate Title V permit (96OPAD120) but is included here to show the complete analysis. Note that except for the Plant 1 Main Flare (F1), the source has taken permit limits at the projected actual emission (PAE) level. In addition, permit limits were included in both Title V permits for new piping components. Finally, only the incremental emission increases from the boiler have been included in the analysis. Any increased utilization from the boilers (necessary for the steam tracing on the purge manifolds to prevent freezing) is expected to be minimal, if any.

Except for the new piping components, the units affected by this modification are existing units. Therefore, the major stationary source applicability test is based on a comparison of baseline actual emissions (BAE) to projected actual emissions (PAE).

Specific details regarding how BAE and PAE were determined can be found in the technical review document prepared for the **[September 1, 2022]** renewal Title V permit.

The resulting emissions increases for the project are shown below:

Table 1: Actual Emission Increases

| | Emissions (tons/yr) | | | | |
|---|---|---|---|---|---|
| | CO | NOx | VOC | PM/PM₁₀/PM₂.₅ | SO₂ |
| **P1 Flare** | | | | | |
| Baseline | 39.12 | 8.58 | 83.29 | 0.94 | 36.42 |
| PAE | 96.52 | 21.17 | 205.50 | 2.32 | 167.52 |
| Capable of Accommodating | 96.36 | 21.14 | 205.15 | 2.32 | 165.84 |
| Excludable[1] | 57.24 | 12.56 | 121.86 | 1.38 | 129.42 |
| Adjusted PAE[2] | 39.28 | 8.61 | 83.64 | 0.94 | 38.10 |
| **Change in Emissions[3]** | **0.16** | **0.03** | **0.35** | **4.00E-03** | **1.68** |
| **P3 (AU) Flare** | | | | | |
| Baseline | 2.42 | 0.53 | 5.16 | 5.82E-02 | 1.20E-02 |
| PAE | 5.43 | 1.19 | 11.56 | 0.13 | 16.86 |
| Capable of Accommodating | 2.42 | 0.53 | 5.16 | 5.83E-02 | 1.20E-02 |
| Excludable[1] | 0.00E+00 | 0.00E+00 | 0.00E+00 | 1.00E-04 | 0.00E+00 |
| Adjusted PAE[2] | 5.43 | 1.19 | 11.56 | 0.13 | 16.86 |
| **Change in Emissions[3]** | **3.01** | **0.66** | **6.40** | **7.17E-02** | **16.85** |
| **GBR Flare** | | | | | |
| Baseline | 5.06 | 1.28 | 11.61 | 0.14 | 1.18E-02 |
| PAE | 11.09 | 2.85 | 25.92 | 0.31 | 0.21 |
| Capable of Accommodating | 3.55 | 0.91 | 8.29 | 0.10 | 0.19 |
| Excludable[1, 4] | 0.00 | 0.00 | 0.00 | 0.00 | 0.18 |
| Adjusted PAE[2] | 11.09 | 2.85 | 25.92 | 0.31 | 0.03 |
| **Change in Emissions[3]** | **6.03** | **1.57** | **14.31** | **0.17** | **0.02** |
| **P2 Flare** | | | | | |

Operating Permit #95OPAD108                                First Issued:  October 1, 2006
                                                           Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix H
Prevention of Significant Deterioration (PSD) Review and Non-Attainment New Source Review (NANSR)
Applicability Tests                                                               Page

| | Emissions (tons/yr) | | | | |
| --- | --- | --- | --- | --- | --- |
| | CO | NO$_X$ | VOC | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ |
| **Project Emissions[5, 6]** | **0.65** | **0.14** | **0.73** | **0.02** | **13.62** |
| P1/3 Boilers | 0.14 | 0.31 | 0.01 | 0.02 | 0.07 |
| P2 Boilers | 0.15 | 0.11 | 0.02 | 0.04 | 0.04 |
| P1/3 Fugitive VOCs from New Piping Components | | | 3.71 | | |
| P2 Fugitive VOCs from New Piping Components | | | 2.55 | | |
| | | | | | |
| **Total** | **10.14** | **2.82** | **28.08** | **0.32** | **32.28** |

[1]Excludable emissions equals capable of accommodating minus baseline emissions.
[2]Adjusted PAE equals PAE minus excludable emissions.
[3]Change in emissions is adjusted PAE minus baseline.
[4]If capable of accommodating emissions are less than or equal to baseline emissions, excludable emissions are zero.
[5]As indicated in Table 2 below, the change in CO, PM, PM$_{10}$, PM$_{2.5}$, NO$_X$ and VOC emissions for the P2 flare are all negative due to the request to reduce the throughput limit for the flare. In part 1 of the PSD/NANSR applicability analysis (assess project emissions), only increases are included. So if the applicability test (i.e. PAE minus BAE) were negative the emissions increase would be zero for part 1 of the analysis. In order to appropriately assess project emissions, the increase from the P2 flare is the emissions estimated for the project alone (see the technical review document prepared for the **[September 1, 2022]** renewal Title V permit, page **??**). In accordance with Regulation No. 3, Part D, Section II.A.38.b.(iii), emissions related to the project cannot be excluded.
[6]SO$_2$ emissions are based on the applicability test shown in Table 2 below.

Table 2: Plant 2 Change in Actual Emissions

| | P2 Flare Emissions (tons/yr) | | | | |
| --- | --- | --- | --- | --- | --- |
| | CO | NO$_X$ | VOC | PM/PM$_{10}$/PM$_{2.5}$ | SO$_2$ |
| Baseline | 50.52 | 11.08 | 56.55 | 1.22 | 4.59 |
| PAE | 66.97 | 14.69 | 74.97 | 1.61 | 18.21 |
| Capable of Accommodating | 75.71 | 16.61 | 84.75 | 1.82 | 4.59 |
| Excludable[1,] | 25.19 | 5.53 | 28.20 | 0.60 | 0.00 |
| Adjusted PAE[2] | 41.78 | 9.16 | 46.77 | 1.01 | 18.21 |
| **Change in Emissions[2,]** | **-8.74** | **-1.92** | **-9.78** | **-0.21** | **13.62** |

[1]Excludable emissions equals capable of accommodating minus baseline emissions.
[2]Adjusted PAE equals PAE minus excludable emissions.
[3]Change in emissions is adjusted PAE minus baseline.

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix I
Sulfur Recovery Unit (SRU) Compliance Assurance Monitoring Plan                 Page 1

# APPENDIX I

## Sulfur Recovery Unit (SRU) Compliance Assurance Monitroing Plan

**I.    Background**

a.    Emission Unit Description:

Sulfur Recovery Unit (SRU) Claus Plant (P015).

d.    Applicable Regulation, Emission Limit, Monitoring Requirements:

Regulations:              Operating Permit Condition 5.1.3 (underlying Colorado Construction Permit (CP) 12AD032-3)

Emission Limitations:     $H_2S$    10.8 tons/yr

Monitoring Requirements:  Combustion Zone Temperature, Oxygen Concentration

e.    Control Technology:

The SRU is equipped with tail gas incinerator to convert emissions of $H_2S$ and other sulfur compounds to $SO_2$ emissions.

**II.    Monitoring Approach**

|  | Indicator 1 | Indicator 2 |
|---|---|---|
| I.  Indicator | Combustion Zone Temperature | Oxygen ($O_2$) Concentration (%, dry) |
| Measurement Approach | Combustion zone temperature shall be monitored using a temperature sensor. | Percent oxygen will be monitored using an $O_2$ Continuous Emission Monitoring System (CEMS) |

Operating Permit #95OPAD108                              First Issued:  October 1, 2006
                                                         Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                          Appendix I
Sulfur Recovery Unit (SRU) Compliance Assurance Monitoring Plan                    Page 2

|  | Indicator 1 | Indicator 2 |
|---|---|---|
| II. Indicator Range | Except as provided for below, an excursion is defined as any daily average combustion zone temperature less then the value established by compliance testing.<br><br>During periods of startup and shutdown, a daily average combustion zone temperature less that the value established by the compliance test is not an excursion if the hourly combustion zone temperature is not less than 1,200 °F.<br><br>The combustion zone temperature set by the June 2017 compliance test is 1,416 °F. This value will be revised based on the results of future compliance tests as specified in Condition 5.1.3.2. | Except as provided for below, an excursion is defined as any daily average $O_2$ concentration below the concentration established by compliance testing.<br><br>During periods of startup and shutdown, a daily average $O_2$ concentration less that the value established by the compliance test is not an excursion if the hourly $O_2$ concentration is not less than 2%.<br><br>The $O_2$ concentration set by the June 2017 compliance test is 0.846%. This value will be revised based on the results of future compliance tests as specified in Condition 5.1.3.2. |
| | In addition to the above, when an excursion occurs, corrective actions will be initiated beginning with an evaluation of the occurrence to determine the action required to correct the situation.<br><br>A history of the corrective action(s) will be maintained at the facility and made available upon request. | |
| III. Performance Criteria | | |
| a. Data Representativeness | The temperature sensor shall be located in the combustion zone, or in the ductwork immediately downstream of the combustion zone before any substantial heat exchange occurs. The temperature sensor shall have an accuracy of at least ±1 percent over the normal range of temperature measured, expressed in degrees Celsius (C), or 2.8 degrees C, whichever is greater. | The $O_2$ CEMS shall be located in the vent stream of the incinerator. |
| b. QA/QC Practices and Criteria | Calibration checks shall be conducted at least annually and following any period of more than 24 hours throughout which the temperature exceeded the manufacturer's specified maximum rated temperature or install a new temperature sensor. Inspect all components for integrity and all electrical connections for continuity, oxidation, and galvanic corrosion at least quarterly, unless the continuous temperature monitoring system has a redundant temperature sensor. Records shall be kept of each calibration check and inspection. | The $O_2$ CEMS shall meet the requirements in 40 CFR Part 60 Appendix B, Performance Specification 3 and 40 CFR Part 60 Appendix F, Procedure 1, except relative accuracy test audits are required annually instead of quarterly. |
| c. Monitoring Frequency | Continuous | Continuous |
| d. Data Collection Procedures | The continuous temperature monitoring system shall meet the requirements in 40 CFR Part 63 Subpart UUU § 63.1572(c) (Condition 41.32). | The $O_2$ CEMS shall meet the requirements in 40 CFR Part 63 Subpart UUU § 63.1572(a) (Condition 41.30) |

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                                Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                   Appendix I
Sulfur Recovery Unit (SRU) Compliance Assurance Monitoring Plan             Page 3

|  | Indicator 1 | Indicator 2 |
|---|---|---|
| e. Averaging Time | The continuous temperature monitoring system shall determine and record the hourly and daily average of all recorded readings for each operating day. The daily average must cover a 24-hour period if operation is continuous or the number of hours of operation per day if operation is not continuous. | The continuous $O_2$ monitoring system shall determine and record the hourly and daily average of all recorded readings for each operating day. The daily average must cover a 24-hour period if operation is continuous or the number of hours of operation per day if operation is not continuous. |

## III.    Justification

a.    Background:

The pollutant specific emission unit is the SRU (P015). The SRU converts hydrogen sulfide ($H_2S$) separated from refinery gas streams into elemental sulfur. Tail gas from the SRU is routed to an incinerator (B011) to combust $H_2S$ and other sufur compounds to $SO_2$ emissions.  The SRU is subject to an $H_2S$ emission limit that is assumed to be 4% of $SO_2$ emissions.

A performance test was conducted on the SRU tail gas incinerator in June 2017 in order to demonstrate compliance with the requirements in 40 CFR Part 63 Subpart UUU for SRUs (300 ppm total reduced sulfur (TRS), expressed as an equivalent $SO_2$ concentration (dry basis), corrected to 0% $O_2$) and to establish the operating limits (combustion zone temperature and $O_2$ concentration) for the compliance option (option 2, TRS limit, use continuous parameter monitoring systems). The purpose of the compliance test was to demonstrate compliance with the TRS limit and set new operating limits, since the temperature sensor was replaced. Although the purpose of this test was not to verify that $H_2S$ emissions were less than or equal to 4% of $SO_2$ emissions, data from the $H_2S$ concentration data from 2017 test and $SO_2$ CEMS data provided by the source for that time period does demonstrate that $H_2S$ emissions are less than or equal to 4% of $SO_2$ emissions. Results of the 2017 performance test are shown in the table below:

| $H_2S$ Concentration[1] | $SO_2$ Concentration[2] | $H_2S$ percent of $SO_2$[3] |
|---|---|---|
| 1.29 ppmv dry | 3,325.79, corrected to 0% $O_2$ | 0.039% |

[1]Based on an $H_2S$ concentration of 1.24 ppm (3-run average), corrected to 0% $O_2$ based on an $O_2$ concentration of 0.69% (3-run average). Data from Table 2-1 of June 2017 performance test report,.
[2]$SO_2$ Concentration from Suncor. Based on $SO_2$ CEMS data.

b.    Rationale for Selection of Performance Indicators and Indicator Ranges:

As discussed above, $H_2S$ and other sulfur compounds are combusted in the incinerator. The temperature in the combustion zone and the $O_2$ concentration were chosen as indicator ranges as these are indicators of efficient combustion.

The CAM rule indicates that if a source relies on presumptively acceptable monitoring no further justification for the appropriateness of that monitoring should be necessary other than an explanation of the applicability of such monitoring to the unit in question (see 64.4(b)). In accordance with

Operating Permit #95OPAD108                                First Issued:  October 1, 2006
                                                            Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                               Appendix I
Sulfur Recovery Unit (SRU) Compliance Assurance Monitoring Plan                Page 4

64.4(b)(4), presumptively acceptable monitoring includes "monitoring included for standards exempt
from this part pursuant to 64.2(b)(1)(i) or (vi) to the extent such monitoring is applicable to the
performance of the control device (and associated capture system) for the pollutant specific emission
unit." The standards in 40 CFR Part 63 Subpart UUU are exempt from CAM requirements (see
64.2(b)(1)(i)).

The monitoring proposed in this CAM plan is consistent with the monitoring required for SRUs
equipped with an incinerator and meeting the total reduced sulfur requirement in 40 CFR Part 63
Subpart UUU. Therefore, the Division considers that the monitoring is acceptable.

The temperature and $O_2$ concentration indicator ranges have been set based on a 2017 compliance
test. The Division has included a requirement to conduct a compliance test within 180 days of renewal
permit issuance **[September 1, 2022]** to reset the indicator ranges. The indicator ranges will be reset
in subsequent performance tests, frequency of tests shall be based on the test results. The permit
requires that compliance tests be conducted and the proposed minimum temperature and $O_2$
concentrations be submitted for Division approval. The permit also requires that the source submit a
minor modification application to revise the permit and incorporate the proposed indicator ranges.
Such application shall be submitted with the proposed indicator ranges.

---

Operating Permit #95OPAD108                              First Issued:  October 1, 2006
                                                         Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                                    Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans                              Page 1

**APPENDIX J**

**Flare and Vapor Combustor Compliance Assurance Monitoring Plans**

**F024 - Truck Loading Dock with Combustor**

**I.      Background**

a.      <u>Emission Unit Description:</u>

The truck loading rack loads gasoline and distillates into tanker trucks.

b.      <u>Applicable Regulation, Emission Limit, Monitoring Requirements:</u>

Regulations:                    Operating Permit Conditions 7.1.1 (Underlying Colorado Construction Permit (CP) 11AD251)

Emission Limitations:          VOC    17.2 tons/yr

Monitoring Requirements:       Combustion zone temperature

c.      <u>Control Technology:</u>

Vapors from loading gasoline and distillate are routed to a vapor combustor (C001).

**II.     Monitoring Approach**

|  | Indicator 1 |
|---|---|
| I.  Indicator | Combustion Zone Temperature |
| Measurement Approach | The combustion zone temperature shall be monitored using a temperature sensor. |

Operating Permit #95OPAD108                                    First Issued:  October 1, 2006
                                                               Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                                              Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans                          Page 2

|  | Indicator 1 |
|---|---|
| II.  Indicator Range | An excursion is defined as any 12-hour perid in which the combustion zone temperature is less than 500 °F on a 12-hour rolling average. |
|  | Following completion of the first compliance test required by Condition 7.11, an excursion is defined as any 6-hour period in which the combustion zone temperature is less than the value determined by the compliance test. |
|  | The combustion zone temperature was set by a performance test conducted on June 27, 2008. This value, as well as the averaging time, will be revised based on the results of any future compliance tests as specified in Conditions 7.6.4 and 7.11. |
|  | When an excursion is detected, the owner or operator shall take actions specified in Condition 49.7.3.1 as expeditiously as practicable. |
|  | Records of any adjustments or repairs shall be maintained at the facility and made available to the Division upon request. |
| III.  Performance Criteria | |
| a.  Data Representativeness | The temperature sensor shall be located in the combustion zone, or in ductwork immediately downstream of the combustion zone before any substantial heat exchange occurs. The sensor shall have a minimum accuracy of +/- 1% of the temperature measured. |
| b.  QA/QC Practices and Criteria | Calibration checks of the temperature sensor shall be conducted every five (5) years. Records of each calibration check shall be maintained and made available to the Division upon request. |
| c.  Monitoring Frequency | Continuous |
| d.  Data Collection Procedures | A continuous temperature monitoring system shall be used to monitor temperature in the combustion zone. |
| e.  Averaging Time | Temperature data recorded shall be reduced to hourly averages and used in a 12-hour rolling average. Only those 1-minute values recorded during periods when gasoline or distillates are being loaded, are required to be used in the 12-hour rolling averages. Periods when only pilot or assist gases are being combusted, shall not be used to calculate the 12-hour rolling averages. As indicated above, following completion of the compliance test required by Condition 7.11, data shall be reduced to hourly averages and used in a 6-hour rolling average using the methods described in the above paragraph. |

**III.     Justification**

a.     Background:

The pollutant specific emission unit is the truck loading rack which loads gasoline and distillates into tanker trucks. Vapors from loading petroleum products are routed to a vapor combustor.

b.     Rationale for Selection of Performance Indicators:

Air Pollution Control Division
Colorado Operating Permit                                                      Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans                     Page 3

The combustion zone temperature was chosen as the indicator because it is an indicator of combustion efficiency. If the chamber temperature decreases significantly, complete combustion may not occur. By maintaining the operating temperature at or above the minimum, a level of control efficiency can be expected to be achieved.

The CAM rule indicates that if a source relies on presumptively acceptable monitoring no further justification for the appropriateness of that monitoring should be necessary other than an explanation of the applicability of such monitoring to the unit in question (see 64.4(b)). In accordance with 64.4(b)(4), presumptively acceptable monitoring includes "monitoring included for standards exempt from this part pursuant to 64.2(b)(1)(i) or (vi) to the extent such monitoring is applicable to the performance of the control device (and associated capture system) for the pollutant specific emission unit."

The monitoring for the vapor combustor is consistent with the monitoring in 40 CFR Part 63 Subpart R, "National Emission Standards for Gasoline Distribution Facilities (Bulk Gasoline Terminals and Pipeline Breakout Stations" (MACT R), for units that rely on a thermal oxidation system other than a flare (see 63.427(a)(3)). The standards in MACT R are exempt from the CAM requirements (see 64.2(b)(1)(i)). In addition, it should be noted the truck rack is subject to the requirements in MACT R, when loading gasoline, via MACT CC. Since monitoring the combustion zone temperature in the vapor combustor is consistent with the requirements in MACT R, the Division considers that the monitoring is acceptable.

In addition to loading gasoline, the truck rack is also used to load distillates. Vapors from loading these materials are routed to the vapor combustor. The Division considers that monitoring the combustion zone temperature is also appropriate monitoring for loading and unloading these other materials. Permitted emissions from these activities assume a control efficiency of 95% for these materials. As discussed below the compliance test indicated that the control efficiency exceeded 95% when loading both gasoline and distillate.

c.     Rationale for Selection of Indicator Ranges:

A compliance test was conducted on the truck rack vapor combustor on June 27, 2008 to assess compliance with the MACT R limit and to verify the control efficiency. The results of June 2008 test are shown in the table below. Note that as described above, a performance test is required by Condition 7.11 to verify the control efficiency of the vapor combustor and compliance with the MACT R limit, as well as to revise the temperature limit and averaging time (averaging time shall be no less than 6-hours).

| Test Date | Outlet VOC (lb/hr) | Outlet VOC (mg/l) | Control Efficiency (%) | Combustion Chamber Temperature (°F) |
|---|---|---|---|---|
| June 27, 2008 | 0.02 | 0.21 | 99.998 | 1,170[1] |

[1]The September 2, 2008 application to revise the monitoring requirements for the truck rack vapor combustor provided data showing that at 500 °F the MACT R limit of 10 mg/l was met and the Division allowed it to be used for ongoing monioring. Nevertheless the Division considers that the minimum temperature, as well as the averaging time, should be revised thus ongoing compliance tests were included in the permit.

Air Pollution Control Division
Colorado Operating Permit                                               Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans          Page 4

## F019 – LPG and Distillate Railcar Loading Dock

**I.     Background**

a.     <u>Emission Unit Description:</u>

The rail loading rack loads liquefied petroleum gas (LPG) and distillates into rail cars.

b.     <u>Applicable Regulation, Emission Limit, Monitoring Requirements:</u>

Regulations:              Operating Permit Condition 9.1.1 (Underlying Colorado Construction Permit (CP) 89AD031)

Emission Limitations:     VOC   37.8 tons/yr

Monitoring Requirements:  Presence of a pilot flame

c.     <u>Control Technology:</u>

Vapors from loading LPG and distillate are routed to an open flare (C002).

**II.     Monitoring Approach**

| | Indicator 1 |
|---|---|
| I.  Indicator | Presence of a pilot flame |
| Measurement Approach | The presence of a flare pilot flame shall be continuoutly monitored using a heat-sensing device, such as an ultraviolet beam sensor or a thermocouple to indicate the presence of a flame. |
| II.  Indicator Range | An excursion is defined as follows:<br><br>Any period when vapors from LPG and distillate loading are routed to the flare and<br><br>• the presence of a pilot flame is not detected.<br><br>• the pilot flame monitoring device is inoperable.<br><br>When an excursion is detected, the owner or operator shall take actions specified in Condition 49.7.3.1 as expeditiously as practicable.<br><br>Records of any adjustments or repairs shall be maintained at the facility and made available to the Division upon request. |
| III.  Performance Criteria | |
| a.  Data Representativeness | The thermocouple or heat-sensing device must be installed in proximity to the pilot light to indicate the presence of a flame. |

Operating Permit #95OPAD108                          First Issued:  October 1, 2006
                                                     Renewed: September 1, 2022

Case No. 1:24-cv-02164-DDD-SBP    Document 27-3    filed 01/21/25    USDC Colorado
pg 382 of 388
Appellate Case: 25-1243    Document: 18-5    Date Filed: 09/05/2025    Page: 87

Air Pollution Control Division
Colorado Operating Permit                                            Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans              Page 5

|   | Indicator 1 |
|---|---|
| b.  QA/QC Practices and Criteria | The flare, heat sensing device and any associated instrumentation and control system logic shall be operated and maintained in accordance with manufacturer's recommendations and good engineering practices. A copy of operating and maintenance procedures, schedules for maintenance and/or inspection activities and records related to maintenance of the flare, heat sensing device, associated instrumentation and control system logic and good engineering practices such as records of inspection, repair, or replacement shall be made available to the Division upon request. |
| c.  Monitoring Frequency | Continuous |
| d.  Data Collection Procedures | A heat-sensing device shall be used to indicate the presence of a flame. Records shall be kept of the periods the pilot flame is out or the heat-sensing device is inoperable. |
| e.  Averaging Time | None |

## III.    Justification

a.    <u>Background:</u>

The pollutant specific emission unit is the  rail loading rack which loads LPGs and distillates into rail cars. Vapors from loading these materials are routed to an open flare (C002).

b.    <u>Rationale for Selection of Performance Indicators:</u>

The destruction of VOC emissions is dependent upon combustion. The flare is equipped with a thermal device to ensure that a flame is present. If no flame is present then combustion will not occur.

The CAM rule indicates that if a source relies on presumptively acceptable monitoring no further justification for the appropriateness of that monitoring should be necessary other than an explanation of the applicability of such monitoring to the unit in question (see 64.4(b)).

The monitoring for the rail rack flare is consistent with the monitoring in 40 CFR Part 60 Subpart A, § 60.18, which requires monitoring for the presence of a pilot flame (see 60.18(f)(2)). EPA noted the following in the preamble to the final CAM rule (62 FR 54924, dated October 22, 1997):

After considering comments received on the monitoring requirements for flares in 40 CFR 60.18, EPA is designating, at this time, that monitoring as presumptively acceptable. This designation is being made in recognition that some published monitoring practices or protocols provide sufficient design and monitoring performance specifications to satisfy CAM requirements while not fully satisfying the part 64 definition for a continuous compliance determination method. Some presumptively monitoring protocols may include procedures for calculating compliance with applicable emission limitations or standards but have some portions subject to CAM requirements (e.g., monitoring to indicate a reasonable assurance that control device efficiency is maintained at an assumed level) as indicated in § 64.2(b)(1)(vi) of the rule

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans              Page 6

In accordance with 64.4(b)(4), presumptively acceptable monitoring includes "monitoring included for standards exempt from this part pursuant to 64.2(b)(1)(i) or (vi) to the extent such monitoring is applicable to the performance of the control device (and associated capture system) for the pollutant specific emission unit."

The monitoring for the flare is consistent with the monitoring in 40 CFR Part 63 Subpart R, "National Emission Standards for Gasoline Distribution Facilities (Bulk Gasoline Terminals and Pipeline Breakout Stations" (MACT R), for gasoline loading racks that rely on a flare (see 63.427(a)(4)). The standards in MACT R are exempt from the CAM requirements (see 64.2(b)(1)(i)). The rail loading rack was previously subject to the requirements in MACT R, until the source ceased loading gasoline at the rail rack. The Division considers it is appropriate to rely on monitoring in MACT R for a loading rack equipped with a flare.

Since the monitoring for the rail rack flare is consistent with the monitoring in 60.18 and MACT R, the Division considers that the monitoring is acceptable.

c.    Rationale for Selection of Indicator Ranges:

Since VOC reduction is based on combustion and combustion does not occur without a pilot flame, the lack of a flame or failure of the pilot monitoring device are appropriate indicators that the flare may not be functioning properly

Air Pollution Control Division
Colorado Operating Permit                                                    Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans              Page 7

## C005 – Refinery Flare

**I.    Background**

      a.    <u>Emission Unit Description:</u>

      Multiple process vents, pressure relief devices and other flare tie-ins.

      b.    <u>Applicable Regulation, Emission Limit, Monitoring Requirements:</u>

| | |
|---|---|
| Regulations: | Operating Permit Condition 8.1 (Underlying Colorado Construction Permit ) |
| Emission Limitations: | VOC           84.8 tons/yr |
| Monitoring Requirements: | Presence of the pilot flame(s) <br> Net heating value of flare combustion zone gas |

      c.    <u>Control Technology:</u>

      Vapors from mutiple process vents, pressure relief devices and other tie-ins are routed to the refinery flare.

**II.    Monitoring Approach**

| | Indicator 1 | Indicator 2 |
|---|---|---|
| I.  Indicator | Presence of the pilot flame(s) | Net heating value of flare combustion zone gas. |
| Measurement Approach | The presence of the flare pilot flame(s) shall be continuously monitored using a device (including, but not limited to, a thermocouple, ultraviolet beam sensor, or infrared sensor) capable of detecting that the pilot flame(s) is present. | The net heating value of the flare combustion zone gas shall be continuously monitored using a calorimeter capable of continuously measuring, calculating, and recording $NHV_{vg}$ at standard conditions. |
| II.  Indicator Range | An excursion is defined as follows: <br><br> Any 15-minute block period during which there was at least one minute when waste gas is routed to the flare and no pilot flame is present. | An excursion is defined as follows: <br><br> Any 15-minute period in which waste gas is routed to the flare for at least 15 minutes and the net heating value of flare combustion zone gas is less than 270 Btu/scf. |
| | When an excursion is detected, the owner or operator shall take actions specified in Condition 49.7.3.1 as expeditiously as practicable. <br><br> Records of any adjustments or repairs shall be maintained at the facility and made available to the Division upon request. | |

Operating Permit #95OPAD108                          First Issued:  October 1, 2006
                                                     Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                              Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans          Page 8

|  | Indicator 1 | Indicator 2 |
|---|---|---|
| III.  Performance Criteria |  |  |
| a.  Data Representativeness | The thermocouple or heat-sensing device must be installed in proximity to the pilot light(s) to indicate the presence of the flame(s). | Where feasible, select a sampling location at least two equivalent diameters downstream from and 0.5 equivalent diameters upstream from the nearest disturbance. Select the sampling location at least two equivalent duct diameters from the nearest control device, point of pollutant generation, air in-leakages, or other point at which a change in the pollutant concentration or emission rate occurs.<br>The calorimeter shall have a minimium accuracy of +/- 2% of the span. |
| b.  QA/QC Practices and Criteria | The flare pilot flame continuous parameter monitoring system (CPMS) shall comply with the requirements in 40 CFR Part 63 Subpart CC § 63.671(a), (b), and (d). | The CPMS shall comply with the requirements in 40 CFR Part 63 Subpart CC § 63.671(a) thru (d).<br>Calibration requirements should follow manufacturer's recommendations at a minimum.<br>Temperature control (heated and/or cooled as necessary) the sampling system to ensure proper year-round operation.<br>Any Temperature and pressure monitoring systems necessary for converting calorimeter values to standard conditions shall be meet the requirements in 40 CFR Part 63 Subpart CC § 63.671(a) thru (d) and Table 13. |
| c.  Monitoring Frequency | Continuous | Continuous |
| d.  Data Collection Procedures | Records of the pilot flame(s) presence shall be maintained in accordance with the requirements in 40 CFR Part 63 Subpart CC § 63.655(i)(9). | The 15-minute block average of the net heating value of gases in the flare combustion zone shall be calculated in accordance with the methods set forth in 40 CFR Part 63 Subpart CC § 63.670(m)(1) (Condition 40.101.1). |
| e.  Averaging Time | 15-minute block periods | 15-minute block periods |

## III.    Justification

a.    <u>Background:</u>

As discussed in more detail in the technical review document, the Division is including this CAM plan in response to EPA's objection during the 45-day review period for the renewal permit **[issue DATE]**. The Division had previously considered the refinery flare to be exempt from CAM because its primary purpose was for safe operation of the refinery and thus was considered inherent process equipment.

---

Operating Permit #95OPAD108                                First Issued:  October 1, 2006
                                                           Renewed: September 1, 2022

Air Pollution Control Division
Colorado Operating Permit                                              Appendix J
Flare and Vapor Combustor Compliance Assurance Monitoring Plans        Page 9

b.     Rationale for Selection of Performance Indicators:

The destruction of VOC emissions is dependent upon combustion. The flare is equipped with a
thermal device to ensure that a flame is present. If no flame is present then combustion will not occur.
In addition, gases routed to the flare should have sufficient heat value in order to achieve a greater
degree of destruction and removal or control efficiency.

The CAM rule indicates that if a source relies on presumptively acceptable monitoring no further
justification for the appropriateness of that monitoring should be necessary other than an explanation
of the applicability of such monitoring to the unit in question (see 64.4(b)). In accordance with
64.4(b)(4), presumptively acceptable monitoring includes "monitoring included for standards exempt
from this part pursuant to 64.2(b)(1)(i) or (vi) to the extent such monitoring is applicable to the
performance of the control device (and associated capture system) for the pollutant specific emission
unit."

The monitoring for the flare is consistent with the monitoring in 40 CFR Part 63 Subpart CC,
"National Emission Standards for Hazardous Air Pollutants from Petroleum Refineries" (MACT CC),
as MACT CC requires continuous monitoring for the presence of a pilot flame, as well as continuous
monitoring of the net heating value of flare combustion zone gas. The standards in MACT CC are
exempt from the CAM requirements (see 64.2(b)(1)(i)). In addition, it should be noted that the flare
is subject to the requirements in MACT CC. There is additional monitoring specified in MACT CC
(e.g. visible emissions monitoring, and monitoring for flare tip velocity) to which this flares is subject
to, and must comply with, however, those other requirements are not being specifically identified as
CAM requirements. The Division considers that monitoring for the presence of the flare pilot flame,
and the net heating value of the flare combustion zone gas, are the most important parameters to
ensure, the flare is well operated and meeting the destruction and removal or control efficiency that
was relied upon to set the VOC emission limit.

Since the monitoring in this CAM plan is consistent with the monitoring in MACT CC, the Division
considers that monitoring for the presence of the pilot flame and the net heating value of the flare
combustion zone gas are appropriate.

c.     Rationale for Selection of Indicator Ranges:

The indicator ranges (no pilot flame and maintaining the net heating value of the flare combustion
zone gas above 270 Btu/scf) are consistent with the operating requirements for flares in MACT CC
§§ 63.670 and 63.671. The VOC emission limit set for the refinery flare was based on emission factors
that relied on the historic composition of flare waste gas and an assumed destruction and removal or
control efficiency of 98%.

In the preamble to the final Refinery Sector Rule revisions (80 FR 75211, December 1, 2015), EPA notes
the following on page 75211:

Based on the results of all of our analyses, the EPA is finalizing a single minimum NHVcz operating limit for flares subject to the Petroleum Refinery MACT standards of 270 BTU/scf during any 15-minute period. The agency believes, given the results from the various data analyses conducted, that this operating limit is appropriate, reasonable and will ensure that refinery flares meet 98-percent destruction efficiency at all times when operated in concert with the other suite of requirements refinery flares need to achieve (e.g., flare tip velocity requirements, visible emissions requirements, and continuously lit pilot flame requirements).

Thus the Division considers that maintaining the the net heating value of the flare combustion zone gas at or above 270 Btu/scf is appropriate. In discussions with EPA regarding their objections to the Plant 2 renewal permit, EPA indicated that the Division needed to justify that the MACT CC flare requirements, which as previously stated are presumptively acceptable monitoring for CAM (see 64.4(b)(4)), are appropriate for a 98% control efficiency assumed for VOC emissions. MACT requirements address HAP emissions, although frequently surrogates are relied upon instead of HAP emissions (e.g. MACT UUU regulates CO emissions from FCCUs, in lieu of HAPs).

The Division considers that the MACT CC flare requirements are appropriate to rely on for a VOC emission limit that is based on 98% control efficiency since the HAP emissions expected to be emitted from the flare (e.g. hexane, benzene) are also VOCs. In addition, EPA has already indicated that they believe the monitoring in MACT CC would result in flares meeting a 98% VOC destruction efficiency.

For example, EPA states the following on page 13.5-4 of AP-42, Section 13.5:

> For flares operated at petroleum refineries, EPA has determined that the net heating value of the gas in the combustion zone of the flare should be greater than or equal to 270 Btu/ft$^3$ to obtain a destruction efficiency of at least 98%.[b]
>
> _____
>
> [b] See Petroleum Refinery Sector Risk and Technology Review and New Source Performance Standards Final Rule, December 1, 2015 (80 FR 75183). Net heating value of the combustion zone is determined on a 15-minute average, and refinery owners and operators may use a corrected heat content for hydrogen when determining the combustion zone heat value.

Since AP-42 Section 13-5 does not include emission factors for HAP emissions the Division presumes this control efficiency referenced in this section applies to VOC or total hydrocarbons, not just HAP emissions.

Additionally, the EPA recently confirmed that the MACT CC requirements would allow a flare to achieve 98% destruction efficiency for VOC in a petition response (BP Amoco Chemical Company, Texas City Chemical Plant, Galveston County, Petition No. VI-2017-6, page 23, signed July 20, 2021):

The EPA promulgated regulations for petroleum refineries (regulated under 40 C.F.R. part 63, subpart CC) designed to assure that steam-and air-assisted flares actually achieve a 98 percent VOC destruction efficiency. These regulations require that flares meet a minimum operating limit of 270 BTU/scf on a 15-minute block period basis. 40 C.F.R. § 63.670(e).[36] Importantly, and unlike prior sector-specific rules and the General Provisions, this heating value reflects the net heating value in the combustion zone (NHVcz) (that is, the flare tip), after the addition of any assist gas (steam or air) and supplemental fuel. See id. § 63.670(m) (calculation methods for NHVcz). This better accounts for any degradation in combustion efficiency that might be caused by dilution of the BTU value by the assist gas. To support this operational limit, the refinery regulations require, for steam- and air-assisted flares, that "the owner or operator shall install, operate, calibrate, and maintain a monitoring system capable of continuously measuring, calculating, and recording the volumetric flow rate of assist air and/or assist steam used with the flare," or certain alternative options. Id. § 63.670(i).

Therefore, the Division considers that maintaining the the net heating value of the flare combustion zone gas at or above 270 Btu/scf is appropriate.

# Exhibit 4

**Exhibit 4 - Table Showing EPA and Colorado's Diligent Prosecution of Emission Standards Allegedly Violated by Suncor in Plaintiffs' Amended Complaint**

| | Plaintiffs' Amended Complaint Alleging Violation | | EPA and Colorado's Diligent Prosecution of the Emission Standards Suncor Allegedly Violated in Amended Complaint | | | | | |
|---|---|---|---|---|---|---|---|---|
| Emission Standard Suncor Allegedly Violated | Claim No. | Exhibit to Am. Compl.[1] | Consent Decree ¶¶ | 2020 CDPHE COC ¶¶[2] | 2023 CDPHE CA ¶¶[3] | 2024 CDPHE COC ¶¶[4] | 2024 EPA NOV ¶¶[5] | 2025 CDPHE CA ¶¶[6] |
| 162 ppmv H$_2$S Limit Under NSPS Subpart J (at fuel gas combustion devices and monitors) | Claim 1 Claim 26 | Exhibit B (ECF 8-2) | ¶ 156 (Plants 1&3) ¶ 231 (East Plant 2) | ¶¶21.b.i-iv.,21.m, 22.e.i-xxxv, 22.u.i-v. | ¶¶II.1.d.i-ii., d.iv, i.i-ii., k.i, m.i-ii., x.i., x.iii., y.iii, y.viii. ff.i, ff.iii.,gg.iii  ¶¶II.2.b.ii-iv., d.i-ii.,f.iii, g.v-vii.,k., m.,p.,u.,w.i | ¶¶13.a.i-x., 13.n.i-v., 14.a.i-xi., 14.l.i-vii. | ¶¶98, 358 | ¶¶III.1.c.,e.i-ii.,f., g., i.i., j., l.i., n.ii-iii.,n.v.,s.i., u.ii., w., x.i.,bb.ii.,ff.i., ff.iii.,hh.i.,ii.i., ii.iii.  ¶¶III.2.a.ii.,b.,e., f.i.,g.i.,h.,j.ii., j.iv.,l.,m.i-ii.,o.ii, o.iv. |
| 162 ppmv H$_2$S Limit Under NSPS Subpart Ja | Claim 2 Claim 26 | Exhibit B (ECF 8-2) | Similar emission standard as | ¶¶21.b.i-iv.,22.e.i- | ¶¶II.1.d.i-ii., d.iv, i.i-ii.,k.i, m.i-ii.,x.i, | ¶¶13.a.i-x., 13.n.i- | ¶¶98, 341, 358 | ¶¶III.1.c.,e.i-ii.,f.,g.,i.i.,j.,l.i., n.ii-iii, n.v.,s.i., |

---

[1] Violations alleged in Amended Complaint cover period from July 2019 to May 2024 (excluding allegation related to H-2101 which dates back to 2006).

[2] 2020 CDPHE Compliance Order on Consent ("COC") covers the period July 2017 through December 2019.

[3] 2023 CDPHE Compliance Advisory ("CA") covers the period July 2021 to June 2022 (excluding allegation related to H-2101 which dates back to 2004)

[4] 2024 CDPHE COC covers the period July 2019 through June 2021. The 2024 COC resolved many of the violations alleged in the Complaint, and Suncor paid stipulated penalties to CDPHE and EPA pursuant to any alleged violation subject to a Consent Decree. *See* 2024 COC ¶ 23.

[5] The 2024 EPA Notice of Violation ("NOV") (which incorporates the 2023 CA, *see* ¶ 98) covers the period January 2020 through November 2023.

[6] 2025 CDPHE CA covers the period July 2022 through June 2023 (excluding allegation related to H-2101 which dates back to 2004). Some of the violations alleged in the 2025 CA were previously alleged in the 2024 NOV.

1

| Emission Standard Suncor Allegedly Violated | Claim No. | Exhibit to Am. Compl.[1] | Consent Decree ¶¶ | 2020 CDPHE COC ¶¶[2] | 2023 CDPHE CA ¶¶[3] | 2024 CDPHE COC ¶¶[4] | 2024 EPA NOV ¶¶[5] | 2025 CDPHE CA ¶¶[6] |
|---|---|---|---|---|---|---|---|---|
| (at fuel gas combustion devices and monitors) | | | ¶156 (Plants 1&3) and ¶ 231 (Plant 2) | xxxv., 22.u.i-v. | x.iii.,y.iii., y.viii.,ff.i, ff.iii.,gg.iii ¶¶II.2.b.ii-iv., d.i-ii.,f.iii, g.v-vii.,k., m.,p.,u.,w.i. | v.,14.a.i-xi., 14.l.i-vii. | | u.ii,w.,x.i,bb.ii., ff.i,ff.iii.,hh.i,,ii.i, ii.iii. ¶¶III.2.a.ii.,b.,e.,f.i.,g.i.,h.,j.ii.,j.iv., l.,m.i-ii.,o.ii,o.iv. |
| Construction Permit 09AD1422 Limit on 162 ppm H$_2$S Concentration in Fuel Gas Burned by Boilers 504 and 505 | Claim 3(¶¶ 330-338) | Exhibit B (ECF 8-2) | Similar emission standard as ¶ 115 (Plant 2) | 21.m | ¶¶II.2.k | ¶¶13.n.i.-v., 14.l.i-vii. | ¶98 | N/A |
| 162 ppmv H$_2$S Limit as PM10 RACT for Heaters H-25, H2101, H1716 and H-1717 | Claim 4 | Exhibit B (ECF 8-2) | Similar emission standard as ¶69 (Plants 1&3) | N/A | ¶¶II.1.dii.-iii., e.vi., l.i, p.i, q.i, x.ii, y.ii, gg.iii | N/A | ¶¶98, 436 | ¶¶III.1.n.i |
| 30% Opacity Limit Under NSPS Subpart J (at FCCUs) | Claim 5 Claim 26 | Exhibit C (ECF 8-3) | ¶54 (Plants 1&3) ¶98 (Plant 2) | ¶22.k.i.-iv.,22.w.iii | ¶¶II.1.e.v., e.vii.,n.iii., gg.ii. ¶¶II.2.g.ii., n.ii., o.iii. | ¶¶13.t.iv, 14.h.i,14.p.i-ii. | ¶¶98, 372, Table 15, 378, Table 18 | ¶¶III.1.y.ii.,bb.v. ¶¶III.2.k.ii.-iii |
| 30% Opacity Limit Under MACT UUU (at FCCUs) | Claim 6 Claim 27 | Exhibit C (ECF 8-3) | Similar emission standard as ¶54 (Plants 1&3) | ¶22.k.i.-iv.,22.w.iii | ¶¶II.1.e.v., e.vii.,n.iii., gg.ii. | ¶¶13.t.iv, 14.h.i, 14.p.i-ii. | ¶¶98, 372, Table 15, 378, Table 18 | ¶¶III.1.y.ii.,bb.v. ¶¶III.2.k.ii.-iii |

| Emission Standard Suncor Allegedly Violated | Claim No. | Exhibit to Am. Compl.[1] | Consent Decree ¶¶ | 2020 CDPHE COC ¶¶[2] | 2023 CDPHE CA ¶¶[3] | 2024 CDPHE COC ¶¶[4] | 2024 EPA NOV ¶¶[5] | 2025 CDPHE CA ¶¶[6] |
|---|---|---|---|---|---|---|---|---|
| | | | and ¶98 (Plant 2) | | ¶¶II.2.g.ii., n.ii.,o.iii. | | | |
| 30% Opacity Limit Under CO Reg. 1 (at FCCUs) | Claim 7 | Exhibit D (ECF 8-4) | Similar emission standard as ¶54 (Plants 1&3) and ¶98 (Plant 2) | ¶¶22.k.i-iv. | ¶¶II.1.e.v., n.iii.,gg.ii. ¶¶II.2.g.ii., n.ii.,o.iii. | ¶¶14.h.ii-iii. | ¶¶98, 372, Table 15, 378, Table 18 | ¶¶III.1.y.ii.,bb.v. ¶¶III.2.k.ii.-iii |
| Six-Minute 20% Opacity Limit Under CO Reg. 1 (at FCCUs) | Claim 8 | Exhibit E (ECF 8-5) | Similar to NSPS J requirements for FCCUs in ¶54 (Plants 1&3) and ¶98 (Plant 2) | ¶¶22.k.i-vi.,22.w.i-iv.,22.aa. | ¶¶II.1.c.ii., e.iv.,h.,n.ii., y.v.,gg.i, ¶¶II.2.b.i,c.i., f.i.,g.i, n.i., o.ii,r.ii, | ¶¶13.j, 13.t.i-iv., 14.h.i-ii., 14.h.iv-v., 14.p.i-vi. | ¶¶98, 375, Table 17, 382, Table 20 | ¶¶III.1.n.iv, r., u.iii.,y.i,bb.iv. ¶¶III.2.i.ii.,j.i., k.ii., |
| Three-Hour 20% Opacity Limit Under MACT UUU (at FCCUs) | Claim 9 Claim 27 | Exhibit E (ECF 8-5); Exhibit F (ECF 8-6) | Similar to NSPS J requirements for FCCUs in ¶54 (Plants 1&3) and ¶98 (Plant 2 | ¶¶22.k.ii-iv.,22.w.iv, 22.aa. | ¶¶II.2.e.vii., n.iv.,g.iii | ¶¶13.j, 13.t.iii-iv,14.h.ii. | ¶¶98, 375, Table 17, 382, Table 20 | ¶III.1.y.iii. |
| 500 ppmv CO Limit Under NSPS Subpart J (at FCCUs) | Claim 10 Claim 26 | Exhibit G (ECF 8-7) | ¶ 49 (Plants 1&3) ¶ 94 (Plant 2) | ¶¶22.i.i-.v. | ¶¶II.1.e.iii, e.vii.n.i,n.iv, y.iv.,ff.ii, ¶¶II.2.c.ii-iii., f.ii.,f.v.,g.iv, l.,o.i,r.i, | ¶¶13.h.ii, 14.f.i-iv. | ¶¶98, 140, 362, Table 13, 365 | ¶¶III.1.b.i.,k.,y.iv. ¶¶III.2.a.i.,i.i., k.i.,o.i. |

3

| Emission Standard Suncor Allegedly Violated | Claim No. | Exhibit to Am. Compl.[1] | Consent Decree ¶¶ | 2020 CDPHE COC ¶¶[2] | 2023 CDPHE CA ¶¶[3] | 2024 CDPHE COC ¶¶[4] | 2024 EPA NOV ¶¶[5] | 2025 CDPHE CA ¶¶[6] |
|---|---|---|---|---|---|---|---|---|
| 500 ppmv CO Limit Under NSPS Subpart Ja (at Plant 2 FCCU) | Claim 11 Claim 26 | Exhibit G (ECF 8-7) | Similar emission standard as ¶ 94 (Plant 2) | ¶¶22.v.i-v.iii., 22.aa | ¶¶II.2.c.ii-iii., f.ii, f.v.,g.iv, l., o.i, r.i, | ¶¶13.q.i-iv., 14.o.i-v. | ¶¶98, 140, 362, Table 13, 365 | ¶¶III.2.a.i.,i.i., k.i.,o.i. |
| 500 ppmv CO Limit Under MACT UUU (at FCCUs) | Claim 12 Claim 27 | Exhibit G (ECF 8-7) | Similar emission standard as ¶49 (Plants 1&3) and ¶94 (Plant 2) | ¶¶22.i.i-v.iii., 22.aa | ¶¶II.1.e.iii, e.vii.,n.i,y.iv., ff.ii, ¶¶II.2.c.ii-iii., f.ii, f.v.,g.iv, g.viii.,l.,o.i, r.i. | ¶¶13.h.ii, 13.q.i-iv., 14.f.i-iv., 14.o.i-v. | ¶¶98, 140, 362, Table 13, 365, Table 14, 367, 370 | ¶¶III.1.b.i.,k.,y.iv. ¶¶III.2.a.i.,i.i., k.i.,o.i. |
| 500 ppmv CO Limit Under Plants 1 & 3 Consent Decree (FCCU) | Claim 13 | Exhibit G (ECF 8-7) | ¶ 49 (Plants 1&3) | ¶¶22.i.i-v. | ¶¶II.1.e.iii, n.i, y.iv.,ff.ii. | ¶¶13.h.i-iii., 14.f.i-iv. | ¶¶98, 140, 362, Table 13, 365 | ¶¶III.1.b.i. k.,y.iv. |
| 500 ppmv CO Limit Under Plant 2 Consent Decree (FCCU) | Claim 14 | Exhibit G (ECF 8-7) | ¶ 94 (Plant 2) | ¶¶22.v.i-v.iii., 22.aa. | ¶¶II.2.c.ii, f.ii, g.iv, l., o.i, r.i. | ¶¶13.q.i-iv., 14.o.i-v | ¶¶98, 140, 365, Table 14 | ¶¶III.2.a.i.,i.i., k.i.,o.i. |
| 500 ppmv CO Limit Under CO RACT (Plant 2 FCCU) | Claim 15 | Exhibit G (ECF 8-7) | Similar emission standard as ¶94 (Plant 2) | N/A | ¶¶II.2.c.ii, f.ii, g.iv, l., o.i, r.i. | N/A | ¶¶98, 436 | ¶¶III.2.a.i.,i.i., k.i.,o.i. |
| 0.06 lbs/MMBTU CO Limit on Boilers B-6 and B-8 | Claim 18 | Exhibit H (ECF 8-8) | ¶73.(a) (Plants 1&3) | N/A | ¶¶II.1.o.,r.,v.,y | ¶¶14.j.i, 14.j.ii | ¶98 | ¶III.1.d |
| 250 ppmv SO₂ Limit Under NSPS Subpart J (H-25) | Claim 17 Claim 26 | Exhibit I (ECF 8-9) | ¶171 (Plants 1&3) | ¶¶21.a.ii-iii., 22.g.i- | ¶¶II.1.c.i., d.iii.,e.v.,l.i, | ¶¶13.i.i-iv., 14.g.i-v. | ¶¶98, 340 | ¶¶III.1.n.i.,p.,u.i., z.i.,bb.i.,ff.ii., ii.ii.,jj.i-ii.,ll. |

4

| Emission Standard Suncor Allegedly Violated | Claim No. | Exhibit to Am. Compl.[1] | Consent Decree ¶¶ | 2020 CDPHE COC ¶¶[2] | 2023 CDPHE CA ¶¶[3] | 2024 CDPHE COC ¶¶[4] | 2024 EPA NOV ¶¶[5] | 2025 CDPHE CA ¶¶[6] |
|---|---|---|---|---|---|---|---|---|
| | | | | x.,22.g.xii -xiv. | p.i-ii., q.i, x.ii.,y.i.,y.ix. | | | |
| 250 ppmv SO$_2$ Limit Under MACT UUU (H-25) | Claim 18 Claim 27 | Exhibit I (ECF 8-9) | Similar to NSPS J requirements for SRPs in ¶171 (Plants 1&3) | ¶¶21.a.ii-iii.,22.g.i--xiv. | ¶¶II.1.c.i., d.iii.,e.v., e.vii.,l.i-ii., p.i.,q.i,x.ii., x.iv.,y.ii.,y.ix. | ¶¶13.i.i-iv, 14.g.i-v. | ¶¶98, 340, 401, 403 | ¶¶III.1.n.i.,p.,u.i., z.i.,bb.i.,ff.ii.,ii.ii., jj.i-.ii.,ll. |
| 15.68 lb SO$_2$ Limit for SRU (H-25) | Claim 19 | Exhibit J (ECF 8-10) | Similar to NSPS J requirements for SRPs in ¶171 (Plants 1&3) | ¶¶21.a.i, 21.a.iii., 22.g.i-xv. | ¶¶II.1.c.i., d.iii.,e.v.,l.i, p.i.,q.i.,x.ii., y.ii | ¶¶13.i.i-iv, 14.g.ii-v. | ¶¶98, 421, 423 | ¶¶III.1.i.ii,n.i. u.i.,z.i.,bb.i., ff.ii.,ii.ii.,jj.i. |
| 15.68 lb SO$_2$ Limit as PM$_{10}$ RACT for SRU (H-25) | Claim 20 | Exhibit J (ECF 8-10) | Similar to NSPS J requirements for SRPs in ¶171 (Plants 1&3) | N/A | ¶¶II.1.c.i.,d.ii., e.v.,l.i,p.i.,q.i, x.ii., y.ii | N/A | ¶¶98, 421, 423, 436 | ¶¶III.1.i.ii,n.i. u.i.,z.i.,bb.i.,ff.ii., ii.ii. jj.i. |
| 270 BTU/SCF Limit on Flares Under MACT CC | Claim 21 Claim 28 | Exhibit K (ECF 8-11) | Similar to NSPS Subpart A (40 CFR § 60.18) requirements for flares in ¶ 156 (Plants 1&3) and | ¶¶22.c.i-vii., 22.r. | ¶¶II.1.e.ii, e.viii.,y.vii., y.x. <br><br> ¶¶II.2.f.iv., f.vi.,h.i-ii., q.ii-iii.,x.i., x.iii. | ¶¶13.b.i-iii., 13.s.i-iii., 14.b.1, 14.b.ii-iii. | ¶¶98, 345 | ¶¶III.1.m.,q.i., x.ii. <br><br> ¶III.2.g.ii |

5

| Emission Standard Suncor Allegedly Violated | Claim No. | Exhibit to Am. Compl.[1] | Consent Decree ¶¶ | 2020 CDPHE COC ¶¶[2] | 2023 CDPHE CA ¶¶[3] | 2024 CDPHE COC ¶¶[4] | 2024 EPA NOV ¶¶[5] | 2025 CDPHE CA ¶¶[6] |
|---|---|---|---|---|---|---|---|---|
| | | | ¶¶231-240 (East Plant 2 | | | | | |
| 270 BTU/SCF Limit as RACT for $PM_{10}$, $NO_X$, and CO on GBR Unit Flare | Claim 22 | Exhibit K (ECF 8-11) | Similar to NSPS Subpart A (40 CFR § 60.18) requirements for flares in ¶ 156 (Plants 1&3) and ¶¶231-240 (East Plant 2 | N/A | ¶II.1.y.vii. | N/A | ¶¶ 98, 345, 436 | ¶III.1.x.ii. |
| Flare Smoke Visibility Limits Under MACT CC | Claim 23 Claim 28 | Exhibit L (ECF 8-12) | Similar to NSPS Subpart A (40 CFR § 60.18) requirements for flares in ¶156 (Plants 1&3) and ¶¶231-240 (Plant 2) | ¶¶22.d.i-v., 22.s.i-iv. | ¶¶II.1.e.i., e.viii.,s. ¶¶II.2.x.ii-iii. | ¶¶13.c.i-viii, 13.r.i-iii, 14.c.i-ii. | ¶¶98, 372, 378 | ¶III.1.b.ii. |
| Flare Smoke Visibility as Compliance with 30% Opacity Limit | Claim 24 | Exhibit L (ECF 8-12) | Similar to NSPS Subpart A (40 CFR § 60.18) requirements for flares in ¶156 (Plants | N/A | ¶¶II.1.e.i.,s. ¶¶II.2.x.ii | N/A | ¶¶98, 372, 378 | N/A |

| Emission Standard Suncor Allegedly Violated | Claim No. | Exhibit to Am. Compl.[1] | Consent Decree ¶¶ | 2020 CDPHE COC ¶¶[2] | 2023 CDPHE CA ¶¶[3] | 2024 CDPHE COC ¶¶[4] | 2024 EPA NOV ¶¶[5] | 2025 CDPHE CA ¶¶[6] |
|---|---|---|---|---|---|---|---|---|
|  |  |  | 1&3) and ¶¶231-240 (Plant 2) |  |  |  |  |  |
| 0.04 lbs/MMBTU NO$_X$ Limit for Heater H-2101 | Claim 25 | (ECF 8-1, Table 11) | ¶220 (Plants 1&3) | N/A | ¶II.1.ii. | N/A | ¶98 | ¶III.1.rr. |