In the United States Court of Appeals
for the Tenth Circuit

CASE NO. 25-1243

GREENLATINOS, 350 COLORADO,
AND SIERRA CLUB,

    *Plaintiff – Appellant,*

    v.

SUNCOR ENERGY (U.S.A.), INC.,

    *Defendant – Appellee.*

On Appeal from the United Stated District Court
For the District of Colorado
The Honorable Judge Domenico
D.C. No. 1:24-cv-02164-DDD

ORAL ARGUMENT IS REQUESTED

**Appellants' Appendix**

**Vol. IX**

September 5, 2025

# INDEX to the APPENDIX
## Case No. 25-1243
Appeal from USDC CO, Case No. 1:24-cv-02164-DDD

GREENLATINOS, 350 COLORADO AND SIERRA CLUB, *Plaintiff-Appellants*, v. SUNCOR ENERGY (U.S.A.), INC., *Defendant-Appellee*.

| | | VOLUME IX | |
|---|---|---|---|
| **No.** | **District Court Docket No.** | **Document** | **App. Page No.** |
| 22 | 27.9 | Exh. 9 – Notice of Violation to Suncor Energy (U.S.A.), Inc., July 2, 2024 | 1730 |
| 23 | 27.10 | Exh. 10 – Compliance Advisory, Jan. 9, 2025 | 1871 |
| 24 | 30 | Plaintiffs' (GreenLatinos, et al.) Opposition to Defendant's (Suncor) Motion to Dismiss | 1929 |
| 25 | 30.1 | Exh. 12 – Declaration of Daniel Price | 1962 |
| 26 | 30.2 | Exh. 13 – Declaration of Harmony Cummings | 1967 |
| 27 | 30.3 | Exh. 14 – Declaration of Li Mattson | 1972 |
| 28 | 30.4 | Exh. 15 – Declaration of Renée Chacon | 1977 |
| 29 | 30.5 | Exh. 16 – Declaration of Angela Garcia | 1982 |
| 30 | 30.6 | Exh. 17 – Declaration of Anna McDevitt | 1986 |
| 31 | 30.7 | Exh. 18 – Declaration of Aracely Navarro | 1991 |
| 32 | 30.8 | Exh. 19 – Complaint, United States of America v. Conoco Inc. | 1996 |

# Exhibit 9

Appellate Case: 25-1243    Document: 19-6    Date Filed: 06/05/2025    Page: 5
This document is not publicly accessible. An accessible version is being created. Users in need of accommodation are asked to please contact Richard Mylott at mylott.richard@epa.gov or 720-237-8119.

**REGION 8**

DENVER, CO 80202

**C O L O R A D O**
Department of Public
Health & Environment

July 2, 2024

**VIA EMAIL ONLY**
**READ RECEIPT REQUESTED**

Bernd Haneke
Manager of Regulatory and Environmental (Air)
Suncor Energy (U.S.A.), Inc.
Bhaneke@suncor.com

Re:    Notice of Violation to Suncor Energy (U.S.A.), Inc.

Dear Bernd Haneke:

The U.S. Environmental Protection Agency (the EPA) and the Colorado Department of Public Health and Environment, through the Air Pollution Control Division (the Division) (collectively, the Governments) are issuing Suncor Energy (U.S.A.), Inc. (Suncor) the enclosed Notice of Violation (NOV) and offering an opportunity to confer regarding alleged violations of the Clean Air Act (CAA), and its implementing regulations; the Colorado Air Pollution Prevention and Control Act, and its implementing regulations; the two consent decrees listed below; and/or applicable permits at Suncor's refinery located at 5800 and 5801 Brighton Boulevard in Commerce City, Colorado (the Commerce City Refinery).

Specifically, the Governments allege that Suncor has violated or is violating:

1. Section 111 of the CAA, 42 U.S.C. § 7411, and its implementing regulations at 40 C.F.R. Part 60, Subparts QQQ, Kb, J, and Ja;
2. Section 112 of the CAA, 42 U.S.C. § 7412, and its implementing regulations at 40 C.F.R. Part 61, Subpart FF, and 40 C.F.R. Part 63, Subparts CC, WW, and UUU;
3. Title V of the CAA, 42 U.S.C. §§ 7661-7661f, and its implementing regulations for approved state operating permit programs at 40 C.F.R. Part 70;
4. Colorado Regulation Number 24, 5 Colo. Code Reg. § 1001-26, the relevant portions of which are part of Colorado's approved State Implementation Plan (SIP) under Section 110 of the CAA, 42 U.S.C. § 7410;
5. Other federally-enforceable Colorado air quality regulations that are part of Colorado's SIP to the extent the facts alleged in the NOV support violations of such regulations;

6.  Colorado Operating Permit Number 96OPAD120;

7.  Colorado Operating Permit Number 95OPAD108;

8.  Other federally-enforceable requirements that Suncor is alleged to have violated in the Compliance Advisory that the Division issued to Suncor on June 1, 2023 (Case No. 2023-082) based on the Division's July 11 – 13, 2022 inspection of the Commerce City Refinery and records related to the refinery (the Division's 2023 Compliance Advisory);

9.  The requirements of the consent decree entered in *United States et al. v. Valero Refining, et al.*, Civil Action No. SA-05-CA-0569 (entered by W.D. Tex. November 23, 2005); non-material modification filed June 22, 2006; and

10. The requirements of the consent decree entered in *United States et al. v. Conoco Inc.*, Civil Action No. H-01-4430 (entered by S.D. Tex. April 30, 2002); (first amendment entered August 5, 2003; second amendment entered October 24, 2006; non-material modification filed May 6, 2010).

The Division also alleges that Suncor has violated or is violating:

11. Colorado state-only requirements to the extent a violation of any such requirement is alleged in the Division's 2023 Compliance Advisory; and

12. Colorado air quality regulations that are not part of Colorado's SIP to the extent the facts alleged in this NOV support violations of such regulations.

Suncor has made claims that some of the information upon which this NOV is based is confidential business information (CBI) subject to 40 C.F.R. Part 2, Subpart B. Without agreeing that the information is CBI, the EPA has treated and continues to treat all CBI-claimed information according to the requirements of 40 C.F.R. Part 2, Subpart B. Where information contained in this NOV is potentially CBI, and claimed as such by Suncor, EPA highlights the text in red to acknowledge the present designation as information that Suncor has claimed as CBI.

If Suncor is interested in a conference with the EPA and the Division to discuss the alleged violations, please have your counsel contact Robyn Emeson, Senior Assistant Regional Counsel for EPA Region 8, at (303) 312-6485 or Emeson.Robyn@epa.gov and Julia La Manna, Colorado Assistant Attorney General, at (720) 508-6318 or julia.lamanna@coag.gov, within 30 days of receipt of this NOV.

Sincerely,

SUZANNE BOHAN
Digitally signed by
SUZANNE BOHAN
Date: 2024.07.02
15:17:17 -06'00'

Suzanne J. Bohan, Director
Enforcement and Compliance Assurance Division
Environmental Protection Agency, Region 8

Shannon L.
McMillan

Digitally signed by
Shannon L. McMillan
Date: 2024.07.02
15:28:17 -06'00'

_____

Shannon L. McMillan, Program Manager
Compliance and Enforcement Program
Air Pollution Control Division
Colorado Department of Public Health and Environment


Enclosures
1.    Notice of Violation, inclusive of attachment

cc (w/Encl.):
    Christine Jochim, Christine.Jochim@klgates.com
    Michael Korenblat, MKorenblat@suncor.com
    Jennifer Biever, jbiever@williamsweese.com
    Craig Neuman, CNEUMAN@suncor.com
    Shannon McMillan, shannon.mcmillan@state.co.us
    Julia.Lamanna, julia.lamanna@coag.gov
    Robyn Emeson, emeson.robyn@epa.gov


*The Governments have redacted the original NOV sent to Suncor to prevent disclosure of company-claimed confidential business information (CBI). See footnote 2 of the NOV.*

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 8**

**and**

**COLORADO DEPARTMENT OF PUBLIC HEALTH AND THE
ENVIRONMENT
AIR POLLUTION CONTROL DIVISION**

| | |
|---|---|
| **IN THE MATTER OF** | **NOTICE OF VIOLATION** |
| **Suncor Energy (U.S.A.), Inc.** | **EPA Docket No.** |
| | Proceedings Pursuant to the Clean Air Act, 42 U.S.C. §§ 7401-7671q, and the Colorado Air Pollution Prevention and Control Act, C.R.S. §§ 25-7-101 – 1604 |

## NOTICE OF VIOLATION

The U.S. Environmental Protection Agency (EPA) and the Colorado Department of Public Health and Environment, through the Air Pollution Control Division (the Division) (collectively, the Governments) together allege that Suncor Energy (U.S.A.), Inc. (Suncor) has violated the Clean Air Act (CAA) and its implementing regulations, the Colorado Air Pollution Prevention and Control Act (Colorado Air Act) and its implementing regulations, the Suncor Consent Decrees (as defined below) and/or applicable permits at Suncor's refinery located at 5800 and 5801 Brighton Boulevard in Commerce City, Colorado (the Commerce City Refinery).

Specifically, in this Notice of Violation (NOV) the Governments allege that Suncor has violated or is violating the following:

- Section 111 of the CAA, 42 U.S.C. § 7411, and its implementing regulations at 40 C.F.R. Part 60;

- Section 112 of the CAA, 42 U.S.C. § 7412, and its implementing regulations at 40 C.F.R. Parts 61 and 63;

1

- Title V of the CAA, 42 U.S.C. §§ 7661-7661f, for Operating Permits (Title V Permits), and its implementing regulations for approved state operating permit programs at 40 C.F.R. Part 70;

- Colorado Regulation Number 24, 5 Colo. Code Reg. § 1001-26, the relevant portions of which are part of Colorado's approved State Implementation Plan (SIP) under Section 110 of the CAA, 42 U.S.C. § 7410 (*See* 40 C.F.R. § 52.320);

- Other federally-enforceable Colorado air quality regulations that are part of Colorado's SIP to the extent the facts alleged below support violations of such regulations;

- Colorado Operating Permit Number 96OPAD120, issued to Suncor on August 1, 2004, and last revised February 22, 2018, applicable to Plant 1 and Plant 3 (Permit 96OPAD120);

- Colorado Operating Permit Number 95OPAD108, issued to Suncor on October 1, 2006, and revised June 15, 2009, then renewed September 1, 2022, applicable to Plant 2 (Permit 95OPAD108) (emission limits referenced in this NOV remained consistent between initial and renewed permit);[1] and

- Other federally-enforceable requirements that Suncor is alleged to have violated in the Compliance Advisory that the Division issued to Suncor on June 1, 2023 (Case No. 2023-082) based on the Division's July 11 – 13, 2022 inspection of the Commerce City Refinery and records related to the refinery (the Division's 2023 Compliance Advisory).

Additionally, the Governments allege that Suncor has violated or is violating the terms of two existing federal consent decrees under which Suncor is a party (together, the Suncor Consent Decrees):

- *United States et al. v. Valero Refining, et al.*, Civil Action No. SA-05-CA-0569 (entered by W.D. Tex. November 23, 2005); non-material modification filed June 22, 2006 (Valero Consent Decree).

- *United States et al. v. Conoco Inc.*, Civil Action No. H-01-4430 (entered by S.D. Tex. April 30, 2002); first amendment entered August 5, 2003; second

---

[1] References in this Notice of Violation to Permit 95OPAD108, cite the Section and/or Condition number in the renewal permit, effective September 1, 2022. When this Notice of Violation alleges an emission limit exceedance that occurred during the effective period for the initial permit, *i.e.,* prior to the effective date of Permit 95OPAD108's renewal, the citation in the initial permit is the applicable reference for this Notice of Violation, even though it may differ from the renewal permit citation provided.

amendment entered October 24, 2006; non-material modification filed May 6, 2010 (Conoco Consent Decree).

Finally, the Division alleges that Suncor has violated or is violating the following:

- Colorado state-only requirements to the extent a violation of any such requirement is alleged in the Division's 2023 Compliance Advisory; and

- Colorado air quality regulations that are not part of Colorado's SIP to the extent the facts alleged below support violations of such regulations.

## I.    GENERAL STATUTORY AND REGULATORY AUTHORITY

### A.    Formal Notice

1.    For EPA, this NOV provides formal notice of Suncor's alleged violations of requirements or prohibitions of Colorado's SIP and alleged violations of the terms and conditions of Suncor's applicable permits, as specified below and pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), as well as other CAA violations not subject to the notice requirements of Section 113(a)(1) of the CAA.

2.    For the Division, this NOV provides formal notice of the Division's alleged violations, pursuant to Colorado Revised Statutes (C.R.S.) § 25-7-115(2), for all alleged violations described herein that were not already noticed in the Division's 2023 Compliance Advisory.

### B.    The CAA and Colorado Air Act Generally

3.    A central purpose of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

4.    A primary goal of the CAA is to "encourage . . . reasonable Federal, State, and local governmental actions . . . for pollution prevention." 42 U.S.C. § 7401(c).

5.    Data from the EPA's environmental justice screening and mapping tool, *EJScreen*, suggests a significant potential for environmental justice concerns in Colorado's Commerce City - North Denver area due to a combination of high pollution burden and population vulnerability.

6.    The Colorado Air Act declares that it is the policy of Colorado "to achieve the maximum practical degree of air purity in every portion of the state." C.R.S. § 25-7-102(1).

3

7.     The Colorado General Assembly has declared that "[a]ll people have the right to breathe clean air, drink clean water, participate freely in decisions that affect their environments, live free of dangerous levels of toxic pollution, experience equal protection provided by environmental policies, and share the benefits of a prosperous and vibrant pollution-free economy." Colorado H.B. 2021-1266, Sec. 2(1)(a)(I).

8.     The Colorado Air Act recognizes that "Colorado communities are increasingly concerned about the potential health impacts of air toxics resulting from routine facility operations, fugitive leaks, upset conditions, or emergency situations." C.R.S. § 25-7-141(1)(b)(II).

9.     The Colorado General Assembly has found, "Emissions of ozone precursors, such as oxides of nitrogen (NOx) and volatile organic compounds, contribute to the formation of ozone and to public health impacts for individuals exposed to higher levels of air pollution." Colorado S.B. 2024-229, Sec. 1(1)(a).

10.     The Colorado General Assembly has found that "[r]esidents of disproportionately impacted communities in the ozone nonattainment area may be exposed to higher levels of NOx than other Coloradans." Colorado S.B. 2024-229, Sec. 1(1)(d).

11.     The Colorado General Assembly has also declared that "[m]ore accountability for sources of pollution and for the state will build public trust and improve air quality." Colorado S.B. 2024-229, Sec. 1(2)(b).

### C.    Applicable CAA Requirements

<u>New Source Performance Standards</u>

12.     Section 111 of the CAA sets standards of performance for new and modified stationary sources. 42 U.S.C. § 7411.

13.     Under Section 111(a) of the CAA, a "standard of performance" generally means an emissions standard for air pollutants, a limitation deemed achievable through a system of emission reduction; a "stationary source" is a "building, structure, facility, or installation that emits or may emit any air pollutant;" and a "new source" is any stationary source, the construction or modification of which is commenced after the promulgation of the standards of performance that will apply to such source. 42 U.S.C. §§ 7411(a)(1)-(3).

14.     Under Section 111(b) of the CAA, the EPA is authorized by Congress to publish a list of categories of stationary sources that, in the EPA Administrator's judgment, cause, or contribute significantly to, "air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A). For each of these source categories, the Administrator of the EPA promulgates federal

standards of performance applicable to "new sources." 42 U.S.C. § 7411(b)(1). These standards are widely known as New Source Performance Standards, or the NSPS.

15.    The NSPS are promulgated at 40 C.F.R. Part 60.

16.    Under Section 111(c) of the CAA, each State may develop and submit to the EPA Administrator a procedure for implementing and enforcing the NSPS for new sources located in such State, and if the Administrator finds the State procedure is adequate, the Administrator my delegate authority to the State to implement and enforce the NSPS. 42 U.S.C. § 7411(c). A delegated State may enforce the NSPS separate from or alongside the federal government, or the federal government may directly enforce the NSPS against a new source in a State with delegated authority. 42 U.S.C. § 7411(c)(2). Colorado has delegated authority to implement and enforce multiple NSPS and has incorporated such NSPS into the State's regulations at 5 Colo. Code Reg. § 1001-8.

17.    It is unlawful for any owner or operator of any new source to operate the source in violation of applicable NSPS after the standards have gone into effect. 42 U.S.C. § 7411(e).

*The NSPS General Provisions at 40 C.F.R. Part 60, Subpart A:*
*Good Air Pollution Control Practice Requirement*

18.    40 C.F.R. Part 60, Subpart A (the NSPS General Provisions) sets forth the NSPS that generally apply to the owners or operators of any stationary source that contains an "affected facility" subject to a particular NSPS promulgated elsewhere in Part 60. 40 C.F.R. § 60.1. The NSPS General Provisions further provide that an "affected facility" means "with reference to a stationary source, any apparatus to which a standard is applicable." 40 C.F.R. § 60.2.

19.    The NSPS General Provisions require that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions. 40 C.F.R. § 60.11(d). Determination of whether acceptable operating and maintenance procedures are being used will be based on information available to the Administrator which may include, but is not limited to, monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source. *Id.*

National Emissions Standards for Hazardous Air Pollutants

20.    Section 112 of the CAA, 42 U.S.C. § 7412, establishes the CAA's national emissions standards for hazardous air pollutants (NESHAP) program for controlling emissions of hazardous air pollutants (HAPs), also known as air toxics, achieved through the implementation of maximum achievable control technology

(MACT) at major sources of HAPs, in an effort to reduce emissions of HAPs to the maximum degree.

21.    HAPs are those pollutants that cause or may cause adverse human health effects, such as cancer, reproductive effects or birth defects, or adverse environmental effects, such as significant and widespread harm to wildlife, aquatic life, or other natural resources or significant degradation of environmental quality over broad areas. 42 U.S.C. § 7412(b).

22.    HAPs are listed in section 112(b) of the CAA, 42 U.S.C. § 7412(b), and include benzene. 42 U.S.C. § 7412(b).

23.    Under Section 112(a)(l) of the CAA, a "major source" of HAPs is, with limited exceptions not applicable here, "any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants." 42 U.S.C. § 7412(a)(l); *see also* 40 C.F.R. § 63.2.

24.    Pursuant to Section 112(c) of the CAA, 42 U.S.C. § 7412(c), the Administrator of EPA has published a list of designated categories and subcategories of major sources of HAPs that are subject to NESHAP, and the Administrator is required to revise that list from time to time in response to public comment or new information.

25.    Section 112(d) of the CAA requires the Administrator of the EPA to set emission standards for each category and subcategory of major sources of HAPs listed in CAA Section 112(c) and requires these emission standards to achieve the maximum degree of reduction in HAP emissions through the implementation of MACT.

26.    Pursuant to Section 112(d) of the CAA, the EPA has promulgated regulations governing industrial categories of major sources subject to NESHAP and setting specific emissions standards applicable to those sources. These NESHAP regulations are promulgated in the various subparts of 40 C.F.R. Parts 61 and 63. Colorado has delegated authority to implement and enforce much of Parts 61 and 63 and has incorporated such provisions into the State's regulations at 5 Colo. Code Reg. § 1001-10.

*NESHAP Promulgated at 40 C.F.R. Part 61*

27.    40 C.F.R. Part 61, Subpart A (the NESHAP Part 61 General Provisions) sets forth the standards that generally apply to the owners or operators of any stationary source subject to a particular NESHAP promulgated elsewhere in Part 61. 40 C.F.R. § 61.01(c).

28.     The regulations at 40 C.F.R. Part 61 reflect the NESHAP promulgated by the Administrator of the EPA before the enactment of the Clean Air Act Amendments of 1990. *See* 40 C.F.R. § 63.1(2).

29.     The NESHAP regulations at 40 C.F.R. Part 61 are independent of the NESHAP regulations at 40 C.F.R Part 63, which reflect the NESHAP promulgated by the Administrator of the EPA after the enactment of the Clean Air Act Amendments of 1990.

30.     The Part 61 NESHAP remain in effect until they are amended, if appropriate, and added to the Part 63 NESHAP. 40 C.F.R. § 63.1(2).

(1)     NESHAP Part 61's Good Air Pollution Control
Practice Requirement

31.     The NESHAP Part 61 General Provisions, at 40 C.F.R. § 61.12(c), require the owner or operator of each stationary source subject to a Part 61 NESHAP to maintain and operate the source, including associated equipment for air pollution control, in a manner consistent with good air pollution control practice for minimizing emissions.

32.     Determination of whether acceptable operating and maintenance procedures are being used consistent with good air pollution control practice will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operating and maintenance procedures, and inspection of the source. 40 C.F.R. § 61.12(c).

*NESHAP Promulgated at 40 C.F.R. Part 63*

33.     The NESHAP regulations promulgated at 40 C.F.R. Part 63, include the General Provisions set forth at 40 C.F R. Part 63, Subpart A (the NESHAP Part 63 General Provisions).

34.     In general, the NESHAP Part 63 General Provisions require the owner or operator of an affected source to: install MACT level controls on affected sources; demonstrate the effectiveness of such controls; certify compliance with applicable regulatory requirements; continuously monitor the controls; record applicable monitoring data; comply with applicable emission restrictions/control requirements; and submit various notifications and reports regarding the affected source to assure compliance with applicable HAP emission control requirements.

35.     An "affected source," for purposes of the NESHAP regulations set forth at 40 C.F.R. Part 63, means the "stationary source, the group of stationary sources, or the portion of the stationary source that is regulated by a relevant standard or other requirement established pursuant to Section 112 of the [CAA]. Each relevant

7

standard will define the 'affected source' for the purposes of that standard ...." 40 C.F.R. § 63.2.

36.     Major sources that are subject to a MACT standard promulgated pursuant to Section 112(d) are prohibited from emitting HAPs in violation of such standard.

37.     No emission standard or other requirement established under 40 C.F.R. Part 63 shall be interpreted, construed, or applied to diminish or replace the requirements of a more stringent emission limitation or other applicable requirement established by the Administrator pursuant to other authority of the CAA, or a standard issued under State authority. 40 C.F.R. § 63.1(a)(3).

38.     The Administrator may specify in a specific NESHAP issued under 40 C.F.R. Part 63 that facilities subject to other CAA provisions need only comply with the provisions of that standard. 40 C.F.R. § 63.1(a)(3).

39.     If a particular Part 63 NESHAP incorporates the requirements of an NSPS, a Part 61 NESHAP, or any other Part 63 NESHAP, the relevant Part 63 NESHAP must identify explicitly the applicability of each corresponding NSPS, Part 63 NESHAP, or other provision of the NESHAP Part 63 General Provisions. 40 C.F.R. § 63.1(a)(4).

40.     Under the NESHAP Part 63 General Provisions, any owner or operator of an affected source subject to a Part 63 NESHAP must operate the source in compliance with the Part 63 NESHAP provisions and must keep records, notify, report, or revise reports as required under the Part 63 NESHAP. 40 C.F.R. § 63.4.

Title V Operating Permits

41.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes a permit program for any "major sources" of air pollution, as defined by Title V.

42.     Under Title V, a "major source" means, *inter alia*, any stationary source that is either a "major source" as defined in section 112 of the CAA, 42 U.S.C. § 7412, or a "major stationary source" as defined in section 302 of the CAA, 42 U.S.C. § 7602. 42 U.S.C. § 7661.

43.     The definition of a "major source" under section 112 of the CAA, 42 U.S.C. § 7412, is alleged above in Paragraph 23.

44.     The definition of "major stationary source" under section 302 of the CAA, 42 U.S.C. § 7602, is "any stationary facility or source of air pollutants which directly emits, or has the potential to emit, one hundred tons per year or more of any air pollutant (including any major emitting facility or source of fugitive

emissions of any such pollutant, as determined by rule by the Administrator).” In
an ozone nonattainment area, such as the area that includes Suncor's Commerce
City Refinery, a stationary source becomes a major stationary source at a lower
threshold of emissions. *See* 42 U.S.C. § 7511a(c) and (d); accord 5 Colo. Code Reg. §
1001-5:D.II.A.25.

45.    Under Colorado law, a “major source” is “any stationary source (or
group of stationary sources which have the same two-digit standard industrial code,
are located on one or more contiguous or adjacent properties, and are under
common control) that: (a) [s]ubject to the provisions of section 112(n)(4) of the
[CAA], emits or has the potential to emit considering enforceable control, in the
aggregate, ten tons per year or more of any hazardous air pollutant or twenty-five
tons per year or more of any combination of hazardous air pollutants, or such lesser
quantity of hazardous air pollutants as may be established pursuant to the [CAA];
or (b) [d]irectly emits, or has the potential to emit, one hundred tons per year or
more of any air pollutant; or (c) [m]eets any of the definitions of major source set
forth in Part D of subchapter I of the [CAA].” C.R.S. § 25-7-114(3); *see also* 5 Colo.
Code Reg. § 1001-5:A.I.B.30.

46.    The purpose of Title V is to ensure that all “applicable requirements” that
apply to a source regulated under the CAA are collected in one operating
permit. 42 U.S.C. § 7661c(a).

47.    Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), provides that, after
the effective date of any permit program approved or promulgated under Title V of
the Act, no source subject to Title V may operate except as in compliance with a
Title V operating permit (Title V Permit).

48.    Section 502(d) of the CAA directs states to develop and submit for EPA
approval a permit program under state or local law meeting the requirements of
Title V and a legal opinion that the state has adequate authority to carry out the
Title V program. If a state permit program is approved, the state will act as the
Title V permitting authority with primary responsibility to implement Title V and
the EPA will not issue federal Title V Permits in that state. But the EPA will retain
the ability to enforce Title V Permits issued by a state. 42 U.S.C. §§ 7661a(d) and
(e).

49.    The State of Colorado has an approved operating permit program and
acts as the Title V permitting authority for sources in Colorado. 60 Fed. Reg. 4563
(January 24, 1995) and 65 Fed. Reg. 49919 (August 16, 2000).

50.    Section 502(b) of the CAA requires the EPA to promulgate regulations
establishing the minimum elements of a Title V permit program to be administered
by any air pollution control agency. 42 U.S.C. § 7661a(b).

51.     In accordance with Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), the EPA promulgated regulations establishing the minimum elements of approvable state permit programs implementing Title V. 57 Fed. Reg. 32250 (July 21, 1992). Those regulations for state air quality operating permit programs are codified at 40 C.F.R. Part 70.

52.     All sources subject to the state operating permit programs consistent with the requirements of Title V "shall have a permit to operate that assures compliance by the source with all applicable requirements." 40 C.F.R. § 70.1(b).

53.     A Title V Permit issued by a state may not be less stringent than necessary to meet all applicable federal permit requirements in Title V. 40 C.F.R. § 70.1(c). Nothing in the Title V regulations at 40 C.F.R. Part 70 prevents a state from establishing additional or more stringent requirements than the federal Title V Permit requirements. *Id*.

54.     The Commerce City Refinery is subject to two Title V permits issued to Suncor by the Division: Permit 96OPAD120 and Permit 95OPAD108.

55.     All terms and conditions of a state-issued Title V permits are federally enforceable by the EPA. 42 U.S.C. § 7413(b).

### D.     Applicable Colorado-Specific Requirements

56.     Colorado Revised Statutes § 25-7-109(1)(a) directs the Colorado Air Quality Control Commission (Commission) to adopt and promulgate, and from time to time modify or repeal, emission control regulations which require the use of effective practical air pollution controls.

57.     Colorado Revised Statutes §§ 25-7-101 through 25-7-147 establish the Commission's statutory authority for adoption of air quality standards, regulations, and programs and impose requirements upon sources of air pollution in Colorado, such as Suncor.

58.     The Commission issues regulations to control emissions from sources throughout the State of Colorado. C.R.S. § 25-7-102(1); 5 Colo. Code Reg. § 1001-2:I.A.

59.     The Division enforces violations of the Colorado Air Act, Commission regulations, and applicable permits. C.R.S. §§ 25-7-115, -121, and -122.

## II.    GENERAL FACTUAL BACKGROUND

### A.    Suncor and the Commerce City Refinery

60.    Suncor is a domestic corporation incorporated in the State of Delaware that is a subsidiary of a publicly traded Canadian corporation, Suncor Energy, Inc. At all relevant times to this NOV, Suncor is doing business in the State of Colorado.

61.    Suncor is a "person" within the meaning of Section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e).

62.    Suncor owns and operates the Commerce City Refinery, which is the largest refinery in the Rocky Mountain region with an annual average capacity of 98,000 barrels per day (bbls/day).

63.    The Commerce City Refinery processes both sweet and sour crude oils received from Colorado, Montana, North Dakota, Wyoming, and Canada. The incoming crude oil is received by truck or by pipeline.

64.    The main petroleum products that Suncor produces at the Commerce City Refinery are gasoline, diesel, asphalt, jet fuel, and liquified petroleum gas.

65.    The Commerce City Refinery is located in Colorado's ozone nonattainment area. The Commerce City Refinery is also located within a disproportionately impacted community, as defined at C.R.S. § 24-4-109(2)(b)(II).

66.    The Commerce City Refinery consists of three plants: Plant 1, Plant 2, and Plant 3. The three plants have similar processes and are connected so that materials may be routed from one plant to another.

67.    Plant 1 is the portion of the Commerce City Refinery that was historically owned and operated by Conoco, located on the west side of Brighton Boulevard (the West Plant) and Plant 3 is the portion of the heritage Conoco facility located to the east of Plant 2 on the east side of Brighton Boulevard (the Asphalt Unit). Plant 2 is located directly across from Plant 1 on the east side of Brighton Boulevard (formerly the East Plant), in between Plants 1 and 3. Plant 2 is the portion of the Commerce City Refinery that was historically owned and operated by Colorado Refining Company, later Valero.

68.    The processing of crude oil at the Commerce City Refinery generates wastewater that is separated and is treated at the refinery's lone Wastewater Treatment Plant (WWTP), located in Plant 1. The WWTP consists of primary oil/water separation, dissolved gas floatation (DGF), biological treatment, and membrane filtration. Wastewater is centrally collected in the headworks and is then pumped to the API lift station which feeds the two API oil-water separators operated in parallel before the wastewater feeds into tanks for further treatment.

11

69.    Processes used at the Commerce City Refinery include atmospheric and vacuum distillation, desalting, reforming, catalytic cracking, catalytic polymerization and hydrotreating.

70.    A simplified process flow for each plant is as follows: crude oil enters the crude unit which distills and splits out jet, diesel, asphalt and/or gas oil and all except gas oil are typically routed to hydrodesulfurization units (HDS) in Plant 1. Naptha splits from the crude unit and is routed to a reformer, and the light straight run (LSR) is routed to mix with other refined products and be blended into gasoline. Gas oil is routed to the fluidized catalytic cracking units (FCCU) and some of the refined product from the FCCUs are then routed to a catalytic polymerization unit for further processing into gasoline.

71.    The off-gases from the various processes throughout the refinery are sent to a sulfur recovery process.

72.    During the refining process, certain emission units route waste gas through process flares for destruction.

73.    The Commerce City Refinery operates a gas-benzene reduction (GBR) unit and routes emissions through the F3 Flare, the GBR flare. The remaining flares operating at the Commerce City Refinery subject to the 2023 CAA Stationary Source Inspection are: F1 Flare (Plant 1's Main Flare), F2 Flare (Plant 3's Main Flare), and Plant 2's Main Flare (C005 Flare).

74.    The Commerce City Refinery stores refined products, wastewater and crude oil in storage vessels located on-site at each plant.

75.    Continuous Monitoring Systems (CMS) continuously monitor emissions either through direct or parametric measurement.

76.    The Commerce City Refinery has multiple CMS throughout Plants 1, 2, and 3 to measure the concentration of hydrogen sulfide ($H_2S$) in fuel gases before those gases are burned in a fuel gas combustion device or affected flare.

77.    Continuous Emissions Monitoring Systems (CEMS) are located at the outlet of large industrial sources of emissions. CEMS measure the actual emission concentration of specified regulated pollutants from an industrial source into the ambient air.

78.    At the Commerce City Refinery, CEMS measure actual emission concentration of carbon monoxide (CO), nitrogen oxides (NOx), sulfur dioxide ($SO_2$) among other regulated pollutants.

79.    The Commerce City Refinery has multiple CEMS throughout Plants 1, 2, and 3.

80.    Continuous Opacity Monitoring Systems (COMS) are located at the outlet of large industrial sources of emissions. COMS detect the actual opacity percentage of particulate matter emitted from an industrial source into the ambient air.

81.    The Commerce City Refinery has multiple COMS throughout Plants 1 and 2.

82.    A Tail Gas Unit (TGU) is a control device that uses thermal incineration to destroy regulated pollutants and transform them into $CO_2$ or $SO_2$. There is a TGU at Plant 1 with an emission unit ID of H-25.

83.    Sulfur naturally occurs in raw petroleum products that are refined at the Commerce City Refinery. The refinery's operations include the removal of sulfur from the refined final product, known as sulfur recovery.

84.    Suncor operates a gasoline fuel loading rack called the Denver Truck Terminal. This is the location where some of Suncor's final petroleum products are loaded into tanker trucks for off-site distribution.

85.    Suncor distributes other refined products, which are not sent out through the Denver Truck Terminal, via pipeline or train.

**B.    Prior Air Enforcement by the Division**

86.    The Division conducts annual compliance inspections at the Commerce City Refinery and describes alleged violations in inspection reports. The Commerce City Refinery has been subject to state air enforcement actions by the Division annually for at least the past ten years, as follows: 1) Compliance Order on Consent (COC), Effective February 5, 2024: Case Nos. 2022-076 and 2021-082 (the Division's 2024 COC); 2) COC, Effective March 6, 2020: Case Nos. 2019-194 and 2019-097; 3) COC, Effective June 24, 2019: Case No. 2018-100; 4) COC, Effective April 19, 2018: Case No. 2017-092; 5) COC, Effective January 9, 2017: Case No. 2016-119; 6) COC, Effective August 26, 2015: Case Nos. 2014-122 & 2014-123; and 7) Settlement Agreement and COC, Effective December 2, 2015: Case Nos. 2013-029, 15-09-20-01; IC-150929-1. These inspection findings and enforcement actions include violations that were the same as or similar to certain violations alleged in this NOV.

**C.    The Division's 2022 Inspection of the Commerce City Refinery and 2023 Compliance Advisory**

87.    The Division inspected Suncor's Commerce City Refinery on July 11-13, 2022.

88.    Based on the 2022 inspection, the Division issued the Division's 2023 Compliance Advisory, further described above in the introductory section of this NOV. A copy of CDPHE's 2023 Compliance Advisory is attached to this NOV.

13

### D.    The Governments' 2023 CAA Stationary Source Inspection of the Commerce City Refinery

89.    Inspectors from EPA Region 8, EPA's National Enforcement Investigations Center (NEIC) (collectively, the EPA Inspection Team), accompanied by Division staff, conducted a CAA stationary source compliance investigation of the Commerce City Refinery on October 23-27, 2023, and November 2, 2023 to assess Suncor's compliance with the federal CAA and Suncor's Title V Permits for the Commerce City Refinery as summarized below in Table 1 (the 2023 CAA Stationary Source Inspection).

**Table 1**

| LIST OF APPLICABLE CAA REGULATIONS AND PERMIT REQUIREMENTS INCLUDED IN THE SCOPE OF THE INSPECTION | | |
|---|---|---|
| **Regulatory Status** | **Permit No.** | **Inspection Focus** |
| • Title V permit<br>• NESHAP major source | • 96OPAD120 (Plants 1 and 3)<br>• 95OPAD108 (Plant 2) | • 40 C.F.R. Part 60, Subpart J/Ja<br>• 40 C.F.R. Part 60, Subpart Kb<br>• 40 C.F.R. Part 60, Subpart GGGa<br>• 40 C.F.R. Part 60, Subpart QQQ<br>• 40 C.F.R. Part 61, Subpart FF (BWON)<br>• 40 C.F.R. Part 63, Subpart CC<br>• 40 C.F.R. Part 63, Subpart UUU<br>• Title V Permits<br>• Suncor Consent Decrees |

90.    The EPA Inspection Team conducted the 2023 CAA Stationary Source Inspection under the authority of CAA Section 114, 42 U.S.C. § 7414. Division staff joined this inspection pursuant to the Division's authority under Colorado regulations, issued permits, and C.R.S. § 25-7-111.

91.    The EPA Inspection Team requested, and Suncor provided, records and other information before, during, and after 2023 CAA Stationary Source Inspection. When providing the requested information to the EPA Inspection Team, Suncor made claims that it included confidential business information (CBI) subject to 40 C.F.R. Part 2, Subpart B. Suncor later narrowed the scope of its CBI claims.

92.    Because of Suncor's CBI claims on certain inspection-provided information, and without agreeing that the information is CBI, the Governments have treated and continue to treat all CBI-claimed information according to the requirements of 40 C.F.R. Part 2, Subpart B, and applicable Colorado law. CBI-claimed information contained in this NOV is highlighted in red to denote such treatment.

14

93.     During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team used instruments to test for and visualize potential leaks. These instruments include: (a) A Toxic Vapor Analyzer (TVA) to measure volatile organic compound (VOC) leaks in accordance with EPA Method 21 (40 C.F.R. Part 60, Appendix A); (b) an Optical Gas Imaging (OGI) camera that uses infrared technology to visualize fugitive emissions; (c) an Altair multiple gas monitor as a personal protective warning device to alert personnel of dangerous pollutants and to determine lower explosive limits (LEL) within enclosed spaces; and (d) SUMMA canisters to collect samples of gasses found on site to be later analyzed in NEIC's certified laboratory.

94.     During the 2023 CAA Stationary Source Inspection, Suncor representatives used duplicative instrumentation to the EPA Inspection Team's instruments set forth immediately above to concurrently test for and visualize potential leaks alongside the EPA Inspection Team. In addition, Suncor used an UltraRae Photo Ionization Detector (PID), which was outfitted with a benzene separation tube to create a benzene-specific PID, to measure benzene concentration in vent gasses. The EPA Inspection Team observed Suncor's use of the PID.

95.     All of the EPA Inspection Team's measurements via TVA and OGI were confirmed by Suncor at the time of the inspection.

96.     The EPA finalized an inspection report for the 2023 CAA Stationary Source Inspection on January 26, 2024 (the CAA Stationary Source Inspection Report). As of the date of this NOV, the CAA Stationary Source Inspection Report remains marked as containing company-claimed CBI, because of the facts set forth in Paragraphs 91 and 92 and subject to the handling requirements of 40 C.F.R. Part 2, Subpart B.

97.     Suncor received a copy of the CAA Stationary Source Inspection Report from the EPA prior to the issuance of this NOV.

## III.    FIRST SET OF JOINTLY ALLEGED VIOLATIONS: REQUIREMENTS INCLUDED IN THE DIVISION'S 2023 COMPLIANCE ADVISORY

98.     This NOV incorporates by reference the entirety of the Division's 2023 Compliance Advisory, including without limitation the factual findings and violations contained therein. Through this NOV, the EPA joins the Division in alleging those violations that are federally enforceable.

## IV.    SECOND SET OF JOINTLY ALLEGED VIOLATIONS: REQUIREMENTS FOR REFINERY WASTEWATER AND PROCESS UNIT EMISSION LEAKS

### A.    Statutory and Regulatory Authority

NESHAP Part 61, Subpart FF

99.    40 C.F.R. Part 61, Subpart FF sets the *National Emission Standard for Benzene Waste Operations* (BWON). 40 C.F.R. §§ 61.340 – 61.359.

100.    Colorado has delegated authority to implement and enforce BWON. *See* 5 Colo. Code Reg. § 1001-10:A.I. (incorporating by reference BWON in effect as of July 1, 2023).

101.    BWON requirements apply to owners and operators of petroleum refineries, like Suncor. 40 C.F.R. § 61.340(a).

NSPS Part 60, Subpart QQQ

102.    40 C.F.R. Part 60, Subpart QQQ sets the *Standards of Performance for VOC Emissions From Petroleum Refinery Wastewater Systems* (NSPS QQQ). 40 C.F.R. §§ 60.690 – 60.699.

103.    Colorado has delegated authority to implement and enforce NSPS QQQ. *See* 5 Colo. Code Reg. § 1001-8:A (incorporating by reference NSPS QQQ in effect as of July 1, 2023).

104.    With select exclusions not relevant here, NSPS QQQ applies to "affected facilities located in petroleum refineries for which construction, modification, or reconstruction commenced after May 4, 1987." 40 C.F.R. § 60.690(a)(1). An "affected facility" under NSPS Part 60 is, "with reference to a stationary source, any apparatus to which a standard is applicable." 40 C.F.R. § 60.2. *See* 40 C.F.R. § 60.691.

105.    NSPS QQQ specifies that each individual drain system, oil-water separator, and aggregate facility is a separate affected facility. 40 C.F.R. §§ 60.690(a)(2)-(4).

106.    The Commerce City Refinery operates emission units subject to NSPS QQQ.

*NSPS QQQ Standards for Individual Drain Systems*

107.    40 C.F.R. § 60.692-2 sets forth standards for individual drain systems.

*NSPS QQQ Standards for Oil-Water Separators*

108.    40 C.F.R. § 60.692-3 sets forth standards for oil-water separators.

16

*NSPS QQQ Standards for Closed Vent Systems and Control Devices*

109.    40 C.F.R. § 60.692-5 sets forth the standards for closed vent systems and control devices.

### NSPS Part 60, Subpart Kb

110.    40 C.F.R. Part 60, Subpart Kb sets the *Standards of Performance for Volatile Organic Liquid (VOL) Storage Vessels (Including Petroleum Liquid Storage Vessels) for Which Construction, Reconstruction, or Modification Commenced After July 23, 1984* (NSPS Kb). 40 C.F.R. §§ 60.110b – 60.117b.

111.    Colorado has delegated authority to implement and enforce NSPS Kb. *See* 5 Colo. Code Reg. § 1001-8:A (incorporating by reference NSPS Kb in effect as of July 1, 2023).

112.    With select exclusions not relevant here, NSPS Kb applies to each storage vessel with a capacity greater than or equal to 75 cubic meters ($m^3$) that is used to store VOL for which construction, reconstruction, or modification is commenced after July 23, 1984. 40 C.F.R. § 60.110b.

113.    At the Commerce City Refinery, Suncor operates storage vessels subject to NSPS Kb.

### NESHAP Part 63, Subpart CC

114.    40 C.F.R. Part 63, Subpart CC sets the *National Emission Standards for Hazardous Air Pollutants from Petroleum Refineries* (MACT CC). 40 C.F.R. §§ 63.640 – 63.679.

115.    Colorado has delegated authority to implement and enforce MACT CC. *See* 5 Colo. Code Reg. § 1001-10:E-III (incorporating by reference MACT CC in effect as of July 1, 2023).

116.    MACT CC applies to petroleum refining process units and to all related emissions points at a single refinery plant site that are specified in MACT CC. 40 C.F.R §§ 63.640(a) and 63.640(c).

117.    At the Commerce City Refinery, Suncor operates petroleum refining process units and related emissions points that are subject to MACT CC.

*MACT CC Good Air Pollution Control Practice Requirement*

118.    For any source subject to MACT CC, the general provisions at 40 C.F.R. § 63.642, require, at 40 C.F.R. § 63.642(n), the owner or operator to operate and maintain the source, including associated equipment for air pollution control, in a manner consistent with safety and good air pollution control practices for

17

minimizing emissions. The general duty to minimize emissions does not require the owner operator to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. 40 C.F.R. § 63.642(n).

119.    Determination of whether acceptable operating and maintenance procedures are being used consistent with safety and good air pollution control practices will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operation and maintenance procedures, review of operation and maintenance records, and inspection of the source. 40 C.F.R. § 63.642(n).

<u>Colorado's Air Quality Control Commission's Regulation 24</u>

120.    One of the regulations issued by the Commission, under the authority described in Paragraphs 56 through 58, is Regulation 24, which sets out requirements for the *Control of Emissions from Volatile Organic Compounds and Petroleum Liquids Storage and Petroleum Processing and Refining* (Regulation 24). 5 Colo. Code Reg. § 1001-28. Prior to June 14, 2023, these requirements were contained in 5 Colo. Code Reg. § 1001-9 (Regulation 7).

121.    The requirements of Regulation 24 relevant to this NOV are part of Colorado's SIP. *See* 40 C.F.R. § 52.320(c) (conveying that these provisions were approved when they were contained in Regulation 7, Part B).

122.    At the Commerce City Refinery, Suncor operates petroleum liquids storage and petroleum processing and refining operations that are subject to Regulation 24.

123.    Part B of Regulation 24, *Storage, Transfer, and Disposal of Volatile Organic Compounds and Petroleum Liquids and Petroleum Processing and Refining*, sets forth requirements for storage and transfer of VOCs.

124.    Among other things, Part B of Regulation 24 requires all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves to be maintained and operated to prevent detectable vapor loss except when opened, actuated, or used for necessary and proper activities (e.g. maintenance), with an additional directive that any such opening, actuation, or use must be limited so as to minimize vapor loss. 5 Colo. Code Reg. § 1001-28:B.I.A.

125.    Under Part B of Regulation 24, detectable vapor loss is determined visually, by touch, by presence of odor, or using a portable hydrocarbon analyzer (when an analyzer is used, detectable vapor loss means a VOC concentration exceeding 10,000 ppm). 5 Colo. Code Reg. § 1001-28:B.I.A.

126.    Part B of Regulation 24 regulates emissions from petroleum refineries and has specific provisions governing the venting of blowdown systems and safety pressure relief valves that direct "[a]ll blowdown systems, process equipment vents, and pressure relief valves shall be vented to a vapor recovery system, or to a flare or firebox which assures at least 90% combustion efficiency." 5 Colo. Code Reg. § 1001-28:B.VI.B.3.

## B.    BWON Violations

Applicable Factual Background

*Benzene Waste Operations at Suncor (BWON)*

(1)    Emissions Units that Suncor Reports as Controlled, but are Actually Uncontrolled

127.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team observed the following tanks to have an open "box" (open to the atmosphere) in the sewer line: T2010; T34; T55; T67; T77; T78; T70; T75; T775; T777; T778; and T80. An open "box" is an area where operators can observe the interface between water and hydrocarbon so they can determine when to close the water draw drain valve.

128.    Facilities subject to the BWON who have benzene containing waste on site must calculate the total annual benzene (TAB) quantity from facility waste determined in accordance with 40 C.F.R.§ 61.355(a) and include this information in TAB reports. *See* 40 C.F.R. §§ 61.357(a) and 61.357(d)(2).

129.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team reviewed controlled and uncontrolled sources of benzene containing waste at Suncor as provided by Suncor in TAB reports.

130.    For each of the tanks identified in Paragraph 127, Suncor reported the tank water draws as controlled for benzene emissions in its 2020-2022 TAB reports. The water draws contributed 0.32 Mg, 1.39 Mg, and 0.91 Mg of benzene waste according to information provided by Suncor in the TAB reports in 2022, 2021, and 2020, respectively.

(2)    Uncontrolled Emission Units at the Denver Truck Terminal, that Suncor reports as Controlled

131.    When final product is loaded into tanker trucks at the Denver Truck Terminal, as set forth in Paragraph 84, spills and drips can occur.

132.    Suncor instructs all tanker truck drivers to use a Suncor-provided open bucket to collect spills and drips during the loading process. Upon completion of loading, the drivers are instructed to empty any contents of the bucket into the

individual drain system via one of several elevated funnel-shaped drains at the Denver Truck Terminal. At times, spills and drips reach the loading pad/floor.

133.    The open bucket referred to in the Paragraph immediately above is a "container" as defined in 40 C.F.R. § 61.341.

134.    The EPA Inspection Team observed one of the elevated drains at the Denver Truck Terminal to have a funnel-shaped opening that was equipped with an unlatched and unsealed cover and lacking a visible water seal. This collection drain leads to an underground tank at the same loading bay. Additionally, the EPA Inspection Team measured benzene emissions from the drain at 8,200 ppm using a TVA.

135.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team observed one truck being loaded at the Denver Truck Terminal; the driver did not place the bucket under the nozzle and proceeded to spill the gasoline onto the ground. The gasoline that had spilled was observed to evaporate before reaching the area floor drain.

136.    Suncor reports spills and drips from gasoline loading operations at the Denver Truck Terminal containing benzene as controlled in the TAB reports.

137.    Suncor reports the BWON waste generated at the Denver Truck Terminal as controlled.

138.    The Denver Truck Terminal contributed to 0.74 Mg, 1.06 MG, and 0.88 Mg of benzene waste according to information provided by Suncor in the TAB reports in 2020, 2021, and 2022, respectively.

139.    According to Suncor representatives, the benzene quantity reported in the TAB reports is based on vacuum truck loadout, with the contents of the vacuum truck being sampled for benzene content before the contents are discharged into the headworks of the Commerce City Refinery's on-site wastewater treatment plant at Plant 1 (WWTP). Vacuum truck loadout refers to the use of a vacuum truck to remove waste.

(3)    Leaks from Refinery WWTP

140.    During the 2023 CAA Station Source Inspection, the EPA Inspection Team measured detectable emissions over 500 ppmv above background at multiple emissions units that Suncor was required to operate with no detectable emissions, as indicated by an instrument reading below 500 ppmv, as set forth in Table 2. The EPA Inspection Team also observed flameout status on the TVA while it was in use, as noted below. Flameout status indicates a TVA reading of VOC concentration that is greater than the upper measurement safety threshold of the TVA.

20

**Table 2**

| Location at Refinery WWTP | The EPA Inspection Team's Observations | Applicable Regulatory Requirements |
|---|---|---|
| API Lift Station | North hatch of API Lift Station leaking at 3,700 ppm. Pressure relief device was leaking and TVA flameout occurred.<br><br>Pressure relief device benzene measurement of 276 ppm. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.343(a)(1). |
| Tank T60 Lift Station | Northeast hatch leak detected by Suncor at 6,362 ppm on October 5, 2023; hatch leaking at 1,700 ppm on October 23, 2023. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.343(a)(1). |
| Tank T4515 (oil-water separator) | Vacuum breaker on a pressure relief device leaking at 2,200 ppm on tank. The vent to atmosphere from another pressure relief device had emissions that were observed through OGI. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.347(a)(1). |
| Tank T4514 (oil-water separator) | Vacuum breaker on pressure relief device leaking at 735 ppm on tank. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.347(a)(1)(i)(A). |
| Tank T4517 (slop oil) | Seal on agitator of tank leaking at 6,311 ppm. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.343(a)(1). |
| DGF, tank T4504 | Vacuum breaker on pressure relief device leaking at 1,119 ppm on tank. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.343(a)(1). |
| DGF, tank T4507 | Vacuum breaker on pressure relief device leaking at 7,376 ppm on tank. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.343(a)(1). |
| DGF, tank T4508 | Pressure side of pressure | Which shall otherwise be |

21

| Location at Refinery WWTP | The EPA Inspection Team's Observations | Applicable Regulatory Requirements |
|---|---|---|
| | relief device leaking 900 ppm, and vacuum breaker on same PRD flameout TVA. | in continuous compliance with the requirements of 40 C.F.R. § 61.343(a)(1). |
| DGF, carbon canisters | The closed vent system routing organic vapors to the carbon canister was observed to be leaking using OGI at the connection point to control device. The latch connecting the closed vent system carbon canister was not engaged. After the latch was engaged by Suncor, emissions were no longer observable on OGI. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.349(a). |
| Lab Sump | Manway leak was measured to leak at 918 ppm. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. § 61.343(a)(1). |
| Lab Sump | Vacuum truck hose connected to sump was observed open, leaking at 900 ppm. | Which shall otherwise be in continuous compliance with the requirements of 40 C.F.R. §61.343(a)(1). |

(4)    EOL and TAB Reports Discrepancies

141.    Pursuant to the Suncor Consent Decrees, Suncor uses an End-of-Line (EOL) benzene waste sampling plan designed to validate the benzene concentration and quantity of waste streams managed at the Commerce City Refinery (BWON EOL Sampling Plan). A waste stream is the waste generated by a particular process unit, product tank, or waste management unit.

142.    Under the BWON EOL Sampling Plan in use at the time of the 2023 CAA Stationary Source Inspection, which was revised and submitted to the Governments in 2018, Suncor collects and measures samples downstream of refinery process units (at the EOL). To generate the annual TAB report, Suncor collects samples or uses process knowledge to determine the benzene quantity of waste streams a point of waste generation (POGs).

143.    The amount of benzene measured at an EOL location should be less

than the amount of benzene determined at the combination of POG locations that are managed through respective downstream EOL locations due to volatilization throughout the wastewater management system.

144.    For both controlled and uncontrolled waste streams, benzene in the waste can evaporate between the POG and EOL.

145.    The BWON EOL Sampling Plan requires Suncor to submit quarterly reports to the EPA and the Division to, among other things, relay sampling results. Suncor's TAB reports list the entirety of its benzene-containing waste streams from Plant 2 and Plant 3 as uncontrolled on its TAB reports from 2020, 2021, and 2022.

146.    Suncor lists some of its benzene-containing waste streams from Plant 1 as controlled, and some as uncontrolled, on its TAB reports from 2020, 2021, and 2022.

147.    On facility TAB reports for Plant 2, Suncor reported the benzene quantity at the POGs equal to 0.354 Mg in 2020, and 0.295 Mg in 2021.

148.    Based on sampling, Suncor reported the EOL benzene quantity from Plant 2 equal to 0.662 Mg in 2020, and 0.309 Mg in 2021.

149.    On facility TAB reports for Plant 3, Suncor reported the benzene quantity at the POGs from waste streams equal to 0.013 Mg in 2020, 0.009 Mg in 2021, and 0.009 Mg in 2022.

150.    Based on information available to the EPA, Suncor collects EOL samples and reported the EOL benzene quantity from Plant 3 equal to 0.224 Mg in 2020, 0.312 Mg in 2021, and 0.258 Mg in 2022.

151.    On the facility TAB report for Plant 1, Suncor reported the benzene quantity at the POGs from waste streams equal to 0.081 Mg in 2022.

152.    Suncor does not collect EOL benzene samples from the sewer system in Plant 1 due to self-expressed safety concerns about $H_2S$ exposure at the EOL sampling location. Instead, Suncor uses self-described engineering judgement, process knowledge, and historical sampling to estimate the benzene quantity at the EOL. Suncor reported the EOL benzene quantity from Plant 1 equal to 0.13 Mg in 2022.

153.    Suncor reported in previously submitted annual TAB reports for each year from 2020 through 2023, that facility waste contains a total annual benzene quantity of approximately 18 Mg/yr.

154.    As provided in the TAB reports, Suncor has chosen to comply with the BWON compliance option in 40 C.F.R. § 61.342(e).

155.    Under the compliance option in 40 C.F.R. § 61.342(e), only wastewater containing a facility-wide total of 6 Mg benzene per year can be uncontrolled or handled in waste management units that are not compliant with 40 C.F.R. §§ 61.343, 61.344, 61.345, 61.346, 61.347, and/or 61.348(a).

156.    According to the calculation required in 40 C.F.R. § 61.355(k), the uncontrolled benzene quantity is determined at each location where the waste stream enters the first waste management unit not complying with 40 C.F.R. §§ 61.343, 61.344, 61.345, 61.346, 61.347, and 61.348(a) that are applicable to the waste management unit.

*Pressure Relief Devices*

157.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team observed detectable emissions greater than 500 ppm on pressure relief devices as listed in Table 3. There were no process upsets or risks of safety hazard or equipment damage noted by Suncor for these PRDs at the time of the 2023 CAA Stationary Source Inspection. The EPA Inspection Team also observed flameout status on the TVA while it was in use, as noted below. Flameout status indicates a TVA reading of VOC concentration that is greater than the upper measurement safety threshold of the TVA.

**Table 3**

| Emission Unit Location | Monitored TVA Emission Measurement |
|---|---|
| API lift station | Flameout |
| Tank T4514 API | 735 ppm |
| Tank T4515 API | 2,200 ppm |
| Tank T4516 (slop oil) | 2,100 ppm |
| Tank T4504 (DGF) | 1,100 ppm (measured by Suncor using an extension probe) |
| Tank T4507 (DGF effluent tank) | 7,375 ppm |
| Tank 4508 (DGF skim tank) | Flameout |
| Lower API (Plant 2) | 80,000 ppm |

24

*The Governments have redacted the original NOV sent to Suncor to prevent disclosure of
company-claimed confidential business information (CBI). See footnote 2.*

### Leak Detection and Repair (LDAR) Monitoring

158.    Suncor monitored, ▇▇Company-Claimed CBI▇▇ BWON affected
components to detect the presence of leaks ▇Company-Claimed CBI▇

159.    As part of the 2023 CAA Stationary Source Inspection, Suncor
provided the EPA Inspection Team with access to the ▇Company-Claimed CBI▇
▇▇▇▇ and the EPA Inspection Team reviewed ▇Company-Claimed CBI▇

160.    Based on the EPA Inspection Team's review conducted and set forth
immediately above, ▇Company-Claimed CBI▇ from emissions units subject to
BWON requirements from ▇Company-Claimed CBI▇.

161.    Company-Claimed CBI

162.    During the days of the 2023 CAA Stationary Source Inspection that
the EPA Inspection Team was monitoring BWON affected components at the
Commerce City Refinery for leaks, the EPA Inspection Team found at least 20
leaking BWON components at the Commerce City Refinery, as set forth in
Paragraphs 140 and 157 and observed uncontrolled emissions units that Suncor
reported as controlled, as set forth in Paragraph 127 and 131 to 135, and other
indications of an inadequate LDAR program.

### Carbon Canisters at the Plant 1 WWTP

163.    Suncor uses carbon canisters, connected in series, to control emissions
from the Dissolved Gas Flotation (DGF) tanks at the facility WWTP at Plant 1.

164.    The EPA Inspection Team inspected the DGF tanks' carbon canisters
and observed VOC emissions with an OGI camera from the secondary carbon
canister effluent stack.

165.    At the direction of EPA Inspection Team, Suncor monitored the DGF
exhaust gases between the primary canister and the secondary canister, and at the
outlet of the secondary canister (which is vented to atmosphere) using an UltraRae
PID. The UltraRae PID was calibrated to measure benzene, but not total VOCs. At
both locations, Suncor's instrument read 68 ppm benzene, indicating zero control
efficiency was being achieved by the secondary carbon canister. At both locations,

---

[2] As set forth in Paragraphs 91 to 92, CBI-claimed information contained in this NOV is highlighted
in red to indicate it is treated by the Governments according to 40 C.F.R. Part 2, Subpart B, and
applicable Colorado law.

the EPA Inspection Team monitored for breakthrough of total organic compounds using a TVA and at both locations, the vapors caused a flameout of the TVA.

166.   The EPA Inspection Team collected an air sample using a SUMMA canister between the primary and secondary carbon canisters identified in Paragraph 165. After collection, the sample was later analyzed at the NEIC's laboratory for both benzene and total VOC concentration. The analysis at the lab allowed for detection of organics in the parts per billion range, a higher precision value than the UltraRae PID utilized on-site by Suncor. The sample results showed a benzene concentration of 76.1 ppm and a VOC concentration of 789.6 ppm.

167.   According to Suncor's engineering calculation and design analysis records for the DGF carbon canister system, the highest concentration expected to occur at the inlet to the system is 1,000 ppm VOC.

168.   The EPA Inspection Team collected a SUMMA canister sample of vapors from the API Lift Station which showed a benzene concentration of 276 ppm. The API Lift Station is used to collect and pump wastewater to the API oil-water separators prior to treatment in the downstream DGF.

169.   More oil is present and benzene vapor concentrations are expected to be higher at the API Lift Station than the DGF tanks. When wastewater travels between the API Lift Station and the DGF tanks, benzene has the opportunity to evaporate out. Therefore, the benzene concentration at the inlet to the DGF carbon canisters is expected to be no greater than 276 ppm.

170.   Assuming a 276 ppm benzene inlet measurement at the DGF, and an outlet reading of 76 ppm at the outlet of the second canister, Suncor only achieved a 72.4% benzene reduction efficiency through the carbon canisters.

171.   Assuming a 1,000 ppm VOC inlet measurement at the DGF and a reading of near 789 ppm at the outlet of the secondary canister, Suncor only achieved a 21% VOC reduction efficiency.

172.   Suncor's records indicate that the monitoring frequency for carbon canisters at the Commerce City Refinery is every 3 days.

173.   Based on the breakthrough of both the primary and secondary carbon canisters, set forth above in Paragraphs 163 to 171, and Suncor's monitoring frequency set forth in Paragraph 172, Suncor is not monitoring for breakthrough on a daily basis or at a frequency of at least 20% of the design carbon replacement interval.

174.   The Conoco Consent Decree defines, for dual carbon canister systems in series, "breakthrough" between the primary and secondary canister as any reading equal to or greater than 50 ppm VOCs.

175.    Suncor uses a 5-ppm benzene breakthrough definition and monitors the carbon canisters for breakthrough using an UltraRae benzene-specific PID with at 5-ppm benzene breakthrough definition.

176.    The Conoco Consent Decree requires Suncor to replace the original primary carbon canisters with either a fresh carbon canister or the secondary canister within 24 hours of when breakthrough is detected. If the original secondary carbon canister is used as the new primary carbon canister, a fresh carbon canister will become the secondary canister.

177.    Plant 1 has a laboratory to test wastewater generated by Suncor's operations. Suncor disposes of laboratory waste through an underground sump. Suncor uses carbon canisters to serve as a control device for the emissions from the lab sump.

178.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team also inspected carbon canisters used as control devices on the lab sump. The EPA Inspection Team measured breakthrough at the carbon canisters at the lab sump with a leak of 918 ppm VOC. Suncor did not replace the carbon canisters within 24 hours after the EPA Inspection Team measured breakthrough using the 50 ppm VOC breakthrough definition set forth in Paragraph 174.

<u>BWON Violations</u>

### *Failure to Comply with Individual Drain Systems Standards*

179.    Suncor failed to install, operate, and maintain on each drain system opening a cover and closed-vent system, in a manner so as to have no visual gaps or cracks in joints, seals, or other emissions interfaces, that routes all organic vapors vented from the drain system to a control device and/or failed to operate each sewer line in a manner that is not open to the atmosphere, enclosed or covered so as to have no visual gaps or crack in joints, seals, or other emission interfaces for each of the tank water draws identified in Paragraph 127, in violation of 40 C.F.R. §§ 61.346(a)(1) and/or 61.346(b)(3).

180.    Suncor failed to install water seal controls or a tightly-fitting cap or plug at the Denver Truck Terminal elevated funnel-shaped drains identified in Paragraph 134, in violation of 40 C.F.R. §§ 61.346(a)(1) and/or (b)(1) and (b)(3).

### *Failure to Comply with Container Standards*

181.    By using open containers without covers to collect spills during the tanker truck loading process at the Denver Truck Terminal, as set forth in Paragraphs 132 through 134, and by reporting the BWON waste at the Denver Truck Terminal as controlled, as set forth in Paragraphs 136 and 137, Suncor violates the requirements for a controlled container under 40 C.F.R. § 61.345(a)(1).

27

*The Governments have redacted the original NOV sent to Suncor to prevent disclosure of
company-claimed confidential business information (CBI). See footnote 2.*

### Benzene-Containing Waste Reporting Violations

182.    Suncor failed to report the tank water draw discharges for each of the
tanks identified in Paragraph 127 as uncontrolled wastes in the facility's 2020-2022
TAB reports, in violation of 40 C.F.R. §§ 61.357(a) and 61.357(d)(2).

183.    Suncor's annual TAB reports from 2020-2023, as identified in
Paragraph 136 and 137, do not account for spilled gasoline that evaporates prior to
reaching the floor drain at the Denver Truck Terminal resulting in an
underestimation of benzene quantity in those reports. Therefore, Suncor failed to
accurately account for benzene-containing waste produced at individual points of
waste generation on its TAB reports for 2020, 2021, and 2022, in violation of 40
C.F.R. § 61.357(a)(4).

184.    Based on the information set forth in Paragraph 131 through 139,
Suncor generated uncontrolled benzene-containing waste at the Denver Truck
Terminal (gasoline loading rack), but failed to report the waste as uncontrolled in
its TAB reports from 2020-2022, in violation of 40 C.F.R. § 61.357(a)(2).

### Leaks from Refinery WWTP

185.    Based on the information set forth in Paragraph 140, Suncor failed to
operate and maintain fixed roofs and closed vent systems that route all organic
vapors to control device and control emissions units to ensure those units would
operate with no detectable emissions, as indicated by an instrument reading below
500 ppmv, in violation of 40 C.F.R. §§ 61.343(a)(1), 61.347(a)(1), 61.349(a)(2), and
61.349(a)(1)(i).

### Inadequate LDAR Monitoring

186.    Based on ▉Company-Claimed CBI▉ BWON
affected components at the Commerce City Refinery, as set forth in Paragraphs 158
through 161, and the EPA Inspection Team's monitoring of BWON affected
components at the Commerce City Refinery, as set forth in Paragraph 162, Suncor
failed to correctly perform BWON-related LDAR monitoring for ▉Company-Claimed CBI▉
▉ prior to the 2023 CAA Stationary Source Inspection ▉Company-Claimed CBI▉
▉ in violation of 40 C.F.R. §§ 61.343, 61.345, 61.346,
61.347, 61.349, and 61.355

### BWON Control Device Violations

(1)    Failure to Achieve Control Efficiency for DGF
Carbon Canisters

187.    Based on the benzene and VOC reduction efficiencies set forth in
Paragraphs 170 and 171, respectively, and the facts set forth in Paragraphs 163
through 169, Suncor failed to operate a vapor recovery system to recover or control
the benzene emissions vented from the five DGF tanks (T4502, T4503, T4504,

28

T4507, T4508) through the carbon canisters with an efficiency of 98 weight percent or greater, or organic emissions with an efficiency of 95 weight percent or greater, in violation of 40 C.F.R. § 61.349(a)(2)(ii).

(2)    Failure to Monitor and Replace Carbon Canisters as Required

188.    Based on the facts set forth in Paragraphs 172 and 173, carbon canisters at the Commerce City Refinery are not monitored as required by 40 C.F.R. § 61.354(d).

189.    Suncor incorrectly used a 5-ppm benzene breakthrough definition instead of the 50-ppm VOC breakthrough definition required by the Conoco Consent Decree, as set forth by Paragraphs 174 and 175, in its inspections of the carbon canisters in Plant 1 and Plant 3, from 2018 to 2023, in violation of Conoco Consent Decree Paragraph 90.

190.    Based on the facts set forth in Paragraphs 176 and 177 Suncor failed to replace the carbon canisters at the lab sump within 24 hours in violation of Conoco Consent Decree Paragraph 92.

*BWON Reporting Violations*

191.    The EOL sample results provided by Suncor demonstrate more benzene at the EOL for Plants 2 and 3 than from the individual points of waste generation reported in the TAB reports, such that Suncor's TAB reports are not accurately accounting for all the benzene waste produced at individual points of waste generation based on information set forth in Paragraph 141 to 152, in violation of 40 C.F.R. §§ 61.357(a) and 61.357(d)(2).

*Suncor Exceeded the 6 Mg/yr Control Standard for Benzene Quantity*

192.    Based on the information set forth in Paragraph 179 to 191 Suncor failed to maintain the amount of controlled benzene in facility wastewater below 6 Mg/year, as determined using the procedures in 40 C.F.R. § 61.355(k) from 2018 through 2023, in violation of 40 C.F.R. § 61.342(e)(2)(i).

## C.    Wastewater VOC Emissions Violations (NSPS QQQ)

Applicable Factual Background

*Facility-Wide NSPS QQQ Inspections*

193.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team inspected individual drains and junction boxes within process units subject to NSPS QQQ as identified by Suncor, and observed that the drains in

29

Table 4 were not operated with the required controls, and that the junction boxes in Table 4 were not equipped with a tightly sealed cover as follows:

**Table 4**

| Location at Commerce City Refinery | EPA Inspection Team's Observation | Applicable Requirement |
|---|---|---|
| Plant 2, Unsaturated Gas Unit | Drain 0451 equipped with a plug that was not tightly sealed and leaking at 1,092 ppm. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Unsaturated Gas Unit | Junction box manhole cover west of vessel 09T250 was not tightly sealed and leaking at 17,000 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 2, Unsaturated Gas Unit | Three drain risers next to pump 0466 were equipped with plugs that were not properly installed. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Unsaturated Gas Unit | Drain 0468 equipped with a plug that was not tightly sealed, leaking at 515 ppm. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Unsaturated Gas Unit | Drain 0469 equipped with a plug that was not properly installed as indicated by a visible gap around the edge of the seal. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Unsaturated Gas Unit | Drain 0472 equipped with a plug that was not tightly sealed, leaking at 1,744 ppm. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Unsaturated Gas Unit | Drain 0473 equipped with a plug that was not tightly sealed, leaking at 3,300 ppm. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Unsaturated Gas Unit | Manhole near pump 254A not sealed (with visible holes) with emissions measuring 2,800 ppm. | 40 C.F.R. § 60.692-2(b). |
| Plant 2, Saturated Gas Unit | Drain 0414 (near pump 318A) equipped with a plug that was not properly installed as indicated by a visible gap around the edge of the seal. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |

| Location at Commerce City Refinery | EPA Inspection Team's Observation | Applicable Requirement |
|---|---|---|
| Plant 2, Saturated Gas Unit | Drain 0415 (near pump 318B) equipped with a plug that was not properly installed as indicated by a visible gap around the edge of the seal. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Saturated Gas Unit | Drain 0408 equipped with a plug that was not tightly sealed, leaking at 1,300 ppm. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Saturated Gas Unit | Junction box manhole cover with holes (not sealed) between Saturated and Unsaturated units. | 40 C.F.R. § 60.692-2(b). |
| Plant 2, Saturated Gas Unit | Sewer opening with a steel plate cover (with holes in it) with emissions measuring 2,300 ppm. | 40 C.F.R. § 60.692-2(b). |
| Plant 2, Saturated Gas Unit | Drain near caustic treater V-255 equipped with a plug that was not properly installed as indicated by a visible gap around the edge of the seal. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Saturated Gas Unit | Drain east of E-294 with open grating and no visible water seal, with emissions measuring 765 ppm. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Saturated Gas Unit | Drain near V-705 with no plug and no visible water seal with emissions measuring at 1,757 ppm. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Saturated Gas Unit | Drain 0428 with no plug and no visible water seal. | 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4). |
| Plant 2, Saturated Gas Unit | Junction box manhole cover northeast of eyewash station not tightly sealed and leaking at 8,000 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 2, Saturated Gas Unit | Junction box manhole cover (tag 0501) north of upper API was not sealed (had visible holes) and had emissions measuring 12,000 ppm. | 40 C.F.R. § 60.692-2(b). |

31

*The Governments have redacted the original NOV sent to Suncor to prevent disclosure of company-claimed confidential business information (CBI). See footnote 2.*

| Location at Commerce City Refinery | EPA Inspection Team's Observation | Applicable Requirement |
|---|---|---|
| Plant 3 | Junction box manhole cover (tag 0087) with visible holes and emissions measuring at 13,000 ppm. | 40 C.F.R. § 60.692-2(b). |
| Plant 1, GBR Unit | Sewer cleanout access (tag 0229) not tightly sealed and leaking at 594 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 1, GBR Unit | Sewer cleanout access (tag 0224) not tightly sealed and leaking at 1,600 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 1, Hydrogen Unit | Junction box (tag 2249) visibly damaged seal with a leak that caused a flameout of the TVA. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 1, Reformer Unit | Drain 1077 missing water seal and emissions measuring 1,300 ppm. | 40 C.F.R. § 60.692-2(a)(1). |
| Plant 1, Reformer Unit | Drain 1079 with a partial water seal (did not appear to be fully sealed) and emissions measuring 978 ppm. | 40 C.F.R. § 60.692-2(a)(1). |
| Plant 1, Reformer Unit | Drain 1078 missing water seal. | 40 C.F.R. § 60.692-2(a)(1). |
| Plant 1, Reformer Unit | Sewer cleanout access (tag 1080) not tightly sealed and leaking at 740 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 1, Reformer Unit | Junction box manhole cover (tag 0189) not tightly sealed and leaking at 2,000 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 1, HDS#3 | Junction box manhole cover (tag 0112) with visibly damaged seal leaking at 1,500 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 1, HDS#3 | Junction box manhole cover (tag 0013) with visibly damaged seal leaking at 670 ppm. | 40 C.F.R. § 60.692-2(b)(2). |
| Plant 1, HDS#3 | Drain 0152 missing water seal. | 40 C.F.R. § 60.692-2(a)(1). |

194.    Suncor provided the EPA Inspection Team with records of NSPS QQQ inspections from [Company-Claimed CBI] that Suncor conducted on subject components from [Company-Claimed CBI]. The records identify that [Company-Claimed CBI]

32

*The Governments have redacted the original NOV sent to Suncor to prevent disclosure of
company-claimed confidential business information (CBI). See footnote 2.*



195.    According to the Company-Claimed CBI

196.    The EPA Inspection Team's review of Company-Claimed CBI

197.    Suncor performed Company-Claimed CBI

198.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team conducted NSPS QQQ compliance inspections. Over the course of three days, the EPA Inspection Team observed the 34 deficiencies listed in the table above in Table 4. By contrast, Company-Claimed CBI as set forth in Paragraph 197.

199.    Suncor reported that the wastewater generated in Plant 2 is routed through the upper, middle, and/or lower APIs and is then collected in tank T29. Tank T29 is equipped with an oil skimmer and the skimmed slop oil is collected in tank T20 for reprocessing. The oil is removed from tank T29 using a vacuum truck that is vented to the atmosphere while filling. Suncor also reported that oil is also removed from the upper, middle, and lower APIs using vacuum trucks.

### ADI Control Number 0400031

200.    On May 10, 2004, EPA Region 5 issued an ADI under NSPS QQQ titled, "Junction Box Tight Seal & Infrequently Used Drain" (ADI Control Number 0400031). This ADI clarified what satisfies the "tight seal" requirements for junction box covers under NSPS QQQ and whether any alternative to the water seal requirements for drains under NSPS QQQ may apply to infrequently used drains.

201.    ADI Control Number 0400031 states that "…the intention of the 'tight seal' requirements in Sec. 60.692-2(b)(2) is to prevent the leakage of vapor from around the edges of junction box covers. . . .[T]he proposed rule at 52 Fed. Reg. 16352 (May 4, 1987) stated 'the seal around the junction cover shall be designed and operated with no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background levels, as determined during an initial and semiannual inspections thereafter.' This language was omitted from the promulgated rule because the Agency decided that visual inspections would be

33

sufficient. However, we believe that the rule's intention remains that seals around junction box covers prevent detectable leaks."

### Ground Cracks in Plant 1 Reformer Process Area

202.    While touring the Plant 1 Reformer process area, the EPA Inspection Team observed visible cracks in the ground (concrete) to be emitting hydrocarbon when viewed with an OGI camera. The EPA Inspection Team could not determine the exact source of these hydrocarbon emissions while on site during the 2023 CAA Stationary Source Inspection. Suncor representatives identified an underground process sewer line or potentially contaminated soil beneath the concrete within the reformer process area as two possible sources of these emissions.

### Cracks in Plant 2 API Tanks

203.    Suncor identified to the EPA Inspection Team during the 2023 CAA Stationary Source Inspection three emission units in Plant 2, among others, that are subject to NSPS QQQ, namely the Lower API, Middle API, and Upper API.

204.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team inspected the three API tanks referred to immediately above and made observations of deficiencies in the operation of these emission units as set forth in Table 5.

**Table 5**

| Emission Unit | EPA Inspection Team's Observation |
|---|---|
| Lower API F021 | Cracking in the outer walls of the concrete tank, which had emissions ranging between 1,800 ppm and 2,900 ppm. The northwest edge at the bottom of the Lower API, where it touches the ground was stained, significant hydrocarbon odor was apparent, and emissions were measured at 30,000 ppm. The entire edge along the back side of the Lower API was emitting hydrocarbons greater than 10,000 ppm. |
| Middle API F022 | Cracks along the southwest portion of the Middle API. The observed cracks had visible staining. The cracked and stained concrete measured 2,000 ppm VOC. |
| Upper API F023 | Several cracks along the east side of the concrete wall, which had emissions ranging between 2,000 ppm and 5,300 ppm. |

205.    The EPA Inspection Team observed during the 2023 CAA Stationary Source Inspection that the Lower API, Middle API, and Upper API are each equipped with a fixed roof and have a nitrogen blanket that purges the vapors to carbon canisters. However, the EPA Inspection Team also observed that there were

34

no flow indicators installed on the APIs to indicate whether the vapors are actually being routed to the carbon canisters. The EPA Inspection Team observed the position of the valves used to control each carbon canister that is in use to be visible; however, the valve position did not indicate flow or demonstrate that the vapors are being routed to the control device.

### NSPS QQQ Violations

206.    Suncor failed to operate the drains in Table 4, of Paragraph 193, with water seals and/or tightly sealed caps or plugs, in violation of 40 C.F.R. §§ 60.692-2(a)(1) and 60.692-2(a)(4).

207.    Suncor failed to operate the junction boxes in Table 4, of Paragraph 193, with tightly sealed covers in violation of 40 C.F.R. § 60.692-2(b).

208.    Suncor failed to operate the oil-water separators in Paragraphs 194 through 198 with fixed roofs that completely cover the separator tanks in violation of 40 C.F.R. § 60.692-3(a)(1).

209.    Suncor failed to operate closed vent systems in Paragraphs 194 through 198 with no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background in violation of 40 C.F.R. § 60.692-5(e)(1).

210.    Suncor failed to make repairs to missing or improperly installed caps or plugs in Paragraphs 194 through 198 soon as practicable, but not later than 24 hours after detection, pursuant to ADI Control Number 0400031 in violation of 40 C.F.R. § 60.692-2(a)(5).

211.    Suncor failed to make repairs to non-tightly sealed junction boxes in Paragraphs 194 through 198 as soon as practicable, but not later than 15 calendar days after identification pursuant to ADI Control Number 0400031, in violation of 40 C.F.R. § 60.692-2(b)(4).

212.    Based on the information set forth in Table 4, of Paragraph 193, and Paragraphs 194 through 198, Suncor failed to properly perform monitoring and repair for NSPS QQQ affected emission units, in violation of 40 C.F.R. §§ 60.692-2(a), 60.692-2(b), 60.692-3(a)(4), and 60.692-5(e)(1).

213.    Based on the facts set forth in Paragraph 199 the oil and oily wastewater from slop oil handling in tank T29, Lower API, Middle API, Upper API, and tank T20 is collected and transported using vacuum trucks that are vented to the atmosphere during filling and not in an enclosed system, in violation of 40 C.F.R. § 60.692-3(e).

214.    Based on the facts set forth in Paragraph 205, Suncor failed to equip the Lower API, Middle API, and Upper API with closed vent systems that contain the required flow indicators, in violation of and 40 C.F.R. § 60.692-5(e)(3).

### D.    Volatile Organic Liquid from Storage Vessels Violations (NSPS Kb)

Applicable Factual Background

215.    Tank T29 in Plant 2 receives oily wastewater from the Lower API, Middle API, and Upper APIs, as discussed in Paragraph 204.

216.    Tank T29 is subject to NSPS Kb. This status is incorporated into Suncor's Permit 95OPAD108.

217.    Tank T29 is equipped with an external floating roof (EFR). While standing on the tank platform above the floating roof deck, the EPA Inspection Team observed, with an OGI camera, hydrocarbon emissions from an automatic bleeder vent on the EFR.

218.    The EPA created and regularly revises and updates AP-42, *Compilation of Air Pollutant Emissions Factors from Stationary Sources*, to represent the primary compilation of EPA's emissions factor information. Chapter 7 of AP-42 addresses Liquid Storage Tanks.

219.    Emissions estimating methodologies for storage tanks of various types and operating conditions are set forth in Chapter 7 of AP-42 and only apply for storage tanks that are properly maintained and in normal working condition. The emissions estimating methodologies do not address conditions of deteriorated or otherwise damaged materials of construction, nor do they address operating conditions for storage tanks that are not properly maintained or in normal working condition.

220.    Suncor uses AP-42 emission factors to determine emission limits set forth in both Title V permits.

221.    Relying on AP-42 Chapter 7 emission estimating methodologies, as set forth in Paragraphs 218 to 220, Suncor requested a 1.71 tpy VOC emissions limitation for tank T29 in its Title V permit application, and Suncor's Permit 95OPAD108, at Condition 10.1.2, incorporates a 1.71 tpy VOC emissions limitation for tank T29.  This emission limit was approved based on Suncor's representation that tank T29 met the maintenance and operating conditions required for the application of AP-42 Chapter 7 emissions estimating methodologies, as set forth in Paragraph 219.

36

222.    Any storage vessel that is not properly maintained or operating under normal working conditions loses the ability to accurately estimate emissions using AP-42 emission factors to demonstrate compliance with an emissions limit.

<u>NSPS Kb Violations</u>

223.    Based on the facts set forth in Paragraph 217, Suncor failed to maintain the automatic bleeder vent on tank T29 in Plant 2 such that automatic bleeder vent was closed at all times and gasketed. 40 C.F.R. § 60.112b(a)(2)(ii).

224.    Based on the EPA Inspection Team's inspection of tank T29 set forth in Paragraph 217, Suncor failed to operate and maintain the source consistent with good air pollution control practices for minimizing emissions. 40 C.F.R. § 60.11(d).

225.    Because the tank T29 automatic bleeder vent has been leaking for an unknown amount of time, at a minimum during the 2023 CAA Stationary Source Inspection, as set forth in Paragraph 217, Tank T29 was not properly maintained and operating under normal working conditions while it was leaking.

226.    Based on the information set forth in Paragraph 225, Suncor's emission limits estimated by AP-42 are not accurate estimates, as set forth in Paragraph 221 and 222, therefore tank T29 has been exceeding the permitted VOC emission limit in Permit 95OPAD108, Condition 10.1.2 for an unknown amount of time, in violation of that permit.

**E.    Colorado Commission Regulation 24 Violations**

227.    Based on information received from Suncor regarding uncontrolled pressure relief devices, observations made during the 2023 CAA Stationary Source Inspection, and the facts set forth in Paragraph 157, Suncor is failing to route 61 pressure relief devices to a vapor recovery system, or to a flare or firebox that assures at least 90% combustion efficiency, in violation of Part B of Regulation 24, 5 Colo. Code. Reg. § 1001-28:B.VI.B.3.

**F.    Pressure Relief Device Violations of MACT CC**

228.    As set forth in Paragraph 157, Suncor failed to operate the pressure relief devices in Table 3 with an instrument reading of less than 500 ppm above background, in violation of 40 C.F.R. § 63.648(j)(1).

**G.    Good Air Pollution Control Practices for Both BWON and NSPS QQQ Affected Facilities**

229.    Based on the numerous violations found during the 2023 CAA Stationary Source Inspection where EPA Inspection Team observed leaking BWON components at the Commerce City Refinery, as set forth in Paragraphs 140 and 157 and observed uncontrolled emissions units that Suncor reported as controlled, as set

37

forth in Paragraph 127 and 131 through 139, Suncor failed to operate the
components subject to BWON in a manner consistent with good air pollution control
practices, in violation of 40 C.F.R. § 61.12(c).

230.    Suncor failed to maintain and operate affected facilities in a manner
consistent with good air pollution control practice for minimizing emissions at
NSPS QQQ-subject sources, based on the repeat deficiencies identified by Suncor in
Paragraphs 194 through 198 and the EPA Inspection Team's observations in Table
4, in violation of 40 C.F.R. § 60.11(d).

231.    Based on the facts set forth in Paragraph 202, and 203 to 204, Suncor
has failed to operate and maintain affected sources at the Commerce City Refinery
with good air pollution control practices for minimizing emissions, in violation of 40
C.F.R. §§ 61.12(c) and 60.11(d).

## V.    THIRD SET OF JOINTLY ALLEGED VIOLATIONS: CAA STORAGE VESSEL REQUIREMENTS AND CAA FLARE GAS RECOVERY SYSTEM ASSESSMENT VIOLATIONS

### A.    Statutory and Regulatory Authority

<u>NSPS Kb</u>

232.    At the Commerce City Refinery, Suncor operates storage vessels
subject to NSPS Kb, as set forth in Paragraphs 110 through 113.

<u>MACT CC</u>

233.    At the Commerce City Refinery, Suncor operates petroleum refining
process units and related emission points that are subject to MACT CC, as set forth
in Paragraphs 114 through 117.

<u>MACT WW</u>

234.    40 C.F.R. Part 63, Subpart WW sets the *National Emission Standards
for Storage Vessels (Tanks) – Control Level 2* (MACT WW). 40 C.F.R. §§ 63.1060 –
63.1067.

235.    MACT WW applies to the control of air emissions from storage vessels
referred to in, among other subparts, MACT CC. 40 C.F.R § 63.1060.

236.    At the Commerce City Refinery, Suncor operates storage vessels
referred to in MACT CC and subject to Subpart WW.

<u>NSPS Part 60, Subpart Ja</u>

237.    40 C.F.R. Part 60, Subpart Ja sets the *Standards of Performance for
Petroleum Refineries for Which Construction, Reconstruction, or Modification
Commenced After May 14, 2007* (NSPS Ja). 40 C.F.R. §§ 60.100a – 60.109a.

38

238.    Colorado has delegated authority to implement and enforce NSPS Ja. *See* 5 Colo. Code Reg. § 1001-8:A (incorporating by reference NSPS Ja in effect as of July 1, 2023).

239.    With select exceptions not relevant here, NSPS Ja applies to the following affected facilities in petroleum refineries: fluid catalytic cracking units (FCCU), fluid coking units (FCU), delayed coking units, fuel gas combustion devices (including process heaters), flares and sulfur recovery plants. The sulfur recovery plant need not be physically located within the boundaries of a petroleum refinery to be an affected facility, provided it processes gases produced within a petroleum refinery. 40 C.F.R. § 60.100a.

240.    At the Commerce City Refinery, Suncor operates affected facilities subject to NSPS Ja.

## B.    General Factual Background about Tanks Inspections

241.    At all refineries, the physical inspection from within the storage vessel of certain components or sections of storage vessel control devices, such as rim seals, pontoon covers, and vacuum breaker vents that are part of a floating roof as explained in MACT WW, is limited by safety considerations.

242.    During the 2023 CAA Stationary Source Inspection, because visual inspection of certain components or sections of storage vessel control device presents safety risks as set forth immediately above, the EPA Inspection Team and Suncor used OGI cameras to inspect tanks storing VOL to assess whether those tanks had likely deficiencies such as gaps, holes, vent failures, or other control device integrity failures that may otherwise be visible during a physical inspection from within the storage vessel.

## C.    Volatile Organic Liquid from Storage Vessels Violations (NSPS Kb)

Applicable Factual Background

243.    Tanks T6, T53 and T96 are internal floating roof (IFR) tanks subject to the requirements of MACT CC and NSPS Kb.

244.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team and Suncor used OGI cameras to inspect the following IFR tanks and observed hydrocarbon emissions being vented to atmosphere as shown in Table 6:

**Table 6** List of Inspected Tanks Subject to MACT CC and NSPS Kb

| Tank Emission ID | Tank Type | The EPA Inspection Team's Observations |
|---|---|---|
| Tank T6 | Internal Floating Roof | Emissions from roof vents on the north and west side of the tank. |
| Tank T53 | Internal Floating Roof | Emissions from a roof vent on the west side of the tank. |
| Tank T96 | Internal Floating Roof | Emissions from a roof vent on the south side of the tank. |

245.    The emissions observed by the EPA Inspection Team using OGI cameras as described immediately above were documented in still photographs and videos that depict, in some cases, visibly large plumes continuously wafting off the top of the tanks into the ambient air. OGI cameras capture images that cannot be seen by the naked eye.

246.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team used an Altair 5X multiple gas monitor to measure the lower explosive limit (LEL) in the vapor space for two tanks, IFR tank T6 (in Plant 2) and tank T96 (in Plant 1). Tanks T6 and T96 are both located within a quarter mile of Brighton Boulevard and both tanks measured by the EPA Inspection Team had elevated LEL, though were below the LEL.

*Suncor's Additional Inspection of, and Records and Reports for, Tank T96*

247.    Based on the EPA Inspection Team's inspection of IFR tank T96, set forth in Paragraph 244, the EPA Inspection Team requested that Suncor conduct a visual inspection IFR from openings in the fixed roof for that tank.

248.    On November 2, 2023, Suncor conducted a visual inspection of tank T96's IFR, as requested by the EPA Inspection Team in the paragraph immediately above.

249.    Suncor's inspection records for the tank T96 inspection conducted on November 2, 2023 identified black liquid accumulated on the floating roof around what appears to be an IFR deck leg. These inspection records also said no action was required for the IFR of tank T96.

250.    Since Suncor's November 2, 2023 visual inspection of tank T96, Suncor has not reported to the EPA and the Division repairing tank T96 or emptying and removing tank T96 from service to address liquid accumulated on the IFR of tank T96.

40

*Suncor's Additional Inspection of Tanks T6, T53, and T96*

251.    The EPA Inspection Team observed Suncor's tank inspection contractors conducting IFR tank inspections at multiple tanks on October 25, 2023 and November 2, 2023.

252.    Tanks T6, T53, and T96 were inspected by Suncor's contractors as set forth in Paragraph 251.

253.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team observed and verified that Suncor conducts visual tank top inspections through a single opening in the fixed roof for IFR tanks, which does not provide a comprehensive view of the entire IFR deck, deck fittings, and rim seals.

NSPS Kb Violations

*Emissions from IFR roof vents on Tanks T6, T53, and T96*

254.    Based on the observations of the EPA Inspection Team for tanks T6, T53, and T96 set forth in Paragraph 244, Suncor failed to correctly operate the IFR for tanks T6, T53, and T96, in violation of 40 C.F.R. § 60.112b(a)(1).

*Failure to Correctly Operate and Repair or Take Tank T96 out of Service after Identification of IFR Deficiency*

255.    Based on the EPA Inspection Team's observations in Paragraphs 244, and Suncor's inspection observations and records in Paragraphs 247 through 249, Suncor failed to operate tank T96 in compliance with the IFR standards, in violation of 40 C.F.R. § 60.112b(a)(1).

256.    Based on Suncor's inspection observation and records in Paragraph 249, and Suncor's lack of reported corrective action in Paragraph 250, Suncor failed to comply with the requirements, in violation of 40 C.F.R. § 63.113b(a)(2).

*Failure to Comprehensively Inspect Tanks T6, T53, and T96*

257.    Based on the EPA Inspection Team's interviews with Suncor contractors, and observation of how Suncor visually conducts IFR tank top inspections, as set forth in Paragraph 251 and 253, Suncor failed to properly conduct annual IFR inspections of the IFR deck, deck fittings, and rim seals for Tanks T6, T53, and T96 in violation of 40 C.F.R. § 60.113b(a)(2).

**D.    Petroleum Refinery Process Units and Emissions Points Violations (MACT CC)**

Applicable Factual Background

258.    Tanks T35, T36, T38, T58, T67, T70, T78, T777, and T778 are EFR tanks subject to the requirements of MACT CC and MACT WW.

41

259. Paragraph 243 is realleged here.

260. Paragraphs 244 and 245 are realleged here.

261. Tanks T10 and T27 are IFR tanks subject to the requirements of MACT CC and MACT WW.

262. During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team and Suncor observed elevated hydrocarbon emissions being vented to atmosphere using OGI cameras on the tanks listed below in Table 7:

**Table 7: List of Inspected Tanks Subject to MACT CC and MACT WW**

| Tank Emission ID | Tank Type | EPA Inspection Team's Observations |
|---|---|---|
| Tank T38 | External Floating Roof | Emissions observed along the rim seal. |
| Tank T70 | External Floating Roof | Emissions observed along the rim seal on southeast and east sides (right below the platform). |
| Tank T78 | External Floating Roof | Emissions observed along the rim seal |
| Tank T777 | External Floating Roof | Emissions observed along the rim seal. |
| Tank T35 | External Floating Roof | Emissions from a pontoon cover in the center of the EFR deck. |
| Tank T36 | External Floating Roof | Emissions from a pontoon cover in the center of the EFR deck. |
| Tank T58 (Plant 1) | External Floating Roof | Emissions from a vacuum breaker on the north side of the EFR. |
| Tank T67 | External Floating Roof | Emissions from two vacuum breakers on the EFR. |
| Tank T778 | External Floating Roof | Emissions from a vacuum breaker on the north side of the EFR and three deck legs near the hatch on the east side of the EFR. |
| Tank T10 | Internal Floating Roof | Emissions from roof vent. |
| Tank T27 | Internal Floating Roof | Emissions from roof vent. |

263. The emissions observed by the EPA Inspection Team using IR cameras as described immediately above were documented in still photographs and videos that depict, in some cases, visibly large plumes continuously wafting from sections or components off the top of the tanks into the ambient air. OGI cameras capture images that cannot be seen by the naked eye.

42

264.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team, using OGI cameras, observed emissions being vented to atmosphere from the rim seals of EFR tanks T38, T70, T78 and T777.

265.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team, using OGI cameras, observed emissions being vented to atmosphere from the pontoon covers of EFR tanks T35 and T36.

266.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team, using OGI cameras, observed emissions being vented to atmosphere from the vacuum breaker vents of EFR tanks T58, T67 and T778.

267.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team, using OGI cameras, observed emissions being vented to atmosphere from the roof vents of IFR tanks T10 and T27.

MACT CC Violations

*Tank Design and Operational Violations*

268.    Based on the EPA Inspection Team's observations in Paragraph 262 and 264 rim seals for tanks T38, T70, T78, and T777 were not functioning as designed, in violation of 40 C.F.R. § 63.1063(a)(1)(ii).

269.    Based on the EPA Inspection Team's observations in Paragraphs 262 and 265, pontoon covers for tanks T35 and T36 were not operating as required, in violation of 40 C.F.R. § 63.1063(b)(3).

270.    Based on the EPA Inspection Team's observations in Paragraph 262 and 266, vacuum breaker vents for tanks T58, T67 and T778 were not operating as required, in violation of 40 C.F.R. § 63.1063(b)(4).

271.    Based on the EPA Inspection Team's observations in Paragraph 262 and 267, roof vents for tanks T10 and T27 were not functioning as designed, in violation of 40 C.F.R. § 63.1063(b).

## E.    Emissions from MACT CC Storage Vessels Violations (MACT WW)

Applicable Factual Background

272.    Paragraph 258 is realleged here.

273.    Paragraphs 262 and 263 are realleged here.

274.    As part of the 2023 CAA Stationary Source Inspection, the EPA Inspection Team reviewed Suncor's EFR tank inspection records for the previous five years.

275.    The EFR tank inspection records reviewed showed that Suncor inspected tanks T38, T70, T78 and T777 and recorded observations in an EFR tank inspection checklist on the dates summarized below in Table 8.

**Table 8**

| Tank Emission ID | Inspection Date |
|---|---|
| Tank T38 | October 24, 2023 |
| Tank T70 | August 17, 2023 |
| Tank T78 | June 23, 2021 and April 10, 2023 |
| Tank T777 | June 13, 2023 and July 19, 2023 |

276.    Suncor's inspection records for tank T38 on October 24, 2023, two days prior to the EPA Inspection Team's observations set forth in Paragraph 262, documented that the rim seals were in acceptable condition with no gaps noted and that tank T38 did not display any indication of requiring repair.

277.    In Suncor's inspection records for tank T78, which was storing liquid, on June 23, 2021, Suncor observed and reported seals that had product in a location indicative of a need for repair, yet Suncor's inspection checklist indicated no repair action was required and Suncor did not repair the seal.

278.    In Suncor's inspection records for tank T777, which was storing liquid, on June 13, 2023, Suncor observed and reported four gaps in the secondary seal. Suncor indicated that a repair of the secondary seal on tank T777 was completed on July 19, 2023.

279.    Paragraph 251 is realleged.

280.    During the 2023 CAA Stationary Source Inspection, the EPA Inspection Team observed and verified that Suncor conducts visual tank top inspections through a single opening in the fixed roof for IFR tanks, which does not provide a comprehensive view of the entire IFR deck, deck fittings, and rim seals.

<u>MACT WW Violations</u>

*Tank Design and Operational Violations*

281.    Based on the deficiencies with the tank T38 rim seal observed during the 2023 CAA Stationary Source Inspection, as set forth by Paragraphs 262 and 264, contrasted against Suncor's independent inspection findings two days earlier, as set forth by Paragraph 276 Suncor failed to correctly perform storage vessel inspections of the rim seals on tank T38, in violation of 40 C.F.R. § 63.1063(d)(1)(iii).

282.    Based on the facts set forth in Paragraph 277, Suncor failed to repair the seals on tank T78, in violation of 40 C.F.R. § 63.1063(e)(2).

44

283.    Based on the EPA Inspection Team's observation of emissions from tank T777, as set forth by Paragraph 264, contrasted against Suncor's inspection records set forth in Paragraph 278, Suncor did not sufficiently repair gaps in the seal, in violation of 40 C.F.R. § 63.1063(e)(2).

284.    Based on the EPA Inspection Team's observation of how Suncor visually conducts IFR tank top inspections, as set forth in Paragraphs 278 and 280, Suncor failed to properly conduct annual IFR inspections of the IFR deck, deck fittings, and rim seals, in violation of 40 C.F.R. § 63.1063(d)(2).

### F.    Failure to Achieve Emission Limits for Several Tanks (Title V Violations)

Applicable Factual Background

*Tanks T777 and T778 Permit Emissions Limits*

285.    Relying on AP-42 Chapter 7 emission estimating methodologies, as set forth in Paragraphs 218 to 220, Suncor requested a 2.75 ton/yr VOC emissions limitation for tank T777 and a 3.54 ton/yr VOC emissions limitation for tank T778 in its Title V permit application, and Suncor's Permit 96OPAD120 (Permit 96OPAD120), at Section II, Condition 4.1 incorporates a 2.75 ton/yr emission limit for tank T777, and tank T778's VOC emission limit at 3.54 ton/yr. These emission limits were approved based on Suncor's representation that tank T777 and tank T778 met the maintenance and operating conditions required for the application of AP-42 Chapter 7 emissions estimating methodologies, as set forth in Paragraph 219.

*Tank T58 Title V Permit Emissions Limits*

286.    Relying on AP-42 Chapter 7 emission estimating methodologies, as set forth in Paragraphs 218 to 220, Suncor requested a 4.65 ton/yr VOC emissions limitation for tank T58 in its Title V permit application, and Suncor's Permit 95OPAD108, Section II, Condition 15.1 incorporates a 4.65 ton/yr emission limit for tank T58. The emission limit was approved based on Suncor's representation that tank T58 met the maintenance and operating conditions required for the application of AP-42 Chapter 7 emissions estimating methodologies, as set forth in Paragraph 219.

*Tank T96 Title V Permit Emissions Limits*

287.    Relying on AP-42 Chapter 7 emission estimating methodologies, as set forth in Paragraphs 218 to 220, Suncor requested a 6.72 ton/yr VOC emissions limitation for tank T96 and T97's combined in its Title V permit application, Suncor's Permit 96OPAD120, Section II, Condition 3.1 incorporates a 6.72 ton/yr emission limit for tanks T96 and T97. The emission limit was approved based on Suncor's representation that tank T96 and T97 met the maintenance and operating

conditions required for the application of AP-42 Chapter 7 emissions estimating methodologies, as set forth in Paragraph 219.

### *Tank T6 Title V Permit Emissions Limits*

288.    Relying on AP-42 Chapter 7 emission estimating methodologies, as set forth in Paragraphs 218 to 220, Suncor requested a 16.7 ton/yr VOC emissions limitation for tank T6 in its Title V permit application, Suncor's Permit 95OPAD108, Section II, Condition 15.1 incorporates a 16.7 ton/yr emission limit for tank T6. The emission limit was approved based on Suncor's representation that tank T6 met the maintenance and operating conditions required for the application of AP-42 Chapter 7 emissions estimating methodologies, as set forth in Paragraph 219.

### *Tank T53 Title V Permit Emissions Limits*

289.    Relying on AP-42 Chapter 7 emission estimating methodologies, as set forth in Paragraphs 218 to 220, Suncor requested a 3.77 ton/yr VOC emissions limitation for tank T53 in its Title V permit application, Suncor's Permit 95OPAD108, Section II, Condition 15.1 incorporates a 3.77 ton/yr emission limit for tank T53. The emission limit was approved based on Suncor's representation that tank T53 met the maintenance and operating conditions required for the application of AP-42 Chapter 7 emissions estimating methodologies, as set forth in Paragraph 219.

### Title V Permit Violations

#### *Tanks T777 and T778 Failed to Meet Title V Permit Emissions Limits*

290.    Because tank T777 has been leaking for an unknown amount of time, at a minimum during the 2023 CAA Stationary Source Inspection, as set forth in Paragraph 268, tank T777 was not properly maintained and operating under normal working conditions while it was leaking.

291.    Based on the information set forth in Paragraph 225, Suncor's emission limit estimated by AP-42 for tank T777 is not an accurate estimate, as set forth in Paragraph 221 and 222, therefore tank T777 has been exceeding the permitted VOC emission limit in Suncor's Permit 96OPAD120, at Section II, Condition 4.1 for an unknown amount of time, in violation of that permit.

292.    Because tank T778 has been leaking for an unknown amount of time, at a minimum during the 2023 CAA Stationary Source Inspection, as set forth in Paragraph 270, tank T778 was not properly maintained and operating under normal working conditions while it was leaking.

293.    Based on the information set forth in Paragraph 225, Suncor's emission limit estimated by AP-42 for tank T778 is not an accurate estimate, as set

forth in Paragraph 221 and 222, therefore tank T778 has been exceeding the permitted VOC emission limit in Suncor's Permit 96OPAD120, at Section II, Condition 4.1 for an unknown amount of time, in violation of that permit.

### Tank T58 Failed to Meet Title V Permit Emissions Limits

294.    Because tank T58 has been leaking for an unknown amount of time, at a minimum during the 2023 CAA Stationary Source Inspection, as set forth in Paragraph 270, tank T58 was not properly maintained and operating under normal working conditions while it was leaking.

295.    Based on the information set forth in Paragraph 225, Suncor's emission limit estimated by AP-42 for tank T58 is not an accurate estimate, as set forth in Paragraph 221 and 222, therefore tank T58 has been exceeding the permitted VOC emission limit in Suncor's Permit 95OPAD108, Section II, Condition 15.1 for an unknown amount of time, in violation of that permit.

### Tank T96 Failed to Meet Title V Permit Emissions Limits

296.    Because tank T58 has been leaking for an unknown amount of time, at a minimum during the 2023 CAA Stationary Source Inspection, as set forth in Paragraph 244 and 246, tank T96 was not properly maintained and operating under normal working conditions while it was leaking.

297.    Based on the information set forth in Paragraph 225, Suncor's emission limit estimated by AP-42 for tank T96 is not an accurate estimate, as set forth in Paragraph 221 and 222, therefore tank T96 has been exceeding the permitted VOC emission limit in Suncor's Permit 96OPAD120, Section II, Condition 3.1 for an unknown amount of time, in violation of that permit.

### Tank T6 Failed to Meet Title V Permit Emissions Limits

298.    Because T6 has been leaking for an unknown amount of time, at a minimum during the 2023 CAA Stationary Source Inspection, as set forth in Paragraph 244 and 246, tank T6 was not properly maintained and operating under normal working conditions while it was leaking.

299.    Based on the information set forth in Paragraph 225, Suncor's emission limit estimated by AP-42 for tank T6 is not an accurate estimate, as set forth in Paragraph 221 and 222, therefore tank T6 has been exceeding the permitted VOC emission limit in Suncor's Permit 95OPAD108, Section II, Condition 15.1, for an unknown amount of time, in violation of that permit.

### Tank T53 Failed to Meet Title V Permit Emissions Limits

300.    Because T6 has been leaking for an unknown amount of time, at a minimum during the 2023 CAA Stationary Source Inspection, as set forth in

47

Paragraph 244, tank T53 was not properly maintained and operating under normal working conditions while it was leaking.

301. Based on the information set forth in Paragraph 225, Suncor's emission limit estimated by AP-42 for tank T53 is not an accurate estimate, as set forth in Paragraph 221 and 222, therefore tank T53 has been exceeding the permitted VOC emission limit in Suncor's Permit 95OPAD108, Section II, Condition 15.1, for an unknown amount of time, in violation of that permit.

### G.    Failure to Achieve Good Air Pollution Control Practices

#### Good Air Pollution Control Practice Violations

302. Based on the EPA Inspection Team's observations set forth in Paragraph 262, tanks T38, T70, T78, T777, T35, T36, T58, T67, T778, T10, and T27 were not operating and maintained consistent with MACT CC's good safety and air pollution control practices for minimizing emissions, in violation of 40 C.F.R. § 63.642(n).

303. Based on the EPA Inspection Team's observations set forth in Paragraphs 244 and 246, tanks T6, T53, and T96 were not operating and maintained consistent with NSPS General Provisions' good safety and air pollution control practices for minimizing emissions, in violation of 40 C.F.R. § 60.11(d).

### H.    Flare Gas Recovery System Assessment Violations (NSPS Ja)

#### Applicable Factual Background

304. Suncor operates its Plant 2 flare (C005 Flare) without using a Flare Gas Recovery System, as defined by 40 C.F.R. § 60.101a, to divert excess gas from the flare and redirect it to a fuel gas system or fuel gas combustion device. Emissions generated in Plant 2 are routed to the C005 Flare for destruction without recovery.

305. Each owner and operator that operates a flare shall develop and implement a flare management plan which must include an assessment of whether discharges from a flare can be minimized, such as a Flare Gas Recovery System, set forth in 40 C.F.R. § 60.103a(a)(2).

306. Suncor operates flares that are subject to MACT CC and NSPS Ja and therefore developed a written flare management plan under 40 C.F.R. §§ 63.670(o) and 60.103a.

307. Suncor's *Flare Management Plan for the Plant 2 Flare System (June 2019)* (Suncor's FMP) did not include all required information specified in 40 C.F.R. § 63.670(o)(1)(ii), such as, safety considerations, secondary environmental impacts, or clear rational in terms of costs.

48

308.    In Suncor's process flow diagram provided in Suncor's FMP, Suncor depicts that the incoming feed for the C005 Flare is from the Plant 2 FCCU, polymerization unit, saturation gas unit, unsaturated gas stripper, and pressure relief device from vessel in process units.

309.    As part of the 2023 CAA Stationary Source Inspection, the EPA Inspection Team received a copy of Suncor's FMP as the then-current plan used by Suncor.

310.    An FMP must include all process units that route emissions to a flare. An FMP must be updated periodically to account for changes in the operation of a flare, such as new connections to the flare, as set forth in 40 C.F.R. § 63.670(o)(2)(ii).

311.    Suncor's FMP does not list the Plant 2 thermal reactor as a process unit that routes emissions to the C005 Flare.

312.    In a Root Cause Failure Analysis report provided by Suncor, dated August 9, 2023, Suncor reported that on June 23, 2023, it re-routed the acid gases from the thermal reactor to the C005 Flare.

313.    Suncor's FMP describes a total of seven sources of sweep gas being used for Plant 2's flare. According to the flow diagram in the FMP, five of the seven streams are shown using refinery fuel gas as sweep gas and two of the seven streams are shown using natural gas as sweep gas.

314.    Natural gas offset credits provided in the FMP are based on flows of the two natural gas sweep gas streams identified in Suncor's FMP. Based on the EPA Inspection Team's review of Suncor's FMP, natural gas offset credits appear to be based on an annual natural gas savings of 410,327 thousand standard cubic feet per year.

315.    During the 2023 CAA Stationary Source Inspection, Suncor provided information to the EPA Inspection Team that showed five of the seven streams using refinery fuel gas as sweep gas and two of the seven streams using natural gas as sweep gas.

316.    During the 2023 CAA Stationary Source Inspection, NEIC requested additional confirmation on the type of gas used as sweep gas. Suncor provided a responsive statement that the source of sweep gas is utility-supplied natural gas or refinery fuel gas from the refinery and that Suncor was updating Suncor's FMP to clarify. As of the date of this NOV, Suncor has not provided an updated FMP to the EPA or the Division.

317.    Under 40 C.F.R. § 60.103a, Suncor's FMP includes an assessment of whether discharges to the C005 Flare from process units, ancillary equipment, and fuel gas systems can be minimized, known as a flare gas minimization assessment.

49

318.    The flare gas minimization assessment that Suncor performed in Suncor's FMP, as set forth immediately above, considered costs (capital an annual operating), but did not consider natural gas offset credits, technical feasibility, secondary environmental impacts and safety considerations for the selected minimization alternative(s) or a statement, with justifications, that flow reduction could not be achieved as required by 40 C.F.R. §§ 60.103a(a)(2) and 63.670(o)(1)(ii).

319.    Suncor's consideration of costs in its flare gas minimization assessment, as set forth in Paragraph 318, was based on a 3-year assumption for economic feasibility. This assumption was not further explained.

320.    The 2023 CAA Stationary Source Inspection occurred after the 3-year assumption period underlying Suncor's flare gas minimization assessment had ended, yet Suncor's FMP from 2019 was still in use.

<u>Failure to Adequately Assess Need for Flare Gas Recovery System on Plant 2 Flare</u>

*Suncor's FMP was out-of-date as of the 2023 CAA Stationary Source Inspection*

321.    Based on the change in operation of the C005 Flare that occurred on June 23, 2023, set forth in Paragraphs 311 through 316, and the contents of Suncor's FMP, Suncor failed to update its FMP, in violation of 40 C.F.R. §§ 63.670(o)(1) and (2).

*Suncor's FMP is Based on an Inadequate and Incomplete Assessment*

322.    Suncor's failure to consider all required aspects of flare minimization in Suncor's FMP, as set forth in Paragraphs 313 and 318, violates 40 C.F.R. §§ 60.103a(a)(2) and 63.670(o)(1)(ii) and invalidates the adequacy of the flare gas minimization assessment that Suncor performed.

*Suncor Failed to Demonstrate Clear Rationale for its Consideration of Costs (Capital and Annual Operating) in Suncor's FMP*

323.    Suncor's 2019 FMP did not provide an explanation or clear rationale for the 3-year assessment period, as set forth in Paragraph 319 and 320, in violation of 40 C.F.R. §§ 60.103a(a)(2) and 63.670(o)(1)(ii), which invalidates the adequacy of the flare gas minimization assessment that Suncor performed in Suncor's 2019 FMP.

## VI.  FOURTH SET OF JOINTLY ALLEGED VIOLATIONS: FLARE, THERMAL COMBUSTION DEVICES, FCCU, CMS, CEMS, AND COMS VIOLATIONS

324.  The Governments allege violations in this Section (Section VI) only to the extent that the allegations were not previously resolved by the Division in the Division's 2024 COC.

### A.  Statutory and Regulatory Authority

NSPS Part 60, Subpart J

325.  40 C.F.R. Part 60, Subpart J sets the *Standards of Performance for Petroleum Refineries* (NSPS J).

326.  Colorado has delegated authority to implement and enforce NSPS J. *See* 5 Colo. Code Reg. § 1001-8:A (incorporating by reference NSPS J in effect as of July 1, 2023).

327.  NSPS J applies to the following affected facilities in petroleum refineries: fluid catalytic cracking unit catalyst regenerators, fuel gas combustion devices, and all Claus sulfur recovery plants with a design capacity for sulfur feed greater than 20 long tons per day. 40 C.F.R. § 60.100(a).

328.  Owners or operators subject to NSPS J may elect to satisfy its requirements by complying with the provisions of NSPS Ja. 40 C.F.R. § 60.100(e).

329.  In a 2008 amendment to the NSPS, applicable to sources regulated under NSPS J or NSPS Ja, the EPA promulgated an alternative $H_2S$ emissions limit of 162 ppmv or less in the fuel gas on a 3-hour rolling average basis using standard conditions, such that the subpart J emission limit is equivalent to 162 ppmv $H_2S$ rather than 160 ppmv. 73 Fed. Reg. 35852 (June 24, 2008).

330.   At the Commerce City Refinery, Suncor operates affected facilities subject to NSPS J.

NSPS Part 60, Subpart Ja

331.  At the Commerce City Refinery, Suncor operates affected facilities subject to NSPS Ja, as set forth in Paragraphs 237 through 240.

MACT CC

332.  At the Commerce City Refinery, Suncor operates petroleum refining process units and related emission points that are subject to MACT CC, as set forth in Paragraphs 114 through 117.

NESHAP Part 63, Subpart UUU

333.   40 C.F.R. Part 63, Subpart UUU sets the *National Emission Standards for Hazardous Air Pollutants for Petroleum Refineries: Catalytic Cracking Units, Catalytic Reforming Units, and Sulfur Recovery Units* (MACT UUU).

334.   Colorado has delegated authority to implement and enforce MACT UUU. *See* 5 Colo. Code Reg. § 1001-10:E.III (incorporating by reference MACT UUU in effect as of July 1, 2023).

335.   MACT UUU applies to petroleum refineries that are located at a major source of HAP emissions and have the affected sources set forth in MACT UUU. 40 C.F.R. §§ 63.1561(a)-1562.

336.   At the Commerce City Refinery, Suncor operates affected sources subject to MACT UUU.

Permit 96OPAD120, Section II, Condition 35 Opacity Limits

337.   Suncor's Permit 96OPAD120, Section II, Condition 35 sets opacity limits that are more stringent than the NSPS J/Ja and MACT UUU requirements. Specifically, Condition 35.1 of that permit states: "Except as provided in Conditions 35.2 and 35.3, below, no owner or operator of a source shall allow or cause the emission into the atmosphere of any air pollutant which is in excess of 20 percent opacity. This standard is based on 24 consecutive opacity readings taken at 15-second intervals for six minutes. The approved reference test method for visible emissions measurement on which the standards in Regulation No. 1 Section II.A are based is EPA Method 9 (40 C.F.R. Part 60, Appendix A (July, 1992). (Colorado Regulation No. 1, II.A.1)."

Permit 95OPAD108, Section II, Condition 20, Opacity Limits

338.   Suncor's Permit 95OPAD108, Section II, Condition 20 sets the opacity limits that are more stringent than the NSPS J/Ja and MACT UUU requirements. Specifically, Condition 20.1 of that permit states: "Except as provided in Condition 20.2 below, no owner or operator of a source should allow or cause the emission into the atmosphere of any air pollutant that is in excess of 20% opacity. This standard is based on 24 consecutive opacity readings taken at 15-second intervals for six minutes. The approved reference test method for visible emissions measurement is EPA Method 9 (40 C.F.R. Part 60, Appendix A (July 1992)) in all subsections of Section II. A and B of this regulation. (Colorado Regulation No. 1, II.A.1)."

Permit 96OPAD120, Section II, Condition 22, NOx Limits

339.   Suncor's Permit 96OPAD120, Section II, Condition 22 sets the NOx emissions that are more stringent than NSPS Ja requirements. Specifically,

52

Condition 22.4.1 of that permit states: "86.8 ppmvd at 0% $O_2$, on a 7-day rolling average."

### Permit 96OPAD120, Section II, Condition 54, $SO_2$ Limits

340.    Suncor's Permit 96OPAD120, Section II, Condition 54 sets the $SO_2$ emissions that are more stringent than MACT UUU requirements. Specifically, Condition 54.31.4 of that permit states: "Reporting any 12-hour rolling average concentration of $SO_2$ greater than 250 ppmvd at 0% excess air in the compliance report required by 63.1575."

## B.    Exceedance of the 162 ppmv 3-Hour Rolling Average Limit Violations (NSPS Ja)

### Applicable Factual Background

341.    The EPA Inspection Team analyzed Suncor's $H_2S$ CMS data during and after the 2023 CAA Stationary Source Inspection for the period of January 1, 2020, through September 30, 2023, and found exceedances of the 162 ppmv $H_2S$ 3-hour rolling average limit set forth at 40 C.F.R. § 60.103a(h), summarized as follows in Table 9:

**Table 9**

| Emission Unit | Year | Number of Hours that Exceeded the $H_2S$ 3-hour Rolling Average Limit of 162 ppm |
|---|---|---|
| F1 | 2020 | 162 |
| | 2021 | 137 |
| | 2022 | 347 |
| | 2023 | 145 |
| F2 | 2020 | 11 |
| | 2021 | 4 |
| | 2022 | 18 |
| | 2023 | 0 |
| C005 | 2020 | 60 |
| | 2021 | 68 |
| | 2022 | 62 |
| | 2023 | 62 |

### NSPS Ja Violations

*F1 Flare Violations (Plant 1's Main Flare)*

342.    On multiple occasions between January 1, 2020 through September 30, 2023, summarized in Paragraph 341, Suncor operated its F1 Flare in Plant 1 in

53

violation of the 162 ppmv H$_2$S 3-hour rolling average limit set forth at 40 C.F.R. §
60.103a(h).

### F2 Flare Violations (Plant 3's Main Flare)

343.    On multiple occasions between January 1, 2020 through September 30,
2023, summarized in Paragraph 341, Suncor operated its F2 Flare in Plant 3 in
violation of the 162 ppmv 3-hour rolling average limit set forth at 40 C.F.R. §
60.103a(h).

### C005 Flare Violations (Plant 2's Main Flare)

344.    On multiple occasions between January 1, 2020 through September 30,
2023, summarized in Paragraph 341, Suncor operated its C005 Flare in Plant 1 in
violation of the 162 ppm 3-hour rolling average limit set forth at 40 C.F.R. §
60.103a(h).

### C.    Inadequate Net Heating Values, Exceedances of Actual Flare Tip Velocity, and Recordkeeping and Reporting Violations (MACT CC Violations)

#### Applicable Facts

##### Net Heating Values

345.    The EPA Inspection Team analyzed Suncor's flare data during and
after the 2023 CAA Stationary Source Inspection for the period of January 1, 2020,
through September 30, 2023, and found multiple instances where the net heating
value of flare combustion zone gas (NHVcz) at the flare tip, including steam, was
less than the lower combustion zone operating limit of 270 BTU/scf, of 40 C.F.R. §
63.670(e), that applies while regulated material is routed to the flare, summarized
as follows in Table 10:

54

**Table 10**

| Emission Unit | Year | Number of 15-min Block Average that NHVcz Values were Less than 270 Btu/scf |
|---|---|---|
| F1 | 2020 | 140 |
| | 2021 | 1,572 |
| | 2022 | 207 |
| | 2023 | 335 |
| F2 | 2020 | 0 |
| | 2021 | 1,779 |
| | 2022 | 1 |
| | 2023 | 0 |
| F3 | 2020 | 3 |
| | 2021 | 458 |
| | 2022 | 44 |
| | 2023 | 5 |
| C005 | 2020 | 4 |
| | 2021 | 4 |
| | 2022 | 79 |
| | 2023 | 3,050 |

*Flare Tip Velocity*

346.    The EPA Inspection Team analyzed Suncor's flare data during and after the 2023 CAA Stationary Source Inspection for the period of January 1, 2020, through September 30, 2023, and found multiple 15-minute periods where the actual flare tip velocity (Vtip) was greater than 60 feet per second, the lower Vtip limit set forth at 40 C.F.R. § 63.670(d)(1), and Suncor did not designate whether regulated material was being routed to the flare, summarized as follows in Table 11:

**Table 11**

| Emission Unit | Year | Number of 15-min Block Average that Vtip was Greater than 60 ft/sec |
|---|---|---|
| F1 | 2020 | 253 |
| | 2021 | 2,764 |
| | 2022 | 6 |

*Recordkeeping and Reporting*

347.    The EPA Inspection Team's review of available flare data for the time period alleged immediately above revealed that Suncor did not provide records to definitively indicate whether regulated material was being routed to the listed flare during each 15-minute block being reviewed.  However, the EPA Inspection Team is confident based on their knowledge of refinery operations that regulated material was being routed to the flares during a majority of the 15-minute blocks listed above.

348.    Suncor did not provide the EPA Inspection Team with records to indicate when regulated material was routed to its flares in Paragraphs 345 and 346, as set forth above in Paragraph 347.

349.    Based on EPA Inspection Team's review of records and the periods of identified noncompliance with the NHVcz operating limits set forth in Paragraph 345, Suncor did not report all periods of noncompliance with the NHVcz operating limit.

350.    Based on EPA Inspection Team's review records and the periods of identified noncompliance with the actual flare tip velocity operating limits set forth in Paragraph 346, Suncor did not report all periods of noncompliance with the actual flare tip velocity operating limit.

### Inadequate Heating Values (MACT CC Violations)

#### *F1 Flare Violations (Plant 1's Main Flare)*

351.    On multiple occasions between January 1, 2020 through September 30, 2023, summarized in Paragraph 345, Suncor operated its F1 Flare in Plant 1 in violation of the lower NHVcz limit set forth at 40 C.F.R. § 63.670(e).

#### *F3 Flare Violations (Plant 1's GBR Flare)*

352.    On multiple occasions between January 1, 2020 through September 30, 2023, summarized in Paragraph 345, Suncor operated its F3 Flare in Plant 1 in violation of the lower NHVcz limit set forth at 40 C.F.R. § 63.670(e).

#### *F2 Flare Violations (Plant 3's Main Flare)*

353.    On multiple occasions between January 1, 2020 through September 30, 2023, summarized in Paragraph 345, Suncor operated its F2 Flare in Plant 3 in violation of the lower NHVcz limit set forth at 40 C.F.R. § 63.670(e).

#### *C005 Flare Violations (Plant 2's Main Flare)*

354.    On multiple occasions between January 1, 2020 through September 30, 2023, summarized in Paragraph 345, Suncor operated its C005 Flare in Plant 2 in violation of the lower NHVcz limit set forth at 40 C.F.R. § 63.670(e).

Exceedance of Actual Flare Tip Velocity at the F1 Flare (MACT CC Violations)

*F1 Flare Violations (Plant 1's Main Flare)*

355.    On multiple occasions between January 1, 2020 through December 31, 2022, summarized in Paragraph 346, Suncor operated its F1 Flare in Plant 1 in violation of the lower Vtip limit set forth at 40 C.F.R. § 63.670(d)(1).

Recordkeeping and Reporting Violations (MACT CC Violations)

*Failure to Maintain Records and Report When Regulated Material was Routed to Flares to Maintain NHVcz and Actual Flare Tip Velocity (MACT CC Violations)*

356.    As set forth in Paragraph 347 through 350, Suncor did not designate whether regulated material was being routed to the flare in its MACT CC records to maintain NHVcz and actual flare tip velocity, in violation of 40 C.F.R. § 63.655(i)(9)(vii).

*Failure to Maintain Records and Report Noncompliance with Net Heating Values and Actual Flare Tip Velocity (MACT CC Violations)*

357.    For the NHVcz reported below 270 Btu/scf and for actual flare tip velocity reported as greater than 60 ft/sec identified in Paragraphs 345 and 346, respectively, Suncor failed to report the deviations of the applicable operating limits as set forth 40 C.F.R. §§ 63.670(d)-(f) in violation of 40 C.F.R. § 63.655(g)(11).

## D.    SO₂ Fuel Gas Combustion Violations (NSPS J Violations, Alternatively NSPS Ja Violations)

Applicable Facts

358.    The EPA Inspection Team reviewed fuel gas system data for Plants 1, 2, and 3 for the time period of January 1, 2022 through September 30, 2023 and found exceedances of the 162 ppmv $H_2S$ 3-hour rolling average limit set forth at 40 C.F.R. § 60.104(a)(1), as informed by 73 Fed. Reg. 35852, summarized as follows in Table 12:

**Table 12**

| Fuel Gas System | Number of Hours that Exceeded the $H_2S$ 3-hr Rolling Average Limit of 162 ppmv |
|---|---|
| Plant 1 and Plant 3 | 62 |
| Plant 2 | 78 |

NSPS J/Ja Violations

359.    On multiple occasions between January 1, 2022 through September 2023, summarized in Paragraph 358, Suncor operated its Plants in violation of 162 ppmv H$_2$S 3-hour rolling average limit set forth at 40 C.F.R. § 60.104(a)(1), as informed by 73 Fed. Reg. 35852, or alternatively 40 C.F.R. § 60.102a(g)(1)(ii).

### E.    CO Emissions Violations (NSPS J, Ja, and MACT UUU Violations)

Applicable Facts

*Plant 1 FCCU*

360.    Plant 1 and Plant 2 each have an FCCU that breaks long-chain hydrocarbons into shorter chain hydrocarbons as part of the refining process at the Commerce City Refinery.

361.    The FCCU at Plant 1 is equipped with a CEMS on the process unit outlet.

362.    The EPA Inspection Team reviewed CO CEMS data for the Plant 1 FCCU for the time period of January 1, 2022 through September 30, 2023 and found multiple exceedances of the 500 ppmvd CO limit (NSPS J), or 500 ppmvd CO limit at 0% O$_2$ on a 1-hour average basis (NSPS Ja), the limits set forth in 40 C.F.R. §§ 60.103, 60.102a(b)(4), and 63.1565(a)(1), summarized as follows in Table 13:

Table 13

| Exceedance Start Time CO > 500 ppm | Exceedance End Time CO > 500 ppm | Duration of Continuous Limit Exceedance (hours) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 3/2022 12:00 | 3/17/2022 17:59 | 6 | Yes |
| 3/19/2022 23:00 | 3/19/2022 23:59 | 1 | Yes |
| 3/20/2022 5:00 | 3/20/2022 6:59 | 2 | Yes |
| 3/21/2022 6:00 | 3/21/2022 8:59 | 3 | Yes |
| 3/21/2022 10:00 | 3/21/2022 20:59 | 11 | Yes |
| 5/9/2022 14:00 | 5/9/2022 21:59 | 8 | Yes |
| 6/2/2022 1:00 | 6/3/2022 1:59 | 25 | Yes |
| 6/3/2022 3:00 | 6/3/2022 13:59 | 11 | Yes |
| 8/7/2022 20:00 | 8/7/2022 20:59 | 1 | Yes |
| 10/4/2022 8:00 | 10/4/2022 8:59 | 1 | Yes |
| 3/28/2023 9:00 | 3/29/2023 13:59 | 29 | Yes |
| )3/30/2023 21:00 | 4/1/2023 15:59 | 43 | Yes |
| 4/2/2023 5:00 | 4/2/2023 5:59 | 1 | No |

58

| Exceedance Start Time CO > 500 ppm | Exceedance End Time CO > 500 ppm | Duration of Continuous Limit Exceedance (hours) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 4/2/2023 7:00 | 4/3/2023 1:59 | 19 | No |
| 9/1/2023 17:00 | 9/1/2023 17:59 | 1 | NA |
| 9/1/2023 22:00 | 9/1/2023 22:59 | 1 | NA |
| 9/2/2023 13:00 | 9/3/2023 16:59 | 28 | NA |
| 9/3/2023 18:00 | 9/3/2023 22:59 | 5 | NA |

*NA indicates the semiannual deviation report was not yet due at the time of the 2023 CAA Stationary Source Inspection.

363.    The EPA Inspection Team identified Suncor reported that the Plant 1 FCCU was out of service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit any regulated pollutants while out-of-service.

### Plant 2 FCCU

364.    The FCCU at Plant 2 is equipped with a CEMS on the process unit outlet.

365.    The EPA Inspection Team reviewed CO CEMS data for the Plant 2 FCCU for the time period of January 1, 2022 through September 30, 2023 and found multiple exceedances of the 500 ppmvd CO limit (NSPS J), or 500 ppmvd CO limit at 0% $O_2$ on a 1-hour average basis (NSPS Ja), the limits set forth in 40 C.F.R. §§ 60.103, 60.102a(b)(4), and 63.1565(a)(1), summarized as follows in Table 14:

Table 14

| Start Time CO > 500 ppm | End Time CO > 500 ppm | Duration of Continuous Limit Exceedance (hours) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 1/27/2022 1:00 | 1/27/2022 14:59 | 14 | Yes |
| 1/28/2022 9:00 | 1/28/2022 17:59 | 9 | Yes |
| 2/9/2022 7:00 | 2/9/2022 8:59 | 2 | No |
| 2/14/2022 12:00 | 2/14/2022 17:59 | 6 | Yes |
| 2/14/2022 22:00 | 2/15/2022 0:59 | 3 | Yes |
| 4/2/2022 23:00 | 4/2/2022 23:59 | 1 | Yes |
| 4/3/2022 7:00 | 4/3/2022 7:59 | 1 | Yes |
| 4/3/2022 10:00 | 4/3/2022 13:59 | 4 | Yes |
| 4/4/2022 16:00 | 4/5/2022 1:59 | 10 | Yes |
| 7/26/2022 11:00 | 7/26/2022 15:59 | 5 | No |
| 2/15/2023 13:00 | 2/15/2023 16:59 | 4 | Yes |

| Start Time CO > 500 ppm | End Time CO > 500 ppm | Duration of Continuous Limit Exceedance (hours) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 2/16/2023 15:00 | 2/16/2023 21:59 | 7 | Yes |
| 2/17/2023 21:00 | 2/18/2023 3:59 | 7 | Yes |
| 2/25/2023 0:00 | 2/26/2023 8:59 | 33 | Yes |
| 6/21/2023 11:00 | 6/21/2023 18:59 | 8 | Yes |
| 7/5/2023 7:00 | 7/5/2023 21:59 | 15 | NA |

*NA indicates the semiannual deviation report was not yet due at the time of the 2023 CAA Stationary Source Inspection.

366.    The EPA Inspection Team identified Suncor reported that the Plant 2 FCCU was out of service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit any regulated pollutants while out-of-service.

### MACT UUU Violations

#### *Excess CO from Plant 1 FCCU*

367.    On multiple occasions between January 1, 2022 through September 30, 2023, summarized in Paragraph 362, and noting that at times the FCCU was reported to be out of service while emissions were exceeding the continuous limit, as set forth in Paragraph 363, Suncor operated its Plant 1 FCCU in violation of 500 ppmvd (at 0% $O_2$) on a 1-hour average basis set forth in 40 C.F.R. §§ 60.103, 60.102a(b)(4), and 63.1565(a)(1).

#### *Failure to Report Deviations of the CO FCCU Emission Limit*

368.    For the April 2, 2023 deviations summarized in Paragraph 362, Suncor failed to report the exceedances of the CO emissions limit for the Plant 1 FCCU, in violation of 40 C.F.R. § 63.1575(e).

369.    For the February 9, 2022, and July 26, 2022 deviations summarized in Paragraph 365, Suncor failed to report the exceedances of the CO emissions limit for the Plant 2 FCCU, in violation of 40 C.F.R. § 63.1575(e).

#### *Excess CO from Plant 2 FCCU*

370.    On multiple occasions between January 1, 2022 through September 30, 2023 summarized in Paragraph 365, and  noting that at times the FCCU was reported to be out of service while emissions were exceeding the continuous limit, as set forth in Paragraph 366, Suncor operated its Plant 2 FCCU in violation of 500 ppmvd (at 0% $O_2$) on a 1-hour average basis set forth in 40 C.F.R. §§ 60.103, 60.102a(b)(4), and 63.1565(a)(1).

60

F.     **FCCU Opacity Violations (NSPS J and MACT UUU Violations)**

Applicable Facts

*Plant 1 FCCU*

371.    The FCCU at Plant 1 is equipped with a COMS on the process unit outlet.

(1)     COMS 30% Opacity Limit

372.    The EPA Inspection Team reviewed the COMS data for the Plant 1 FCCU for the time period of January 1, 2022 through September 30, 2023 and found multiple exceedances of the 30% opacity limit (gases exhibiting greater than 30 percent opacity, except for one six-minute average opacity reading in any one hour period), the limit set forth in 40 C.F.R. §§ 60.102(a)(2) and 63.1564(a)(1) and Table 1.1 of MACT UUU, as summarized as follows in Table 15:

**Table 15**

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 3/17/2022 14:15 | 3/17/2022 14:59 | 45 | No |
| 4/7/2022 13:04 | 4/7/2022 13:16 | 13 | No |
| 4/7/2022 14:06 | 4/7/2022 14:24 | 19 | No |
| 5/25/2022 11:15 | 5/26/2022 11:01 | 1,427 | No |
| 5/26/2022 11:05 | 5/26/2022 11:17 | 13 | No |
| 9/24/2022 10:21 | 9/24/2022 10:39 | 19 | No |
| 9/24/2022 12:14 | 9/24/2022 12:27 | 14 | No |
| 11/28/2022 13:12 | 11/28/2022 13:27 | 16 | No |
| 11/28/2022 14:59 | 11/28/2022 15:14 | 16 | No |
| 3/24/2023 15:15 | 3/24/2023 15:30 | 16 | No |
| 3/29/2023 12:19 | 3/29/2023 12:58 | 40 | Yes |
| 3/29/2023 13:02 | 3/29/2023 14:51 | 110 | Yes |
| 3/29/2023 16:01 | 3/29/2023 16:31 | 31 | Yes |
| 3/29/2023 22:55 | 3/30/2023 0:16 | 82 | Yes |
| 3/30/2023 0:58 | 3/30/2023 1:22 | 25 | Yes |
| 3/31/2023 15:55 | 3/31/2023 16:09 | 15 | Yes |
| 3/31/2023 19:49 | 3/31/2023 20:00 | 12 | Yes |
| 3/31/2023 21:04 | 3/31/2023 21:31 | 28 | Yes |
| 4/1/2023 7:17 | 4/1/2023 7:45 | 29 | Yes |
| 4/1/2023 12:51 | 4/1/2023 13:06 | 16 | Yes |
| 4/1/2023 15:31 | 4/1/2023 15:43 | 13 | Yes |

61

| 4/2/2023 5:01 | 4/2/2023 9:10 | 250 | No |
| 4/2/2023 10:01 | 4/2/2023 10:57 | 57 | No |
| 4/2/2023 21:36 | 4/2/2023 22:51 | 76 | No |
| 4/3/2023 0:20 | 4/3/2023 0:35 | 16 | No |
| 4/3/2023 0:41 | 4/3/2023 1:06 | 26 | No |
| 4/3/2023 1:30 | 4/3/2023 1:42 | 13 | No |
| 5/27/2023 8:57 | 5/27/2023 9:08 | 12 | No |
| 5/27/2023 10:41 | 5/27/2023 10:57 | 17 | No |
| 9/26/2023 7:29 | 9/26/2023 13:51 | 383 | NA |
| 9/26/2023 13:57 | 9/26/2023 14:11 | 15 | NA |
| 9/26/2023 15:37 | 9/26/2023 15:52 | 16 | NA |

*NA indicates the semiannual deviation report was not yet due at the time of the 2023 CAA Stationary Source Inspection.

(2)    COMS 20% Opacity Limit in MACT UUU

373.    The EPA Inspection Team reviewed the COMS data for the Plant 1 FCCU for the time period of January 1, 2022 through September 30, 2023 and found multiple exceedances of the 20% opacity limit (3-hour rolling average), the limit found in 40 C.F.R. § 63.1564(a)(2) and Table 2.1 of MACT UUU for units subject to the NSPS for PM in 40 C.F.R. § 60.102, summarized as follows in Table 16:

**Table 16**

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 3/17/2022 16:29 | 3/17/2022 17:21 | 53 | No |
| 5/25/2022 11:52 | 5/26/2022 13:34 | 1,543 | No |
| 9/24/2022 12:11 | 9/24/2022 13:32 | 82 | No |
| 11/28/2022 15:06 | 11/28/2022 16:15 | 70 | No |
| 3/29/2023 9:35 | 3/29/2023 19:14 | 581 | Yes |
| 3/29/2023 23:37 | 3/30/2023 3:21 | 226 | No |
| 3/31/2023 8:18 | 4/1/2023 0:32 | 976 | No |
| 4/1/2023 1:55 | 4/1/2023 14:40 | 767 | No |
| 4/1/2023 14:52 | 4/1/2023 15:07 | 17 | No |
| 4/1/2023 15:32 | 4/1/2023 15:54 | 24 | No |
| 4/1/2023 16:22 | 4/2/2023 13:13 | 1,253 | No |
| 4/2/2023 20:50 | 4/3/2023 4:33 | 465 | No |
| 5/27/2023 10:51 | 5/27/2023 11:56 | 67 | NA |
| 9/26/2023 7:59 | 9/26/2023 16:57 | 540 | NA |

*NA indicates the semiannual deviation report was not yet due at the time of the 2023 CAA Stationary Source Inspection.

62

374. The EPA Inspection Team identified Suncor reported that the Plant 1 FCCU was out of service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit PM to cause opacity exceedances while out-of-service.

(3)    COMS 20% Opacity Limit in Suncor's Permit 96OPAD120

375. The EPA Inspection Team reviewed the COMS data for the Plant 1 FCCU for the time period of January 1, 2022 through September 30, 2023 and found multiple exceedances of the 20% opacity limit (based on 24 consecutive opacity readings taken at 15-second intervals for six minutes), set forth by Suncor's Permit 96OPAD120 Section II, Condition 35.1, summarized as follows in Table 17:

**Table 17**

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 3/17/2022 12:27 | 3/17/2022 12:33 | 7 | Yes |
| 3/17/2022 14:12 | 3/17/2022 15:11 | 60 | No |
| 3/19/2022 12:36 | 3/19/2022 12:46 | 11 | Yes |
| 3/20/2022 10:56 | 3/20/2022 11:01 | 6 | No |
| 4/7/2022 13:04 | 4/7/2022 13:17 | 14 | No |
| 4/7/2022 13:56 | 4/7/2022 14:25 | 30 | No |
| 5/25/2022 11:14 | 5/26/2022 11:18 | 1,445 | No |
| 6/3/2022 12:26 | 6/3/2022 12:38 | 13 | Yes |
| 6/3/2022 13:37 | 6/3/2022 13:42 | 6 | No |
| 6/3/2022 15:57 | 6/3/2022 16:04 | 8 | Yes |
| 9/24/2022 10:20 | 9/24/2022 10:39 | 20 | No |
| 9/24/2022 11:00 | 9/24/2022 11:43 | 44 | No |
| 9/24/2022 12:03 | 9/24/2022 12:28 | 26 | No |
| 9/24/2022 12:30 | 9/24/2022 12:40 | 11 | No |
| 11/28/2022 13:11 | 11/28/2022 13:28 | 18 | No |
| 11/28/2022 13:48 | 11/28/2022 14:31 | 44 | No |
| 11/28/2022 14:47 | 11/28/2022 15:16 | 30 | No |
| 12/22/2022 7:30 | 12/22/2022 7:38 | 9 | Yes |
| 1/13/2023 19:29 | 1/13/2023 19:34 | 6 | No |
| 1/19/2023 10:55 | 1/19/2023 11:00 | 6 | No |
| 3/14/2023 21:49 | 3/14/2023 21:54 | 6 | No |
| 3/24/2023 13:33 | 3/24/2023 13:45 | 13 | No |
| 3/24/2023 14:04 | 3/24/2023 14:48 | 45 | No |
| 3/24/2023 15:03 | 3/24/2023 15:31 | 29 | No |
| 3/28/2023 10:09 | 3/28/2023 10:14 | 6 | No |

63

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 3/28/2023 16:08 | 3/28/2023 16:13 | 6 | No |
| 3/28/2023 17:08 | 3/28/2023 17:13 | 6 | No |
| 3/28/2023 18:08 | 3/28/2023 18:14 | 7 | No |
| 3/28/2023 19:08 | 3/28/2023 19:13 | 6 | No |
| 3/28/2023 20:08 | 3/28/2023 20:14 | 7 | No |
| 3/28/2023 21:08 | 3/28/2023 21:15 | 8 | No |
| 3/28/2023 22:08 | 3/28/2023 22:13 | 6 | No |
| 3/28/2023 23:08 | 3/28/2023 23:13 | 6 | No |
| 3/29/2023 0:08 | 3/29/2023 0:14 | 7 | No |
| 3/29/2023 1:08 | 3/29/2023 1:14 | 7 | No |
| 3/29/2023 2:08 | 3/29/2023 2:14 | 7 | No |
| 3/29/2023 3:08 | 3/29/2023 3:14 | 7 | No |
| 3/29/2023 4:08 | 3/29/2023 4:13 | 6 | No |
| 3/29/2023 5:08 | 3/29/2023 5:13 | 6 | No |
| 3/29/2023 7:32 | 3/29/2023 7:38 | 7 | No |
| 3/29/2023 8:12 | 3/29/2023 8:44 | 33 | Yes |
| 3/29/2023 8:47 | 3/29/2023 15:38 | 412 | No |
| 3/29/2023 15:59 | 3/29/2023 16:45 | 47 | Yes |
| 3/29/2023 17:39 | 3/29/2023 17:53 | 15 | Yes |
| 3/29/2023 21:11 | 3/29/2023 21:16 | 6 | No |
| 3/29/2023 22:54 | 3/30/2023 1:23 | 150 | Yes |
| 3/30/2023 8:35 | 3/30/2023 8:56 | 22 | Yes |
| 3/31/2023 4:06 | 3/31/2023 4:15 | 10 | Yes |
| 3/31/2023 4:33 | 3/31/2023 4:39 | 7 | Yes |
| 3/31/2023 5:00 | 3/31/2023 5:08 | 9 | Yes |
| 3/31/2023 6:59 | 3/31/2023 10:52 | 234 | Yes |
| 3/31/2023 11:03 | 3/31/2023 11:16 | 14 | Yes |
| 3/31/2023 11:34 | 3/31/2023 21:59 | 626 | Yes |
| 3/31/2023 23:02 | 3/31/2023 23:11 | 10 | Yes |
| 3/31/2023 23:17 | 3/31/2023 23:24 | 8 | Yes |
| 4/1/2023 0:52 | 4/1/2023 0:58 | 7 | Yes |
| 4/1/2023 1:14 | 4/1/2023 1:19 | 6 | Yes |
| 4/1/2023 1:28 | 4/1/2023 1:35 | 8 | Yes |
| 4/1/2023 1:37 | 4/1/2023 6:18 | 282 | Yes |
| 4/1/2023 7:04 | 4/1/2023 7:09 | 6 | Yes |
| 4/1/2023 7:11 | 4/1/2023 9:33 | 143 | Yes |
| 4/1/2023 9:35 | 4/1/2023 11:33 | 119 | Yes |
| 4/1/2023 12:06 | 4/1/2023 12:22 | 17 | Yes |
| 4/1/2023 12:25 | 4/1/2023 13:08 | 44 | Yes |

64

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 4/1/2023 14:50 | 4/1/2023 14:55 | 6 | No |
| 4/1/2023 15:25 | 4/1/2023 15:50 | 26 | Yes |
| 4/1/2023 16:02 | 4/1/2023 16:29 | 28 | Yes |
| 4/1/2023 16:37 | 4/1/2023 16:54 | 18 | Yes |
| 4/1/2023 17:10 | 4/1/2023 18:00 | 51 | Yes |
| 4/1/2023 18:16 | 4/1/2023 20:36 | 141 | Yes |
| 4/1/2023 20:54 | 4/1/2023 21:54 | 61 | Yes |
| 4/1/2023 21:57 | 4/1/2023 22:55 | 59 | Yes |
| 4/1/2023 23:02 | 4/2/2023 0:53 | 112 | Yes |
| 4/2/2023 1:01 | 4/2/2023 4:13 | 193 | Yes |
| 4/2/2023 4:18 | 4/2/2023 4:36 | 19 | Yes |
| 4/2/2023 4:43 | 4/2/2023 11:07 | 385 | No |
| 4/2/2023 15:11 | 4/2/2023 15:38 | 28 | Yes |
| 4/2/2023 18:39 | 4/2/2023 19:49 | 71 | Yes |
| 4/2/2023 19:52 | 4/2/2023 21:26 | 95 | Yes |
| 4/2/2023 21:31 | 4/3/2023 2:42 | 312 | Yes |
| 4/3/2023 3:37 | 4/3/2023 3:43 | 7 | Yes |
| 4/3/2023 3:58 | 4/3/2023 4:03 | 6 | Yes |
| 4/3/2023 4:36 | 4/3/2023 4:45 | 10 | Yes |
| 4/3/2023 8:33 | 4/3/2023 8:39 | 7 | No |
| 4/3/2023 9:33 | 4/3/2023 9:39 | 7 | No |
| 4/3/2023 10:42 | 4/3/2023 10:48 | 7 | No |
| 4/3/2023 12:09 | 4/3/2023 12:14 | 6 | No |
| 4/3/2023 13:09 | 4/3/2023 13:15 | 7 | No |
| 4/3/2023 15:22 | 4/3/2023 15:27 | 6 | No |
| 4/3/2023 18:23 | 4/3/2023 18:28 | 6 | No |
| 4/3/2023 20:23 | 4/3/2023 20:28 | 6 | No |
| 4/3/2023 23:22 | 4/3/2023 23:27 | 6 | No |
| 4/4/2023 1:23 | 4/4/2023 1:28 | 6 | No |
| 4/4/2023 2:22 | 4/4/2023 2:29 | 8 | Yes |
| 4/4/2023 4:22 | 4/4/2023 4:28 | 7 | No |
| 4/4/2023 6:22 | 4/4/2023 6:27 | 6 | No |
| 4/4/2023 7:29 | 4/4/2023 7:36 | 8 | Yes |
| 4/4/2023 8:36 | 4/4/2023 8:42 | 7 | No |
| 4/4/2023 9:41 | 4/4/2023 9:46 | 6 | No |
| 4/4/2023 12:41 | 4/4/2023 12:46 | 6 | No |
| 4/4/2023 13:41 | 4/4/2023 13:46 | 6 | No |
| 4/4/2023 14:41 | 4/4/2023 14:46 | 6 | No |
| 4/4/2023 15:41 | 4/4/2023 15:46 | 6 | No |

65

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 4/4/2023 16:41 | 4/4/2023 16:46 | 6 | No |
| 4/4/2023 17:41 | 4/4/2023 17:47 | 7 | Yes |
| 4/4/2023 18:41 | 4/4/2023 18:47 | 7 | Yes |
| 4/4/2023 19:41 | 4/4/2023 19:46 | 6 | No |
| 4/4/2023 20:41 | 4/4/2023 20:46 | 6 | No |
| 4/4/2023 21:41 | 4/4/2023 21:46 | 6 | No |
| 4/4/2023 22:41 | 4/4/2023 22:46 | 6 | No |
| 4/5/2023 0:41 | 4/5/2023 0:46 | 6 | No |
| 4/5/2023 1:41 | 4/5/2023 1:46 | 6 | No |
| 4/5/2023 5:41 | 4/5/2023 5:46 | 6 | No |
| 5/27/2023 8:56 | 5/27/2023 9:09 | 14 | No |
| 5/27/2023 9:28 | 5/27/2023 10:11 | 44 | No |
| 5/27/2023 10:27 | 5/27/2023 10:59 | 33 | No |
| 9/3/2023 14:01 | 9/3/2023 14:06 | 6 | NA |
| 9/3/2023 14:21 | 9/3/2023 14:35 | 15 | NA |
| 9/3/2023 14:50 | 9/3/2023 14:55 | 6 | NA |
| 9/3/2023 15:00 | 9/3/2023 15:06 | 7 | NA |
| 9/3/2023 21:34 | 9/3/2023 22:07 | 34 | NA |
| 9/4/2023 4:01 | 9/4/2023 4:06 | 6 | NA |
| 9/26/2023 7:28 | 9/26/2023 13:51 | 384 | NA |
| 9/26/2023 13:56 | 9/26/2023 14:12 | 17 | NA |
| 9/26/2023 14:26 | 9/26/2023 15:09 | 44 | NA |
| 9/26/2023 15:25 | 9/26/2023 15:53 | 29 | NA |

*NA indicates the semiannual deviation report was not yet due at the time of the 2023 CAA Stationary Source Inspection.

376.    The EPA Inspection Team identified Suncor reported that the Plant 1 FCCU was out of service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit PM to cause opacity exceedances while out-of-service.

### Plant 2 FCCU

377.    The FCCU at Plant 2 is equipped with a COMS on the process unit outlet.

(1)    COMS 30% Opacity Limit

378.    The EPA Inspection Team reviewed the COMS data for the Plant 2 FCCU for the time period of January 1, 2022 through September 30, 2023 and found multiple exceedances of the 30% opacity limit (gases exhibiting greater than

66

30 percent opacity, except for one six-minute average opacity reading in any one hour period), the limit set forth in 40 C.F.R. §§ 60.102(a)(2) and 63.1564(a)(1) and Table 1.1 of MACT UUU, as summarized as follows in Table 18:

**Table 18**

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 2/9/2022 6:56 | 2/9/2022 7:45 | 50 | Yes |
| 2/13/2022 20:02 | 2/13/2022 20:14 | 13 | No |
| 3/1/2022 9:33 | 3/1/2022 9:47 | 15 | No |
| 3/1/2022 10:34 | 3/1/2022 10:47 | 14 | No |
| 6/21/2022 9:07 | 6/21/2022 9:30 | 24 | No |
| 6/21/2022 9:54 | 6/21/2022 10:06 | 13 | No |
| 9/9/2022 10:38 | 9/9/2022 10:50 | 13 | No |
| 12/1/2022 12:37 | 12/1/2022 12:48 | 12 | No |
| 2/23/2023 0:48 | 2/23/2023 1:13 | 26 | Yes |
| 2/25/2023 10:30 | 2/25/2023 11:37 | 68 | Yes |
| 2/25/2023 11:57 | 2/25/2023 12:13 | 17 | Yes |
| 3/21/2023 10:04 | 3/21/2023 10:19 | 16 | Yes |
| 3/21/2023 10:25 | 3/21/2023 10:42 | 18 | No |
| 3/21/2023 11:10 | 3/21/2023 11:24 | 15 | No |
| 6/29/2023 8:42 | 6/29/2023 8:55 | 14 | No |
| 7/5/2023 6:03 | 7/5/2023 6:29 | 27 | No |
| 8/21/2023 13:26 | 8/21/2023 18:42 | 317 | NA |
| 9/9/2023 9:37 | 9/9/2023 10:22 | 46 | NA |
| 9/9/2023 10:45 | 9/9/2023 11:14 | 30 | NA |
| 2/23/2023 0:48 | 2/23/2023 1:13 | 26 | NA |

*NA indicates the semiannual deviation report was not yet due at the time of the 2023 CAA Stationary Source Inspection.

379.   The EPA Inspection Team identified Suncor reported that the Plant 2 FCCU was out of service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit PM to cause opacity exceedances while out-of-service.

(2)   COMS 20% Opacity Limit in MACT UUU

380.   The EPA Inspection Team reviewed the COMS data for the Plant 2 FCCU for the time period of January 1, 2022 through September 30, 2023 and found seven exceedances of the 20% opacity limit (3-hour rolling average), the limit found in 40 C.F.R. § 63.1564(a)(2) and Table 2.1 of MACT UUU for units subject to the NSPS for PM in 40 C.F.R. § 60.102, summarized as follows in Table 19:

67

**Table 19**

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report |
|---|---|---|---|
| 2/9/2022 8:18 | 2/9/2022 10:20 | 123 | No |
| 2/23/2023 2:54 | 2/23/2023 3:49 | 56 | No |
| 2/25/2023 10:36 | 2/25/2023 14:01 | 206 | No |
| 3/21/2023 11:10 | 3/21/2023 13:07 | 118 | No |
| 7/5/2023 7:32 | 7/5/2023 9:15 | 104 | No |
| 8/21/2023 13:58 | 8/21/2023 21:03 | 426 | No |
| 9/9/2023 10:17 | 9/9/2023 13:03 | 167 | No |

381.    The EPA Inspection Team identified Suncor reported that the Plant 2 FCCU was out of service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit PM to cause opacity exceedances while out-of-service.

(3)    COMS 20% Opacity Limit in Suncor's Permit 95OPAD108

382.    The EPA Inspection Team reviewed the COMs data for the Plant 2 FCCU for the time period of January 1, 2022 through September 30, 2022 and found multiple exceedances of the 20% opacity limit (based on 24 consecutive opacity readings taken at 15-second intervals for six minutes), set forth by Suncor's Permit 95OPAD108, Section II Condition 20.1, summarized as follows in Table 20:

**Table 20**

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 2/9/2022 6:55 | 2/9/2022 8:26 | 92 | Yes |
| 2/13/2022 19:46 | 2/13/2022 19:55 | 10 | Yes |
| 2/13/2022 20:01 | 2/13/2022 20:27 | 27 | Yes |
| 3/1/2022 9:30 | 3/1/2022 9:47 | 18 | No |
| 3/1/2022 10:04 | 3/1/2022 10:10 | 7 | No |
| 3/1/2022 10:22 | 3/1/2022 10:48 | 27 | No |
| 4/4/2022 16:10 | 4/4/2022 16:17 | 8 | Yes |
| 4/4/2022 19:38 | 4/4/2022 19:43 | 6 | Yes |
| 4/5/2022 2:09 | 4/5/2022 2:16 | 8 | Yes |
| 6/21/2022 8:47 | 6/21/2022 8:57 | 11 | No |
| 6/21/2022 9:05 | 6/21/2022 9:32 | 28 | No |
| 6/21/2022 9:47 | 6/21/2022 10:08 | 22 | No |

68

| Opacity Exceedance Start Time | Opacity Exceedance End Time | Duration of Continuous Limit Exceedance (minutes) | Included in Semiannual Deviation Report* |
|---|---|---|---|
| 9/9/2022 9:38 | 9/9/2022 9:45 | 8 | No |
| 9/9/2022 9:49 | 9/9/2022 10:17 | 28 | No |
| 9/9/2022 10:27 | 9/9/2022 10:52 | 26 | No |
| 12/1/2022 11:58 | 12/1/2022 12:04 | 7 | No |
| 12/1/2022 12:10 | 12/1/2022 12:59 | 50 | No |
| 2/10/2023 23:06 | 2/10/2023 23:18 | 13 | Yes |
| 2/16/2023 18:45 | 2/16/2023 18:58 | 14 | Yes |
| 2/17/2023 22:44 | 2/17/2023 23:01 | 18 | Yes |
| 2/23/2023 0:46 | 2/23/2023 1:45 | 60 | Yes |
| 2/23/2023 5:20 | 2/23/2023 5:25 | 6 | Yes |
| 2/24/2023 9:44 | 2/24/2023 9:54 | 11 | Yes |
| 2/25/2023 6:54 | 2/25/2023 7:25 | 32 | Yes |
| 2/25/2023 9:00 | 2/25/2023 9:40 | 41 | Yes |
| 2/25/2023 10:18 | 2/25/2023 12:19 | 122 | Yes |
| 2/25/2023 18:13 | 2/25/2023 18:18 | 6 | No |
| 3/21/2023 10:04 | 3/21/2023 10:19 | 16 | No |
| 3/21/2023 10:25 | 3/21/2023 10:42 | 18 | No |
| 3/21/2023 11:00 | 3/21/2023 11:25 | 26 | No |
| 6/29/2023 7:54 | 6/29/2023 8:23 | 30 | No |
| 6/29/2023 8:35 | 6/29/2023 8:56 | 22 | No |
| 7/4/2023 9:27 | 7/4/2023 9:36 | 10 | NA |
| 7/4/2023 12:27 | 7/4/2023 13:09 | 43 | NA |
| 7/4/2023 13:14 | 7/4/2023 13:19 | 6 | NA |
| 7/4/2023 13:33 | 7/4/2023 13:40 | 8 | NA |
| 7/5/2023 5:50 | 7/5/2023 6:57 | 68 | NA |
| 7/5/2023 7:21 | 7/5/2023 7:26 | 6 | NA |
| 7/5/2023 7:30 | 7/5/2023 7:36 | 7 | NA |
| 7/5/2023 7:42 | 7/5/2023 8:11 | 30 | NA |
| 7/5/2023 8:18 | 7/5/2023 8:26 | 9 | NA |
| 8/21/2023 13:25 | 8/21/2023 18:42 | 318 | NA |
| 9/9/2023 9:37 | 9/9/2023 10:23 | 47 | NA |
| 9/9/2023 10:34 | 9/9/2023 11:26 | 53 | NA |

*NA indicates the semiannual deviation report was not yet due at the time of the 2023 CAA Stationary Source Inspection.

383.    The EPA Inspection Team identified Suncor reported that the Plant 2 FCCU was out of service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit PM to cause opacity exceedances while out-of-service.

69

<u>Plant 1 FCCU Opacity Violations</u>

*Plant 1 FCCU Operated in Violation of COMS 30% Opacity Limit*

384.    On multiple occasions between January 1, 2022 through September 30, 2023 summarized in Paragraph 372, Suncor operated its Plant 1 FCCU in violation of the 30% opacity limit (gases exhibiting greater than 30 percent opacity, except for one six-minute average opacity reading in any one hour period), the limit set forth in 40 C.F.R. §§ 60.102(a)(2) and 63.1564(a)(1) and Table 1.1 of MACT UUU.

*Plant 1 FCCU Operated in Violation of COMS 20% Opacity Limit*

385.    On multiple occasions between January 1, 2022 through September 30, 2023 summarized in Paragraph 373, and in consideration of the facts set forth in Paragraph 374, Suncor operated its Plant 1 FCCU in violation of the 20% opacity limit (3-hour rolling average), the limit set forth in C.F.R. § 63.1564(a)(2) and Table 2.1 of MACT UUU for units subject to the NSPS for PM in 40 C.F.R. § 60.102.

*Plant 1 FCCU Operated in Violation of 20% Opacity Limit in Suncor's Title V Permit 96OPAD120*

386.    On multiple occasions between January 1, 2022 through September 30, 2023, summarized in Paragraph 375, and in consideration of the facts set forth in Paragraph 376, Suncor operated its Plant 1 FCCU in violation of the 20% opacity limit (based on 24 consecutive opacity reading taken at 15-second intervals for six minutes), the limit set forth by Suncor's Permit 96OPAD120 Section II, Condition 35.1.

<u>Plant 2 FCCU Opacity Violations</u>

*Plant 2 FCCU Operated in Violation of COMS 30% Opacity Limit*

387.    On multiple occasions between January 1, 2022 through September 30, 2023 summarized in Paragraph 378, and in consideration of the facts set forth in Paragraph 379,  Suncor operated its Plant 2 FCCU in violation of the 30% opacity limit (gases exhibiting greater than 30 percent opacity, except for one six-minute average opacity reading in any one hour period), the limit set forth in 40 C.F.R. §§ 60.102(a)(2) and 63.1564(a)(1) and Table 1.1 of MACT UUU.

*Plant 2 FCCU Operated in Violation of COMS 20% Opacity*

388.    On seven occasions between January 1, 2022 through September 30, 2023, summarized in Paragraph 380, and in consideration of the facts set forth in Paragraph 381, Suncor operated its Plant 1 FCCU in violation of the 20% opacity limit (3-hour rolling average), the limit set forth in 40 C.F.R. § 63.1564(a)(2) and Table 2.1 of MACT UUU for units subject to the NSPS for PM in 40 C.F.R. § 60.102.

70

*Plant 2 FCCU Operated in Violation of 20% Opacity Limit in
Suncor's Title V Permit 95OPAD108*

389.    On multiple occasions between January 1, 2022 through September 30,
2023 summarized in Paragraph 382, and in consideration of the facts set forth in
383, Suncor operated its Plant 1 FCCU in violation of the 20% opacity limit (based
on 24 consecutive opacity reading taken at 15-second intervals for six minutes), the
limit set forth by Suncor's Permit 95OPAD108, Section II, Condition 20.1.

<u>Failure to Report Opacity Deviations in Plants 1 and 2</u>

390.    For each opacity exceedance identified in Table 15, set forth in
Paragraph 372, that has a "No" listed in the column titled "Included in Semiannual
Deviation Report," Suncor failed to report the opacity exceedance in violation of 40
C.F.R. § 63.1575(e).

391.    For each opacity exceedance identified in the Table 16, set forth in
Paragraph 373, that has a "No" listed in the column titled "Included in Semiannual
Deviation Report," Suncor failed to report the opacity exceedance in violation of 40
C.F.R. § 63.1575(e).

392.    For each opacity exceedance identified in Table 17, set forth in
Paragraph 375, that has a "No" listed in the column titled "Included in Semiannual
Deviation Report," Suncor failed to report the opacity exceedance in violation of
Section IV.22.d of Suncor's Permit 96OPAD120.

393.    For each opacity exceedance identified in Table 18, set forth in
Paragraph 378, that has a "No" listed in the column titled "Included in Semiannual
Deviation Report," Suncor failed to report the opacity exceedance in violation of 40
C.F.R. § 63.1575(e).

394.    For each opacity exceedance identified in Table 19, set forth in
Paragraph 380, that has a "No" listed in the column titled "Included in Semiannual
Deviation Report," Suncor failed to report the opacity exceedance in violation of 40
C.F.R. § 63.1575(e).

395.    For each opacity exceedance identified in Table 20, set forth in
Paragraph 382, that has a "No" listed in the column titled "Included in Semiannual
Deviation Report," Suncor failed to report the opacity exceedance in violation of
Section IV.22.d of Suncor's Permit 95OPAD108.

**G.    Plant 1 FCCU NOx Emissions Exceedance Violations (Title V
Violations)**

<u>Applicable Facts</u>

396.    The EPA Inspection Team reviewed the NOx CEMS data for the Plant
1 FCCU for the time period if January 1, 2022 through September 30, 2023 and

71

found multiple exceedances of the 86.8 ppmvd NOx (at 0% $O_2$) on a 7-day rolling average basis, set forth by Suncor's Permit 96OPAD120, Section II, Condition 22.4, summarized as follows in Table 21:

**Table 21**

| NOx @ 0% $O_2$ 7-day Rolling Average | Exceedance Start Time NOx > 86.8 ppm at 0% $O_2$ | Exceedance End Time NOx >86.8 ppm at 0% $O_2$ | Duration of Continuous Limit Exceedance (days) |
|---|---|---|---|
| 88.1 | 4/2/2023 18:00 | 4/9/2023 17:59 | 7.0 |
| 88.7 | 7/26/2023 8:00 | 7/29/2023 21:59 | 3.6 |

397.    The EPA Inspection Team identified that Suncor reported that the Plant 1 FCCU was out-of-service during some of the time periods set forth in the table immediately above. An out-of-service FCCU should not emit any regulated pollutants while out-of-service.

<u>Plant 1 FCCU NOx Emissions Exceedance Violations</u>

398.    On two occasions between January 1, 2022 through September 30, 2023, summarized in Paragraph 396, and in consideration of the facts set forth in Paragraph 397, Suncor operated its Plant 1 FCCU in violation of the 86.8 ppmvd NOx (at 0% $O_2$) on a 7-day rolling average basis, set forth by Suncor's Permit 96OPAD120, Section II, Condition 22.4.

## H.    Tail Gas Unit Incinerator $SO_2$ Emission Exceedances Violations (MACT UUU and Title V Violations)

<u>Applicable Facts</u>

*Plant 1 TGU*

399.    The TGU at Plant 1, described in Paragraph 82, operates as a control device for the sulfur recovery process at the Commerce City Refinery, described in Paragraph 83,. The TGU oxidizes $H_2S$ in the sulfur gas stream to $SO_2$ which is then emitted to atmosphere at Plant 1.

400.    The TGU at Plant 1 is equipped with a CEMS on the process unit outlet.

401.    The EPA Inspection Team reviewed the TGU CEMS data for the Plant 1 sulfur recovery process for the time period of January 1, 2022 through September 30, 2023 and found multiple exceedances of the 250 ppm by volume (dry 12-hour rolling basis) of $SO_2$ at zero percent excess air, set forth by 40 C.F.R. §§ 60.104(a)(2)(i) and 63.1568(a)(1) and Table 29 of MACT UUU, summarized as follows in Table 21:

**Table 22:**

| SO₂ Exceedance Start Time | SO₂ Exceedance End Time | Duration of Continuous 12-Hour Average Limit Exceedance (hours) | Included in Semiannual Deviation Report |
|---|---|---|---|
| 2/24/2022 12:00 | 2/26/2022 17:59 | 54 | Yes |
| 3/17/2022 1:00 | 3/18/2022 0:00 | 23 | Yes |
| 3/19/2022 2:00 | 3/20/2022 7:00 | 29 | Yes |
| 3/22/2022 2:59 | 3/22/2022 3:59 | 1 | Yes |
| 3/22/2022 10:00 | 3/23/2022 8:00 | 22 | Yes |
| 3/23/2022 15:00 | 3/24/2022 3:00 | 12 | Yes |
| 12/22/2022 13:00 | 12/30/2022 0:59 | 180 | Yes |
| 3/2/2023 0:59 | 3/2/2023 5:59 | 5 | No |
| 3/10/2023 13:00 | 3/11/2023 8:00 | 19 | Yes |
| 3/13/2023 11:59 | 3/14/2023 8:59 | 21 | Yes |
| 4/1/2023 21:59 | 4/3/2023 20:00 | 46 | No |
| 4/12/2023 5:00 | 4/13/2023 18:59 | 38 | No |
| 4/28/2023 23:00 | 4/30/2023 0:00 | 25 | No |
| 5/24/2023 13:00 | 5/25/2023 0:00 | 11 | No |
| 6/29/2023 23:59 | 6/30/2023 1:59 | 2 | No |

402.    The EPA Inspection Team identified Suncor reported that the Plant 1 TGU Incinerator was not receiving acid gas feed during some of the time periods set forth in the table immediately above. A TGU without acid gas feed should not emit levels of SO₂ above the exceedance threshold while incinerating tail gas.

SO₂ Emissions Exceedance Violations

*Plant 1 TGU*

403.    On multiple occasions between January 1, 2022 through September 30, 2023, as summarized in Paragraph 401, and in consideration of the facts set forth in Paragraph 402, Suncor operated its Plant 1 SRU in violation of the 250 ppm by volume (dry 12-hour rolling basis) of SO₂ at zero percent excess air, set forth by 40 C.F.R. §§ 60.104(a)(2)(i) and 63.1568(a)(1) and Table 29 of MACT UUU.

404.    For each SO2 exceedance identified in the table set forth in Paragraph 401 that has a "No" listed in the column titled "Included in Semiannual Deviation Report," Suncor failed to report the SO₂ exceedance in violation of 40 C.F.R. §§ 60.105(e)(4)(i) and 63.1575(e), and Suncor's Permit 96OPAD120, Section II, Condition 54.31.4.

73

## I.   Multiple CMS and CEMS at the Commerce City Refinery are Not Properly Calibrated to Provide Accurate Emission Measurements and Suncor Failed to Take Necessary Corrective Action (NSPS J/Ja Violations)

Applicable Facts

405.    Calibration is the action or process of assessing and/or adjusting an instrument or device to ensure precise and accurate measurements.

406.    Pursuant to the CAA and Suncor's Title V operating permits, Suncor's CMS and CEMS are required to be calibrated and maintained at Suncor's Commerce City Refinery at a minimum on a daily basis.

407.    To determine whether a CMS or CEMS is calibrated, maintained, and operated correctly, an operator uses span gas or gases (gases with a verified reference value of pollutant) to assess calibration drifts (the difference in the CMS or CEMS output readings from the established reference value after a stated period of operation during which no unscheduled maintenance, repair, or adjustment took place).

408.    Comparing the readings of the span gas or gasses against the output of the CMS or CEMS being calibrated allows an operator to determine whether the CMS or CEMS is functioning properly and providing precise, reliable readings or has calibration drift outside of the permissible range and is "out-of-control."

409.    As specified in 40 C.F.R. Part 60 Appendix F Procedure 1, the CMS or CEMS is out-of-control if either the zero (or low-level) or high-level calibration drift result exceeds twice the applicable drift specification in Appendix B for five, consecutive, daily periods.

410.    Under the NSPS, the beginning of the out-of-control period is the time corresponding to the completion of the fifth, consecutive, daily calibration drift check with a calibration drift in excess of two times the allowable limit, or the time corresponding to the completion of the daily calibration drift check preceding the daily calibration drift check that results in a calibration drift in excess of four times the allowable limit. The end of the out-of-control period is the time corresponding to the completion of the calibration drift check following corrective action that results in the calibration drift's at both the zero (or low-level) and high-level measurement points being within the corresponding allowable calibration drift limit (i.e., either two times or four times the allowable limit in Appendix B).

411.    CMS or CEMS are located, among other places, at the C005 Flare, the Plant 2 FCCU, and the TGU (H-25).

74

### C005 Flare CMS and CEMS

412.    The C005 Flare CMS and CEMS is equipped to monitor $H_2S$ and Total Reduced Sulfur (TRS), and also measures other regulated pollutants.

413.    Based on the review of C005 Flare $H_2S$ CMS and TRS CEMS daily calibration records, the EPA Inspection Team identified 744 hours of out-of-control periods between April 27, 2023 and May 28, 2023 due to missing calibration records and calibration drifts greater than four times the allowable drift.

414.    For each of the out-of-control periods set forth immediately above, Suncor did not take necessary corrective action to address the excessive calibration drift.

415.    Based on the review of Suncor's calibration and maintenance records for the C005 TRS CEMS, the EPA Inspection Team identified that Suncor did not conduct a daily calibration on the TRS sensor that from April 28, 2023, through May 4, 2023, and May 9, 2023 through May 27, 2023.

### Plant 1 and 2 FCCU CEMS

416.    The Plant 1 and Plant 2 FCCU CEMS are equipped to monitor CO and NOx, and also measure other regulated pollutants.

417.    Based on the review of the Plant 2 FCCU NOx CEMS daily calibration records, the EPA Inspection Team identified 72 hours of out-of-control periods between September 1, 2023 and September 7, 2023 due to missing calibration records and calibration drifts greater than two times the allowable drift.

418.    For the out-of-control periods set forth immediately above, Suncor did not take necessary corrective action to address the excessive calibration drift.

419.    Based on the review of calibration and maintenance records for the Plant 1 and Plant 2 FCCU, the EPA Inspection Team observed that for the time period of January 1, 2022 through September 30, 2023 Suncor used an incorrect span gas value for the Plant 1 and Plant 2 FCCU CEMS. Suncor used a 700 ppm span gas standard for CO instead of a 1,000 ppm span gas as required by 40 C.F.R. § 60.105(a)(2)(i).

### TGU (H-25) CEMS

420.    The TGU (H-25) CEMS is equipped to monitor $O_2$ and $SO_2$, and also measures other regulated pollutants.

421.    Based on the review of TGU $SO_2$ CEMS daily calibration records, the EPA Inspection Team identified 53 hours of out-of-control periods on January 6, 2022 and on April 11, 2023 through April 12, 2023 due to calibration drifts greater

than four times the allowable drift. Suncor only identified 8 total hours between the two out-of-control periods.

422.    For each of the out-of-control periods set forth immediately above, Suncor did not take necessary corrective action to address the excessive calibration drift.

423.    Based on the review of calibration and maintenance records for the TGU SO$_2$ CEMS, the EPA Inspection Team observed that for the time period of January 1, 2022 through September 30, 2023 Suncor used an incorrect span gas value for the TGU (H-25) CEMS. Suncor used a 400 ppm span gas standard for SO$_2$ instead of the 500 ppm span gas standard required by 40 C.F.R. § 60.105(a)(5)(i).

424.    Based on the review of calibration and maintenance records for the TGU O$_2$ CEMS, the EPA Inspection Team observed that for the time period of January 1, 2022 through September 30, 2023 Suncor used an incorrect span gas value for the TGU (H-25) CEMS. Suncor used a 9% span gas standard for O$_2$ instead of a 25% span gas as required by 40 C.F.R. § 60.105(a)(5)(i).

Violations

*C005 Flare CEMS*

(1)    Failure to Identify Out-of-Control Periods and Take Necessary Corrective Action

425.    Each of Suncor's failures to identify out-of-control periods and take necessary corrective action set forth in Paragraphs 413 and 414, is a violation of 40 C.F.R. §§ 60.107a(a)(2)(iii) and 60.13(d)(1), and 40 C.F.R. Part 60, Appendix F, Procedure 1, 4.3.1.

(2)    Failure to Conduct Daily Calibration.

426.    Each of Suncor's failures to conduct daily calibration on the C005 TRS CEMS as set forth in Paragraph 415, is a violation of 40 C.F.R. § 60.13(d)(1).

*Plant 1 and 2 FCCU CEMS*

(1)    Failure to Identify Out-of-Control Periods and Take Necessary Corrective Action for the Plant 1 FCCU CEMS

427.    Each of Suncor's failures to identify out-of-control periods and take necessary corrective action set forth in Paragraphs 417 and 418, is a violation of 40 C.F.R. §§ 60.107a(a)(2)(iii) and60.13(d)(1) and 40 C.F.R. Part 60, Appendix F, Procedure 1, 4.3.1.

76

        (2)     Use of Incorrect Span Calibration Standards for the Plant 1 and Plant 2 FCCU CEMS

428.    Suncor failed to use the proper CO span gas for the time period of January 1, 2022 through September 30, 2023, as set forth in Paragraph 419, for its Plant 1 and Plant 2 FCCU, in violation of 40 C.F.R. § 60.105(a)(2)(i).

*TGU (H-25) CEMS*

        (1)     Failure to Identify Out-of-Control Periods and Take Necessary Corrective Action

429.    Each of Suncor's failures to identify out-of-control periods and take necessary corrective action set forth in Paragraphs 421 and 422, is a violation of 40 C.F.R. §§ 60.107a(a)(2)(iii) and 60.13(d)(1) and 40 C.F.R. Part 60, Appendix F, Procedure 1, 4.3.1.

        (2)     Use of Incorrect Span Calibration Standards

430.    Suncor failed to use the proper $SO_2$ and $O_2$ span gas for the TGU CEMS for the time period of January 1, 2022 through September 30, 2023, as set forth in Paragraphs 423 and 424, in violation of 40 C.F.R. § 60.105(a)(5)(i).

## VII.   FIFTH SET OF JOINTLY ALLEGED VIOLATIONS: OTHER TITLE V PERMIT VIOLATIONS

### A.   Statutory and Regulatory Authority

431.    Suncor is required to comply with the terms and conditions of two Title V permits issued to Suncor for the Commerce City Refinery, as set forth in Paragraphs 54 and 55.

### B.   Findings of Violation

432.    For each of the applicable regulatory requirements set forth in this NOV that are incorporated into a term or condition of Permit 96OPAD120 or Permit 95OPAD108, where this NOV alleges that Suncor is or was violating the applicable regulatory requirement, this NOV also alleges that Suncor is or was violating the corresponding Title V permit term or condition.

## VIII.   SIXTH SET OF JOINTLY ALLEGED VIOLATIONS: SUNCOR CONSENT DECREE VIOLATIONS

### A.   Statutory and Regulatory Authority

433.    Suncor is a party to and bound by the requirements of the Suncor Consent Decrees, as defined above in the introduction of this NOV.

### B.    Findings of Violation

434.    For each of the applicable regulatory requirements set forth in this
NOV that have a corresponding compliance requirement set forth in the Suncor
Consent Decrees, where this NOV alleges that Suncor is or was violating the
applicable regulatory requirement, this NOV also alleges that Suncor is or was
violating the corresponding compliance requirement in the Suncor Consent Decrees,
to the extent not already alleged by Paragraph 98.

## IX.    SEVENTH SET OF ALLEGED VIOLATIONS, SOME JOINTLY ALLEGED, SOME STATE ONLY: COLORADO REGULATORY VIOLATIONS

### A.    Statutory and Regulatory Authority

435.    The Commission has promulgated air quality regulations pursuant to
its statutory authority. C.R.S. §§ 25-7-101 et seq.; 5 Colo. Code Reg. §§ 1001-1 et
seq. Some of these state air quality regulations are incorporated into Colorado's
SIP.

### B.    Findings of Violation

436.    To the extent the factual findings set out in this NOV support
violations of Commission regulations that are incorporated into Colorado's SIP and
federally enforceable, the Governments jointly allege that Suncor is in violation of
such regulations.

437.    To the extent the factual findings set out in this NOV support
violations of Commission regulations that are enforceable only by the State of
Colorado, the Division alleges that Suncor is in violation of such regulations.

## X.    ENFORCEMENT AUTHORITY

438.    Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), directs that if, on
the basis of information available to the EPA, the EPA finds that any person has
violated or is in violation of any requirement or prohibition of an applicable
implementation plan or permit, the EPA shall notify the person and the State in
which the plan applies of such finding and, at any time after the expiration of 30
days following the date on which such notice of a violation is issued, the
Administrator may, without regard to the period of violation: (a) issue an order
requiring such person to comply with the requirements or prohibitions of such plan
or permit; (b) issue an administrative order to comply with Section 113(d) of the
CAA, or (c) bring a civil action in accordance with Section 113(b) of the CAA. 42
U.S.C. § 7413(a)(1).

439.    Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), provides that
whenever, on the basis of any information available to the EPA, the EPA finds that

any person has violated, or is in violation of, any requirement of prohibition of an applicable implementation plan, the Administrator may issue an order requiring such person comply with the requirements or prohibition of such plan, issue an administrative penalty order in accordance with Section 113(d) of the CAA, or bring a civil action in accordance with Section 113(b) of the CAA for injunctive relief or civil penalties.

440.    The Colorado Air Act provides that if the Division determines that any violation or failure to comply with the Colorado Air Act, Commission regulations, or applicable permits exists, the Division will notify and confer with the owner or operator of the relevant air pollution source. C.R.S. § 25-7-115(2)(c). Thereafter, the Division may issue an administrative order requiring, without limitation, the owner or operator or other responsible person to comply. C.R.S. § 25-7-115(3)(b)(I). Alternatively, the Division may bring a civil action in court for injunctive relief and/or penalties. C.R.S. §§ 25-7-121(1), -122(1).

441.    The issuance of this NOV does not in any way limit or preclude the EPA from pursuing additional enforcement options concerning the federal inspection or review of information referenced in this NOV. Likewise, the issuance of this NOV does not limit or preclude the Division from pursuing additional enforcement options concerning further review of the information referenced in this NOV.

442.    Since the Division's July 11-13, 2022, inspection underlying the Division's issuance of the Division's 2023 Compliance Advisory, and/or since the 2023 CAA Stationary Source Inspection, Suncor has submitted reports, including but not limited to excess emissions reports, Title V deviation reports, and root cause failure analysis reports, to the Division and/or EPA, indicating non-compliance with applicable regulatory, permit, and Suncor Consent Decree requirements. This NOV does not preclude EPA or the Division from taking enforcement action for violations not specifically addressed in this NOV, including, without limitation, violations arising from such reports.

Date Issued: July 2, 2024

SUZANNE BOHAN

Digitally signed by
SUZANNE BOHAN
Date: 2024.07.02
15:14:48 -06'00'

Suzanne J. Bohan, Director
Enforcement and Compliance Assurance
Division
Environmental Protection Agency, Region 8

79

Shannon L.
McMillan

Digitally signed by
Shannon L. McMillan
Date: 2024.07.02
15:40:00 -06'00'

Shannon L. McMillan, Program Manager
Compliance and Enforcement Program
Air Pollution Control Division
Colorado Department of Public Health and
Environment

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 8**

**and**

**COLORADO DEPARTMENT OF PUBLIC HEALTH AND THE
ENVIRONMENT
AIR POLLUTION CONTROL DIVISION**

| | |
|---|---|
| **IN THE MATTER OF** | **NOTICE OF VIOLATION** |
| **Suncor Energy (U.S.A.), Inc.** | **EPA Docket No.** |
| | Proceedings Pursuant to the Clean Air Act, 42 U.S.C. §§ 7401-7671q, and the Colorado Air Pollution Prevention and Control Act, C.R.S. §§ 25-7-101 – 1604 |

<u>**NOTICE OF VIOLATION**</u>

**ATTACHMENT: THE DIVISION'S 2023 COMPLIANCE ADVISORY**



# COLORADO
## Department of Public Health & Environment

## AIR POLLUTION CONTROL DIVISION

**COMPLIANCE ADVISORY**

**CASE NO. 2023-082**
**AIRS NO. 001-0003**
**INSPECTION DATE: July 11-13, 2022**

**SENT VIA ELECTRONIC MAIL**
**MAILING DATE: June 1, 2023**
**SOURCE CONTACT: Carla Manzi**

**IN THE MATTER OF SUNCOR ENERGY (U.S.A.) INC.**

This Compliance Advisory provides formal notice, pursuant to § 25-7-115(2), C.R.S., of alleged violations or noncompliance discovered during the Air Pollution Control Division's ("Division") inspection and/or review of records related to Suncor Energy (U.S.A.) Inc.'s Refinery identified below. The Division is commencing this action because it has cause to believe that the compliance issues identified below may constitute violations of the Colorado Air Pollution Prevention and Control Act ("the Act") and its implementing regulations.

Please be aware that you are responsible for complying with applicable State air pollution requirements and that there are substantial penalties for failing to do so. Pursuant to the enforcement authority provided to the Division by § 25-7-115, C.R.S., any person who violates the Act, its implementing regulations or any permit issued thereunder may be issued an order for compliance that can include permit revocation and assessment of penalties in accordance with § 25-7-122, C.R.S. The issuance of this Compliance Advisory does not in any way limit or preclude the Division from pursuing additional enforcement options concerning this inspection/review. Also, this Compliance Advisory does not constitute a bar to enforcement action for violations not specifically addressed in this Compliance Advisory.

Failure to respond to this Compliance Advisory by the date indicated at the end of this Compliance Advisory may be considered by the Division in any subsequent



enforcement action and assessment of penalties. Furthermore, the Division's enforcement process contemplates a full and final resolution of the compliance issues herein addressed, and those that may result from further review, in a timely manner. If at any time throughout the process of reaching such a resolution the Division determines that the parties cannot agree to the dispositive facts, compliance requirements and/or penalty assessments (if any) associated with this Compliance Advisory, or a resultant enforcement action, the Division may exercise its full enforcement authority allowed under the law.

---

Suncor Energy (U.S.A.) Inc. ("Suncor") owns and operates the petroleum refinery located at 5801 Brighton Boulevard, Commerce City, Adams County, Colorado (Plant 1), the petroleum refinery located at 5800 Brighton Boulevard, Commerce City, Adams County, Colorado (Plant 2), and the asphalt plant located approximately at 3875 East 56th Avenue, Commerce City, Adams County, Colorado (Plant 3) (collectively, the "Refinery").

Plant 1 and Plant 3 are subject to the terms and conditions of the following state and federal permits, consent decrees, and regulations, including, but not limited to:

1. Federal Consent Decree (Civil Action No. H-01-4430) entered April 30, 2002, first amendment lodged June 16, 2003, second amendment lodged July 12, 2006 ("West Plant Consent Decree");
2. Colorado Operating Permit Number 96OPAD120, issued to Suncor on August 1, 2004, and last revised February 22, 2018 ("Permit 96OPAD120"); and
3. 40 C.F.R. Part 63, Subpart R - National Emission Standards for Gasoline Distribution Facilities (Bulk Gasoline Terminals and Pipeline Breakout Stations) ("NESHAP R").

Plant 2 is subject to the terms and conditions of the following state and federal permits, consent decrees, and regulations, including, but not limited to:

1. Federal Consent Decree (Civil Action No. SA-05-CA-0569) entered November 23, 2005, non-material modification effective June 18, 2006 ("East Plant Consent Decree");
2. Colorado Operating Permit Number 95OPAD108, issued to Suncor on October 1, 2006, and renewed September 1, 2022 ("Permit 95OPAD108 (9/1/2022)");
3. Colorado Construction Permit Number 09AD0961, Final Approval, issued to Suncor on February 23, 2015 ("Permit 09AD0961");
4. Colorado Construction Permit Number 09AD1422, Initial Approval, issued to Suncor on May 14, 2010 ("Permit 09AD1422"); and
5. 40 C.F.R. Part 60, Subpart GGG - Standards of Performance for Equipment Leaks of VOC in Petroleum Refineries for Which Construction,



Reconstruction, or Modification Commenced After January 4, 1983, and on or Before November 7, 2006 ("NSPS GGG").

Plant 2 was subject to the terms and conditions of the Colorado Operating Permit Number 95OPAD108, issued to Suncor on October 1, 2006, and revised June 15, 2009 ("Permit 95OPAD108").

The Refinery is subject to the terms and conditions of the following state and federal regulations, including, but not limited to:

1. 40 C.F.R. Part 60:
    i. Subpart A – General Provisions ("NSPS A");
    ii. Subpart J - Standards of Performance for Petroleum Refineries ("NSPS J");
    iii. Subpart Ja - Standards of Performance for Petroleum Refineries for Which Construction, Reconstruction, or Modification Commenced After May 14, 2007 ("NSPS Ja");
    iv. Subpart VV - Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for Which Construction, Reconstruction, or Modification Commenced After January 5, 1981, and on or Before November 7, 2006 ("NSPS VV");
    v. Subpart VVa - Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for Which Construction, Reconstruction, or Modification Commenced After November 7, 2006 ("NSPS VVa");
    vi. Subpart GGGa - Standards of Performance for Equipment Leaks of VOC in Petroleum Refineries for Which Construction, Reconstruction, or Modification Commenced After November 7, 2006 ("NSPS GGGa");
2. 40 C.F.R. Part 63:
    i. Subpart A – General Provisions ("NESHAP A");
    ii. Subpart CC - National Emission Standards for Hazardous Air Pollutants from Petroleum Refineries ("NESHAP CC");
    iii. Subpart UUU - National Emission Standards for Hazardous Air Pollutants for Petroleum Refineries: Catalytic Cracking Units, Catalytic Reforming Units, and Sulfur Recovery Units ("NESHAP UUU");
3. The Act; and
4. The Colorado Air Quality Control Commission ("AQCC") Regulations.

---

I.    <u>REQUIREMENTS APPLICABLE TO COMPLIANCE ADVISORY, CASE NO. 2023-082</u>

### <u>Refinery: Plant 1 and Plant 3</u>

1. Pursuant to Permit 96OPAD120, Section II, Condition 53.66, and NESHAP CC, § 63.655(g), the owner or operator of a source subject to this subpart shall

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director        3 |



App. 1817

submit Periodic Reports no later than 60 days after the end of each 6-month period when any of the information specified in paragraphs (g)(1) through (7) of this section or paragraphs (g)(9) through (14) of this section is collected. Pursuant to Permit 96OPAD120, Section II, Condition 47.5, and NSPS GGGa, § 60.592a(e), each owner or operator subject to the provisions of this subpart shall comply with the provisions of §§ 60.486a and 60.487a. Pursuant to Permit 96OPAD120, Section II, Condition 55.96, and NSPS VVa, § 60.487a(a), each owner or operator subject to the provisions of this subpart shall submit semiannual reports to the Administrator beginning 6 months after the initial startup date.

2. Pursuant to Permit 96OPAD120, Section IV, Condition 22.d, the permittee shall submit to the Division all reports of any required monitoring at least every six months, and all instances of deviations from any permit requirements must be clearly identified in such reports.

3. Pursuant to Permit 96OPAD120, Section II, Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2, 21.3, 27.3, 28.3, 29.2, 29.9, 30.2, 30.10, 38.2.1, 46.1.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, §§ 60.102a(g)(1)(ii) and 60.103a(h), Suncor shall not burn in any fuel gas combustion device or any affected flare any fuel gas that contains hydrogen sulfide ("$H_2S$") in excess of 162 parts per million volumetric ("ppmv") determined hourly on a 3-hour rolling average basis.

4. Pursuant to Permit 96OPAD120, Section II, Conditions 29.10, 31.10, and 53.91, and NESHAP CC, § 63.670(e), Suncor shall operate the Main Plant Flare and GBR Unit Flare to maintain the net heating value of flare combustion zone gas ("NHVcz") at or above 270 British thermal units per standard cubic feet ("Btu/scf") determined on a 15-minute block period basis when regulated material is routed to the flare for at least 15-minutes.

5. Pursuant to Permit 96OPAD120, Section II, Conditions 29.10 and 53.89, and NESHAP CC, § 63.670(c), Suncor shall operate the Main Plant Flare with no visible emissions, except for periods not to exceed a total of five minutes during any two consecutive hours, when regulated material is routed to the flare and the flare vent gas flow rate is less than the smokeless design capacity of the flare.

6. Pursuant to Permit 96OPAD120, Section II, Conditions 1.3 and 39.1, and AQCC Regulation 7, Part B, § I.A, all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves shall be maintained and operated to prevent detectable vapor loss except when opened, actuated, or used for necessary and proper activities (e.g. maintenance). Such opening, actuation, or use shall be limited so as to minimize vapor loss.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director    4 |

App. 1818

7. Pursuant to Permit 96OPAD120, Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49, Suncor is required to limit carbon monoxide ("CO") emissions from the Plant 1 fluid catalytic cracking unit ("FCCU") to 500 parts per million volumetric dry ("ppmvd") at 0% oxygen ("$O_2$") on a one-hour average.

8. Pursuant to Permit 96OPAD120, Section II, Condition 20.1, Suncor shall not exceed the sulfur dioxide ("$SO_2$") emission limit of 15.68 pounds per hour ("lb/hr") from the Tail Gas Unit ("TGU") Incinerator (H-25). Pursuant to Permit 96OPAD120, Section II, Conditions 20.6.1 and 45.12.1; the West Plant Consent Decree, Paragraphs 169 and 171; and NSPS J, § 60.104(a)(2)(i), Suncor shall not discharge or cause the discharge of any gases into the atmosphere from any Claus sulfur recovery plant containing in excess of, for an oxidation control system or a reduction control system followed by incineration, 250 ppmvd of $SO_2$ at 0% excess air, on a 12-hour rolling average. Pursuant to Permit 96OPAD120, Section II, Conditions 20.10 and 54.28, and NESHAP UUU, § 63.1568(a)(1), the sulfur recovery units ("SRUs") at the Refinery, Plant 1, are subject to NSPS J, § 60.104(a)(2)(i), and the hazardous air pollutant emission limit for the SRUs is 250 ppmvd of $SO_2$ at 0% excess air, on a 12-hour rolling average.

9. Pursuant to Permit 96OPAD120, Section II, Conditions 22.7.1, 35.1, and 35.2, and Permit 96OPAD120, Section IV, Condition 16, Suncor shall comply with the opacity limits in AQCC Regulation 1. Pursuant to AQCC Regulation 1, § II.A.1, Suncor shall not allow or cause the emission into the atmosphere of any air pollutant that is in excess of 20% opacity based on 24 consecutive opacity readings taken at 15-second intervals for six minutes. Pursuant to AQCC Regulation 1, § II.A.4, Suncor shall not allow or cause to be emitted into the atmosphere any air pollutant resulting from the building of a new fire, cleaning of fire boxes, soot blowing, start-up, any process modification, or adjustment or occasional cleaning of control equipment, which is in excess of 30% opacity for a period or periods aggregating more than six minutes in any sixty consecutive minutes. Pursuant to Permit 96OPAD120, Section II, Conditions 22.7.2, 22.7.3, 45.1.2, and 54.1.2; the West Plant Consent Decree, Paragraph 54; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1), Suncor shall not discharge or cause the discharge into the atmosphere from any FCCU catalyst regenerator any gases exhibiting greater than 30% opacity, except for one six-minute average opacity reading in any one-hour period.

10. Pursuant to Permit 96OPAD120, Section II, Condition 52.13, and NESHAP R, § 63.427(b), Suncor shall operate the Rail Loading Rack (R101) vapor combustion unit ("VCU") in a manner not to go below 1,299 degrees Fahrenheit on a 6-hour rolling average. Operation of the VCU in a manner going below the operating parameter value (1,299°F, 6-hour rolling



average) shall constitute a violation of the emission standard in NESHAP R, §
63.422(b). Pursuant to Permit 96OPAD120, Section II, Condition 52.4, and
NESHAP R, § 63.422(b), emissions to the atmosphere from the vapor
collection and processing systems due to the loading of gasoline cargo tanks
shall not exceed 10 milligrams of total organic compounds per liter of
gasoline loaded.

11. Pursuant to Permit 96OPAD120, Section II, Condition 13.8, and the West
Plant Consent Decree, Paragraph 73(a), Suncor shall limit the CO emissions
from Process Boilers B-6 and B-8 to 0.060 lb/MMBtu on a 24-hour rolling
average basis.

12. Pursuant to Permit 96OPAD120, Section II, Condition 20.7, and the West
Plant Consent Decree, Paragraph 173, all sulfur pit emissions to the
atmosphere shall be either eliminated or included and monitored as part of
the sulfur recovery plant's emissions. Vents from the No.1 SRU sulfur pit and
No. 2 SRU sulfur pit are vented to the TGU Incinerator (H-25) and emissions
are monitored via the $SO_2$ continuous emissions monitoring system.

13. Pursuant to Permit 96OPAD120, Section II, Condition 22.9.3, and the West
Plant Consent Decree, Paragraph 47(b), Suncor shall install, certify,
calibrate, maintain, and operate the Plant 1 FCCU continuous opacity
monitoring system ("COMS") in accordance with the requirements of
Condition 59 of this permit. Pursuant to Permit 96OPAD120, Section II,
Condition 59.1, and the West Plant Consent Decree, Paragraph 202, Suncor
shall install, certify, calibrate, maintain, and operate all COMS required by
the West Plant Consent Decree in accordance with the requirements of 40
C.F.R. Part 60, §§ 60.11 and 60.13, and Part 60, Appendices A and B.
Pursuant to NSPS A, § 60.13(a), and 40 C.F.R. Part 60, Appendix F,
Procedure 3, Suncor is required to complete quarterly performance audits
of the Plant 1 FCCU COMS. Pursuant to NESHAP A, § 63.8(d)(2), the owner or
operator of an affected source that is required to use a continuous
monitoring system ("CMS") and is subject to the monitoring requirements of
this section and a relevant standard shall develop and implement a CMS
quality control program. Pursuant to Permit 96OPAD120, Section II,
Conditions 22.12 and 54.51, and NESHAP UUU, § 63.1574(f), Suncor must
prepare and implement an operation, maintenance, and monitoring plan for
each control system and CMS for each affected source, and the plan must
include a quality control plan for each COMS. The quality control
program/plan required by NESHAP A and NESHAP UUU must include
procedures for accuracy audits.

14. Pursuant to Permit 96OPAD120, Section II, Conditions 24.5, 34.2, 34.7, 43.8,
47.1, 53.44, 55, and 64, Suncor is required to comply with the applicable
equipment leak standards, including the Leak Detection and Repair



("LDAR") monitoring requirements, contained in NSPS VV, §§ 60.482-1 to 60.482-10; NSPS VVa, §§ 60.482-1a to 60.482-10a; NSPS GGGa, § 60.592a(a); NESHAP CC, § 63.648(a); and AQCC Regulation 7, Part B, § VI.C. Pursuant to Permit 96OPAD120, Section II, Conditions 43.8.2 and 55.40; NSPS VVa, § 60.482-6a(a); and AQCC Regulation 7, Part B, § VI.C.2.b, except for safety pressure relief valves, no owner or operator of a petroleum refinery shall install or operate a valve at the end of a pipe or line containing volatile organic compounds ("VOCs") unless the pipe or line is sealed with a second valve, a blind flange, a plug, or a cap.

15. Pursuant to Permit 96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d), at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions. Determination of whether acceptable operating and maintenance procedures are being used will be based on information available to the Administrator which may include, but is not limited to, monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source.

16. Pursuant to NESHAP A, § 63.6(e)(1)(i), at all times, including periods of startup, shutdown, and malfunction, the owner or operator must operate and maintain any affected source, including associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions. During a period of startup, shutdown, or malfunction, this general duty to minimize emissions requires that the owner or operator reduce emissions from the affected source to the greatest extent which is consistent with safety and good air pollution control practices. The general duty to minimize emissions during a period of startup, shutdown, or malfunction does not require the owner or operator to achieve emission levels that would be required by the applicable standard at other times if this is not consistent with safety and good air pollution control practices, nor does it require the owner or operator to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. Determination of whether such operation and maintenance procedures are being used will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operation and maintenance procedures (including the startup, shutdown, and malfunction plan required in paragraph (e)(3) of this section), review of operation and maintenance records, and inspection of the source.

17. Pursuant to Permit 96OPAD120, Section II, Condition 53.12, and NESHAP CC, § 63.642(n), at all times, the owner or operator must operate and maintain

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director         7 |



App. 1821

any affected source, including associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions. The general duty to minimize emissions does not require the owner operator to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. Determination of whether a source is operating in compliance with operation and maintenance requirements will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operation and maintenance procedures, review of operation and maintenance records, and inspection of the source.

18. Pursuant to Permit 96OPAD120, Section II, Condition 54.35, and NESHAP UUU, § 63.1570(c), at all times, you must operate and maintain any affected source, including associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions. The general duty to minimize emissions does not require you to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. Determination of whether a source is operating in compliance with operation and maintenance requirements will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operation and maintenance procedures, review of operation and maintenance records, and inspection of the source.

19. Pursuant to the West Plant Consent Decree, Paragraph 220(a), Suncor shall only use the credits from the reductions made pursuant to the West Plant Consent Decree for projects necessary to meet the requirements of Tier 2 Gasoline, provided that new or modified heaters and boilers being permitted have emission limits at the time of permitting of 0.040 lbs $NO_x$ per million BTU or less on a 3-hour rolling average basis.

20. Pursuant to AQCC Regulation 3, Part A, § II.A.1, except as exempted in Section II.D., no person shall allow emission of air pollutants from, or construction, modification or alteration of, any facility, process, or activity which constitutes a stationary source, except residential structures, from which air pollutants are, or are to be, emitted unless and until an Air Pollutant Emission Notice ("APEN") and the associated APEN fee has been filed with the Division with respect to such emission.

21. Pursuant to AQCC Regulation 3, Part B, § II.A.1, except where specifically authorized by the terms of this Regulation Number 3, no person shall construct, modify, or operate any stationary source or commence the conduct of any such activity without first obtaining or having a valid construction permit from the Division.



App. 1822

## Refinery: Plant 2

22. Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 40.66, and NESHAP CC, § 63.655(g), the owner or operator of a source subject to this subpart shall submit Periodic Reports no later than 60 days after the end of each 6-month period when any of the information specified in paragraphs (g)(1) through (7) of this section or paragraphs (g)(9) through (14) of this section is collected. Pursuant to NSPS GGGa, § 60.592a(e), each owner or operator subject to the provisions of this subpart shall comply with the provisions of §§ 60.486a and 60.487a. Pursuant to NSPS VVa, § 60.487a(a), each owner or operator subject to the provisions of this subpart shall submit semiannual reports to the Administrator beginning 6 months after the initial startup date.

23. Pursuant to Permit 95OPAD108, Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, 8.4, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, §§ 60.102a(g)(1)(ii) and 60.103a(h), Suncor shall not burn in any fuel gas combustion device or any affected flare any fuel gas that contains $H_2S$ in excess of 162 ppmv determined hourly on a 3-hour rolling average basis.

24. Pursuant to NESHAP CC, § 63.670(b), Suncor shall operate the Plant 2 Flare with a pilot flame present at all times when regulated material is routed to the flare. Each 15-minute block during which there is at least one minute where no pilot flame is present when regulated material is routed to the flare is a deviation of the standard. Deviations in different 15-minute blocks from the same event are considered separate deviations.

25. Pursuant to NESHAP CC, § 63.670(c), Suncor shall operate the Plant 2 Flare with no visible emissions, except for periods not to exceed a total of five minutes during any two consecutive hours, when regulated material is routed to the flare and the flare vent gas flow rate is less than the smokeless design capacity of the flare.

26. Pursuant to NESHAP CC, § 63.670(e), Suncor shall operate the Plant 2 Flare to maintain the NHVcz at or above 270 Btu/scf determined on a 15-minute block period basis when regulated material is routed to the flare for at least 15-minutes.

27. Pursuant to Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1, Suncor shall not allow or cause the emission into the atmosphere of any air pollutant that is in excess of 20% opacity based on 24 consecutive opacity readings taken at 15-second intervals for six minutes. Pursuant to Permit 95OPAD108, Section II, Conditions 2.7 and 33.4; Permit 09AD0961, Condition 27(b); the East



Plant Consent Decree, Paragraph 98; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1), Suncor shall not discharge or cause the discharge into the atmosphere from any FCCU catalyst regenerator any gases exhibiting greater than 30% opacity, except for one six-minute average opacity reading in any one-hour period. Pursuant to Permit 95OPAD108, Section II, Conditions 2.7 and 33.5, and NESHAP UUU, § 63.1564(a)(2), Suncor shall maintain the 3-hour rolling average opacity of emissions from the FCCU catalyst regenerator vent to no higher than 20%.

28. Pursuant to Permit 95OPAD108, Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1), Suncor shall not discharge or cause the discharge into the atmosphere from the Plant 2 FCCU any gases that contain CO in excess of 500 ppmvd corrected to 0% excess air, on an hourly average basis.

29. Pursuant to Permit 95OPAD108, Section II, Conditions 15.2 and 23.1, and AQCC Regulation 7, Part B, § I.A, all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves shall be maintained and operated to prevent detectable vapor loss except when opened, actuated, or used for necessary and proper activities (e.g. maintenance). Such opening, actuation, or use shall be limited so as to minimize vapor loss.

30. Pursuant to Permit 95OPAD108, Section II, Condition 19.5.5, for P014 – FCCU Catalyst Loading, F029 – Polymerization Unit Catalyst Unloading, and F009 – Polymerization Unit Catalyst Loading, semi-annual EPA Reference Method 9 opacity readings shall be conducted while the loading/unloading activity is taking place, and recorded by a certified reader. A minimum interval of at least four months shall occur between semiannual observations.

31. Pursuant to Permit 95OPAD108, Section II, Condition 18.2, equipment leak emissions associated with these sources (*i.e.*, fugitive VOC equipment leak emissions with permitted limits) are subject to the requirements of AQCC Regulation 7, Part B, § VI.C, NSPS GGG, and NESHAP CC, as set forth in Conditions 27.8, 30, and 32 of this permit. Pursuant to Permit 95OPAD108, Section II, Condition 27.8.1, and AQCC Regulation 7, Part B, § VI.C.2.a.(ii), Suncor is required to conduct a monitoring program consistent with the provisions in AQCC Regulation 7, Part B, § VI.C.4.a. Pursuant to Permit 95OPAD108, Section II, Conditions 30.1 and 32.16; NSPS GGG, § 60.592(a); and NESHAP CC, § 63.648(a), Suncor is required to comply with the equipment leak standards and LDAR monitoring requirements of NSPS VV, §§ 60.482-1 to 60.482-10. Pursuant to NSPS GGGa, § 60.592a(a), each owner or operator subject to the provisions of this subpart shall comply with the requirements of NSPS VVa, §§ 60.482–1a to 60.482–10a. Pursuant to Permit

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director       10 |

App. 1824

95OPAD108, Section II, Condition 27.8.2; AQCC Regulation 7, Part B, § VI.C.2.b; NSPS VV, § 60.482-6(a); NSPS VVa, § 60.482-6a(a), except for safety pressure relief valves, no owner or operator of a petroleum refinery shall install or operate a valve at the end of a pipe or line containing VOCs unless the pipe or line is sealed with a second valve, a blind flange, a plug, or a cap.

32. Pursuant to NESHAP UUU, § 63.1568(a)(2), and Table 30, Item 4, Suncor shall maintain the daily average combustion zone temperature of the thermal incinerator for the No. 3 SRU at or above 1,416°F.

33. Pursuant to Permit 95OPAD108, Section II, Condition 36.5, and NSPS A, § 60.11(d), at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions. Determination of whether acceptable operating and maintenance procedures are being used will be based on information available to the Administrator which may include, but is not limited to, monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source.

34. Pursuant to NESHAP CC, § 63.642(n), at all times, the owner or operator must operate and maintain any affected source, including associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions. The general duty to minimize emissions does not require the owner operator to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. Determination of whether a source is operating in compliance with operation and maintenance requirements will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operation and maintenance procedures, review of operation and maintenance records, and inspection of the source.

35. Pursuant to Permit 95OPAD108, Section II, Condition 33.81, and NESHAP UUU, § 63.1570(c), at all times, you must operate and maintain any affected source, including associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions. The general duty to minimize emissions does not require you to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. Determination of whether a source is operating in compliance with operation and maintenance requirements will be based on information available to the Administrator which may include, but is not limited to,

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director          11 |

App. 1825

monitoring results, review of operation and maintenance procedures, review of operation and maintenance records, and inspection of the source.

36. Pursuant to AQCC Regulation 3, Part A, § II.A.1, except as exempted in Section II.D., no person shall allow emission of air pollutants from, or construction, modification or alteration of, any facility, process, or activity which constitutes a stationary source, except residential structures, from which air pollutants are, or are to be, emitted unless and until an APEN and the associated APEN fee has been filed with the Division with respect to such emission.

37. Pursuant to AQCC Regulation 3, Part B, § II.A.1, except where specifically authorized by the terms of this Regulation Number 3, no person shall construct, modify, or operate any stationary source or commence the conduct of any such activity without first obtaining or having a valid construction permit from the Division.

---

## II.    ALLEGED VIOLATIONS AND FACTS

### Refinery: Plant 1 and Plant 3

1. On July 11-13, 2022, Jason Long, of the Division, inspected the Refinery. Based on the Division's inspection, and a review of records related to the Refinery, the Division has identified the following compliance issues at the Refinery, Plant 1 and Plant 3:

   a. Suncor failed to submit the semiannual NSPS GGGa and NESHAP CC reports due August 1, 2022 and September 1, 2022, respectively, until September 27, 2022, violating Permit 96OPAD120, Section II, Conditions 47.5, 53.66, and 55.96; NSPS GGGa, § 60.592a(e); NSPS VVa, § 60.487a(a); and NESHAP CC, § 63.655(g).

   b. Suncor failed to report the deviation described in this Compliance Advisory, Section II, Paragraph 1.i, below, in the semiannual Monitoring and Permit Deviation Report due March 1, 2022, violating Permit 96OPAD120, Section IV, Condition 22.d.

   c. Suncor reported that, in April 2021, a planned, plant-wide shutdown, or turnaround, involving Plants 1 and 3 occurred to perform necessary maintenance activities. Following the turnaround, all of the process units were started up in a systematic manner from mid-June into July 2021. This event resulted in the following exceedances and noncompliance with operating standards:

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director        12 |



App. 1826

    i. <u>**H-25**</u>
**$SO_2$ (15.68 lb/hr)**
Start Date and Time:  07/01/2021 20:00 hrs
<u>End Date and Time:   07/01/2021 23:00 hrs</u>

**$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour average)**
Start Date and Time:  07/01/2021 20:00 hrs
<u>End Date and Time:   07/02/2021 10:00 hrs</u>

Suncor exceeded the $SO_2$ limits (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);

    ii. **<u>Plant 1 FCCU</u>**
**Opacity (State - 20%, 6-minute average)**
Start Date and Time:  07/01/2021 07:24 hrs
<u>End Date and Time:   07/01/2021 07:30 hrs</u>
Start Date and Time:  07/01/2021 09:18 hrs
<u>End Date and Time:   07/01/2021 09:30 hrs</u>
Start Date and Time:  07/01/2021 10:06 hrs
<u>End Date and Time:   07/01/2021 10:12 hrs</u>
Start Date and Time:  07/02/2021 03:54 hrs
<u>End Date and Time:   07/02/2021 04:00 hrs</u>
Start Date and Time:  07/02/2021 07:00 hrs
<u>End Date and Time:   07/02/2021 07:06 hrs</u>
Start Date and Time:  07/02/2021 12:48 hrs
<u>End Date and Time:   07/02/2021 12:54 hrs</u>
Start Date and Time:  07/03/2021 12:00 hrs
<u>End Date and Time:   07/03/2021 12:06 hrs</u>

Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120, Section IV, Condition 16; and AQCC Regulation 1, § II.A.1; and

    iii. After the turnaround and startup, Suncor operators observed product on top of the floating roof of Tank 80. Suncor determined that, during the startup process, light product from the FCCU was lined up to the incorrect tank and the lighter product likely blew through the tank seals onto the roof of Tank 80. Suncor failed to maintain and operate all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves on Tank 80 to



prevent detectable vapor loss, violating Permit 96OPAD120, Section II, Conditions 1.3 and 39.1, and AQCC Regulation 7, Part B, § I.A.

d. Suncor reported that, on the morning of July 8, 2021, operators identified a hole on a manway coming off the No. 2 SRU thermal reactor (H-2000). The control room was immediately called to trip the unit and get the No. 2 SRU to a safe state. When the No. 2 SRU tripped, it was no longer able to accept acid gas from the various amine regeneration systems throughout Plant 1, and those vessels were required to be routed to the Plant 1 flare header. The elevated flow to the flare gas recovery system initially caused breakthrough of sour material through the seal drum. At approximately 07:00 hours, the first stage of the flare gas recovery system could no longer handle all of the flow. Therefore, it was required to be taken partially offline to prevent tripping the entire system offline. This resulted in high $H_2S$ in the flare gas and high $H_2S$ in the Plant 1 fuel gas system. The TGU Incinerator (H-25) also exceeded the $SO_2$ limits during this event. This event resulted in the following exceedances and noncompliance with operating standards:

   i. **Main Plant Flare**
      **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
      Start Date and Time: 07/08/2021 07:00 hrs
      End Date and Time: 07/08/2021 18:00 hrs

      Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h);

   ii. **Plant 1 Fuel Gas System**
       **$H_2S$ in Fuel Gas (162 ppmv, 3-hour average)**
       Start Date and Time: 07/08/2021 06:00 hrs
       End Date and Time: 07/08/2021 16:00 hrs

       Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 1 Fuel Gas System, violating Permit 96OPAD120, Section II, Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2, 21.3, 27.3, 28.3, 30.2, 30.10, 38.2.1, and 46.1.1; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii);

   iii. **H-25**
        **$SO_2$ (15.68 lb/hr)**
        Start Date and Time: 07/08/2021 04:00 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director    14 |



App. 1828

<u>End Date and Time:  07/08/2021 05:00 hrs</u>
Start Date and Time: 07/08/2021 09:00 hrs
<u>End Date and Time:  07/08/2021 10:00 hrs</u>

**SO$_2$ (250 ppmvd at 0% O$_2$, 12-hour average)**
Start Date and Time: 07/08/2021 04:00 hrs
<u>End Date and Time:  07/09/2021 12:00 hrs</u>
Start Date and Time: 07/09/2021 13:00 hrs
<u>End Date and Time:  07/10/2021 02:00 hrs</u>

Suncor exceeded the SO$_2$ limits (15.68 lb/hr and 250 ppmvd at 0% O$_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);

iv.  Suncor failed to maintain and operate the Main Plant Flare, Plant 1 Fuel Gas System, and No. 2 SRU in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d); and

v.  Suncor failed to maintain and operate the No. 2 SRU in a manner consistent with good air pollution control practices for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 54.35, and NESHAP UUU, § 63.1570(c).

e.  Suncor reported that, on July 12, 2021, at approximately 11:30 hours, compressor C-16 (air blower) in the Plant 1 FCCU tripped offline causing the Plant 1 FCCU to trip offline. C-16 tripped offline due to a loss of communication that lasted approximately 15 milliseconds. When C-16 tripped, the air flow immediately decreased, which caused the Plant 1 FCCU to trip. The programming logic for C-16 was configured such that a trip would occur immediately upon detection of signal loss in order to prevent the speed control from operating in an uncontrollable state and potentially damaging the equipment. To prevent a recurrence, a 30 second delay was added to the programming logic for C-16. This event resulted in the following exceedances and noncompliance with operating standards:

i.  <u>Main Plant Flare</u>
**Visible Emissions (exceeded 5 minutes during any 2 consecutive hours)**
Start Date and Time:  07/12/2021 15:25 hrs
<u>End Date and Time:    07/12/2021 15:52 hrs</u>

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director          15 |



App. 1829

Suncor failed to comply with the visible emissions standard at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.10 and 53.89, and NESHAP CC, § 63.670(c);

ii. **Main Plant Flare**
**NHVcz (=/>270 Btu/scf, 15-minute average)**
Start Date and Time: 07/14/2021 10:15 hrs
End Date and Time: 07/14/2021 10:30 hrs

Suncor failed to comply with the NHVcz standard (=/>270 Btu/scf, 15-minute average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.10 and 53.91, and NESHAP CC, § 63.670(e);

iii. **Plant 1 FCCU**
**CO (500 ppmvd at 0% $O_2$, 1-hour average)**
Start Date and Time: 07/12/2021 12:00 hrs
End Date and Time: 07/13/2021 12:00 hrs

Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49;

iv. **Plant 1 FCCU**
**Opacity (State - 20%, 6-minute average)**
Start Date and Time: 07/12/2021 11:30 hrs
End Date and Time: 07/12/2021 11:48 hrs
Start Date and Time: 07/12/2021 15:24 hrs
End Date and Time: 07/12/2021 15:30 hrs
Start Date and Time: 07/13/2021 10:00 hrs
End Date and Time: 07/13/2021 10:30 hrs

Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120, Section IV, Condition 16; and AQCC Regulation 1, § II.A.1;

v. **Plant 1 FCCU**
**Opacity (Federal – 30%, 6-minute average)**
Start Date and Time: 07/12/2021 11:30 hrs
End Date and Time: 07/12/2021 11:48 hrs

Suncor exceeded the opacity limit (Federal – 30%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120,



App. 1830

Section II, Conditions 22.7.2, 22.7.3, 45.1.2, and 54.1.2; the West Plant Consent Decree, Paragraph 54; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1);

    vi.  **<u>H-25</u>**
**$SO_2$ (15.68 lb/hr)**
Start Date and Time: 07/15/2021 22:00 hrs
<u>End Date and Time:  07/16/2021 10:00 hrs</u>
Start Date and Time: 07/16/2021 13:00 hrs
<u>End Date and Time:  07/16/2021 15:00 hrs</u>
Start Date and Time: 07/16/2021 23:00 hrs
<u>End Date and Time:  07/17/2021 05:00 hrs</u>

**$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour average)**
Start Date and Time: 07/14/2021 12:00 hrs
<u>End Date and Time:  07/15/2021 02:00 hrs</u>
Start Date and Time: 07/15/2021 12:00 hrs
<u>End Date and Time:  07/17/2021 15:00 hrs</u>

Suncor exceeded the $SO_2$ limits (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);

    vii.  Suncor failed to maintain and operate the Plant 1 FCCU and Plant 1 SRUs in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Conditions 54.35 and 56.2; NSPS A, § 60.11(d); and NESHAP UUU, § 63.1570(c); and

    viii.  Suncor failed to maintain and operate the Main Plant Flare in a manner consistent with good air pollution control practices for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 53.12, and NESHAP CC, § 63.642(n).

  f.  Suncor reported that, on July 16, 2021, the 6-hour rolling average temperature of the Rail Loading Rack (R101) VCU dropped below the 1,299°F operating limit. The first-stage waste gas valve unexpectedly opened to the vapor combustor during a period when no loading operations were actively taking place. Suncor reported that, while the exact cause of the waste gas opening could not be confirmed, elevated ambient temperatures likely increased the knockout drum pressure to the level where the valve would lift to the combustor. The first-stage waste gas valve remained in the open position for approximately 154



App. 1831

minutes before reseating to the closed position. With the waste gas valve open and no product loading underway, the off-gas from the knockout drum and supplemental city gas did not provide sufficient Btu content for maintaining the 1,299°F operating temperature. The 6-hour rolling average temperature returned to greater than 1,299°F when loading operations took place on the next shift. This event resulted in the following exceedances and noncompliance with operating standards:

    i. From July 16, 2021 at 12:18 hours to July 17, 2021 at 00:14 hours, Suncor failed to operate the Rail Loading Rack (R101) VCU at or above 1,299°F on a 6-hour rolling average and failed to limit emissions to the atmosphere from the R101 VCU to 10 milligrams of total organic compounds per liter of gasoline loaded, violating Permit 96OPAD120, Section II, Conditions 52.4 and 52.13, and NESHAP R, §§ 63.422(b) and 63.427(b); and

    ii. Suncor failed to maintain and operate the Rail Loading Rack (R101) VCU in a manner consistent with good air pollution control practices for minimizing emissions, violating NESHAP A, § 63.6(e)(1)(i).

g. Suncor reported that, on July 20, 2021, the tail gas analyzer from the sulfur recovery units became plugged. The tail gas analyzer was showing normal readings of $H_2S$ while the TGU analyzers began showing elevated $H_2S$ concentrations going to the TGU Incinerator (H-25). Suncor reported operational adjustments were made to control the SRU thermal reactors based on the TGU analyzer readings. Instrument technicians cleared the plugged analyzer and returned it to normal operation. This event resulted in an exceedance of the 15.68 lb/hr $SO_2$ limit at H-25. On July 20, 2021, from 09:00-10:00 hours, Suncor exceeded the $SO_2$ limit (15.68 lb/hr) at H-25, violating Permit 96OPAD120, Section II, Condition 20.1.

h. Suncor reported that, on July 20, 2021, a routine fresh catalyst delivery was being offloaded from the delivery truck to the fresh catalyst vessel. During the delivery, the semi-annual Method 9 observation was performed, which confirmed opacity in excess of the 20%, 6-minute average limit. The D-311 catalyst filter located within the eductor system was opened and inspected, and a total of 6 filters were found to have holes in them. A number of additional filters were observed to be bent as well. The holes present did not allow the filters to operate optimally resulting in the elevated opacity during this event. All of the filters within D-311 were replaced in June 2020 and were well within their expected useful life. Suncor determined that a



App. 1832

pressure surge within the system may have caused the holes and bent filter tubes. The compromised filters were replaced. On August 11, 2021, a follow-up Method 9 conducted during a fresh catalyst delivery demonstrated compliance with opacity standards and confirmed the filters were performing as expected. On July 20, 2021, from 14:30-14:36 hours, Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120, Section IV, Condition 16; and AQCC Regulation 1, § II.A.1.

i.  On July 27, 2021, Pump P-1601 tripped offline and resulted in high $H_2S$ at the Main Plant Flare. Prior to July 27, 2021, the level controller on Drum D-337 had been erratic and Suncor was operating the level in manual mode. The level indicator for D-337 was showing the level to be gradually going down, but the readings being taken in the field showed a constant level. When the level in D-337 dropped below the set point, P-1601 tripped offline. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  On July 27, 2021, from 09:00-14:00 hrs, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h); and

    ii. Suncor failed to maintain and operate the Main Plant Flare in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d).

j.  Suncor reported that, on August 23, 2021, during the startup of the No. 4 HDS Unit, which had been shut down in order to make repairs, there was an increase in sour water production that caused a large and sudden increase in Sour Water Stripper gas feed into the No. 2 SRU. This increase, combined with swings in acid gas, overwhelmed the No. 2 SRU causing an exceedance of the 15.68 lb/hr $SO_2$ limit at the TGU Incinerator (H-25). On August 23, 2021, from 03:00-04:00 hours, Suncor exceeded the $SO_2$ limit (15.68 lb/hr) at H-25, violating Permit 96OPAD120, Section II, Condition 20.1.

k.  Suncor reported that, on August 23, 2021, at approximately 14:15 hours, when depressurizing a vessel during a planned operational change, Suncor operators observed an increase in purge gas burner pressure while gas was being transferred. The increase in pressure initiated a control valve to close and caused gases to be routed to the Main Plant Flare and the Flare Gas Recovery Unit ("FGRU"), which

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director       19 | 

App. 1833

caused the FGRU to trip resulting in higher $H_2S$ concentrations in the flare gas. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  On August 23, 2021, from 15:00-21:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h); and

    ii.  Suncor failed to maintain and operate the Main Plant Flare in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d).

l.  Suncor reported that, on September 25, 2021, the No. 4 HDS Makeup Hydrogen Compressor (C-1714) tripped offline. This trip resulted in a full shutdown of the No. 4 HDS Unit and caused $SO_2$ exceedances at the TGU Incinerator (H-25). Suncor determined that the compressor (C-1714) tripped offline due to high motor temperatures, as designed, to protect the compressor motor. The high temperatures were caused by plugged filters on the compressor motor. The filters had not been replaced as scheduled on May 11, 2021, because on the day they were to be replaced, workers did not have adequate scaffolding in place to complete this work. The schedule date for the filter replacements was then moved out, and they were not replaced prior to this event. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  <u>H-25</u>
       **$SO_2$ (15.68 lb/hr)**
       Start Date and Time: 09/25/2021 20:00 hrs
       <u>End Date and Time:  09/25/2021 21:00 hrs</u>

       **$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour average)**
       Start Date and Time: 09/25/2021 20:00 hrs
       <u>End Date and Time:  09/26/2021 08:00 hrs</u>

       Suncor exceeded the $SO_2$ limits (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1); and



ii.   Suncor failed to maintain and operate the Plant 1 SRUs in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Conditions 54.35 and 56.2; NSPS A, § 60.11(d); and NESHAP UUU, § 63.1570(c).

m.   Suncor reported that, while making operational changes in the Hydrogen Unit, operators observed a sudden increase in purge gas burner pressure, which initiated a control valve to close and resulted in gases being routed to the Main Plant Flare. This increase in pressure and the associated valve closing resulted in gases being routed to the FGRU overwhelming the FGRU causing it to trip resulting in high $H_2S$ concentrations in the flare gas. This event resulted in the following exceedances and noncompliance with operating standards:

i.   On October 8, 2021, from 15:00-21:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h); and

ii.   Suncor failed to maintain and operate the Main Plant Flare in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d).

n.   Suncor reported that, on October 26, 2021, at approximately 07:30 hours, a high-level alarm on D-396 in the Plant 1 FCCU activated and the level continued to increase rapidly. Operators immediately went out to the field to investigate and observed that pump P-563 discharge pressure had decreased below the normal running pressure. At the same time, other operators went to observe D-175 (D-396 overhead/C-17 suction drum) to see if they could observe the level in that drum. Once the level was observed in D-175, operators then tried to drain the drum to prevent compressor C-17 from shutting down. However, the level in D-396 continued to increase faster than the operators could drain it, which resulted in compressor C-17 tripping. Once C-17 tripped, the Plant 1 FCCU also tripped. Further investigation indicated that the impeller of P-563 was tight to the pump shaft and free of debris, therefore, ruling out a mechanical issue with the impeller. There were no electrical findings and both suction strainers were found to be installed and were not significantly plugged. The only probable theory is that the strainers contributed to the issues with pump performance resulting in the level in D-396 rapidly increasing. This

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          21 |



event resulted in the following exceedances and noncompliance with operating standards:

    i.  **Plant 1 FCCU**
**CO (500 ppmvd at 0% $O_2$, 1-hour average)**
Start Date and Time: 10/26/2021 07:00 hrs
End Date and Time: 10/27/2021 03:00 hrs

       Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49;

    ii.  **Plant 1 FCCU**
**Opacity (State - 20%, 6-minute average)**
Start Date and Time: 10/26/2021 07:12 hrs
End Date and Time: 10/26/2021 09:12 hrs

       Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120, Section IV, Condition 16; and AQCC Regulation 1, § II.A.1;

    iii.  **Plant 1 FCCU**
**Opacity (Federal – 30%, 6-minute average)**
Start Date and Time: 10/26/2021 07:24 hrs
End Date and Time: 10/26/2021 09:12 hrs

       Suncor exceeded the opacity limit (Federal – 30%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Conditions 22.7.2, 22.7.3, 45.1.2, and 54.1.2; the West Plant Consent Decree, Paragraph 54; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1); and

    iv.  Suncor failed to maintain and operate the Plant 1 FCCU in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Conditions 54.35 and 56.2; NSPS A, § 60.11(d); and NESHAP UUU, § 63.1570(c).

o.  Suncor reported that, on October 27, 2021 through November 5, 2021, Suncor operators were unable to control the CO emissions from Process Boiler B-6. Suncor determined the boiler control scheme was out of tune resulting in a lack of control. Until the boiler could be re-tuned, CO emission exceedances periodically occurred, as described below.

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director    22 |



App. 1836

Suncor exceeded the CO limit (0.060 lb/MMBtu, 24-hour rolling average) at Boiler B-6, violating Permit 96OPAD120, Section II, Condition 13.8, and the West Plant Consent Decree, Paragraph 73(a).

**Process Boiler B-6**
**CO (0.060 lb/MMBtu, 24-hour rolling average)**
Start Date and Time:  10/27/2021 18:00 hrs
End Date and Time:   10/27/2021 20:00 hrs
Start Date and Time:  10/31/2021 13:00 hrs
End Date and Time:   11/03/2021 01:00 hrs
Start Date and Time:  11/04/2021 11:00 hrs
End Date and Time:   11/05/2021 01:00 hrs

p.  Suncor reported that, on October 29, 2021, at approximately 04:00 hours, the No. 1 and No. 2 SRU experienced a sudden pressure increase. Suncor operators were unable to immediately control the pressure swing. The pressure spike resulted in an $SO_2$ exceedance at the TGU Incinerator (H-25). Suncor determined that a plug in the vapor line going to H-25 may have unexpectedly dislodged just prior to this event causing the pressure swing throughout the SRU. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  **H-25**
       **$SO_2$ (15.68 lb/hr)**
       Start Date and Time: 10/29/2021 04:00 hrs
       End Date and Time:  10/29/2021 07:00 hrs

       **$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour average)**
       Start Date and Time: 10/29/2021 04:00 hrs
       End Date and Time:  10/29/2021 18:00 hrs

       Suncor exceeded the $SO_2$ limits (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1); and

    ii.  Suncor failed to maintain and operate the Plant 1 SRUs in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Conditions 54.35 and 56.2; NSPS A, § 60.11(d); and NESHAP UUU, § 63.1570(c).

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          23 |



App. 1837

q. Suncor reported that, in late September 2021, it observed an increase in pressure inside the Plant 1 TGU absorber. Suncor conducted an investigation that included pressure surveys and x-rays on associated piping equipment. Suncor determined that a spool piece located immediately upstream of the TGU Incinerator (H-25) burner can had become plugged. A shutdown of H-25 was necessary to make the required repairs. The shutdown resulted in various emission exceedances and periods where the Sulfur Pit (T-2005) vent was opened to the atmosphere. Suncor had developed a plan to allow for the repairs to occur without having to shut down the SRUs and TGU. However, while implementing this plan, Suncor determined that one of the valves necessary to follow the proposed plan would not fully close. After making several attempts to work around this issue, Suncor determined it was necessary to move the SRUs into hot-standby in order to make the necessary repairs. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  <u>H-25</u>
      **$SO_2$ (15.68 lb/hr)**
      Start Date and Time: 12/07/2021 14:00 hrs
      <u>End Date and Time:  12/07/2021 22:00 hrs</u>
      Start Date and Time: 12/07/2021 23:00 hrs
      <u>End Date and Time:  12/08/2021 07:00 hrs</u>
      Start Date and Time: 12/09/2021 10:00 hrs
      <u>End Date and Time:  12/09/2021 11:00 hrs</u>
      Start Date and Time: 12/09/2021 21:00 hrs
      <u>End Date and Time:  12/09/2021 22:00 hrs</u>

      **$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour average)**
      Start Date and Time: 12/07/2021 15:00 hrs
      <u>End Date and Time:  12/09/2021 22:00 hrs</u>

      Suncor exceeded the $SO_2$ limits (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1); and

    ii.  <u>Sulfur Pit (T-2005)</u>
      **Vents to atmosphere must remain closed and vapors controlled at all times**
      Start Date and Time (vents opened): 12/08/2021 13:44 hrs
      <u>End Date and Time (vents closed):  12/09/2021 09:41 hrs</u>

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director            24 |



App. 1838

Suncor failed to address sulfur pit emissions as required, violating Permit 96OPAD120, Section II, Condition 20.7, and the West Plant Consent Decree, Paragraph 173.

r. Suncor reported that, on December 16, 2021, a faulty fuel gas regulator caused instability of a burner inside of Process Boiler B-8. At the time of the fuel gas regulator failure, Process Boiler B-6, which provides steam to the same equipment that B-8 provides steam to, was out of service for maintenance. B-6 being unavailable required B-8 to fire harder during the cold weather the area was experiencing, and in combination with the faulty regulator, B-8 subsequently exceeded the CO emission limit. On December 16, 2021, from 06:00-15:00 hours, Suncor exceeded the CO limit (0.060 lb/MMBtu, 24-hour rolling average) at Process Boiler B-8, violating Permit 96OPAD120, Section II, Condition 13.8, and the West Plant Consent Decree, Paragraph 73(a).

s. Suncor reported that, on December 17, 2021, it observed that the indication on an instrument transmitter in the Hydrogen Unit was beginning to drift causing the system to alarm. Suncor instrument technicians were immediately called in to troubleshoot the issue. When the technicians began to troubleshoot the transmitter, the transmitter failed resulting in the Plant 1 Hydrogen Unit tripping offline. Because of this trip, and before operators could restart the Hydrogen Unit, the No. 3 HDS Unit also had to be shut down. The Hydrogen Unit trip and associated shutdowns led to an increase in the $H_2S$ in the Main Plant Flare gas and visible emissions at the Main Plant Flare. On December 17, 2021, from 09:30-10:15 hours, Suncor failed to comply with the visible emissions standard (exceeded 5 minutes during any 2 consecutive hours) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.10 and 53.89, and NESHAP CC, § 63.670(c).

t. Suncor reported that it was unable to complete the quarterly audit of the Plant 1 FCCU COMS during the fourth quarter of 2021. Suncor attempted to perform the audit in October 2021 but was unable to complete it because a steam leak near the stack location hindered visibility. The steam leak would have likely impacted the instruments being used to perform the audit as well. Suncor entered a work request to repair the steam leak, but repairs were not completed until April 6, 2022. Suncor performed the audit on April 7, 2022. Suncor failed to complete the quarterly audit of the Plant 1 FCCU COMS during the fourth quarter of 2021 and failed to comply with the quality control program/plan for the COMS, violating Permit 96OPAD120, Section II, Conditions 22.9.3, 22.12, 54.51, and 59.1; the West Plant Consent Decree, Paragraphs 47(b) and 202; NSPS A, § 60.13(a); 40 C.F.R. Part



App. 1839

60, Appendix F, Procedure 3; NESHAP A, § 63.8(d)(2); and NESHAP UUU, § 63.1574(f). The failure to complete the audit during the first quarter of 2022 is addressed in this Compliance Advisory, Section II, Paragraph 1.z, below.

u. Between July 2021 and December 2021, Suncor identified 3 valves and 21 connectors at the West Rack Loading Terminal, and 1 valve and 1 connector at the No. 2 HDS, that were subject to LDAR monitoring requirements but had not previously been included in the LDAR inspection program. These components were added to the LDAR database for continual monitoring. Suncor failed to conduct LDAR monitoring on 26 components, violating Permit 96OPAD120, Section II, Conditions 24.5, 34.2, 34.7, 43.8, 47.1, 53.44, 55, and 64; NSPS VV, §§ 60.482-1 to 60.482-10; NSPS VVa, §§ 60.482-1a to 60.482-10a; NSPS GGGa, § 60.592a(a); NESHAP CC, § 63.648(a); and AQCC Regulation 7, Part B, § VI.C.

v. Suncor reported that, on January 31, 2022, a faulty fuel gas regulator caused instability of a burner inside of Process Boiler B-8. At the time of the fuel gas regulator failure, Process Boiler B-6, which provides steam to the same equipment that B-8 provides steam to, was out of service for maintenance. B-6 being unavailable required B-8 to fire harder during the cold weather the area was experiencing, and in combination with the faulty regulator, B-8 subsequently exceeded the CO emission limit. On January 31, 2022 at 12:00 hours to February 1, 2022 at 00:00 hours, Suncor exceeded the CO limit (0.060 lb/MMBtu, 24-hour rolling average) at Process Boiler B-8, violating Permit 96OPAD120, Section II, Condition 13.8, and the West Plant Consent Decree, Paragraph 73(a).

w. Suncor reported that, beginning on February 6, 2022, the sulfur storage tank (Tk-2005) sweep air flow instrumentation (75FI411A) low flow alarm began activating, indicating low or loss of sweep air in Tk-2005. Similar incidents occurred again with the same instrumentation along with the other sweep air flow instruments on Tk-2005 alarming on low air flow. Loss of sweep air can result in hazardous conditions through the buildup of $H_2S$ vapors in the tank. Suncor determined that steam eductor EJ-202B was failing due to a possible hole in the steam line. The eductor was blocked-in out in the field and closed on the distributive control system. However, the low air flow issue persisted indicating a potential blockage in the air system. To prevent a more significant issue, Suncor opened the vent from the tank to atmosphere instead of to the TGU Incinerator (H-25). Suncor determined that due to a broken sight glass and a malfunctioning controller, condensate was entering into the steam system. This created water hammer erosion in



App. 1840

the steam jacketing into the process side of the piping. Due to the wet nature of the steam, there was also likely sulfuric acid creation that led to additional corrosion. Lastly, the steam jacketing was also found to be water-logged due to leaks and the wet nature of the steam. This created the inability for the system to be adequately heated and a lack of steam jacketing, which resulted in a sulfur plug in the line causing the sweep air to be backed out. On the dates, and for the durations, identified below, Suncor failed to address sulfur pit emissions as required, violating Permit 96OPAD120, Section II, Condition 20.7, and the West Plant Consent Decree, Paragraph 173.

**Sulfur Pit (T-2005)**
**Vents to atmosphere must remain closed and vapors controlled at all times**
Start Date and Time (vents opened): 02/14/2022 10:38 hrs
End Date and Time (vents closed):  02/15/2022 21:44 hrs
Start Date and Time (vents opened): 02/15/2022 21:47 hrs
End Date and Time (vents closed):  02/18/2022 15:44 hrs

x.  Suncor reported that, on the morning of February 24, 2022, an alarm for high seal gas flow sounded in the Plant 1 control room indicating a potential leak at the main compressor, C-1715, for the No. 4 HDS Unit. This alarm caused C-1715 to trip offline and, subsequently, caused the No. 4 HDS Unit to trip offline to prevent a more hazardous condition near the compressor and damage to the unit. The trip of the No. 4 HDS Unit resulted in stability issues in various units upstream and downstream, which caused the FGRU and the No. 1 SRU to trip. These unit trips caused the gases normally processed in the units to be sent to the Main Plant Flare for safe combustion. With the No. 4 HDS Unit offline, several other processing units in the refinery were destabilized causing permit exceedances at the TGU Incinerator (H-25) and the Main Plant Flare. Suncor determined that compressor C-1715 tripped offline due to a primary mechanical seal face failure and a high flow alarm on the seal gas flow to the flare. Further, the C-1715 conditioning system had not been cleaned out for an extended period of time resulting in significant fouling that ultimately led to the primary seal failure. In 2015, the programming logic that was in place to trip C-1715 due to high seal gas flow was modified to remove the trip from occurring during high flow. However, Suncor discovered that there was additional parallel programing code in place that was not changed, which resulted in the compressor tripping due to high flow on February 24, 2022. This event resulted in the following exceedances and noncompliance with operating standards:



App. 1841

   i. **Main Plant Flare**
**H$_2$S in Flare Gas (162 ppmv, 3-hour average)**
Start Date and Time: 02/24/2022 07:00 hrs
<u>End Date and Time: 02/24/2022 11:00 hrs</u>

Suncor exceeded the H$_2$S limit (162 ppmv, 3-hour average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104a(1); and NSPS Ja, § 60.103a(h);

   ii. **H-25**
**SO$_2$ (15.68 lb/hr)**
Start Date and Time: 02/24/2022 07:00 hrs
<u>End Date and Time: 02/24/2022 08:00 hrs</u>
Start Date and Time: 02/24/2022 12:00 hrs
<u>End Date and Time: 02/24/2022 13:00 hrs</u>
Start Date and Time: 02/24/2022 16:00 hrs
<u>End Date and Time: 02/25/2022 00:00 hrs</u>
Start Date and Time: 02/25/2022 02:00 hrs
<u>End Date and Time: 02/25/2022 10:00 hrs</u>

**SO$_2$ (250 ppmvd at 0% O$_2$, 12-hour average)**
Start Date and Time: 02/24/2022 11:00 hrs
<u>End Date and Time: 02/26/2022 15:00 hrs</u>

Suncor exceeded the SO$_2$ limits (15.68 lb/hr and 250 ppmvd at 0% O$_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);

   iii. Suncor failed to maintain and operate the Main Plant Flare and No. 1 SRU in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d); and

   iv. Suncor failed to maintain and operate the No. 1 SRU in a manner consistent with good air pollution control practices for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 54.35, and NESHAP UUU, § 63.1570(c).

y. Suncor reported that, on March 17, 2022, at approximately 11:40 hours, an arc flash occurred at the refinery from an onsite Power Distribution Center (Power Distribution Center 41, or PDC 41) in Plant 2. Personnel in the area noted what appeared to be flames and smoke

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director                    28 |



App. 1842

and activated the Refinery Plant Alarm system in the area. Several operating units in Plant 1 and Plant 2 shut down due to the arc flash and resulting power loss. During the shutdown of the operating units, gases that are normally processed in the units were sent to the Main Plant Flare for safe combustion. PDC 41 feeds the Plant 1 boilers, air compressors, and pumps. This unplanned power outage resulted in shutting down the Plant 1 boilers, the No. 1 Crude Unit, and the No. 1 and No. 2 SRUs. As a result of the power loss to PDC 41, electrical substation 100 also tripped impacting other areas in Plant 1. Suncor's investigation determined that the initiating event was a fault in the wiring for two small electrical potential transformers in PDC 41. These transformers step down the voltage from 13.6 kV to 120 V, so electricians can check the phasing. Suncor also determined that the shielded jumper cables on the potential transformers were improperly installed during the 2016 turnaround. The conductors were touching or nearly touching fuse holders for different phases and the enclosure. Additionally, the shielding on the cables was not grounded. The improper installation and unintentional ground fault caused the arc flash in PDC 41. Further, Suncor determined that an incorrect setting was entered into the transformer protection relays during a project executed in 2021 to upgrade controls on the 115 kV feed coming from the main transformer that supplies power to both Plant 1 and Plant 2. The incorrect setting caused the protection settings to activate at the 115 kV feed source, prior to the activation of the protection settings near the source of the fault. When the arc flash occurred in PDC 41, the incorrect setting on the transformer protection relays caused a power disruption to 6 electrical substations in the refinery, instead of 1, which resulted in the Plant 1 process units shutting down. This event resulted in the following exceedances and noncompliance with operating standards:

i. **Sulfur Pit (T-2005)**
   **Vents to atmosphere must remain closed and vapors controlled at all times**
   Start Date and Time (vents opened): 03/17/2022 21:31 hrs
   End Date and Time (vents closed):  03/19/2022 07:05 hrs

   Suncor failed to address sulfur pit emissions as required, violating Permit 96OPAD120, Section II, Condition 20.7, and the West Plant Consent Decree, Paragraph 173;

ii. **H-25**
   **$SO_2$ (15.68 lb/hr)**
   Start Date and Time: 03/17/2022 01:00 hrs
   End Date and Time: 03/17/2022 03:00 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director                    29 |



App. 1843

Start Date and Time: 03/19/2022 10:00 hrs
<u>End Date and Time: 03/19/2022 13:00 hrs</u>

**$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour average)**
Start Date and Time: 03/17/2022 01:00 hrs
<u>End Date and Time: 03/17/2022 14:00 hrs</u>
Start Date and Time: 03/19/2022 00:00 hrs
<u>End Date and Time: 03/20/2022 01:00 hrs</u>
Start Date and Time: 03/21/2022 23:00 hrs
<u>End Date and Time: 03/22/2022 04:00 hrs</u>
Start Date and Time: 03/22/2022 10:00 hrs
<u>End Date and Time: 03/23/2022 04:00 hrs</u>
Start Date and Time: 03/23/2022 13:00 hrs
<u>End Date and Time: 03/24/2022 02:00 hrs</u>

Suncor exceeded the $SO_2$ limits (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour average) at H-25, violating Permit 96OPAD120, Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);

iii. <u>**Main Plant Flare**</u>
**$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
Start Date and Time: 03/17/2022 13:00 hrs
<u>End Date and Time: 03/19/2022 21:00 hrs</u>
Start Date and Time: 03/22/2022 08:00 hrs
<u>End Date and Time: 03/23/2022 16:00 hrs</u>
Start Date and Time: 03/24/2022 01:00 hrs
<u>End Date and Time: 03/24/2022 20:00 hrs</u>

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h);

iv. <u>**Plant 1 FCCU**</u>
**CO (500 ppmvd at 0% $O_2$, 1-hour average)**
Start Date and Time: 03/17/2022 12:00 hrs
<u>End Date and Time: 03/17/2022 18:00 hrs</u>
Start Date and Time: 03/19/2022 23:00 hrs
<u>End Date and Time: 03/20/2022 00:00 hrs</u>
Start Date and Time: 03/20/2022 05:00 hrs
<u>End Date and Time: 03/20/2022 07:00 hrs</u>
Start Date and Time: 03/21/2022 06:00 hrs
<u>End Date and Time: 03/21/2022 09:00 hrs</u>



App. 1844

Start Date and Time: 03/21/2022 10:00 hrs
End Date and Time: 03/21/2022 21:00 hrs

Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49;

v. **Plant 1 FCCU**
   **Opacity (State - 20%, 6-minute average)**
   Start Date and Time: 03/17/2022 12:24 hrs
   End Date and Time: 03/17/2022 12:30 hrs
   Start Date and Time: 03/19/2022 12:36 hrs
   End Date and Time: 03/19/2022 12:42 hrs
   Start Date and Time: 03/20/2022 10:54 hrs
   End Date and Time: 03/20/2022 11:00 hrs

   Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120, Section IV, Condition 16; and AQCC Regulation 1, § II.A.1;

vi. **Process Boiler B-8**
   **CO (0.060 lb/MMBtu, 24-hour rolling average)**
   Start Date and Time:  03/18/2022 00:00 hrs
   End Date and Time:   03/22/2022 16:00 hrs
   Start Date and Time:  03/23/2022 20:00 hrs
   End Date and Time:   03/25/2022 03:00 hrs
   Start Date and Time:  03/28/2022 21:00 hrs
   End Date and Time:   03/29/2022 17:00 hrs

   Suncor exceeded the CO limit (0.060 lb/MMBtu, 24-hour rolling average) at Process Boiler B-8, violating Permit 96OPAD120, Section II, Condition 13.8, and the West Plant Consent Decree, Paragraph 73(a);

vii. **GBR Unit Flare**
   **NHVcz (=/>270 Btu/scf, 15-minute average)**
   Start Date and Time: 03/18/2022 21:00 hrs
   End Date and Time:  03/18/2022 21:15 hrs

   Suncor failed to comply with the NHVcz standard (=/>270 Btu/scf, 15-minute average) at the GBR Unit Flare, violating Permit 96OPAD120, Section II, Conditions 31.10 and 53.91, and NESHAP CC, § 63.670(e);



App. 1845

viii.  Suncor failed to maintain and operate the Main Plant Flare and
Plant 1 SRUs in a manner consistent with good air pollution
control practice for minimizing emissions, violating Permit
96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d);

ix.  Suncor failed to maintain and operate the Plant 1 SRUs in a
manner consistent with good air pollution control practices for
minimizing emissions, violating Permit 96OPAD120, Section II,
Condition 54.35, and NESHAP UUU, § 63.1570(c); and

x.  Suncor failed to maintain and operate the GBR Unit Flare in a
manner consistent with good air pollution control practices for
minimizing emissions, violating Permit 96OPAD120, Section II,
Condition 53.12, and NESHAP CC, § 63.642(n).

z.  Suncor reported that it was unable to complete the quarterly audit of
the Plant 1 FCCU COMS during the first quarter of 2022. Suncor
attempted to perform the audit prior to the end of the quarter but was
unable to complete it because a steam leak near the stack location
hindered visibility. The steam leak would have likely impacted the
instruments being used to perform the audit as well. Suncor entered a
work request to repair the steam leak, but repairs were not completed
until April 6, 2022. Suncor performed the audit on April 7, 2022. Suncor
failed to complete the quarterly audit of the Plant 1 FCCU COMS during
the first quarter of 2022 and failed to comply with the quality control
program/plan for the COMS, violating Permit 96OPAD120, Section II,
Conditions 22.9.3, 22.12, 54.51, and 59.1; the West Plant Consent
Decree, Paragraphs 47(b) and 202; NSPS A, § 60.13(a); 40 C.F.R. Part
60, Appendix F, Procedure 3; NESHAP A, § 63.8(d)(2); and NESHAP
UUU, § 63.1574(f).

aa.  Suncor reported that, on April 3, 2022, a routine, semi-annual visual
inspection of the Tank 77 floating roof and secondary seal was
performed from the access platform. During the inspection, a gauge
hatch on the floating roof was observed to be open. Suncor could not
determine how or why the hatch was opened but noted a high wind
event as a potential cause. On April 7, 2022, Suncor closed the hatch.
Suncor failed to maintain and operate all storage tank gauging devices,
anti-rotation devices, accesses, seals, hatches, roof drainage systems,
support structures, and pressure relief valves on Tank 77 to prevent
detectable vapor loss, violating Permit 96OPAD120, Section II,
Conditions 1.3 and 39.1, and AQCC Regulation 7, Part B, § I.A.

bb.  Pursuant to Permit 96OPAD120, Section II, Condition 18.1, emissions of
$NO_x$ from Process Heater 37 (H-37) shall not exceed 24.56 tpy, and

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000  www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director          32 |



App. 1846

emissions shall be calculated using an emission factor of 0.098 lb/MMBtu and the monthly fuel consumption. Monthly emissions shall be calculated by the end of the subsequent month and used in a twelve-month rolling total to monitor compliance with the annual limitation. Each month a new twelve month rolling total shall be calculated using the previous twelve months data. In May 2021, Suncor elected to make the changes proposed in the modification application for Permit 96OPAD120, Modification #101[1]. Therefore, beginning with the rolling 12-month period ending June 2021, and consistent with Modification #101, Suncor was required to comply with the proposed controlled $NO_x$ limit of 10.41 tpy for H-37 and calculate emissions using an emission factor of 0.042 lb/MMBtu.

i. As described in the table below, Suncor exceeded 10.41 tpy $NO_x$ from H-37 during the rolling 12-month periods ending June 2021 through November 2021.

| H-37 $NO_x$ Emissions | | |
|---|---|---|
| Rolling 12-Month Period Ending | Monthly Total (tons) | 12-Month Rolling Total (tons) |
| | | Limit: 10.41 |
| June-21 | 0.61 | 16.24 |
| July-21 | 0.43 | 13.80 |
| August-21 | 0.65 | 12.84 |
| September-21 | 0.71 | 11.88 |
| October-21 | 0.76 | 11.25 |
| November-21 | 0.65 | 10.97 |

ii. Following the May 2021 replacement of the stack and burners at H-37, Suncor determined that the heater had flame instability issues, which can create safety issues. Suncor took necessary corrective action to resolve the flame instability issues. Suncor determined, based on initial data, that those steps may have increased the lb/MMBtu $NO_x$ emission rate from H-37. On April 27, 2022, in an attempt to address this potential concern, Suncor installed new burner tips and measured the $NO_x$ emission rate using US EPA Test Method 3A for oxygen and Test Method 7E for $NO_x$. Suncor collected 16.58 hours of data and calculated an average $NO_x$ emission rate of 0.052 lb/MMBtu, which is above the

---

[1] On October 13, 2020, the Division received the APEN for Permit 96OPAD120, Modification #101. Suncor submitted Modification #101 to account for the installation of ultra-low $NO_x$ burners on H-37. In May 2021, during the turnaround of Plant 1 and Plant 3, Suncor installed the ultra-low $NO_x$ burners.

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director    33 |



emission rate represented in Modification #101. As of April 27, 2022, Suncor is out of compliance with the controlled $NO_x$ emission rate in Modification #101 (0.042 lb/MMBtu).

For the rolling 12-month periods ending June 2021 through November 2021, Suncor failed to comply with the controlled $NO_x$ limit (10.41 tpy) for H-37, and from April 27, 2022 to present, Suncor has failed to demonstrate compliance with the controlled $NO_x$ emission factor (0.042 lb/MMBtu) for H-37, violating Permit 96OPAD120, Section II, Condition 18.1.

cc.  Suncor reported that, in April and May 2022, the primary plant air compressors were out of service and required several parts to be ordered so that the necessary repairs could be made. Suncor reported that due to logistical issues beyond Suncor's control, the parts needed for the repairs were delayed by several months. Suncor utilized the emergency air compressors (P1AC1 and P1AC2) while the primary compressors were out of service. During this period (April and May 2022), P1AC1 and P1AC2 experienced reliability issues, so Suncor rented temporary air compressors that could be used as backups to P1AC1 and P1AC2. Suncor repaired the primary compressors and the temporary compressors were removed from the site. Additionally, Suncor reported that, in December 2022, Suncor utilized P1AC1 and P1AC2 while the primary compressors were out of service. In calendar year 2022, Suncor operated P1AC1 and P1AC2 above APEN thresholds without first submitting APENs for the engines, violating AQCC Regulation 3, Part A, § II.A.1.

dd.  As described in this Compliance Advisory, Section II, Paragraph 1.cc, above, in calendar year 2022, Suncor utilized the emergency air compressors (P1AC1 and P1AC2) while the primary compressors were out of service and exceeded APEN thresholds. In calendar year 2022, Suncor operated P1AC1 and P1AC2 above construction permit thresholds without first obtaining permits for the engines, violating AQCC Regulation 3, Part B, § II.A.1.

ee.  Suncor reported that, on May 4, 2022, a vent to the atmosphere on the Plant 1 sulfur pit (T-2005) briefly opened during a planned maintenance event. At every section of pipe on the TK-2005 vent lines, where the pipe makes a 90 degree turn, there is a "rod-out" location for clearing the line if it plugs with sulfur. One of the caps on a rod out location became dislodged due to sulfur build up internal to the cap. During this maintenance event, the vent was opened for approximately 20 minutes in order to ensure that there was not an open-ended line with $H_2S$ venting directly at the Suncor pipe fitters performing the

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director          34 |

App. 1848

work to replace the flange. It was estimated that approximately 1.4 lbs of $H_2S$ was released during this event. On May 4, 2022, from 10:56-11:17 hours, Suncor failed to address sulfur pit emissions as required, violating Permit 96OPAD120, Section II, Condition 20.7, and the West Plant Consent Decree, Paragraph 173.

ff.  Suncor reported that, on May 9, 2022, at approximately 13:45 hours, the Plant 1 steam boiler B8 tripped offline when the core blower pressure dropped briefly below the established trip setpoint. At the time of this incident, steam boiler B4 was down for maintenance and boiler B6 was already at max capacity. When B8 tripped, it initiated a chain of events that required operators to immediately shed steam, which included adjusting feed rates to the Plant 1 FCCU. After boiler B8 was restarted, Suncor operators began increasing the feed rate to the FCCU. The operators had been increasing the feed rate at increments of 100 barrels per day ("BPD") at a time and wanted to increase the rate to 17,900 BPD. As an operator entered the new setpoint, they inadvertently hit the number lock key after they hit 7 and the system accepted a setpoint of 17 BPD. The operator tried to enter a new setpoint and was unsuccessful. The operator asked the chief operator to change the FCCU feed rate from the chief's console. However, the FCCU Emergency Shut Down ("ESD") tripped before the operators were able to enter a new setpoint. The bottoms level of the main fractionator rose rapidly, and at approximately 13:27 hours, liquids from the main fractionator bottom entered the horizontal vapor line. The vapor line operates at approximately 900°F and the bottoms liquid was approximately 600°F. After the ESD activated, outside operators were conducting response activities, and at approximately 14:20 hours, noticed a fire and announced it on the radio. Operators commenced firefighting and the Suncor emergency response team was called out. The fire was extinguished at approximately 14:35 hours. Due to this event, the Plant 1 FCCU was shut down from May 9, 2022 to June 3, 2022. This event resulted in the following exceedances and noncompliance with operating standards:

i.  **Main Plant Flare**
    **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
    Start Date and Time: 05/09/2022 16:00 hrs
    End Date and Time: 05/09/2022 19:00 hrs

    Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Main Plant Flare, violating Permit 96OPAD120, Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104a(1); and NSPS Ja, § 60.103a(h);

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    35 |



App. 1849

ii. **Plant 1 FCCU**
**CO (500 ppmvd at 0% O$_2$, 1-hour average)**
Start Date and Time: 05/09/2022 14:00 hrs
End Date and Time: 05/09/2022 20:00 hrs

Suncor exceeded the CO limit (500 ppmvd at 0% O$_2$, 1-hour average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49; and

iii. Suncor failed to maintain and operate the Main Plant Flare in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120, Section II, Condition 56.2, and NSPS A, § 60.11(d).

gg. Suncor reported that, on May 9, 2022, the Plant 1 FCCU had an unplanned shutdown. Following the May 9, 2022 shutdown, Suncor made the necessary repairs to restart the Plant 1 FCCU. On June 2, 2022, Suncor began the startup process for the Plant 1 FCCU. While starting up the Plant 1 FCCU, torch oil was introduced to the unit, which caused elevated CO emissions. Additionally, while starting up the main air blower for the FCCU, an opacity spike was measured at the FCCU stack. During the startup, elevated H$_2$S in the flare and fuel gas system was present as the unit was brought online. The CO emissions and opacity events were brought under control after the unit was stabilized following startup activities. This event resulted in the following exceedances:

i. **Plant 1 FCCU**
**Opacity (State - 20%, 6-minute average)**
Start Date and Time: 06/03/2022 12:24 hrs
End Date and Time: 06/03/2022 12:36 hrs

Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120, Section IV, Condition 16; and AQCC Regulation 1, § II.A.1;

ii. **Plant 1 FCCU**
**Opacity (State - 30%, 6-minute average)**
Start Date and Time: 06/03/2022 16:01 hrs
End Date and Time: 06/03/2022 16:03 hrs

Suncor exceeded the opacity limit (State - 30%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120, Section II,



App. 1850

Conditions 22.7.1 and 35.2; Permit 96OPAD120, Section IV,
Condition 16; and AQCC Regulation 1, § II.A.4; and

iii. **Plant 1 Fuel Gas System**
**H₂S in Fuel Gas (162 ppmv, 3-hour average)**
$H_2S$ in Fuel Gas (162 ppmv, 3-hour average)
Start Date and Time: 06/03/2022 19:00 hrs
End Date and Time: 06/03/2022 23:00 hrs

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the
Plant 1 Fuel Gas System, violating Permit 96OPAD120, Section II,
Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2,
21.3, 27.3, 28.3, 30.2, 30.10, 38.2.1, and 46.1.1; NSPS J, §
60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

hh. During a third-party consent decree audit in June 2022, the auditor
identified three open-ended lines in the Plant 1 Crude Unit on June 28,
2022. The open-ended lines were closed on June 28, 2022. Suncor
failed to seal three open-ended lines and maintain and operate three
open-ended lines in a manner consistent with good air pollution control
practice for minimizing emissions, violating Permit 96OPAD120, Section
II, Conditions 43.8.2, 55.40, and 56.2; NSPS A, § 60.11(d); NSPS VVa, §
60.482-6a(a); and AQCC Regulation 7, Part B, § VI.C.2.b.

ii. On April 5, 2022, Suncor submitted a schedule of compliance for
Process Heater H-2101 (H-2101) and the applicable NOₓ emission limit.
H-2101 was permitted in 2004 as part the Clean Fuels Project.
Paragraph 220(a) of the West Plant Consent Decree sets restrictions on
the use of emission reductions required by the West Plant Consent
Decree for purposes of netting. Since Suncor used emission reductions
required by the West Plant Consent Decree, any new or modified
heaters were required to be permitted with NOₓ limits of 0.040
lb/MMBtu or less, on a 3-hour rolling average. H-2101 is not able to
comply with the NOₓ limit in Paragraph 220(a) of the West Plant
Consent Decree. Therefore, Suncor submitted a schedule of
compliance on April 5, 2022 and a status update on April 13, 2023. In
the April 2023 status update, Suncor reported plans to install selective
catalytic reduction on H-2101 by December 31, 2026 in order to comply
with the NOₓ limit. From 2004 to present, Suncor has failed to comply
with the required NOₓ limit of 0.040 lb/MMBtu or less, on a 3-hour
rolling average, violating the West Plant Consent Decree, Paragraph
220(a).

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          37 |

App. 1851

## <u>Refinery: Plant 2</u>

2. On July 11-13, 2022, Jason Long, of the Division, inspected the Refinery. Based on the Division's inspection, and a review of records related to the Refinery, the Division has identified the following compliance issues at the Refinery, Plant 2:

   a. Suncor failed to submit the semiannual NSPS GGGa and NESHAP CC reports due August 1, 2022 and September 1, 2022, respectively, until September 27, 2022, violating Permit 95OPAD108 (9/1/2022), Section II, Condition 40.66; NSPS GGGa, § 60.592a(e); NSPS VVa, § 60.487a(a); and NESHAP CC, § 63.655(g).

   b. Suncor reported that, on August 17, 2021, the No. 3 SRU tripped offline causing high liquid level in the knockout drum. Suncor determined that the No. 3 SRU trip was due to hydrocarbon carryover into the No. 3 SRU. Sampling of materials in associated equipment led to the discovery that higher than normal temperatures in an upstream unit were resulting in soot accumulation causing the hydrocarbon carryover event. This event resulted in the following exceedances and noncompliance with operating standards:

      i. <u>Plant 2 FCCU</u>
         **Opacity (State - 20%, 6-minute average)**
         Start Date and Time: 08/18/2021 17:54 hrs
         <u>End Date and Time:  08/18/2021 18:00 hrs</u>

         Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1;

      ii. <u>Plant 2 Flare</u>
         **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
         Start Date and Time: 08/17/2021 11:00 hrs
         <u>End Date and Time:  08/17/2021 20:00 hrs</u>
         Start Date and Time: 08/18/2021 13:00 hrs
         <u>End Date and Time:  08/18/2021 21:00 hrs</u>

         Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108, Section II, Conditions 8.4 and 22.5.1; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h);

      iii. <u>Plant 2 Fuel Gas System</u>
         **$H_2S$ in Fuel Gas (162 ppmv, 3-hour average)**

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director          38 |



App. 1852

Start Date and Time: 08/17/2021 11:00 hrs
End Date and Time:  08/17/2021 20:00 hrs

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108, Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii); and

    iv.  Suncor failed to maintain and operate the Plant 2 Flare and Plant 2 Fuel Gas System in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Condition 36.5, and NSPS A, § 60.11(d).

c.  Suncor reported that, on August 26, 2021, it began the planned start-up of the Plant 2 FCCU following the shutdown that was necessary to perform exchanger maintenance. During the start-up process, the start-up was aborted after five attempts. Suncor operations were unable to circulate catalyst due to plugging around the regen slide valve and the catalyst fines withdraw line. An inspection identified small pieces of refractory blocking both areas. On September 10, 2021, after removing the blockage, Suncor successfully restarted the Plant 2 FCCU. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  **Plant 2 FCCU**
      **Opacity (State - 20%, 6-minute average)**
      Start Date and Time: 08/26/2021 14:00 hrs
      End Date and Time:  08/26/2021 14:30 hrs
      Start Date and Time: 08/27/2021 01:18 hrs
      End Date and Time:  08/27/2021 01:54 hrs
      Start Date and Time: 08/27/2021 09:54 hrs
      End Date and Time:  08/27/2021 10:12 hrs
      Start Date and Time: 08/27/2021 14:48 hrs
      End Date and Time:  08/27/2021 15:18 hrs
      Start Date and Time: 08/27/2021 22:18 hrs
      End Date and Time:  08/27/2021 23:06 hrs
      Start Date and Time: 08/28/2021 08:36 hrs
      End Date and Time:  08/28/2021 09:06 hrs
      Start Date and Time: 08/28/2021 19:36 hrs
      End Date and Time:  08/28/2021 19:42 hrs
      Start Date and Time: 08/28/2021 20:00 hrs
      End Date and Time:  08/28/2021 20:12 hrs
      Start Date and Time: 08/28/2021 21:06 hrs
      End Date and Time:  08/28/2021 21:18 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          39 |



App. 1853

Start Date and Time: 09/05/2021 08:06 hrs
<u>End Date and Time:  09/05/2021 08:18 hrs</u>
Start Date and Time: 09/10/2021 00:06 hrs
<u>End Date and Time:  09/10/2021 00:12 hrs</u>
Start Date and Time: 09/10/2021 18:00 hrs
<u>End Date and Time:  09/10/2021 18:06 hrs</u>

Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1;

ii. **<u>Plant 2 FCCU</u>**
**CO (500 ppmvd at 0% $O_2$, 1-hour average)**
Start Date and Time: 08/26/2021 22:00 hrs
<u>End Date and Time:  08/26/2021 23:00 hrs</u>
Start Date and Time: 08/27/2021 04:00 hrs
<u>End Date and Time:  08/27/2021 06:00 hrs</u>
Start Date and Time: 08/28/2021 19:00 hrs
<u>End Date and Time:  08/28/2021 22:00 hrs</u>
Start Date and Time: 08/29/2021 02:00 hrs
<u>End Date and Time:  08/29/2021 08:00 hrs</u>
Start Date and Time: 09/10/2021 10:00 hrs
<u>End Date and Time:  09/10/2021 20:00 hrs</u>

Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1); and

iii. Suncor failed to maintain and operate the Plant 2 FCCU in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Conditions 36.5 and 33.81; NSPS A, § 60.11(d); and NESHAP UUU, § 63.1570(c).

d. Suncor reported that, on September 10, 2021, the Plant 2 Flare began experiencing periods of elevated $H_2S$ in the flare header. After several days of troubleshooting, Suncor determined the source of elevated $H_2S$ was a leaking control valve located on the amine regenerator overhead line. While the control valve was showing at fully closed, Suncor determined that a very small amount of high concentration $H_2S$ gas was leaking by the valve. Once identified, Suncor manually blocked-in the



valve and concentrations of $H_2S$ decreased. This event resulted in the following exceedances and noncompliance with operating standards:

  i. **Plant 2 Flare**
     **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
     Start Date and Time: 09/10/2021 21:00 hrs
     <u>End Date and Time:  09/11/2021 03:00 hrs</u>
     Start Date and Time: 09/15/2021 06:00 hrs
     <u>End Date and Time:  09/15/2021 11:00 hrs</u>
     Start Date and Time: 09/15/2021 19:00 hrs
     <u>End Date and Time:  09/15/2021 22:00 hrs</u>
     Start Date and Time: 09/18/2021 21:00 hrs
     <u>End Date and Time:  09/19/2021 00:00 hrs</u>

     Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108, Section II, Conditions 8.4 and 22.5.1; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h); and

  ii. Suncor failed to maintain and operate the Plant 2 Flare in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Condition 36.5, and NSPS A, § 60.11(d).

e. Suncor reported that, on October 27, 2021, a routine seal inspection identified hydrocarbon material on the top of the floating roof of Tank 20. The presence of VOC product observed on the roof is indicative of a detectable vapor loss. On October 26, 2021, during the restart of the Plant 2 FCCU, Suncor sent unstabilized gasoline to Tank 20 for a period of hours. Tank 20 is an internal floating roof tank. Suncor believes product went by the seals and onto the roof. On November 14, 2021, Suncor cleaned the tank roof. Suncor failed to maintain and operate all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves on Tank 20 to prevent detectable vapor loss, violating Permit 95OPAD108, Section II, Conditions 15.2 and 23.1, and AQCC Regulation 7, Part B, § I.A.

f. Suncor reported that, at approximately 10:24 hours on November 2, 2021, while workers were in the process of performing an external bypass on UPS-13 for annual maintenance, the C-201 air blower tripped. Power was disrupted to the soft starter while workers were turning the external maintenance bypass switch to "Bypass". This power disruption to the soft starter is what ultimately caused C-201 to trip. When C-201 tripped, there was a loss of positive pressure into the

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          41 |

App. 1855

regenerator, and that loss of pressure resulted in the emergency shutdown (ESD) system activating when the Regen Slide Valve differential pressure fell below 1.0 psid. The ESD system activated and closed both of the slide valves within 23 seconds of the air blower fault. This event resulted in the following exceedances and noncompliance with operating standards:

i. **Plant 2 FCCU**
   **Opacity (State - 20%, 6-minute average)**
   Start Date and Time: 11/02/2021 10:24 hrs
   <u>End Date and Time:  11/02/2021 10:30 hrs</u>
   Start Date and Time: 11/02/2021 14:06 hrs
   <u>End Date and Time:  11/02/2021 14:18 hrs</u>
   Start Date and Time: 11/02/2021 15:12 hrs
   <u>End Date and Time:  11/02/2021 15:18 hrs</u>
   Start Date and Time: 11/02/2021 15:30 hrs
   <u>End Date and Time:  11/02/2021 15:36 hrs</u>
   Start Date and Time: 11/02/2021 15:42 hrs
   <u>End Date and Time:  11/02/2021 15:54 hrs</u>
   Start Date and Time: 11/02/2021 16:00 hrs
   <u>End Date and Time:  11/02/2021 16:12 hrs</u>
   Start Date and Time: 11/02/2021 16:30 hrs
   <u>End Date and Time:  11/02/2021 16:36 hrs</u>

   Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1;

ii. **Plant 2 FCCU**
    **CO (500 ppmvd at 0% $O_2$,1-hour average)**
    Start Date and Time: 11/02/2021 11:00 hrs
    <u>End Date and Time:  11/02/2021 22:00 hrs</u>
    Start Date and Time: 11/03/2021 07:00 hrs
    <u>End Date and Time:  11/03/2021 10:00 hrs</u>

    Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1);

iii. **Plant 2 Flare**
     **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**



App. 1856

Start Date and Time: 11/02/2021 23:00 hrs
End Date and Time: 11/03/2021 09:00 hrs

Suncor exceeded the H$_2$S limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108, Section II, Conditions 8.4 and 22.5.1; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h);

iv. **Plant 2 Flare**
**NHVcz (=/>270 Btu/scf, 15-minute average)**
Start Date and Time: 11/03/2021 05:30 hrs
End Date and Time: 11/03/2021 05:45 hrs

Suncor failed to comply with the NHVcz standard (=/>270 Btu/scf, 15-minute average) at the Plant 2 Flare, violating NESHAP CC, § 63.670(e);

v. Suncor failed to maintain and operate the Plant 2 FCCU in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Conditions 33.81 and 36.5; NSPS A, § 60.11(d); and NESHAP UUU, § 63.1570(c); and

vi. Suncor failed to maintain and operate the Plant 2 Flare in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Condition 36.5; NSPS A, § 60.11(d); and NESHAP CC, § 63.642(n).

g. Suncor reported that, on the evening of November 8, 2021, pre-startup activities began for the Plant 2 FCCU. However, during that process, there were multiple opacity exceedances while operators attempted to load the catalyst. Despite making several attempts, operations was unable to lower the opacity. Suncor ceased the startup process until the opacity issues could be understood and resolved. Suncor discovered that the warmup process was not successful due to a plugged burner. Suncor delayed the startup process until after the burner repairs could be made. On November 15, 2021, after the burner repairs were completed, Suncor began the startup process for the Plant 2 FCCU. During this startup, after making several attempts, Suncor was unable to complete the catalyst loading without causing opacity exceedances. The catalyst loading is a necessary step in the startup of the Plant 2 FCCU. On November 17, 2021, Suncor again attempted startup of the Plant 2 FCCU. This time, Suncor was able to complete the startup and return the unit to normal operation. This event resulted in the following exceedances and noncompliance with operating standards:

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    43 |

App. 1857

i. **Plant 2 FCCU**
**Opacity (State - 20%, 6-minute average)**
Start Date and Time: 11/08/2021 17:12 hrs
End Date and Time:  11/08/2021 17:48 hrs
Start Date and Time: 11/09/2021 01:48 hrs
End Date and Time:  11/09/2021 01:54 hrs
Start Date and Time: 11/09/2021 09:36 hrs
End Date and Time:  11/09/2021 09:42 hrs
Start Date and Time: 11/09/2021 19:24 hrs
End Date and Time:  11/09/2021 19:30 hrs
Start Date and Time: 11/09/2021 22:30 hrs
End Date and Time:  11/09/2021 22:36 hrs
Start Date and Time: 11/09/2021 22:42 hrs
End Date and Time:  11/09/2021 22:48 hrs
Start Date and Time: 11/10/2021 00:30 hrs
End Date and Time:  11/10/2021 00:36 hrs
Start Date and Time: 11/10/2021 02:30 hrs
End Date and Time:  11/10/2021 02:36 hrs
Start Date and Time: 11/10/2021 05:30 hrs
End Date and Time:  11/10/2021 05:42 hrs
Start Date and Time: 11/15/2021 10:42 hrs
End Date and Time:  11/15/2021 12:18 hrs
Start Date and Time: 11/15/2021 12:42 hrs
End Date and Time:  11/15/2021 12:48 hrs
Start Date and Time: 11/15/2021 20:12 hrs
End Date and Time:  11/15/2021 20:24 hrs
Start Date and Time: 11/15/2021 20:54 hrs
End Date and Time:  11/15/2021 21:00 hrs
Start Date and Time: 11/15/2021 21:24 hrs
End Date and Time:  11/15/2021 21:36 hrs
Start Date and Time: 11/16/2021 01:00 hrs
End Date and Time:  11/16/2021 01:06 hrs
Start Date and Time: 11/16/2021 01:48 hrs
End Date and Time:  11/16/2021 02:00 hrs
Start Date and Time: 11/16/2021 04:54 hrs
End Date and Time:  11/16/2021 05:12 hrs
Start Date and Time: 11/16/2021 06:18 hrs
End Date and Time:  11/16/2021 06:36 hrs
Start Date and Time: 11/16/2021 07:00 hrs
End Date and Time:  11/16/2021 08:54 hrs
Start Date and Time: 11/17/2021 15:36 hrs
End Date and Time:  11/18/2021 01:36 hrs
Start Date and Time: 11/18/2021 06:48 hrs
End Date and Time:  11/18/2021 08:18 hrs
Start Date and Time: 11/18/2021 09:00 hrs



App. 1858

End Date and Time:  11/18/2021 09:06 hrs
Start Date and Time: 11/18/2021 10:42 hrs
End Date and Time:  11/18/2021 10:48 hrs
Start Date and Time: 11/18/2021 11:00 hrs
End Date and Time:  11/18/2021 11:06 hrs
Start Date and Time: 11/18/2021 11:30 hrs
End Date and Time:  11/18/2021 12:48 hrs
Start Date and Time: 11/18/2021 15:06 hrs
End Date and Time:  11/18/2021 15:30 hrs

Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1;

ii. **Plant 2 FCCU**
**Opacity (Federal - 30%, 6-minute average)**
Start Date and Time: 11/18/2021 07:00 hrs
End Date and Time: 11/18/2021 07:36 hrs

Suncor exceeded the opacity limit (Federal – 30%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.4; Permit 09AD0961, Condition 27(b); the East Plant Consent Decree, Paragraph 98; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1);

iii. **Plant 2 FCCU**
**Opacity (Federal - 20%, 3-hour average)**
Start Date and Time: 11/15/2021 12:00 hrs
End Date and Time:  11/15/2021 14:00 hrs
Start Date and Time: 11/16/2021 08:00 hrs
End Date and Time:  11/16/2021 10:00 hrs
Start Date and Time: 11/17/2021 17:00 hrs
End Date and Time:  11/18/2021 03:00 hrs
Start Date and Time: 11/18/2021 07:00 hrs
End Date and Time:  11/18/2021 10:00 hrs
Start Date and Time: 11/18/2021 11:00 hrs
End Date and Time:  11/18/2021 14:00 hrs

Suncor exceeded the opacity limit (Federal – 20%, 3-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.5, and NESHAP UUU, § 63.1564(a)(2);

iv. **Plant 2 FCCU**
**CO (500 ppmvd at 0% O$_2$, 1-hour average)**

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director          45 | 

App. 1859

Start Date and Time: 11/16/2021 22:00 hrs
End Date and Time:  11/17/2021 06:00 hrs
Start Date and Time: 11/17/2021 14:00 hrs
End Date and Time:  11/17/2021 17:00 hrs
Start Date and Time: 11/18/2021 11:00 hrs
End Date and Time:  11/18/2021 16:00 hrs

Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1);

v.  **Plant 2 Flare**
    **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
    Start Date and Time: 11/18/2021 09:00 hrs
    End Date and Time:  11/18/2021 12:00 hrs
    Start Date and Time: 11/19/2021 06:00 hrs
    End Date and Time:  11/19/2021 15:00 hrs

    Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108, Section II, Conditions 8.4 and 22.5.1; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h);

vi.  **Plant 2 Fuel Gas System**
     **$H_2S$ in Fuel Gas (162 ppmv, 3-hour average)**
     Start Date and Time: 11/19/2021 07:00 hrs
     End Date and Time:  11/19/2021 10:00 hrs

     Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108, Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii);

vii.  Suncor failed to maintain and operate the Plant 2 FCCU, Plant 2 Flare, and Plant 2 Fuel Gas System in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Condition 36.5, and NSPS A, § 60.11(d); and

viii.  Suncor failed to maintain and operate the Plant 2 FCCU in a manner consistent with good air pollution control practices for minimizing emissions, violating Permit 95OPAD108, Section II, Condition 33.81, and NESHAP UUU, § 63.1570(c).

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000  www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director                46 |



App. 1860

h. Suncor reported that, while prepping the poly reactor for catalyst change, Suncor performed manual adjustments to the steam and supplemental city gas controllers associated with the Plant 2 Flare. Suncor implemented these preemptive actions to mitigate visible emissions during anticipated flaring events. However, the supplemental gas remained in manual control while conditions in the flare gas changed, and the set point did not provide sufficient flow to supplement a drop in BTU content. In this condition, the calculated 15-minute block average NHVcz value fell below 270 Btu/scf for approximately 30 minutes. This event resulted in the following noncompliance with operating standards:

   i. **Plant 2 Flare**
   **NHVcz (=/>270 Btu/scf, 15-minute average)**
   Start Date and Time: 11/28/2021 23:15 hrs
   End Date and Time: 11/28/2021 23:45 hrs

   Suncor failed to comply with the NHVcz standard (=/>270 Btu/scf, 15-minute average) at the Plant 2 Flare, violating NESHAP CC, § 63.670(e); and

   ii. Suncor failed to maintain and operate the Plant 2 Flare in a manner consistent with good air pollution control practices for minimizing emissions, violating NESHAP CC, § 63.642(n).

i. Suncor reported that, during the second half of 2021, the first catalyst loading event for Polymerization Unit Catalyst Loading occurred in July 2021, but a Method 9 was not performed while the loading activity was taking place. The second loading event was scheduled to occur in the fourth quarter of 2021 but was delayed until early 2022. During the second half of 2021, Suncor failed to conduct a Method 9 opacity reading for Polymerization Unit Catalyst Loading, violating Permit 95OPAD108, Section II, Condition 19.5.5.

j. Suncor reported the following deviations from equipment leak standards and LDAR monitoring requirements:

   i. Between July 2021 and December 2021, Suncor identified four valves and two connectors at the #2 Poly Unit that were subject to LDAR monitoring requirements but had not previously been included in the LDAR inspection program. These components were added to the LDAR database for continual monitoring;

   ii. On April 18, 2022, Suncor identified three open-ended lines. The open-ended lines were closed April 18, 2022; and



App. 1861

    iii. During a third-party consent decree audit in June 2022, the auditor identified two open-ended lines in the Plant 2 Crude Unit on June 27, 2022. The open-ended lines were closed on June 27, 2022.

    Suncor failed to conduct LDAR monitoring on six components, seal five open-ended lines, and maintain and operate five open-ended lines in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Conditions 18.2, 27.8.1, 27.8.2, 30.1, 32.16, and 36.5; AQCC Regulation 7, Part B, §§ VI.C.2.a.(ii), VI.C.2.b, and VI.C.4.a; NSPS A, § 60.11(d); NSPS VV, §§ 60.482-1 to 60.482-10; NSPS VV, § 60.482-6(a); NSPS VVa, §§ 60.482–1a to 60.482–10a; NSPS VVa, § 60.482-6a(a); NSPS GGG, § 60.592(a); NSPS GGGa, § 60.592a(a); and NESHAP CC, §§ 63.482(n) and 63.648(a).

k.  Suncor reported that, on the night of January 25, 2022, the city gas line and instrument 54FI120 froze due to cold weather. The temperatures were near zero degrees Fahrenheit. This resulted in a high pressure indication, which caused the associated valve to automatically close. This resulted in the loss of fuel gas pressure to the Plant 2 fuel gas header. As a result of the drop of the fuel gas pressure, boilers B-504 and B-505 in Plant 2 tripped offline. As steam is a vital part of the operations process at multiple units in Plant 2, the loss of steam resulted in $H_2S$ exceedances at the Plant 2 Fuel Gas System. On January 26, 2022, from 03:00-05:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108, Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

l.  Suncor reported that, on January 25, 2022, the Plant 2 FCCU was shut down after the Plant 2 boilers tripped offline. On January 27, 2022, Suncor began the process of starting up the Plant 2 FCCU. This startup event resulted in exceedances of the CO limit at the Plant 2 FCCU, as described below. On January 27-28, 2022, Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Condition 27(c); NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1).

**Plant 2 FCCU**
**CO (500 ppmvd at 0% $O_2$, 1-hour average)**
Start Date and Time: 01/27/2022 01:00 hrs
<u>End Date and Time:  01/27/2022 15:00 hrs</u>



Start Date and Time: 01/28/2022 09:00 hrs
End Date and Time:  01/28/2022 18:00 hrs

m. Suncor reported that, on the night of February 2, 2022, the No. 3 SRU tripped at approximately 24:00 hours due to high pressure in the burners in the unit. While attempting to relight the SRU, the flame detection instrument was reading incorrectly preventing the flame from being relit. Suncor operators isolated the faulty instrument and were able to relight the flame. Once the flame was relit, Suncor checked the faulty instrument again, and it was still reporting faulty information. Suncor operators called the Suncor instrument technicians out to investigate and potentially replace the faulty instrument. In order to install the new instrument, the technician needed to close a 1/4 turn isolation valve in order to isolate the equipment and replace the faulty instrument. However, the technician did not realize at that time that the isolation valve did not fully close. When the faulty instrument was being removed, the heat from the No. 3 SRU burner began coming out from the transmitter mount. The technician tried to turn the valve an additional 1/4 turn more in order to fully isolate the valve but was unable to close the valve any further. Operators were also unable to completely isolate the valve, and a vapor release and small fire were observed. Maintenance personnel activated the vapor release alarm. Suncor operators immediately began shutting down the SRU to prevent any further process gases from being released. Shutting down the SRU resulted in a higher concentration of $H_2S$ in the Plant 2 Fuel Gas System, because the SRU was not efficiently removing sulfur as it had tripped. On February 3, 2022, from 02:00-09:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108, Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

n. Suncor reported that, on February 8, 2022, the Plant 2 FCCU main air blower, 02C201, experienced a step change in vibration readings and an increase in observed noise. After evaluation by the Suncor reliability group, and discussions of possible failure modes, Suncor decided to shut down the Plant 2 FCCU starting the night of February 8, 2022. As the orderly shutdown of the unit was progressing, the compressor coupling end bearing drain temperature spiked into alarm and then lost indication. As a result of this, operations manually tripped the compressor (02C201) early on the morning of February 9, 2022. Inspection of the compressor and gearbox revealed that the high-speed coupling, between the gearbox output shaft and compressor, was failing but still transmitting torque at the time it was shut down. On February 9, 2022, from 06:54-07:30 hours, Suncor exceeded:



App. 1863

     i.   The opacity limit (State - 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1; and

     ii.   The opacity limit (Federal – 30%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.4; Permit 09AD0961, Condition 27(b); NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1).

o.  Suncor reported that, on February 9, 2022, Suncor shutdown the Plant 2 FCCU in order to repair the FCCU main air blower. On February 13, 2022, Suncor began to restart the FCCU after all necessary repairs were made. This event resulted in the following exceedances:

     i.   **Plant 2 FCCU**
        **CO (500 ppmvd at 0% $O_2$, 1-hour average)**
        Start Date and Time: 02/14/2022 12:00 hrs
        <u>End Date and Time:  02/14/2022 18:00 hrs</u>
        Start Date and Time: 02/14/2022 22:00 hrs
        <u>End Date and Time:  02/15/2022 01:00 hrs</u>

        Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Condition 27(c); NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1);

     ii.   **Plant 2 FCCU**
        **Opacity (State - 20%, 6-minute average)**
        Start Date and Time: 02/13/2022 19:42 hrs
        <u>End Date and Time:  02/13/2022 19:54 hrs</u>
        Start Date and Time: 02/13/2022 20:00 hrs
        <u>End Date and Time:  02/13/2022 20:24 hrs</u>
        Start Date and Time: 02/14/2022 00:00 hrs
        <u>End Date and Time:  02/14/2022 00:06 hrs</u>

        Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1; and

     iii.   **Plant 2 FCCU**
        **Opacity (Federal - 30%, 6-minute average)**
        Start Date and Time: 02/13/2022 19:42 hrs



<u>End Date and Time:  02/13/2022 19:54 hrs</u>

Suncor exceeded the opacity limit (Federal – 30%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.4; Permit 09AD0961, Condition 27(b); NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1).

p.  Suncor reported that, on the morning of March 2, 2022, the $H_2S$ concentrations in the Plant 2 flare gas began to climb. At the time, Suncor operators could not determine the cause. Suncor later determined that, while purging the Unsaturated Gas Plant in Plant 2 to prepare for exchanger repairs, the purge, which can contain $H_2S$, continued longer than planned due to an analyzer error. Suncor operators were of the opinion that the readouts were inaccurate and did not require any action to be taken. As soon as it was determined that the purge was still ongoing, Suncor closed the valve, and the $H_2S$ concentrations dropped. On March 2, 2022, from 05:00-08:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare and failed to maintain and operate the Plant 2 Flare in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108, Section II, Conditions 8.4, 22.5.1, and 36.5; NSPS A, § 60.11(d); NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).

q.  Suncor reported that, on March 2, 2022, while depressuring the Plant 2 Reformer Unit, a large volume of steam was sent to the Plant 2 Flare resulting in snuffing/extinguishing the pilot flame. The Plant 2 Flare had no flame for roughly 83 minutes. When depressuring, steam flow rates to the flare are increased to match the output ratio of the flame. At the time, natural gas was in automatic control, and as soon as the depressuring stopped to the flare, the steam output was still high. Suncor determined that this excess flow was responsible for snuffing out the flare's flame. On March 29, 2022, from 01:34-02:57 hours, Suncor failed to:

i.  Operate the Plant 2 Flare with a pilot flame present at all times when regulated material is routed to the flare, violating NESHAP CC, § 63.670(b);

ii.  Operate the Plant 2 Flare to maintain the NHVcz at or above 270 Btu/scf, violating NESHAP CC, § 63.670(e); and

iii.  Suncor failed to maintain and operate the Plant 2 Flare in a manner consistent with good air pollution control practices for minimizing emissions, violating NESHAP CC, § 63.642(n).

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000  www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director          51 |



App. 1865

r.  Suncor reported that, prior to April 2, 2022, Suncor shutdown the Plant 2 FCCU in order to make necessary exchanger repairs. On April 2, 2022, Suncor began to restart the FCCU after all necessary repairs were made. This event resulted in the following exceedances:

   i.  **Plant 2 FCCU**
   **CO (500 ppmvd at 0% $O_2$, 1-hour average)**
   Start Date and Time: 04/02/2022 23:00 hrs
   End Date and Time:  04/03/2022 00:00 hrs
   Start Date and Time: 04/03/2022 07:00 hrs
   End Date and Time:  04/03/2022 08:00 hrs
   Start Date and Time: 04/03/2022 10:00 hrs
   End Date and Time:  04/03/2022 14:00 hrs
   Start Date and Time: 04/04/2022 16:00 hrs
   End Date and Time:  04/05/2022 02:00 hrs

   Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Condition 27(c); NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1); and

   ii.  **Plant 2 FCCU**
   **Opacity (State - 20%, 6-minute average)**
   Start Date and Time: 04/04/2022 16:06 hrs
   End Date and Time:  04/04/2022 16:18 hrs
   Start Date and Time: 04/04/2022 19:36 hrs
   End Date and Time:  04/04/2022 19:42 hrs
   Start Date and Time: 04/04/2022 23:00 hrs
   End Date and Time:  04/04/2022 23:06 hrs
   Start Date and Time: 04/05/2022 02:06 hrs
   End Date and Time:  04/05/2022 02:12 hrs

   Suncor exceeded the opacity limit (State - 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108, Section II, Conditions 2.8 and 19.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1.

s.  Suncor reported that, on May 11, 2022, C-502, the primary air compressor for Plant 2, had an electrical failure that resulted in shutting down the compressor. Suncor determined that significant repairs to C-502 and the electrical wiring associated with the compressor are necessary before the compressor can be started back up. Suncor reported that, due to logistical issues beyond Suncor's control, the lead time to acquire the parts necessary to complete the repairs is extensive. Suncor placed expedited orders, so the parts will

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          52 | 

App. 1866

be delivered as soon as possible. Upon shutdown of C-502, Suncor began utilizing P2AC1 (the emergency compressor) to provide the necessary compressed air to Plant 2. Subsequently, P2AC1 began to experience operating problems requiring Suncor to rent a temporary compressor in order to provide the necessary compressed air to Plant 2. P2AC1 and the temporary rental compressor have been providing the necessary compressed air to Plant 2 since C-502 shutdown on May 11, 2022. Based on the NSPS $NO_x$ limit (4.0 g/kW-hr) and design rate (391.4 kW), emissions of $NO_x$ from P2AC1 exceed the APEN de minimis level (1 tpy) at 580 hours per year. In calendar year 2022, Suncor operated P2AC1 more than 580 hours. Suncor continues to operate P2AC1. To date, Suncor has failed to submit an APEN for P2AC1, violating AQCC Regulation 3, Part A, § II.A.1.

t.  As described in this Compliance Advisory, Section II, Paragraph 2.s, above, in calendar year 2022, Suncor operated P2AC1 more than 580 hours. Suncor continues to operate P2AC1. To date, Suncor has failed to obtain a permit for P2AC1, violating AQCC Regulation 3, Part B, § II.A.1.

u.  Suncor reported that, on the morning of May 6, 2022, a brief power interruption was experienced within Plant 2. This power interruption resulted in a loss of amine circulation within the No. 3 SRU. Several other pumps and electric re-heaters were also affected by this power interruption. Materials containing elevated concentrations of $H_2S$ were routed to the Plant 2 Flare. Suncor determined that the failure was due to a wire fault on the line side of the circuit breaker supplying power to pump P701A, the rich amine circulation pump. Gradual abrasion over an extended period of time likely resulted in the wire insulation failing, which then caused the wire to ultimately fail. This event resulted in exceedances of the $H_2S$ limit at the Plant 2 Fuel Gas System. On May 6, 2022, from 09:00-13:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108, Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

v.  Suncor reported that, on the morning of May 22, 2022, a malfunction occurred at the No. 3 SRU due to an electronics failure inside the No. 3 SRU Programmable Logic Controller (PLC). The malfunction resulted in acid gas (gas having high concentrations of $H_2S$) being sent to the Plant 2 Flare. Suncor operators attempted to safely bring the unit back into normal operation and notified the appropriate technicians to come out and identify the cause of the malfunction. Engineers determined that the PLC system had a failure involving the control network cards. This

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director                 53 |

App. 1867

failure is believed to have been caused by the system attempting to determine which system was the primary versus backup after experiencing an initial failure. When a brief communication error occurred, the system was not able to quickly resolve the issue described above, which caused the system to trip offline. From May 22, 2022 to May 23, 2022, Suncor failed to comply with the combustion zone temperature operating limit (1,416°F minimum temperature, daily average) at the thermal incinerator for the No. 3 SRU, violating NESHAP UUU, § 63.1568(a)(2), and Table 30, Item 4.

w. Suncor reported that, on the afternoon of June 1, 2022, the No. 3 SRU unexpectedly tripped offline. Suncor determined that the trip was caused by a fuel gas incinerator valve, which automatically closed due to an internal failure. The valve closed automatically, as designed, due to a bad solenoid within the system. This event resulted in the following exceedances and noncompliance with operating standards:

   i. **Plant 2 Fuel Gas System**
   **$H_2S$ in Fuel Gas (162 ppmv, 3-hour average)**
   Start Date and Time: 06/01/2022 14:00 hrs
   End Date and Time:  06/01/2022 22:00 hrs

   Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108, Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii); and

   ii. **No. 3 SRU Incinerator**
   **Minimum Temperature (1,416°F daily average temperature)**
   Start Date and Time: 06/01/2022 00:00 hrs
   End Date and Time:  06/01/2022 12:00 hrs

   Suncor failed to comply with the combustion zone temperature operating limit (1,416°F, daily average) at the thermal incinerator for the No. 3 SRU, violating NESHAP UUU, § 63.1568(a)(2), and Table 30, Item 4.

x. Suncor reported that, on June 3, 2022, the Plant 2 Flare began to experience brief periods of visible emissions. In order to eliminate the visible emissions, Suncor introduced more steam to the flare. During this event, operators were having a difficult time between adding steam to the flare in order to eliminate the visible emissions and ensuring that the NHVcz value stayed above 270 Btu/scf. By sampling the contents of the flare knock out drum, Suncor operators determined

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          54 |



App. 1868

that the flare knock out drum unexpectedly contained Light Straight Run gasoline. This indicated that a relief valve was relieving to the flare causing the unexpected visible emissions. This event resulted in the following exceedances and noncompliance with operating standards:

i. **Plant 2 Flare**
**NHVcz (=/>270 Btu/scf, 15-minute average)**
Start Date and Time: 06/03/2022 05:15 hrs
<u>End Date and Time:  06/03/2022 09:30 hrs</u>
Start Date and Time: 06/03/2022 12:15 hrs
<u>End Date and Time:  06/03/2022 18:30 hrs</u>
Start Date and Time: 06/03/2022 19:00 hrs
<u>End Date and Time:  06/03/2022 19:30 hrs</u>
Start Date and Time: 06/03/2022 23:30 hrs
<u>End Date and Time:  06/04/2022 00:00 hrs</u>

Suncor failed to comply with the NHVcz standard (=/>270 Btu/scf, 15-minute average) at the Plant 2 Flare, violating NESHAP CC, § 63.670(e);

ii. **Plant 2 Flare**
**Visible Emissions (exceeded 5 minutes during any 2 consecutive hours)**
Start Date and Time: 06/03/2022 04:58 hrs
<u>End Date and Time:  06/03/2022 05:22 hrs</u>
Start Date and Time: 06/03/2022 05:59 hrs
<u>End Date and Time:  06/03/2022 08:24 hrs</u>
Start Date and Time: 06/03/2022 11:54 hrs
<u>End Date and Time:  06/03/2022 14:15 hrs</u>

Suncor failed to comply with the visible emissions standard at the Plant 2 Flare, violating NESHAP CC, § 63.670(c); and

iii. Suncor failed to maintain and operate the Plant 2 Flare in a manner consistent with good air pollution control practices for minimizing emissions, violating NESHAP CC, § 63.642(n).

It is important to resolve the above-referenced issues as soon as possible. Therefore, the Division encourages Suncor to immediately identify those compliance issues that are not in dispute and to rectify those issues before the upcoming Compliance Advisory meeting. In accordance with § 25-7-115(3)(a), C.R.S., the Compliance Advisory meeting will be held within thirty (30) calendar days of the Division's issuance of the Compliance Advisory in this matter. The Division also requests that Suncor provide the Division with a brief written response to the alleged

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director        55 |    

App. 1869

violations ("Source Response"). The Source Response should identify the undisputed compliance issues and, if an alleged violation is disputed, the basis for the dispute. The Division requests that Suncor provide the Source Response, to the attention of Jen Sandor, no later than ten business days before the Compliance Advisory meeting. At the upcoming meeting, the Division will confirm the actions taken to rectify the undisputed compliance issues and proceed with unresolved matters as outlined below.

If you have any questions regarding this Compliance Advisory, the Division's enforcement processes, or any related issues, please refer to the APCD Enforcement Guide located at https://www.colorado.gov/pacific/cdphe/inspections-and-enforcement and/or contact the Division personnel identified below.

III.    COMPLIANCE ADVISORY MEETING

Suncor is requested to contact the Division and schedule a meeting to:

➢ Discuss the disputed Compliance Advisory issues and answer any remaining questions it may have;
➢ Submit information necessary to successfully show that the deficiencies and noncompliance issues (or any portion of them) are not violations of Colorado's air pollution laws; and
➢ Establish a mutually acceptable schedule and guidelines for the full and final resolution of any remaining deficiencies and noncompliance issues in a timely manner.

> **Please contact the Enforcement Advisor identified below by no later than June 8, 2023 to schedule a meeting with the Division to discuss the Compliance Advisory. In accordance with § 25-7-115(3)(a), C.R.S., the Compliance Advisory meeting will be held within thirty (30) days of the Division's issuance of the Compliance Advisory in this matter.**
>
> Jen Sandor, Enforcement Advisor (jen.sandor@state.co.us)
>
> **To ensure meaningful communication with all Coloradans, the Division offers free language services. Please let us know if we can provide an interpreter for anyone attending the Compliance Advisory meeting.**

cc:    Shannon McMillan, APCD          Jason Long, APCD
       Garry Kaufman, APCD            Heather Wuollet, APCD
       Paul Carr, APCD               Beth Pilson, APCD
       Ben Cappa, APCD               Michael Landis, Attorney General's Office
       Tom Lovell, APCD              Robyn Wille, Attorney General's Office
       Robert Stockton, APCD         Michael Stovern, EPA (Region VIII)
       Jeffrey Bishop, APCD          File

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director          56 |    

App. 1870

# Exhibit 10



# COLORADO
## Department of Public Health & Environment

---

## AIR POLLUTION CONTROL DIVISION

**COMPLIANCE ADVISORY**

**CASE NO. 2025-003**
**AIRS NO. 001-0003**
**INSPECTION DATE: June 26-30, 2023**

---

**SENT VIA ELECTRONIC MAIL**
**MAILING DATE: January 9, 2025**
**SOURCE CONTACT: Craig Neuman**

---

**IN THE MATTER OF SUNCOR ENERGY (U.S.A.) INC.**

---

This Compliance Advisory provides formal notice, pursuant to § 25-7-115(2), C.R.S., of alleged violations or noncompliance discovered during the Air Pollution Control Division's ("Division") inspection and/or review of records related to Suncor Energy (U.S.A.) Inc.'s Refinery identified below.[1] The Division is commencing this action because it has cause to believe that the compliance issues identified below may constitute violations of the Colorado Air Pollution Prevention and Control Act ("the Act") and its implementing regulations.

Please be aware that you are responsible for complying with applicable State air pollution requirements and that there are substantial penalties for failing to do so. Pursuant to the enforcement authority provided the Division by § 25-7-115, C.R.S., any person who violates the Act, its implementing regulations or any permit issued thereunder may be issued an order for compliance that can include permit revocation and assessment of penalties in accordance with § 25-7-122, C.R.S. The issuance of this Compliance Advisory does not in any way limit or

---

[1] Certain of the violations alleged in this Compliance Advisory were previously alleged on July 2, 2024 in the Notice of Violation issued jointly by the Division and the U.S. Environmental Protection Agency ("Previously-Alleged Violations"). Formal notice of Previously-Alleged Violations was given in the July 2, 2024, Notice of Violation.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director



preclude the Division from pursuing additional enforcement options concerning this inspection/review. Also, this Compliance Advisory does not constitute a bar to enforcement action for violations not specifically addressed in this Compliance Advisory.

Failure to respond to this Compliance Advisory by the date indicated at the end of this Compliance Advisory may be considered by the Division in any enforcement action and assessment of penalties. Furthermore, the Division's enforcement process contemplates a full and final resolution of the compliance issues herein addressed, and those that may result from further review, in a timely manner. If at any time throughout the process of reaching such a resolution the Division determines that the Parties cannot agree to the dispositive facts, compliance requirements and/or penalty assessments (if any) associated with this Compliance Advisory, or a resulting further enforcement action, the Division may exercise its full enforcement authority allowed under the law.

Suncor Energy (U.S.A.) Inc. ("Suncor") owns and operates the petroleum refinery located at 5801 Brighton Boulevard, Commerce City, Adams County, Colorado (Plant 1), the petroleum refinery located at 5800 Brighton Boulevard, Commerce City, Adams County, Colorado (Plant 2), and the asphalt plant located approximately at 3875 East 56th Avenue, Commerce City, Adams County, Colorado (Plant 3) (collectively, the "Refinery").

Plant 1 and Plant 3 are subject to the terms and conditions of the following state and federal permits, consent decrees, and regulations, including, but not limited to:

1. Federal Consent Decree (Civil Action No. H-01-4430) entered April 30, 2002, first amendment lodged June 16, 2003, second amendment lodged July 12, 2006 ("West Plant Consent Decree");
2. Colorado Operating Permit Number 96OPAD120, issued to Suncor on August 1, 2004, revised February 22, 2018 and renewed July 9, 2024 ("Permit 96OPAD120 (7/9/2024)");
3. 40 C.F.R. Part 63, Subpart R - National Emission Standards for Gasoline Distribution Facilities (Bulk Gasoline Terminals and Pipeline Breakout Stations) ("NESHAP R");
4. Colorado Construction Permit Number 04AD0109, Initial Approval, issued to Suncor on May 24, 2004 ("Permit 04AD0109");
5. Colorado Construction Permit Number 04AD0110, Final Approval, issued to Suncor on December 30, 2010 ("Permit 04AD0110"); and
6. Colorado Construction Permit Number 09AD1351, Final Approval, issued to Suncor on August 13, 2010 ("Permit 09AD1351").

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    2 |



App. 1873

Plant 1 and Plant 3 were subject to the terms and conditions of the Colorado Operating Permit Number 96OPAD120, issued to Suncor on August 1, 2004, and revised February 22, 2018 ("Permit 96OPAD120 (2/22/2018)").

Plant 2 is subject to the terms and conditions of the following state and federal permits, consent decrees, and regulations, including, but not limited to:

1. Federal Consent Decree (Civil Action No. SA-05-CA-0569) entered November 23, 2005, non-material modification effective June 18, 2006 ("East Plant Consent Decree");
2. Colorado Operating Permit Number 95OPAD108, issued to Suncor on October 1, 2006, revised June 15, 2009 and renewed September 1, 2022 ("Permit 95OPAD108 (9/1/2022)");
3. Colorado Construction Permit Number 09AD0961, Final Approval, issued to Suncor on February 23, 2015 ("Permit 09AD0961");
4. Colorado Construction Permit Number 09AD1422, Initial Approval, issued to Suncor on May 14, 2010 ("Permit 09AD1422"); and
5. 40 C.F.R. Part 60, Subpart GGG - Standards of Performance for Equipment Leaks of VOC in Petroleum Refineries for Which Construction, Reconstruction, or Modification Commenced After January 4, 1983, and on or Before November 7, 2006 ("NSPS GGG").

Plant 2 was subject to the terms and conditions of the Colorado Operating Permit Number 95OPAD108, issued to Suncor on October 1, 2006, and revised June 15, 2009 ("Permit 95OPAD108 (6/15/2009)").

The Refinery is subject to the terms and conditions of the following state and federal regulations, including:

1. 40 C.F.R. Part 60:
   i. Subpart A – General Provisions ("NSPS A");
   ii. Subpart J - Standards of Performance for Petroleum Refineries ("NSPS J");
   iii. Subpart Ja - Standards of Performance for Petroleum Refineries for Which Construction, Reconstruction, or Modification Commenced After May 14, 2007 ("NSPS Ja");
   iv. Subpart VV - Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for Which Construction, Reconstruction, or Modification Commenced After January 5, 1981, and on or Before November 7, 2006 ("NSPS VV");
   v. Subpart VVa - Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for Which Construction, Reconstruction, or Modification Commenced After November 7, 2006 ("NSPS VVa");



      vi.  Subpart GGGa - Standards of Performance for Equipment Leaks of VOC in Petroleum Refineries for Which Construction, Reconstruction, or Modification Commenced After November 7, 2006 ("NSPS GGGa");

2. 40 C.F.R. Part 63:
       i.  Subpart A – General Provisions ("NESHAP A");
       ii.  Subpart CC - National Emission Standards for Hazardous Air Pollutants from Petroleum Refineries ("NESHAP CC");
       iii.  Subpart UUU - National Emission Standards for Hazardous Air Pollutants for Petroleum Refineries: Catalytic Cracking Units, Catalytic Reforming Units, and Sulfur Recovery Units ("NESHAP UUU");
3. The Act; and
4. The Colorado Air Quality Control Commission ("AQCC") Regulations.

---

I.     <u>REQUIREMENTS APPLICABLE TO COMPLIANCE ADVISORY, CASE NO. 2025-003</u>

### Refinery: Plant 1 and Plant 3

1. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 1.3.1, 3.2, 4.2, 23.3.1, and 39.1, and AQCC Regulation 7, Part B, § I.A. (2020 - June 2023),[2] and AQCC Regulation 24, Part B, § I.A. (2023-present), all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves shall be maintained and operated to prevent detectable vapor loss except when opened, actuated, or used for necessary and proper activities. Such opening, actuation, or use shall be limited so as to minimize vapor loss.

2. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49, Suncor must limit carbon monoxide ("CO")[3] emissions from the Plant 1 Fluid Catalytic Cracking Unit ("FCCU") to 500 parts per million by volume, dry ("ppmvd") at 0% oxygen ("$O_2$"), on a one-hour average basis.

3. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.10 and 53.89, and NESHAP CC § 63.670(c), Suncor must operate the Main Plant Flare with no visible emissions, except for periods not to exceed a total of five minutes during any two consecutive hours, when regulated material is routed to the flare and the flare vent gas flow rate is less than the smokeless design capacity of the flare.

---

[2] As of June 14, 2023, this and other requirements from AQCC Regulation 7 cited in this Compliance Advisory are now located at AQCC Regulation 24.
[3] See **Appendix A** for a complete list of acronyms and their meanings as used throughout this Compliance Advisory.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          4 |



App. 1875

4.    Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2, 21.3, 27.3, 28.3, 29.2, 29.9, 30.2, 30.10, 38.2.1, 46.1.1, and 46.8; NSPS J, § 60.104(a)(1); Permit 04AD0110, Condition 6; Permit 09AD1351, Condition 9; and NSPS Ja, §§ 60.102a(g)(1)(ii) and 60.103a(h), Suncor shall not burn in any fuel gas combustion device or any affected flare any fuel gas that contains hydrogen sulfide ("$H_2S$") in excess of 162 parts per million volumetric ("ppmv") determined hourly on a 3-hour rolling average basis. Pursuant to AQCC Regulation 23, Part A, § IV.F.3, Suncor shall not burn any fuel gas in the Main Plant Flare that contains $H_2S$ in excess of 162 ppmv determined hourly on a 3-hour rolling average basis.

5.    Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 13.8, and the West Plant Consent Decree, Paragraph 73(a), Suncor shall limit CO emissions from Process Boiler B-8 to 0.060 pounds per million British Thermal Units ("lb/MMBtu") on a 24-hour rolling average basis.

6.    Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 24.5, 52.13 and 53.51; NESHAP CC, § 63.650(a); and NESHAP R, § 63.427(b); Suncor shall operate the Rail Loading Rack (R101) vapor combustion unit ("VCU") in a manner not to go below 1,299 degrees Fahrenheit on a 6-hour rolling average. Operation of the VCU in a manner going below the operating parameter value (1,299 °F, 6-hour rolling average) shall constitute a violation of the emission standard in NESHAP R, § 63.422(b).

7.    Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 20.1, Suncor shall not exceed the sulfur dioxide ("$SO_2$") emission limit of 15.68 pounds per hour ("lb/hr") from the Tail Gas Unit ("TGU") Incinerator (H-25). Pursuant to Permit 96OPAD120, Section II, Conditions 20.6.1 and 45.12.1; the West Plant Consent Decree, Paragraphs 169 and 171; and NSPS J, § 60.104(a)(2)(i), Suncor shall not discharge or cause the discharge of any gases into the atmosphere from any Claus sulfur recovery plant containing in excess of, for an oxidation control system or a reduction control system followed by incineration, 250 ppmvd of $SO_2$ at 0% excess air, on a 12-hour rolling average. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.10 and 54.28, and NESHAP UUU, § 63.1568(a)(1), the sulfur recovery units ("SRUs") at the Refinery, Plant 1, are subject to NSPS J, § 60.104(a)(2)(i), and the hazardous air pollutant emission limit for the SRUs is 250 ppmvd of $SO_2$ at 0% excess air, on a 12-hour rolling average.

8.    Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 22.2.1.1, and the West Plant Consent Decree, Paragraph 38, Suncor must limit $SO_2$ emissions from the Plant 1 FCCU to 50 ppmvd at 0% $O_2$, on a 7-day rolling average.

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    5 |

App. 1876

9.   Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.10, 30.11, 31.10, and 53.91, and NESHAP CC § 63.670(e)(1), Suncor must operate the Asphalt Unit Flare, Gasoline Benzene Reduction (GBR) Unit Flare, and Main Plant Flare to maintain the net heating value of flare combustion zone gas ("NHVcz") at or above 270 British thermal units per standard cubic foot ("Btu/scf") as determined on a 15-minute block period basis when regulated material is routed to the flare for at least 15 minutes.

10.  Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7 and 35.1, and Permit 96OPAD120 (2/22/2018), Section IV, Condition 16, Suncor must comply with the opacity limits in AQCC Regulation 1. Pursuant to AQCC Regulation 1, § II.A.1, Suncor shall not allow or cause the emission into the atmosphere of any air pollutant that is in excess of 20% opacity based on 24 consecutive opacity readings taken at 15-second intervals for six minutes. Pursuant to AQCC Regulation 1, § II.A.4, Suncor shall not allow or cause to be emitted into the atmosphere any air pollutant resulting from the building of a new fire, cleaning of fire boxes, soot blowing, start-up, any process modification, or adjustment or occasional cleaning of control equipment, which is in excess of 30% opacity for a period or periods aggregating more than six minutes in any sixty consecutive minutes. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.2, 22.7.3, 45.1.2, and 54.1.2; the West Plant Consent Decree, Paragraph 54; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1), Suncor shall not discharge or cause the discharge into the atmosphere from any FCCU catalyst regenerator any gases exhibiting greater than 30% opacity, except for one six-minute average opacity reading in any one-hour period. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.3 and 54, and NESHAP UUU, § 63.1564(a)(2), Suncor shall maintain the 3-hour rolling average opacity of emissions from the FCCU catalyst regenerator vent to no higher than 20%.

11.  Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.9.2 and 45.11, and the West Plant Consent Decree, Paragraph 47(a), Suncor must conduct annual stack tests at the Plant 1 FCCU by December 31 of each calendar year to monitor compliance with the particulate matter ("PM") emissions standard in Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.1, 22.9, and 45.1.1 and NSPS J § 60.102(a)(1), and will submit the results of each test in the first report due under Permit 96OPAD120 (2/22/2018), Section II, Condition 61.3 that is at least three (3) months after the test.

12.  Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 22.14.2, Suncor must conduct an annual performance test on the Plant 1 FCCU regenerator to monitor compliance with the annual Hydrogen Cyanide ("HCN") limitation in Permit 96OPAD120, Section II, Condition 22.14.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          6 |

App. 1877

13. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 20.7, and the West Plant Consent Decree, Paragraph 173, all sulfur pit emissions to the atmosphere shall be either eliminated or included and monitored as part of the sulfur recovery plant's emissions. Vents from the No.1 sulfur recovery unit ("SRU") sulfur pit and No. 2 SRU sulfur pit are vented to the TGU Incinerator (H-25) and emissions are monitored via the $SO_2$ continuous emissions monitoring system.

14. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 59.1, and the West Plant Consent Decree, Paragraph 202, Suncor shall install, certify, calibrate, maintain, and operate all continuous emissions monitoring systems ("CEMS") required by the West Plant Consent Decree in accordance with the requirements of 40 C.F.R. Part 60, Appendices A, B, and F. In lieu of the requirements of 40 C.F.R. Part 60 Appendix F § 5.1.1, 5.1.3, and 5.1.4, Suncor shall conduct either a Relative Accuracy Audit ("RAA") or Relative Accuracy Test Audit ("RATA") once every twelve (12) calendar quarters, provided that a Cylinder Gas Audit is conducted each calendar quarter.

15. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 21.3 and 46.1.3.1.a., and NSPS Ja § 60.102a(g)(2)(i)(A), NOx emissions from process heater H-1716 shall not exceed 40 ppmvd, corrected to 0% excess air, on a 30-day rolling average basis. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 21.3 and 46.18, and NSPS Ja §§ 60.107a(c) and 60.107a(c)(6), the owner or operator of a process heater subject to the NOx emissions limit in NSPS Ja § 60.102a(g)(2) and electing to comply with the applicable emissions limit in NSPS Ja § 60.102a(g)(2)(i)(A), shall install, operate, calibrate and maintain an instrument for continuously monitoring and recording the concentration of NOx emissions into the atmosphere.

16. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 24.5, 34.2, 34.7, 43.8, 47.1, 53.44, 55, and 64, Suncor is required to comply with the applicable equipment leak standards, including Leak Detection and Repair ("LDAR") monitoring requirements, contained in NSPS VV, §§ 60.482-1 to 60.482-10; NSPS VVa, §§ 60.482-1a to 60.482-10a; NSPS GGGa, § 60.592a(a); NESHAP CC, § 63.648(a); AQCC Regulation 7, Part B, § VI.C. (2022 – June 2023); and AQCC Regulation 24, Part B, § VI.C (June 2023 – present).

17. Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 43.8.7, and AQCC Regulation 24, Part B, § VI.C.4.c.(i), Suncor must submit a quarterly report to the Division by the 15th day of February, May, August, and November that lists all leaking components that were located during the previous three calendar months (quarter), but not repaired within 15 working days, all leaking components awaiting unit turnaround, the total number of components inspected, and the total number of components found leaking.



18.  Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 56.2; the West Plant Consent Decree, Paragraphs 54 and 156(a); and NSPS A § 60.11(d), Suncor shall, at all times, including during periods of startup, shutdown, and/or malfunction, to the extent practicable, maintain and operate any affected facility, including any associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions. Determination of whether acceptable operating and maintenance procedures are being used will be based on information available to the Administrator which may include, but is not limited to, monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source.

19.  Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Conditions 53.12 and 54.35; NESHAP R, § 63.420(k); NESHAP CC, § 63.642(n); NESHAP UUU, § 63.1570(c); and NESHAP A, § 63.6(e)(1)(i), at all times, Suncor must maintain and operate any affected source, including any associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions. The general duty to minimize emissions does not require the owner and/or operator to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. Determination of whether a source is operating in compliance with operation and maintenance requirements will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operation and maintenance procedures, review of operation and maintenance records, and inspection of the source.

20.  Pursuant to Permit 04AD0109, General Term and Condition No. 1, the permit is issued in reliance upon the accuracy and completeness of information supplied by the applicant and is conditioned upon conduct of the activity, or construction, installation, and operation of the source, in accordance with this information and with representations made by the applicant or applicant's agents.

21.  Pursuant to Permit 96OPAD120 (2/22/2018), Section II, Condition 22.13, the compliance assurance monitoring ("CAM") requirements in 40 C.F.R. Part 64, as adopted by reference in AQCC Regulation 3, Part C, § XIV, apply to the Plant 1 FCCU with respect to the particulate matter limitations identified in Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.9.1 and 22.11. Suncor must report excursions of any six-minute average opacity in excess of 20% and, during periods of building a new fire, cleaning of fire boxes, soot blowing, start-up, any process modification, or adjustment or occasional cleaning of control equipment, any two six-minute average opacities in excess of 30% during any 60 consecutive minutes.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          8 |



App. 1879

22. Pursuant to Permit 96OPAD120 (2/22/2018), Section IV, Conditions 21 and 22, and Appendix B, Suncor shall promptly report any deviation from permit requirements, including those attributable to malfunction conditions as defined in the permit, the probable cause of such deviations, and any corrective actions or preventative measures taken. Pursuant to Permit 96OPAD120 (2/22/2018), Section IV, Condition 22.d, the permittee shall submit to the Division all reports of any required monitoring at least every six months, and all instances of deviations from any permit requirements must be clearly identified in such reports.

## Refinery: Plant 2

23. Pursuant to Permit 95OPAD108 (6/15/2009), Section II, Conditions 2.7 and 33.19; Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.7.3, 2.12, 2.16, 32.1.1, and 41.8.1.1; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1), Suncor shall not discharge or cause the discharge into the atmosphere from the Plant 2 fluid catalytic cracking unit (Plant 2 FCCU) any gases that contain CO in excess of 500 ppmvd corrected to 0% excess air, on an hourly average basis.

24. Pursuant to Permit 95OPAD108 (6/15/2009), Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, 8.4, and 22.5.1; Permit 95OPAD108 (9/1/2022), Section II, Conditions 1.3, 2.4, 3.4, 5.3.1, 6.4, 7.2, 8.9, 31.3, 32.2.1, and 32.9; Permit 09AD1422, Condition 10; NSPS J, § 60.104a(a)(1); and NSPS Ja, §§ 60.102a(g)(1)(ii) and 60.103a(h), Suncor shall not burn in any fuel gas combustion device or any affected flare any fuel gas that contains $H_2S$ in excess of 162 ppmv determined hourly on a 3-hour rolling average basis.

25. Pursuant Permit 95OPAD108 (9/1/2022), Section II, Conditions 15.3.1 and 24.1; AQCC Regulation 7, Part B, § I.A. (2020 – June 2023); and AQCC Regulation 24, Part B, § I.A (2023-present), all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves shall be maintained and operated to prevent detectable vapor loss except when opened, actuated, or used for necessary and proper activities. Such opening, actuation, or use shall be limited so as to minimize vapor loss.

26. Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 5.5; and AQCC Regulation 23, Part A, §§ IV.F.3 and IV.F.7, Suncor shall not discharge or cause the discharge of any gases into the atmosphere from the Plant 2 SRU Tail Gas Incinerator containing in excess of 1.20 percent by volume of $SO_2$ at 0% $O_2$ on a dry basis, on a 12-hour rolling average.



27.  Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 2.10 and the East Plant Consent Decree, Paragraph 88.g. and Appendix E, 5.a, Suncor must limit $SO_2$ emissions from the FCCU reactor-regenerator (P004) to 74.4 ppmvd at 0% $O_2$ on a 7-day rolling average, and 37.2 ppmvd at 0% $O_2$ on a 365-day rolling average. Pursuant to AQCC Regulation 23, Part A, § IV.F.3, Suncor must limit $SO_2$ emissions from the FCCU reactor-regenerator (P004) to 37.2 ppmvd at 0% $O_2$ on a 365-day rolling average. Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 2.10, compliance with the $SO_2$ emissions limitations shall be monitored using the continuous emission monitoring system (CEMS).

28.  Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Conditions 5.7 and 41.17.2.1, and NESHAP UUU, § 63.1568(a)(2) and Table 30, Item 4, Suncor shall maintain the daily average combustion zone temperature of the thermal incinerator for the No. 3 SRU at or above 1,416 °F.

29.  Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.11 and 40.94, and NESHAP CC, § 63.670(e)(1), Suncor shall operate the Plant 2 Flare to maintain the NHVcz at or above 270 Btu/scf determined on a 15-minute block period basis when regulated material is routed to the flare for at least 15 minutes.

30.  Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.8 and 20.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1, Suncor shall not allow or cause the emission into the atmosphere of any air pollutant that is in excess of 20% opacity based on 24 consecutive opacity readings taken at 15-second intervals for six minutes. Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.7.2, 31.1.2, and 41.5.1.2; Permit 09AD0961, Condition 27(b); the East Plant Consent Decree, Paragraph 98; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1), Suncor shall not discharge or cause the discharge into the atmosphere from any FCCU catalyst regenerator any gases exhibiting greater than 30% opacity, except for one six-minute average opacity reading in any one-hour period. Pursuant to Permit 95OPAD108 (9/1/2022), Conditions 2.8 and 20.2; Permit 09AD0961, Condition 4; and AQCC Regulation 1, § II.A.4., no owner or operator of a source shall allow or cause to be emitted into the atmosphere any air pollutant resulting from building of a new fire, cleaning of fire boxes, soot blowing, start-up, any process modification, or adjustment or occasional cleaning of control equipment which is in excess of 30% opacity for a period or periods aggregating more than six minutes in any sixty consecutive minutes.

31.  Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 5.11, and the East Plant Consent Decree, Paragraph 226, Suncor must route sulfur pit emissions such that all sulfur pit emissions to the atmosphere are either eliminated or routed to the TGU Incinerator and included within the mass

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director        10 |



App. 1881

based emission limit in Permit 95OPAD108 (9/1/2022), Section II, Condition 5.1.2.

32.  Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Conditions 18.2, 19.2, 28.3, 34, 35, 36, 37, 40.43, and 40.44, Suncor is required to comply with the applicable equipment leak standards, including LDAR monitoring requirements contained in NSPS VV, §§ 60.482-1 to 60.482-10; NSPS VVa, §§ 60.482-1a to 60.482-10a; NSPS GGG, § 60.592(a); NSPS GGGa, § 60.592a(a); NESHAP CC, §§ 63.640(p)(2) and 63.648(a); AQCC Regulation 7, Part B, § VI.C. (2022 – June 2023); and AQCC Regulation 24, Part B, § VI.C.

33.  Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 28.3.7, and AQCC Regulation 24, Part B, § VI.C.4.c.(i), Suncor must submit a quarterly report to the Division by the 15th day of February, May, August, and November that lists all leaking components that were located during the previous three calendar months (quarter), but not repaired within 15 working days, all leaking components awaiting unit turnaround, the total number of components inspected, and the total number of components found leaking.

34.  Pursuant to Permit 95OPAD108 (6/15/2009), Section II, Condition 36.5; Permit 95OPAD108 (9/1/2022), Section II, Condition 30.2; the East Plant Consent Decree, Paragraphs 98, 107, 115, 118 and 234; and NSPS A, § 60.11(d), Suncor shall, at all times, including during periods of startup, shutdown, and/or malfunction, to the extent practicable, maintain and operate any affected facility, including any associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions. Determination of whether acceptable operating and maintenance procedures are being used will be based on information available to the Administrator which may include, but is not limited to, monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source.

35.  Pursuant to Permit 95OPAD108 (6/15/2009), Section II, Conditions 32.2 and 33.81; Permit 95OPAD108 (9/1/2022), Section II, Conditions 40.12 and 41.22; NESHAP CC, § 63.642(n); NESHAP UUU, § 63.1570(c); and NESHAP A, § 63.6(e)(1)(i), at all times, Suncor must maintain and operate any affected source, including any associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions. The general duty to minimize emissions does not require the owner and/or operator to make any further efforts to reduce emissions if levels required by the applicable standard have been achieved. Determination of whether a source is operating in compliance with operation and maintenance requirements will be based on information available to the Administrator which may include, but is not limited to, monitoring results, review of operation and maintenance

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director                           11 |



App. 1882

procedures, review of operation and maintenance records, and inspection of the source.

36. Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 49.2, Suncor must follow the CAM Plan provided in Permit 95OPAD108 (9/1/2022), Appendix I to report the following excursions for the Plant 2 SRU: (1) except as provided for in Permit 95OPAD108 (9/1/2022), Section II, Condition 49.2.3, any daily average combustion zone temperature less than 1,416 °F; (2) except as provided for in Permit 95OPAD108 (9/1/2022), Section II, Condition 49.2.4, any daily average $O_2$ concentration less than 0.846%; (3) during periods of startup and shutdown, a daily average combustion zone temperature less than 1,416 °F is not an excursion, provided the hourly average combustion zone temperature is at or above 1,200 °F; and (4) during periods of startup and shutdown, a daily average $O_2$ concentration less than 0.846% $O_2$ is not an excursion, provided the hourly average $O_2$ concentration is at or above 2%.

37. Pursuant to Permit 95OPAD108 (9/1/2022), Section II, Condition 49.4, Suncor must follow the CAM Plan provided in Permit 95OPAD108 (9/1/2022), Appendix J to report the following excursions for the Plant 2 Flare: (1) any 15-minute block period during which there is at least one minute when waste gas is routed to the Plant 2 Flare and no pilot flame is present; or (2) any 15-minute period in which waste gas is routed to the Plant 2 Flare for at least 15 minutes and the net heating value of flare combustion zone gas is less than 270 btu/scf.

38. Pursuant to Permit 95OPAD108 (6/15/2009), Section IV, Condition 21 and 22, and Appendix B; and Permit 95OPAD108 (9/1/2022), Section IV, Conditions 21 and 22, and Appendix B, Suncor shall promptly report any deviation from permit requirements, including those attributable to malfunction conditions as defined in the permit, the probable cause of such deviations, and any corrective actions or preventative measures taken.

---

## II.   BACKGROUND

The Division conducts inspections and other compliance oversight activities at the Facility at least annually and describes alleged violations in inspection reports and compliance advisories. The Facility has been subject to state air enforcement actions by the Division annually for over ten years, as follows: 1) Notice of Violation, issued jointly by the Division and the U.S. Environmental Protection Agency on July 2, 2024; 2) Compliance Advisory dated June 1, 2023, Case No. 2023-082; 3) Compliance Order on Consent (COC), Effective February 5, 2024: Case Nos. 2022-076 and 2021-082; 4) COC, Effective

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director   12 |



App. 1883

March 6, 2020: Case Nos. 2019-194 and 2019-097; 5) COC, Effective June 24, 2019: Case No. 2018-100; 6) COC, Effective April 19, 2018: Case No. 2017-092; 7) COC, Effective January 9, 2017: Case No. 2016-119; 8) COC, Effective August 26, 2015: Case Nos. 2014-122 & 2014-123; and 9) Settlement Agreement and COC, Effective December 2, 2015: Case Nos. 2013-029, 15-09-20-01; IC-150929-1. These inspection and compliance advisory findings and enforcement actions include violations that were the same as or similar to certain violations alleged in this CA.

### III.    ALLEGED VIOLATIONS AND FACTS

### Refinery: Plant 1 and Plant 3

1.    On June 26-30, 2023, Robert Stockton, of the Division, inspected the Refinery. Based on the Division's inspection, and a review of records related to the Refinery, the Division has identified the following compliance issues at the Refinery, Plant 1 and Plant 3[4]:

   a.  Suncor reported that, on July 11, 2022, a Suncor operator discovered diesel on top of the primary seal fabric on Tank 64, with a small diesel puddle directly beneath the ladder platform. During follow-up inspections, Suncor found that approximately 10-15 feet of the primary seal fabric was torn and the fabric in the location of the tear was brittle. Suncor cleaned Tank 64 and returned it to service on July 14, 2022. During the week of August 8, 2022, Suncor completed replacement of the primary seal fabric. In order to prevent the primary seal from degrading due to potential UV exposure, Suncor replaced the primary seal fabric with polytetrafluoroethylene, which is highly resistant to UV exposure, high temperatures, and other factors that can degrade seal fabrics over time. Suncor failed to maintain and operate Tank 64 to prevent detectable vapor loss, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 1.3.1 and 39.1, and AQCC Regulation 7, Part B, § I.A. (2020 – June 2023).

   b.  Suncor reported that, on August 7, 2022, a thunderstorm caused numerous disruptions at the Refinery, which resulted in a swing in steam pressures in Plant 1. The swing in steam pressures caused the Plant 1 FCCU main air blower to operate with reduced output, which lowered the temperature inside the unit. Suncor made operational adjustments

---

[4] The following alleged violations and facts mostly derive from reporting from Suncor in its semi-annual reports ("SARs") dated March 1, 2023 and October 2, 2023, and  excess emissions reports ("EERs") dated October 28, 2022, January 30, 2023, April 25, 2023, and October 13, 2023. In repeating factual statements from those SARs about the causes of and Suncor's responses to the alleged violations, the Division does not necessarily concur with the accuracy of such statements. Unless specifically noted otherwise, the Division retains the right to dispute the accuracy of any such statements.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          13 |



in an effort to maintain stable temperatures in the FCCU, however, these adjustments resulted in elevated CO emissions from the Plant 1 FCCU regenerator. Additionally, during the thunderstorm, water entered a lube oil tote that supplies the FCCU wet gas compressor (C-17) with oil. On August 8, 2022, a Suncor operator transferred oil from the tote to the oil reservoir, and the water in the lube oil passed through the lube oil filter, causing the filter to plug. Suncor reported that this plug dropped the lube oil pressure enough to cause C-17 to automatically trip offline, which increased the volume of gas to the flare gas recovery system ("FGRS"). In response, Suncor increased flaring to avoid shutting down the FGRS, resulting in a period of visible emissions from the Main Plant Flare. Prior to restarting C-17, Suncor drained water from the oil reservoir and changed out the lube oil filter. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  **Plant 1 FCCU**
       **CO (500 ppmvd at 0% $O_2$, 1-hour average)**
       Start Date and Time: 08/07/2022 20:00 hrs
       End Date and Time: 08/07/2022 21:00 hrs

       Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 22.10.1 and the West Plant Consent Decree, Paragraph 49; and

    ii.  **Main Plant Flare**
       **Visible Emissions (exceeded five minutes during any two consecutive hours)**
       Start Date and Time: 08/08/2022 02:44 hrs
       End Date and Time: 08/08/2022 02:56 hrs

       Suncor failed to comply with the visible emissions standard at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.10 and 53.89, and NESHAP CC § 63.670(c).

c.  Suncor reported that, on August 25, 2022, while attempting to complete maintenance on equipment in the Hydrogen Unit, an isolation valve failed to hold pressure, causing the activation of the safety shutdown system. As a result, Suncor routed hydrogen to the Main Plant Flare, bypassing the FGRS to maintain safety and process stability. After this event, the Hydrogen Unit was restarted and returned to normal operating conditions, and the FGRS was brought back online. From August 25, 2022 at 14:00 hours until August 25, 2022 at 16:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director      14 |



App. 1885

Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

d.  During the rolling 24-hour average periods ending at 18:00 hours on August 26, 2022 until 15:00 hours on August 27, 2022, Suncor exceeded the CO limit (0.060 lb/MMBtu, 24-hour rolling average) for Process Boiler B-8, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 13.8, and the West Plant Consent Decree, Paragraph 73(a).

e.  Suncor reported that, on August 31, 2022, the Hydrogen Unit unexpectedly tripped offline due to the activation of a safety system related to the crossover temperature in the flue gas of the Hydrogen Unit. As a result, steam production from the Hydrogen Unit's waste heat boiler was temporarily reduced, and excess hydrogen was routed to the Main Plant Flare to control unit pressure safely. Suncor reported that the sudden loss of steam production capacity resulted in a steam system disruption and subsequent curtailment of steam to the No. 3 Crude Unit to recover system pressure. The increase in hydrogen flow to the Main Plant Flare required bypassing of the FGRS to maintain system stability until the Hydrogen Unit could be restarted. In February 2023, Suncor changed the alarm and trip set points for the Hydrogen Unit to allow for greater variances in temperature changes. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  **Main Plant Flare**
**H$_2$S in Flare Gas (162 ppmv, 3-hour rolling average)**
Start Date and Time: 08/31/2022 12:00 hrs
End Date and Time: 08/31/2022 18:00 hrs

    Suncor exceeded the H$_2$S limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3; and

    ii.  **Asphalt Unit Flare**
**H$_2$S in Flare Gas (162 ppmv, 3-hour rolling average)**
Start Date and Time: 08/31/2022 17:00 hrs
End Date and Time: 08/31/2022 19:00 hrs

    Suncor exceeded the H$_2$S limit (162 ppmv, 3-hour rolling average) at the Asphalt Unit Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 30.2, 30.10, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).



App. 1886

f.  Suncor reported that, on September 6, 2022, during startup of process equipment in the Catalytic Polymerization Unit, process reaction rates were lower than normal, which required venting of gases to the fuel gas system to maintain safe operating pressures. Suncor determined that the cause of the lower reaction rate was a heat exchanger performance issue. Suncor determined that the cause of the $H_2S$ in the vented gas stream was due to lower than anticipated caustic strength levels in the feed treatment section of the unit. To correct the problem, Suncor added a caustic solution to the amine system and increased the reactor temperatures in the catalytic polymerization unit to the target temperatures. From September 6, 2022 at 10:00 hours until September 6, 2022 at 14:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Plant 1 Fuel Gas System, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2, 21.3, 27.3, 28.3, 30.2, 30.10, 38.2.1, and 46.1.1; Permit 04AD0110, Condition 6; Permit 09AD1351, Condition 9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

g.  Suncor reported that, on September 15, 2022, a failed level-indicating device in the Catalytic Polymerization Unit ("CPU") at an upstream drum with a water booster allowed water to carry over into the de-ethanolizer, which resulted in the freezing of a process line. Suncor reported that the frozen line caused the pressures in the CPU to increase. To maintain safe pressure levels in the system, Suncor vented gas from the CPU into the Plant 1 Fuel Gas System. The venting of CPU gases into the Plant 1 Fuel Gas System resulted in the activation of a fuel gas system pressure protection device, in accordance with system design. When the device releases, fuel gas is released to the Plant 1 flare system. The pressure relief device, however, failed to reset properly after Suncor stabilized the system's pressure. The failed reset allowed fuel gas to continue to flow into the flare system, resulting in the FGRS exceeding its treatment capabilities. From September 15, 2022 at 22:00 hours until September 16, 2022 at 10:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

h.  Suncor reported that, on September 23, 2022, the 6-hour rolling average temperature of the Rail Loading Rack VCU (R101) dropped below the 1,299 °F operating limit. At 01:15 hours on September 23, 2022, the Rail Loading Rack VCU tripped offline due to high waste gas pressure. Railcar loading was ongoing. It started the previous day, at 19:51 hours. Initially, the stack temperature of the VCU increased to the expected

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          16 |



App. 1887

loading setpoint of 1,350 °F, however, at 20:48 hours, the temperature began to rise beyond that point, triggering the automatic activation of the air dampeners to cool the system. At 20:56 hours on September 22, 2022, the temperature peaked at 1,417 °F before beginning to drop, until it reached a low of 1,100 °F. From September 23, 2022 at 03:07 hours until September 23, 2022 at 11:27 hours, Suncor failed to operate the Rail Loading Rack VCU at or above 1,299 °F on a 6-hour rolling average, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 24.5, 52.13 and 53.51, NESHAP CC, § 63.650(a); and NESHAP R, § 63.427(b).

i.   Suncor reported that, on September 26, 2022, while replacing an electrical component within the Hydrogen Unit control system, a safety system trip was inadvertently activated. As a result, hydrogen was temporarily routed to the Main Plant Flare and the SRU to maintain safe operating conditions. The additional hydrogen in the flare gas affected the ability of the Flare Gas Recovery Unit ("FGRU") to recover all of the flare gases; therefore, some sour gases were routed to the Main Plant Flare. Additionally, the excess hydrogen routed to the SRU led to increased $SO_2$ emissions at the TGU Incinerator. This event resulted in the following exceedances and noncompliance with operating standards:

   i.   **Main Plant Flare**
       **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
       Start Date and Time: 09/26/2022 13:00 hrs
       End Date and Time: 09/26/2022 16:00 hrs

       Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

   ii.   **Plant 1 TGU Incinerator (H-25)**
       $SO_2$ (15.68 lb/hr)
       Start Date and Time: 09/26/2022 14:00 hrs
       End Date and Time: 09/26/2022 16:00 hrs

       Suncor exceeded the $SO_2$ limit (15.68 lb/hr) at the Plant 1 TGU Incinerator (H-25), violating Permit 96OPAD120 (2/22/2018), Section II, Condition 20.1.

j.   Suncor reported that, on September 26, 2022, a Suncor operator detected odors and suspected a process leak. An investigation uncovered two leaks from the fuel gas piping. To ensure safety of plant personnel

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director         17 |



App. 1888

and facilitate pipe repair, Suncor reduced the pressure in the leaking section of the fuel gas line by routing fuel gases to the Main Plant Flare, and minimized production rates in Plants 1 and 3 to reduce the generation of refinery fuel gas. Suncor then routed fuel gas to the Main Plant Flare to isolate the leaking section of the fuel gas line. Suncor repaired the pipe and installed a custom clamp to ensure the leaking pipe can be contained until it is replaced during the 2026 plant turnaround. As a result of this event, from September 28, 2022 at 16:00 hours until October 1, 2022 at 17:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

k. Suncor reported that, on October 4, 2022, a pressure regulator valve on the Plant 1 steam system failed, causing over-pressurized steam to enter the refinery steam lines. As a result, the pressure relief valves on the steam system opened, which rapidly decreased the pressure in the steam system. The sudden drop in pressure signaled the Plant 1 steam boilers B-4, B-6, and B-8 to increase steam production. Suncor determined that the sudden increase in demand caused Boiler B4 to trip offline, and consequently, there was not enough steam being sent to the Plant 1 FCCU main air blower, which supplies air to the FCCU regenerator. The lack of steam to the main air blower resulted in excess CO emissions from the FCCU regenerator. From October 4, 2022 at 08:00 hours until October 4, 2022 at 09:00 hours, Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) from the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49.

l. Suncor reported that, due to the leaks discovered in the fuel gas piping, detailed in this Compliance Advisory, Section III, Paragraph 1.j., above, a large amount of debris entered the Plant 1 fuel gas line and went into the FGRS first stage strainers, valve PV522, and associated bleeders. This debris caused significant plugging, which resulted in the FGRS tripping and shutting down. The FGRS shutdown and subsequent efforts to restart it caused fuel gas containing $H_2S$ to be sent to the Main Plant Flare. This event resulted in the following exceedances and noncompliance with operating standards:

    i. <u>**Main Plant Flare**</u>
    **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
    Start Date and Time: 10/11/2022 18:00 hrs
    <u>End Date and Time: 10/11/2022 23:00 hrs</u>
    Start Date and Time: 10/14/2022 20:00 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000  www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director     18 |



App. 1889

<u>End Date and Time: 10/15/2022 14:00 hrs</u>

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

m.  Suncor reported that, on November 11, 2022, the pressure control valve in the instrument air line between Plant 1 and Plant 3 remained in the closed position, resulting in a loss of instrument air to Plant 3. The loss of instrument air to Plant 3 caused a loss of system pressure, and Suncor operators initiated a shutdown of the Plant 3 heaters to troubleshoot the pressure loss. The shutdown of the Plant 3 heaters sent refinery fuel gas to the Plant 3 FGRS. The FGRS seal drum released gases to the Asphalt Unit Flare, and the loss of instrument air to the FGRS caused the FGRS compressor to trip. The Asphalt Unit Flare experienced a decrease in NHVcz while it received refinery fuel gas. In an attempt to remain in compliance with the NHVcz limitation, Suncor reported that operators adjusted the supplemental natural gas being sent to the combustion zone, however due to the lack of instrument air, the natural gas took longer than normal to reach the combustion zone. From November 11, 2022 at 05:15 hours until November 11, 2022 at 05:30 hours, Suncor failed to comply with the NHVcz standard (≥ 270 Btu/scf, 15-minute average) at the Asphalt Unit Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 30.11 and 53.91, and NESHAP CC § 63.670(e)(1).

n.  Suncor reported that, beginning on December 21, 2022, numerous operational issues continued for several days following a cold front in the Denver area. Suncor reported the following timeline of the events that occurred within the Refinery between December 21, 2022 and December 28, 2022:

<u>December 21, 2022</u>

18:53 hours – The Plant 1 FCCU wet gas compressor, C-17, tripped.
21:58 hours until 23:45 hours – Suncor attempted to restart C-17, which ultimately tripped again when the Plant 1 FCCU was shut down.
23:30 hours – Boiler B-8 tripped offline.

<u>December 22, 2022</u>

00:16 hours – The pressure swing absorption (PSA) section of the Hydrogen Unit in Plant 1 tripped, sending excess hydrogen to the

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director        19 |



App. 1890

Main Plant Flare.
00:17 hours – FGRS first stage was fully closed to prevent the entire FGRS from tripping offline.
00:22 hours – The No. 3 Hydrogen Desulfurization (HDS) unit began to shut down.
00:44 hours – An exchanger fire occurred in the No. 3 Hydrodesulfurizer System (HDS) unit.
01:30 hours – Suncor operators manually activated the emergency shutdown system for the No. 1 FCCU, shutting down the unit.
02:45 hours – The entire FGRS for Plant 1 tripped offline.
07:17 hours – Boiler B-6 tripped offline.
09:00 hours – The Plant 3 No. 3 Crude Unit was put into a state of circulation, which results in the unit staying hot, but no longer receiving feed or sending products to storage.
14:21 hours – Boiler B-8 was restarted.
17:55 hours – Boiler B-6 was restarted.

December 24, 2022
10:00 hours – Plant 2 No. 2 Crude Unit experienced an operational disruption.
10:50 hours – A fire occurred in the Plant 1 No. 2 HDS Unit.
10:50 hours – Suncor shut down the No. 2 HDS Unit, No. 1 Reformer Unit, and the No. 4 HDS unit.
16:38 hours – A vapor release occurred in the Plant 2 No. 2 Crude Unit and Suncor shut down the unit at that time.

December 26, 2022
00:00 hours – The No. 1 Crude Unit in Plant 1 was placed into circulation.
15:00 hours – Suncor shut down the No. 2 Reformer in Plant 1.

December 27, 2022
10:00 hours – Suncor shut down the No. 2 FCCU along with the Unsaturated Gas Plant and the Catalytic Polymerization Unit in Plant 2.
13:00 hours – A fire occurred in the Plant 2 Sour Water Stripper area.
20:30 hours – The Hydrogen Unit was brought back online.

The events listed above resulted in the following exceedances and noncompliance with operating standards at Plants 1 and 3:

     i. **Plant 1 TGU Incinerator (H-25)**
       **$SO_2$ (15.68 lb/hr)**
       Start Date and Time: 12/22/2022 11:00 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director                    20 |



App. 1891

End Date and Time: 12/22/2022 18:00 hrs
Start Date and Time: 12/22/2022 19:00 hrs
End Date and Time: 12/23/2022 01:00 hrs
Start Date and Time: 12/23/2022 11:00 hrs
End Date and Time: 12/23/2022 14:00 hrs
Start Date and Time: 12/23/2022 16:00 hrs
End Date and Time: 12/23/2022 18:00 hrs
Start Date and Time: 12/24/2022 03:00 hrs
End Date and Time: 12/24/2022 09:00 hrs
Start Date and Time: 12/24/2022 10:00 hrs
End Date and Time: 12/27/2022 16:00 hrs

**$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour rolling average)**
Start Date and Time: 12/22/2022 12:00 hrs
End Date and Time: 12/29/2022 23:00 hrs

Suncor exceeded the $SO_2$ limits (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator (H-25), violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);

ii. **Plant 1 Fuel Gas System**
**$H_2S$ in Fuel Gas (162 ppmv, 3-hour rolling average)**
Start Date and Time: 12/22/2022 13:00 hrs
End Date and Time: 12/22/2022 21:00 hrs
Start Date and Time: 12/24/2022 02:00 hrs
End Date and Time: 12/24/2022 04:00 hrs

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Plant 1 Fuel Gas System, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2, 21.3, 27.3, 28.3, 30.2, 30.10, 38.2.1, and 46.1.1; Permit 04AD0110, Condition 6; Permit 09AD1351, Condition 9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii);

iii. **Main Plant Flare**
**$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
Start Date and Time: 12/21/2022 20:00 hrs
End Date and Time: 12/24/2022 14:00 hrs
Start Date and Time: 12/25/2022 00:00 hrs
End Date and Time: 12/25/2022 03:00 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    21 |



App. 1892

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3;

 iv. **Plant 1 FCCU**
  **Opacity (State - 20%, 6-minute average)**
  Start Date and Time: 12/22/2022 07:30 hrs
  <u>End Date and Time: 12/22/2022 07:36 hrs</u>
  Start Date and Time: 12/22/2022 07:48 hrs
  <u>End Date and Time: 12/22/2022 07:54 hrs</u>

  Suncor exceeded the opacity limit (State – 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120 (2/22/2018), Section IV, Condition 16; and AQCC Regulation 1, § II.A.1; and

 v. **Asphalt Unit Flare**
  **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
  Start Date and Time: 12/21/2022 23:00 hrs
  <u>End Date and Time: 12/22/2022 01:00 hrs</u>

  Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Asphalt Unit Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 30.2, 30.10, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).

o. Suncor conducted invalid annual testing for PM and HCN on the Plant 1 FCCU in 2022, which the Division disapproved because Suncor failed to provide sufficient notice for the test, and because the test was not performed under representative conditions. Previous Plant 1 FCCU testing for PM and HCN occurred in September 2021, and Suncor did not conduct valid testing of the Plant 1 FCCU for PM or HCN until August 2023, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.9.2, 22.14.2, and 45.11, and the West Plant Consent Decree, Paragraph 47(a).

p. On January 11, 2023, the Plant 1 sulfur reduction plant and all sulfur producing refinery process units were offline. Suncor reported that residual sulfur compounds from the sulfur storage tank and sulfur pit entered the Plant 1 TGU Incinerator (H-25), resulting in $SO_2$ emissions from the stack. Suncor determined that during this time, the oxygen concentration in the Plant 1 TGU Incinerator was unusually high,



App. 1893

resulting in an exceedance of the SO$_2$ limitation when corrected to 0% O$_2$. From January 11, 2023 at 01:00 hours until January 11, 2023 at 07:00 hours, Suncor exceeded the SO$_2$ limit (250 ppmvd at 0% O$_2$, 12-hour rolling average) from the Plant 1 TGU Incinerator, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1).

q.  Suncor reported that, beginning on January 15, 2023, while the Plant 1 Hydrogen Unit was in the process of shutting down, the volume of hydrogen gas being sent to the Main Plant Flare decreased. This decrease in hydrogen gas resulted in a drop in NHVcz at the Main Plant Flare. Suncor operators did not initially identify the drop in NHVcz because they were monitoring the wrong value. Upon determining the wrong value was being monitored and the NHVcz was too low, Suncor operators increased the natural gas feed to the flare to increase the NHVcz. This event resulted in the following noncompliance with operating standards:

    i.  **Main Plant Flare**
        **NHVcz (≥270 Btu/scf, 15-minute average)**
        Start Date and Time: 01/15/2023 20:00 hrs
        <u>End Date and Time: 01/16/2023 00:15 hrs</u>
        Start Date and Time: 01/16/2023 00:30 hrs
        <u>End Date and Time: 01/16/2023 05:30 hrs</u>

        Suncor failed to comply with the NHVcz standard (≥ 270 Btu/scf, 15-minute average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.10 and 53.91, and NESHAP CC, § 63.670(e)(1).

r.  Suncor reported that, on January 19, 2023, as part of the Refinery recovery plan implemented after the events described in this Compliance Advisory, Section III, Paragraph 1.n., it conducted planned maintenance that involved blowing out plugged air nozzles within the Plant 1 FCCU. Suncor started the Plant 1 FCCU regenerator main air blower (C-16) to enable the withdrawal of catalyst from the regenerator. At the time, C-16 had been shut down for an extended period of time, causing catalyst buildup. Suncor reported that the catalyst buildup resulted in opacity from the Plant 1 FCCU. From January 19, 2023 at 10:54 hours until January 19, 2023 at 11:00 hours, Suncor exceeded the opacity standard (State – 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120 (2/22/2018), Section IV, Condition 16; and AQCC Regulation 1, § II.A.1.



s. Suncor reported that, between February 1, and 3, 2023, Suncor was performing maintenance in the Amine Unit. During the process of de-inventorying contaminated amine to replace it with clean amine, sour gases backed up from the Catalytic Polymerization Unit's amine contactor tower to the fuel gas absorber and rich amine flash drum, and ultimately vented to the Main Plant Flare. Suncor reported that the amine had been contaminated with hydrocarbon as a result of the unplanned shutdown that occurred on December 24, 2022, detailed in this Compliance Advisory, Section III, Paragraph 1.n., above. Suncor reported that hydrocarbon carryover into the Amine Unit contaminated the amine, resulting in the amine needing to be replaced prior to the unit being able to successfully startup. This event resulted in the following exceedances and noncompliance with operating standards:

   i. **Main Plant Flare**
      **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
      Start Date and Time: 02/01/2023 18:00 hrs
      End Date and Time: 02/02/2023 02:00 hrs
      Start Date and Time: 02/03/2023 11:00 hrs
      End Date and Time: 02/03/2023 18:00 hrs

      Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

t. Suncor reported that, on February 12, 2023, it took the Plant 1 TGU Incinerator (H-25) offline to perform electrical substation work, which required the vent on the Plant 1 Sulfur Recovery Complex sulfur tank (T-2005) to be opened. Normally, the vent on T-2005 remains closed and its emissions are routed to the TGU Incinerator (H-25). Suncor reported that it opened T-2005 to prevent damage to the tank during the electrical substation work. This event resulted in the following noncompliance with operating standards:

   i. **Sulfur Pit (T-2005)**
      **Vents to atmosphere must remain closed and vapors controlled at all times**
      Start Date and Time: 02/12/2023 15:31 hrs
      End Date and Time: 02/12/2023 15:49 hrs
      Start Date and Time: 02/12/2023 18:04 hrs
      End Date and Time: 02/12/2023 18:09 hrs
      Start Date and Time: 02/12/2023 18:13 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    24 |



App. 1895

<u>End Date and Time: 02/13/2023 05:24 hrs</u>

Suncor failed to address sulfur pit emissions as required, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 20.7, and the West Plant Consent Decree, Paragraph 173.

u. Suncor reported that, on March 1, and 2, 2023, it started up the Plant 1 TGU incinerator (H-25) in preparation for the startup of other Plant 1 process units. Small amounts of residual sulfur in the piping, base, burner, and stack of H-25 were pushed through the system, which caused excess $SO_2$ emissions from the TGU incinerator stack. From March 10, to 14, 2023, the startup of additional process units within Plant 1 resulted in additional exceedances. These events resulted in the following exceedances and noncompliance with operating standards:

    i. **<u>Plant 1 TGU Incinerator (H-25)</u>**
    **$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour rolling average)**
    Start Date and Time: 03/01/2023 20:00 hrs
    <u>End Date and Time: 03/02/2023 05:00 hrs</u>
    Start Date and Time: 03/10/2023 10:00 hrs
    <u>End Date and Time: 03/11/2023 04:00 hrs</u>
    Start Date and Time: 03/11/2023 23:00 hrs
    <u>End Date and Time: 03/12/2023 00:00 hrs</u>
    Start Date and Time: 03/13/2023 09:00 hrs
    <u>End Date and Time: 03/14/2023 07:00 hrs</u>

    **$SO_2$ (15.68 lb/hr)**
    Start Date and Time: 03/10/2023 15:00 hrs
    <u>End Date and Time: 03/10/2023 17:00 hrs</u>

    Suncor exceeded the $SO_2$ limitations (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator (H-25), violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);

    ii. **<u>Main Plant Flare</u>**
    **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
    Start Date and Time: 03/10/2023 19:00 hrs
    <u>End Date and Time: 03/11/2023 00:00 hrs</u>
    Start Date and Time: 03/11/2023 10:00 hrs
    <u>End Date and Time: 03/11/2023 22:00 hrs</u>

    Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling



average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h) and AQCC Regulation 23, Part A, § IV.F.3; and

iii. **Plant 1 FCCU**
**Opacity (State - 20%, 6-minute average)**
Start Date and Time: 03/14/2023 21:48 hrs
End Date and Time: 03/14/2023 21:54 hrs

Suncor exceeded the opacity limit (State – 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120 (2/22/2018), Section IV, Condition 16; and AQCC Regulation 1, § II.A.1.

v. Suncor reported that, on March 16, 2023, operators observed that approximately two gallons of oil had leaked out from around roof leg sleeves of Tank 4501. The roof of Tank 4501 was cleaned during the week of March 27, 2023. On April 10, 2023, a Suncor operator observed oil leaking through the legs of Tank 4501 during a routine inspection. Suncor reported that vapor entrained in the transfer lines between the desalters and Tank 4501 was likely pushed into the tank, releasing material out of the leg seals. On May 11, 2023, Suncor cleaned the roof of Tank 4501. Suncor failed to maintain and operate Tank 4501 to prevent detectable vapor loss between March and May of 2023, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 23.3.1 and 39.1, and AQCC Regulation 7, Part B, § I.A. (2020 – June 2023).

w. Suncor reported that, on March 22, 2023, while Suncor was conducting maintenance on the relief valves connected to the Main Plant Flare system, the relief valves did not completely seal. Suncor reported that the unsealed relief valves resulted in materials containing $H_2S$ leaking into the Plant 1 flare gas system. As a result, Suncor shut down the Plant 1 FGRS to allow for the safe repair of the unsealed relief valves. While the FGRS was shut down, Suncor observed increased $H_2S$ concentrations in the flare gas combusted by the Main Plant Flare. Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare from March 22, 2023 at 10:00 hours until March 22, 2023 at 12:00 hours, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

x. Suncor reported that, during the startup of the GBR unit flare on March 24, 2023, steam was sent to the GBR unit flare to prevent visible

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000  www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director    26 |



App. 1897

emissions from the flare. As a result, the system automatically introduced a large amount of supplemental city gas, which led to a drop in the city gas header pressure and resulted in a trip of the pressure swing adsorption unit in the Hydrogen Plant. Suncor reported that the trip of the pressure swing adsorption caused high flare gas flow, and resulted in the opening of the flare suction valve on the Main Plant Flare gas recovery system. Therefore, gases with elevated concentration of $H_2S$ were sent to the Main Plant Flare. This event resulted in the following exceedances and noncompliance with operating standards:

i. **Main Plant Flare**
**H2S in Flare Gas (162 ppmv, 3-hour rolling average)**
Start Date and Time: 03/24/2023 03:00 hrs
End Date and Time: 03/24/2023 09:00 hrs

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3; and

ii. **GBR Unit Flare**
**NHVcz (≥ 270 Btu/scf, 15-minute average)**
Start Date and Time: 03/24/2023 01:30 hrs
End Date and Time: 03/24/2023 02:00 hrs

Suncor failed to comply with the NHVcz standard (≥ 270 Btu/scf, 15-minute average) at the GBR Unit Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 31.10 and 53.91, and NESHAP CC, § 63.670(e)(1).

y. Suncor reported that, on March 28, 2023, operators initiated startup activities for the Plant 1 FCCU. Suncor reported that, on March 29, 2023, operators encountered issues with catalyst micro-fines and continued opacity from the FCCU. Suncor decided to shut down and restart the FCCU to address the opacity issues, and startup activities continued intermittently until an external electrical voltage sag caused Plant 1 to shut down on April 2, 2023. This event resulted in the following exceedances and noncompliance with operating standards:

i. **Plant 1 FCCU**
**Opacity (State - 20%, 6-minute average)**
Start Date and Time: 03/29/2023 08:06 hrs
End Date and Time: 03/29/2023 08:30 hrs
Start Date and Time: 03/29/2023 08:42 hrs



End Date and Time: 03/29/2023 09:30 hrs
Start Date and Time: 03/29/2023 09:42 hrs
End Date and Time: 03/29/2023 11:18 hrs
Start Date and Time: 03/29/2023 11:24 hrs
End Date and Time: 03/29/2023 12:18 hrs
Start Date and Time: 03/29/2023 12:24 hrs
End Date and Time: 03/29/2023 16:42 hrs
Start Date and Time: 03/29/2023 17:36 hrs
End Date and Time: 03/29/2023 18:00 hrs
Start Date and Time: 03/29/2023 22:54 hrs
End Date and Time: 03/30/2023 01:24 hrs
Start Date and Time: 03/30/2023 08:30 hrs
End Date and Time: 03/30/2023 09:06 hrs
Start Date and Time: 03/31/2023 04:00 hrs
End Date and Time: 03/31/2023 04:12 hrs
Start Date and Time: 03/31/2023 04:24 hrs
End Date and Time: 03/31/2023 05:06 hrs
Start Date and Time: 03/31/2023 06:54 hrs
End Date and Time: 03/31/2023 10:54 hrs
Start Date and Time: 03/31/2023 11:00 hrs
End Date and Time: 03/31/2023 22:00 hrs
Start Date and Time: 03/31/2023 22:54 hrs
End Date and Time: 03/31/2023 23:24 hrs
Start Date and Time: 04/01/2023 00:48 hrs
End Date and Time: 04/01/2023 01:00 hrs
Start Date and Time: 04/01/2023 01:12 hrs
End Date and Time: 04/01/2023 06:18 hrs
Start Date and Time: 04/01/2023 07:00 hrs
End Date and Time: 04/01/2023 11:36 hrs
Start Date and Time: 04/01/2023 12:00 hrs
End Date and Time: 04/01/2023 13:06 hrs
Start Date and Time: 04/01/2023 15:00 hrs
End Date and Time: 04/01/2023 15:06 hrs
Start Date and Time: 04/01/2023 15:24 hrs
End Date and Time: 04/01/2023 15:48 hrs
Start Date and Time: 04/01/2023 16:00 hrs
End Date and Time: 04/01/2023 16:30 hrs
Start Date and Time: 04/01/2023 16:36 hrs
End Date and Time: 04/01/2023 16:54 hrs
Start Date and Time: 04/01/2023 17:06 hrs
End Date and Time: 04/01/2023 18:00 hrs
Start Date and Time: 04/01/2023 18:12 hrs
End Date and Time: 04/01/2023 19:12 hrs
Start Date and Time: 04/01/2023 19:18 hrs
End Date and Time: 04/01/2023 20:18 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    28 |


App. 1899

Start Date and Time: 04/01/2023 20:42 hrs
End Date and Time: 04/01/2023 21:18 hrs
Start Date and Time: 04/01/2023 21:24 hrs
End Date and Time: 04/01/2023 22:18 hrs
Start Date and Time: 04/01/2023 22:24 hrs
End Date and Time: 04/01/2023 22:54 hrs
Start Date and Time: 04/01/2023 23:00 hrs
End Date and Time: 04/01/2023 23:18 hrs
Start Date and Time: 04/01/2023 23:24 hrs
End Date and Time: 04/02/2023 00:18 hrs
Start Date and Time: 04/02/2023 00:24 hrs
End Date and Time: 04/02/2023 01:18 hrs
Start Date and Time: 04/02/2023 01:24 hrs
End Date and Time: 04/02/2023 02:18 hrs
Start Date and Time: 04/02/2023 02:24 hrs
End Date and Time: 04/02/2023 03:18 hrs
Start Date and Time: 04/02/2023 03:24 hrs
End Date and Time: 04/02/2023 04:18 hrs
Start Date and Time: 04/02/2023 04:24 hrs
End Date and Time: 04/02/2023 05:00 hrs

Suncor exceeded the opacity limit (State – 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120 (2/22/2018), Section IV, Condition 16; and AQCC Regulation 1, § II.A.1;

ii. **Plant 1 FCCU**
**Opacity (Federal - 30%, 6-minute average)**
Start Date and Time: 03/29/2023 08:36 hrs
End Date and Time: 03/29/2023 08:42 hrs
Start Date and Time: 03/29/2023 09:36 hrs
End Date and Time: 03/29/2023 09:42 hrs
Start Date and Time: 03/29/2023 11:18 hrs
End Date and Time: 03/29/2023 11:24 hrs
Start Date and Time: 03/29/2023 12:12 hrs
End Date and Time: 03/29/2023 12:54 hrs
Start Date and Time: 03/29/2023 13:00 hrs
End Date and Time: 03/29/2023 14:34 hrs
Start Date and Time: 03/29/2023 16:00 hrs
End Date and Time: 03/29/2023 16:30 hrs
Start Date and Time: 03/29/2023 22:54 hrs
End Date and Time: 03/30/2023 00:24 hrs
Start Date and Time: 03/30/2023 00:54 hrs
End Date and Time: 03/30/2023 01:18 hrs



App. 1900

Start Date and Time: 03/31/2023 15:34 hrs
End Date and Time: 03/31/2023 16:12 hrs
Start Date and Time: 03/31/2023 16:18 hrs
End Date and Time: 03/31/2023 16:30 hrs
Start Date and Time: 03/31/2023 18:00 hrs
End Date and Time: 03/31/2023 18:12 hrs
Start Date and Time: 03/31/2023 18:24 hrs
End Date and Time: 03/31/2023 18:30 hrs
Start Date and Time: 03/31/2023 19:48 hrs
End Date and Time: 03/31/2023 20:00 hrs
Start Date and Time: 03/31/2023 21:00 hrs
End Date and Time: 03/31/2023 21:30 hrs
Start Date and Time: 04/01/2023 02:06 hrs
End Date and Time: 04/01/2023 02:12 hrs
Start Date and Time: 04/01/2023 07:12 hrs
End Date and Time: 04/01/2023 07:42 hrs
Start Date and Time: 04/01/2023 08:54 hrs
End Date and Time: 04/01/2023 09:06 hrs
Start Date and Time: 04/01/2023 12:48 hrs
End Date and Time: 04/01/2023 13:06 hrs
Start Date and Time: 04/01/2023 15:30 hrs
End Date and Time: 04/01/2023 15:42 hrs
Start Date and Time: 04/01/2023 19:12 hrs
End Date and Time: 04/01/2023 19:24 hrs
Start Date and Time: 04/01/2023 20:18 hrs
End Date and Time: 04/01/2023 20:24 hrs
Start Date and Time: 04/01/2023 21:18 hrs
End Date and Time: 04/01/2023 21:24 hrs
Start Date and Time: 04/01/2023 22:18 hrs
End Date and Time: 04/01/2023 22:24 hrs
Start Date and Time: 04/01/2023 23:18 hrs
End Date and Time: 04/01/2023 23:24 hrs
Start Date and Time: 04/02/2023 00:18 hrs
End Date and Time: 04/02/2023 00:24 hrs
Start Date and Time: 04/02/2023 01:18 hrs
End Date and Time: 04/02/2023 01:24 hrs
Start Date and Time: 04/02/2023 02:18 hrs
End Date and Time: 04/02/2023 02:24 hrs
Start Date and Time: 04/02/2023 03:18 hrs
End Date and Time: 04/02/2023 03:24 hrs
Start Date and Time: 04/02/2023 04:18 hrs
End Date and Time: 04/02/2023 04:24 hrs

Suncor exceeded the opacity limit (Federal – 30%, 6-minute
average) at the Plant 1 FCCU, violating Permit 96OPAD120



(2/22/2018), Section II, Conditions 22.7.2, 22.7.3, 45.1.2, and 54.1.2; the West Plant Consent Decree, Paragraph 54; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1);

    iii.  **Plant 1 FCCU**
**Opacity (Federal - 20%, 3-hour average)**
Start Date and Time: 03/29/2023 09:00 hrs
<u>End Date and Time: 03/29/2023 13:00 hrs</u>
Start Date and Time: 04/02/2023 05:00 hrs
<u>End Date and Time: 04/02/2023 09:00 hrs</u>

Suncor exceeded the opacity limit (Federal – 20%, 3-hour average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.3 and 54, and NESHAP UUU, § 63.1564(a)(2); and

    iv.  **Plant 1 FCCU**
**CO (500 ppmvd at 0% $O_2$, 1-hour average)**
Start Date and Time: 03/28/2023 09:00 hrs
<u>End Date and Time: 03/29/2023 15:00 hrs</u>
Start Date and Time: 03/30/2023 21:00 hrs
<u>End Date and Time: 04/01/2023 16:00 hrs</u>

Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 22.10.1, and the West Plant Consent Decree, Paragraph 49.

z.  Suncor reported that, beginning on March 30, 2023, Suncor began starting up the No. 2 SRU. During the warm-up phase of the No. 2 SRU, sulfur entrained in the unit was burned off. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  **Plant 1 TGU Incinerator (H-25)**
**$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour rolling average)**
Start Date and Time: 03/30/2023 20:00 hrs
<u>End Date and Time: 03/31/2023 00:00 hrs</u>
Start Date and Time: 03/31/2023 01:00 hrs
<u>End Date and Time: 03/31/2023 03:00 hrs</u>
Start Date and Time: 04/01/2023 19:00 hrs
<u>End Date and Time: 04/02/2023 05:00 hrs</u>

**$SO_2$ (15.68 lb/hr)**
Start Date and Time: 03/31/2023 01:00 hrs
<u>End Date and Time: 03/31/2023 02:00 hrs</u>



Suncor exceeded the SO₂ limitations (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator (H-25), violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1).

aa. Suncor failed to conduct either a Relative Accuracy Audit ("RAA") or Relative Accuracy Test Audit ("RATA") once every twelve (12) calendar quarters, provided that a Cylinder Gas Audit is conducted each calendar quarter. Suncor failed to conduct a Cylinder Gas Audit for the SO₂/O₂ CEMS associated with the TGU Incinerator (H-25) during the first quarter of 2023, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 59.1, and the West Plant Consent Decree, Paragraph 202.

bb. Suncor reported that, on April 2, 2023, a power outage triggered safety shutdowns at several process units in Plant 1. The affected equipment was immediately restarted. Startup activities for the Plant 1 FCCU and No. 2 SRU that were interrupted by the power outage were resumed on April 3, 2023. This event resulted in the following exceedances and noncompliance with operating standards:

  i. **Plant 1 TGU Incinerator (H-25)**
     **SO₂ (250 ppmvd at 0% O₂, 12-hour rolling average)**
     Start Date and Time: 04/02/2023 05:00 hrs
     End Date and Time: 04/03/2023 15:00 hrs

     **SO₂ (15.68 lb/hr)**
     Start Date and Time: 04/02/2023 05:00 hrs
     End Date and Time: 04/02/2023 11:00 hrs
     Start Date and Time: 04/02/2023 12:00 hrs
     End Date and Time: 04/02/2023 13:00 hrs
     Start Date and Time: 04/02/2023 15:00 hrs
     End Date and Time: 04/02/2023 16:00 hrs
     Start Date and Time: 04/02/2023 21:00 hrs
     End Date and Time: 04/03/2023 06:00 hrs

     Suncor exceeded the SO₂ limitations (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator H-25, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1);



ii. **Main Plant Flare**
**$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
Start Date and Time: 04/02/2023 10:00 hrs
End Date and Time: 04/02/2023 19:00 hrs
Start Date and Time: 04/02/2023 22:00 hrs
End Date and Time: 04/03/2023 14:00 hrs
Start Date and Time: 04/03/2023 16:00 hrs
End Date and Time: 04/03/2023 20:00 hrs

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling
average) at the Main Plant Flare, violating Permit 96OPAD120
(2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8;
NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC
Regulation 23, Part A, § IV.F.3;

iii. **Plant 1 FCCU**
**$SO_2$ (50 ppmvd at 0% $O_2$, 7-day rolling average)**
Start Date and Time: 04/02/2023 23:00 hrs
End Date and Time: 04/07/2023 23:00 hrs

Suncor exceeded the $SO_2$ limitation (50 ppmvd at 0% $O_2$, 7-day
rolling average) at the Plant 1 FCCU, violating Permit
96OPAD120 (2/22/2018), Section II, Condition 22.2.1.1, and the
West Plant Consent Decree, Paragraph 38;

iv. **Plant 1 FCCU**
**Opacity (State – 20%, 6-minute average)**
Start Date and Time: 04/02/2023 15:06 hrs
End Date and Time: 04/02/2023 15:48 hrs
Start Date and Time: 04/02/2023 18:36 hrs
End Date and Time: 04/02/2023 21:24 hrs
Start Date and Time: 04/02/2023 21:30 hrs
End Date and Time: 04/02/2023 23:18 hrs
Start Date and Time: 04/02/2023 23:24 hrs
End Date and Time: 04/03/2023 01:30 hrs
Start Date and Time: 04/03/2023 01:36 hrs
End Date and Time: 04/03/2023 02:36 hrs
Start Date and Time: 04/03/2023 03:54 hrs
End Date and Time: 04/03/2023 04:00 hrs
Start Date and Time: 04/04/2023 02:24 hrs
End Date and Time: 04/04/2023 02:30 hrs
Start Date and Time: 04/04/2023 07:30 hrs
End Date and Time: 04/04/2023 07:36 hrs
Start Date and Time: 04/04/2023 17:42 hrs
End Date and Time: 04/04/2023 17:48 hrs

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          33 |



App. 1904

Start Date and Time: 04/04/2023 18:42 hrs
End Date and Time: 04/04/2023 18:48 hrs

Suncor exceeded the opacity limit (State – 20%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.1 and 35.1; Permit 96OPAD120 (2/22/2018), Section IV, Condition 16; and AQCC Regulation 1, § II.A.1; and

v. **Plant 1 FCCU**
**Opacity (Federal – 30%, 6-minute average)**
Start Date and Time: 04/02/2023 05:00 hrs
End Date and Time: 04/02/2023 09:12 hrs
Start Date and Time: 04/02/2023 09:30 hrs
End Date and Time: 04/02/2023 09:36 hrs
Start Date and Time: 04/02/2023 10:00 hrs
End Date and Time: 04/02/2023 10:54 hrs
Start Date and Time: 04/02/2023 21:36 hrs
End Date and Time: 04/02/2023 22:48 hrs
Start Date and Time: 04/02/2023 23:18 hrs
End Date and Time: 04/02/2023 23:24 hrs
Start Date and Time: 04/03/2023 00:06 hrs
End Date and Time: 04/03/2023 00:12 hrs
Start Date and Time: 04/03/2023 00:18 hrs
End Date and Time: 04/03/2023 01:42 hrs
Start Date and Time: 04/03/2023 04:36 hrs
End Date and Time: 04/03/2023 04:42 hrs

Suncor exceeded the opacity limit (Federal – 30%, 6-minute average) at the Plant 1 FCCU, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 22.7.2, 22.7.3, 45.1.2, and 54.1.2; the West Plant Consent Decree, Paragraph 54; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1).

cc. Suncor reported that, on April 3, 2023, operators discovered stained soil and liquid material on the ground near the roof drain of Tank 774. Suncor determined that, during the Refinery's startup activities, hydrocarbon liquid passed through the tank's secondary seal onto the floating roof, and ultimately made it to soil via the roof drain. To prevent further leakage, Suncor operators closed the roof drain valves. Suncor deployed vacuum trucks the same day to remove the liquid material, and impacted soil was removed. By May 3, 2023, Suncor completed all necessary cleaning of the tank. Between April 3, 2023 and May 3, 2023, Suncor failed to maintain and operate Tank 774 to prevent detectable vapor loss, violating Permit 96OPAD120 (2/22/2018), Section

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director        34 |



App. 1905

II, Conditions 4.2 and 39.1, and AQCC Regulation 7, Part B, § I.A. (2020 – June 2023).

dd. Suncor reported that, during annual maintenance on Tank 775, which occurred on or about April 5, 2023, Suncor operators observed what appeared to be crude oil on top of the roof of Tank 775. By May 9, 2023, Suncor cleaned the roof of Tank 775. Between April 5, and May 9, 2023, Suncor failed to maintain and operate Tank 775 to prevent detectable vapor loss, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 3.2 and 39.1, and AQCC Regulation 7, Part B, § I.A. (2020 – June 2023).

ee. Suncor reported that, on April 3, 2023, operators began the process of starting up Heater H-1716. After starting the unit, Suncor determined that the CEMS for $NO_x$ was offline. The $NO_x$ CEMS associated with H-1716 was brought back online at approximately 17:00 hrs on April 12, 2023. From April 3, 2023 to April 12, 2023, Suncor failed to operate and maintain an instrument for continuously monitoring and recording the concentration of $NO_x$ emissions into the atmosphere from H-1716, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 21.3 and 46.18, and NSPS Ja §§ 60.107a(c) and 60.107a(c)(6). From April 3, 2023 to at least April 12, 2023, Suncor was unable to demonstrate compliance with the $NO_x$ limitation (40 ppmvd at 0% $O_2$, 30-day rolling average) for H-1716, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 21.3 and 46.1.3.1.a., and NSPS Ja § 60.102a(g)(2)(i)(A).

ff. Suncor reported that, on April 12, 2023, the level indicator on the TGU booster recovery knockout drum, D-7706, jumped from 0% to 100%, causing the TGU and the No. 2 SRU to trip offline as designed. This led to the flaring of acid gas at the Main Plant Flare, $SO_2$ exceedances at the TGU Incinerator (H-25), and elevated $H_2S$ in the Plant 1 fuel gas system. This event resulted in the following exceedances and noncompliance with operating standards:

   i. **Main Plant Flare**
   **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
   Start Date and Time: 04/12/2023 07:00 hrs
   End Date and Time: 04/13/2023 07:00 hrs

   Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104a(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3;



ii. **Plant 1 TGU Incinerator (H-25)**
   **$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour rolling average)**
   Start Date and Time: 04/12/2023 05:00 hrs
   End Date and Time:  04/13/2023 15:00 hrs

   **$SO_2$ (15.68 lb/hr)**
   Start Date and Time: 04/12/2023 05:00 hrs
   End Date and Time: 04/12/2023 12:00 hrs

   Suncor exceeded the $SO_2$ limitations (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator H-25, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1); and

iii. **Plant 1 Fuel Gas System**
   **$H_2S$ in Fuel Gas (162 ppmv, 3-hour rolling average)**
   Start Date and Time: 04/12/2023 07:00 hrs
   End Date and Time: 04/12/2023 21:00 hrs

   Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Plant 1 Fuel Gas System, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2, 21.3, 27.3, 28.3, 30.2, 30.10, 38.2.1, and 46.1.1; Permit 04AD0110, Condition 6; Permit 09AD1351, Condition 9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

gg. Suncor reported that, on April 22, 2023, the 6-hour rolling average temperature of the Rail Loading Rack VCU dropped below the 1,299 °F operating limit. Between 01:58 hours and 02:03 hours, and between 07:24 hours and 07:30 hours on April 22, 2023, the temperature of the R101 VCU dropped below 1,299 °F. Therefore, on April 22, 2023, Suncor failed to operate the Rail Loading Rack VCU at or above 1,299 °F on a 6-hour rolling average, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 24.5, 52.13 and 53.51; NESHAP CC, § 63.650(a); and NESHAP R, § 63.427(b).

hh. Suncor reported that, between April 22, 2023 and May 25, 2023, the Pressure Swing Adsorption process within the Hydrogen Unit in Plant 1 experienced a series of valve failures that resulted in a large volume of gas being routed to the Plant 1 FGRS. The FGRS was unable to process the large volumes of gas, which were therefore routed to the Main Plant Flare. Suncor reported that these events typically occur when operators



App. 1907

switch between specific adsorption beds. During such switches, a failure could occur involving one of the many valves used as part of the Pressure Swing Adsorption process. These events resulted in the following exceedances and noncompliance with operating standards:

    i.  **Main Plant Flare**
        **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
        Start Date and Time: 04/22/2023 14:00 hrs
        <u>End Date and Time: 04/22/2023 22:00 hrs</u>
        Start Date and Time: 05/04/2023 00:00 hrs
        <u>End Date and Time: 05/04/2023 07:00 hrs</u>
        Start Date and Time: 05/24/2023 17:00 hrs
        <u>End Date and Time: 05/25/2023 04:00 hrs</u>

        Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3.

  ii.  Suncor reported that, on April 28, 2023, a significant rise in pressure in the TGU prevented the reducing gas generator ("RGG") combustion blowers from supplying adequate air to the RGG burner, tripping it offline. As a result of the RGG burner tripping offline, the TGU and No. 2 SRU also shut down. With the No. 2 SRU and TGU offline, acid gases from the TGU amine regenerator and Main Plant Amine Unit regenerator were redirected to the Main Plant Flare. In addition, the FGRS was isolated from the flare header to prevent gases with high $H_2S$ concentrations from entering the refinery fuel gas system. Suncor later determined that the vent line from the No. 2 SRU sulfur day tank (T-2000) to the TGU RGG burner became obstructed due to an unintended closure of a steam valve. The unintended closure of the steam valve allowed elemental sulfur to precipitate and form a plug in the T-2000 vent line. This blockage led to a significant increase in pressure across the No. 2 SRU, which then dislodged the plug and created a pressure wave in the system. The pressure wave forced molten sulfur from T-2000 to the TGU RGG burner, and then into the TGU Desuperheater Contact Condenser column, where the sulfur precipitated and formed another plug in the bottom layer of the column packing. The column blockage increased the back pressure on the TGU and prevented air from flowing into the TGU RGG combustion blowers. Consequently, the limited airflow prevented the RGG combustion blowers from supplying adequate air to the burner, which led to the burner's inability to sustain a flame. These events resulted in the following exceedances and noncompliance with operating standards:



i. **Main Plant Flare**
   **$H_2S$ in Flare Gas (162 ppmv, 3-hour rolling average)**
   Start Date and Time: 04/29/2023 02:00 hrs
   End Date and Time: 04/29/2023 21:00 hrs

   Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Main Plant Flare, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 29.2, 29.9, 38.2.1, and 46.8; NSPS J, § 60.104(a)(1); NSPS Ja, § 60.103a(h); and AQCC Regulation 23, Part A, § IV.F.3;

ii. **Plant 1 TGU Incinerator (H-25)**
   **$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour rolling average)**
   Start Date and Time: 04/28/2023 22:00 hrs
   End Date and Time: 04/29/2023 17:00 hrs

   **$SO_2$ (15.68 lb/hr)**
   Start Date and Time: 04/28/2023 22:00 hrs
   End Date and Time: 04/29/2023 03:00 hrs

   Suncor exceeded the $SO_2$ limitations (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator H-25, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1); and

iii. **Plant 1 Fuel Gas System**
   **$H_2S$ in Fuel Gas (162 ppmv, 3-hour rolling average)**
   Start Date and Time: 04/29/2023 00:00 hrs
   End Date and Time: 04/30/2023 06:00 hrs

   Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour rolling average) at the Plant 1 Fuel Gas System, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 11.3, 12.3, 13.3, 14.3, 15.3, 16.3, 17.3, 18.3, 20.6.2, 21.3, 27.3, 28.3, 30.2, 30.10, 38.2.1, and 46.1.1; Permit 04AD0110, Condition 6; Permit 09AD1351, Condition 9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

jj. Suncor reported that, on May 24, 2023, planned startup activities of the No. 1 SRU resulted in elevated $SO_2$ emissions from the TGU Incinerator (H-25). The elevated $SO_2$ emissions occurred as the No. 1 SRU warmed up, and ceased once the unit reached operational stability. This event



resulted in the following exceedances and noncompliance with operating standards:

    i.  **Plant 1 TGU Incinerator (H-25)**
       **$SO_2$ (250 ppmvd at 0% $O_2$, 12-hour rolling average)**
       Start Date and Time: 05/24/2023 11:00 hrs
       <u>End Date and Time: 05/24/2023 23:00 hrs</u>

       **$SO_2$ (15.68 lb/hr)**
       Start Date and Time: 05/24/2023 12:00 hrs
       <u>End Date and Time: 05/24/2023 14:00 hrs</u>

       Suncor exceeded the $SO_2$ limitations (15.68 lb/hr and 250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator H-25, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 20.1, 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1).

kk. Suncor reported that, on June 24, 2023, a small leak was found in one of the two eductors that move gases with $H_2S$ from the T-2005 sulfur tank to the Plant 1 TGU Incinerator (H-25). Suncor reported that operators temporarily opened the T-2005 vent to atmosphere in order for operators to safely isolate and repair the leak. From June 24, 2023 at 10:51 hours until June 24, 2023 at 11:46 hours, Suncor failed to address sulfur pit emissions as required, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 20.7, and the West Plant Consent Decree, Paragraph 173.

ll. Suncor reported that, on June 29, 2023, a hailstorm disrupted operations of the Plant 1 main air compressor, which disrupted the sparger air supply to the T-2005 storage tank in the sulfur recovery complex. This event led to a surge of $H_2S$ from T-2005 to the TGU Incinerator (H-25) until the air compressor was restarted. From June 29, 2023 at 15:00 hours until June 30, 2023 at 01:00 hours, Suncor exceeded the $SO_2$ limitation (250 ppmvd at 0% $O_2$, 12-hour rolling average) at the Plant 1 TGU Incinerator (H-25), violating Permit 96OPAD120, Section II, Conditions 20.6.1, 20.10, 45.12.1, and 54.28; the West Plant Consent Decree, Paragraphs 169 and 171; NSPS J, § 60.104(a)(2)(i); and NESHAP UUU, § 63.1568(a)(1).

mm. Suncor reported that, in late December 2022, the Refinery shut down following a large ambient temperature swing. The shutdown resulted in numerous process unit disruptions, detailed in this Compliance Advisory, Section III, Paragraph 1.n. As a result, Suncor reported that it did not

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000  www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director      39 |



App. 1910

monitor 4,628 LDAR components while Plant 1 was shut down during January 2023 through March 2023. Additionally, Suncor reported that, due to a cybersecurity incident that prevented access to its information technology systems, it was unable to complete monitoring of 73 components for Plants 1 and 3 during April 2023 through at least June 2023. Suncor failed to conduct 4,701 LDAR inspections for Plants 1 and 3 during January 2023 through June 2023, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 24.5, 34.2, 34.7, 43.8, 47.1, 53.44, 55, and 64; NSPS VV, §§ 60.482-1 to 60.482-10; NSPS VVa, §§ 60.482-1a to 60.482-10a; NSPS GGGa, § 60.592a(a); NESHAP CC, § 63.648(a); AQCC Regulation 7, Part B, § VI.C. (2022 – June 2023); and AQCC Regulation 24, Part B, § VI.C (June 2023 – present).

nn. Based on the Division's inspection, and a review of records and materials related to Plants 1 and 3, Suncor failed to maintain and operate all storage tank gauging devices, anti-rotation devices, accesses, seals, hatches, roof drainage systems, support structures, and pressure relief valves to prevent detectable vapor loss except when opened, actuated, or used for necessary and proper activities (e.g. maintenance), violating Permit 96OPAD120, Section II, Condition 39.1; AQCC Regulation 7, Part B, § I.A. (2020 – June 2023); and AQCC Regulation 24, Part B, § I.A. (June 2023 - present).

oo. Based on the Division's inspection, and a review of records and materials related to Plants 1 and 3, Suncor has failed to maintain and operate its affected sources, including the associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 56.2; the West Plant Consent Decree, Paragraphs 54 and 156(a); and NSPS A § 60.11(d).

pp. Based on the Division's inspection, and a review of records and materials related to Plants 1 and 3, Suncor failed to maintain and operate its affected sources, including the associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions, violating Permit 96OPAD120 (2/22/2018), Section II, Conditions 53.12 and 54.35; NESHAP R, § 63.420(k); NESHAP CC, § 63.642(n); NESHAP UUU, § 63.1570(c); and NESHAP A, § 63.6(e)(1)(i).

qq. Suncor failed to comply with permit deviation and CAM excursion reporting requirements as set forth in Permit 96OPAD120 (2/22/2018), Section II, Condition 22.13, Section IV, Conditions 21 and 22, and Appendix B, as detailed below:

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director        40 |



App. 1911

i. The Division reviewed the SARs for Plants 1 and 3, dated March 1, 2023 and October 2, 2023 ("the Plant 1/3 SARs"), and determined that Suncor is inadequately reporting the probable causes, corrective actions, and/or preventative measures for deviations from the requirements of Permit 96OPAD120 (2/22/2018). In numerous instances of deviations reported in the Plant 1/3 SARs, Suncor failed to include a detailed probable cause of the deviation, detailed corrective action, and/or the preventative measures taken to prevent recurrence of the deviation. As a result, the Division has determined that for the Plant 1/3 SARs and other reports submitted during the time period addressed by this Compliance Advisory (July 2022 – June 2023), Suncor has failed to adequately and completely report the probable causes, corrective actions, and/or preventative measures taken in response to deviations from the requirements of Permit 96OPAD120 (2/22/2018), violating Permit 96OPAD120 (2/22/2018), Section II, Condition 22.13.1, and Section IV, Condition 21.

ii. Suncor failed to report the deviations described in this Compliance Advisory, Section III, Paragraphs 1.d. and 1.o., above, in the SAR due March 1, 2023, violating Permit 96OPAD120 (2/22/2018), Section IV, Conditions 21 and 22.d., and Appendix B.

iii. The Plant 1 FCCU is subject to CAM requirements with respect to particulate matter emissions. Suncor is required to monitor opacity emissions and report any excursions as defined in Permit 96OPAD120 (2/22/2018), Section II, Condition 22.13.1. Excursions shall be reported as required by Permit 96OPAD120 (2/22/2018), Section IV, Conditions 21 and 22.d. Suncor failed to report CAM excursions for the Plant 1 FCCU in the Plant 1/3 SARs, violating Permit 96OPAD120 (2/22/2018), Section II, Condition 22.13 and Section IV, Conditions 21 and 22.d.

rr. In January 2004, Suncor submitted a construction permit application for Process Heater H-2101 ("H-2101") as part of the Clean Fuels Project. The H-2101 permit application stated that H-2101 would be designed with low-$NO_x$ burners with an emission rate of 0.036 lb $NO_x$/MMBtu. The resulting construction permit, Permit 04AD0109, was issued May 24, 2004, and states that the annual $NO_x$ emission limit for H-2101 is based on the 0.036 lb $NO_x$/MMBtu emission rate. General Term and Condition No. 1 of Permit 04AD0109 provides: "This permit is issued in reliance upon the accuracy and completeness of information supplied by the applicant and is conditioned upon conduct of the activity, or



App. 1912

construction, installation and operation of the source, in accordance with this information and with representations made by the applicant or applicant's agents." Suncor acknowledged that it has determined that H-2101 is not capable of continuous compliance with the 0.036 lb $NO_x$/MMBtu emission rate. Therefore, from May 24, 2004 to present, Suncor has failed to demonstrate compliance with the permitted controlled $NO_x$ emission rate of 0.036 lb $NO_x$/MMBtu for H-2101, violating General Term and Condition No. 1 of Permit 04AD0109.

### Refinery: Plant 2

2. On June 26-30, 2023, Robert Stockton, of the Division, inspected the Refinery. Based on the Division's inspection, and a review of records related to the Refinery, the Division has identified the following compliance issues at the Refinery, Plant 2[5]:

    a. Suncor reported that, on July 26, 2022, Suncor operators unblocked the North Slurry Pump (02P211) in the Plant 2 FCCU after performing routine maintenance. Suncor operators reported backflow through the pump via a spinning shaft. The discharge check valve had failed and was unable to prevent backflow, which resulted in a sudden loss of slurry to the system. Due to the failed discharge check valve, a sudden rise in pressure on the FCCU riser occurred, potentially from water entering the hot riser and rapidly expanding, and a sudden drop in differential pressure across the Regenerator Slide Valve was recorded by the unit's instrumentation. The Regenerator Slide Valve reacted to low differential pressure by entering the low differential pressure select mode. This mode indicates that the Regenerator Slide valve was no longer acting to control temperature in the Reactor (R201), but rather reacted to control differential pressure across the valve as designed. To alleviate low differential pressure, the valve mostly shut, which resulted in a sudden decrease in catalyst circulation, which decreased reactor temperature. The Regenerator Slide Valve started to open once the differential pressure returned in an attempt to regain circulation, but the temperature dropped below the emergency shutdown device trip point and the regenerator was shut down. That same evening, Suncor reported that the regenerator was brought to hot standby mode and later restarted. As part of the normal startup process, Suncor reported that torch oil was added to the system to heat the catalyst back up to the

---

[5] The following alleged violations and facts mostly derive from reporting from Suncor in its SARs dated September 30, 2022, March 1, 2023 and October 2, 2023, and in its quarterly EERs dated October 28, 2022, January 30, 2023, April 25, 2023, and October 13, 2023. In repeating factual statements from those SARs about the causes of and Suncor's responses to the alleged violations, the Division does not necessarily concur with the accuracy of such statements. Unless specifically noted otherwise, the Division retains the right to dispute the accuracy of any such statements.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director         42 |



App. 1913

required temperatures, which resulted in excess CO emissions. Additionally, after gas oil feed is introduced to the FCCU, the downstream separation equipment takes some time to achieve a steady state. While working to obtain the required operating conditions, Suncor reported that the debutanizer tower experienced a buildup of excessive pressure, which resulted in the relief valve on the tower opening as designed. The venting of overpressure to the Plant 2 Flare resulted in increased $H_2S$ emissions in flare gas. This event resulted in the following exceedances and noncompliance with operating standards:

    i.  **Plant 2 FCCU**
        **CO (500 ppmvd at 0% $O_2$, 1-hour average)**
        Start Date and Time: 07/26/2022 11:00 hrs
        <u>End Date and Time: 07/26/2022 16:00 hrs</u>

        Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108 (6/15/2009), Section II, Conditions 2.7 and 33.19; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1); and

    ii.  **Plant 2 Flare**
        **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
        Start Date and Time: 07/26/2022 20:00 hrs
        <u>End Date and Time: 07/26/2022 23:00 hrs</u>

        Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (6/15/2009), Section II, Conditions 8.4 and 22.5.1; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).

b.  Suncor reported that, on August 15, 2022, the No. 3 SRU tripped offline. Suncor found moisture in the air line of fuel gas control valve 07TV422. When the valve was closed, liquid water was observed exiting through the valve's air vent indicating that the air dryers likely failed. Suncor reported that the moisture in the air line caused the valve to fail, resulting in a loss of flame to the incinerator, which is designed to trip offline whenever the presence of a flame is not detected. After the incinerator tripped offline, the No. 3 SRU went into circulation, which routed higher than normal $H_2S$ concentrations to the Plant 2 fuel gas system. Suncor removed water from the air line, restored the instrument air dryers, and placed a polycarbonate inline filter upstream of valve 07TV422 to help reduce moisture in the airline. Suncor reported that operators experienced issues restarting the incinerator, and once the

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director

43 |



incinerator was relit, the temperature was increased until it was at or above the established temperature limit required for tailgas incineration. The period of temperature increase caused higher than normal concentrations of $H_2S$ in the fuel gas system. From August 15, 2022 at 23:00 hours until August 16, 2022 at 08:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108 (6/15/2009), Section II, Conditions 1.3, 2.10, 3.3, 5.11, 7.2, and 22.5.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

c.  On August 23, 2022, a RATA was conducted for the CEMS associated with the Plant 2 FCCU reactor-regenerator (P004). The $SO_2$ CEMS failed the August 23, 2022 RATA for the relative accuracy of $SO_2$ emissions measured as parts per million, dry (ppmvd) at 0% $O_2$. A second RATA for the $SO_2$ CEMS associated with P004 was conducted on September 25, 2022, which yielded passing results for the relative accuracy of $SO_2$ emissions measured as ppmvd at 0% $O_2$. P004 continued to operate between the failed $SO_2$ RATA and passing $SO_2$ RATA. From August 23, 2022 to at least September 25, 2022, Suncor failed to monitor $SO_2$ emissions, and therefore failed to demonstrate compliance with $SO_2$ limitations (74.4 ppmvd at 0% $O_2$, 7-day rolling average and 37.2 ppmvd at 0% $O_2$, 365-day rolling average) for the Plant 2 FCCU reactor-regenerator, violating Permit 95OPAD108 (9/1/2022), Section II, Condition 2.10; the East Plant Consent Decree, Paragraph 88.g. and Appendix E, 5.a; and AQCC Regulation 23, Part A, § IV.F.3.

d.  Suncor reported that, on September 29, 2022 and February 11, 2023, routine seal inspections of Tank 20 revealed hydrocarbon material on top of the internal floating roof. Suncor reported that Tank 20 was cleaned on October 20, 2022 and February 18, 2023. Tank 20 is scheduled to be taken out of service for a primary seal inspection in 2026. From September 29, 2022 to October 20, 2022, and from February 11-18, 2023, Suncor failed to maintain and operate Tank 20 to prevent detectable vapor loss, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 15.3.1 and 24.1; and AQCC Regulation 7, Part B, § I.A. (2020 – June 2023).

e.  Suncor reported that, on November 17, 2022, the No. 3 SRU tripped offline when a wire on an instrument was pulled out of an electrical terminal during routine maintenance. The loss of instrumentation caused the No. 3 SRU incinerator to trip. The No. 3 SRU and associated sulfur removal systems treat refinery fuel gas and flare gas to reduce $H_2S$ concentrations. While the No. 3 SRU was offline, $H_2S$ concentrations remained elevated and were combusted in the Plant 2 Fuel Gas System. Suncor later determined that two wires had been installed into a single

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director        44 |   

App. 1915

terminal that was designed only for one wire. This setup resulted in the wires becoming loose and eventually disconnecting. Suncor reported that immediate wiring changes were made to ensure reliable and safe operation until the next Plant 2 turnaround when Suncor can reconfigure the wiring permanently. As a result of this event, from November 17, 2022 at 12:00 hours until November 18, 2022 at 03:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 1.3, 2.4, 3.4, 5.3.1, 6.4, 7.2, 31.3, and 32.2.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

f.   Suncor reported that, on November 30, 2022, a faulty gas level indicator in the amine unit caused the amine regenerator tower to overfill. Suncor reported that the overfilling of the regenerator tower caused amine to backup into the amine sump, and excess hydrocarbon carryover was sent to the No. 3 SRU. The excess hydrocarbon carryover, a belt failure on the Plant 2 Reformer desulfurizer separator fin fan, and the failure of a water level indicator in the sour water wash tower all resulted in hydrocarbon carryover to the No. 3 SRU. The hydrocarbon carryover caused carbon buildup on the SRU catalyst, which created backpressure on the thermal reactors. Suncor repaired and adjusted the fin fan, repaired the fuel gas contactor level indicator, and repaired the sour water level indicator. This event resulted in the following exceedances and noncompliance with operating standards:

i.   **Plant 2 Fuel Gas System**
**$H_2S$ in Fuel Gas (162 ppmv, 3-hour average)**
Start Date and Time: 11/30/2022 20:00 hrs
End Date and Time: 12/01/2022 00:00 hrs

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 1.3, 2.4, 3.4, 5.3.1, 6.4, 7.2, 31.3, and 32.2.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii); and

ii.   **No. 3 SRU Incinerator**
**$SO_2$ (1.20% by volume at 0% $O_2$, dry basis, 12-hour rolling average)**
Start Date and Time: 12/04/2022 14:00 hrs
End Date and Time: 12/04/2022 20:00 hrs

Suncor exceeded the $SO_2$ limit (1.20% by volume at 0% $O_2$ on a dry basis, 12-hour rolling average) at the No. 3 SRU Incinerator,



violating Permit 95OPAD108 (9/1/2022), Section II, Condition 5.5 and AQCC Regulation 23, Part A, §§ IV.F.3 and IV.F.7.

g.  Suncor reported that the events described in this Compliance Advisory, Section III, Paragraph 1.n., resulted in emissions exceedances and noncompliance with operating standards at Plant 2, detailed below:

    i.  **Plant 2 Flare**
      **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
      Start Date and Time: 12/22/2022 07:00 hrs
      End Date and Time: 12/22/2022 10:00 hrs
      Start Date and Time: 12/24/2022 18:00 hrs
      End Date and Time: 12/25/2022 04:00 hrs
      Start Date and Time: 12/27/2022 07:00 hrs
      End Date and Time: 12/27/2022 08:00 hrs
      Start Date and Time: 12/27/2022 12:00 hrs
      End Date and Time: 12/27/2022 13:00 hrs
      Start Date and Time: 12/27/2022 16:00 hrs
      End Date and Time: 12/27/2022 19:00 hrs
      Start Date and Time: 12/28/2022 11:00 hrs
      End Date and Time: 12/28/2022 13:00 hrs
      Start Date and Time: 12/28/2022 16:00 hrs
      End Date and Time: 12/29/2022 00:00 hrs

      Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.9, 31.3, and 32.9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h);

    ii.  **Plant 2 Flare**
      **NHVcz (≥ 270 Btu/scf, 15-minute average)**
      Start Date and Time: 12/25/2022 04:45 hrs
      End Date and Time: 12/25/2022 08:30 hrs
      Start Date and Time: 12/25/2022 12:00 hrs
      End Date and Time 12/25/2022 16:30 hrs

      Suncor failed to comply with the NHVcz standard (≥ 270 Btu/scf, 15-minute average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.11 and 40.94, and NESHAP CC, § 63.670(e)(1); and

    iii.  **No. 3 SRU Incinerator**
      **Minimum Temperature (1,416 °F daily average temperature)**
      Start Date and Time: 12/27/2022 00:00 hrs
      End Date and Time: 12/31/2022 00:00 hrs



Suncor failed to comply with the combustion zone temperature operating limit (1,416 °F minimum temperature, daily average) at the thermal incinerator for the No. 3 SRU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 5.7 and 41.17.2.1, and NESHAP UUU, § 63.1568(a)(2) and Table 30, Item 4.

h.  Suncor reported that, on January 20, 2023, it determined that an internal leak in a valve between the Unsaturated Gas Plant Unit and the Plant 2 FCCU caused gases to be vented to the FCCU. As a result, the pressure increased within the FCCU main column, leading to a depressurization of the Plant 2 FCCU's main column to the flare. Additional inspections revealed that some valves were leaking to process equipment. Suncor flagged these valves as needed to be replaced during the upcoming turnaround. On January 20, 2023 from 09:00 hours until 11:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.9, 31.3, and 32.9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).

i.  Suncor reported that, between February 10, 2023 and February 18, 2023, the Plant 2 FCCU began the process of starting up. The startup process of the Plant 2 FCCU resulted in the following emissions exceedances and noncompliance with operating standards:

 i.  **Plant 2 FCCU**
 **CO (500 ppmvd at 0% $O_2$, 1-hour average)**
 Start Date and Time: 02/15/2023 13:00 hrs
 <u>End Date and Time: 02/15/2023 17:00 hrs</u>
 Start Date and Time: 02/16/2023 15:00 hrs
 <u>End Date and Time: 02/16/2023 22:00 hrs</u>
 Start Date and Time: 02/17/2023 21:00 hrs
 <u>End Date and Time: 02/18/2023 16:00 hrs</u>

 Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.7.3, 2.12, 2.16, 32.1.1, and 41.8.1.1; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1); and

 ii.  **Plant 2 FCCU**
 **Opacity (State – 20%, 6-minute average)**
 Start Date and Time: 02/10/2023 23:06 hrs
 <u>End Date and Time: 02/10/2023 23:18 hrs</u>

4300 Cherry Creek Drive S., Denver, CO 80246-1530  P 303-692-2000  www.colorado.gov/cdphe
Jared Polis, Governor  |  Jill Hunsaker Ryan, MPH, Executive Director   47 |



Start Date and Time: 02/16/2023 18:42 hrs
End Date and Time: 02/16/2023 19:00 hrs
Start Date and Time: 02/17/2023 22:42 hrs
End Date and Time: 02/17/2023 23:00 hrs

Suncor exceeded the opacity limit (State – 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.8 and 20.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1.

j.  Suncor reported that, on February 23, 2023, during a period of cold weather, the Plant 2 FCCU was shut down due to a high liquid level in the wet gas compressor knock-out drum. Suncor determined that the high liquid level was the result of an instrumentation issue. Suncor operators first attempted to pump out the liquid in the knock-out drum while the Plant 2 FCCU was still operating, but ultimately decided to shut down the system to prevent damage to the compressor. The shutdown of the Plant 2 FCCU resulted in the following exceedances and noncompliance with operating standards:

  i.  **Plant 2 FCCU**
      **Opacity (State – 20%, 6-minute average)**
      Start Date and Time: 02/23/2023 00:42 hrs
      End Date and Time: 02/23/2023 00:45 hrs
      Start Date and Time: 02/23/2023 05:18 hrs
      End Date and Time: 02/23/2023 05:24 hrs
      Start Date and Time: 02/23/2023 05:18 hrs
      End Date and Time: 02/23/2023 05:24 hrs

      Suncor exceeded the opacity limit (State – 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.8 and 20.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1; and

  ii.  **Plant 2 Flare**
       **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
       Start Date and Time: 02/23/2023 03:00 hrs
       End Date and Time: 02/23/2023 05:00 hrs
       Start Date and Time: 02/23/2023 08:00 hrs
       End Date and Time: 02/23/2023 16:00 hrs

       Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.9, 31.3, and 32.9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director   48 |   

App. 1919

k. Suncor reported that, between February 24 and 26, 2023, the Plant 2 FCCU began the process of starting up after shutting down on February 23, 2023 (as described in this Compliance Advisory, Section III, Paragraph 2.j., above). This startup of the Plant 2 FCCU resulted in the following exceedances and noncompliance with operating standards:

   i. **Plant 2 FCCU**
      **CO (500 ppmvd at 0% $O_2$, 1-hour average)**
      Start Date and Time: 02/25/2023 00:00 hrs
      End Date and Time: 02/25/2023 10:00 hrs
      Start Date and Time: 02/25/2023 14:00 hrs
      End Date and Time: 02/26/2023 09:00 hrs

      Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.7.3, 2.12, 2.16, 32.1.1, and 41.8.1.1; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1);

   ii. **Plant 2 FCCU**
      **Opacity (State – 20%, 6-minute average)**
      Start Date and Time: 02/24/2023 09:42 hrs
      End Date and Time: 02/24/2023 09:54 hrs
      Start Date and Time: 02/25/2023 06:48 hrs
      End Date and Time: 02/25/2023 07:24 hrs
      Start Date and Time: 02/25/2023 08:54 hrs
      End Date and Time: 02/25/2023 09:36 hrs
      Start Date and Time: 02/25/2023 10:18 hrs
      End Date and Time: 02/25/2023 10:45 hrs
      Start Date and Time: 02/25/2023 11:48 hrs
      End Date and Time: 02/25/2023 12:18 hrs
      Start Date and Time: 02/25/2023 19:06 hrs
      End Date and Time: 02/25/2023 19:12 hrs

      Suncor exceeded the opacity limit (State – 20%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.8 and 20.1; Permit 09AD0961, Condition 3; and AQCC Regulation 1, § II.A.1;

   iii. **Plant 2 FCCU**
      **Opacity (Federal - 30%, 6-minute average)**
      Start Date and Time: 02/25/2023 08:54 hrs



<u>End Date and Time: 02/25/2023 09:36 hrs</u>
Start Date and Time: 02/25/2023 10:18 hrs
<u>End Date and Time: 02/25/2023 10:24 hrs</u>
Start Date and Time: 02/25/2023 10:30 hrs
<u>End Date and Time: 02/25/2023 10:45 hrs</u>
Start Date and Time: 02/25/2023 11:54 hrs
<u>End Date and Time: 02/25/2023 12:12 hrs</u>

Suncor exceeded the opacity limit (Federal - 30%, 6-minute average) at the Plant 2 FCCU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.7.2, 31.1.2, and 41.5.1.2; Permit 09AD0961, Condition 27(b); the East Plant Consent Decree, Paragraph 98; NSPS J, § 60.102(a)(2); and NESHAP UUU, § 63.1564(a)(1); and

iv. **Plant 2 Flare**
   **$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
   Start Date and Time: 02/26/2023 08:00 hrs
   <u>End Date and Time: 02/26/2023 10:00 hrs</u>
   Start Date and Time: 02/26/2023 13:00 hrs
   <u>End Date and Time: 02/26/2023 15:00 hrs</u>

   Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.9, 31.3, and 32.9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).

l. Suncor reported that, on April 17, 2023, it initiated a shutdown of the Plant 2 process units to prepare for a planned turnaround event. Suncor reported that while shutting down the No. 2 FCCU, it vented gas from the No. 2 FCCU to the Plant 2 Flare in an effort to prevent unsafe conditions as the unit shut down. On April 17, 2023, from 11:00 hours until 14:00 hours, Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.9, 31.3, and 32.9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h).

m. Suncor reported that, on June 13, 2023, the Plant 2 Reformer underwent a planned startup following a planned turnaround event. During the startup process for the Plant 2 Reformer, the stabilizer overhead drum overfilled, which sent reformate into the fuel gas system and amine unit, contaminating the amine system. Additionally, hydrocarbon entered the No. 3 SRU thermal reactor, resulting in plugging issues within the No. 3 SRU. This event resulted in the following exceedances and noncompliance with operating standards:

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director                    50 |



App. 1921

   i. **Plant 2 Flare**
**H$_2$S in Flare Gas (162 ppmv, 3-hour average)**
Start Date and Time: 06/13/2023 07:00 hrs
<u>End Date and Time: 06/14/2023 01:00 hrs</u>

Suncor exceeded the H$_2$S limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.9, 31.3, and 32.9; NSPS J, § 60.104a(1); and NSPS Ja, § 60.103a(h); and

   ii. **Plant 2 Fuel Gas System**
**H$_2$S in Fuel Gas (162 ppmv, 3-hour average)**
Start Date and Time: 06/13/2023 06:00 hrs
<u>End Date and Time: 06/13/2023 20:00 hrs</u>

Suncor exceeded the H$_2$S limit (162 ppmv, 3-hour average) at the Plant 2 Fuel Gas System, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 1.3, 2.4, 3.4, 5.3.1, 6.4, 7.2, 31.3, and 32.2.1; Permit 09AD1422, Condition 10; NSPS J, § 60.104a(1); and NSPS Ja, § 60.102a(g)(1)(ii).

n. Suncor reported that, on June 20, 2023 during a product transfer to Tank 6, crude oil was discovered overflowing from the top of Tank 6. Crude oil had flowed out of the tank vents, down the tank, and onto the surrounding soil. An estimated 45 barrels of crude oil were released to soil. A subsequent investigation uncovered crude oil on top of the internal floating roof of Tank 6, and the radar level gauge was not functioning properly, which Suncor reported may have contributed to the overflow event. Suncor deployed vacuum trucks to remove contaminated soil beginning on June 21, 2023 and cleanup was completed by July 26, 2023. From June 20, 2023 until July 26, 2023, Suncor failed to maintain and operate Tank 6 to prevent detectable vapor loss, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 15.3.1 and 24.1; and AQCC Regulation 24, Part B, § I.A. (June 2023 - present).

o. Suncor reported that, on June 23, 2023, during the startup of Plant 2 following a planned turnaround event, a series of process disruptions in the No. 3 SRU resulted in acid gases to be routed to the Plant 2 fuel and flare gas systems. During the startup of the No. 3 SRU amine system, foaming occurred in the amine solution due to particulate contamination from particulate filters having been mistakenly bypassed during the startup of the unit. Suncor personnel added anti-foaming agents and rerouted acid gases to the Plant 2 Flare to protect the thermal reactor

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director          51 |



App. 1922

from hydrocarbon contamination. Furthermore, as the Plant 2 acid gas producing units came online, the No. 3 SRU experienced operational issues, including a loss in function of the sulfur pit eductor steam regulator due to a broken spring, a plug in the sulfur pit eductor line, and foaming in the amine system, all of which complicated the startup process and may have contributed to an ignitable atmosphere. Suncor reported that personnel rerouted acid gas streams several times between the thermal reactor and Plant 2 Flare until operational stability was restored. This event resulted in the following exceedances and noncompliance with operating standards:

i. **Plant 2 FCCU**
**CO (500 ppmvd at 0% $O_2$, 1-hour average)**
Start Date and Time: 06/21/2023 11:00 hrs
End Date and Time: 06/21/2023 19:00 hrs

Suncor exceeded the CO limit (500 ppmvd at 0% $O_2$, 1-hour average) at the Plant 2 FCCU, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 2.7.3, 2.12, 2.16, 32.1.1, and 41.8.1.1; Permit 09AD0961, Conditions 19 and 27(c); the East Plant Consent Decree, Paragraph 94; NSPS Ja, § 60.102a(b)(4); and NESHAP UUU, § 63.1565(a)(1);

ii. **Plant 2 Flare**
**$H_2S$ in Flare Gas (162 ppmv, 3-hour average)**
Start Date and Time: 06/21/2023 19:00 hrs
End Date and Time: 06/21/2023 21:00 hrs
Start Date and Time: 06/22/2023 02:00 hrs
End Date and Time: 06/22/2023 05:00 hrs
Start Date and Time: 06/22/2023 15:00 hrs
End Date and Time: 06/22/2023 16:00 hrs
Start Date and Time: 06/23/2023 08:00 hrs
End Date and Time: 06/23/2023 16:00 hrs
Start Date and Time: 06/23/2023 17:00 hrs
End Date and Time: 06/24/2023 02:00 hrs
Start Date and Time: 06/25/2023 10:00 hrs
End Date and Time: 06/25/2023 11:00 hrs
Start Date and Time: 06/26/2023 13:00 hrs
End Date and Time: 06/26/2023 14:00 hrs

Suncor exceeded the $H_2S$ limit (162 ppmv, 3-hour average) at the Plant 2 Flare, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 8.9, 31.3, and 32.9; NSPS J, § 60.104(a)(1); and NSPS Ja, § 60.103a(h);

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director         52 |


App. 1923

    iii.  **Plant 2 Sulfur Pit**
**Vents to atmosphere must remain closed and vapors
controlled at all times**
Start Date and Time: 06/23/2023 09:00 hrs
End Date and Time: 06/23/2023 09:05 hrs

Suncor failed to address Plant 2 sulfur pit emissions as required,
violating Permit 95OPAD108 (9/1/2022), Section II, Condition
5.11, and the East Plant Consent Decree, Paragraph 226.

    iv.  **Plant 2 Fuel Gas System**
**H$_2$S in Fuel Gas (162 ppmv, 3-hour average)**
Start Date and Time: 06/22/2023 14:00 hrs
End Date and Time: 06/22/2023 16:00 hrs
Start Date and Time: 06/23/2023 08:00 hrs
End Date and Time: 06/23/2023 20:00 hrs

Suncor exceeded the H$_2$S limit (162 ppmv, 3-hour average) at
the Plant 2 Fuel Gas System, violating Permit 95OPAD108
(9/1/2022), Section II, Conditions 1.3, 2.4, 3.4, 5.3.1, 6.4, 7.2,
31.3, and 32.2.1; Permit 09AD1422, Condition 10; NSPS J, §
60.104(a)(1); and NSPS Ja, § 60.102a(g)(1)(ii).

p.  Suncor reported that, due to a cybersecurity incident that affected its
information technology systems, Suncor was unable to access the LDAR
database. As a result, Suncor failed to monitor 559 components in Plant
2 during April 2023 through June 2023, violating Permit 95OPAD108
(9/1/2022), Section II, Conditions 18.2, 19.2, 28.3, 34, 35, 36, 37, 40.43,
and 40.44; NSPS VV, §§ 60.482-1 to 60.482-10; NSPS VVa, §§ 60.482-1a to
60.482-10a; NSPS GGG, § 60.592(a); NSPS GGGa, § 60.592a(a); NESHAP
CC, §§ 63.640(p)(2) and 63.648(a); AQCC Regulation 7, Part B, § VI.C.
(2022 – June 2023); and AQCC Regulation 24, Part B, § VI.C. (June 2023 –
present).

q.  Based on the Division's inspection, and a review of records and materials
related to Plant 2, Suncor failed to maintain and operate all storage tank
gauging devices, anti-rotation devices, accesses, seals, hatches, roof
drainage systems, support structures, and pressure relief valves to
prevent detectable vapor loss except when opened, actuated, or used
for necessary and proper activities (e.g. maintenance), violating Permit
95OPAD108 (6/15/2009), Section II, Condition 23.1; Permit 95OPAD108
(9/1/2022), Section II, Condition 24.1; AQCC Regulation 7, Part B, § I.A.
(2020 – June 2023); and AQCC Regulation 24, Part B, § I.A. (June 2023 -
present).



App. 1924

r. Based on the Division's inspection, and a review of records and materials related to Plant 2, Suncor failed to maintain and operate its affected sources, including the associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions, violating Permit 95OPAD108 (6/15/2009), Section II, Condition 36.5; Permit 95OPAD108 (9/1/2022), Section II, Condition 30.2; the East Plant Consent Decree, Paragraphs 98, 107, 115, 118 and 234; and NSPS A, § 60.11(d).

s. Based on the Division's inspection, and a review of records and materials related to Plant 2, Suncor failed to maintain and operate its affected sources, including the associated air pollution control equipment and monitoring equipment, in a manner consistent with safety and good air pollution control practices for minimizing emissions, violating Permit 95OPAD108 (6/15/2009), Section II, Conditions 32.2 and 33.81; Permit 95OPAD108 (9/1/2022), Section II, Conditions 40.12 and 41.22; NESHAP CC, § 63.642(n); NESHAP UUU, § 63.1570(c); and NESHAP A, § 63.6(e)(1)(i).

t. Suncor failed to comply with permit deviation and CAM excursion reporting requirements as set forth in Permit 95OPAD108 (6/15/2009), Section IV, Conditions 21 and 22, and Appendix B, and Permit 95OPAD108 (9/1/2022), Section II, Conditions 49.2 and 49.4, Section IV, Conditions 21 and 22, and Appendix B, as detailed below:

    i. The Division reviewed the SARs for Plant 2, dated September 30, 2022, March 1, 2023, and October 2, 2023 ("Plant 2 SARs"), and determined that Suncor is inadequately reporting the probable causes, corrective actions, and/or preventative measures for deviations from the requirements of Permit 95OPAD108 (6/15/2009) and Permit 95OPAD108 (9/1/2022). In numerous instances of deviations reported in the Plant 2 SARs, Suncor failed to include a detailed probable cause of the deviation, detailed corrective action, and/or the preventative measures taken to prevent recurrence of the deviation. As a result, the Division has determined that for the Plant 2 SARs and other reports submitted during the time period addressed by this Compliance Advisory (July 2022 – June 2023), Suncor has failed to adequately and completely report the probable causes, corrective actions, and/or preventive measures taken in response to deviations from the requirements of Permit 95OPAD108 (6/15/2009) and Permit 95OPAD108 (9/1/2022), violating Permit 95OPAD108 (6/15/2009), Section IV, Condition 21 and Appendix B, and Permit 95OPAD108 (9/1/2022), Section IV, Condition 21 and Appendix B.

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director
54 |


App. 1925

ii.  Suncor failed to report Continuous Monitoring System ("CMS") downtime as a deviation in the SAR covering July 1, 2022 through August 31, 2022 or in the SAR covering January 1, 2023 through June 30, 2023, violating Permit 95OPAD108 (6/15/2009), Section IV, Conditions 21 and 22.d and Appendix B, and Permit 95OPAD108 (9/1/2022), Section IV, Conditions 21 and 22.d and Appendix B.

iii.  The Plant 2 SRU is subject to CAM requirements with respect to hydrogen sulfide emissions, and the Plant 2 Flare is subject to CAM requirements with respect to VOC emissions. Suncor is required to monitor certain parameters and report any excursions as defined in Permit 95OPAD108 (9/1/2022), Section II, Conditions 49.2 and 49.4, respectively. Excursions shall be reported as required by Permit 95OPAD108 (9/1/2022), Section IV, Conditions 21 and 22.d. Suncor failed to report CAM excursions for the Plant 2 SRU and Plant 2 Flare in the SAR covering September 1, 2022 through December 31, 2022, violating Permit 95OPAD108 (9/1/2022), Section II, Conditions 49.2 and 49.4, and Section IV, Conditions 21 and 22.d.

It is important to resolve the above-referenced issues as soon as possible. Therefore, the Division encourages Suncor to immediately identify those compliance issues that are not in dispute and to rectify those issues before the Compliance Advisory meeting. The Division also requests that Suncor provide the Division with a brief written response to the alleged violations ("Source Response"). The Source Response should identify the undisputed compliance issues and, if an alleged violation is disputed, the basis for the dispute. The Division requests that Suncor provide the Source Response, to the attention of Ellen Scherner, no later than ten business days before the Compliance Advisory meeting. At the Compliance Advisory meeting, the Division will confirm the actions taken to rectify the undisputed compliance issues and proceed with unresolved matters as outlined below.

If you have any questions regarding this Compliance Advisory, the Division's enforcement processes, or any related issues, please refer to the APCD Enforcement Guide located at https://cdphe.colorado.gov/compliance-and-enforcement and/or contact the Division personnel identified below. Note that the APCD Enforcement Guide might not reflect current law or practice and is not binding on the Division.

---

IV.  COMPLIANCE ADVISORY MEETING

Suncor is requested to contact the Division and schedule a meeting to:



➢ Discuss the disputed Compliance Advisory issues and answer any remaining questions you may have;

➢ Submit information necessary to successfully show that the deficiencies and noncompliance issues (or any portion of them) are not violations of Colorado's air pollution laws; and

➢ Establish a mutually acceptable schedule and guidelines for the full and final resolution of any remaining deficiencies and noncompliance issues in a timely manner.

---

**Please contact the Enforcement Advisor identified below by no later than January 16, 2025 to schedule a meeting with the Division to discuss the Compliance Advisory. In accordance with § 25-7-115(3)(a), C.R.S., the Compliance Advisory meeting will be held within thirty (30) days of the Division's issuance of the Compliance Advisory in this matter.**

Ellen Scherner, Enforcement Advisor (303-692-6331, ellen.scherner@state.co.us)

**To ensure meaningful communication with all Coloradans, the Division offers free language services. Please let us know if we can provide an interpreter for anyone attending the Compliance Advisory meeting.**

---

cc: Shannon McMillan, APCD      Robert Stockton, APCD
    Paul Carr, APCD              Beth Pilson, APCD
    Heather Wuollet, APCD        Elizabeth Scherer, APCD
    Tom Lovell, APCD             Robyn Wille, Attorney General's Office
    Ben Cappa, APCD              Julia La Manna, Attorney General's Office
    Jen Sandor, APCD             William Marshall, Attorney General's Office
    Jeffrey Bishop, APCD         David Beckstrom, Attorney General's Office
    Jason Long, APCD             Michael Stovern, EPA (Region VIII)
    File

4300 Cherry Creek Drive S., Denver, CO 80246-1530   P 303-692-2000   www.colorado.gov/cdphe
Jared Polis, Governor   |   Jill Hunsaker Ryan, MPH, Executive Director        56 |

App. 1927

## Appendix A: Acronyms and Abbreviations Contained within this Compliance Advisory, Case No. 2025-003

| Acronym/Abbreviation | Meaning |
|---|---|
| APCD | Air Pollution Control Division |
| AQCC | Air Quality Control Commission |
| Btu/scf | British thermal units per standard cubic foot |
| CAM | Compliance Assurance Monitoring |
| CEMS | Continuous Emissions Monitoring System |
| CMS | Continuous Monitoring System |
| CO | Carbon Monoxide |
| CPU | Catalytic Polymerization Unit |
| EERs | Excess Emissions Reports |
| FCCU | Fluid Catalytic Cracking Unit |
| FGRU | Flare Gas Recovery Unit |
| FGRS | Flare Gas Recovery System |
| GBR | Gasoline Benzene Reduction |
| HCN | Hydrogen Cyanide |
| $H_2S$ | Hydrogen Sulfide |
| LDAR | Leak Detection and Repair |
| lb/hr | Pounds per hour |
| lb/MMBtu | Pounds per million British thermal units |
| NESHAP | National Emissions Standards for Hazardous Air Pollutants |
| NHVcz | Net heating value of flare combustion zone gas |
| NSPS | New Source Performance Standards |
| $O_2$ | Oxygen |
| PM | Particulate Matter |
| ppmv(d) | Parts per million by volume (dry) |
| RAA | Relative Accuracy Audit |
| RATA | Relative Accuracy Test Audit |
| RGG | Reducing Gas Generator |
| SAR(s) | Semi-Annual Deviation Report(s) |
| $SO_2$ | Sulfur Dioxide |
| SRU | Sulfur Recovery Unit |
| SRP | Sulfur Recovery Plant |
| TGU | Tail Gas Unit |
| VCU | Vapor Combustion Unit |

4300 Cherry Creek Drive S., Denver, CO 80246-1530    P 303-692-2000    www.colorado.gov/cdphe
Jared Polis, Governor    |    Jill Hunsaker Ryan, MPH, Executive Director    57 |



App. 1928

**IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02164-DDD-SBP

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC.,

      Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

## TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................. iii

Table of Exhibits ................................................................................................. viii

I.     Introduction ................................................................................................. 1

II.    Facts ............................................................................................................. 2

III.   Clean Air Act Citizen Enforcement Provision ............................................ 5

IV.    GreenLatinos Have Standing ....................................................................... 6

A.     GreenLatinos Have Suffered Injuries from Suncor's Pollution................... 6

B.     GreenLatinos' Injuries Are Traceable to Suncor's Violations of the Clean Air Act ......... 11

V.     The Diligent Prosecution Bar Does Not Apply .......................................... 12

A.     The Diligent Prosecution Bar is Not Jurisdictional ................................... 13

B.     GreenLatinos Adequately Alleged that Neither EPA nor CDPHE Were
       Prosecuting An Action in Court and the Twenty-Year-Old Consent Decrees Are
       Insufficient ................................................................................................. 13

C.     The Consent Decrees Do Not Enforce the Same Emissions Limitations as the
       Amended Complaint .................................................................................... 16

       1.     Diligent Prosecution Only Applies to the Same, Not "Similar," Standards ......... 16

       2.     Suncor Waived its Argument because it Does Not Connect Standards
              between the Consent Decrees and GreenLatinos' Claims ....................... 17

       3.     The Consent Decrees Did Not Enforce the Same Emissions Limitations as
              GreenLatinos' Claims ............................................................................ 18

D.     Any Prosecution of the Consent Decrees is Not Diligent........................... 19

VI.    GreenLatinos Adequately Alleged Claim 25 .............................................. 20

A.     GreenLatinos Alleged that A NOx Emission Limit Applies to Heater H-2101 ......... 20

B.     GreenLatinos Plausibly Alleged that Claim 25 is Timely .......................... 20

VII.    Conclusion ................................................................................................................ 21

Certificate of Compliance with Type-Volume Limitations ........................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                      **Page(s)**

*Adkins v. VIM Recycling, Inc.*,
   644 F.3d 483 (7th Cir. 2011) ...................................................13

*Arbaugh. N. Mill St., LLC v. City of Aspen*,
   6 F.4th 1216 (10th Cir. 2021) ..................................................13

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006).................................................................13

*Bazile v. Fin. Sys., Inc.*,
   983 F.3d 274 (7th Cir. 2020) .....................................................9

*Benham v. Ozark Materials River Rock, LLC*,
   885 F.3d 1267 (10th Cir. 2018) .................................................8

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*,
   4 F.4th 63 (1st Cir. 2021).........................................................19

*Citizens for a Better Env't-California v. Union Oil Co.*,
   83 F.3d 1111 (9th Cir. 1996) ...................................................14

*City of Fairborn, v. U.S. Env't Prot. Agency*,
   No. 3:22-CV-102, 2024 WL 555929 (S.D. Ohio Feb. 12, 2024) ..........................19

*Cmtys. for a Better Env't v. Cenco Refining Co.*,
   180 F. Supp. 2d 1062 (C.D. Cal. 2001) .....................................6

*Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*,
   321 F.3d 950 (10th Cir. 2003) .................................................17

*Conservation Council v. Costanzo*,
   505 F.2d 498 (4th Cir. 1974) .....................................................9

*Dodge v. Mirant Mid-Atl., LLC*,
   732 F. Supp. 2d 578 (D. Md. 2010)..............................15, 16, 17

*Env't Integrity Project v. Mirant Corp.*,
   No. CIV JFM-06-2249, 2007 WL 62619 (D. Md. Jan. 3, 2007) ...............17

*Env't Tex. Citizen Lobby Inc. v. ExxonMobil Corp.*,
   123 F.4th 309 (5th Cir. 2024) ...................................................7

*Food & Drug Admin v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) .................................................................................6

*Friends of the Earth, Inc. v. Laidlaw Env't Serv.*,
  528 U.S. 167 (2000) .................................................................................7

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*,
  382 F.3d 743 (7th Cir. 2004) .........................................................14, 15, 16, 19

*Frilling v. Vill. of Anna*,
  924 F. Supp. 821 (S.D. Ohio 1996) ...........................................................16

*Glazer v. Am. Ecology Env't Serv. Corp.*,
  894 F. Supp. 1029 (E.D. Tex. 1995) ..........................................................18

*Group Against Smog & Pollution, Inc. v. Shenango Inc.*,
  810 F.3d 116 (3d Cir. 2016).................................................................15, 16

*Ham v. Lenovo (United States) Inc.*,
  664 F. Supp. 3d 562 (S.D.N.Y. 2023)........................................................10

*Karr v. Hefner*,
  475 F.3d 1192 (10th Cir. 2007) .........................................................15, 17, 19

*Kazarinoff v. Wilson*,
  No. 22-CV-02385-PAB-SKC, 2024 WL 98385 (D. Colo. Jan. 9, 2024) ...............17

*LaFleur v. Whitman*,
  300 F.3d 256 (2d. Cir. 2002).....................................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................6, 8

*Mass. v. Env't. Prot. Agency*,
  549 U.S. 497 (2007)...............................................................................6

*Nat. Res. Def. Council, Inc. v. Train*,
  510 F.2d 692 (D.C. Cir. 1974) ..................................................................5

*Nat. Res. Def. Council v. Vilsack*,
  No. 08-CV-02371, 2011 WL 3471011 (D. Colo. Aug. 5, 2011).....................7, 8, 9

*Naturaland Tr. v. Dakota Fin. LLC*,
  41 F.4th 342 (4th Cir. 2022) ...................................................................13

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ................................................................9

*Ohio Valley Env't Coal. v. Bluestone Coal Corp.*,
    No. CV 1:19-00576, 2020 WL 2949782 (S.D. W. Va. June 3, 2020) ...................19

*Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*,
    No. 616CV1005ORL37GJK, 2016 WL 6996124 (M.D. Fla. Nov. 30, 2016) .........10

*Paper, Allied-Industrial Chemical And Energy Workers International Union v.*
    *Continental Carbon Co.*,
    428 F.3d 1285 (10th Cir. 2005) ............................................................13

*Piney Run Pres. Ass'n v. Carroll Cnty.*,
    523 F.3d 453 (4th Cir. 2008) ...............................................................15

*Pub. Int. Rsch. Grp. of New Jersey, Inc. v. GAF Corp.*,
    770 F. Supp. 943 (D.N.J. 1991) ...........................................................14

*Pub. Int. Rsch. Grp. v. Magnesium Elektron*,
    123 F.3d 111 (3d Cir. 1997)..................................................................9

*S. River Watershed All., Inc. v. DeKalb Cnty., Georgia*,
    484 F. Supp. 3d 1353 (N.D. Ga. 2020) ..................................................15

*S. River Watershed All., Inc. v. Dekalb Cnty., Georgia*,
    69 F.4th 809 (11th Cir. 2023) ............................................12, 13, 15, 16

*Sec. & Exch. Comm'n v. Kokesh*,
    884 F.3d 979 (10th Cir. 2018) .............................................................20

*Sierra Club v. Cedar Point Oil Co.*,
    73 F.3d 546 (5th Cir. 1996) ................................................................11

*Sierra Club v. City & Cnty. of Honolulu*,
    No. 04-00463, 2008 WL 1968317 (D. Haw. May 7, 2008)........................14, 19

*Sierra Club v. Franklin Cnty. Power of Illinois, LLC*,
    546 F.3d 918 (7th Cir. 2008) ................................................................6

*Sierra Club v. Oklahoma Gas & Electric Co.*,
    816 F.3d 666 (10th Cir. 2016) ...........................................................6, 20

*Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*,
    646 F.3d 1258 (10th Cir. 2011) .........................................................12, 14

*Sierra Club v. U.S. Env't Prot. Agency*,
    964 F.3d 882 (10th Cir. 2020) .................................................................7

*Sizova v. Nat. Inst. of Standards & Tech.*,
    282 F.3d 1320. (10th Cir. 2002) ............................................................10

*Snyder v. Beam Techs., Inc.*,
    No. 20-CV-03255-NYW, 2021 WL 4947295 (D. Colo. Aug. 16, 2021) ................17

*Speech First, Inc. v. Shrum*,
    92 F.4th 947 (10th Cir. 2024) ................................................................6

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*,
    207 F.3d 789 (5th Cir. 2000) ................................................................6

*United States v. Cemex, Inc.*,
    864 F. Supp. 2d 1040 (D. Colo. 2012) ....................................................21

*Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*,
    21 F.4th 1229 (10th Cir. 2021) .................................................5, 6, 11, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    894 F.3d 1030 (9th Cir. 2018) ...............................................................16

*WildEarth Guardians v. Colorado Springs Utils. Bd.*,
    No. 17-CV-00357, 2018 WL 317469 (D. Colo. Jan. 8, 2018) ......................7, 11

*WildEarth Guardians v. Mountain Coal Co.*,
    No. 20-CV-01342, 2021 WL 1186669 (D. Colo. Mar. 30, 2021) .....................21

*Wildearth Guardians v. Pub. Serv. Co. of Colorado*,
    No. 09-CV-01862, 2010 WL 1568574 (D. Colo. Apr. 15, 2010) .......................8

*Wildearth Guardians v. Salazar*,
    880 F. Supp. 2d 77 (D.C. Cir. 2012) .......................................................7

*Wildearth Guardians v. Utilities Bd.*,
    No. 11-CV-00742, 2012 WL 1059981 (D. Colo. Mar. 29, 2012) .............13, 14, 19

**Statutes**

33 U.S.C. § 1319(g)(6) ..............................................................................14

42 U.S.C. § 7412(b)(1) ...............................................................................3

42 U.S.C. § 7604(a)(1)................................................................................5

42 U.S.C. § 7604(b) .................................................................................................5

**Rules**

DDD. Civ. P.S. III.D.1.a .........................................................................................1

Fed. R. Civ. P. 12(b)(1) ..........................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1

**Regulations**

5 C.C.R. § 1001-5:C.III.C.4 ..................................................................................21

40 C.F.R. § 60.100a ...............................................................................................18

40 C.F.R. § 63.670 .................................................................................................18

40 C.F.R. § 70.5(c)(8)(iii)(C) ................................................................................20

## TABLE OF EXHIBITS

| Ex. No. | Document |
|---|---|
| 12 | Declaration of Daniel Price |
| 13 | Declaration of Harmony Cummings |
| 14 | Declaration of Li Mattson |
| 15 | Declaration of Renée Chacon |
| 16 | Declaration of Angela Garcia |
| 17 | Declaration of Anna McDevitt |
| 18 | Declaration of Aracely Navarro |
| 19 | Complaint filed December 20, 2001 in *United States v. Conoco Inc.*, Southern District of Texas (Houston), 4:01-cv-04430 (West Plant Complaint) |
| 20 | Complaint filed June 16, 2005 in *United States v. Valero Refining Co.*, Western District of Texas (San Antonio), 5:05-cv-00569-OLG (East Plant Complaint) |
| 21 | *United States v. Valero Refining Co.*, Western District of Texas (San Antonio), 5:05-cv-00569-OLG, Docket Report |
| 22 | *United States v. Conoco Inc.*, Southern District of Texas (Houston), 4:01-cv-04430, Docket Report |
| 23 | Plaintiff GreenLatinos et al.'s Responses to Defendant Suncor's Exhibit 4 |
| 24 | Suncor Plants 1&3 (West) 2024 Technical Review Document |

Plaintiffs GreenLatinos, 350 Colorado, and Sierra Club ("GreenLatinos") submit this opposition to Defendant Suncor Energy (U.S.A.) Inc. ("Suncor")'s January 21, 2025 Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Dkt No. 27 ("Motion").

Pursuant to the Court's Civil Practice Standard III.D.1.b., GreenLatinos state the following:

1.　While the Motion does not "clearly enumerate each element" that Suncor is challenging, DDD. Civ. P.S. III.D.1.a, GreenLatinos believe that Suncor is challenging: the injury and traceability elements of standing; diligent prosecution; and, for Claim 25, "emission standard or limitation," (and raising an affirmative statute of limitations defense).

2.　Each element challenged by Suncor is DISPUTED by GreenLatinos, for the reasons described herein.

## I.　Introduction

As the Amended Complaint alleges, Suncor repeatedly violates its emission limits at its Commerce City Refinery, resulting in thousands of violations, and forcing surrounding communities to breathe that excess pollution. Still, actions by the state and EPA have failed to slow Suncor's violations. GreenLatinos filed suit to ensure Suncor's pollution limits are actually enforced.

GreenLatinos' suit is a textbook Clean Air Act citizen suit. Suncor self-reported recurring emissions limit violations. GreenLatinos' members live, work, and recreate in the neighborhoods near Suncor. They breathe pollution from the Refinery and suffer harms consistent with that

exposure. State and federal regulators have not taken court action to enforce Suncor's violations in over twenty years. Given these facts, GreenLatinos' suit is precisely what is imagined by the Clean Air Act citizen suit provision.

For the reasons described below, the Court should deny Suncor's Motion.

## II.    Facts

Suncor has self-reported thousands of violations of its emission limits over the period covered by the Amended Complaint, ECF 8 ("Am. Compl.") at 5, ¶ 2, emitting a variety of harmful pollutants, *id*. at 5-6, ¶¶ 6-11. The emission limits Suncor violates were established by federal and state regulations, consent decrees, and permits issued by the Colorado Department of Public Health and Environment ("CDPHE"). *Id.* at 28-48, ¶ 73, ¶¶ 31-253. The limits apply to pollutants from a variety of units at Suncor, including boilers, process heaters, and flares. *Id.* at 14-15, ¶ 57-58. The limits are detailed in Suncor's two Title V operating permits: the West Plant Permit and the East Plant Permit. *Id*. at 17-18, ¶¶ 72-78.

Exposure to the excess pollutants emitted by Suncor causes a variety of injuries, including:

| Injury | Amended Complaint Allegations About Pollutant Impacts |
|---|---|
| Breathing and smelling polluted air | $H_2S$ and $SO_2$ smell of rotten eggs. Am. Compl. at 19, ¶ 85<br>Hazardous air pollutants like benzene and hydrochloric cyanide have strong chemical odors. Am. Compl. at 5, ¶¶ 6-7, 10. |
| Adverse health effects, including respiratory ailments, asthma, headaches | Exposure to CO can cause impaired vision, headaches, dizziness, and abdominal pain. Am. Compl. at 20, ¶ 91.<br><br>Exposure to NOx, $SO_2$, and particulate matter can cause respiratory problems such as asthma, difficulty breathing, coughing, and bronchitis, as well as eye, |

| Injury | Amended Complaint Allegations About Pollutant Impacts |
|---|---|
|  | throat, and skin irritation. Am. Compl. at 21-22, ¶¶ 92-108.

Hazardous air pollutants "are pollutants that cause or may cause cancer or other serious health effects such as reproductive . . . defects" and developmental disorders. 42 U.S.C. § 7412(b)(1); Am. Compl. at 24, ¶¶ 8, 113 |
| Seeing pollution and flaring | Opacity and particulate matter cause haze and are visible. Am. Compl. at 5 ¶ 7.

$H_2S$ is flammable and contributes to smoke. Am. Compl. at 50-51, ¶¶ 262-270. |
| Fear of explosion or accident | $H_2S$ is flammable. Am. Compl. at 50-51, ¶¶ 262-270 |

GreenLatinos alleged their members live, work, and recreate near the Refinery. *Id*. 8, ¶ 20. The GreenLatinos members' declarations, Exs. 12-18,[1] confirm that they live and/or work within two miles of the Refinery. *See e.g.*, Ex. 12 ¶8, ¶ 11 (lives and works within 1.5 miles from Refinery); Ex. 13 ¶ 8 (works 1.5 miles from Refinery); Ex. 14 ¶ 6 (lives 1.75 miles from Refinery).[2]

GreenLatinos' members suffer the effects of Suncor's excess pollution; they breathe its pollution, suffer health effects associated with those pollutants, and are concerned about the impacts that pollution on their health and enjoyment of the neighborhood, as detailed in the following chart:

---

[1] For the convenience of the parties and the Court, GreenLatinos continues the numbering of exhibits from Suncor's Motion.
[2] *See also* Ex. 16 ¶¶ 6-10; Ex. 15 ¶¶ 7-9; Ex. 17 ¶¶ 5-6; Ex. 18 ¶ 8-12.

| Injury | Amended Complaint Allegations | Declarant Statements |
|---|---|---|
| Breathing and smelling polluted air | Members breathe polluted air from the Refinery and smell odors. Am. Compl. at 8, ¶¶ 20, 23 | Ex. 15 ¶ 14 (rotten eggs); Ex. 13 ¶ 13 (petroleum smell); Ex. 16 ¶ 9 (chemical smell); Ex. 14 ¶ 13 (rotten eggs and metallic smells); Ex. 12 ¶ 20 (burning rubber) |
| Reduced time and enjoyment of area | Members "alter their recreation" spending less time outside near the Refinery. Am. Compl. at 8, ¶¶ 22, 23. | Declarants alter their recreational activities. Ex. 15 ¶¶ 19-23; Ex. 13 ¶¶ 16-19; Ex. 14 ¶¶ 24, 15; Ex. 17 ¶¶ 14, 18-20; Ex. 12 ¶¶ 17 |
| Adverse health effects, including respiratory ailments, asthma, headaches | Members suffer "headaches, stomach aches, allergies, other breathing issues such as asthma, and mental health impacts." Am. Compl. at 8, ¶ 20. | Ex. 15 ¶¶ 18-21 (headaches, difficulty breathing); Ex. 13 ¶¶ 13, 16 (headaches, difficulty breathing, asthma, eye irritation); Ex. 16 ¶¶ 9-14 (headaches, asthma and bronchitis, difficulty breathing, eye irritation); Ex. 14 ¶¶ 16-17 (abdominal pain, eye irritation); Ex. 17 ¶ 19 (difficulty breathing); Ex. 12 ¶ 24 (difficulty breathing); Ex. 18 ¶ 19 (fertility issues) |
| Threat or reasonable fear of harm | Members fear "the effects of the excess emissions from the refinery on their health." Am. Compl. at 8, ¶ 20. | Declarants have reasonable fears based on Suncor's emissions exceedances. Ex. 15 ¶ 11; Ex. 13 ¶ 15; Ex. 17 ¶ 14; Ex. 14 ¶¶ 12, 14, 15; Ex. 12 ¶ 43.; Ex. 18 ¶ 20. |
| Seeing pollution and flaring | Members "enjoy their property less" because they see "flares and the hazy views." Am. Compl. at 8-9, ¶ 23. | Declarants see haze, smoke, flaring, and pollution. Ex. 13 ¶¶ 13-14; Ex. 16 ¶¶ 8, 13; Ex. 17 ¶¶ 13, 17; Ex. 18 ¶ 12; Ex. 12 ¶¶ 17, 19 |
| Fear of explosion or accident | Members are concerned about the effects of emission and fear having to move. Am. Compl., at 8-9, ¶¶ 20, 23. | Declarants fear an explosion, fire, or other upset. Ex. 18 ¶ 27-28. |
| Economic impacts | Members worry about property values and needing to move Am. Compl. at 8-9, ¶¶ 20, 23. | Declarants spend money on medical issues and house upgrades, miss work to treat health ailments, and worry about their property values. Ex. 16 ¶ 12; Ex. 17 ¶ 10; Ex. 18 ¶ 22. |

Enforcement by EPA and CDPHE has failed to halt Suncor's violations. In 2002 and

2005, EPA filed suits against Suncor's predecessors as part of its "nationwide, broad-based

compliance and enforcement initiative involving the petroleum refining industry", Ex. 5 at 2,

resulting in two federal consent decrees: Ex. 5 ("West Plant Decree") and Ex. 6 ("East Plant

Decree"). Am. Compl. at 42, 43, ¶¶ 205, 215. The complaints filed in those actions alleged

violations of: (1) new source review requirements, (2) limits on the types of gases that can be

combusted in flares, and (3) leak detection and repair requirements. *See* Ex. 19 at 12-18, Ex. 20

at 16-23. None of these standards are alleged in GreenLatinos' Amended Complaint. The final

affirmative deadline in the Consent Decrees passed in 2012. *See* Ex. 6 ¶¶ 9, 55. Since the

Consent Decrees were entered, neither EPA nor CDPHE have asked the court to take any action

to enforce or substantively modify them. *See* Ex 21 (*United States v. Valero Refining Co*.,

Docket Report); Ex 22 (*United States v. Conoco Inc.*, Docket Report).

The only other enforcement actions against Suncor have been administrative actions,

including some administrative settlements and notices of violations from CDPHE and/or EPA.

Am. Compl. at 49-50, ¶¶ 254-60.

## III.    Clean Air Act Citizen Enforcement Provision

The Clean Air Act allows any person with standing to sue to enforce certain violations of

the Act. 42 U.S.C. § 7604(a)(1). The purpose is to increase enforcement "when the government

lacks the resources or will to handle the entire task." *Utah Physicians for a Healthy Env't v.*

*Diesel Power Gear, LLC*, 21 F.4th 1229, 1243 (10th Cir. 2021). In adopting the provision,

Congress "took broad steps to facilitate the citizen's role in the enforcement of the Act." *Nat.*

*Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 700 (D.C. Cir. 1974). A claim under this

provision must allege that: (1) defendant is violating or has repeatedly violated (2) an "emissions

standard or limitation" or a related order, (3) plaintiffs sent a 60-day notice letter before filing

suit, and (4) neither CDPHE or EPA "has commenced and is diligently prosecuting a civil action in a court . . . to require compliance" with the same standards enforced by plaintiff. §§ 7604(a)(1), (b).

## IV.    GreenLatinos Have Standing

The purpose of standing is to ensure that an individual has a personal stake in the outcome, rather than being "mere bystanders" or "citizens who might 'roam the country'" in search of wrongdoing. *Food & Drug Admin v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024); *see also Mass. v. Env't. Prot. Agency*, 549 U.S. 497, 517 (2007). Organizations like GreenLatinos have standing if, among other things, one of their members has standing. *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024). To show standing, an individual must have an "injury in fact," that is fairly traceable to the defendant's challenged conduct, and is redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[3] But alleged injuries "need not be large;" rather, "an identifiable trifle will suffice." *Sierra Club v. Franklin Cnty. Power of Illinois, LLC*, 546 F.3d 918, 925 (7th Cir. 2008).

GreenLatinos have a significant personal stake in the outcome of this case: members are directly exposed to Suncor's harmful pollution and they suffer injuries consistent with that exposure.

### A.    GreenLatinos Have Suffered Injuries from Suncor's Pollution

Courts recognize a range of cognizable injuries adequate for standing, *Cmtys. for a Better Env't v. Cenco Refining Co.*, 180 F. Supp. 2d 1062, 1075 (C.D. Cal. 2001), including precisely

---

[3] GreenLatinos does not address the other elements of organizational standing or redressability because they are not challenged by Suncor.

the injuries GreenLatinos alleges. The Tenth Circuit has recognized standing where plaintiffs

suffered "adverse health effects from elevated air pollution," including respiratory ailments like

asthma and headaches, or faced the threat or reasonable fear of injury. *Utah Physicians*, 21 F.4th

at 1241; *see also Sierra Club*, 564 F.3d at 925. In fact, courts also hold that plaintiffs are injured

by merely breathing or smelling polluted air. *See Texans United for a Safe Econ. Educ. Fund v.

Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000). Similarly, seeing smoke and

flaring is a sufficient injury. *Env't Tex. Citizen Lobby Inc. v. ExxonMobil Corp.*, 123 F.4th 309,

337-338 (5th Cir. 2024) (Davis, J., concurring). Other injuries courts have recognized include

reduced enjoyment and recreational value of an area, *Friends of the Earth, Inc. v. Laidlaw Env't

Serv.,* 528 U.S. 167, 183 (2000); *Nat. Res. Def. Council v. Vilsack*, No. 08-CV-02371, 2011 WL

3471011, at *4 (D. Colo. Aug. 5, 2011), and economic injuries, *Wildearth Guardians v. Salazar*,

880 F. Supp. 2d 77, 83 (D.C. Cir. 2012).

GreenLatinos' members suffer precisely these harms. *See* Section II (chart detailing

injuries). For example, Angela Garcia, who has lived less than two miles from Suncor for 32-

years, is "assaulted day and night by air pollution," suffering from asthma so debilitating she

cannot sleep, think, or function. Ex. 16 ¶ 6-13. "When the air pollution is bad, [Li Mattson's] son

often wakes up with swollen eyes and black soot in his eyes." Ex. 14 ¶ 17. Renée Chacon reports

she and her family suffer severe migraines, breathing difficulties, and nosebleeds—symptoms

that improve when they leave. Ex. 15 ¶ 18-20. Harmony Cummings, founder of the Greenhouse

Connection Center, located less than a mile from the Refinery, "worr[ies] about holding . . .

events at the Center," "hesitate[s] to breathe fully," and "immediately get[s] a slight headache

and irritation of [her] sinuses, throat, and eyes" because of air pollution." Ex. 13 ¶ 13-15.
GreenLatinos' injury allegations are squarely within precedent.

GreenLatinos' injuries are more than an "identifiable trifle" and are exactly the kind of
allegations that survive a 12(b)(1) motion. *See, e.g., Sierra Club v. U.S. Env't Prot. Agency*, 964
F.3d 882, 888 (10th Cir. 2020) (declarations identifying health risks and diminished visibility
sufficient for injury-in-fact); *WildEarth Guardians v. Colorado Springs Utils. Bd.*, No. 17-CV-
00357, 2018 WL 317469, at *6 (D. Colo. Jan. 8, 2018) (injury adequate where plaintiffs live and
recreate near facility, are concerned about health effects, and "curtail outdoor activities near their
homes . . . for fear of excess emissions"); *Wildearth Guardians v. Pub. Serv. Co. of Colorado*,
No. 09-CV-01862, 2010 WL 1568574, at *2 (D. Colo. Apr. 15, 2010) (denying motion to
dismiss where plaintiff's "recreational, aesthetic, and economic interests" are impacted by the
defendant's excessive pollution); *Vilsack*, 2011 WL 3471011, at *4 (injury-in-fact established
from diminished experience in nature, lessened visibility and increased smog, concern about
health from breathing pollution, and harm to member's photography career).

Moreover, Suncor's assertion that GreenLatinos could not be harmed by the Refinery's
continual release of pollutants into their neighborhood simply ignores relevant pleading
standards and the extensive precedent in Clean Air Act citizens suits.

*First*, Suncor's facial attack—that GreenLatinos alleged only generalized and vague
allegations, Mot. 9—not only disregards relevant pleading standards, but also inaccurately
characterizes GreenLatinos pleadings. At the pleading stage, "general factual allegations of
injury resulting from the defendant's conduct" suffice to establish standing because they are
presumed to "embrace those specific facts that are necessary to support the claim." *Lujan*, 504

U.S. at 561; *see also Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1272 (10th

Cir. 2018) (the plaintiff "bears the burden of establishing these elements . . . with the manner and

degree of evidence required at the successive stages of the litigation"). Here, GreenLatinos more

than meets this standard. As explained in Section IV.A, the Amended Complaint detailed various

injuries suffered by GreenLatinos' members, and GreenLatinos' provided detailed facts in the

member declarations.[4] *See Bazile v. Fin. Sys., Inc.*, 983 F.3d 274, 277 (7th Cir. 2020) (plaintiffs

may attach standing declarations in response to a motion to dismiss).

    *Second*, Suncor's factual challenge asserts that GreenLatinos were not injured because

the ambient air quality near the Refinery does not exceed the NAAQS or other regulatory

guidelines, and therefore, GreenLatinos could not possibly be harmed. Mot. 10-11. Suncor is

wrong. Fundamentally, ambient air quality thresholds are immaterial to actual injury or a

reasonable fear of injury. *See LaFleur v. Whitman*, 300 F.3d 256, 270 (2d. Cir. 2002)

(recognizing standing "even if the ambient level of $SO_2$ remains within the NAAQS," explaining

that "Congress has recognized that there are potentially adverse effects from air pollution at

levels below the NAAQS."); *Vilsack*, 2011 WL 3471011, at *4 (rejecting argument that plaintiff

lacked standing because pollution does "not violate applicable environmental standards."); *cf.*

*OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (recognizing "the injury in

fact requirement . . . is qualitative, not quantitative in nature"); *Conservation Council v.*

*Costanzo*, 505 F.2d 498, 501 (4th Cir. 1974) (stating the "claimed injury need not be based on

medical or scientific evidence of probable consequences"). Suncor's citation of *Pub. Int. Rsch.*

---

[4] GreenLatinos also detailed the kinds of harms caused by the pollutants Suncor emits. Am.
Compl. at 19-28, ¶¶ 81-130.

*Grp. v. Magnesium Elektron*, Mot. 12, is inapposite; there, plaintiffs alleged only a recreational

injury in the river, and the district court found that defendant's pollution did not impact the river.

123 F.3d 111, 121 (3d Cir. 1997). Here, GreenLatinos allege they were directly impacted by the

pollution.

Further, this argument fails to acknowledge the other forms of injury, explained above in

Section IV.A, that are not direct physical injury or reasonable fear of injury, such as breathing

and smelling polluted air, seeing smoke or flaring, and economic injuries. As a result, Suncor's

expert report, and its arguments based thereon, do not defeat Suncor's standing.

*Third*, Suncor's factual challenge also fails because the expert report on which it relies

makes the same erroneous assumptions that GreenLatinos cannot be injured, or reasonably fear

injury, unless regulatory ambient air pollution limits are exceeded, and also fails to address

GreenLatinos' other asserted injuries. *See, e.g.,* Ex. 1 at PDF 3-4. Thus, the report is "immaterial

because it does not contradict plausible allegations that are themselves sufficient to show

standing." *Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d 562, 573 (S.D.N.Y. 2023). As a

result, Suncor's standing challenge must be based entirely on the pleadings. *See id; see also*

*Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*, No. 616CV1005ORL37GJK, 2016 WL

6996124, at *2 (M.D. Fla. Nov. 30, 2016).

*However*, if the court determines that Suncor's expert report is material to the standing

analysis, GreenLatinos require jurisdictional discovery regarding the basis for the expert report

and its underlying conclusions, *see Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320,

1326. (10th Cir. 2002), as detailed in GreenLatinos' Motion for Jurisdictional Discovery, in the

Alternative, filed contemporaneously with this opposition brief.

**B.      GreenLatinos' Injuries Are Traceable to Suncor's Violations of the Clean
Air Act**

When discussing traceability, Suncor misconstrues the Tenth Circuit's opinion in *Utah
Physicians*, arguing that GreenLatinos must "make a separate showing of standing for each time
a separate violation allegedly occurred." Mot. 11. On the contrary, while the court stated that
traceability requires a plaintiff to "demonstrate that *each* of Defendants' violations caused or
contributed to the kinds of injuries alleged," it also explained that "[a] plaintiff need not prove
causation with absolute scientific rigor." *Utah Physicians*, 21 F.4th at 1242, 1248. Instead, it held
that a plaintiff meets its burden when a defendant violates an emission limit and "emits the
injurious pollutant in the geographic vicinity of where the person is injured," regardless of how
many other sources emit the same pollutants. *Id*. at 1244-45 (surveying circuit court decisions).

In reaching this conclusion, the Tenth Circuit relied on factors in *Sierra Club v. Cedar
Point Oil Co.*, 73 F.3d 546, 588 (5th Cir. 1996). *See id.* at 1244-45. Under *Cedar Point,* a
plaintiff must show the defendant "(1) [emitted] some pollutant in concentrations greater than
allowed by its permit (2) into [a geographically proximate area] in which the plaintiffs have an
interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or
contributes to the kinds of injuries alleged by the plaintiffs." 73 F.3d at 557; *see also Colorado
Springs*, 2018 WL 317469, at *7 ("a plaintiff must merely show that a defendant discharges a
pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area
of concern"). GreenLatinos meet all three elements.

*First*, GreenLatinos alleged, and Suncor does not dispute, that Suncor exceeded its limits
and emitted excess amounts of various harmful pollutants. Am. Compl. at 24, ¶ 113.

*Second*, GreenLatinos alleged their injuries arose in the vicinity of Suncor's excess emissions because members live, work, and recreate near the Refinery as described in Section II above. *Id*. ¶ 20. These allegations satisfy the geographic nexus requirement. *See Utah Physicians,* 21 F.4th at 1444-45

*Third*, the pollutants that Suncor emits during its violations are connected to the kinds of injuries that GreenLatinos allege, discussed in Sections II and IV.A, above. GreenLatinos' reasonable fears about the impacts of this pollution on themselves and their families, along with their decisions to limit time spent outdoors in the neighborhood, *see* Section IV.A, are directly connected to the pollutants Suncor emits and the harms associated with those pollutants.

Because Suncor's attacks on GreenLatinos' injuries and the traceability of those injuries to the Refinery's pollution are without merit, the court should deny the motion.

## V.    The Diligent Prosecution Bar Does Not Apply

The Clean Air Act's diligent prosecution bar balances the enforcement priorities of regulators with the public's interest in ensuring enforcement of the Act by barring plaintiffs from filing a complaint if "the [EPA] or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order." *Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1263 (10th Cir. 2011) (quoting § 7604(b)(1)(B)). Three elements must be met to trigger the diligent prosecution bar: (1) EPA or the State must be prosecuting an action in court at the time the complaint is filed, (2) the action must be enforcing the same "standard, order, or limitation" as the citizen suit, and (3) the prosecution must be "diligent." *S. River Watershed All., Inc. v. Dekalb Cnty., Georgia,* 69 F.4th 809, 823 (11th Cir. 2023).

### A.    The Diligent Prosecution Bar is Not Jurisdictional

As a threshold matter, the diligent prosecution bar is not jurisdictional and, therefore, a

motion to dismiss is analyzed under Rule 12(b)(6) not 12(b)(1). The Supreme Court in

*Arbaugh v. Y&H Corp.* clarified that statutory limits are only jurisdictional if Congress "clearly

states." 546 U.S. 500, 515-16 (2006). Applying *Arbaugh*, every circuit court to directly address

the question has concluded that the bar is a non-jurisdictional claims-processing rule. *See e.g., S.*

*River*, 69 F.4th at 823 (collecting cases); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492 (7th

Cir. 2011); *Naturaland Tr. v. Dakota Fin. LLC*, 41 F.4th 342, 347 (4th Cir. 2022).

Contrary to Suncor's argument, Mot. 14, the Tenth Circuit's pre-*Arbaugh* opinion in

*Paper, Allied-Industrial Chemical And Energy Workers International Union v. Continental*

*Carbon Co.*, did not address the question. There, the court merely held that the district court

could rely on outside evidence because it ruled under Rule 12(b)(1). 428 F.3d 1285, 1292-93

(10th Cir. 2005). This is the very type of "drive-by jurisdictional ruling[]" that the Tenth Circuit

has distinguished since *Arbaugh*. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1228 n.10 (10th

Cir. 2021); *see also Naturaland Tr.*, 41 F.4th at 347 (distinguishing its own pre-*Arbaugh*

rulings).

### B.    GreenLatinos Adequately Alleged that Neither EPA nor CDPHE Were Prosecuting An Action in Court and the Twenty-Year-Old Consent Decrees Are Insufficient

GreenLatinos correctly alleged that the diligent prosecution bar does not apply because,

at the time they filed the Complaint, neither EPA nor CDPHE had an active enforcement case in

court. Am. Compl. at 49-50, ¶¶ 254-260. Suncor does not dispute the truth of these factual

allegations, and this is all that GreenLatinos are required to allege. *See Wildearth Guardians v.*

*Utilities Bd.*, No. 11-CV-00742, 2012 WL 1059981, at *2 (D. Colo. Mar. 29, 2012) (denying

motion to dismiss because no court action pending).

Suncor relies on the *twenty-year-old* Consent Decrees to argue that regulators are

prosecuting an action in court, Mot. 15, but that argument flies in the face of the language and

purpose of the citizen suit provision. The bar is set in the present tense: it applies "only if the

'Administrator or State has commenced and *is diligently prosecuting*' an enforcement action."

*Two Elk,* 646 F.3d at1263-64 (emphasis in original) (quoting § 7604(b)(1)(B)). Congress could

have easily barred citizen suits where the state has previously prosecuted an action, but it did not

do so. *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. GAF Corp.*, 770 F. Supp. 943, 949 (D.N.J.

1991). Consent decrees are final judgments and are not currently *being prosecuted in court*. *See

id.*; *Citizens for a Better Env't-California v. Union Oil Co.,* 83 F.3d 1111, 1118 (9th Cir. 1996).

Accepting Suncor's argument would allow regulators to "indefinitely continue an enforcement

action" and would "eviscerate the timely commencement requirement" for an enforcement action

to bar a citizen suit. *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382

F.3d 743, 753 n.5 (7th Cir. 2004).

The administrative enforcement actions Suncor cites, Mot. 17, are irrelevant because

"courts interpreting [the bar] have uniformly held that 'a civil action in court' means what it

says—an action in a court—and preemption does not arise where a state agency is undertaking

purely administrative enforcement efforts." *Lamar Utilities Bd.*, 2012 WL 1059981, at *2

(citations omitted). Administrative enforcement of a pre-suit consent decree cannot qualify as

diligent prosecution. *See Sierra Club v. City & Cnty. of Honolulu*, No. 04-00463, 2008 WL 1968317, at *5 (D. Haw. May 7, 2008).[5]

Despite the plain statutory language, Suncor cites four cases applying the bar to pre-suit consent decrees,[6] Mot. 16-17, but even those cases recognize that a consent decree does not "automatically immunize a polluter from all citizen suits." *S. River Watershed All., Inc. v. DeKalb Cnty., Georgia*, 484 F. Supp. 3d 1353, 1368 (N.D. Ga. 2020). Instead, courts must "probe . . . events transpiring post-entry of the Consent Decree." *Id.* The Consent Decrees here are easily distinguishable from Suncor's cases.

*First*, Suncor's cases all involved recent consent decrees. The primary case Suncor discusses, *Group Against Smog & Pollution, Inc. v. Shenango Inc.*, ("*GASP*")*,* based its reasoning on the "recent consent decree" and its "ongoing vitality." 810 F.3d 116, 130 (3d Cir. 2016). All but one of Suncor's cases involved consent decrees issued within the previous three years. *See id.* (suit filed one month after consent decree); *Piney Run Pres. Ass'n v. Carroll Cnty.*, 523 F.3d 453, 459-61 (4th Cir. 2008) (suit four months after consent decree); *Dodge v. Mirant Mid-Atl., LLC*, 732 F. Supp. 2d 578, 580 (D. Md. 2010) (suit 2.5 years after consent decree); *but see S. River*, 69 F.4d at 814-15 (suit eight years after consent decree). Here, by contrast, the Consent Decrees are twenty years old. *See Friends,* 382 F.3d at 752 (holding twenty-five-year-old decrees did not trigger bar).

---

[5] Notably, unlike the Clean Air Act, the Clean Water Act does include a bar applicable to pending and completed administrative enforcement actions. 33 U.S.C. § 1319(g)(6).
[6] Suncor also cites *Karr v. Hefner*, but that case did not involve a pre-suit consent decree. 475 F.3d 1192, 1200 (10th Cir. 2007) (EPA suit was pending when citizen suit filed).

*Second*, the opinions are concerned about interfering with comprehensive plans to bring sources into compliance. *See S. River*, 69 F.4d at 816 (multi-year "comprehensive program" to rehabilitate sewer system); *Piney Run*, 523 F.3d at 458 ("multi-phase Environmental Project" with "various obligations and deadlines"); *Dodge*, 732 F. Supp. 2d at 587 (requiring plans to address noncompliance and study of control technologies). Here, no such program exists. The latest deadline in either Consent Decree passed in 2012, *see, e.g.,* Ex. 6 ¶ 55—more than a decade ago. *See Friends*, 382 F.3d at 752 (consent decrees cannot bar violations occurring after all work completed).

*Third*, the cases often involve further court actions to enforce violations, including multiple consent decrees or modification to the decree. *See GASP*, 810 F.3d at 120 (two consent decrees two years apart); *Dodge*, 732 F. Supp. 2d at 580 (two consent decrees three years apart); *S. River*, 69 F.4th at 827 (prosecution diligent because regulators recently modified consent decree to address violations). Here, Suncor cites no court actions taken to address the persistent non-compliance.

**C.    The Consent Decrees Do Not Enforce the Same Emissions Limitations as the Amended Complaint**

Suncor's Motion should be denied because (1) Suncor makes no meaningful attempt to match the standards enforced by the Consent Decrees to GreenLatinos' Claims, and (2) the standards do not overlap.

**1.    Diligent Prosecution Only Applies to the Same, Not "Similar," Standards**

As a threshold matter, the diligent prosecution bar only applies to a claim to enforce "the *same* 'standard, limitation, or order' as the government enforcement action," *In re Volkswagen*

*"Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 894 F.3d 1030, 1039 (9th Cir. 2018) (emphasis in original)—it does not apply to "similar" standards, *see Frilling v. Vill. of Anna*, 924 F. Supp. 821, 836 (S.D. Ohio 1996) ("citizen suits are barred only if they are based on the *very* same standards"). Suncor's argument to the contrary, Mot. 14, cites no law regarding "similar" standards. *See Karr*, 475 at 1196 (plaintiffs admitted standards were the same); *Env't Integrity Project v. Mirant Corp.*, No. CIV JFM-06-2249, 2007 WL 62619, at *1 n.2 (D. Md. Jan. 3, 2007) (same); *Dodge*, 732 F. Supp. 2d at 585-86 (holding standards were the same).

Therefore, the Court should deny the Motion to the extent it argues that "similar" emissions limitations in the Consent Decrees bar GreenLatinos' Claims.

## 2. Suncor Waived its Argument because it Does Not Connect Standards between the Consent Decrees and GreenLatinos' Claims

Suncor has waived its diligent prosecution challenge because it fails to develop its argument that GreenLatinos is enforcing the same standards as the Decrees. Suncor merely asserts, without explanation, that they are the same. *See, e.g.,* Mot. 4. These types of undeveloped arguments are waived. *See Snyder v. Beam Techs., Inc.*, No. 20-CV-03255-NYW, 2021 WL 4947295, at *16 n.16 (D. Colo. Aug. 16, 2021); *see also Kazarinoff v. Wilson*, No. 22-CV-02385-PAB-SKC, 2024 WL 98385, at *5 (D. Colo. Jan. 9, 2024).

Suncor's reliance on its Exhibit 4 does not satisfy its burden. *First*, incorporating the Exhibit by reference without argument is an improper attempt to bypass the Court's word limit. *See Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 979 n.14 (10th Cir. 2003) (disapproving of bypassing word limits by incorporating documents). *Second*, the

Exhibit still does not explain how standards overlap; it simply cites Consent Decree paragraphs and claims they are the same or "similar" to GreenLatinos' claims.[7]

### 3. The Consent Decrees Did Not Enforce the Same Emissions Limitations as GreenLatinos' Claims

The complaints filed by EPA, Exs. 19, 20, demonstrate that the Decrees did not enforce the same emissions limits as GreenLatinos. When comparing a prior enforcement action to a citizen suit, "a comparison of the pleadings is sufficient." *Glazer v. Am. Ecology Env't Serv. Corp.*, 894 F. Supp. 1029, 1035 (E.D. Tex. 1995) ("Congress did not intend to overburden the courts by requiring protracted litigation regarding the similarities."). EPA alleged three claims related to the Refinery: (1) violations of new source review requirements, (2) violations of New Source Performance Standards ("NSPS") Subparts A and J limiting types of gases that can be combusted in flares; and (3) leak detection and repair violations. Ex. 19 at 12-18; Ex. 20 at 16-23. On their face, GreenLatinos' Claims do not overlap with the first and third EPA claims.

Like EPA's second claim, GreenLatinos' Claim 1 also alleges violations of NSPS Subpart J, but the claims differ substantially. *First*, most Claim 1 violations occur at boilers and heaters, not flares. Am. Compl. at 55-56, ¶¶ 300-14. *Second*, Claim 1 alleges violations of a specific $H_2S$ concentration limit, *id*. at 56, ¶¶ 312-13, while EPA alleged improper flaring in non-emergency situations. Ex. 19 at 16; Ex. 20 at 20.

The Decrees themselves confirm that they did not enforce the same standards as GreenLatinos. The Decrees never mention most standards in GreenLatinos' Claims, some of which did not even exist when the Decrees were entered. *See, e.g.,* Am. Compl. Claims 2 & 11

---

[7] If the Court chooses to consider Exhibit 4, Plaintiffs have provided a copy of the table with substantive responses in Exhibit 23, attached hereto.

(standards beginning in 2017, 40 C.F.R. § 60.100a); *id.* Claims 21, 23, and 28 (standards

beginning in 2019, 40 C.F.R. § 63.670). The Decrees broadly state that NSPS Subpart J applies

to certain units, *see* Ex. 5 ¶¶ 54, 156, 171; Ex. 6 ¶¶ 98, 231, but they do not address the specific

numeric limits GreenLatinos allege were violated. *See* Am. Compl. Claims 1, 5, 10, and 17.

Finally, Claims 13, 14, 16, and 25 enforce terms created by the Decrees themselves, which are

always enforceable. *See, e.g., City of Fairborn, v. U.S. Env't Prot. Agency*, No. 3:22-CV-102,

2024 WL 555929, at *6 (S.D. Ohio Feb. 12, 2024) (consent decrees do not bar claims for

violations of the decrees themselves).

### D.    Any Prosecution of the Consent Decrees is Not Diligent

Even if the other requirements were met, GreenLatinos have demonstrated that any

prosecution is not diligent.

*First*, Suncor's long history of violations demonstrates that prosecution is not diligent.

While continued violations "do[] not *necessarily* imply lack of diligence," *Karr*, 475 F.3d at

1197, "ongoing violations support the allegation of a lack of diligence," *Cebollero-Bertran v.

Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 75 (1st Cir. 2021). When violations

consistently persist or the consent decree cannot assure compliance, prosecution is not diligent.

*Friends*, 382 F.3d at 764; *Ohio Valley Env't Coal. v. Bluestone Coal Corp.*, No. CV 1:19-00576,

2020 WL 2949782, at *8 (S.D. W. Va. June 3, 2020) (collecting cases); *Cf. Lamar*, 2012 WL

1059981, at *3 (rejecting mootness argument because violations continued despite prior consent

orders). Here, Suncor's violations have persisted for years. Am. Compl. 5, ¶ 2, Exs. B-L.

*Second*, EPA and CDPHE's failure to seek court intervention in the last twenty years,

despite Suncor's consistent violations, also shows a lack of diligence. *See Honolulu*, 2008 WL

1968317 at *7 (no diligent prosecution of ten-year-old consent decree where government never

sought court enforcement).

## VI.   GreenLatinos Adequately Alleged Claim 25

### A.   GreenLatinos Alleged that A NOx Emission Limit Applies to Heater H-2101

GreenLatinos alleged that a NOx emission limit has applied to Heater H-2101 since it

was first installed. Am. Compl. at 43, ¶¶ 213-14; 75 ¶¶ 479-83. Suncor argues that the limit is

inapplicable because it was first added to Suncor's Title V permit on July 9, 2024, Mot. 19, but

this argument is incorrect for two reasons.

*First*, CDPHE determined in Suncor's Title V Permit that the emissions limit has applied

to Heater H-2101 since installation. *See, e.g.,* Ex. 24 (West Plant Permit TRD) at 160.

*Second*, a citizen suit can enforce any "emission standard or limitation," which includes

"a requirement . . . which limits the quantity, rate, or concentration of emissions of air

pollutants," *Utah Physicians*, 21 F.4th at 1250 (citations omitted)—not just Title V Permit

conditions. The NOx concentration in Claim 25 meets that definition. Meanwhile, the permit's

compliance schedule for the heater does not absolve Suncor from complying with the limit

because "[a]ny such schedule of compliance shall not sanction noncompliance with, the

applicable requirements on which it is based." 40 C.F.R. § 70.5(c)(8)(iii)(C).

### B.   GreenLatinos Plausibly Alleged that Claim 25 is Timely

GreenLatinos alleged that Heater H-2101 has violated the NOx emission limit each time

that it is operated. Am. Compl. at 75, ¶ 483. That is sufficient to satisfy the statute of limitations.

*See Sec. & Exch. Comm'n v. Kokesh*, 884 F.3d 979, 984 (10th Cir. 2018) (each act in violation

enforceable under statute of limitations). Suncor's citation of *Sierra Club v. Oklahoma Gas &*

*Electric Co.*, Mot. 20, is inapposite because it found the violation was a one-time continuing violation. 816 F.3d 666, 672 (10th Cir. 2016). Here, each operation of the heater accrued discrete violations. *See WildEarth Guardians v. Mountain Coal Co*., No. 20-CV-01342, 2021 WL 1186669, at *2 (D. Colo. Mar. 30, 2021) (distinguishing *Oklahoma Gas*).

Also, the limitations period is tolled because GreenLatinos could not have reasonably discovered the violation earlier. *See United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040, 1046 (D. Colo. 2012). CDPHE first discovered that the emission limit applied during the 2024 permit renewal, Ex. 24 at 160, despite Suncor's duty to identify the limit in its permit applications, *see, e.g.,* 5 C.C.R. § 1001-5:C.III.C.4. GreenLatinos could not have reasonably discovered the violations earlier than CDPHE, so the limitations period is tolled.

**VII.    Conclusion**

For the foregoing reasons, the Court should deny the Motion.

DATED: February 19, 2025                    Respectfully submitted,

                                             */s/ Ian Coghill*
                                             _____

                                             **Ian Coghill**
                                             **Rachael Jaffe**
                                             Earthjustice
                                             633 17th Street, Suite 1600
                                             Denver, CO 80202
                                             Telephone: (303) 996-4620
                                             Email: icoghill@earthjustice.org
                                             Email: rjaffe@earthjustice.org
                                             Attorneys for Plaintiffs GreenLatinos, 350
                                             Colorado, and Sierra Club

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

    I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as modified by the Court's January 14, 2025 Order, ECF 26.

                                      */s/ Ian Coghill*
                                        Ian Coghill

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of February, 2025, I served a true and complete copy of the foregoing document on all parties of record via the Court's electronic filing service:

*Attorneys for Suncor Energy (U.S.A.) Inc.*
Eric L. Robertson
Hugh Q. Gottschalk
Wheller Trigg O-Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
Robertson@wtotrial.com
gottschalk@wtotrial.com

*Attorneys for Suncor Energy (U.S.A.) Inc.*
John H. Bernetich
Carlos R. Romo
Williams Weese Pepple & Ferguson PC
1801 California St., Ste 3400
Denver, CO 80202
jbernetich@williamsweese.com
cromo@williamsweese.com

*/s/ Ian Coghill*
_____
**Ian Coghill**
**Rachael Jaffe**
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 996-4620
Email: icoghill@earthjustice.org
Email: rjaffe@earthjustice.org
Attorneys for Plaintiffs GreenLatinos, 350
Colorado, and Sierra Club

# EXHIBIT 12

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02164

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A), INC.

      Defendant.

---

## DECLARATION OF DANIEL PRICE

---

I, Daniel Price, declare as follows:

1. I submit this declaration in support of GreenLatinos *et.al.*'s Complaint against Suncor Energy (U.S.A), Inc. ("Suncor") to enforce against violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*., at Suncor's Commerce City Refinery, Plants 1 and 3 ("West Plant") and Plant 2 ("East Plant") at 5800 Brighton Blvd, Commerce City, CO 80022 ("Suncor Refinery").

2. The facts set forth in this declaration are based on my own personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

3. I am currently thirty-eight years old.

4. I am a member of 350 Colorado. I became a member of 350 Colorado in 2022.

5. In April 2022, I received a text message from the Colorado Department of Public Health and the Environment, notifying me of an exceedance at Suncor. The text message informed me that it was not safe to go outside. I was really frustrated about Suncor and the effect that the air pollution had on my life and ability to move freely around my own neighborhood, and so I made a post about the issue. Through the post, I was connected with 350 Colorado and became a member to keep Suncor accountable.

6. I am now on the board of 350 Colorado. My participation in 350 Colorado is a good mix of my personal experiences and my experiences studying public policy. I take part in

monthly meetings and strategic planning sessions, as well as fundraising, budgets, and oversight of the executive director and staff.

7. I live near the intersection of Highway 85 and Brighton Boulevard in Commerce City.

8. I live approximately 1.5 miles from the Suncor Refinery, as the crow flies. I live with my wife and my seven-month-old daughter.

9. My neighborhood is very welcoming and safe. It is a diverse neighborhood, with a mainly Latinx population and about twenty percent of the neighborhood living below the poverty line.

10. My neighborhood has major issues with walkability, a lack of trees, and too much concrete causing a heat island. But my biggest worry is the acute toxic air releases from Suncor. These emissions are preventable and often violations of their allowable pollution limits under Suncor's permits.

11. I work for the Commerce City as the Parks and Streets Project Program Coordinator and spend three days a week outside working in the neighborhood.

12. I spend two days a week working from home and spend much of my free time in my neighborhood as well, especially now that I have a small baby. We walk to the elementary school nearby, as well as along the Platte River trail which is about a mile away.

13. When not working, I spend as much time as I can in my garden, even in the winter and fall. I have about 45 fruit trees, a vegetable garden, and chickens. I also am building a greenhouse. I spend a lot of time and money on my small urban farm to get a good amount of food from it. But I worry that the soil and air could be compromised from the air pollution in my neighborhood.

14. Our chickens live in our yard, and we eat eggs from them every day. But they scratch and peck the soil. I feel anxious about what pollutants from the air end up in the soil and then eventually in our eggs.

15. We use a small window unit in our bedroom to cool our house in the summer. But otherwise, we leave all our windows open.

16. We have a small air purifier in the basement that we bought when we first moved to Colorado.

17. When I know that the air pollution in my neighborhood is bad, I will wear a mask. I can see the flames from the flares when they burn off toxic gases, and on some days I can see haze and steam. I check my phone's air quality app regularly. But I usually only hear about exceedances from Suncor after the fact.

18. Because of air pollution in our neighborhood, we are seriously considering leaving the state and our home because of the air pollution in our neighborhood. We don't know if we can stay here and expose our daughter to so many health risks.

2

19. From my house I can see Suncor. I can see the towers, the flares, and the billows of smoke. The flames from the flares are clearly visible, as if they were enormous candles in the Suncor facility.

20. We smell odors from our house as well. Odors coming from Suncor smell like burning rubber.

21. My family has suffered health issues because of the air pollution.

22. My daughter was born at a very low birth rate, which is common across Adams County.

23. Additionally, my wife suffers from allergies. We are doing some testing to make sure we aren't having any reactions to food, but I believe her allergies are due to air pollution as well.

24. Since moving to this area, anytime I get sick I have lung symptoms including shortness of breath.

25. For the first time in my life last year, I had panic attacks. It was terrifying to not be able to breathe.

26. Additionally, I've had low energy levels and increased feelings of anxiety and depression. I have read some studies that say that anxiety and depression can be caused by air pollution, so I believe that these symptoms are due to the excess pollution coming from Suncor.

27. My chronic depression and anxiety are exacerbated by thinking about the local air pollution issue. It makes me feel apathetic, angry, and cynical.

28. Before I worked for Commerce City, I was a teacher in this neighborhood. It was clear that my students shared many of these feelings. They had a lot of learned helplessness and negative feelings around our community. We need to provide more support to these eleven- and twelve-year-old kids that have internalized hopelessness around the issue.

29. Our city is very hesitant to criticize Suncor because about $14 million of revenue for Commerce City comes from Suncor.

30. Even still, Suncor's environmental record is abysmal. Their violations have been recognized at both the Federal and State level.

31. My knowledge of Suncor's actual emissions is pretty layman, because the data is so hard for the public to acquire. But through 350 Colorado, I've learned about the issues with $SO_2$ and benzene specifically, which causes neurological damage.

32. I understand that Suncor is one of the largest sources of air pollution in my neighborhood.

33. I know that Suncor continually violates the air emissions limits that they have been permitted for, and that those violations cause Suncor to put out even more pollution.

34. I understand that Suncor emits pollutants in excess of what Suncor's permits allow, including the following pollutants: (1) Hydrogen Sulfide ($H_2S$), (2) Carbon Monoxide

(CO), (3) Sulfur Dioxide (SO$_2$), (4) Nitrogen Oxides (NOx), (5) Volatile Organic Compounds (VOCs), (6) Particulate Matter (PM), and (7) Hazardous Air Pollutants.

35. I understand that breathing in the excess pollutants emitted from Suncor causes health impacts to myself, my family, and my community.

36. H$_2$S can cause impacts like eye and throat irritation, headaches, tiredness, and even death.

37. CO can cause impacts like fatigue, chest pain, impaired vision, headaches, dizziness, confusion, and nausea.

38. SO$_2$ and sulfur compounds can cause impacts like central nervous system effects and skin and eye irritation.

39. NOx can cause impacts like aggravating respiratory illnesses such as asthma.

40. VOCs can cause impacts like eye, nose, and throat irritation, headaches, nausea, damage to the liver and kidney, affect the central nervous system, and cause certain cancers.

41. Particulate matter can cause death, and other impacts like heart disease, respiratory problems, diabetes, and impaired brain development in children.

42. Hazardous air pollutants can cause impacts like cancer, respiratory damage, nervous disorders, developmental disorders, and kidney damage, as well as eye, nose, and throat irritation, respiratory problems, and reproductive and developmental disorders.

43. I get messages similar to the one I received in April 2022 about 3 or 4 times a year. CDPHE always says its nothing to worry about. But I am worried.

44. There needs to be more control over the emissions from Suncor and increase enforcement. I hope to bring more awareness around the issues and help to find ways to minimize the damage to myself, my family, and my community.


I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.


Dated: February 19, 2025.                  s/Daniel Price_____(signature)
                                           Daniel Price

# EXHIBIT 13

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02164

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

     Plaintiffs,

v.

SUNCOR ENERGY (U.S.A), INC.

     Defendant.

---

## DECLARATION OF HARMONY CUMMINGS

---

I, Harmony Cummings, declare as follows:

1. I submit this declaration in support of GreenLatinos *et.al.*'s Complaint against Suncor Energy (U.S.A), Inc. ("Suncor") to enforce against violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*., at Suncor's Commerce City Refinery, Plants 1 and 3 ("West Plant") and Plant 2 ("East Plant") at 5800 Brighton Blvd, Commerce City, CO 80022 ("Suncor Refinery").

2. The facts set forth in this declaration are based on my own personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

3. I am currently forty-four years old.

4. I am a member of the Sierra Club. I joined Sierra Club as a member last year because I wanted to participate more closely with their work on heating homes.

5. I work for the Green House Connection Center, which is an organization that I founded in 2021.

6. Prior to working for the Green House Connection Center, I worked for Highland Builders, a real estate developer, and before that I worked in the oil and gas industry in accounting.

7. The Green House Connection Center is located at 4700 Claude Ct., Denver 80216 in the Elyria neighborhood.

8. The Center is approximately one and a half miles away from the Suncor Refinery as the crow flies.

9. I also live in north Denver, about three miles west of the Center and four miles from the Suncor Refinery. I live with my two sons, who are seven and ten years old.

10. I am very involved in the environmental justice space in Denver and have worked closely with Sierra Club prior to becoming a member on many initiatives, including during climate lobby days or legislation in my capacity with the Green House Connection Center.

11. The Green House Connection Center is a physical community space that pairs music, movement, and the arts with elevating community decision making and environmental policy. We incorporate dance and art into our outreach and community meetings, do pollution and solution tours, and are a bridge between policy and community.

12. The Green House Connection Center holds large engagement meetings with community members once a month, and two to three other events at the space per week on average. I am at the Center 3-4 days a week.

13. Across the street from the Green House Connection Center is a bridge that connects two parts of the community over the railroad. From the top of the bridge, you can see pollution from downtown Denver to the mountains and can often see the gray haze that gets stuck in the city.  Most of the summer, you can see hazy clouds. I see the cloud as I drive from North Denver, across the railroad yard into Elyria. I see the cloud when I drive to Red Rocks and look out over the city and everytime I return from the mountains I can distinctly see the large brown cloud settling over the metro area, flares from Suncor are visible from the bridge. Additionally, sometimes we smell a petroleum-based tar and asphalt smell in the neighborhood. There are many smells in the neighborhood. The Purina smell is distinct and you can tell it apart. There is a very different and distinct petroleum smell that happens sometimes. It makes you hesitate to breathe fully and makes me concerned with what is in the air, that goes into our bodies and what are the impacts. Sometimes during this smell I almost immediately get a slight headache and irritation of your sinuses, throats and eyes.

14. We installed air conditioning at the Green House Connection Center this past summer. I now often offer the space to community members who don't have air conditioning at their own homes and want to use the space as a respite from the air quality issues in the neighborhood.

15. Prior to installing the new HVAC system, we limited hosting events in the summer because of a fear of the community's health due to air pollution exposure. Even with the new air conditioning, I worry about holding exercise and dance events at the Center because of the air pollution. I still limit summer events when there are bad air quality days and/or ozone alerts in the area.

16. Personally, I used to attend dance classes at a recreation center in the Elyria neighborhood, but I no longer attend those classes because I have a hard time breathing during them. I do not experience the same shortness of breath while dancing or exercising in neighborhoods further away.

17. My sons suffer from frequent ear infections, congestion, and runny noses. Their symptoms seem to decrease when they are at camps or events in the mountains.

18. My kids play soccer in the Elyria-Swansea neighborhood. However, I worry about their exposure to air pollution during their games. They have the privilege of leaving the neighborhood, unlike many of the community members associated with the Green House Connection Center. I do try to limit or avoid their outside activities on bad air quality or ozone days.  We check the EPA Air Now app and get updates from CDPHE on air quality.

19. In our own house, we no longer open our windows at night to cool the house and rely only on our air conditioning. I hate air conditioning, but I am more worried about high air pollution. I am sad to live in this beautiful state known for outdoor access and have to limit my family's time outside in order to limit air pollution exposure.

20. Suncor is one of the largest sources of air pollution in the Elyria-Swansea and Globeville communities.

21. I am frustrated that Suncor has a significant number of emissions exceedances, but there is very little accountability and enforcement of the rules and regulations. Suncor's extreme profits, about one to three million dollars a day, allows the corporation to pay the small fines that they are given and continue to exceed the emissions limits that are set for them in order to keep making more profit. Rather than pay their shareholders large payouts, Suncor's profits should go to investing in better equipment to decrease air pollution and harm to the environment.

22. I understand that Suncor is one of the largest sources of air pollution in my neighborhood.

23. I know that Suncor continually violates the air emissions limits that they have been permitted for, and that those violations cause Suncor to put out even more pollution.

24. I understand that Suncor emits pollutants in excess of what Suncor's permits allow, including the following pollutants: (1) Hydrogen Sulfide ($H_2S$), (2) Carbon Monoxide (CO), (3) Sulfur Dioxide ($SO_2$), (4) Nitrogen Oxides (NOx), (5) Volatile Organic Compounds (VOCs), (6) Particulate Matter (PM), and (7) Hazardous Air Pollutants.

25. I understand that breathing in the excess pollutants emitted from Suncor causes health impacts to myself, my family, and my community.

26. $H_2S$ can cause impacts like eye and throat irritation, headaches, tiredness, and even death.

27. CO can cause impacts like fatigue, chest pain, impaired vision, headaches, dizziness, confusion, and nausea.

3

28. SO$_2$ and sulfur compounds can cause impacts like central nervous system effects and skin and eye irritation.

29. NOx can cause impacts like aggravating respiratory illnesses such as asthma.

30. VOCs can cause impacts like eye, nose, and throat irritation, headaches, nausea, damage to the liver and kidney, affect the central nervous system, and cause certain cancers.

31. Particulate matter can cause death, and other impacts like heart disease, respiratory problems, diabetes, and impaired brain development in children.

32. Hazardous air pollutants can cause impacts like cancer, respiratory damage, nervous disorders, developmental disorders, and kidney damage, as well as eye, nose, and throat irritation, respiratory problems, and reproductive and developmental disorders.

33. Enforcement of Suncor's permits is the bare minimum that needs to be done in order to decrease pollution and support the health and safety of the community.


I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.


Dated: February 19, 2025.                        s/Harmony Cummings_____(signature)
                                                 Harmony Cummings


4

# EXHIBIT 14

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02164

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A), INC.

      Defendant.

---

## DECLARATION OF LI MATTSON

---

I, Li Mattson, declare as follows:

1. I submit this declaration in support of GreenLatinos *et.al.*'s Complaint against Suncor Energy (U.S.A), Inc. ("Suncor") to enforce against violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*., at Suncor's Commerce City Refinery, Plants 1 and 3 ("West Plant") and Plant 2 ("East Plant") at 5800 Brighton Blvd, Commerce City, CO 80022 ("Suncor Refinery").

2. The facts set forth in this declaration are based on my own personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

3. I am currently thirty-two years old.

4. I am a member of 350 Colorado. I joined because I am concerned about air pollution in my community and the permit processes that allow industry to pollute the air. I participate in the events that 350 Colorado puts on, such as climate lobby days, and I have tabled for them at other community events. I like that they have actionable steps to take for the community to hold polluters accountable.

5. I live near the intersection of East 44th Avenue and Josephine Street, in Denver, Colorado 80216.

6. I live approximately 1.75 miles from the Suncor Refinery, as the crow flies. I live with my husband and my four-year-old son.

7.  We do not have air conditioning in our home, so we cool our house in the summer by opening our windows. I am constantly debating whether to open the windows based on the heat and the air quality. As it gets hotter in Denver, we have less of a choice and have to open our windows, especially at night. We will wait to open the windows until morning if it is not too hot, because often the pollution is lower in the mornings.

8.  We have one small fan that is supposedly an air purifying fan, but I'm not sure how effective it is. We do also have lots of plants in the house, which we hope is helpful.

9.  My family's home is a duplex with a small backyard, where we spend a lot of time. I work from home full time. My son goes to school for half days, and then spends all afternoon and evenings with me at home.

10. We like to spend time in our backyard, when we feel it is safe to do so based on the air quality. We eat dinners out there, play outside in the yard, and enjoy gardening.

11. We also spend a lot of time at the parks and playgrounds in our neighborhoods. My son also loves to go for bike rides around the neighborhood. Duham park is about two blocks away and we go there most evenings.

12. I worry about the air quality in my neighborhood. I follow the air pollution status from the air monitor at Swansea Elementary as well check the air quality on my phone. I don't know whether I can always trust the air quality reports, but I know that the air quality in our neighborhood is almost always worse than other areas of Denver.

13. From our neighborhood and house, we can see air pollution, most often in the evenings. The neighborhood gets very hazy and does not have many trees, so we definitely notice when the air pollution is bad. Some days, we can smell unpleasant odors as well. These odors are usually a rotten-egg like smell, but sometimes is more of a metallic smell.

14. Because of the air pollution in my neighborhood, I limit the time I spend outside for myself and my son. I struggle with this because I know that doctors recommend that kids spend more time outside, but we have to monitor how much time we spend outside because of the air quality. Kids breathe twice as fast as adults so I know that he is taking in twice as many pollutants as I am. I worry about when or if he will develop a breathing disorder. I feel frustrated that we can't spend as much time outside as possible.

15. While we enjoy gardening in our backyard, I worry about the food that we grow. We only grow our plants in raised beds because we had the soil in our yard tested and found arsenic and lead. Air pollutants get into everything, and when the air pollution is really high, there is only so much a plant can do to filter the pollutants. I worry about whether or not our plants will survive, and whether the food is safe to eat.

16. Since living in our home, I have developed allergies, and my husband has been suffering from stomach issues with no apparent cause. Both ailments seem to get better when we spend time elsewhere. My husband's stomach issues have caused him to miss a lot of

work, and to have a lot of procedures and tests done, including a stomach biopsy, that are very costly.

17. When the air pollution is bad, my son often wakes up with swollen eyes and black soot in his eyes.

18. I understand that Suncor is one of the largest sources of air pollution in my neighborhood.

19. I know that Suncor continually violates the air emissions limits that they have been permitted for, and that those violations cause Suncor to put out even more pollution.

20. I understand that Suncor emits pollutants in excess of what Suncor's permits allow, including the following pollutants: (1) Hydrogen Sulfide ($H_2S$), (2) Carbon Monoxide (CO), (3) Sulfur Dioxide ($SO_2$), (4) Nitrogen Oxides (NOx), (5) Volatile Organic Compounds (VOCs), (6) Particulate Matter (PM), and (7) Hazardous Air Pollutants.

21. I understand that breathing in the excess pollutants emitted from Suncor causes health impacts to myself, my family, and my community.

22. $H_2S$ can cause impacts like eye and throat irritation, headaches, tiredness, and even death.

23. CO can cause impacts like fatigue, chest pain, impaired vision, headaches, dizziness, confusion, and nausea.

24. $SO_2$ and sulfur compounds can cause impacts like central nervous system effects and skin and eye irritation.

25. NOx can cause impacts like aggravating respiratory illnesses such as asthma.

26. VOCs can cause impacts like eye, nose, and throat irritation, headaches, nausea, damage to the liver and kidney, affect the central nervous system, and cause certain cancers.

27. Particulate matter can cause death, and other impacts like heart disease, respiratory problems, diabetes, and impaired brain development in children.

28. Hazardous air pollutants can cause impacts like cancer, respiratory damage, nervous disorders, developmental disorders, and kidney damage, as well as eye, nose, and throat irritation, respiratory problems, and reproductive and developmental disorders.

29. I am aggravated that Suncor won't take responsibility for the harm that they are causing to everyone who is living in Colorado, especially people in my neighborhood.

30. I understand that the state has fined Suncor for its permit violations and that Suncor has continued to violate its permit. I am frustrated that Suncor seems to ignore attempts to enforce its permits. Suncor makes so much money per day that it makes sense for them to pollute and pay fines as it is just a cost of doing business for them.

31. I want Suncor to be held accountable for its violations and to stop violating its permits. If Suncor stops violating its permits, there will be less pollution in my community and less risk to myself and my family.

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.


Dated: February 19, 2025.                    _s/Li Mattson_____(signature)
                                             Li Mattson

4

# EXHIBIT 15

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02164

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A), INC.

      Defendant.

---

## DECLARATION OF RENÉE CHACON

---

I, Renée Chacon, declare as follows:

1. I submit this declaration in support of GreenLatinos *et.al.*'s Complaint against Suncor Energy (U.S.A), Inc. ("Suncor") to enforce against violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, at Suncor's Commerce City Refinery, Plants 1 and 3 ("West Plant") and Plant 2 ("East Plant") at 5800 Brighton Blvd, Commerce City, CO 80022 ("Suncor Refinery").

2. The facts set forth in this declaration are based on my own personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

3. I am currently thirty-nine years old.

4. I am a member of GreenLatinos. I became a member of GreenLatinos three years ago, in order to continue to work on many issues such as environmental justice issues and the environmental justice act.

5. I live in the Commerce City, where I have lived for six years with my husband and two kids.

6. I live approximately 5 miles from the Suncor Refinery, as the crow flies, and grew up near the Suncor Refinery.

7.   I am the co-founder and Executive Director of Womxn from the Mountain. Womxn from the Mountain is a community-based organization focused on the protection of public health and the environment in Globeville, Elyria-Swansea, Commerce City, Henderson, and the surrounding neighborhoods and areas. Womxn from the Mountain addresses environmental racism's cumulative impacts to Indigenous and disproportionately impacted communities through media, community outreach, programming, community cultural resources, environmental education, cultural traditions, and transformative arts. We also relate environmental racism and predatory behaviors to Missing and Murdered Indigenous Womxn, Men, Children, and LGBT + Queer Identity communities to provide advocacy, education, and data to mitigate and regulate this crisis as it relates to human trafficking and harmful effects from various industry sectors. In our Indigenous cultural leadership efforts, we address the health disparities and mental health harms associated with environmental injustice.

8.   Womxn from the Mountain regularly engages in local air quality issues, often alongside GreenLatinos. Additionally, the organization regularly participates in statewide air quality advocacy, including participating in state rulemakings and providing public comment on a variety of air quality related issues before the Colorado Department of Public Health and Environment, Air quality Control Commission, and Air Quality Control Division.

9.   The close proximity of the Suncor refinery is devastating to the quality of life of Womxn from the Mountain's staff, our families, and the communities that we serve that are adjacent to the refinery. Unmonitored pollution will lead to the death and illness of the people who create and help support Womxn from the Mountain's work.

10.  Currently, I am also a Commerce City Council Member. The Commerce City Civic Center is about two miles east of Suncor as the bird flies.

11.  I spend a lot of time in the neighborhoods surrounding Suncor through my work. I am often at meetings that occur within one mile of Suncor. I fear for my own health spending time in these areas, and worry about the health of the residents.

12.  I work from home and spend a large amount of time in my house and neighborhood. We like to garden and spend time in the parks in our neighborhood.

13.  We love to garden but the air pollution in my neighborhood affected the soil, and it took us five years to heal the soil enough to eat anything we grow.

14.  Every evening around 8:00 PM, I can smell rotten eggs from the air pollution in my neighborhood, and I smell the same smell often when I am near the Refinery in my work capacity.

15.  We have air conditioning in my home, but for about two or three months it was broken, and we had to open the windows and endure the air pollution and bad smells.

16. The community that I live and work in breathes forty-five percent less oxygen than the rest of the state, and the life expectancy is eight years lower. The industry in these communities creates multigenerational disparities.

17. I suffer from an autoimmune disease called immune thrombocytopenia (ITP), which causes anemia and bruising. My medical doctor stated that this condition is not genetic and was likely a product of external, environmental conditions like pollution.

18. My husband gets severe migraines and has trouble breathing. My son gets nosebleeds once a week, which were increased to every other day when the air conditioning was broken.

19. Both of my sons have a hard time breathing, especially in the morning. When it's a really bad ozone day we will go up to the mountains so they can breathe.

20. I have allergies, as does my son. My allergies have been much worse since moving back to Colorado, and they get immediately better when I leave my neighborhood.

21. When the air pollution is bad, we try to spend less time outside and do not take our dogs on the long walks they need. If I am outside long enough, my throat gets ripped up and I will get a headache.

22. I've canceled whole events for my nonprofit if I see that the air quality will be bad. Now, I try to avoid scheduling events during the summer because people don't want to come outside to the events. When I schedule events, I try to hold them in the evening when the air quality is better. Still, it is hard to plan anything because I do not want people to be outside in the middle of the day.

23. Two years ago, my organization asked the city to do a half marathon for Indigenous People's Day. However, the city would not allow the event because of the amount of emissions people would be exposed to.

24. Suncor is a bad actor in the neighborhood, and I am astounded that there is no health study done before permitting the refinery. I do not think Suncor recognizes that there are living, breathing people affected by their actions. I believe that Suncor condemns future generations to die from their pollution.

25. I understand that Suncor is one of the largest sources of air pollution in my neighborhood.

26. I know that Suncor continually violates the air emissions limits that they have been permitted for, and that those violations cause Suncor to put out even more pollution.

27. I understand that Suncor emits pollutants in excess of what Suncor's permits allow, including the following pollutants: (1) Hydrogen Sulfide (H2S), (2) Carbon Monoxide (CO), (3) Sulfur Dioxide (SO2), (4) Nitrogen Oxides (NOx), (5) Volatile Organic Compounds (VOCs), (6) Particulate Matter (PM), and (7) Hazardous Air Pollutants.

28. I understand that breathing in the excess pollutants emitted from Suncor causes health impacts to myself, my family, and my community.

3

29.    H2S can cause impacts like eye and throat irritation, headaches, tiredness, and even death.

30.    CO can cause impacts like fatigue, chest pain, impaired vision, headaches, dizziness, confusion, and nausea.

31.    SO2 and sulfur compounds can cause impacts like central nervous system effects and skin and eye irritation.

32.    NOx can cause impacts like aggravating respiratory illnesses such as asthma.

33.    VOCs can cause impacts like eye, nose, and throat irritation, headaches, nausea, damage to the liver and kidney, affect the central nervous system, and cause certain cancers.

34.    Particulate matter can cause death, and other impacts like heart disease, respiratory problems, diabetes, and impaired brain development in children.

35.    Hazardous air pollutants can cause impacts like cancer, respiratory damage, nervous disorders, developmental disorders, and kidney damage, as well as eye, nose, and throat irritation, respiratory problems, and reproductive and developmental disorders.

36.    We need accountability and transparency for Suncor's emissions, as well as a health analysis to truly understand what Suncor's impacts are.


I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.


Dated: February 19, 2025.                     s/Renée Chacon_____(signature)
                                              Renée Chacon

# EXHIBIT 16

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02164

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

     Plaintiffs,

v.

SUNCOR ENERGY (U.S.A), INC.

     Defendant.

---

## DECLARATION OF ANGELA GARCIA

---

I, Angela Garcia, declare as follows:

1. I submit this declaration in support of GreenLatinos *et.al.*'s Complaint against Suncor Energy (U.S.A), Inc. ("Suncor") to enforce against violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*., at Suncor's Commerce City Refinery, Plants 1 and 3 ("West Plant") and Plant 2 ("East Plant") at 5800 Brighton Blvd, Commerce City, CO 80022 ("Suncor Refinery").

2. The facts set forth in this declaration are based on my own personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

3. I am currently sixty years old.

4. I am a member of GreenLatinos. I joined about four years ago because I appreciate that GreenLatinos advocates for environmental justice on behalf of the Globeville, Elyria-Swansea, and Commerce City communities and throughout the state.

5. I participate often in GreenLatinos events, including representing the organization at meetings with the Governor when needed. It is really important to me to give back to my community in this way.

6. I live at 4447 Pennsylvania, Denver, CO 80216 and have lived at this address for thirty-two years as of December 2024.

7.  I live approximately two miles from the Suncor Refinery, as the crow flies. I live by myself.

8.  I am assaulted day and night by air pollution. I can see air pollution from my house, including the a fine, thin, misty pollution coming from the refinery. When I am near the refinery, I often see flaring.

9.  I can also smell unpleasant odors from the refinery. The odor is a distinct chemical smell and gives me an instant headache. I notice the odor most in the winter at nighttime when letting my pets outside.

10. I spend a lot of time everyday at my house sitting with my dogs, watching the birds and dragonflies. I also take buses everywhere I go, so I spend a lot of time outside while commuting to and from my neighborhood.

11. I suffer from asthma, and have had bronchitis and pneumonia.. I can tell that my breathing is most affected when something in the air is irritating my lungs. Along with trouble breathing, the irritation extends to my eyes watering and my nose running.

12. When I have asthma attacks, I use an inhaler. However, I have to limit my inhaler use because my doctor will only prescribe me one per year. Not to mention that inhalers cost so much money. So, sometimes I am without a way to make myself feel better.

13. My asthma makes me feel tired – but I don't have time to be tired! I have to take care of my house, my dog, and my community. It also makes it so that I can't sleep very well and have to get up and use my inhaler. The asthma, plus the resulting lack of sleep, makes me unable to think or function.

14. I understand that Suncor is one of the largest sources of air pollution in my neighborhood.

15. I know that Suncor continually violates the air emissions limits that they have been permitted for, and that those violations cause Suncor to put out even more pollution.

16. I understand that Suncor emits pollutants in excess of what Suncor's permits allow, including the following pollutants: (1) Hydrogen Sulfide ($H_2S$), (2) Carbon Monoxide (CO), (3) Sulfur Dioxide ($SO_2$), (4) Nitrogen Oxides (NOx), (5) Volatile Organic Compounds (VOCs), (6) Particulate Matter (PM), and (7) Hazardous Air Pollutants.

17. I understand that breathing in the excess pollutants emitted from Suncor causes health impacts to myself, my family, and my community.

18. $H_2S$ can cause impacts like eye and throat irritation, headaches, tiredness, and even death.

19. CO can cause impacts like fatigue, chest pain, impaired vision, headaches, dizziness, confusion, and nausea.

20. $SO_2$ and sulfur compounds can cause impacts like central nervous system effects and skin and eye irritation.

2

21. NOx can cause impacts like aggravating respiratory illnesses such as asthma.

22. VOCs can cause impacts like eye, nose, and throat irritation, headaches, nausea, damage to the liver and kidney, affect the central nervous system, and cause certain cancers.

23. Particulate matter can cause death, and other impacts like heart disease, respiratory problems, diabetes, and impaired brain development in children.

24. Hazardous air pollutants can cause impacts like cancer, respiratory damage, nervous disorders, developmental disorders, and kidney damage, as well as eye, nose, and throat irritation, respiratory problems, and reproductive and developmental disorders.

25. I do not know anyone in my neighborhood that works for Suncor, despite Suncor's claims that they provide jobs to the community.

26. Suncor's violations are constant—yet, Suncor has been allowed to continue with their business while actively polluting babies and elders.

27. Suncor's violations are overlooked by the state. Even when the state takes small action, the company will give minimal money to communities for trees and air monitors, but this is merely pacification. It does nothing to get to the root of the problem.

28. The Colorado Department of Public Health and the Environment continues to issue permits for Suncor to stay in business despite the refinery's hugely negative impact on the communities. It's always profit over people.

29. I will keep fighting for clean air in my neighborhood for the health of my community.


I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.


Dated: February 19, 2025.          s/Angela Garcia          (signature)
                                   Angela Garcia

# EXHIBIT 17

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02164

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A), INC.

      Defendant.

---

## DECLARATION OF ANNA MCDEVITT

---

I, Anna McDevitt, declare as follows:

1. I submit this declaration in support of GreenLatinos *et.al.*'s Complaint against Suncor Energy (U.S.A), Inc. ("Suncor") to enforce against violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*., at Suncor's Commerce City Refinery, Plants 1 and 3 ("West Plant") and Plant 2 ("East Plant") at 5800 Brighton Blvd, Commerce City, CO 80022 ("Suncor Refinery").

2. The facts set forth in this declaration are based on my own personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

3. I am currently thirty-two years old.

4. I am a member of the Sierra Club. I joined Sierra Club as member in 2017 when I began working for the Sierra Club. Most recently, my position was Deputy Director of Building Electrification. I resigned from Sierra Club in March of 2024, but continue to be a member and volunteer, such as writing letters to decision makers on Sierra Club's priority bills.

5. I live in the Cole neighborhood of Denver, at 3653 N. High St.

6. I live approximately two miles away from the Suncor Refinery as the crow flies. I live with my husband.

7. My husband and I spend the majority of the time at our home, as we both work from home. We  spend a lot of time outside gardening and taking care of our chickens.

8. We spend a lot of time outside in our neighborhood. We live near a number of parks and the 39th Street Greenway, where we like to walk our dog. I also walk dogs on Rover for additional income. Some days I spend up to two hours walking dogs outside within two miles of my home.

9. We recently had a home energy audit performed by Xcel Energy and learned that our 130-year-old house is not insulated and has significant air leaks that are far from meeting today's minimum construction standards, meaning the air in our home exchanges with the outside air at a higher frequency than newer homes

10. We have put a lot of work and money into making our home safer and more comfortable. Prior to this past summer, we would rely on opening our windows to cool our house on hot days. We used window air conditioning units for working from home, but to save money, we would open the windows at night.

11. We also invested in some basic air sealing for the doors and windows to keep the air pollution out as much as possible, but our house remains leaky.

12. Additionally, we installed a heat pump in November 2023. The air filters are more expensive, and we replace them more than we used to.

13. We can see air pollution from our home, especially in the summer. There are days that we cannot see the mountains because of a hazy brown cloud that sometimes lasts for days at a time. I am constantly worried about the impact that the air pollution in our neighborhood will have on me and my husband. I'm worried about what I can't see and what I can't measure.

14. We love our garden but worry about the air pollution's effect on the soil, and therefore the safety of eating our produce.

15. On bad air quality days, I get a scratchy throat and feel sluggish and lethargic. My symptoms go away when the air quality gets better.

16. I grew up in Minnesota and never had allergies before. But here in Colorado I have mild allergies on and off throughout the year.

17. I can tell that my symptoms are correlated with bad air quality days because when the air looks dirtier and I can't see the mountains, or when the weather service issues bad air days, I feel my symptoms flare up.

18. When the air quality is bad, we avoid walking and running in our neighborhood. I will also cancel outdoor plans with friends, and spend less time gardening and walking my dog.

19. As a lifelong runner, running is a core part of who I am and what brings me joy, and I am frustrated that I have to check the air quality to decide whether to run in the summer. If the air quality is bad in my neighborhood, I sometimes choose to travel to Golden or

Boulder to run, and sometimes choose not to run at all for my health, safety and comfort. When I have chosen to run on bad air quality days, it is harder to breathe, less enjoyable, and I feel limited to a shorter distance.

20. My husband and I often think about moving because of the ways poor air quality decreases our quality of life. I'm frustrated by the bad air quality days that prevent us from spending more time in the backyard we've created, from gardening and running, or taking our dog for a longer walk. But we have built our lives and community here and do not want to leave.

21. Suncor has been polluting our community for decades with several pollutants that are bad for respiratory and cardiac health such as particulate matter and $SO_2$. It's frustrating to live in close proximity to a polluter that just pays fees for exceeding emissions limits without making changes to pollute less.

22. I am worried about how living within Suncor's pollution will impact me and my husband's long-term health. I wrote a report about racism and pollution from gas plants in Denver a few years ago and know that the area where I live in Denver has a higher incidence of diabetes, asthma, and cancer in addition to a higher incidence of pollutants in the air. I'm worried that I may be at higher risk for those ailments in the future.

23. I understand that Suncor is one of the largest sources of air pollution in my neighborhood.

24. I understand that Suncor emits pollutants in excess of what Suncor's permits allow, including the following pollutants: (1) Hydrogen Sulfide ($H_2S$), (2) Carbon Monoxide (CO), (3) Sulfur Dioxide ($SO_2$), (4) Nitrogen Oxides (NOx), (5) Volatile Organic Compounds (VOCs), (6) Particulate Matter (PM), and (7) Hazardous Air Pollutants.

25. I understand that breathing in the excess pollutants emitted from Suncor causes health impacts to myself, my family, and my community.

26. $H_2S$ can cause impacts like eye and throat irritation, headaches, tiredness, and even death.

27. CO can cause impacts like fatigue, chest pain, impaired vision, headaches, dizziness, confusion, and nausea.

28. $SO_2$ and sulfur compounds can cause impacts like central nervous system effects and skin and eye irritation.

29. NOx can cause impacts like aggravating respiratory illnesses such as asthma.

30. VOCs can cause impacts like eye, nose, and throat irritation, headaches, nausea, damage to the liver and kidney, affect the central nervous system, and cause certain cancers.

31. Particulate matter can cause death, and other impacts like heart disease, respiratory problems, diabetes, and impaired brain development in children.

32. Hazardous air pollutants can cause impacts like cancer, respiratory damage, nervous disorders, developmental disorders, and kidney damage, as well as eye, nose, and throat irritation, respiratory problems, and reproductive and developmental disorders.

33. I am angered by the lack of accountability for Suncor and worried about the future of my health, my husband's health, and my neighbors' health if Suncor is allowed to continue business as usual.

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Dated: February 19, 2025.              s/Anna McDevitt_____ (signature)
                                       Anna McDevitt

4

# EXHIBIT 18

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02164

GREENLATINOS,
350 COLORADO, and
SIERRA CLUB,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A), INC.

      Defendant.

---

## DECLARATION OF ARACELY NAVARRO

---

I, Aracely Navarro, declare as follows:

1. I submit this declaration in support of GreenLatinos *et.al.*'s Complaint against Suncor Energy (U.S.A), Inc. ("Suncor") to enforce against violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*., at Suncor's Commerce City Refinery, Plants 1 and 3 ("West Plant") and Plant 2 ("East Plant") at 5800 Brighton Blvd, Commerce City, CO 80022 ("Suncor Refinery").

2. The facts set forth in this declaration are based on my own personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

3. I am currently twenty-nine years old.

4. I am a member of GreenLatinos. I became a member of GreenLatinos in 2023 in order to be a part of the organizations work on environmental justice.

5. I attend GreenLatinos events, help with community outreach, and build partnerships to put on environmental justice events.

6. I live at 9111 Cedar Ct., Thorton, Colorado 80229.

7. I live approximately 5 miles from the Suncor Refinery, as the crow flies. I live with my partner and elderly father.

8.  I work for a nonprofit in the neighborhood, Groundwork Denver. We work with youth to educate them about environmental justice and water quality issues. About 50 percent of my job is outdoors, mostly in the Globeville, Elyria, Swansea, and Commerce City neighborhoods.

9.  When I am not at work, I spend the majority of my time at home, and half of my time at work is also at home.

10. I love to garden at my house and play outside with my dog and cat. Additionally, we have parties and gatherings at my house often. I am an Aztec dancer, so we use the backyard often for ceremonies and song circles.

11. I often go for walks in my neighborhood.

12. My enjoyment of my house is diminished because I can see the air pollution in the sky. Often, there are hazy skies, where a layer of ozone and NOx sits low in the sky. The haze looks orange to grayish, and I see it in the morning and afternoon almost every day. The haze lasts one or two hours.

13. If there is a high ozone day or an air quality alert, we have to cancel our outdoor plans to stay indoors. We get high ozone alerts through my weather app, and air quality alerts from the Colorado Department of Public Health and Environment.

14. Still, we do not have air conditioning, so we open our windows at night. We try to avoid opening them during the day and rely on small fans and ceiling fans.

15. Air quality in Globeville, Elyria, Swansea, Commerce City, and Thornton neighborhoods are some of the worst in the nation. These neighborhoods rank high for high ozone days, and areas of Commerce City have high amounts of pollution when it comes to ozone and NOx, as well as other pollutants that are monitored by EPA and state health department.

16. Through my job and volunteer work, I have been involved in some of the community engagement work in the neighborhoods and have been around community groups expressing issues. I have been proactive about learning about these issues because of my work in environmental justice.

17. I also have a master's in public health with a focus on environmental health. I've studied how air pollution is directly linked to many health ailments. I know that air pollution has been linked to asthma, upper respiratory diseases, heart disease, high blood pressure, and diabetes.

18. I grew up in Aurora, often visiting Commerce City and north Denver and my family and I have health issues that I believe are linked to the air pollution in this area.

19. My father has high blood pressure and diabetes that has gotten worse within the last eight years. He also has prostate cancer. My mother passed away from cancer about six years ago. They both also spent 20 plus years in these neighborhoods.

20. I have been struggling with infertility for at least ten years. I know that air pollution can cause infertility issues.

2

21. Air pollutants can also genetically alter us to our DNA level, the things my mother and father experienced are passed down to me. The industry has been around for fifty or more years in this neighborhood and has already impacted me and my family.

22. Treating our family's health ailments has cost us money and time. My mother had to stop working when she was battling cancer, which put a big strain on our family because she was the one who was supporting our low-income family the most. Now, I take time out of my work day to take my dad to the hospital for appointments for his high blood pressure, diabetes, and prostate cancer.

23. For me, my reproductive health has caused me time, money, and stress. I have to take time off of work to deal with it and the sadness and grief that comes with it.

24. Suncor is one of the only refineries in the state of Colorado, and they have violated their permits for a majority of the last decade.

25. Suncor impacts my life in so many ways. Emotionally, I hold a lot of fear about the health implications. Physically, I know that the air pollution in my community is making my health worse, even if I am not seeing the impacts now. I am always worried about long-term exposure and what that means for my health down the line.

26. I have a lot of anxiety about the impacts of Suncor's operations on my community. I worry about the refinery's toxic exposure, especially for the elderly and children.

27. I know that Suncor has had major pollution events and accidents in the past, including fires that caused the shutdown and the event that spread yellow powder.

28. Given this and that Suncor continues to violate its pollution limits, I worry that Suncor will have another major event and release more pollutants into the neighborhood.

29. I am stressed about living so close to industry, but I can't afford other places. The discussion of wanting to move because of the air pollution puts a strain on my relationships.

30. I understand that Suncor is one of the largest sources of air pollution in my neighborhood.

31. I know that Suncor continually violates the air emissions limits that they have been permitted for, and that those violations cause Suncor to put out even more pollution.

32. I understand that Suncor emits pollutants in excess of what Suncor's permits allow, including the following pollutants: (1) Hydrogen Sulfide ($H_2S$), (2) Carbon Monoxide (CO), (3) Sulfur Dioxide ($SO_2$), (4) Nitrogen Oxides (NOx), (5) Volatile Organic Compounds (VOCs), (6) Particulate Matter (PM), and (7) Hazardous Air Pollutants.

33. I understand that breathing in the excess pollutants emitted from Suncor causes health impacts to myself, my family, and my community.

34. $H_2S$ can cause impacts like eye and throat irritation, headaches, tiredness, and even death.

35. CO can cause impacts like fatigue, chest pain, impaired vision, headaches, dizziness, confusion, and nausea.

36. $SO_2$ and sulfur compounds can cause impacts like central nervous system effects and skin and eye irritation.

37. NOx can cause impacts like aggravating respiratory illnesses such as asthma.

38. VOCs can cause impacts like eye, nose, and throat irritation, headaches, nausea, damage to the liver and kidney, affect the central nervous system, and cause certain cancers.

39. Particulate matter can cause death, and other impacts like heart disease, respiratory problems, diabetes, and impaired brain development in children.

40. Hazardous air pollutants can cause impacts like cancer, respiratory damage, nervous disorders, developmental disorders, and kidney damage, as well as eye, nose, and throat irritation, respiratory problems, and reproductive and developmental disorders.

41. I am angry that Suncor continues to pollute and harm communities when the owners have no direct ties to the land or our communities. Suncor makes so much money, while we can't even afford our mortgage and still suffer so many health implications.

42. I feel sad, disheartened and angry that our earth is like this. I am sad and angry for people who are ill. I am sad for future generations who have to endure the polluted earth we leave them. I am sad that industries are the main causes.


I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.


Dated: February 19, 2025.                    s/Aracely Navarro          (signature)
                                             Aracely Navarro

# EXHIBIT 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA,        )
                                 )
        Plaintiff,               )
    v.                           )     CIVIL ACTION NO.
                                 )
CONOCO Incorporated,             )
                                 )
        Defendant.               )
_____ )

### COMPLAINT

The United States of America, by the authority of the
Attorney General of the United States and through the
undersigned attorneys, acting at the request of the
Administrator of the United States Environmental Protection
Agency ("EPA"), alleges:

### NATURE OF ACTION

1.  This is a civil action brought against Conoco
Incorporated, ("Conoco" or "Defendant"), pursuant to Section
113(b) of the Clean Air Act ("CAA" or the Act), 42 U.S.C. §
7413(b), for alleged environmental violations at four
petroleum refineries owned and operated by Conoco.  One or
more of the refineries have been and are in violation of EPA's
regulations implementing the following Clean Air Act statutory
and regulatory requirements applicable to the petroleum
refining industry: Part C of Title I of the Act, 42 U.S.C. §

7470-7492, Prevention of Significant Deterioration ("PSD");

Section 173 of Part D of the Act, 42 U.S.C. §§ 7503-7515, New

Source Review ("NSR"); New Source Performance Standards

("NSPS"), 40 C.F.R. Part 60, Subparts J and QQQ; Leak

Detection and Repair ("LDAR"), 40 C.F.R. Parts 60 and 63;

National Emission Standards for Hazardous Air Pollutants

("NESHAP") for Benzene, 40 C.F.R. Part 61; and the Colorado,

Louisiana, Montana, and Oklahoma state implementation plans

("SIPs") which incorporate and/or implement the above-listed

federal regulations.

    2.  The United States seeks an injunction ordering

Defendant to comply with the above statutes and the laws and

regulations promulgated thereunder, and civil penalties for

Defendant's past and ongoing violations.

## <u>JURISDICTION AND VENUE</u>

    3.  This Court has jurisdiction over the subject matter

of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355;

Section 113(b) of the CAA.

    4.  Venue is proper in this District pursuant to 28

U.S.C. § 1391(c) and Section 113(b) of the CAA, 42 U.S.C.

§ 7413(b) because the Defendant is located and is doing

business in this district.

-2-

**NOTICE TO STATE**

5.   Notice of the commencement of this action has been
given to the States of Colorado, Louisiana, Montana, and
Oklahoma as required under Section 113(b) of the CAA, 42
U.S.C. § 7413(b).

**DEFENDANTS**

6.   Conoco owns and operates four (4) domestic petroleum
refineries located as follows:

> Commerce City, Colorado ("Denver Refinery")
>
> Westlake, Louisiana ("Lake Charles Refinery")[1]
>
> Billings, Montana ("Billings Refinery")
>
> Ponca City, Oklahoma ("Ponca City Refinery")

7.   The Defendant is a "person" as defined in Section
302(e) of the CAA, 42 U.S.C. §7602(e), and the federal and
state regulations promulgated pursuant to these statutes.

8.   The petroleum refining process at the Defendant's
four refineries results in emissions of significant quantities
of regulated air pollutants, including nitrogen oxides
("NOx"), carbon monoxide ("CO"), particulate matter ("PM"),
sulfur dioxide ("SO2"), as well as volatile organic compounds
("VOCs") and hazardous air pollutants ("HAPs"), including

---

[1] This facility includes the Excel Paralubes facility
operated and partly owned by Conoco.

-3-

benzene.  The primary sources of these emissions are the fluid catalytic cracking units ("FCCUs"), process heaters and boilers, the sulfur recovery plants, the wastewater treatment system, fugitive emissions from leaking components, and flares throughout the refinery.

**STATUTORY AND REGULATORY BACKGROUND**
**<u>CLEAN AIR ACT REQUIREMENTS</u>**

9.  The Clean Air Act established a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

10.  <u>Prevention of Significant Deterioration</u>. – Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants.  The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

-4-

11.   Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS.

12.   Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  These designations have been approved by EPA and are located at 40 C.F.R. Part 81.  An area that meets the NAAQS for a particular pollutant is classified as an "attainment" area; one that does not is classified as a "non-attainment" area.

13.   Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining the NAAQS standards.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation

-5-

in the decision-making process.  These provisions are referred
to herein as the "PSD program."

14.  Section 165(a) of the Act, 42 U.S.C. § 7475(a),
prohibits the construction and subsequent operation of a major
emitting facility in an area designated as attainment unless a
PSD permit has been issued.  Section 169(1) of the Act, 42
U.S.C. § 7479(1), defines "major emitting facility" as a
source with the potential to emit 250 tons per year ("tpy") or
more of any air pollutant.

15.  As set forth at 40 C.F.R. § 52.21(k), the PSD
program generally requires a person who wishes to construct or
modify a major emitting facility in an attainment area to
demonstrate, before construction commences, that construction
of the facility will not cause or contribute to air pollution
in violation of any ambient air quality standard or any
specified incremental amount.

16.  As set forth at 40 C.F.R. § 52.21(i), any major
emitting source in an attainment area that intends to
construct a major modification must first obtain a PSD permit.
"Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i)
as meaning any physical change in or change in the method of
operation of a major stationary source that would result in a
significant net emission increase of any criteria pollutant

-6-

subject to regulation under the Act. "Significant" is defined
at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emissions
increase or the potential of a source to emit any of the
following criteria pollutants, at a rate of emissions that
would equal or exceed any of the following: for ozone, 40 tons
per year of volatile organic compounds ("VOC"s); for carbon
monoxide ("CO"), 100 tons per year; for nitrogen oxides
("NO$_x$"), 40 tons per year; for sulfur dioxide ("SO2"), 100 tons
per year, (hereinafter "criteria pollutants").

17. As set forth at 40 C.F.R. § 52.21(j), a new major
stationary source or a major modification in an attainment
area shall install and operate best available control
technology ("BACT") for each pollutant subject to regulation
under the Act that would have the potential to emit in
significant quantities.

18. Section 161 of the Act, 42 U.S.C. § 7471, requires
state implementation plans to contain emission limitations and
such other measures as may be necessary, as determined under
the regulations promulgated pursuant to these provisions, to
prevent significant deterioration of air quality in attainment
areas.

19. A state may comply with Section 161 of the Act
either by being delegated by EPA the authority to enforce the

federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations approved as part of its SIP by EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

20.  Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth provisions which direct States to include in their SIPs requirements to provide for reasonable progress towards attainment of the NAAQS in nonattainment areas. Section § 172(c)(5) of the Act, 42 U.S.C.§ 7502(c)(5), provides that these SIPs shall require New Source Review ("NSR") permits for the construction and operation of new or modified major stationary sources anywhere in the nonattainment area, in accordance with Section 173 of the Act, 42 U.S.C. § 7503, in order to facilitate "reasonable further progress" towards attainment of the NAAQS.

21.  Section 173 of Part D of the Act, 42 U.S.C. § 7503, requires that in order to obtain such a permit the source must, among other things: (a) obtain federally enforceable emission offsets at least as great as the new source*s emissions; (b) comply with the lowest achievable emission rate as defined in Section 171(3) of the Act, 42 U.S.C. § 7501(3); and (c) analyze alternative sites, sizes, production processes, and environmental control techniques for the

-8-

proposed source and demonstrate that the benefits of the proposed source significantly outweigh the environmental and social costs imposed as a result of its location, construction, or modification.

22.    As set forth in 40 C.F.R. § 52.24, no major stationary source shall be constructed or modified in any nonattainment area as designated in 40 C.F.R. Part 81, Subpart C ("nonattainment area") to which any SIP applies, if the emissions from such source will cause or contribute to concentrations of any pollutant for which a NAAQS is exceeded in such area, unless, as of the time of application for a permit for such construction, such plan meets the requirements of Part D, Title I, of the Act.

23.    A state may comply with Section 172 and 173 of the Act by having its own nonattainment new source review regulations approved as part of its SIP by EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.165.

24.    <u>Flaring and New Source Performance Standards</u>. – Section 111 of the CAA, 42 U.S.C. § 7411, requires EPA to promulgate standards of performance for certain categories of new air pollution sources ("New Source Performance Standards" or "NSPS"). Pursuant to Section 111(b), 42 U.S.C. § 7411(b),

EPA promulgated general regulations applicable to all NSPS
source categories.  Those general regulations are set forth at
40 C.F.R. Part 60 Subpart A.

25.  EPA's NSPS regulations applicable to petroleum
refineries, including requirements for implementing and
utilizing good air pollution control practices at all times,
are set forth at 40 C.F.R. Part 60 Subpart J.  The NSPS
requirements establish an emission limit of 250 ppm of SO2
from the sulfur recovery plants, which represents a 99.9%
reduction of SO2.

26. <u>Leak Detection and Repair</u>. - Section 112 of the CAA,
42 U.S.C. § 7412, requires EPA to promulgate emission
standards for certain categories of sources of hazardous air
pollutants ("National Emission Standards for Hazardous Air
Pollutants" or "NESHAPs").  Pursuant to Section 112(d) of the
CAA, 42 U.S.C. § 7412(d), EPA promulgated national emission
standards for equipment leaks (fugitive emission sources).
Those regulations are set forth at 40 C.F.R. Parts 61 Subpart
J and V, and Part 63 Subparts F (National Emission Standards
for Organic Hazardous Air Pollutants from the Synthetic
Organic Chemical Manufacturing Industry), H (NESHAP for
Equipment Leaks)and CC (NESHAP for Petroleum Refineries) and
Part 60 Subparts VV and GGG.

-10-

27.  The focus of the LDAR program is the refinery-wide inventory of all possible leaking valves, the regular monitoring of those valves to identify leaks, and the repair of leaks as soon as they are identified.

28.  <u>Benzene Waste NESHAP</u>. - The CAA requires EPA to establish emission standards for each "hazardous air pollutant" ("HAP") in accordance with Section 112 of the CAA, 42 U.S.C. § 7412.

29.  In March 1990, EPA promulgated national emission standards applicable to benzene-containing wastewaters. Benzene is a listed HAP and a known carcinogen.  The benzene waste regulations are set forth at 40 C.F.R. Part 61 Subparts FF, (National Emission Standard for Benzene Waste Operations). Benzene is a naturally-occurring constituent of petroleum product and petroleum waste and is highly volatile.  Benzene emissions can be detected anywhere in a refinery where the petroleum product or waste materials are exposed to the ambient air.

30.  Pursuant to the Benzene Waste NESHAP, refineries are required to tabulate the total annual benzene ("TAB") content in their wastewater.  If the TAB is over 10 megagrams, the refinery is required to elect a control option that will

-11-

require the control of all waste streams, or control of certain select waste streams.

31. Pursuant to Section 113(b) of the CAA, 42 U.S.C. §7413(b), EPA may commence a civil action for injunctive relief and civil penalties for violations of the Act, not to exceed $25,000 per day of violation for violations of the CAA. Pursuant to Pub. L. 104-134 and 61 Fed. Reg. 69369, civil penalties of up to $27,500 per day per violation may be assessed for violations occurring on or after January 30, 1997.

**FIRST CLAIM FOR RELIEF**
**PSD and NSR Requirements**

32. Paragraphs 1 through 31 are realleged and incorporated by reference.

33. The Defendant owns and operates the 4 petroleum refineries identified in Paragraph 6.  Petroleum refining involves the physical, thermal and chemical separation of crude oil into marketable petroleum products.

34. EPA has conducted investigations of one or more of the Defendant's petroleum refineries, which included site inspections, review of permitting history and emissions data, and analysis of other relevant information concerning Conoco's modification and operation of these facilities.  The United

-12-

States alleges the following based on the results of EPA's investigation, information and belief:

35.  The Defendant's petroleum refining process results in emissions of significant quantities of criteria air pollutants, including nitrogen oxides ("NOx"), carbon monoxide ("CO"), particulate matter ("PM"), sulfur dioxide ("$SO_2$"), as well as volatile organic compounds ("VOCs") and hazardous air pollutants ("HAPs"), including benzene.  The primary sources of these emissions are the fluid catalytic cracking units ("FCCUs"), process heaters and boilers, and the sulfur recovery plants ("SRPs").

36.  The Defendant's facilities are "petroleum refineries" in accordance with Section 169(1) of the CAA, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary sources as a source with the potential to emit 100 TPY or more of any criteria air pollutant.  Conoco's petroleum refineries are major emitting facilities with the potential to emit in excess of 100 TPY of NOx, PM, and $SO_2$, which are listed criteria air pollutants.

37.  At all times relevant to this Complaint, the following of the Defendant's refineries were located in an area that was designated as "Class II" under Section 162(b) of the Act, 42 U.S.C. § 7472(b), and that has attained the

-13-

National Ambient Air Quality Standards for Ozone, of which $NO_x$

is a precursor, $SO_2$, and PM under Section 107(d) of the Act,

42 U.S.C. § 7407(d):  Denver, Lake Charles, Billings, and

Ponca City.

38.  At all times relevant to this Complaint, and on

numerous occasions since commencement of operations, the

Defendant has failed to fully and accurately identify the

emissions from its petroleum refineries of one or more

criteria pollutants.

39.  During the time period relevant to this Complaint,

the Defendant has modified the FCCU's, heaters and boilers,

and SRPs at their respective petroleum refineries causing a

significant increase in emissions of $NO_x$, PM, and $SO_2$, which

is defined as a "major modification" within the meaning of 40

C.F.R. § 52.21(b)(2).

40.  Since the major modification of its petroleum

refineries, the Defendant has been in violation of Section

165(a) of the CAA, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21,

and the corresponding state implementation plans, by failing

to undergo PSD and NSR review, by failing to obtain all

appropriate permits, and failing to install the best available

control technology and/or the meet the lowest achievable

emission rate for the control of $NO_x$, PM, and $SO_2$ emissions

-14-

from all FCCUs, process heaters and boilers, and sulfur
recovery plants.

41.   Unless restrained by an Order of the Court, these
violations of the CAA and the implementing regulations will
continue.

42.   As provided in 42 U.S.C. § 7413(b), the Defendant's
violations, as set forth above, subject it to injunctive
relief and civil penalties of up to $25,000 per day for each
violation of the Act prior to January 31, 1997, and $27,500
per day for each violation after January 30, 1997, pursuant to
the Federal Civil Penalties Inflation Adjustment Act of 1990,
28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**SECOND CLAIM FOR RELIEF**
**New Source Performance Standards Subpart J**

43.  Paragraphs 1 through 31 are realleged and
incorporated by reference.

44.   EPA has conducted investigations of one or more of
the Defendant's petroleum refineries, which included site
inspections, review of permitting history and emissions data,
and analysis of other relevant information concerning Conoco's
modification and operation of these facilities.  The United
States alleges the following based on the results of EPA's
investigation, information and belief:

-15-

45. On one or more occasions, since December 31, 1996, the Defendant's refinery flares have emitted unpermitted quantities of SO2, a criteria air pollutant, under circumstances that did not represent good air pollution control practices, in violation of NSPS, 40 C.F.R. § 60.11(d).

46. On one or more occasions, since December 31, 1996, the Defendant's refinery flares have been utilized for combustion of refinery fuel gas in violation of NSPS Subpart J, 40 C.F.R. §§ 60.104, et seq.

47. Unless restrained by an Order of the Court, these violations of the Act and the implementing regulations will continue.

48. As provided in 42 U.S.C. § 7413(b), the Defendant's violations, as set forth above, subject it to injunctive relief and civil penalties of up to $25,000 per day for each violation of the Act prior to January 30, 1997, and $27,500 per day for each violation after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRD CLAIM FOR RELIEF
### Leak Detection and Repair Requirements

49. Paragraphs 1 through 31 are realleged and incorporated by reference.

-16-

50.  EPA has conducted investigations of one or more of the Defendant's petroleum refineries, which included site inspections, review of permitting history and emissions data, and analysis of other relevant information concerning Conoco's modification and operation of these facilities.  The United States alleges the following based on the results of EPA's investigation, information and belief:

51.  The Defendant is required under 40 C.F.R. Part 60 Subpart GGG, to comply with standards set forth at 40 C.F.R. § 60.592, which in turn references standards set forth at 40 C.F.R. §§ 60.482-1 to 60.482-10, and alternative standards set forth at 40 C.F.R. §§ 60.483-1 to 60.483-2, for certain of its refinery equipment in VOC service, constructed or modified after January 4, 1983,

52.  Pursuant to 40 C.F.R. § 60.483-2(b)(1), an owner or operator of subject VOC valves must initially comply with the leak detection monitoring and repair requirements set forth in 40 C.F.R. § 60.482-7, including the use of Standard Method 21 to monitor for such leaks.

53.  Pursuant to 40 C.F.R. Part 61 Subpart J, the Companies are required to comply with the requirements set forth in 40 C.F.R. Part 61, Subpart V, for certain specified equipment in benzene service.

-17-

54.  On one or more occasions since December 31, 1996, the Defendant failed to accurately monitor the subject VOC valves and other components at each of its refineries as required by Standard Method 21, to report the VOC valves and other components that were leaking, and to repair all leaking VOC valves and other components in a timely manner.

55.  On one or more occasions, since December 31, 1996, the Defendant failed to monitor all valves at its petroleum refineries in accordance with the above described requirements.

56.  The Defendant's acts or omissions referred to in Paragraphs 54 and 55 constitute violations of the LDAR.

57.  Unless restrained by an Order of the Court, the Defendant's violations of the Act and the implementing regulations will continue.

58.  As provided in 42 U.S.C. § 7413(b), the Defendant's violations, as set forth above, subject it to injunctive relief and civil penalties of up to $25,000 per day for each violation of the Act prior to January 30, 1997, and $27,500 per day for each violation after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**FOURTH CLAIM FOR RELIEF**
**New Source Performance Standards Subpart QQQ**

59.  Paragraphs 1 through 31 are realleged and incorporated by reference.

60.  The Billings refinery operates individual drain systems and an oil water separator that are "affected facilities" pursuant to 40 C.F.R. §60.690(a)(2) and (a)(3).

61.  The Billings refinery operates a storm water sewer system as defined in 40 C.F.R. §60.691.

62.  As provided in EPA's regulations at 40 C.F.R. §60.692-1(d)(1), a storm water sewer system which is segregated from the process wastewater collection system is not subject to the requirements of NSPS Subpart QQQ.

63.  On August 11, 2000, Conoco reported to the State of Montana that it had process wastewater entering the storm water sewer system at the Billings refinery in violation of 40 C.F.R. §60.692-1(d)(1).

64.  Defendant's failure to segregate its storm water or to comply with the standards of performance set forth in Subpart QQQ constitutes a violation of the Standards of Performance for VOC Emissions From Petroleum Refinery Wastewater Systems.

-19-

65. Unless restrained by an Order of the Court, the Defendant's violations of the Act and the implementing regulations will continue.

66. As provided in 42 U.S.C. § 7413(b), the Defendant's violations, as set forth above, subject it to injunctive relief and civil penalties of up to $25,000 per day for each violation of the Act prior to January 30, 1997, and $27,500 per day for each violation after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1. Order the Defendant to immediately comply with the statutory and regulatory requirements cited in this Complaint, under the Clean Air Act;

2. Order the Defendant to take appropriate measures to mitigate the effects of its violations;

3. Assess civil penalties against the Defendant for up to the amounts provided in the Clean Air Act; and

-20-

4.  Grant the United States such other relief as this Court deems just and proper.


                        Respectfully submitted,


                        _____
                        JOHN CRUDEN
                        Acting Assistant Attorney General
                        Environment and Natural Resources
                             Division
                        U.S. Department of Justice


                        _____
                        DIANNE SHAWLEY
                        Senior Counsel
                        Environmental Enforcement Section
                        U.S. Department of Justice
                        P.O. Box 7611
                        Washington, D.C. 20044-7611
                        (202) 514-0096

-21-

Mervyn A. Mosbacker
United States Attorney


By: _____

Gordon M Speights Young
Assistant United States Attorney
Southern District of Texas
P.O. 61129
Houston, TX 77208


OF COUNSEL:

BRENDA MORRIS
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 8
Denver, Colorado


RUSTY HERBERT
Assistant Regional Counsel (6RC-EA)
U.S. Environmental Protection Agency
Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733

-22-