No. 25-1243

**United States Court of Appeals
for the Tenth Circuit**

GREENLATINOS, 350 COLORADO, AND SIERRA CLUB,

*Plaintiffs-Appellants,*

v.

SUNCOR ENERGY (U.S.A.) INC.,

*Defendant-Appellee.*

On Appeal from U.S. District Court for the
District of Colorado
The Honorable Judge Daniel D. Domenico
No. 1:24-cv-02164-DDD-SBP

**APPELLEE'S RESPONSE BRIEF**

Carlos R. Romo
John H. Bernetich
WILLIAMS WEESE PEPPLE &
FERGUSON PC
1801 California Street, Suite 3400
Denver, Colorado 80202
Phone: (303) 861-2828

Hugh Q. Gottschalk
Eric L. Robertson
WHEELER TRIGG O'DONNELL LLP
370 17th Street, Suite 4500
Denver, Colorado 80202
Phone: (303) 244-1800

*Counsel for Appellee Suncor Energy (U.S.A.) Inc.*

**ORAL ARGUMENT IS REQUESTED**

November 5, 2025

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Circuit Rule 26.1, Appellee Suncor Energy (U.S.A.) Inc. hereby states that it is wholly owned by Suncor Energy (U.S.A.) Holdings Inc., which is wholly owned by Suncor Energy Inc.  Suncor Energy Inc. has no parent corporation, and no publicly held company owns 10% or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES.................................................................iv

GLOSSARY.................................................................................viii

STATEMENT OF PRIOR OR RELATED APPEALS.............................ix

INTRODUCTION.............................................................................1

STATEMENT OF ISSUE....................................................................4

STATEMENT OF THE CASE...............................................................4

    A.    Statutory and Regulatory Background...................................4

    B.    Suncor's Commerce City Refining Assets...............................8

    C.    EPA, Colorado, and Suncor's predecessors entered into consent decrees resolving alleged violations...........................9

    D.    EPA and Colorado continue to actively enforce the Consent Decrees...................................................................12

    E.    The district court dismissed this case..................................14

SUMMARY OF ARGUMENT...............................................................18

STANDARD OF REVIEW...................................................................20

ARGUMENT...................................................................................20

    I.    The Act's diligent-prosecution provision bars this private action because EPA and Colorado, through actions to enforce the Consent Decrees, are already enforcing violations of the same emission standards that GreenLatinos alleges...........20

    II.    EPA's and Colorado's prosecution is "diligent."....................27

        A.    The district court correctly presumed that EPA's and Colorado's prosecution is "diligent."...............................27

B.    EPA's and Colorado's prosecution of the violations alleged in the Complaint is "diligent." .........................28

C.    None of GreenLatinos' ancillary arguments remove this action from the diligent-prosecution bar. ...................33

III.   The emission standards that EPA and Colorado are already enforcing are the same ones that GreenLatinos seeks to enforce .......................................................................................36

A.    GreenLatinos conceded that the emission standards prosecuted by EPA and Colorado are the same emission standards alleged in the Complaint. ............36

B.    The Complaint seeks to enforce the same emission standards in the Consent Decrees and recent agency actions to enforce them. .................................................38

CONCLUSION .........................................................................45

STATEMENT REGARDING ORAL ARGUMENT .................................46

CERTIFICATE OF COMPLIANCE .........................................................47

CERTIFICATE OF SERVICE .................................................................48

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Ark. Wildlife Fed'n v. ICI Americas,*
  29 F.3d 376 (8th Cir. 1994)....................................................................26

*Berry v. Farmland Indus., Inc.*
  114 F. Supp. 2d 1150 (D. Kan. 2000) ....................................................41

*Brown v. City of Tulsa,*
  124 F.4th 1251 (10th Cir. 2025) ............................................................20

*Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.,*
  728 F.3d 868 (9th Cir. 2013)..................................................................41

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.,*
  4 F.4th 63 (1st Cir. 2021)................................................................27, 31

*Citizens for a Better Environment-California v. Union Oil Co. of California,*
  83 F.3d 1111 (9th Cir. 1996)..................................................................35

*Citizens For Clean Power v. Indian River Power, LLC,*
  636 F. Supp. 2d 351 (D. Del. 2009) ......................................................28

*Conn. Fund for Env't v. Contract Plating Co.,*
  631 F. Supp. 1291 (D. Conn. 1986) ....................................16, 18, 28, 38

*Cummings v. Norton,*
  393 F.3d 1186 (10th Cir. 2005)..............................................................32

*Dodge v. Mirant Mid-Atl., LLC,*
  732 F. Supp. 2d 578 (D. Md. 2010)........................................................29

*Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District,*
  382 F.3d 743 (7th Cir. 2004)..................................................................34

*Frilling v. Vill. of Anna,*
  924 F. Supp. 821 (S.D. Ohio 1996)........................................................41

*Grp. Against Smog & Pollution v. Shenango Inc.*,
   810 F.3d 116 (3d Cir. 2016) ............................. 3, 7, 21, 22, 27, 30, 35, 40

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
   484 U.S. 49 (1987) ....................................................... 1, 7, 18, 22, 25, 36

*In Re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   894 F.3d 1030 (9th Cir. 2018) ............................................................... 41

*Karr v. Hefner*,
   475 F.3d 1192 (10th Cir. 2007) ................... 3, 8, 16, 18, 20, 25-29, 30, 31

*Knee Deep Cattle Co. v. Bindana Inv. Co. Ltd.*,
   94 F.3d 514 (9th Cir. 1996) ................................................................... 35

*Naturaland Tr. v. Dakota Fin. LLC*,
   41 F.4th 342 (4th Cir. 2022) ................................................................. 33

*Piney Run Pres. Ass'n v. Carroll Cnty.*,
   523 F.3d 453 (4th Cir. 2008) .......................... 3, 21, 23, 26, 28, 29, 32, 40

*Public Interest Research Group of N.J. v. GAF Corp.*,
   770 F. Supp. 943 (D.N.J. 1991) ............................................................ 35

*S. River Watershed All. v. DeKalb Cnty.*,
   484 F. Supp. 3d 1353 (N.D. Ga. 2020) ................................. 23, 29, 32, 39

*S. River Watershed All. v. DeKalb Cnty., Ga.*,
   69 F.4th 809 (11th Cir. 2023) ............................. 3, 21, 22, 23, 24, 28, 36

*United States v. Games–Perez*,
   695 F.3d 1104 (10th Cir. 2012) ............................................................ 24

*United States v. Handley*,
   678 F.3d 1185 (10th Cir. 2012) ............................................................ 25

*United States v. Thomas*,
   939 F.3d 1121 (10th Cir. 2019) ............................................................ 24

*Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*,
   21 F.4th 1229 (10th Cir. 2021) ............................................................... 7

*White v. Chafin*,
  862 F.3d 1065 (10th Cir. 2017) ............................................................ 38

**Statutes**

33 U.S.C. § 1365(b)(1)(B) .................................................................... 22

42 U.S.C. § 7401(a)(3) ............................................................................ 6

42 U.S.C. § 7401(b)(1) ............................................................................ 4

42 U.S.C. § 7407(a) ............................................................................ 4, 6

42 U.S.C. § 7410(a) ................................................................................ 4

42 U.S.C. § 7411 ................................................................................. 4, 5

42 U.S.C. § 7412 ................................................................................. 5, 6

42 U.S.C. § 7413(a)(1) .................................................................. 6, 13, 32

42 U.S.C. § 7604(a)(1) ............................................................................ 7

42 U.S.C. § 7604(b)(1)(B) ................................................ 1, 4, 8, 14, 15, 22

42 U.S.C. § 7661a ................................................................................... 6

42 U.S.C. § 7661c(a)-(c) ......................................................................... 6

Colo. Rev. Stat. § 25-7-101 .................................................................. 12

Colo. Rev. Stat. § 25-7-115(2) .............................................................. 13

**Other Authorities**

40 C.F.R. § 60.103(a) ........................................................................... 43

40 C.F.R. § 60.104(a) ........................................................................... 42

40 C.F.R. § 63.1565(a) ......................................................................... 43

40 C.F.R. § 70.1(b) ................................................................................. 6

57 Fed. Reg. 32,250 ............................................................................... 6

Fed. R. Civ. P. 12(b)(6) .........................................................15, 20

# **GLOSSARY**

Act                     Clean Air Act

CO                      Carbon Monoxide

COC                     Compliance Order on Consent

CWA                     Clean Water Act

FCCU                    Fluid Catalytic Cracking Unit

$H_2S$                  Hydrogen Sulfide

MACT                    Maximum Achievable Control Technology

NESHAP                  National Emission Standards for Hazardous Air
                        Pollutants

NOV                     Notice of Violation

NSPS                    New Source Performance Standard

ppmv                    parts per million by volume

SIP                     State Implementation Plan

$SO_2$                  Sulfur Dioxide

## <u>STATEMENT OF PRIOR OR RELATED APPEALS</u>

There are no prior or related appeals pursuant to Circuit Rule

28.2(C)(3).

## <u>INTRODUCTION</u>

The district court correctly dismissed the Clean Air Act ("Act") citizen suit filed by Plaintiffs (collectively, "GreenLatinos"), which improperly sought to subject Defendant Suncor Energy (U.S.A.) Inc. ("Suncor") and its refining assets located in Commerce City, Colorado to a duplicative and unnecessary action to enforce alleged violations of the same emission standards currently being enforced by the federal government and the State of Colorado.  Specifically, the district court correctly ruled that the Act's diligent-prosecution bar prohibits this citizen suit because it is duplicative of ongoing enforcement actions by the U.S. Environmental Protection Agency ("EPA") and Colorado.

The diligent-prosecution bar prohibits a would-be citizen plaintiff from asserting claims that are already being prosecuted by EPA or a state.  42 U.S.C. § 7604(b)(1)(B).  Congress enacted this provision to prohibit citizen suits "when governmental enforcement action is under way."  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).  There is no dispute that EPA and Colorado enforcement actions are under way here.

EPA and Colorado continue to actively enforce two federal district court Consent Decrees entered into by EPA, Colorado, and the prior owners of Suncor's Commerce City refining assets.  Those Consent Decrees, which remain in effect and are subject to the courts' continuing jurisdiction, impose ongoing obligations on Suncor to comply with emission standards.  And they subject Suncor to extensive monitoring and reporting requirements, as well as stipulated penalties for failure to comply.  In the last five years alone, Colorado and Suncor have agreed to resolve two follow-on enforcement actions that alleged violations of the Consent Decrees concerning many of the same Clean Air Act emission standards that GreenLatinos alleges that Suncor violated. And in July 2024, EPA and Colorado issued a formal Notice of Violation to Suncor (the "2024 NOV") alleging certain violations.

One month after EPA and Colorado served the 2024 NOV, GreenLatinos filed its lawsuit, alleging that Suncor violated the *same emission standards* that EPA alleged that Suncor violated in the 2024 NOV.  The district court rightly dismissed the lawsuit, ruling that it was barred by the Act because EPA and Colorado, through their active

enforcement of the Consent Decrees, are already diligently prosecuting the violations that GreenLatinos alleged.

GreenLatinos does not meet the "high standard" to show that EPA and Colorado "failed to prosecute a violation diligently." *Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007). According to GreenLatinos, the Court should permit its duplicative citizen suit to proceed because EPA and Colorado elected to enforce the Consent Decrees by imposing stipulated penalties and other relief through enforcement actions, rather than by filing new judicial actions in court. But that argument is foreclosed by precedent from the Third, Fourth, and Eleventh Circuits firmly establishing that where (as here) a citizen suit alleges violations that are the subject of ongoing agency enforcement of federal court-ordered consent decrees, the Act's diligent-prosecution provision bars that citizen suit. *See Grp. Against Smog & Pollution v. Shenango Inc.*, 810 F.3d 116 (3d Cir. 2016); *S. River Watershed All. v. DeKalb Cnty., Ga.*, 69 F.4th 809 (11th Cir. 2023); *Piney Run Pres. Ass'n v. Carroll Cnty.*, 523 F.3d 453 (4th Cir. 2008). This Court should apply those precedents and close the book on this duplicative and unnecessary lawsuit.

3

## STATEMENT OF ISSUE

Whether the district court correctly ruled that the Clean Air Act's diligent-prosecution provision, 42 U.S.C. § 7604(b)(1)(B), bars this citizen suit.

## STATEMENT OF THE CASE

### A.   Statutory and Regulatory Background

The objective of the Clean Air Act is to protect and enhance the nation's air resources.  42 U.S.C. § 7401(b)(1).  To achieve that objective, the Act established a cooperative-federalism framework: EPA establishes national ambient air quality standards for pollutants deemed harmful to public health or welfare, while the states bear "primary responsibility" for attaining and maintaining those standards. *See* 42 U.S.C. §§ 7407(a), 7410(a).  Each state must develop a state implementation plan ("SIP") setting out enforceable emission standards and other control measures, subject to EPA review and approval.  42 U.S.C. § 7410(a).  This structure reflects Congress's design: uniform national standards coupled with state-level implementation as the primary means of controlling air pollution.

*New source performance standards.*  The Act's New Source Performance Standards ("NSPS") program, 42 U.S.C. § 7411,

establishes nationally uniform emission standards for new and modified

stationary sources that cause or contribute significantly to air pollution.

Under the NSPS program, EPA identifies source categories that emit

designated pollutants and promulgates performance standards

reflecting the degree of emission limitation achievable through the "best

system of emission reduction" that has been adequately demonstrated,

taking into account cost and other factors.  *See* 42 U.S.C. § 7411(a)(1),

(b).  EPA may delegate to individual states primary implementation

and enforcement authority of NSPS standards.  42 U.S.C. § 7411(c)(1).

*Hazardous air pollutants.*  The Act's National Emission Standards

for Hazardous Air Pollutants ("NESHAP") program, 42 U.S.C. § 7412,

addresses air pollutants that pose risks to public health and the

environment.  Unlike criteria pollutants, which are regulated under

national ambient air quality standards, hazardous air pollutants are

controlled through source-specific emission standards.  The Act directs

EPA to list categories and subcategories of major and area sources that

emit listed hazardous pollutants and to establish technology-based

standards known as "maximum achievable control technology"

("MACT").  *See* 42 U.S.C. § 7412(d).  Like the NSPS program, EPA may

delegate to states the authority to implement and enforce these standards subject to EPA oversight.  42 U.S.C. § 7412(l)(1).

*Title V permits.*  Under Title V of the Act, states must develop operating permit programs for major stationary sources.  42 U.S.C. § 7661a.  A Title V operating permit does not impose new substantive air quality control requirements on a source.  57 Fed. Reg. 32,250, 32,251; 40 C.F.R. § 70.1(b).  Rather, it is a vehicle for compiling in one place all the air quality requirements applicable to the source and to set forth monitoring, recordkeeping, and reporting requirements.  *Id.*; *see also* 42 U.S.C. § 7661c(a)-(c).

*EPA and state enforcement authority.*  Under the Act's cooperative-federalism framework, each state has "the primary responsibility for assuring air quality" within the state by establishing and enforcing emission standards.  42 U.S.C. § 7407(a); *see also* 42 U.S.C. § 7401(a)(3) ("air pollution control" under the Act is "the primary responsibility of States and local governments").  The United States, through EPA, has authority to enforce any requirement or prohibition in a SIP or permit issued pursuant to the Act.  42 U.S.C. § 7413(a)(1).  Together, these provisions provide states and EPA with primary

authority to enforce the Act. *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1235, 1235 (10th Cir. 2021).

*Citizen suits.* The Act permits private citizens to enforce certain Act requirements, subject to limitations designed to reinforce Congress's allocation of primary enforcement responsibility to states and EPA. *See* 42 U.S.C. § 7604(a)(1) (any person may bring a citizen suit against any person alleged to have violated "an emission standard or limitation under this chapter").

The role of a citizen suit is limited. A "citizen suit is meant to supplement rather than to supplant governmental action." *Gwaltney*, 484 U.S. at 60. Congress "intend[ed] the great volume of enforcement actions be brought by the State" and that a citizen suit is appropriate only "if the Federal, State, and local agencies *fail* to exercise their enforcement responsibility." *Grp. Against Smog*, 810 F.3d at 130 (cleaned up and emphasis added); *see also Gwaltney*, 484 U.S. at 60.

In recognition of the primary enforcement authority provided to EPA and states, the Act expressly bars a citizen suit if EPA or the state is already prosecuting the violations alleged in the citizen suit.

> No [citizen suit] may be commenced . . . if the
> [EPA] Administrator or State has commenced

7

> and is diligently prosecuting a civil action in a
> court of the United States or a State to require
> compliance with the standard, limitation or order.

42 U.S.C. § 7604(b)(1)(B). The diligent-prosecution bar applies even if

the violations alleged in a citizen suit do not perfectly overlap with

violations alleged in an ongoing federal or state enforcement action. *See*

*Karr*, 475 F.3d at 1197 (a "federal court ought not to allow a citizens'

suit to proceed merely because a prior pending state suit has not alleged

as many separate violations of the Act as has the citizens' suit"; "[n]or

must an agency's prosecutorial strategy coincide with that of the

citizen-plaintiff").

## B.    <u>Suncor's Commerce City Refining Assets</u>

Suncor's Commerce City, Colorado refining assets consist of two

refineries and three operating plants (collectively, "Suncor Commerce

City"), which are subject to two separate Title V operating permits

issued under the Act—one for the "West Plant" (Plants 1 and 3)

purchased from ConocoPhillips in 2003, App. Vol. II at 0172, and one for

the "East Plant" (Plant 2) purchased from Valero in 2005, App. Vol. IV

at 0725.

Suncor Commerce City produces a wide range of finished petroleum products critical to Colorado's economy, including approximately one-third of the state's gasoline, 50% of the state's diesel fuel, one-third of Denver International Airport's jet fuel supply, and more than the majority of the asphalt used in Colorado.  Suncor also produces and supplies propane, butane, and sulfur to the fertilizer industry.[1]

## C.  __EPA, Colorado, and Suncor's predecessors entered into consent decrees resolving alleged violations.__

Before Suncor acquired the West Plant in 2003 and the East Plant in 2005, EPA, Colorado, and Suncor's predecessors entered into two comprehensive Consent Decrees resolving civil actions filed in U.S. District Court by EPA and Colorado alleging violations of Clean Air Act emission standards.  App. Vol. VI at 1122; App. Vol. VII at 1358 (collectively, the "Consent Decrees"); *see also* App. Vol. I at 0048-50,

---

[1] The area around Suncor Commerce City is subject to a unique and extensive air quality monitoring program that continuously measures ambient air quality levels near the refining assets and in the surrounding community.  App. Vol. I at 0156.  Air quality monitoring data over an approximately 3-year period shows that there is no likelihood of health harm from the ambient air quality in the Commerce City-North Denver area from refinery emissions, including emissions associated with the alleged violations.  App. Vol. I at 0156-58.

¶¶203-18.  The Consent Decrees resolved allegations that Suncor's predecessors violated some of the same emission standards alleged in GreenLatinos' Amended Complaint ("Complaint").  App. Vol. V at 1114-20.  The Consent Decrees imposed extensive injunctive relief that is still being implemented, imposed emission standards and limitations that are still in effect and being enforced today, required substantial reporting and ongoing monitoring, and subjected Suncor to "stipulated penalties" for violations of certain Consent Decree requirements.  *See, e.g.,* App. Vol. VII at 1203, ¶256(d) (establishing stipulated penalty of $1,500 per day for violation of 500 ppm CO emission limit from fluid catalytic cracking units ("FCCUs")).

Each of the two Title V Permits incorporate by reference certain provisions of the Consent Decrees and various state and federal regulatory requirements, including federal NSPS J and NSPS Ja, NESHAP UUU, and state opacity limits.  *E.g.,* App. Vol. II at 0295-96 (citing Consent Decree, NSPS J, and NESHAP UUU requirements applicable to FCCU); App. Vol. IV at 0744-45 (same).  Consequently, many of the emission standards in the Title V Permits are also found in the Consent Decrees and EPA regulations.

Each of the Consent Decrees remains in effect and has not terminated as to Suncor.  The applicable district court retains continuing jurisdiction to enforce the respective Consent Decrees and take other actions necessary for their interpretation, execution, or modification.  App. Vol. VI at 1222, ¶302; App. Vol. VII at 1558, ¶382.

The Consent Decrees provide streamlined procedures to allow EPA and Colorado to enforce any alleged violation by Suncor of the Consent Decrees.  Even though the respective district courts retain continuing jurisdiction over the Consent Decrees, EPA and Colorado may elect to enforce a violation of the Consent Decrees through stipulated penalties or by filing a judicial action.  App. Vol. VI at 1202, ¶255; App. Vol. VII at 1521, ¶319 (Suncor "shall pay stipulated penalties to the United States or [Colorado], where appropriate, for each failure by such company to comply with the terms of this Consent Decree; provided, however, that the United States or [Colorado] may elect to bring an action for contempt in lieu of seeking stipulated penalties for violations of this Consent Decree"); *see also* App. Vol. VI at 1202-09, ¶256; App. Vol. VII at 1522-30, ¶320 (establishing stipulated penalties for violations of Consent Decree requirements).

The Consent Decrees remain in effect until they are "terminated" upon satisfaction of certain conditions.  *See* App. Vol. VI at 1222-23, ¶304; App. Vol. VII at 1545-49, ¶¶359-63.  The Consent Decrees remain in full effect and have not terminated.

### D.    <u>EPA and Colorado continue to actively enforce the Consent Decrees.</u>

EPA and Colorado, relying on authority under the Act and the Colorado Air Pollution Prevention and Control Act, Colo. Rev. Stat. § 25-7-101 *et seq.*, initiated proceedings to enforce alleged violations of the Consent Decrees.  As part of those proceedings, EPA and Colorado invoked the Consent Decrees' "streamlined" enforcement procedure. App. Vol. X at 2313; *see also* App. Vol. VI at 1202, ¶255; App. Vol. VII at 1521-22, ¶319.

In 2020 and again in 2024, Suncor and Colorado entered into two Compliance Orders on Consent (or COCs) resolving actions alleging violations of the Consent Decrees that included violations of many of the same emission standards that GreenLatinos alleges Suncor violated ("2020 COC" and "2024 COC").  App. Vol. VIII at 1570-1655, 1657-1729. As part of those COCs, Suncor agreed to pay over $700,000 in stipulated penalties pursuant to the Consent Decrees, App. Vol. VIII at 1641, ¶35;

App. Vol. VIII at 1721, ¶23, and, additionally, agreed to injunctive relief and additional penalties, App. Vol. VIII at 1638-48, ¶¶27-59 & App. Vol. VIII at 1716-22, ¶¶19-26.  For instance, following the 2020 COC, Suncor paid EPA and Colorado a total of $362,450 in Consent Decree stipulated penalties to resolve alleged violations of an $SO_2$ limit that is the same limit alleged in Claim 17 in GreenLatinos' Complaint.  *Compare* App. Vol. VIII at 1641, ¶35, *with* App. Vol. I at 0076, ¶422-28.

On July 1, 2024, EPA and Colorado issued Suncor a formal Notice of Violation (or the 2024 NOV), pursuant to 42 U.S.C. § 7413(a)(1) and Colo. Rev. Stat. § 25-7-115(2), alleging violations of various requirements of the Consent Decrees and other Title V and federal and state regulations.  App. Vol. IX at 1731-1870.   The emission standards that the 2024 NOV alleges that Suncor violated are the exact same emission standards that GreenLatinos alleges Suncor violated.  EPA and Colorado continue to prosecute the violations alleged in the 2024 NOV.

And finally, in January 2025, Colorado issued a Compliance Advisory alleging violations of nearly all of the same emission

standards that GreenLatinos alleges in this action.  App. Vol. IX at 1872-1928.

Taken together, the court-ordered Consent Decrees and subsequent actions to enforce those Consent Decrees address each of the emission standards that GreenLatinos alleges that Suncor violated in this action.  There is complete overlap with regard to the emission standards, pollutants, and equipment that form the basis of the violations alleged in the Complaint and in the 2024 NOV.  App. Vol. V at 1114-20 (chart showing overlap).[2]  Without question, the EPA and the state of Colorado are "diligently prosecuting" the violations alleged in the citizen suit.  42 U.S.C. § 7604(b)(1)(B).

**E.     The district court dismissed this case.**

On October 29, 2024, in the midst of EPA's and Colorado's ongoing enforcement described above, GreenLatinos filed the Complaint, alleging over 9,000 days of violations of emission standards grouped

---

[2] The Consent Decrees and subsequent EPA and Colorado enforcement actions are broader than this citizen suit: some of the emission standards that the Consent Decrees and enforcement actions allege that Suncor violated are not the subject of any of GreenLatinos' claims.

into 28 Claims for Relief.[3]  App. Vol. I at 0008.  The "Claims for Relief"
assert violations of nine emission standards.  GreenLatinos' Complaint
virtually copies and pastes violations alleged in the 2024 NOV, which
EPA and Colorado served on Suncor just a month before GreenLatinos
filed the initial Complaint.  *See* App. Vol. V at 1114-20.

Suncor moved to dismiss the Complaint, arguing *inter alia* that
GreenLatinos lacked Article III standing and that this action is an
improper and unnecessary interference with current and ongoing
enforcement by EPA and Colorado and that this action was barred by
the Act's diligent-prosecution provision, 42 U.S.C. § 7604(b)(1)(B).  App.
Vol. I at 0139.

The district court ruled that GreenLatinos alleged sufficient facts
to establish standing but dismissed the Complaint pursuant to Fed. R.
Civ. P. 12(b)(6) because the Act's diligent-prosecution provision barred
this action.  App. Vol. X at 2298-2314.  The district court acknowledged

---

[3] GreenLatinos asserts that Suncor reported "violations" of applicable
emission standards to Colorado.  *See* Appellants' Corrected Opening
Brief ("Op. Br.") 17.  That is incorrect.  In compliance with its Title V
permits and as required by the Act, Suncor self-reported deviations
from applicable standards, many of which were caused by equipment
startup, shutdown, and malfunction, during which the standard does
not apply, or are subject to other defenses to alleged violations.

that the "purpose underlying the diligent prosecution provision is to ensure that a defendant not be subjected simultaneously to multiple suits, and potentially to conflicting court orders, to enforce the same statutory standards."  App. Vol. X at 2310 (quoting *Conn. Fund for Env't v. Contract Plating Co.*, 631 F. Supp. 1291, 1293 (D. Conn. 1986) (cleaned up)).  Relying on precedent from this Court, the district court rejected GreenLatinos' argument that the diligent-prosecution provision permitted a citizen suit to proceed where EPA or the state was prosecuting those same alleged violations through enforcement of ongoing Consent Decrees entered by a federal district court.  App. Vol. X at 2311 (citing *Karr*, 475 F.3d at 1197).

The district court reviewed the violations alleged in the Complaint, in EPA and Colorado's 2024 NOV, and in other Colorado enforcement actions, and determined that "virtually all of [Suncor']s conduct that [GreenLatinos] challenge is covered under the ongoing compliance orders, compliance advisories, and violation notice, and during the same period of time."  App. Vol. X at 2312-13.

> The consent decrees and the enforcement mechanisms against [Suncor] that followed them resolve identical or substantially similar alleged emission violations in [GreenLatinos'] []

16

> Complaint, have resulted in stipulated and
> administrative penalties, and provide ongoing
> monitoring and oversight of the alleged
> violations.

App. Vol. X at 2312 (citations omitted).  The court ruled that

"[p]ermitting [GreenLatinos] to prosecute a citizen suit aimed at

curbing the same alleged violations would undercut the EPA's and

Colorado's enforcement efforts, and is contrary to the Act's own

restriction on citizen suits."  App. Vol. X at 2313.  Finally, the district

court noted:

> That the consent decrees at issue here are of a
> particular vintage does not render them
> irrelevant, as Plaintiffs argue. The use of consent
> decrees to enforce certain laws for long periods of
> time is instead a feature of their design—they
> allow states and the EPA to take action against a
> party in need of protracted oversight and
> streamlined future enforcement without the need
> to initiate a new lawsuit each time. When
> properly entered into and administered
> effectively, consent decrees can make diligent
> prosecution easier, less expensive, and more
> efficient.

*Id.*

GreenLatinos now appeals the district court's order dismissing

this action.

## SUMMARY OF ARGUMENT

The aim of the diligent-prosecution bar is twofold.  First, it reflects that the "agency must be given great deference to proceed in a manner it considers in the best interests of all parties involved."  *Karr*, 475 F.3d at 1198.  That is because the Act gives primary enforcement authority to EPA and the states—not private citizens.  *Gwaltney*, 484 U.S. at 60.  And second, it ensures "that a defendant not be subjected simultaneously to multiple suits, and potentially to conflicting court orders, to enforce the same statutory standards."  *Conn. Fund for Env't*, 631 F. Supp. at 1293 (cited with approval in *Karr*, 475 F.3d at 1197).

EPA and Colorado are already enforcing alleged violations of the emission standards that GreenLatinos seeks to enforce in this action.  App. Vol. V at 1114-20.  Permitting this citizen suit to proceed in parallel with ongoing enforcement actions is contrary to the diligent-prosecution bar and clear Congressional intent that citizen suits should not "intrude" on EPA's and Colorado's "primary enforcement authority."  *Karr*, 475 F.3d at 1197.

This lawsuit is an attempt to second-guess EPA's and Colorado's exercise of their enforcement authority and discretion.  Here, EPA and

Colorado chose to enforce alleged violations of Clean Air Act emission standards by entering into the Consent Decrees, which provided that EPA and Colorado could enforce Consent Decree requirements without the need for EPA or Colorado to initiate a new lawsuit. Since 2020 through the present, EPA and Colorado have actively enforced the Consent Decree requirements.

GreenLatinos thinks it—not EPA or Colorado—is best situated to determine a strategy to enforce alleged violations. But that argument inverts the Act's allocation of primary enforcement authority to federal and state authorities. This Court and others have repeatedly recognized that a citizen suit cannot be used to challenge agency enforcement strategy—and that this concern is particularly potent where (as here) federal and state authorities have agreed to resolve alleged violations through a consent decree.

The emission standards alleged in this action are the same emission standards being actively prosecuted by the EPA and Colorado. App. Vol. V at 1114-20. GreenLatinos has not attempted to explain why the 2024 NOV *does not* allege violations of the same emission standards alleged in this citizen suit. App. Vol. IX at 1731-1870. Instead,

GreenLatinos simply ignores the 2024 NOV, essentially conceding that the 2024 NOV alleges violations of the same emission standards that it alleges in this suit.

Ultimately, it defies the text of the Act and the clear intent of Congress (as well as simple common sense) to permit a private citizen to pursue alleged violations of emission standards that the agency is already prosecuting. GreenLatinos does not come close to meeting the "high standard" to show that EPA and Colorado "failed to prosecute a violation diligently." *Karr*, 475 F.3d at 1198. The Court should affirm.

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

## ARGUMENT

I. **The Act's diligent-prosecution provision bars this private action because EPA and Colorado, through actions to enforce the Consent Decrees, are already enforcing violations of the same emission standards that GreenLatinos alleges.**

An action that is *enforcing a court-ordered consent decree*—like the enforcement actions in this matter—triggers the diligent-prosecution

bar. Despite what GreenLatinos would have this Court believe, that is not a novel concept, as multiple federal courts of appeal have so ruled. *See, e.g., Grp. Against Smog*, 810 F.3d at 128-32; *S. River Watershed All.*, 69 F.4th at 824-29; *Piney Run Pres.*, 523 F.3d at 459-61.

The Third Circuit, for example, had "*little difficulty* in holding that when a state or federal agency diligently prosecutes an underlying action in court, the diligent prosecution bar will prohibit citizen suits during the actual litigation *as well as after the litigation has been terminated by a final judgment, consent decree, or consent order and agreement.*" *Grp. Against Smog*, 810 F.3d at 128 (citing case law from other circuit courts in accord) (emphasis added). In that case, the Third Circuit ruled that a citizen suit alleging violations of three Clean Air Act emission standards was barred because two prior consent decrees resolved civil actions alleging violations of those standards. *Id.* at 120-21, 128. The Third Circuit affirmed the district court's dismissal of the private citizen suit because—as is precisely the case here—when "a state or federal agency diligently pursues an ongoing consent decree

that may be modified by the parties and enforced by the agency, the

diligent prosecution bar will prohibit citizen suits." *Id.*[4]

The Eleventh and Fourth Circuits agree.  In *South River
Watershed Alliance v. DeKalb County*, 69 F.4th 809 (11th Cir. 2023),
EPA, Georgia, and the county entered into a consent decree resolving
allegations by EPA and Georgia that the county had violated Clean
Water Act ("CWA") wastewater discharge restrictions.[5]  Eight years

---

[4] The court in *Group Against Smog* emphasized three factors (each of
which is also present in this case) that supported the court's
determination that the citizen suit was barred: (1) the parties to the
consent decrees in that case "were still able to modify or enforce" the
consent decrees, (2) the state agency "was 'diligently prosecuting' the
case by taking actions that furthered the goals of" the consent decrees,
and (3) the consent decrees "utilize ongoing monitoring and recording of
[defendant]'s emissions, as well as allow [the state] the right to inspect
[defendant]'s facilities or record emissions."  810 F.3d at 128.  Each of
those factors is present here.  *See*, *e.g.*, App. Vol. VI at 1211, ¶261
(granting EPA and Colorado a "right of entry . . . for the purpose of
monitoring compliance with the provisions of this Consent Decree,
including inspecting plant equipment, and inspecting and copying all
records maintained by [Suncor] required by this Consent Decree"); App.
Vol. VII at 1532, ¶325 (same).

[5] GreenLatinos and Suncor agree that the Clean Water Act's diligent-
prosecution bar, 33 U.S.C. § 1365(b)(1)(B), "is substantially the same
as" the Clean Air Act's diligent-prosecution bar, 42 U.S.C.
§ 7604(b)(1)(B).  Op. Br. 29.  Courts interpreting the Clean Air Act's
diligent-prosecution bar rely on decisions interpreting the Clean Water
Act's analogous provision, and vice versa.  *E.g., Gwaltney*, 484 U.S. at
61-62; *Grp. Against Smog*, 810 F.3d at 123 n.7.

after the district court entered the consent decree, an advocacy organization filed a citizen suit alleging violations of the consent decree itself as well as the CWA and a discharge permit issued pursuant to the CWA.  69 F.4th at 818.  The district court dismissed the action because it was barred by the diligent-prosecution provision, *S. River Watershed All. v. DeKalb Cnty.*, 484 F. Supp. 3d 1353, 1361 (N.D. Ga. 2020), and the Eleventh Circuit affirmed.

In so ruling, the Eleventh Circuit placed particular emphasis on the fact that EPA and Georgia assessed penalties as part of enforcement actions over the course of several years *after entry of the consent decree*, showing that EPA and Georgia "have been diligent in monitoring DeKalb County's progress and assessing sizable fines to compel DeKalb County to comply with the consent decree."  *S. River Watershed All.*, 69 F.4th at 826-27.  The court noted that the consent decree provided that the district court "retain[ed] jurisdiction" and provided a "proper dispute resolution framework."  *Id.* at 827.  Both of those factors are present here.  *See id.*; *see also Piney Run Pres.*, 523 F.3d at 459-61 (ruling that CWA citizen suit was barred because the

23

state was diligently prosecuting the alleged violation through a prior consent decree).

Those cases are dispositive of this appeal.  In each of those cases—as in this one—a citizen suit alleged violations of emission standards that were the same emission standards being enforced by an agency through enforcement of a court-ordered consent decree.  In *South River Watershed Alliance* and *Piney Run*—as is the case here—the agency enforced an alleged violation of the consent decree through ongoing enforcement of the consent decree and stipulated penalties.  And in each of those cases, the court ruled that the diligent-prosecution bar prohibited the citizen suit.[6]

Those cases are entirely in line with Congress's intent in enacting the citizen-suit provision.  "Congress did not intend for [citizen suits] to

---

[6] GreenLatinos has no persuasive answer to those authorities. Instead, GreenLatinos invites the Court to reject those cases and create a circuit split.  Op. Br. 33.  But there is no compelling reason to do so. *See United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019) ("express[ing] reluctance to create a circuit split"); *United States v. Games–Perez*, 695 F.3d 1104, 1115 (10th Cir. 2012) (Murphy, *J.*, concurring in denial of rehearing en banc) ("the circuits have historically been loath to create a split where none exists" because "[t]he avoidance of unnecessary circuit splits furthers the legitimacy of the judiciary").

be even '*potentially* intrusive' on agency discretion." *Karr*, 475 F.3d at

1197 (quoting *Gwaltney*, 484 U.S. at 60, 61) (emphasis added).  The U.S.

Supreme Court warned that private citizen suits must not encroach on

EPA and state enforcement authority and strategy:

> Suppose . . . that the Administrator agreed not to
> assess or otherwise seek civil penalties on the
> condition that the violator take some extreme
> corrective action, such as to install particularly
> effective but expensive machinery, that it
> otherwise would not be obliged to take. If citizens
> could file suit, months or years later, in order to
> seek the civil penalties that the Administrator
> chose to forgo, then the Administrator's discretion
> to enforce the Act in the public interest would be
> curtailed considerably. The same might be said of
> the discretion of state enforcement authorities.
> Respondents' interpretation of the scope of the
> citizen suit would change the nature of the
> citizens' role from interstitial to potentially
> intrusive. We cannot agree that Congress
> intended such a result.

*Gwaltney*, 484 U.S. at 60-61.  Here, GreenLatinos seeks to do precisely

what the Supreme Court in *Gwaltney* warned against.  GreenLatinos'

argument boils down to a disagreement with *how* EPA and Colorado are

enforcing the Consent Decrees.  That contravenes Congress's intent.

*See United States v. Handley*, 678 F.3d 1185, 1189 (10th Cir. 2012) (in

interpreting statutes, the Court's "primary task" is to "determine Congressional intent") (cleaned up).

Suncor and Colorado entered into settlements (the 2020 and 2024 COCs) resolving alleged violations of the Consent Decrees and imposing penalties for some of the same emission standards that are the focus of the Complaint.  App. Vol. VIII at 1570-1655, 1657-1729.  Colorado acknowledged that Suncor's payment of penalties under the COCs "is a full and final resolution of Suncor's stipulated penalty liability" to Colorado under the Consent Decrees for the alleged violations.  App. Vol. VIII at 1648; ¶62; App. Vol. VIII at 1723, ¶30.  GreenLatinos' second-guessing of agency prosecutorial authority and strategy is precisely what the diligent-prosecution provision is aimed at preventing.  *See Karr*, 475 F.3d at 1197 (deference to agency enforcement authority and strategy is particularly important "when the EPA chooses to enforce the [Clean Water Act] through a consent decree"); *Ark. Wildlife Fed'n v. ICI Americas*, 29 F.3d 376, 380 (8th Cir. 1994) ("It would be unreasonable and inappropriate to find failure to diligently prosecute simply . . . because a compromise was reached."); *Piney Run Pres.*, 523 F.3d at 459 ("Indeed, when presented with a

consent decree we must be particularly deferential to the agency's expertise"); *Grp. Against Smog*, 810 F.3d at 130 (same principle).

## II.  EPA's and Colorado's prosecution is "diligent."

### A.  The district court correctly presumed that EPA's and Colorado's prosecution is "diligent."

When an agency is already prosecuting a violation, diligence on the part of the enforcement agency is presumed.  *Karr*, 475 F.3d at 1198.  To state a claim for relief, therefore, GreenLatinos must overcome that presumption.  *Id.* (the citizen plaintiff, not the defendant, bears the burden of establishing that EPA or the state is *not* diligently prosecuting an action to enforce the relevant standard).  This presumption flows from the Congressional mandate that EPA and the states—not private citizens—are the primary enforcers of the Act.  *See Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 74 (1st Cir. 2021) (noting that the "diligent prosecution bar emphasizes the primacy of government agencies in enforcing clean water standards" and granting "considerable" deference "to the agency's plan of attack" (cleaned up)); *Karr*, 475 F.3d at 1198 ("[O]ur evaluation of the EPA's diligence is quite deferential.  Citizen-plaintiffs must meet a high

standard to demonstrate that it has failed to prosecute a violation diligently.").

GreenLatinos asserts that the district court "erred by applying a presumption of diligence" to EPA's and Colorado's enforcement of the Consent Decrees.  Op. Br. 56.  But the cases show that argument is meritless.  *See Piney Run Pres.*, 523 F.3d at 459 ("diligence is presumed"); *Citizens for Clean Power v. Indian River Power, LLC*, 636 F. Supp. 2d 351, 357 (D. Del. 2009) (same principle); *Conn. Fund for the Env't*, 631 F. Supp. at 1293 (same principle).  And contrary to GreenLatinos' assertion, Op. Br. 56-57, courts apply the presumption even when considering a motion to dismiss a citizen suit.  *E.g., Karr*, 475 F.3d at 1195, 1998.

> ### B.   EPA's and Colorado's prosecution of the violations alleged in the Complaint is "diligent."

An agency's enforcement prosecution is "diligent" if it is "capable of requiring compliance with the Act and is in good faith calculated to do so."  *Piney Run Pres.*, 523 F.3d at 459 (cleaned up); *see also S. River Watershed All.*, 69 F.4th at 826 (same principle).  "[A] citizen-plaintiff cannot overcome the presumption of diligence merely by showing that the agency's prosecution strategy is less aggressive than he would like

or that it did not produce a completely satisfactory result." *Piney Run Pres.*, 523 F.3d at 459.

An agency's prosecution can be diligent even if the violations alleged in the citizen suit do not overlap perfectly with those alleged in an agency enforcement action. *See Karr*, 475 F.3d at 1197 (a "federal court ought not to allow a citizens' suit to proceed merely because a prior pending state suit has not alleged as many separate violations of the Act as has the citizens' suit"). "The Court's comparison [of violations alleged in a citizen suit with violations alleged in an agency enforcement action] '*need not reveal identical claims . . . .*'" *S. River Watershed All.*, 484 F. Supp. 3d at 1366 (emphasis added); *see also Dodge v. Mirant Mid-Atl., LLC*, 732 F. Supp. 2d 578, 585 (D. Md. 2010) (ruling that a citizen suit alleging violations of "dust collector requirements" was barred because the state was diligently prosecuting alleged violations of a different "visible emissions" standard in a consent decree that regulated the same "area[] under which the dust collector requirement falls").

GreenLatinos advances a handful of arguments that EPA's and Colorado's prosecution is not "diligent," but each of those arguments

merely questions EPA's and Colorado's enforcement strategy.  That is not enough.

First, GreenLatinos implies that, for an agency's prosecution to count as "diligent," the agency's enforcement efforts must include a "detailed, individualized plan[]" regarding compliance for all relevant standards.  Op. Br. 57.  But GreenLatinos invented that concept.  GreenLatinos cites no authority requiring a "plan"—because there is none.  Undercutting its own argument, GreenLatinos asserts that the district court should not have relied on enforcement of ongoing Consent Decree monitoring requirements as diligent prosecution.  Op. Br. 53.  But courts have concluded that consent decree provisions authorizing ongoing monitoring, reporting, and inspection of open consent decree terms—like the Consent Decrees here—demonstrate that enforcement of a consent decree is diligent prosecution.  *E.g., Grp. Against Smog*, 810 F.3d at 130.

Second, GreenLatinos argues that alleged continuing violations establish that Colorado's and EPA's prosecution of alleged violations isn't "diligent."  Op. Br. 49-50.  But in *Karr*, this Court held that EPA's prosecution was diligent and barred a citizen suit even though the

citizen plaintiffs alleged ongoing violations for three years prior to filing suit. 475 F.3d at 1200. The Court ruled that "an unsatisfactory result does not necessarily imply lack of diligence." *Id.* at 1197.

Even if the violations that GreenLatinos alleges were ongoing after enforcement occurred, GreenLatinos' disagreement with how EPA and Colorado enforced such violations is not enough to meet the "high standard" to show that EPA's and Colorado's prosecution is not diligent. *Id.* at 1198. *Cebollero-Bertran*, which GreenLatinos relies upon, Op. Br. 49, is inapposite. In that case, the First Circuit ruled that an agency's prosecution of emission violations was not diligent because the agency failed to take *any action at all* to enforce a consent decree during the three years between entry of the consent decree and the filing of a citizen suit. 4 F.4th at 75. In reaching that conclusion, the court emphasized that "events transpiring post-entry of the Consent Decree" were critical to whether an agency's prosecution was diligent. *Id.* at 74 (cleaned up). Here, "events transpiring post-entry of the Consent Decree[s]" show that EPA and Colorado have actively enforced the Consent Decrees, unlike in *Cebollero-Bertran*. *See supra*, Statement of the Case, sections C, D.

Third, GreenLatinos disagrees with the amount of penalties that EPA and Colorado have imposed, *see* Op. Br. 52, 54, but courts frequently reject this type of second-guessing of the agency's enforcement strategy. *See S. River Watershed All.,* 484 F. Supp. 3d at 1370 (rejecting claim that stipulated penalties lower than CWA authorized penalties showed lack of diligence); *Piney Run Pres.*, 523 F.3d at 459 (same).

And fourth, GreenLatinos claims that the 2024 NOV cannot constitute "prosecution" because it is merely a "preliminary action" that precedes actual prosecution. Op. Br. 52-53. GreenLatinos never raised this argument below and therefore forfeited it. *See Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005). The Court should therefore disregard it.

Regardless, the 2024 NOV makes clear that it "provides formal notice of Suncor's alleged violations" and is issued pursuant to EPA's authority under 42 U.S.C. § 7413(a)(1). App. Vol. IX at 1736, ¶1. Even if GreenLatinos has not forfeited this argument, GreenLatinos cites no authority showing that a formal NOV issued pursuant to EPA's Clean Air Act enforcement cannot be "prosecution." The only case that

GreenLatinos cites, *Naturaland Trust v. Dakota Finance LLC*, 41 F.4th 342, 348–50 (4th Cir. 2022), does not describe what a "preliminary action" is and involves facts far different from the present case.  The state agency in that case sent a letter to a farm indicating that it must obtain a stormwater permit and, later, sent a "Notice of Alleged Violation/Notice of Enforcement Conference" that requested a voluntary "informal" conference regarding the allegations.  These factual circumstances are far from EPA's and Colorado's repeated, formal enforcement actions—including imposition of penalties and injunctive relief—to enforce alleged violations of the Consent Decrees.  *See supra*, Statement of the Case, sections C, D.

### C.    None of GreenLatinos' ancillary arguments remove this action from the diligent-prosecution bar.

GreenLatinos asks this Court to interpret the diligent-prosecution bar to allow duplicative prosecution of identical alleged violations of identical standards (through agency enforcement and citizen-suit enforcement).  But none of the cases that GreenLatinos cites support its arguments.

GreenLatinos relies heavily on *Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District*, 382 F.3d 743 (7th Cir.

2004), *e.g.,* Op. Br. 32, 36, 48-50, 57-58, but in that case both EPA and

the state failed entirely to enforce a 1977 settlement agreement during

the twenty-five years after its entry.  *See* 382 F.3d at 750 (noting the

state's "apparent lack of enforcement action" following entry of the

settlement agreement).  Thus, the court ruled —unsurprisingly—that

the 1977 settlement itself was not "diligent prosecution."  Here, of

course, the facts are starkly different: EPA and Colorado have initiated

several successive enforcement actions enforcing the Consent Decrees.

*See supra*, Statement of the Case, sections C, D.[7]

---

[7] Originally, GreenLatinos' Opening Brief (at 32) included the
sentence, "Later administrative actions cannot perpetually revive
ongoing enforcement 'in court,'" representing it as a direct quotation
from footnote 5 in *Friends of Milwaukee's Rivers*, GreenLatinos' main
case in support of their argument that administrative enforcement
actions cannot amount to diligent prosecution under the Act.  Counsel
for Suncor could not find this quotation in that case or, indeed, any case
available on Westlaw.  In fact, the only place where that quotation
appeared was in GreenLatinos' Opening Brief.  After counsel for Suncor
raised this issue with GreenLatinos, counsel for GreenLatinos agreed
the quotation did not exist.  GreenLatinos' recently filed Corrected
Opening Brief—which also corrects several other citation errors—
removes the quotation marks and adds a "See" signal.  But, these
revisions do not cure the inaccuracy of the citation.  The cited footnote
from *Friends of Milwaukee's Rivers* does not support the broad
proposition that "later administrative actions cannot perpetually revive
ongoing enforcement in court"—whether in quotes or otherwise.
Rather, that case does not address administrative enforcement actions
at all.  It merely concluded that the 2001 stipulation at issue had been

In *Citizens for a Better Environment-California v. Union Oil Co. of California*, 83 F.3d 1111 (9th Cir. 1996) (cited in Op. Br. 26), the court held that a settlement agreement resolving an action brought by Union Oil seeking to set aside effluent standards did not bar a subsequent citizen suit. In that case, the settlement agreement was not the result of agency enforcement, *id.* at 1114, so it is hardly surprising that the court ruled that no agency was "diligently prosecuting" an action. In *Knee Deep Cattle Co. v. Bindana Inv. Co. Ltd.*, 94 F.3d 514 (9th Cir. 1996) (cited in Op. Br. 27), the court ruled that a concluded administrative action, without any court-ordered consent decree or any agency effort to enforce alleged violations of the CWA, did not bar a later-filed citizen suit. And, finally, *Public Interest Research Group of N.J. v. GAF Corp.*, 770 F. Supp. 943 (D.N.J. 1991) (cited in Op. Br. 25, 27), has been "reject[ed]" by the Third Circuit, *Grp. Against Smog*, 810 F.3d at 129, and, as such, that case is no longer good law.

---

"rescinded" and therefore the citizen suit was not barred. *Friends of Milwaukee's Rivers*, 382 F.3d at 753 & 753 n.5. Neither the original cite, nor the corrected cite to *Friends of Milwaukee's Rivers*, provides any support for Plaintiffs' argument here.

GreenLatinos recites concerns about a lack of a public opportunity to participate in EPA and Colorado enforcement proceedings, Op. Br. 30-31, but those concerns cannot override Congress's intent to ensure that EPA and the states retain primary enforcement authority, with private citizens playing only an "interstitial" role. *Gwaltney*, 484 U.S. at 61. The objective of the diligent-prosecution bar is to ensure that private citizens do not trample on EPA and state enforcement authority. *See id.* at 60-61; *S. River Watershed All.*, 69 F.4th at 826-27 (ruling that EPA and the state were diligently prosecuting alleged violations by assessing penalties and otherwise enforcing the requirements of a consent decree finalized eight years earlier).

III. **The emission standards that EPA and Colorado are already enforcing are the same ones that GreenLatinos seeks to enforce.**

A. **GreenLatinos conceded that the emission standards prosecuted by EPA and Colorado are the same emission standards alleged in the Complaint.**

GreenLatinos never contests that EPA and Colorado are actively prosecuting the same exact standards alleged in the citizen suit through actions enforcing the Consent Decrees. Rather, GreenLatinos simply ignores those enforcement actions and, instead, focuses exclusively on emission standards and alleged violations within the four corners of the

36

Consent Decrees themselves.  *See* Op. Br. 39 n.11 (conceding that

GreenLatinos ignores the emission standards alleged in the 2024 NOV

and other EPA and Colorado post-Consent Decree enforcement actions).

Consequently, GreenLatinos conceded that the emission standards

enforced in the 2024 NOV[8] (and other Colorado enforcement actions)

are the same as those alleged in the Complaint.

Similarly, GreenLatinos failed to challenge the district court's

determination that EPA's and Colorado's post-Consent Decree

enforcement actions alleged "identical or substantially similar" emission

standards and alleged violations as the citizen suit.  *See* Op. Br. 36-47.

The district court ruled that the Consent Decrees, 2020 COC, 2024

COC, and 2024 NOV, "taken together," consisted of "identical or

substantially similar allegations" as the citizen suit and, consequently,

those enforcement actions barred the citizen suit.  App. Vol. X at 2311.

By failing to challenge this determination in its Opening Brief,

GreenLatinos is foreclosed from arguing that the standards enforced in

EPA's and Colorado's post-Consent Decree enforcement actions are not

---

[8] Suncor focuses on the 2024 NOV because, as demonstrated at App. Vol. V at 1114-20, each of the emission standards alleged in the Complaint is also alleged in the 2024 NOV.

the same as the standards that GreenLatinos seeks to enforce.  *See White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017) (an argument presented for the first time in a reply brief is forfeited).

The upshot is that the Court need not address whether the district court correctly determined that the emission standards alleged in the enforcement proceedings are the same as the emission standards alleged in the Complaint, as GreenLatinos failed to argue that determination is incorrect and is foreclosed from doing so now.

**B.    The Complaint seeks to enforce the same emission standards in the Consent Decrees and recent agency actions to enforce them.**

There is no reason for the Court to consider whether the emission standards enforced by the agencies' post-Consent Decrees actions are the same as the standards that GreenLatinos seeks to enforce. GreenLatinos has forfeited that argument.  And, regardless, the diligent-prosecution bar does not require courts to scrutinize the similarities between the allegations in the agency's enforcement actions and the citizen suit.  *Conn. Fund for Env't*, 631 F. Supp. at 1293 ("It was surely not the intent of Congress to 'overburden the courts' and the parties by requiring prolonged litigation over the similarities between

the state's suit and the citizens' suit before the latter could be dismissed.").

Even if the Court finds it necessary to scrutinize the district court's determination that the emission standards are "identical or substantially similar" (which it should not), documents attached to the Complaint and the motion to dismiss show that the district court's determination is correct. *See* App. Vol. V at 1114-20 (chart showing overlap in alleged emission standard violations in Complaint, Consent Decrees, and enforcement actions).

Under applicable caselaw, the Court must consider any agency enforcement *after* entry of the Consent Decrees—not just the standards enforced in the Consent Decrees themselves—to determine the extent of overlap between allegations in enforcement proceedings and in a citizen suit. That is precisely what the district court did here. App. Vol. X at 2310-13; *see S. River Watershed All.*, 484 F. Supp. 3d at 1368 (noting that "[i]t is the Court's duty to probe the government's prosecutorial vigor and events transpiring *post-entry of the Consent Decree*" and concluding that ongoing enforcement of a consent decree and levying of substantial fines pursuant to the consent decree showed diligent

prosecution) (emphasis added); *Grp. Against Smog*, 810 F.3d at 132

("when a state or federal agency diligently pursues an ongoing consent

decree that may be modified by the parties and enforced by the agency,

the diligent prosecution bar will prohibit citizen suits").

The series of agency enforcement actions since 2020 and

continuing through the present, including the imposition of penalties

and injunctive relief in the 2020 and 2024 COCs and the active ongoing

enforcement by EPA and Colorado in the 2024 NOV, conclusively

demonstrate that EPA and Colorado are diligently prosecuting

violations of the *same emission standards* that GreenLatinos alleged in

this action. *See Piney Run Pres.*, 523 F.3d at 460-61 (holding that

"stipulated penalties," "open-ended nature of the Consent Judgment,"

and ongoing "state administrative process" post-entry of the consent

judgment constitute diligent prosecution); App. Vol. V at 1114-20 (chart

showing overlap).  The district court relied upon that chart in

dismissing this lawsuit.  *See* App. Vol. X at 2313 n.2 (citing "Exhibit 27-

4," which appears in the Appendix at App. Vol. V at 1113-20); App. Vol.

X at 2312 (the district court ruled that the "consent decrees *and the*

*enforcement mechanisms against Defendant that followed them* resolve

40

*identical* or substantially similar alleged emission violations in

Plaintiffs' [] Complaint") (emphasis added).[9]

The currently pending 2024 NOV alleges violations of the exact

same emission standards covering the same emission units that

GreenLatinos alleges Suncor violated.  App. Vol. V at 1114-20.  For

example, GreenLatinos' Claim 25, which accounts for nearly 75% of the

days when an alleged violation occurred, asserts violations of an alleged

$NO_X$ emission limit applicable to Heater H-2101 and allegedly required

---

[9] Because it is indisputable that the Consent Decrees and the subsequent agency enforcement actions involve enforcement of the same exact standards as those in the Complaint, related to the same equipment, and over the same time periods, GreenLatinos is incorrect to suggest that the district court concluded the enforcement actions were merely "similar."  *See* Op. Br. 37-38 (citing *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 874 (9th Cir. 2013) (concluding that diligent prosecution did not apply because government never sought enforcement of "the Permit or for that matter any standard under the Clean Water Act"); *In Re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 894 F.3d 1030, 1039 (9th Cir. 2018) (concluding diligent prosecution bar did not apply because "complaint [was] in reality claims against the EPA under a different provision of the [Clean Air] Act"); *Frilling v. Vill. of Anna*, 924 F. Supp. 821, 836 (S.D. Ohio. 1996) (diligent prosecution not applicable when state sought enforcement of different "interim" standards, not the permit standards enforced by plaintiffs, and EPA "declined to take any action")).  Finally, *Berry v. Farmland Industries, Inc.* 114 F. Supp. 2d 1150, 1157-58 (D. Kan. 2000), is inapplicable because it addressed mootness, not diligent prosecution.

by the Consent Decree.  App. Vol. I at 0081-82, ¶¶478-85, App. Vol. I at

0148.  The 2024 NOV alleges *the exact same violation* since 2004.  App.

Vol. IX at 1851, ¶ii.

As another example, GreenLatinos' Claims 1 through 4 each

asserts violations of the same numerical emission limit on $H_2S$

concentrations in fuel gas.  App. Vol. I at 0062-67, ¶¶300-47; App. Vol. I

at 0086-91 (listing together *all* alleged "Exceedances of Three-Hour 162

PPMV $H_2S$ Limit" alleged in Claims 1 through 4).  Each of these claims

is based on a federal NSPS Subpart J requirement to control $SO_2$

emissions, 40 C.F.R. § 60.104(a), and the Consent Decrees enforce the

same "Three-Hour 162 PPMV $H_2S$ Limit," App. Vol. VI at 1169, ¶156;

App. Vol. VII at 1474, ¶231.  The 2024 NOV includes the exact same

alleged violations as detailed in GreenLatinos' Claims 1 through 4.  *See*

App. Vol. IX at 1790, ¶358; *see also* App. Vol. V at 1114-20 (detailing

overlap).  Similarly, Claims 10 through 15 each assert violations of the

same numerical emission limit of 500 ppm of CO applicable to the

FCCUs in the Consent Decrees and other cited emission standards. *See* App. Vol. V at 1116-17.[10]

GreenLatinos now attempts to distinguish emission standards in Claims 1 through 4 and 10 through 15 because some of the standards were adopted after the Consent Decrees, or address different units or different pollutants. Op. Br. 39-47. But GreenLatinos never contests that the standards establish the same numerical emission limits and, consequently, the standards are the same for diligent-prosecution purposes. Indeed, GreenLatinos concedes as much by grouping *all* of the alleged violations of Claims 1 through 4 in the Complaint in a single Exhibit attached to the Complaint. *See* App. Vol. I at 0086-91 (grouping all alleged violations in Claims 1-4 under a single header, "Exceedances

---

[10] The emission standards established in the Consent Decrees are commonly the same numerical emissions limit adopted into NSPS J and NSPS Ja or NESHAP UUU (even when the applicable NSPS or NESHAP was adopted later). *Compare* App. Vol. VI at 1137, ¶49; 40 C.F.R. Subpart J, § 60.103(a), *with* 40 C.F.R. Subpart UUU § 63.1565(a) (each setting emission limit of 500 ppm CO on fluid catalytic cracking units); *see also* Op. Br. 45 (noting that a "practical, beneficial effect of the decrees was to establish uniformity in the regulation of all similar units at the refineries" by making some Suncor units subject to a regulatory requirement like NSPS J that did not yet apply to those units at the time the Consent Decrees were entered).

of Three-Hour 162 PPMV $H_2S$ Limit").[11]  The same is true for Claims 10

through 15, which GreenLatinos aggregated in Exhibit G to the

Complaint.  *See* App. Vol. I at 0108-10 (grouping alleged violations in

Claims 10-15).[12]  By grouping alleged violation events from different

Claims into the same Complaint Exhibits, even GreenLatinos agrees

that claims grouped together are the "same" for diligent prosecution

purposes.

Ultimately, EPA and Colorado are already enforcing all of the

emission standards alleged in the Complaint.  *See* App. Vol. V at 1114-

20.  The district court thus rightfully determined that emission

standards alleged in the Complaint are "identical or substantially

similar" to emission standards in the agency enforcement actions to

enforce the Consent Decrees and correctly ruled the diligent-prosecution

provision barred this duplicative lawsuit.

---

[11] *See also* App. Vol. I at 0062-67, ¶¶303, 318, 334, 343 (noting that violations alleged in Claims 1-4 are aggregated in Exhibit B to the Complaint, App. Vol. I at 0086-91).

[12] *See* App. Vol. I at 0071-74, ¶¶380, 388, 394, 400, 406, 413 (noting that violations alleged in Claims 10-15 are aggregated in Exhibit G to the Complaint, App. Vol. I at 0108-10).

## <u>CONCLUSION</u>

The Court should affirm the judgment.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Due to the complexity of the issues involved in this appeal, Suncor

requests oral argument.

Dated: November 5, 2025.          Respectfully submitted,

_s/ Carlos R. Romo_                       _s/ Hugh Q. Gottschalk_

Carlos R. Romo                           Hugh Q. Gottschalk
John H. Bernetich                        Eric L. Robertson
WILLIAMS WEESE PEPPLE &                   WHEELER TRIGG O'DONNELL
FERGUSON PC                               LLP
1801 California Street                    370 17th Street
Suite 3400                               Suite 4500
Denver, Colorado 80202                   Denver, Colorado 80202
Phone: (303) 861-2828                    Phone: (303) 244-1800

_Counsel for Defendant-Appellee Suncor Energy (U.S.A.) Inc._

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,808 words, thus not exceeding the 13,000-word limit, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: November 5, 2025.

*s/ Hugh Q. Gottschalk*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2025, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Tenth Circuit using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and service will be accomplished via the appellate CM/ECF system.

Dated: November 5, 2025.

*s/Hugh Q. Gottschalk*