In the United States Court of Appeals
for the Tenth Circuit

CASE NO. 25-1243

GREENLATINOS, 350 COLORADO,
AND SIERRA CLUB,

     *Plaintiff – Appellants,*

     v.

SUNCOR ENERGY (U.S.A.), INC.,

     *Defendant – Appellee.*

On Appeal from the United Stated District Court
For the District of Colorado
The Honorable Judge Domenico
D.C. No. 1:24-cv-02164-DDD

**Appellants' Reply Brief**

December 10, 2025

Ian Coghill
Rachael Jaffe
EARTHJUSTICE
1125 17th Street
Suite 1010
Denver, CO 80202
303-996-4620
303-996-9613
icoghill@earthjustice.org
rjaffe@earthjustice.org

*Counsel for GreenLatinos, 350
Colorado, and Sierra Club*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 5

    I.   Step One: No Government "Is [] Prosecuting a Civil Action in a Court" ............................................................................ 6

        A.  Suncor's Argument for Ignoring the Statutory Text Is Unpersuasive ................................................................ 7

        B.  Even if *Some* Consent Decrees Could Extend the Original Government Prosecution in Court, the Decrees Here Cannot ........ 12

        C.  The Administrative Acts Suncor Cites Cannot Extend the Prosecution of EPA's Suits ........................................... 15

   II.  Step Two: Even if EPA's Twenty-Year-Old Suits Are Deemed Ongoing Prosecution, GreenLatinos' Claims Are Not Enforcing the Same Standards as Those Suits ......................................... 16

        A.  There Is No Dispute That GreenLatinos' Claims Are Not Enforcing the Same Standards as EPA's Suits ............................. 17

        B.  Standards Relying on the Same Numeric Limit Are Not Identical Under Step Two ......................................................... 18

        C.  This Court Should Not Compare GreenLatinos' Claims to the 2024 NOV ................................................................ 20

        D.  The NOV Does Not Involve the Exact Same Standards as GreenLatinos' Claims ...................................................... 21

  III. Step Three: GreenLatinos Adequately Alleged That Any Prosecution Was Not Diligent at the Time the Complaint Was Filed ..................... 23

## TABLE OF CONTENTS—CONTINUED

**Page**

    A.  GreenLatinos Should Not Be Required to Overcome a Presumption That the Administrative Acts Are *Diligent Prosecution* ................................................................... 24

    B.  Regardless, GreenLatinos Alleged Adequate Facts, Taken as True, That Prosecution Was Not Diligent .................................... 26

    C.  Suncor Cannot Rely on the Administrative Acts to Demonstrate That Any Prosecution Is Diligent ................................................. 28

CONCLUSION........................................................................... 30

CERTIFICATE OF COMPLIANCE ........................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Beaudry v. Corr. Corp. of Am.*,
  331 F.3d 1164 (10th Cir. 2003)................................................................ 29

*Cebellero-Beltran v. P.R. Aqueduct & Sewer Auth.*,
  4 F.4th 63 (1st Cir. 2021) ........................................................ 26

*Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*,
  83 F.3d 1111 (9th Cir. 1996) ........................................................ 10

*Citizens for Clean Power v. Indian River Power, LLC*,
  636 F. Supp. 2d 351 (D. Del. 2009) ........................................................ 24

*Conn. Fund for the Env't v. Cont. Plating Co., Inc.*,
  631 F. Supp. 1291 (D. Conn. 1986) ........................................................ 24

*Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*,
  84 F.3d 367 (10th Cir. 1996) ........................................................ 27

*Dodge v. Evergreen Sch. Dist. #114*,
  56 F.4th 767 (9th Cir. 2022) ........................................................ 21

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*,
  382 F.3d 743 (7th Cir. 2004) ........................................................ 14-15, 25

*Friends of the Earth v. Carey*,
  535 F.2d 165 (2d Cir. 1976) ........................................................ 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  890 F. Supp. 470 (D.S.C. 1995)........................................................ 27

*Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*,
  810 F.3d 116 (3d Cir. 2016) ........................................................7, 9, 13, 21, 29

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987)........................................................ 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  894 F.3d 1030 (9th Cir. 2018)........................................................ 16

*Karr v. Hefer*,
  475 F.3d 1192 (10th Cir. 2007)........................................................24-26

*Knee Deep Cattle Co. v. Bindana Inv. Co.*,
  94 F.3d 514 (9th Cir. 1996) ........................................................ 10

iv

# TABLE OF AUTHORITIES—CONTINUED

**Page(s)**

*LaFleur v. Whitman*,
300 F.3d 256 (2d Cir. 2002) ........................................................ 5

*Nat'l Ass'n of Indus. Bankers v. Weiser*,
2025 WL 3140623 (10th Cir. Nov. 10, 2025) ............................... 9

*Naturaland Tr. v. Dakota Fin. LLC*,
41 F.4th 342 (4th Cir. 2022) ..................................................... 28

*Piney Run Pres. Ass'n v. Cnty. Comm'rs*,
523 F.3d 453 (4th Cir. 2008) .......................................... 8, 24, 27

*S. River Watershed All., Inc. v. DeKalb Cnty.*,
484 F. Supp. 3d 1353 (N.D. Ga. 2020) .................... 12, 15, 20, 27

*S. River Watershed All., v. DeKalb Cnty.*,
69 F.4th 809 (11th Cir. 2023) ....................... 8, 13, 24, 27

*Sierra Club v. EPA*,
551 F.3d 1019 (D.C. Cir 2008) .............................................. 19

*United States v. Carvajal-Andujar*,
2025 WL 1576653 (10th Cir. June 4, 2025) ............................. 29

*United States v. Garcia-Limon*,
146 F.4th 885 (10th Cir. 2025) .............................................. 11

**Statutes**

42 U.S.C. § 7604(a)(1) ................................................................ 18

42 U.S.C. § 7604(b)(1)(B) ................................. 1, 6, 8, 11, 15-16

42 U.S.C. § 7604(f) .................................................................... 18

**Other Authorities**

10th Cir. R. 28.3(B) ................................................................... 22

40 C.F.R. § 22.13 ....................................................................... 28

40 C.F.R. § 22.34 ....................................................................... 28

40 C.F.R. § 60.11 ....................................................................... 19

EPA, Clean Air Act Stationary Source Civil Penalty Policy (Oct. 25, 1991),
https://perma.cc/V4TR-H7W3 ............................................... 19

# INTRODUCTION

The text of the Clean Air Act resolves this case. The diligent prosecution bar only prevents a person from suing a polluter whose unlawful emissions are causing them harm "if the [government] has commenced and is diligently prosecuting a civil action in a court ... to require compliance with the standard" that the person seeks to enforce. 42 U.S.C. § 7604(b)(1)(B).  This text lays out a three-step process. Step One: Ask if the government was suing the polluter "in a court" when the person sued. Step Two: If so, ask if the government is suing "to require compliance" with "the" same standard as the citizen suit claim. Step Three: If so, ask if the government is prosecuting that suit "diligently." For the bar to prevent the person from bringing a given claim, the answer at each step must be yes.

Here, the answer at each step is no: (1) the only suits in court were twenty years ago; (2) GreenLatinos are pursuing violations involving different standards, different equipment, and different pollutants than those suits; and (3) though Suncor's pervasive and harmful violations have continued unabated, no government has initiated further action in court. The District Court was wrong when it applied the bar to dismiss this suit.

Suncor's Response Brief ("Resp.") shows just how far it would have this Court stray from the Act's plain text. Under Suncor's reading, a twenty-year-

old suit that ends in a consent decree can shield a polluting facility from citizen suits forever, so long as the government has taken any administrative action in the interim and the decree is not terminated. This shield would apply regardless of the extent and severity of the violations that continue to occur and regardless of the effectiveness of the decree. The bar would extend to violations of standards and equipment that did not even exist at the time of the original claims. The Act does not extend that kind of blanket protection to polluters or prohibit ordinary people from suing to protect their health under those circumstances.

Suncor's view would also force courts to confront endless future questions. Consider a simplified hypothetical of a facility with two boilers and two flares. A 2002 consent decree resolved violations of a benzene standard at Boiler 1. A 2019 administrative settlement addressed (1) further violations of the Boiler 1 benzene standard, and (2) violations of a particulate matter ("PM") standard at Flare 1.

| Equipment | Installed | Standards | Government Action |
|---|---|---|---|
| Boiler 1 | 2000 | Benzene PM | 2002 Consent Decree: Benzene<br>2019 Admin: Benzene |
| Boiler 2 | 2000 | Benzene PM | None |
| Flare 1 | 2010 | PM Benzene | 2019 Admin: PM |
| Flare 2 | 2019 | PM Benzene | None |

What happens if a person sues in 2025 because different units—Boiler 2 and Flare 2—are violating PM standards and exacerbating their asthma? According to Suncor, the diligent prosecution bar applies. Why? Because the 2019 administrative action enforced both (1) the Boiler 1 benzene standard in the 2002 decree, and (2) *a* PM standard. To Suncor, it is irrelevant that the PM standard was not involved in the 2002 suit and applies to a different type of unit installed after the decree was entered.

What if the government had never pursued the 2019 administrative action? What if the person sues to enforce the specific benzene standards that apply to Boiler 2 and Flare 2 instead of the PM standards? What if there are two PM standards that apply to boilers, one that Boiler 1 violated in 2000 and a different one that Boiler 2 violated in 2025? There is no limiting principle to Suncor's view that answers these questions, certainly not one that flows from the text.

Just as bad, Suncor's view undermines the considered balance Congress struck when enacting the diligent prosecution bar. *See* GreenLatinos' Opening Brief ("Br.") 29-32. Congress respected the interests of the government and courts in avoiding duplicative litigation and giving the government a leading role. But Congress also respected its constituents: It drew specific limits around the type of government action triggering the bar and guaranteed that where the bar does apply, those harmed by pollution could still advocate for themselves by intervening in the government suit. Expanding the bar beyond the Act's text does violence to Congress' careful balance. The Act guarantees that people suffering from exposure to pollution can participate in resolving violations. But Suncor's view leaves those most affected with no ability—much less a guaranteed one—to participate, even when the government is not addressing the violations.

All these ills could be avoided by following the three-step inquiry the text commands, but the District Court did not. Instead, its undifferentiated analysis was just that the claims in the complaint "consist[] of identical or substantially similar allegations" to "the consent decrees, compliance orders, compliance advisories, and notice of violation" ("NOV"). App. Vol. X at 2311.

GreenLatinos' suit seeks to finally bring Suncor into compliance with pollution standards that exist to protect their members' health. The District

Court's decision allows Suncor's violations to continue as they have for decades and provides no recourse to those harmed.[1] This Court should apply the diligent prosecution test from the Act's plain text and reverse.

## ARGUMENT

None of the three diligent prosecution steps are met here.

At Step One, the only relevant court actions against the refinery ended with consent decrees entered in 2002 and 2005. Suncor attempts to piece together later administrative acts to resurrect those cases, but administrative acts are not actions "in a court," nor can they perpetually extend court actions years after a decree's remedial measures were completed.

At Step Two, even if this Court deems the original suits ongoing, none of GreenLatinos' claims seek to enforce the same standards as those two suits. Suncor claims that a much later administrative notice can expand the standards enforced by those original suits, but it cannot.

---

[1] Suncor claims that its air monitoring program shows that its emissions pose "no likelihood of health harm." Resp. 9 n.1 (citing App. Vol. I at 0156-58). The District Court correctly rejected this same argument—that health cannot be harmed if ambient pollution levels are below regulatory guidelines—noting "Congress has recognized that there are potentially adverse effects from air pollution at levels below the [standards]." App. Vol. X at 2308 (quoting *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002)).

At Step Three, even if this Court looks to the original suits, the government is not diligently prosecuting them. Twenty years in, if those actions are still being prosecuted and were seeking compliance with any of the same standards as GreenLatinos' claims, they have failed. The consent decrees' corrective measures ended more than ten years ago, but Suncor continues to violate the Act. Yet no government has asked the court to impose additional measures to fix the problem, and any administrative acts, including penalties, have plainly not deterred Suncor's violations.

This Court can resolve this appeal by agreeing that the District Court erred at any one of these steps.

## I.    Step One: No Government "Is [] Prosecuting a Civil Action in a Court"

Two things leap off the page where the Clean Air Act's diligent-prosecution bar asks if a government *"is [] prosecuting a civil action in a court."* 42 U.S.C. § 7604(b)(1)(B). *First*, the provision refers to the present: What matters is whether a government "*is*" already suing when the citizen suit is filed. Context confirms this plain text reading. When enacting diligent prosecution bars in other environmental statutes, Congress made clear when past actions, like final judgments, trigger that bar. *See* Br. 25-27. It did not do so here. *Second*, the provision specifies that a government must be prosecuting

6

"*in a court*." By contrast, in other statutory bars, Congress allowed administrative acts to trigger the bar. *See* Br. 28-30.

Suncor's argument that the twenty-year-old consent decrees trigger the bar is wrong. Consent decrees are final judgments that terminate court actions; they are not ongoing court actions. *See id.* at 25-27. Suncor also says that the government's administrative acts, ranging from preliminary violation notices to administrative settlement orders, trigger the bar. Resp. 39-40. But administrative acts are not civil actions in a court. *See* Br. 28-34.

No government is prosecuting in court, so the bar does not apply to GreenLatinos' claims.

## A.    Suncor's Argument for Ignoring the Statutory Text Is Unpersuasive

Tellingly, Suncor does not engage with GreenLatinos' textual arguments on appeal. Instead, it suggests that following the text would (1) make this Court an outlier, and (2) undermine Congress's intent. Neither is true.

*First*, Suncor cites three cases to argue that this Court should hold that the twenty-year-old consent decrees mean that the government is still prosecuting a civil action in a court. Resp. 20-24. Two do not contain that holding. The third flouted this Court's tried-and-true approach to statutory interpretation by rejecting "literal and grammatical" readings and leaning instead on policy arguments gleaned from "legislative history." *Grp. Against*

7

*Smog & Pollution, Inc. v. Shenango, Inc.* ("*GASP*"), 810 F.3d 116, 129-30 (3d Cir. 2016).

Neither the Fourth nor Eleventh Circuits addressed whether an earlier consent decree "is [] prosecuting a civil action in a court." 42 U.S.C. § 7604(b)(1)(B). In *Piney Run*, the state obtained a consent judgment against a municipality for Clean Water Act violations, and the plaintiff sued four months later. *Piney Run Pres. Ass'n v. Cnty. Comm'rs,* 523 F.3d 453, 457-59 (4th Cir. 2008). Nothing indicates that the plaintiff argued that the "is [] prosecuting" element was not met; instead, the question was whether the bar's *diligence* element was met. *Id.* at 459-60 (describing "[t]he real question" as "whether … the Consent Judgment[] is in good faith calculated to require … compliance").

In *South River*, the plaintiff similarly did "not argue[] that the [agencies] [were] not prosecuting." *S. River Watershed All., v. DeKalb Cnty.,* 69 F.4th 809, 824 (11th Cir. 2023). There, the government entered a consent decree with a county to resolve unpermitted discharges, and the plaintiff later sued. *Id.* at 815-17. As the concurring opinion noted, the prosecution question was "neither here nor there" because the issue was not before the court. *Id.* at 830 (Newsom, J., concurring). Even so, the concurrence anticipated "reasonable arguments" that "prosecution and enforcement are different things." *Id.* at 829-

8

30 (Had the issue been raised, "it'd be a close question, at least as a matter of statutory interpretation" because the statute "is framed in the present tense.").

As for *GASP*, it flouts "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written." *Nat'l Ass'n of Indus. Bankers v. Weiser*, 159 F.4th 694, 712 (10th Cir. 2025) (citation omitted). In *GASP*, a plaintiff sued based on violations of "the same three emissions standards" at issue in two prior consent decrees—the second decree finalized just one month before plaintiff's suit. 810 F.3d at 121. *GASP* denigrated cases that followed the statutory text as "rely[ing] on a literal, inflexible, or grammatical interpretation." *Id.* at 129. Instead, the court was persuaded by "legislative history" that the bar should apply unless agencies "fail to exercise their enforcement responsibility." *Id.* at 130 (citation omitted).[2] Nonetheless, because the court described its holding as "hinge[ing] on the circumstances" of that case, *id.*, there is no indication that it would have found the bar triggered on these facts here.

Suncor's effort to brush aside circuit cases that *did* address the argument GreenLatinos raise—and agreed—fall short.

---

[2] The Third Circuit has not relied on *GASP* for this proposition since.

In *Citizens*, as part of a settlement of a permit-challenge, the state issued an administrative cease and desist order ("CDO") with a compliance schedule for certain discharge limits. *See Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*, 83 F.3d 1111, 1114-15 (9th Cir. 1996). The district court held that with entry of the CDO, the state "'enforcement action is no longer still being "prosecuted" within the meaning of [33 U.S.C.] § 1319(g)(6)(A)(ii),'" and it "seem[ed] plain" to the Ninth Circuit "that no action *is* being prosecuted." *Id.* at 1118 (citation omitted).[3] Suncor asserts that the bar did not apply because "the settlement agreement was not the result of agency enforcement." Resp. 35. That is not what the Ninth Circuit said. The Ninth Circuit clearly viewed the CDO as an administrative enforcement action within the meaning of Section 1319(g)(6)(A)(ii), just not an ongoing one.

The Ninth Circuit later reaffirmed *Citizens* when reversing a dismissal of a Clean Water Act citizen suit. *See Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 514, 516 (9th Cir. 1996) ("[T]he [Stipulation] … was entered into before Knee Deep filed suit, and therefore[] … it cannot be said that the state was diligently prosecuting an action at the time Knee Deep filed"). To this,

---

[3] The diligent prosecution bars in the Clean Air Act and Clean Water Act contain the same "is diligently prosecuting" language. But the Clean Water Act contains a diligent prosecution bar that also applies to administrative acts like this CDO. *See* Br. 29-30.

Suncor implies that the bar did not apply because there was no judicial consent decree. Resp. 35. But the Ninth Circuit did not suggest that. Regardless, as noted above, the Clean *Water* Act includes a bar for administrative enforcement, so the absence of a consent decree is irrelevant in *Knee Deep*.

*Second*, Suncor's policy arguments—that "GreenLatinos' argument boils down to a disagreement with *how* EPA and Colorado are enforcing the Consent Decrees," Resp. 25—cannot overcome statutory text. *See United States v. Garcia-Limon*, 146 F.4th 885, 896 (10th Cir. 2025) (noting parties raised "policy arguments to support their respective interpretations" but starting its analysis "with the text" (citation omitted)). As explained, and Suncor ignores, the statutory text shows that Congress balanced avoiding *duplicative suits* with impacted people's participation in ensuring compliance with pollution standards that exist to protect them. That is why, even when a citizen suit claim is barred, Congress granted affected people the *right* to intervene in the government's suit. *See* Br. 30-32.[4] That is, Congress did not view its constituents, as Suncor apparently does, as "nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests."

---

[4] For this reason, if this Court accepts Suncor's position, it should make clear that GreenLatinos may seek to intervene in the cases that generated the consent decrees. *See* 42 U.S.C. § 7604(b)(1)(B).

*Friends of the Earth v. Carey,* 535 F.2d 165, 172 (2d Cir. 1976).[5] And even if

Suncor's policy concerns were relevant, other doctrines may limit suits brought

close in time to a consent decree, *see* Br. 35-36 (e.g. collateral estoppel,

mootness)—a point which Suncor does not dispute.

### B.    Even if *Some* Consent Decrees Could Extend the Original Government Prosecution in Court, the Decrees Here Cannot

If consent decrees can continue a civil action for some period of time,

they cannot do so perpetually. *See S. River Watershed All., Inc. v. DeKalb Cnty.,*

484 F. Supp. 3d 1353, 1368 (N.D. Ga. 2020) ("[T]o permit a Consent Decree

to automatically immunize a polluter from all citizen suits would be to rewrite

the [Act] and diverge from clearly established law."). Instead, the court must

consider post-decree actions such as decree modifications and ongoing

remedial measures. *See* Br. 48-49.

Where courts have found continued diligent prosecution after a consent

decree, they have done so based on to-be-completed remedial measures

---

[5] This also addresses Suncor's inapposite references to *Gwaltney*. Suncor quotes language the court used to explain why citizen suits address only current, not past, violations. Resp. 25 (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60-61 (1987)). As to current violations, as explained, the Act *encourages* citizens' participation.

mandated to stop the violations.[6] *See* Br. 50.[7] For example, in *South River*, the Eleventh Circuit explained that "[t]he consent decree's goals alone are not enough" and the court "must also examine whether the [government has] been diligent in overseeing the consent decree and requiring [the polluter] to live up to its end of the bargain." 69 F.4th at 826. In finding the government had met the diligence threshold, the court examined the consent decree's "requirements that [the polluter] implement various programs to stop future [sewer] overflows and rehabilitate affected areas." *Id.* at 827. As further evidence of diligence, the court noted decree modifications "to increase the number of projects … and the amount of penalties owed." *Id.* at 827 n.23; *see also GASP*, 810 F.3d at 130-31 (relying on "*ongoing vitality of these Consent Decrees*, specifically the parties' ability to modify or enforce the terms of the Consent Decrees" including "requiring the violator to *bear the cost of improvement*" (emphasis added)).

Suncor identifies no similar continuing government "plan of attack" to finally bring the refinery into compliance here. In agreeing to settle the original EPA suits, Suncor's predecessors agreed to corrective measures like

---

[6] Courts often do not distinguish between Step One prosecution and Step Three diligence, but GreenLatinos are addressing the issue here.

[7] Suncor accuses GreenLatinos of arguing that a "detailed, individualized plan[]" is always required for any agency prosecution to be diligent, Resp. 30, but GreenLatinos never made that argument.

"installation of significant air pollution control equipment … to reduce air emissions." App. Vol. VII at 1364; *see also* Br. 16. Suncor has not disputed that the timeline for those measures ended, at the latest, more than ten years ago. *See* Br. 16, 57-58.

The Seventh Circuit's *Milwaukee's Rivers* decision offers an instructive analogy. There, the state entered into a stipulation addressing Clean Water Act violations from a sewage treatment facility. *See Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 749 (7th Cir. 2004).[8] The state then filed a second stipulation—over twenty years after the first—with the state court. *Id.* Noting the lengthy passage of time, the state court rejected the stipulation,[9] so it could not be cited as proof of diligent prosecution. *Id.* The Seventh Circuit took a dim view of the state's strategy, cautioning that allowing an agency to "indefinitely continue" an action to ensure a commenced court action is always "on the back burner," "eviscerate[s] the

---

[8] Suncor points out GreenLatinos' cite checking error which incorrectly attributed paraphrased language as a direct quote to *Milwaukee's Rivers*. Resp. 34 n.7. GreenLatinos regret the error and promptly submitted a corrected brief removing the incorrect quotation marks.

[9] Suncor argues that *Milwaukee's Rivers* holds only that the disapproval meant the bar could not apply. Resp. 34-35 n.7. That ignores the judge's stated reason for refusal: "'It does seem to me that at some point a court's involvement in a case must end,'" and the case was "'well beyond that point.'" *Milwaukee's Rivers,* 382 F.3d at 750 (quoting the district court decision). The same can be said of the Suncor consent decrees.

timely commencement requirement" and allows untimely delay to citizen suits. *Id.* at 753 n.5. The same concern applies here: allowing long-delayed government action to piggyback on aged decrees or stipulations undermines Congress' choice to allow people to sue to address ongoing violations.

### C.  The Administrative Acts Suncor Cites Cannot Extend the Prosecution of EPA's Suits

Perhaps realizing that the consent decrees' terms cannot support continued prosecution, Suncor attempts to extend the prosecution of the original court action indefinitely by characterizing much later administrative acts as "enforcing the Consent Decrees."[10] Resp. 34. Suncor cites no statutory text or caselaw supporting its position.[11]

Administrative acts do not meet the bar's "prosecuting a civil action in a court," requirement. 42 U.S.C. § 7604(b)(1)(B); *see* Br. 28-34. An administrative act is only relevant, if at all, to show continued prosecution of

---

[10] Suncor's characterization overstates the connection between the administrative acts and the consent decrees. For example, in the eighty pages of the NOV itself, the only references to consent decree violations are (1) one page identifying violations of benzene waste provisions irrelevant to GreenLatinos' claims, App. Vol. IX at 1762, and (2) a catch-all paragraph stating that to the extent a specifically identified violation has "a corresponding compliance requirement … [the] NOV also alleges that Suncor is or was violating the corresponding compliance requirement," *id.* at 1811.

[11] Suncor's citation of *South River*, Resp. 39, is inapt. The portion Suncor quotes is the same proposition discussed above: consent decrees do not immunize a source from citizen suits. *See S. River,* 484 F. Supp. at 1368.

the original court action resolved by the decrees, i.e., furthering yet to-be-completed remedial measures. *See* Section II.B. Here, Suncor does not argue that the administrative acts supported ongoing remedial measures, so they are irrelevant to prosecution.

## II.    Step Two: Even if EPA's Twenty-Year-Old Suits Are Deemed Ongoing Prosecution, GreenLatinos' Claims Are Not Enforcing the Same Standards as Those Suits

At Step Two, the Clean Air Act directs a court to compare the standards in the "civil action in a court" with the standards in the person's suit. The question is whether the government's suit seeks "to require compliance with *the* standard" in the person's suit. 42 U.S.C. § 7604(b)(1)(B) (emphasis added). This requires a one-to-one relationship. Br. 37; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 894 F.3d 1030, 1039 (9th Cir. 2018) (explaining the plain text "signif[ies] with precision that the … bar forecloses only citizen suits that seek to enforce the *same* [standard] as the government enforcement action" (emphasis in original)). A person's claim is potentially barred (subject to Step Three) only if the government's suit seeks to require compliance with the identical standard.

At times, Suncor implicitly acknowledges the correct reading of the text. *See* Resp. 36 ("same exact standards"); *id.* at 41 n.9 (arguing district court did not "conclude[] the enforcement actions were merely 'similar'"). At others, it

16

encourages this court to ignore the text altogether. *Id.* at 38 (arguing the "bar does not require courts to scrutinize the similarities between the allegations").

This Court should apply the plain text, compare the standards in the government's suits to GreenLatinos' claims here, and conclude that (1) none of GreenLatinos' claims seek to enforce the same standards as the original government court actions, and (2) subsequent administrative acts, like the NOV, cannot expand the scope of claims relevant at Step Two.

## A.    There Is No Dispute That GreenLatinos' Claims Are Not Enforcing the Same Standards as EPA's Suits

GreenLatinos have demonstrated that its claims are not enforcing violations of the same standards as the only relevant government actions— EPA's suits resolved by the 2002 and 2005 consent decrees. Br. 39-47. Most of GreenLatinos' claims enforce standards that were adopted after the decrees, regulate pollutants not addressed in the decrees, and/or are simply never mentioned in the decrees. For example, Claim 9 alleges violations of a MACT standard: (1) adopted several years after the decrees, that (2) regulates metallic hazardous air pollutants (like cadmium and chromium), which the decrees do not address. *Id.* at 41-42.

GreenLatinos do allege violations of four standards created in the decrees themselves. *See id.* at 46-47 (Claims 13, 14, 16, and 25). However,

17

EPA's suits logically could not have been brought to require compliance with standards first created in the judgments resolving those actions. *See id.*

Suncor does not dispute this analysis, Resp. 40 (arguing only that *the NOV enforces same standards*),[12] and its citation to the chart from its motion to dismiss does not change the conclusions, *id.* (citing App. Vol. V at 1114-20). GreenLatinos rebutted each citation to the consent decrees in a responsive table. *See* App. Vol. X at 2069-80.

## B. Standards Relying on the Same Numeric Limit Are Not Identical Under Step Two

Suncor argues that standards enacted after the consent decrees and standards regulating pollutants the decrees do not cover are the "same" as standards in EPA's suits. Specifically, it argues that: if a consent decree requirement uses the same numeric limit as an unrelated emission standard, "the standards are the same for diligent-prosecution purposes." Resp. 43. Suncor is wrong.

Under the Clean Air Act, "*an* emission standard or limitation" includes, among others, *any* Title V permit condition, State Implementation Plan provision, New Source Performance Standard, or MACT standard. 42 U.S.C.

---

[12] Suncor does argue, incorrectly, that the 2024 NOV can bar claims based on standards adopted after the decrees. *See* Section II.C.

§ 7604(a)(1), (f) (emphasis added); *see also* Br. 11. Standards using the same numeric emission limit are still separate standards adopted for different reasons. For example, Claims 11 and 12 are both based on exceedances of the same numeric carbon monoxide limit, but the standards are different. The Claim 11 standard (NSPS Subpart Ja) regulates carbon monoxide emissions directly, App. Vol. I at 0071, 0041, while the Claim 12 standard (MACT UUU) monitors carbon monoxide as a proxy to control emissions of organic hazardous air pollutants, *id.* at 0072, 0043-45.

These differences have real-world impacts. For example, the potential penalties differ. Violations of hazardous air pollutants standards, like in Claim 12, "are more serious and should result in larger penalties" than violations of other emission standards.[13] Violations of the consent decree requirements in Claims 13 and 14 could be subject to stipulated penalties, *e.g.,* App. Vol. VIII at 1721, while violations of the standards in Claims 10-12 and 15 are not. Similarly, different defenses may be available for different standards. *Compare* 40 C.F.R. § 60.11 (NSPS affirmative defense for certain violations during startup, shutdown, or malfunction events), *with Sierra Club v. EPA*, 551 F.3d

---

[13] EPA, Clean Air Act Stationary Source Civil Penalty Policy, 9 (Oct. 25, 1991), https://perma.cc/V4TR-H7W3.

1019, 1028 (D.C. Cir 2008) (holding no similar defense allowed for MACT standards).

Under the Act's plain text, the standards in each of GreenLatinos' claims are separate, enforceable standards.

### C.     This Court Should Not Compare GreenLatinos' Claims to the 2024 NOV

Instead of comparing GreenLatinos' claims to the decrees, Suncor argues that an administrative notice issued in July 2024—one month after GreenLatinos gave notice of its intent to sue—can expand the scope of standards barred by the original suits.[14] Resp. 38-39; App. Vol. I at 0016-17 ¶ 31, 0057 ¶ 258. Suggesting that the court can rely on a later administrative notice, listing violations of different standards than the original civil action, is nothing more than an attempted end-run around the Clean Air Act's exclusive use of "a civil action in a court" to trigger the bar. Doing so grafts an administrative enforcement bar onto the Act, contrary to its plain text. Even courts relying on consent decrees for prosecution look to the consent decree itself to determine which claims it potentially bars at Step Two. *See S. River,* 484 F. Supp. 3d at 1367 (noting plaintiff's concession that "the entirety of

---

[14] This refutes Suncor's accusation that GreenLatinos' complaint copied the NOV's allegations. Resp. 15.

[their] claims were covered in some fashion by the 2010 Complaint and 2011 Consent Decree”); *GASP*, 810 F.3d at 131 (“Consent Decrees specifically reference and address [the] violations” in citizen suit).

### D.    The NOV Does Not Involve the Exact Same Standards as GreenLatinos’ Claims

Even if the court finds the NOV relevant, it does not support affirming the District Court’s application of the bar to dismiss GreenLatinos’ claims.

Suncor argues that GreenLatinos forfeited this argument by not addressing it in their Brief. Resp. 37-38. Suncor is incorrect. The District Court never held that the standards in the NOV are identical to those in GreenLatinos’ claims. *See* App. Vol. X at 2310 (stating *consent decrees* “resolved civil actions alleging either *identical or substantially similar* violations of … emissions standards” as GreenLatinos’ claims (emphasis added)); *id.* at 2311 (stating that “[t]aken together, the consent decrees, compliance orders, compliance advisories, and [NOV]” are “identical or substantially similar” to GreenLatinos’ allegations). Moreover, Suncor has consistently lumped the consent decrees with various administrative acts at Step Two. *See, e.g.,* App. Vol. I. at 0161-63. Now on appeal, Suncor urges this Court to address Step Two based solely on the NOV. Resp. 32-33. GreenLatinos are entitled to respond to that argument. *See Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 778 n.3 (9th Cir. 2022) (appellant did not forfeit response to arguments that

"the district court did not address" merely because he did not "proactively anticipate this argument in his opening brief"). Indeed, it is Suncor who did not adequately raise this argument because it merely incorporates a table from its motion to dismiss argument, Resp. 41 (citing App. Vol. V at 1114-20); it does not develop the argument in its Response, as required.[15] *See* 10th Cir. R. 28.3(B) (incorporation by reference "is disapproved and" does not meet "Federal Rules of Appellate Procedure 28(a) and (b).").

Moreover, a cursory review of Suncor's chart shows that its characterizations of the NOV are unreliable. For example, the chart cites NOV paragraphs 421 and 423 as enforcing the same standard as Claim 19 (15.68 pounds of $SO_2$), App. Vol. V at 1118, but those paragraphs only allege that an emission monitoring system was not properly calibrated, App. Vol. IX at 1808-09. It says nothing about violations of the $SO_2$ limit itself. Similarly, paragraphs 372 and 378 identify potential violations of an *opacity* limit on *FCCUs*, *id.* at 1794, 1799-800, not the *smoke visibility* limit on *flares* in Claim 23, App. Vol. V at 1119.

---

[15] Suncor does directly compare the NOx limit in Claim 25 to the NOV, Resp. 41-42, but, again, only the scope of the decrees is potentially relevant, *see* Section II.C.

Regardless, the NOV does not enforce all of the violations GreenLatinos allege. For example, as GreenLatinos noted, none of the administrative acts, including the NOV, allege violations of the reasonably available control technology requirements in Claims 4, 15, 20, and 22. *See* Br. 40 n.12. Nor does the NOV allege violations of the opacity limits in Claims 7 or 24. *Id.* at 42-43.

## III. Step Three: GreenLatinos Adequately Alleged That Any Prosecution Was Not Diligent at the Time the Complaint Was Filed

Even if the Court finds that government is still prosecuting the original EPA suits (Step One) and those actions involved standards GreenLatinos are enforcing (Step Two), Step Three is not met. The consent decrees are decades old, any remedial measures they required Suncor to take were completed more than ten years ago, and yet Suncor continues to violate its emission standards, racking up thousands of days of violations. While the decrees have been unsuccessful at achieving compliance, the government has never returned to court to seek a contempt order or modify the decrees with additional, judicially-enforceable remedial measures. Allowing this stubborn pattern of noncompliance to clear the diligence hurdle would render the requirement meaningless.

**A.** **GreenLatinos Should Not Be Required to Overcome a Presumption That the Administrative Acts Are *Diligent* Prosecution**

Against this backdrop of persistent violations, Suncor's strategy depends heavily on this Court's willingness to apply a "presumption of diligence" to the administrative acts at the pleading stage. Resp. 27-28. Contrary to Suncor's characterization, even the courts that have granted some deference to consent decrees vary substantially on the level of deference they afford, *S. River*, 69 F.4th at 824-25 (collecting cases). The Tenth Circuit has not adopted a specific "presumption of diligence." *See Karr v. Hefer,* 475 F.3d 1192, 1197-98 (10th Cir. 2007) (court "quite deferential" to decree's terms). The Court should hold that GreenLatinos were not required to overcome a presumption of diligence here.

Any deference courts afford to a completed government court action has been granted only to the terms of consent decrees negotiated to bring a polluter into compliance. *See Piney Run*, 523 F.3d at 460 (evaluating "whether the [] enforcement action, and specifically the Consent Judgment," was diligent); *Citizens for Clean Power v. Indian River Power, LLC*, 636 F. Supp. 2d 351, 354 (D. Del. 2009) (citizen suit filed two weeks after decree entered for the exact same past violations); *Conn. Fund for the Env't v. Cont. Plating Co. Inc.*, 631 F. Supp. 1291, 1294 (D. Conn. 1986) (evaluating diligence of state enforcement action

pending when citizen suit was filed). These courts have not, as Suncor urges, deferred to agencies' subsequent administrative acts.

*Karr* highlights the distinction. There, when the plaintiff filed its Clean Water Act citizen suit, EPA was already prosecuting an action in court. 475 F.3d at 1195. Two months later, the court approved a consent decree in EPA's suit that required various remedial measures to stop the violations, and the plaintiff argued the decree was non-diligent. *Id.* at 1194-95. Adopting a "quite deferential" approach, the court upheld EPA's enforcement strategy to bring the source into compliance, as memorialized in the consent decree, to avoid undermining EPA's ability to negotiate such settlements. *Id.* at 1197-98.

GreenLatinos do not criticize the wisdom of the original decrees or the prosecutorial judgment reflected in those decrees. Instead, the issue is whether this Court owes deference to out-of-court administrative acts, taken long after the decrees. Unlike in *Karr*, where there was no history to indicate whether the prosecution had been diligent; here, the last twenty years have shown that the decrees have not stopped Suncor's violations. *See* Section III.B; *Milwaukee's Rivers*, 382 F.3d at 760 (court's "diligent prosecution analysis" ought to examine whether in-court actions are "capable of requiring compliance with the Act" (citation omitted)).

**B.      Regardless, GreenLatinos Alleged Adequate Facts, Taken as True, That Prosecution Was Not Diligent**

Suncor's arguments notwithstanding, GreenLatinos' allegations about Suncor's continuing violations and the government's ineffective response are sufficient to plausibly allege that any continued prosecution is not diligent.

*First*, Suncor's continuing violations of its emission standards demonstrate non-diligence. Br. 49-50, 52, 54; *see also Cebellero-Beltran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 75 (1st Cir. 2021) (finding "ongoing violations support[ed] the allegation of a lack of diligence," especially in light of "the severity of the problem" and "the several years [] lapsed since the Consent Decree was ordered.").[16] In response, Suncor claims that *Karr* found diligent prosecution despite "ongoing violations for three years prior to filing suit." Resp. 30-31. It did not. As explained above, the consent decree was entered while the citizen suit was pending, so no post-decree violations were alleged. *Karr,* 475 F.3d at 1194-95.

*Second*, even if administrative acts purportedly enforcing the consent decrees were relevant, their failure to deter Suncor's violations further

---

[16] Contrary to Suncor's argument, *Cebellero-Beltran* did not find that EPA had "failed to take *any action at all* to enforce a consent decree." Resp. 31. Regardless, the court's concern was only with how *ineffective* EPA had been in stopping the violations. *Cebellero-Beltran*, 4 F.4th at 74-76.

undermines diligence. Br. 54. Suncor objects, arguing that "courts frequently reject this type of second-guessing of the agency's enforcement strategy." Resp. 32. Not so. Courts have considered whether penalties are adequate to deter further violations and have found lack of diligence if not. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 890 F. Supp. 470, 490-92 (D.S.C. 1995). Suncor's citations considered whether the stipulated penalty provisions were too low for a consent decree to be diligent, not whether subsequent penalties had failed to deter violations. *See S. River,* 484 F. Supp. 3d at 1370; *Piney Run,* 523 F.3d at 459.

*Third,* after two decades of violations, the government's failure to return to court to bring Suncor into compliance also shows a lack of diligence. Br. 51. The purpose of a consent decree is to give the court's imprimatur to a settlement and allow a party to seek contempt citations for violations. *See, e.g., Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (citation omitted). Even if the government did not ask for contempt, it could have sought modifications to the decree to require additional remedial measures to bring Suncor into compliance. *See*, *e.g., S. River*, 69 F.4th at 827-28 (concluding that modifications to the consent decree show diligence). Suncor's violations have continued despite the last remedial measure required by the decrees passing over ten years ago. *See* Section I.B. The government's failure to

involve the court despite Suncor's continuing violations supports non-diligence.

### C.    Suncor Cannot Rely on the Administrative Acts to Demonstrate That Any Prosecution Is Diligent

Suncor's continued reliance on the various administrative acts does not overcome GreenLatinos' lack-of-diligence allegations.

*First*, in addition to the reasons above, the NOV does not demonstrate diligence because a mere notice of violation has no effect. An administrative enforcement proceeding "'is commenced' by filing a complaint or the simultaneous issuance of a consent agreement and final order." *Naturaland Tr. v. Dakota Fin. LLC*, 41 F.4th 342, 348 (4th Cir. 2022) (citing 40 C.F.R. § 22.13 (Clean Water Act penalty assessment)). Even if a notice letter is a "necessary step" before commencing administrative enforcement, it does not commence enforcement itself. *Id.* at 350. Suncor implies that the notice in *Naturaland* had less force than the NOV here. Resp. 32-33. But this NOV is the parallel preliminary step—taken *prior* to enforcement—under the Clean Air Act to the notice letter step the Fourth Circuit discussed. *See* Br. 9-10 (citing 40 C.F.R. §§ 22.13, 22.34 (parallel Clean Air Act penalty assessment)).

Suncor argues that GreenLatinos forfeited this argument, Resp. 32, but it is mistaken. GreenLatinos argued below that none of the administrative acts qualified as prosecution under the Clean Air Act. App. Vol. IX at 1951-52.

GreenLatinos have not raised a new legal theory not presented to the District Court. *See United States v. Carvajal-Andujar,* 2025 WL 1576653, at *3 (10th Cir. June 4, 2025) (unpublished) ("Our core inquiry when deciding if an issue was forfeited is 'whether the district court was adequately alerted to the issue.'" (citation omitted)). Also, even if GreenLatinos had initially forfeited the argument, Suncor is now arguing for the first time that the NOV, standing alone, bars any of GreenLatinos' claims enforcing the same standards. *See* Section II.C. GreenLatinos are entitled to respond to this new argument: "Although this court generally does not review issues raised for the first time in a reply brief, we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the appellee's brief." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003) (citations omitted).

*Second*, Suncor's attempt to justify the District Court's reliance on irrelevant monitoring provisions does not support diligence. Suncor argues that "courts have concluded that consent decree provisions authorizing ongoing monitoring, reporting, and inspection of open consent decree terms—like the Consent Decrees here—demonstrate that enforcement of a consent decree is diligent prosecution." Resp. 30 (citing *GASP*, 810 F.3d at 130). Suncor's argument is beside the point. The monitoring provisions cited by the District

Court were not "consent decree provisions authorizing ongoing monitoring." *Id.*; they have no connection to the consent decrees or GreenLatinos' claims. Br. 53.

## CONCLUSION

For these reasons, this Court should reverse the judgment and remand the case to the District Court with direction to deny the motion to dismiss.

DATED: December 10, 2025                Respectfully submitted,

<u>/s/ Ian Coghill</u>

Ian Coghill
Rachael Jaffe
EARTHJUSTICE
1125 17th Street
Suite 1010
Denver, CO 80202
303-996-4620
303-996-9613
icoghill@earthjustice.org
rjaffe@earthjustice.org

*Counsel for Plaintiff-Appellants
GreenLatinos, 350 Colorado, and Sierra
Club*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,484 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Calisto MT 14-point font.

December 10, 2025

/s/ Ian Coghill

Ian Coghill
Rachael Jaffe
EARTHJUSTICE
1125 17th Street
Suite 1010
Denver, CO 80202
303-996-4620
303-996-9613
icoghill@earthjustice.org
rjaffe@earthjustice.org

*Counsel for Plaintiff-Appellants GreenLatinos, 350 Colorado, and Sierra Club*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on December 10, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

December 10, 2025

/s/ *Ian Coghill*

Ian Coghill
Rachael Jaffe
EARTHJUSTICE
1125 17th Street
Suite 1010
Denver, CO 80202
303-996-4620
303-996-9613
icoghill@earthjustice.org
rjaffe@earthjustice.org

*Counsel for Plaintiff-Appellants*
*GreenLatinos, 350 Colorado, and Sierra*
*Club*